UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-22271-CIV-UNGARO

JUAN CARLOS VALLECILLO, all others
similarly situated,

    Plaintiff,

v.

WALL TO WALL RESIDENCE REPAIRS, INC.,
JORGE ACOSTA, and ELOISA LIM,

    Defendants.
_____/

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION, IN THE ALTERNATIVE, REQUEST TO CONVERT MOTION TO DISMISS INTO A MOTION FOR SUMMARY JUDGMENT**

Defendants, Wall to Wall Residence Repairs, Inc., a Florida corporation, Jorge Acosta, an individual, and Eloisa Lim, an individual ("Defendants"), by and through their undersigned counsel, file this Reply Memorandum in Support of Their Motion to Dismiss for Lack of Subject Matter Jurisdiction, and in support state:

**PRELIMINARY STATEMENT**

The Plaintiff's Response asserts the following arguments: 1) the Plaintiff should be allowed to engage in discovery to determine whether the tax returns and the financial statement for 2007 are accurate (and Plaintiff believes that the rolling quarter analysis should apply to this case); and 2) the immigration status argument is without merit. Defendants will discuss these two contentions, neither of which has any merit, in turn. Initially, the Court should note that whether a rolling quarter analysis is applied or not, the Plaintiff began working for the Defendants on August 5, 2007. (*Complaint* ¶ 9). Therefore, even using a rolling quarter analysis, the pertinent time-period with regard to the Defendants' gross annual revenue for determining whether overtime is owed for the

third quarter in 2007 is the last two quarters of 2006 and the first two quarters of 2007, and for the fourth quarter of 2007, the last quarter of 2006 and the first three quarters of 2007, and so on. It is clear from the returns and from the financial statement that even using the rolling quarter analysis, the Defendants are not going to be liable, because their revenue is so far under $500,000 per year, that there are no four-consecutive quarters in which the Defendants' gross annual revenue exceeded the $500,000 threshold. To the extent that the Plaintiff desires to engage in discovery, although numerous courts have denied discovery when tax returns are submitted (as set forth in Defendants' Motion), than this Court should issue a written order converting the motion into one for summary judgment, and give the Plaintiff thirty (30) days to engage in discovery and provide a response (provided that the Court does not dismiss the case on the ground that the Plaintiff is and was an illegal immigrant worker). *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (noting that district courts need only give the plaintiff ten (10) days notice); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). Numerous courts in the Southern District have followed this approach. *Delisle v. LGY Corp.*, 535 F. Supp. 1266 (S.D. Fla. 2008) (giving plaintiff thirty (30) days for discovery, after converting motion into one for summary judgment); *Guzman v. Irmadan, Inc.*, 2008 WL 926375 (S.D. Fla. 2008) (giving plaintiff thirty-four (34) days for discovery, after converting motion into one for summary judgment); *Casseus v. First Eagle, L.L.C.*, 2008 WL 1782363 (S.D. Fla., Apr. 28, 2008) (granting the motion for summary judgment after converting it and noting that after plaintiff engaged in discovery concerning financial issues he conceded that the business was not covered under the FLSA).

Concerning the immigration status argument, the Plaintiff's arguments make no sense because the FLSA was not enacted to try to ensure that laborers made more money, but rather it was enacted in the depths of the great depression to try to increase the workforce and decrease the unemployment rate by requiring employers to pay employees time and one-half for hours worked

over forty in a workweek, the thinking being that instead of paying time and one-half, the employer would hire additional workers. *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 460 (1948) (finding that the FLSA was enacted "to spread employment through inducing employers to shorten hours [for existing workers] because of the pressure of the extra costs [which would require the employer to hire additional workers].").  The case law cited by the Plaintiff was either decided before *Hoffman* or fails to take into the analysis set forth in the Defendants' Motion concerning *Hoffman* and *Sure-Tan*.

### MEMORANDUM OF LAW

**I. THE COURT SHOULD ISSUE A WRITTEN ORDER CONVERTING THE MOTION INTO ONE FOR SUMMARY JUDGMENT, AND ALLOW THIRTY (30) DAYS FOR DISCOVERY LIMITED SOLELY TO SUBJECT MATTER JURISDICTION (IF THE CASE IS NOT DISMISSED ON OTHER GROUNDS)**

The Eleventh Circuit has considerable precedent in the Rule 12(b)(6) context that holds that a court should convert a motion to dismiss into a motion for summary judgment when matters outside of the four corners of the complaint are submitted with the motion, and must give the non-moving party ten (10) days notice to marshal evidence in response to the motion, but has numerous exceptions to that general rule. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

In *Delisle*, Judge Seitz gave the plaintiff approximately thirty (30) days to engage in discovery and file a response to the Motion for Summary Judgment. In *Guzman*, Judge Altonaga provided the Plaintiff with thirty-four (34) days in which to engage in discovery and file a response. In both those cases, the plaintiff was able to engage in discovery, and provide a response. In the *Guzman* case, plaintiff's counsel was the same Plaintiff's counsel in this case. In *Delisle* and in *Guzman*, the plaintiffs were able to provide their responses to the dispositive motions in a timely manner. In *Delisle*, the plaintiff admitted that there was no enterprise coverage or individual

coverage (after having obtained the defendants' financial records and after having deposed the individual defendant and her husband during discovery), and did not even submit a response—the parties submitted a proposed order granting the defendants' motion for summary judgment on March 24, 2008, the day that the plaintiff's response was due. In *Guzman*, the plaintiff engaged in discovery (took the deposition of the individual defendant and an accountant and obtained the pertinent financial records) and filed his response a week early [D.E. 28, 29], conceding the issue of enterprise coverage but contesting the issue of individual coverage. That these other courts allowed approximately thirty (30) days for discovery on the issues of enterprise coverage and individual coverage is strong support that the Plaintiff be allowed thirty (30) days for discovery and responding to the Motion for Summary Judgment, which is a similar time as the plaintiffs in those other cases had, and thus it should be sufficient, particularly since the Court only has to provide ten (10) days to the Plaintiff to marshal his evidence. The Plaintiff's reliance on *Turcios* is misplaced, because the facts present in *Turcios* are not present here.

## II. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF IS AN ILLEGAL IMMIGRANT WORKER

The Plaintiffs argue that the Court should blindly follow *Patel*, disregard the Supreme Court's *Hoffman* decision, and that one Court (the *Martinez* case) has rejected the applicability of *Hoffman* to FLSA cases. These arguments are without merit. Initially, the Court should note that the legal arguments, and the extent to which Defendants have shown that *Hoffman* and *Sure-Tan* are applicable, and that the FLSA was enacted to spread work around in recessionary times to people legally permitted to work who needed jobs, were not made in *Martinez* or *Patel*. *Hoffman*, 535 U.S. at 151-52 (stating that "[a]llowing the [NLRB] to award back pay to illegal aliens would unduly trench upon explicit statutory prohibitions critical to federal immigration policy, as expressed in IRCA"). As set forth by the Defendants in their Motion, the conclusion is inescapable that *Hoffman* (an NLRA case) applies to a FLSA case. *Patel* was overruled by *Hoffman*, which was decided

4

many years later, *sub silencio*, because *Patel's* reasoning was based on the conclusion that the utilization of illegal immigrant workers does not run afoul of IRCA, and *Hoffman* clearly and expressly held that it does. *Hoffman*, 535 U.S. at 147 (noting that IRCA is a "comprehensive scheme" that prohibits the employment of unauthorized workers in the United States and that "IRCA 'forcefully' made combating the employment of illegal aliens central to '[t]he policy of immigration law.'"). This Court cannot just ignore *Hoffman*, particularly with respect to the inapplicability of the holding in *Patel*, as *Patel* suggested that IRCA was not a comprehensive scheme, and thus is not consistent with *Hoffman*.

*Hoffman* held that an illegal immigrant worker was not an employee under the NLRA, period. The great depression was at its zenith, in terms of the employment rate and the leading economic indicators, in 1938. Congress chose to enact the FLSA (in 1938) to spread work around and allow citizens of the country to feed their families. *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 460 (1948). Today, not unlike 1938, we face a recessionary economy, and the main purpose behind the enactment of the FLSA is thwarted if illegal immigrant workers are allowed to recover under it. For example, the illegal immigrant workers have formed an entire underground economy, as they do not pay taxes on the money that they earn, they send a significant portion of the money that they earn to their own country to financially support their families, and they take jobs away from honest, hard-working, tax-paying Americans. This is not what the FLSA was enacted to do, and to allow illegal immigrant workers to recover under the FLSA will pervert the primary purpose behind the statute, to employ Americans in bad economic times.

While the *Martinez* case did not interpret the *Hoffman* case in the manner suggested by the Defendants here, the *Martinez* court did not have before it the depth of analysis and other policy arguments that have been presented here. The *Martinez* case is only persuasive, and the fact that it was decided in 2002 is pertinent, because in 2002, the country was not in a recession, and the illegal

5

immigrant worker problem is nowhere near what it is today.  The Defendants ask the Court to simply acknowledge Supreme Court precedent, and to interpret the FLSA consistently with the intentions that Congress had when it was enacted.  Notably, the Plaintiff does not dispute that he is in the country illegally currently, and that when he worked for the Defendants he could not work in this country legally.

One of the issues in the Southern District of Florida is that there are numerous cases in which the Plaintiff(s) are illegal immigrant workers, and it often comes up in these cases that the Plaintiffs are not paying their taxes on the money that they earn, and are even going from employer-to-employer working for awhile and then suing under the FLSA.  Therefore, there are policy reasons why the courts should take a second look at whether the law requires (and whether it is wise from a policy standpoint) to allow illegal immigrant workers to sue under the FLSA.  In fact, in this case, the Plaintiff did not bring this suit (or suggest that he was going to bring a suit or was owed overtime) until the Defendants had to fire him once they learned that he was an illegal immigrant worker.  Federal law (IRCA) required this immediate termination, lest Defendants be subjected to both civil and criminal penalties, 8 U.S.C. § 1324a(a)(2) (requiring an employer to immediately fire the illegal immigrant worker, or be subject to civil and criminal penalties), and a Court allowing illegal immigrant workers to proceed with a Federal Court case (*e.g.*, by physically coming into the courtroom and testifying or appearing at a hearing) presents all sorts of practical and policy-based problems.  18 U.S.C. § 4 (prohibiting "misprision of a felony"); 8 U.S.C. § 1324(a)(1)(A)(iii) (making it a crime to shield unauthorized aliens from detection); *United States v. Cantu*, 557 F.2d 1173, 1180 (5th Cir. 1977) (affirming prosecution of an employer under 8 U.S.C. § 1324(a)(1)(A)(iii)).

## CONCLUSION

For the foregoing reasons, the Plaintiff's Complaint should be dismissed for lack of subject matter jurisdiction or in the alternative summary judgment should be granted in favor of the Defendants, or the Defendants' Motion should be converted into one for summary judgment, and the Plaintiff should be given thirty (30) days to engage in discovery on the jurisdictional issues (if the Court does not dismiss it based on the illegal-immigrant-worker argument).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 28, 2008, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record (J.H. Zidell, Esq., City National Bank Building, 300 71st Street, Suite #605, Miami Beach, Florida 33141) or *pro se* parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

Glasser, Boreth & Kleppin
Attorneys for Plaintiff
8751 W. Broward Blvd.
Suite 105
Plantation, FL 33324
Tel. (954) 424-1933
Fax (954) 474-7405
E-mail: Glabor@aol.com


By__s/Chris Kleppin_____
Chris Kleppin
Fla. Bar No. 625485

C:/MyDocuments/WalltoWall/DefReplytoMforSummaryJudgment10/28/08