UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 07-21221-CIV-ALTONAGA/TURNOFF

RENEE BLASZKOWSKI, *et al.*,
individually and on behalf of
others similarly situated,

                    Plaintiffs,

vs.

MARS, INCORPORATED, *et al.*,

                    Defendants.

_____/

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CORRECTED AMENDED
COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Dockets.Justia.com

Case No. 07-21221-CIV-Altonaga

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES .................................................................................... iii

MOTION............................................................................................................... 1

MEMORANDUM OF LAW - INTRODUCTION ................................................... 1

BACKGROUND ................................................................................................... 2

ARGUMENT ........................................................................................................ 4

I.     THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS DO NOT HAVE CONSTITUTIONAL STANDING TO ASSERT THEIR CLAIMS. ........................................................................................................ 5

II.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO ALLEGE THAT THEY WERE HARMED BY AN ACT OR OMISSION OF ANY OF THE DEFENDANTS. ......................................... 11

     A.    The Complaint Fails to Link the Allegations of Any Specific Plaintiff to Any Particular Defendant. ................................................. 12

     B.    The Complaint Fails to Allege the Reliance or Causation Elements Necessary to Sustain Each Claim. ...................................................... 14

III.    EACH COUNT ALLEGED IN THE COMPLAINT WARRANTS DISMISSAL ON INDEPENDENT GROUNDS.............................................. 16

     A.    Plaintiffs' Fraud-Based Claims (Counts I-V) Are Not Alleged with Sufficient Particularity. ....................................................................... 16

          1.    The Complaint Fails to Identify "Who" Did "What" to "Whom" and "When." ............................................................. 19

          2.    The Complaint Fails to Allege Any Facts Demonstrating That Any Plaintiff Relied on Any Defendant's Statements..................... 21

          3.    The Complaint Fails to Allege That Plaintiffs Suffered Harm As a Result of Any Fraudulent Statement. ................................... 22

     B.    Counts I and II Are Duplicative......................................................... 23

     C.    Plaintiffs' Consumer Protection Act Claim (Count IV) Fails to State a Claim. ................................................................................... 24

i

# TABLE OF CONTENTS
## (cont'd.)

**Page(s)**

D.    The Economic Loss Rule Bars Plaintiffs' Claims for Negligence
(Count VI) and Negligence Per Se (Count VII).................................................... 27

E.    Because Plaintiffs' Negligence Per Se Claim Is Based on Statutes
That Do Not Provide For a Private Cause of Action, It Should Be
Dismissed.......................................................................................................... 28

F.    Plaintiffs' Warranty Claims (Counts X and XI) Must Be Dismissed
Because Plaintiffs Fail to Allege Privity............................................................ 29

　　1.    Plaintiffs Fail to Allege Facts Establishing Privity With
Regard to Any Defendant. ...................................................... 29

　　2.    Plaintiffs Cannot Allege Privity With Respect to the
Manufacturer Defendants........................................................ 30

G.    Plaintiffs' Unjust Enrichment Claim (Count XII) Should Be
Dismissed For Failure to State a Legally Cognizable Claim. ............................ 31

CONCLUSION.................................................................................................................... 33

CERTIFICATE OF SERVICE ........................................................................................... 45

APPENDIX A    ELEMENTS OF RELIANCE AND CAUSATION
UNDER FLORIDA AND MICHIGAN LAW................................................... 51

APPENDIX B    STATE CONSUMER PROTECTION STATUTES ......................................... 53

APPENDIX C    AAFCO AND STATE PROVISIONS ......................................................... 55

APPENDIX D    STATE LAW EXEMPTIONS FOR AUTHORIZED CONDUCT ......................... 57

APPENDIX E    BREACH OF WARRANTY CLAIMS ......................................................... 59

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*3B TV, Inc. v. State,*
    794 So. 2d 744 (Fla. 1st DCA 2001) ................................................................ 25

*Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.,*
    390 F. Supp. 2d 1170 (M.D. Fla. 2005) ............................................................ 31

*Anderson v. Smithfield Foods, Inc.,*
    207 F. Supp. 2d 1358 (M.D. Fla. 2002) ............................................................ 18

*Atlantic Nat'l Bank of Fla. v. Vest,*
    480 So. 2d 1328 (Fla. 2d DCA 1985) ................................................................ 18

*Bell Atlantic Corp. v. Twombly,*
    127 S. Ct. 1955 (2007) ....................................................................... 11, 12, 15

*Berenguer v. Warner-Lambert Co.,*
    No. 02-05242, 2003 WL 24299241(Fla. Cir. Ct. July 31, 2003) ...................... 22, 26

*Biscayne Investment Group, Ltd. v. Guarantee Mgmt. Svcs., Inc.,*
    903 So.2d 251 (Fla. 3d DCA 2005) .................................................................. 18

*Blinn v. Smith & Nephew Richards, Inc.,*
    55 F. Supp. 2d 1353 (M.D. Fla. 1999) .............................................................. 28

*Box Office Entertainment, LLC v. Brian D. Gordon, CPA, P.A.,*
    No. 05-21010, 2007 WL 1362898 (S.D. Fla. May 9, 2007) ............................ 17, 18

*Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.,*
    288 F.3d 1012 (7th Cir. 2002) ............................................................................. 9

*Briehl v. GMC,*
    172 F.3d 623 (8th Cir. 1999) .............................................................................. 9

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.,*
    116 F.3d 1364 (11th Cir. 1997) ..................................................................... 17, 18

*Casa Clara Condo. Ass'n, Inc. v. Charley Toppino & Sons, Inc.,*
    620 So. 2d 1244 (Fla. 1993) ............................................................................. 27

*Church v. City of Huntsville,*
    30 F.3d 1332 (11th Cir. 1994) ............................................................................ 9

## TABLE OF AUTHORITIES
### (cont'd.)

Page(s)

*Court Appointed Receiver for Lancer Mgmt. Group LLC v. Taubman,*
No. 05-60199-CIV, 2007 WL 984452 (S.D. Fla. Mar. 27, 2007) ........................................... 31

*Della Ratta v. Della Ratta,*
927 So. 2d 1055 (Fla. 4th DCA 2006) ................................................................................. 32

*Dura Pharmaceuticals, Inc. v. Broudo,*
544 U.S. 336 (2004) ........................................................................................................ 12

*Eirman v. Olde Discount Corp.,*
697 So. 2d 865 (Fla. 4th DCA 1997) ................................................................................. 26

*Elend v. Basham,*
471 F.3d 1199 (11th Cir. 2006) ....................................................................................... 5

*Elizabeth N. v. Riverside Group, Inc.,*
585 So. 2d 376 (Fla. 1st DCA 1991) ................................................................................. 29

*Flamenbaum v. Orient Lines, Inc.,*
No. 03-22549, 2004 WL 1773207 (S.D. Fla. July 20, 2004) ...................................... 17, 20, 30

*Flint v. ABB, Inc.,*
337 F.3d 1326 (11th Cir. 2003) ....................................................................................... 33

*Focus on the Family v. Pinellas Suncoast Transit Auth.,*
344 F.3d 1263 (11th Cir. 2003) ....................................................................................... 5

*Fraker v. KFC Corp.,*
No. 06-CV-01284-JM, 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007) .................................... 22

*Griffin v. Dugger,*
823 F.2d 1476 (11th Cir. 1987) ................................................................................... 5, 9

*Guyana Tel. & Tel. Co. v. Melbourne Intern.,*
329 F.3d 1241 (11th Cir. 2003) ....................................................................................... 33

*Haskin v. R.J. Reynolds Tobacco Co.,*
995 F. Supp. 1437 (M.D. Fla. 1998) ................................................................................. 13

*Haun v. Don Mealy Imports, Inc.,*
285 F. Supp. 2d 1297 (M.D. Fla. 2003) ........................................................................ 16, 23

*Himes v. Brown & Co.,*
518 So. 2d 937 (Fla. 3d DCA 1987) ................................................................................. 16

# TABLE OF AUTHORITIES
## (cont'd.)

**Page(s)**

*Hoyte v. Yum! Brands, Inc.*,
  489 F. Supp. 2d 24 (D.D.C. 2007) ................................................................. 8, 22

*Huntsman Pkg. Corp. v. Kerry Pkg. Corp.*,
  992 F. Supp. 1439 (M.D. Fla. 1998) ................................................................. 32

*Ikonen v. Hartz Mountain Corp.*,
  122 F.R.D. 258 (S.D. Cal. 1988) ....................................................................... 15

*In re Managed Care Litig.*,
  150 F. Supp. 2d 1330 (S.D. Fla. 2001) ............................................................. 22

*Indemnity Ins. Co. of N. Am. v. Am. Aviation, Inc.*,
  891 So. 2d 532 (Fla. 2004) ................................................................................. 27

*Jackson v. BellSouth Telecomms.*,
  372 F.3d 1250 (11th Cir. 2004) ......................................................................... 12

*Jacobs v. Osmose, Inc.*,
  No. 01-944-CIV, 2002 WL 34241682 (S.D. Fla. Jan. 3, 2002) ..................... 29, 30

*Kramer v. Piper Aircraft Corp.*,
  520 So. 2d 37 (Fla. 1988) ................................................................................... 29

*Liza Danielle, Inc. v. Jamko, Inc.*,
  408 So.2d 735 (Fla. 3d DCA 1982) ................................................................... 31

*Lofton v. Butterworth*,
  93 F. Supp. 2d 1343 (S.D. Fla. 2000) ................................................................. 6

*London v. Wal-Mart Stores, Inc.*,
  340 F.3d 1246 (11th Cir. 2003) ........................................................................... 5

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................................................. 5

*Lynch v. Bexley*,
  744 F.2d 1452 (11th Cir. 1984) ......................................................................... 10

*Marino v. Home Depot U.S.A., Inc.*,
  No. 06-80343, 2007 WL 201260 (S.D. Fla. Jan. 24, 2007) .............................. 18

*Mathews v. Kilroe*,
  170 F. Supp. 416 (S.D.N.Y. 1959) .................................................................... 12

# TABLE OF AUTHORITIES
## (cont'd.)

Page(s)

*McEntee v. Incredible Techs., Inc.*,
  No. 263818, 2006 WL 659347 (Mich. App. Mar. 16, 2006) .................................................... 26

*McLiechy v. Bristol West Ins. Co.*,
  474 F.3d 897 (6th Cir. 2007) ............................................................................................. 26

*Montgomery v. Davol, Inc.*,
  No. 3:07cv176, 2007 WL 2155644 (N.D. Fla. July 24, 2007) ................................................ 31

*Montgomery v. New Piper Aircraft, Inc.*,
  209 F.R.D. 221 (S.D. Fla. 2001) ........................................................................................ 24

*Moore v. Miami-Dade County*, |
  No. 06-22705, 2007 WL 2302481 (S.D. Fla. July 18, 2007) ................................................ 11

*Murthy v. N. Sinha Corp.*,
  644 So. 2d 983 (Fla. 1994) ............................................................................................... 28

*Napier v. Osmose, Inc.*,
  399 F. Supp. 2d 811 (W.D. Mich. 2005) ............................................................................ 13

*Neibarger v. Universal Coops.*,
  486 N.W.2d 612 (Mich. 1992) ........................................................................................... 27

*Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla.*,
  667 So.2d 876 (Fla. 3d DCA 1996) .................................................................................... 32

*Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*,
  784 F.2d 674 (5th Cir. 1986) ............................................................................................. 22

*Prohias v. Pfizer*, Inc.,
  485 F. Supp. 2d 1329 (S.D. Fla. 2007) ........................................................................ 7, 8, 14

*Region 8 Forest Serv. Timber Purchasers Council v. Alcock*,
  993 F.2d 800 (11th Cir. 1993) ........................................................................................... 10

*Rivera v. Wyeth-Ayerst Laboratories*,
  283 F.3d 315 (5th Cir. 2002) .......................................................................................... 7, 8

*Rollins, Inc. v. Butland*,
  951 So. 2d 860 (Fla. 2d DCA 2006) ................................................................................... 18

*Shands Teaching Hosp. and Clinics, Inc. v. Beech St. Corp.*,
  899 So.2d 1222 (Fla. 1st DCA 2005) .................................................................................. 32

Case No. 07-21221-CIV-Altonaga

## TABLE OF AUTHORITIES
### (cont'd.)

**Page(s)**

*Shibata v. Lim,*
    133 F. Supp. 2d 1311 (M.D. Fla. 2000) ................................................................... 23

*Simon v. Celebration Co.,*
    883 So.2d 826 (FLA 5th DCA 2004) ...................................................................... 14

*Smith v. Mellon Bank,*
    957 F.2d 856 (11th Cir. 1992) .......................................................................... 17, 18

*State of Fla., Office of Atty. Gen. v. Tenet Healthcare Corp.,*
    420 F. Supp. 2d 1288 (S.D. Fla. 2005) ................................................................. 33

*Stevens v. Danek Med., Inc.,*
    No. 95-14293-CIV-PAINE, 1999 WL 33217282 (S.D. Fla. April 16, 1999) ......................... 28

*Stires v. Carnival Corp.,*
    243 F. Supp. 2d 1313 (M.D. Fla. 2002) ............................................................. 17, 23

*T.W.M. v. Amer. Medical Sys., Inc.,*
    886 F. Supp. 842 (N.D. Fla. 1995) ................................................................ 29, 30, 31

*Tilton v. Playboy Ent. Group, Inc.,*
    No. 88:05-cv-692-T-30TGW, 2007 WL 80858 (M.D. Fla. Jan. 8, 2007) ......................... 32

*Timberland Consol. P'ship v. Andrews Land and Timber, Inc.,*
    818 So.2d 609 (Fla. 5th DCA 2002) ...................................................................... 32

*Tolliver v. Monaco Coach Corp.,*
    No. 8:06-cv-856, 2006 WL 1678842 (M.D. Fla. June 16, 2006) ............................... 30, 31

*Tooltrend, Inc. v. CMT Utensili, SRL,*
    198 F.3d 802 (11th Cir. 1999) .............................................................................. 31

*True Title, Inc. v. Blanchard,*
    No. 6:06-cv-1871-Orl-19DAB, 2007 WL 430659 (M.D. Fla. Feb. 5, 2007) ..................... 23

*Tylka v. Gerber Prods. Co.,*
    No. 96-C-1647, 1999 WL 495126 (N.D. Ill. July 1, 1999) .............................................. 22

*U.S. ex re Feingold v. Palmetto Gov't Benefits Adm'rs,*
    477 F. Supp. 2d 1187 (S.D. Fla. 2007) ................................................................. 12

*United States v. Lab. Corp. Am. Inc.,*
    290 F.3d 1301 (11th Cir. 2002) ......................................................................... 17, 19

## TABLE OF AUTHORITIES
### (cont'd.)

**Page(s)**

*Williams v. Purdue Pharma Co.*,
   297 F. Supp. 2d 171 (D.D.C. 2003) ................................................................... 9, 10, 16

*Yucyco, Ltd. v. Rep. of Slovn.*,
   984 F. Supp. 209 (S.D.N.Y. 1997) ............................................................................. 12

**Statutes**

21 U.S.C. § 343 ............................................................................................................... 28

FLA. ADMIN. CODE 5E-3.004(1) ...................................................................................... 25

FLA. ADMIN. CODE 5E-3.013 ........................................................................................... 25

Fla. Stat. § 501.212(1) ...................................................................................................... 25

Fla. Stat. Ann. § 501.201 ................................................................................................. 24

**Rules**

Rule 12(b)(1) of the Federal Rules of Civil Procedure ............................................ *passim*

Rule 12(b)(6) of the Federal Rules of Civil Procedure ............................................ *passim*

Rule 8 of the Federal Rules of Civil Procedure ................................................... 5, 12, 15

Rule 8(a)(2) of the Federal Rules of Civil Procedure ............................................. 11, 12

Rule 9(b) of the Federal Rules of Civil Procedure ................................................. *passim*

**Regulations**

9 C.F.R. 355.52 ................................................................................................................ 28

9 C.F.R. 355.59 ................................................................................................................ 28

Case No. 07-21221-CIV-Altonaga

## MOTION

Pursuant to Article III of the United States Constitution and Rules 8(a)(2), 9(b), 12(b)(1)

and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Mars, Incorporated; Mars

Petcare U.S., Inc.; Procter & Gamble Co.; The Iams Co.; Colgate-Palmolive Company; Hill's Pet

Nutrition, Inc.; Del Monte Foods, Co.; Nestle U.S.A., Inc.; Nestle Purina Petcare Co.; Nutro

Products, Inc.; Menu Foods, Inc.; Menu Foods Income Fund; Publix Supermarkets, Inc.;

Albertson's LLC; PETCO Animal Supplies Stores, Inc.; Pet Supermarket, Inc.; Pet Supplies

"Plus"; Pet Supplies "Plus"/USA, Inc.; PetSmart, Inc.; Target Corp.; and Wal-Mart Stores, Inc.

hereby move this Court to dismiss Plaintiffs' Corrected Amended Complaint for lack of subject

matter jurisdiction based on Plaintiffs' lack of standing to bring this suit, Plaintiffs' failure to

state any claim upon which relief may be granted, and other grounds fully articulated in the

Memorandum of Law incorporated into this Motion.[1]

## MEMORANDUM OF LAW - INTRODUCTION

Plaintiffs – alleged purchasers of unspecified brands of pet food – have filed a sweeping

Corrected Amended Class Action Complaint ("Complaint") that broadly criticizes the

manufacturing and marketing practices of the entire pet food industry in the United States, as

well as the efforts and standards of the industry's regulators.  Without once alleging (i) that any

Plaintiff bought pet food manufactured or sold by any specific Defendant; (ii) that any Plaintiff

was influenced to buy pet food by any particular Defendant's allegedly misleading statement; or

---

[1]  At this Court's direction (*see D.E. 142, Hearing Transcript at pgs. 22-25 and 27, lines 7-10*), the undersigned Defendants are submitting one comprehensive motion.  With the Court's concurrent advance permission, this motion exceeds the standard page limit.  Those Defendants who assert independent challenges to personal jurisdiction and effective service will submit separate motions to dismiss on those grounds and also adopt and incorporate by reference the arguments made here in support of dismissal.

(iii) that any Plaintiff's pet suffered any adverse health consequences from consuming any identified Defendant's product, Plaintiffs nevertheless have haled into this Court the bulk of the country's pet food business — including ten pet food manufacturers, eleven major retailers, and three specialty retailers.

Plaintiffs' ten-count Complaint is fatally flawed across the board.  It fails to establish that Plaintiffs have standing to bring this suit, and it fails as a matter of law to allege conduct that would be actionable under state consumer protection statutes or state tort or contract law.  The undersigned Defendants therefore jointly move to dismiss the Complaint, pursuant to Article III of the U.S. Constitution and Rules 8(a)(2), 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## BACKGROUND

Plaintiffs initiated this lawsuit on May 9, 2007, and they filed their corrected Amended Class Action Complaint on July 27, 2007.  The Complaint, brought by twenty-four cat and dog owners (Compl. ¶¶ 1-25) on behalf of a putative class of millions of pet owners throughout the United States,[2] consists solely of broad and vague allegations about the general conduct of the entire pet food industry.  In more than 150 paragraphs relying on generally available Internet postings and news articles, the Complaint alleges various actions and omissions by both the pet food industry and the government regulators overseeing the industry, and it targets unrelated activities ranging from some Defendants' alleged use of marketing terms as varied as "complete

---

[2]    Plaintiffs allege that there are approximately 73 million "companion" dogs and 90 million "owned" cats in the United States.  (Compl. ¶ 160.)  Plaintiffs seek to certify a putative class of consumers who own cats or dogs and who purchased pet food that was marketed, sold, manufactured, or distributed by any of the thirty named Defendants and marketed in certain enumerated ways. *Id.* ¶ 159.

and balanced nutrition" and "premium" to the alleged inclusion by some Defendants of synthetic preservatives in pet food.

Although the Complaint includes ten claims for relief,[3] each hinges on the same basic allegations of wrongdoing – that the pet food industry advertises its dog and cat food products as healthy and nutritious without disclosing in those advertisements certain ingredients that might be included in packages of pet food, or without fully explaining the health effects of the ingredients that are described. One typical example is Plaintiffs' criticism of Defendants' disclosed use of grain as an ingredient on the ground that dogs and cats "are carnivores" (Compl. ¶¶ 131, 153). Plaintiffs repeatedly lament the alleged "lack of scientific support that dry food is beneficial to an obligate carnivore such as a cat who [sic] has a low thirst drive." (*Id.* ¶¶ 79, 83, 86, 88, 90).[4]

Throughout this broad-based attack on the pet food business, Plaintiffs acknowledge that much of the complained-of activity is, in fact, regulated and approved by existing government agencies. (Compl. ¶¶ 102-114). At bottom, Plaintiffs are seeking to replace the existing regulatory regime wholesale with one constructed by this Court. It would be inappropriate under

---

[3] In their Complaint, Plaintiffs incorrectly numbered the counts, skipping from Count VII to Count X and failing to include Counts VIII and IX. This Motion refers to the counts as Plaintiffs labeled them.

[4] Some of Plaintiffs' statements are inconsistent with each other. For example, the Complaint alleges that "[t]here have been reports of euthanized cats and dogs that have been 'rendered' and ultimately made into pet food that would reach millions." (Compl. ¶ 122). However, Plaintiffs' own exhibits show that these 1990-era rumors were investigated by the FDA's Center for Veterinary Medicine in two studies of dog and cat food in 1998 and 2000 and were found to be utterly baseless. (Compl., Ex. 58). In fact, contrary to the allegations of the Complaint, the FDA's study "results demonstrated a ***complete absence*** of material that would have been derived from euthanized dogs or cats." (*Id.* (emphasis added)).

any circumstances for Plaintiffs to use this Court as a vehicle for their regulatory ambitions.
Here, where Plaintiffs can show neither standing nor legally cognizable claims, this Court should
dismiss their Complaint out of hand.

## ARGUMENT

The Complaint falls far short of stating a claim either on behalf of any Plaintiff or against
any Defendant.[5]  Each "count" asserts that Plaintiffs have been harmed in an unspecified manner
by purchasing pet food products allegedly manufactured or sold by Defendants.  But the
Complaint does not identify a single Defendant that manufactured or distributed any pet food
purchased by any named Plaintiff.  Instead, Plaintiffs only state generally that each has
purchased "various brands" of dog or cat food that are "in the group" of products allegedly made
or sold by Defendants.  (Compl. ¶¶ 2-25).  Nor does the Complaint allege that any particular
Defendant's allegedly misleading advertisement actually influenced any Plaintiff to purchase pet
food, or that the consumption of any Defendant's (or anyone else's) pet food harmed any of
Plaintiffs' pets.  As demonstrated below, to avoid dismissal of their Complaint, named Plaintiffs
must establish that they – as individuals – have standing to sue and have stated claims on which
relief can be granted.  They cannot make such a showing.

All ten claims for relief in the Complaint should be dismissed, for the following reasons:
First, having failed to allege any particularized injury to themselves, Plaintiffs lack standing for
purposes of Article III of the Constitution and Rule 12(b)(1) of the Federal Rules of Civil
Procedure.  Second, the Complaint does not contain a "short and plain statement" showing

---

[5]     Except for Counts VI (negligence) and VII (negligence per se), Plaintiffs bring each count
against every Defendant.  Counts VI and VII are not brought against retailer Defendants
PETCO, Pet Supermarket or Pet Supplies "Plus."

Plaintiffs' entitlement to relief as required by Rule 8 and fails to state any plausible claim for

relief under Rule 12(b)(6). The Complaint does not link any specific Defendant with pet food

allegedly purchased by any particular Plaintiff. Furthermore, the Complaint neither alleges facts

indicating that at least one Plaintiff personally relied on a representation by any Defendant nor

alleges how any Defendant's acts or omissions caused any harm to any Plaintiff. <u>Third</u>, each of

Plaintiffs' claims suffers from still other fatal and irremediable defects detailed in Part III below,

which independently warrant dismissal.

## I.  THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS DO NOT HAVE CONSTITUTIONAL STANDING TO ASSERT THEIR CLAIMS.

Standing for plaintiffs in a class action "directly implicates federal subject matter

jurisdiction" and is a threshold issue for the Court. *Focus on the Family v. Pinellas Suncoast*

*Transit Auth.*, 344 F.3d 1263, 1272 (11th Cir. 2003); *Elend v. Basham*, 471 F.3d 1199, 1204

(11th Cir. 2006). Since named Plaintiffs fail to allege that any Defendant's products caused

them injury, they lack standing to sue under Article III of the United States Constitution, and

their claims must all be dismissed under Fed. R. Civ. P. 12(b)(1).

Article III standing has three elements: (1) "the plaintiff must have suffered an injury in

fact[;]" (2) "there must be a causal connection between the injury and the conduct complained

of[;]" and (3) "it must be likely . . . that the injury will be redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted).

Plaintiffs have the burden to "allege and show that [they] personally suffered" an injury in fact.

*Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987). The injury must be (a) "concrete and

particularized," and (b) "actual or imminent, not conjectural or hypothetical." *London v. Wal-*

*Mart Stores, Inc.*, 340 F.3d 1246, 1251 (11th Cir. 2003). The injury requirement "cannot be met

Case No. 07-21221-CIV-Altonaga

by an allegation that the injury may occur at some indefinite future time." *Lofton v. Butterworth*, 93 F. Supp. 2d 1343, 1346 (S.D. Fla. 2000).

In this case, named Plaintiffs do not and cannot sufficiently allege either injury-in-fact or a causal connection between any injury and any Defendants' conduct. Instead, Plaintiffs' Complaint expresses nothing more than Plaintiffs' general dissatisfaction with the regulated practices of the pet food industry. Despite lengthy diatribes about the industry's alleged advertising practices (*e.g.*, Compl. ¶¶ 54-97), named Plaintiffs do not allege that their own pets have fallen ill or suffered any adverse health effects as a result of any complained-of activity of any Defendant, or that the (unidentified) pet food they purchased harmed them or their pets in *any* way. They focus entirely on the bare existence of what they claim are "harmful and toxic ingredients and chemicals" in the pet food at issue (which is virtually all the pet food in the country) as well as a perceived "lack[] [of] nutritious qualities" in that same food (*id.* ¶ 155), rather than directing this Court's attention to any injury that any Plaintiff has actually suffered as a result of these alleged characteristics.

Plaintiffs' failure to plead actual injury is no mere oversight. In their proposed class definition, Plaintiffs meticulously avoid any suggestion that any class members actually suffered injury. Instead, the proposed class would effectively extend to all consumers in the nation who purchased pet food that was handled by at least one Defendant at some point in the distribution chain and that contains certain ingredients and lacks others, *regardless* of the impact that the formulation of the food might have had on putative class members or their pets. Plaintiffs thus have not simply overlooked their burden to demonstrate that named Plaintiffs suffered an injury—*they intentionally define the class without reference to injury*.

6

Plaintiffs' allegations that they purchased pet food, even if true, would not satisfy the actual injury requirement of standing even if the manufacturers and sellers of that pet food were specifically identified. Federal courts have not hesitated to dismiss actions where plaintiffs' only alleged injury is the purchase of the product. In *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315 (5th Cir. 2002), the plaintiffs purchased a drug that later was viewed as responsible for the liver failure of a few individual long-term users. *Id*. at 317. The plaintiffs' complaint was filed on behalf of all patients who took the drug ***without*** suffering any physical or emotional injury. *Id*. The Fifth Circuit squarely rejected the plaintiffs' contention that their "loss of cash [wa]s an 'economic injury'" and ruled that the action did not "present a justiciable case or controversy under Article III." *Id*. at 319, 321 (reversing the district court). The court held that the plaintiffs had not alleged the requisite "injury-in-fact" because, although they claimed "economic injury" from purchasing the drug, the plaintiffs did not allege that the drug caused them physical or emotional injury, was ineffective, or caused any future health consequences for them. *Id*. at 320-21.

This Court has applied the reasoning of *Rivera* in dismissing a "misleading advertising" case for lack of standing. In *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329 (S.D. Fla. 2007), prescription drug users brought claims against a drug manufacturer, alleging no injury other than so-called "price inflation" based on misleading advertising. *Id*. at 1334-36. Faced with nothing more than the plaintiffs' alleged purchase of the drug and resultant claims of economic injury, the Court could not "come up with any theory upon which [the plaintiffs were] actually injured or aggrieved by the allegedly misleading advertisement." *Id*. at 1336. Consequently, they had no standing. *Id*.

In *Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24 (D.D.C. 2007), the court reached the same conclusion as the court in *Rivera* in holding that the plaintiff had no standing to assert claims for breach of implied warranty and violation of a consumer protection statute. *Id.* at 28-29. The plaintiff claimed that defendant Kentucky Fried Chicken ("KFC") engaged in false advertising by referring to its chicken as the "best food" and by not disclosing the existence of trans fats in its chicken. *Id.* at 26. Plaintiff sought to represent all persons who purchased any food from KFC that contained this undisclosed ingredient. Noting an "absence of any allegation of injury" in the complaint, however, the court held that the plaintiff had "no standing" to bring suit. *Hoyte*, 489 F. Supp. 2d at 28, 29. As with Plaintiffs here, the plaintiff's vague allegations in *Hoyte* of "economic injury" due to the purchase of food with an undisclosed ingredient did not suffice to confer standing. *Id.*

Like the plaintiffs in the "no injury" cases described above, Plaintiffs here allege various difficulties that some pets *could* conceivably encounter after ingesting certain foods, but completely fail to allege any actual injury that they or their pets *did* suffer from the use of any Defendant's products. Although they allege generally that each of them purchased various brands of pet food "in the group" of products made or sold by Defendants (Compl. ¶¶ 2-25), such broad assertions, devoid as they are of any allegation of actual injury, are as defective as the allegations in *Rivera* and *Hoyte*.[6] Additionally, as in *Prohias*, Plaintiffs cannot simply allege

---

[6]    Moreover, certain of Defendants' pet foods named in the Complaint are available exclusively through veterinarians and are only for use under veterinarian authorization and supervision – for example, Iams' Eukanuba Veterinary Diet and Hill's Prescription Diet pet foods ("veterinary foods") (Compl. ¶¶ 59, 68, 78-79, 80-82). But the Complaint fails to allege that any named Plaintiff ever purchased, used, or received veterinary authorization for these products. Without having purchased or used the veterinary foods, named Plaintiffs could not have been injured by them. Thus, it is inconceivable that named Plaintiffs could have

[Footnote continued on next page]

misleading advertisements and thereby obviate their obligation to allege injury resulting from those advertisements.

As they lack allegations of actual injury, all of Plaintiffs' claims should be dismissed for an absence of standing. *See Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 176-78 (D.D.C. 2003) (dismissing false advertising claims and holding that plaintiffs had no standing; concluding that plaintiffs lacked "particularized injury," even though they claimed economic damages from failure to receive advertised benefits of purchased drugs; agreeing with defendants that, without adverse health effects from drugs, plaintiffs must have received what they paid for). *See also, e.g., Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1017 (7th Cir. 2002) ("No injury, no tort, is an ingredient of every state's law[.]"); *Briehl v. GMC*, 172 F.3d 623, 627 (8th Cir. 1999) ("Courts have been particularly vigilant in requiring allegations of injury or damages in products liability cases.").

Lacking standing, named Plaintiffs also cannot assert claims for themselves or on behalf of a purported class.[7] *See, e.g., Griffin*, 823 F.2d at 1482 ("A named plaintiff in a class action

---

[Footnote continued from previous page]
standing to assert claims concerning these foods. *Church v. City of Huntsville*, 30 F.3d 1332, 1340 (11th Cir. 1994) (named plaintiffs had no standing to challenge an ordinance regulating homeless shelters, when they did not allege that they were staying at one of the shelters subject to ordinance but instead alleged generally that they had "no home or shelter"). Moreover, because veterinary offices sell regular pet food in addition to veterinary foods, Plaintiffs are not saved by their vague allegation that they purchased "pet food" from "veterinarian offices." (Compl. ¶ 66).

[7]    This defect is but one of many that would defeat class treatment here. For example, it would also be impossible to identify members of the proposed class, because the proposed class definition is impermissibly vague and would require this Court to examine the individual circumstances and mental state of each individual class member. Fundamentally, nothing ties together the wildly disparate claims asserted in the Complaint into common issues that makes this case suitable for class certification. Defendants reserve their rights to brief the inappropriateness of class treatment should the Complaint survive dismissal as a whole.

who cannot establish the requisite case or controversy between himself and the defendants simply cannot seek relief for anyone – not for himself, and not for any other member of the class."); *Lynch v. Bexley*, 744 F.2d 1452, 1456 (11th Cir. 1984) ("If the named plaintiff seeking to represent a class fails to establish the requisite case or controversy, he may not seek relief on his behalf or on that of the class.").  Plaintiffs' vague references to putative class members' "pets' deaths and illnesses" (Compl. ¶ 252) and nonspecific allegations that certain such members "have now had to endure the costs associated with veterinarians, medicines, and treatments for their companion pets" (*id.* ¶ 259) thus do not suffice to confer standing, in the absence of factual allegations concerning any actual injuries suffered by any named Plaintiffs or their pets due to the actions of any Defendant.

Because Plaintiffs do not meet the threshold Article III standing requirements, the entire Complaint should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  *See Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 807 n.8, 811 (11th Cir. 1993) (affirming dismissal due to plaintiffs' "fail[ure] to establish an injury to themselves sufficient to confer standing" and noting that such failure left court without subject matter jurisdiction and required dismissal pursuant to Rule 12(b)(1)).  Plaintiffs would remain free to take advantage of the forums actually designed to address generalized grievances of this nature, including federal and state legislatures and administrative agencies.  Federal courts simply do not play this role.  *See, e.g., Williams*, 297 F. Supp. 2d at 178 (dismissing for lack of standing and explaining that "the invasion of a purely legal right without harm to the consumer – in this case, to freedom from alleged false and misleading advertising – can be addressed through the administrative process").

## II.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO ALLEGE THAT THEY WERE HARMED BY AN ACT OR OMISSION OF ANY OF THE DEFENDANTS.

The absence of injury and causation allegations in the Complaint dooms it to dismissal under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure, as well. Moreover, these Rules bar the Complaint on a third ground: Plaintiffs have failed to plead that the named Plaintiffs personally relied on a particular Defendant's advertisements or statements.

In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the Supreme Court recently heightened the pleading requirements under both of these Rules. The Court underscored that Rule 8(a)(2) imposes a threshold requirement that the necessary "'plain statement' possess enough heft to 'show that the pleader is entitled to relief.'" *Id.* at 1966. Consistent with this requirement, the Court further held that, to survive dismissal under Rule 12(b)(6), a complaint's factual allegations must now rise above the "speculative level" and "state a claim to relief that is *plausible on its face.*" *Twombly*, 127 S. Ct. at 1965, 1974 (emphasis added).

This Court has been quick to recognize the unmistakable consequence of the Supreme Court's guidance. In *Moore v. Miami-Dade County*, No. 06-22705, 2007 WL 2302481, *2 (S.D. Fla. July 18, 2007), this Court acknowledged that a complaint must go beyond proffering "mere labels and conclusions" and that, in the wake of *Twombly*, plaintiffs can only survive a motion to dismiss if they are able to "nudge [their] claims across the line from conceivable to plausible." *Id.* This Court should just as quickly recognize that, as demonstrated below, Plaintiffs' claims here do not reach even the "conceivable" level, much less the "plausible," and that their Complaint should consequently be dismissed.

**A.      The Complaint Fails to Link the Allegations of Any Specific Plaintiff
to Any Particular Defendant.**

As noted earlier, nowhere in the Complaint do Plaintiffs claim that any particular named

Plaintiff purchased pet food from a specific Defendant.  Although Rule 8 requires a "short and

plain statement" of Plaintiffs' claims, it "still requires a 'showing,' rather than a blanket

assertion, of entitlement to relief." *Twombly*, 127 S.Ct. at 1965 n.3.  At a minimum, "Rule 8(a)

. . . requires that a complaint against multiple defendants indicate clearly the defendants against

whom relief is sought and the basis upon which the relief is sought against the particular

defendants." *Yucyco, Ltd. v. Rep. of Slovn.*, 984 F. Supp. 209, 219–20 (S.D.N.Y. 1997)

(dismissing complaint) (citations and internal quotation marks omitted); *see also Mathews v.

Kilroe*, 170 F. Supp. 416, 417 (S.D.N.Y. 1959) ("To do less than [matching specific allegations

to specific defendants] is to cause an injustice to persons who are named as defendants in an

action.").  Furthermore, in cases that may be costly or time-consuming to litigate, "a district

court must retain the power to insist upon some specificity in pleading *before* allowing a

potentially massive factual controversy to proceed." *Twombly*, 127 S. Ct. at 1967 (emphasis

added) (quotations omitted); *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346–47

(2004).

Even under pre-*Twombly* law, courts recognized that when plaintiffs substitute mere

conclusory allegations for the specific allegations against specific defendants required by Rule

8(a)(2), dismissal is required under Rule 12(b)(6) as well.  *See Jackson v. BellSouth Telecomms.*,

372 F.3d 1250, 1263 (11th Cir. 2004) ("To survive a motion to dismiss [brought under Rule

12(b)(6)], plaintiffs must do more than merely state legal conclusions; they are required to allege

some specific factual bases for those conclusions or face dismissal of their claims."); *United

States ex rel Feingold v. Palmetto Gov't Benefits Adm'rs*, 477 F. Supp. 2d 1187, 1193 (S.D. Fla.

2007) (dismissing amended complaint with prejudice [pursuant to Rule 12(b)(6)] where plaintiff "tr[ied] to avoid dismissal by the inclusion of [a] conclusory statement").[8]

Although the first 25 paragraphs of the Complaint ostensibly set forth allegations concerning named Plaintiffs themselves, these paragraphs contain no specific allegations about Plaintiffs' purchase of pet food. Instead, the Complaint contains variations on the vague, nonspecific statement that "[Plaintiff] has purchased various brands of commercial [cat or dog] food over the [lifespan of his or her pet] *that are in the group of products* that were manufactured, marketed, produced, distributed, advertised and sold by the various Defendants during [the class period]." (Compl. ¶¶ 2–25, 176, 188, 257, 259 (emphasis added)). These boilerplate allegations are the only assertions *anywhere* in the Complaint that even purport to be Plaintiff-specific. These overly generalized allegations are so broad and uninformative that they do not even assert that any named Plaintiff purchased any of the brands of pet food at issue in this case. In the absence of specific allegations against particular Defendants, Plaintiffs' *en masse* criticisms of Defendants' products simply do not constitute legally cognizable claims sufficient to survive dismissal under Rule 12(b)(6). *See, e.g., Napier v. Osmose, Inc.*, 399 F. Supp. 2d 811, 814 (W.D. Mich. 2005) (dismissing complaint on grounds that "threshold requirement of any products liability action is identification of the injury-causing product and its

---

[8] Among the undersigned Defendants are four corporations that do not even produce or sell pet food – The Procter and Gamble Company, the Colgate-Palmolive Company, Nestle U.S.A., Inc., and Pet Supplies "Plus"/USA, Inc. Plaintiffs do not state claims against such entities, but instead define each "collectively" with separately incorporated related entities that do produce pet food. (*See* Compl. ¶¶ 27, 28 and 30). Because there are no substantive allegations concerning these three corporations, the Complaint is wholly deficient against them, apart from the basic pleading infirmity of the "failure to differentiate between defendants." *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1440 (M.D. Fla. 1998).

manufacturer" (internal quotations omitted)); *Prohias*, 485 F. Supp. 2d at 1333-34 (dismissing

fraud, unjust enrichment, and negligent misrepresentation claims where plaintiff health plan

failed to allege that it purchased defendant's product).

**B.      The Complaint Fails to Allege the Reliance or Causation Elements Necessary to Sustain Each Claim.**

Not one of Plaintiffs' ten causes of action is viable without allegations of reliance and

causation.[9] Counts I through V each assert some type of fraud or misrepresentation claim, all of

which require a Plaintiff's allegation of detrimental reliance on a Defendant's alleged

misrepresentations in order to demonstrate a causal link.  Similarly, Counts VI and VII and

Counts X through XII each assert claims that require allegations of harm to Plaintiffs'

"companion pets" caused by specified Defendants' products.

Plaintiffs fail to plead reliance adequately.  *Simon v. Celebration Co.*, 883 So.2d 826, 832

(FLA 5th DCA 2004) (fraud-based claims such as fraudulent inducement and negligent

misrepresentation demand allegations that plaintiff relied on defendant's false statement); *see*

*also* APP. A, "Elements of Reliance and Causation under Florida and Michigan Laws."  Nowhere

in the Complaint do they allege that any particular Plaintiff was aware of any particular allegedly

misleading statement, or that any specific Plaintiff purchased any particular Defendant's

products in reliance on such representations.  As noted above, Plaintiffs merely allege that each

of them "purchased *various brands* of commercial [cat or dog] food . . . that are *in the group of*

*products* that were manufactured, marketed, produced, distributed, advertised and sold *by the*

---

9    The relevant laws of Michigan and Florida, home to four named Plaintiffs, require the elements of reliance and causation and are detailed, in **Appendix A** to this Motion, by way of example.  Defendants employ appendices in order to set forth necessary citations to the applicable laws of multiple jurisdictions without unduly lengthening the substantive discussion in this brief.

*various Defendants.*" (*See, e.g.*, Compl. ¶ 2 (emphasis added)). Such broad allegations shed no

light on any particular Plaintiff's reasons for making the alleged purchase and come nowhere

close to the necessary showing of reliance.

Plaintiffs fare no better in pleading causation. Having alleged no actual injury to either

themselves or their pets (*see* Section I) and having alleged no specific connection between

particular Plaintiffs and particular Defendants (*see* Section II.A), Plaintiffs necessarily fail to

allege a sufficient causal nexus between any specific actions attributed to any Defendants and

any alleged injury to Plaintiffs' pets. While the Complaint makes conclusory allegations that

other people's pets have been harmed by certain (often undefined) products sold or manufactured

by Defendants (*see, e.g.*, Compl. ¶¶ 140-52), there is not one single allegation suggesting that

any of Plaintiffs' pets have been harmed by (or that they even consumed) any specific product

manufactured or sold by any Defendant. *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 263

(S.D. Cal. 1988) (in denying class certification to plaintiff pet owners for injuries resulting from

alleged defect in defendant manufacturer's medicinal pet product, explaining that the "most

important" element of plaintiffs' negligence claim was proof that defendant's actions

"proximately caused the plaintiffs' varying injuries" (citation omitted)); *see also* **APP. A.**

The absence of these requisite elements is no mere technical deficiency. As the Supreme

Court emphasized in *Twombly*, 127 S. Ct. at 1965, a plaintiff's obligation under Rule 8 "to

provide the grounds of his entitlement to relief requires more than labels and conclusions, and *a*

*formulaic recitation of the elements of a cause of action will not do*" (emphasis added, internal

quotation marks omitted). When Plaintiffs allege that a named Plaintiff "was induced by the

Defendants['] representations and marketing materials on the internet, on television, in print, in

retail stores at point of purchase and on bags, pouches and cans to buy the Defendants'

commercial pet food" (*e.g.*, Compl. ¶ 2), they attempt to evade their obligation to plead reliance with just such a formulaic recitation. Equally empty are Plaintiffs' attempts to plead causation with the bare and conclusory allegations that "[a]s a direct and proximate result of Defendants' [activities], the Plaintiffs/Class Representatives and the Class have suffered damages." (*See, e.g.*, Compl. ¶ 179.). *See Haun v. Don Mealy Imports, Inc.*, 285 F. Supp. 2d 1297, 1307, 1309-10 (M.D. Fla. 2003) (granting Rule 12(b)(6) motion; explaining that conclusory allegation of "'direct and proximate result'" did not "state the elements of harm and causation, essential to his claim").

Failure to allege facts supporting the necessary reliance and causation elements requires dismissal. *See, e.g., Williams*, 297 F. Supp. 2d at 177 (plaintiffs who alleged that defendants had engaged in false advertising but did not plead that they "were in any way deceived—or even saw—any of that advertising" failed to state claim). As noted above, such failure cannot be remedied through conclusory allegations that Plaintiffs were *en masse* "induced by the Defendants['] representations and marketing materials." *(e.g.*, Compl. ¶ 2). Further, aside from the question of whether any defendant even engaged in any wrongdoing, lack of causation will defeat a claim even where the defendant engaged in "obviously false advertising" (which these Defendants did not). *See Himes v. Brown & Co.*, 518 So. 2d 937, 938 & n.1 (Fla. 3d DCA 1987).

## III.    EACH COUNT ALLEGED IN THE COMPLAINT WARRANTS DISMISSAL ON INDEPENDENT GROUNDS.

### A.    Plaintiffs' Fraud-Based Claims (Counts I-V) Are Not Alleged with Sufficient Particularity.

Because, as discussed above, Plaintiffs' Complaint fails to meet even the standard pleading requirements, it necessarily fails to meet the heightened pleading standards of Rule 9(b)

Case No. 07-21221-CIV-Altonaga

of the Federal Rules of Civil Procedure for the five fraud-based causes of action: fraudulent

misrepresentation (Count I); fraud in the inducement (Count II); negligent misrepresentation

(Count III); violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA")

(Count IV); and violation of Florida's false advertising statute (Count V).[10]

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances

constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).[11] These

requirements are designed "to protect defendants from frivolous suits, or 'spurious charges of

. . . fraudulent behavior.'" *Box Office Entertainment, LLC v. Brian D. Gordon, CPA, P.A.*, No.

05-21010, 2007 WL 1362898, *7 n.3 (S.D. Fla. May 9, 2007) (quoting *United States v. Lab.*

*Corp. Am. Inc.*, 290 F.3d 1301, 1313 n.24 (11th Cir. 2002)). The Eleventh Circuit has explained

that Rule 9(b) requires that complaints asserting fraud-based causes of action set forth "(1) the

precise statements, documents, or misrepresentations made; (2) the time, place, and person

responsible for the statement; (3) the content and manner in which these statements misled the

Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross &*

---

10  The law is clear that each of these causes of action must satisfy the heightened pleading
    requirements of Rule 9(b). *See, e.g., Box Office Entertainment, LLC v. Brian D. Gordon,*
    *CPA, P.A.*, No. 05-21010, 2007 WL 1362898, *7 (S.D. Fla. May 9, 2007) (granting Rule 9(b)
    motion to dismiss claims for fraud and negligent misrepresentation); *Stires v. Carnival Corp.*,
    243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002) (granting Rule 9(b) motion to dismiss
    FDUTPA claim); *Flamenbaum v. Orient Lines, Inc.*, No. 03-22549, 2004 WL 1773207 *5
    (S.D. Fla. July 20, 2004) (granting a Rule 9(b) motion to dismiss fraud in the inducement
    claim), *Smith v. Mellon Bank*, 957 F.2d 856, 858 (11th Cir. 1992) (affirming directed verdict,
    and holding claim under Florida's false advertising statute requires pleading the same
    elements as fraud in the inducement).

11  A number of state consumer protection statutes impose this heightened pleading standard for
    fraud claims as well. *See* **APP. B**, "State Consumer Protection Statutes."

Case No. 07-21221-CIV-Altonaga

*Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380 (11th Cir. 1997).[12]  In short, Plaintiffs must

"allege the 'who, what, where, when and how' to survive a motion to dismiss." *Anderson v.*

*Smithfield Foods, Inc.*, 207 F. Supp. 2d 1358, 1362 (M.D. Fla. 2002).  Thus, it is axiomatic that

"[p]laintiffs [cannot] simply lump[] together all [defendants] in their allegations of fraud[;]"

rather, a complaint must reasonably notify each defendant of the specific nature of his or her

alleged participation in the fraud. *Brooks*, 116 F.3d at 1381.

The Complaint here is deficient under Rule 9(b) standards on several fronts. <u>First</u>, it fails

to identify (a) what particular statements were allegedly fraudulent; (b) which Defendants

allegedly made these statements; (c) to which Plaintiffs the statements were allegedly made; and

(d) when and in what manner the statements were allegedly made.  <u>Second</u>, it fails to allege that

any Plaintiffs saw, heard, or read any particular statements made by any Defendant, or that any

such statement played any role in any Plaintiff's decisions to purchase any Defendant's product.

<u>Third</u>, it contains none of the particularized allegations necessary to establish whether and how

---

12  These heightened pleading requirements are consistent with the basic elements Plaintiffs
must allege for each of the five fraud-based claims. *See, e.g., Box Office*, 2007 WL 1362898,
*7 (elements of a claim for fraudulent misrepresentation are (a) a false statement concerning
a material fact, (b) the representor's knowledge that the representation is false, (c) an
intention that the representation induce another to act on it, and (d) consequent injury by the
party acting in reliance on the representation); *Biscayne Investment Group, Ltd. v. Guarantee
Mgmt. Svcs., Inc.*, 903 So.2d 251, 255 (Fla. 3d DCA 2005) (claim for fraudulent inducement
requires plaintiff to prove same elements); *Atlantic Nat'l Bank of Fla. v. Vest*, 480 So. 2d
1328, 1331-32 (Fla. 2d DCA 1985) (negligent misrepresentation demands the same, except
that the representor must know of the misrepresentation, must make the representation
without knowledge as to its truth or falsity, or must make the representation under
circumstances in which he ought to have known of its falsity); *Marino v. Home Depot U.S.A.,
Inc.*, No. 06-80343, 2007 WL 201260, *7 (S.D. Fla. Jan. 24, 2007) (claim under FDUTPA
requires proof of (a) a deceptive act or unfair practice, (b) causation, and (c) actual damages);
*Smith v. Mellon Bank*, 957 F.2d 856, 858 (11th Cir. 1992) (claim under Florida's false
advertising statute requires basic elements of fraud plus reasonable reliance); *Rollins, Inc. v.
Butland*, 951 So. 2d 860, 877 (Fla. 2d DCA 2006) ("[M]isleading advertising is a
particularized form of fraud.").

Plaintiffs were harmed by the alleged fraud. Instead, the Complaint contains only vague and conclusory allegations that sweep in virtually the entire pet food industry. This is just the sort of pleading Rule 9(b) is designed to protect defendants against. *See Lab. Corp.*, 290 F.3d at 1313 ("If Rule 9(b) is to carry any water, it must mean that an essential allegation and circumstance of fraudulent conduct cannot be alleged in such conclusory fashion"). Accordingly, Counts I-V should be dismissed.

### 1. The Complaint Fails to Identify "Who" Did "What" to "Whom" and "When."

Nowhere in the 548 pages of the Complaint and its exhibits is the required factual description of a single, specific allegedly fraudulent act that meets the requirements of Rule 9(b). Plaintiffs make the deliberate choice *not* to identify any specific statement made by any Defendant to any Plaintiff, but instead to lump together all Defendants and all Plaintiffs. The Complaint depends almost entirely on improperly general descriptions of "industry practices" and suppositions about how such practices affect "consumers" in general. (*See, e.g.*, Compl. ¶ 64 ("the pet food industry . . . deliberately and intentionally capitalizes on the[] emotional bonds [between pet owners and pets] through 'humanization'").)[13] The only specific statements identified in the Complaint – consisting of web-site printouts and sample packaging for a few specific products manufactured by some of the various Defendants and photos purportedly of

---

[13]  *See also, e.g.,* Compl. ¶ 55 ("The Defendants' marketing leads consumers to believe that their pet food has choice chunks of chicken, beef, fresh fish, whole stalks of grains, other human-quality food ingredients and all of the other nutrients that a cat or dog needs to lead a healthy and happy life."); *id.* ¶ 65 ("The Defendants sell billions of dollars of commercial pet food to consumers who believe that they are feeding a balanced, healthy, human-like diet to their companion cats and dogs[.]"); *id.* ¶ 68 ("The Defendants' pet foods . . . are intentionally named to lead *consumers* to believe that they are wholesome, nutritional, natural, are healthy and/or provide health, medical, dental and other benefits for cats and dogs.") (emphases added).

sample in-store marketing at unidentified retail outlets (*see* Compl. ¶¶ 66-97, Exs. 1-44) – are not alleged to have been communicated to any particular Plaintiff.[14]  Moreover, the Complaint fails to allege that any specific statement is in fact false or misleading.  In resting solely on allegations about the manufacturing practices of the "pet food industry" as a whole, the Complaint fails to set forth any facts about the manufacturing practices of any particular Defendant, or about the quality or contents of pet food products they manufactured and sold.  (*See* Compl. ¶¶ 115-40 (describing alleged "pet food industry" manufacturing practices, not any actual practice of any individual defendant, and the alleged contents of "pet food," not of any particular product manufactured or sold by any particular Defendant)).  Finally, the Complaint is wholly devoid of any allegation as to when any fraudulent misrepresentations were made to each Plaintiff, the manner in which such misrepresentations were made, or the place where such misrepresentations were made.

This Court previously has rejected fraud claims for similar pleading deficiencies.  In *Flamenbaum v. Orient Lines, Inc.*, No. 03-22549, 2004 WL 1773207 (S.D. Fla. July 20, 2004), this Court dismissed, under Rule 9(b), claims of fraud in the inducement where the complaint simply alleged that misrepresentations had been made by the "defendants" and did not identify which parties were responsible for which alleged misrepresentations.  *Id.* at *6.  In addition, the Court found that the plaintiffs there had failed to allege particular facts establishing "the circumstances under which the alleged misrepresentations were made" and the manner in which

---

14  *See, e.g.*, Compl. ¶ 73 (marketing of Mars "Good Life Recipe" brand products is "designed to appeal to *consumers*[]"); *id.* ¶ 75 (marketing of Mars' "Pedigree" brand products leads *consumers* to believe…"); *id.* ¶ 80 (marketing of Colgate-Palmolive's "Science Diet®" and "Prescription Diet®" brand products "urges *consumers* to trust") (emphases added).

the statements at issue were misleading. *Id.* For the same reasons, the Court here should dismiss Counts I-V in the Complaint.

### 2. The Complaint Fails to Allege Any Facts Demonstrating That Any Plaintiff Relied on Any Defendant's Statements.

Plaintiffs' failure to allege a specific fraudulent act also dooms their Complaint because it makes it impossible for them to allege that they were misled by any Defendant or that those allegedly misleading statements played any role in their decisions to purchase any Defendants' products. Instead, the Complaint breezily alleges that "[i]n reliance upon the Defendants' misrepresentations and false statements (and in the absence of disclosure of health risks), Plaintiffs/Class Representatives and the Class purchased the Defendants' pet foods for their companion pets" (*see, e.g.*, Compl. ¶ 176) and that "[a]s a direct and proximate result . . . Plaintiffs/Class Representatives and the Class have suffered damages." (*See, e.g., id.* ¶ 179). Yet the Complaint fails to allege *any* facts (let alone the particular facts required under Rule 9(b)) that establish that any Plaintiff actually saw, read, or heard any statement by any Defendant about one of its products that led Plaintiff to purchase that product. (*See id.* ¶¶ 72-97).[15] Having failed to allege the basic facts about any particular transaction, Plaintiffs do nothing more than offer wholly conclusory statements about why, how, and even whether they would have altered their purchasing decisions in the absence of Defendants' alleged misrepresentations. (*See, e.g., id.* ¶ 176).

---

[15] Plaintiffs' allegations refer to "consumers" who were allegedly misled; they do not identify how any particular named Plaintiff was misled. *See, e.g.*, Compl. ¶ 65 ("While the Defendants manufacture, distribute, market, advertise and sell these commercial pet foods as 'complete,' 'wholesome,' 'human-like,' medical and 'nutritional' diets with other benefits to prey upon the emotional bonds that *consumers* have for their companion dogs and cats, the matter contained in bags, pouches and cans is instead wholly or partially the product of recycling the inedible garbage of the human food industry.") (emphasis added).

The law is clear that fraud-based claims cannot survive a Rule 9(b) motion to dismiss where plaintiffs do not specify how they were misled. *See, e.g., In re Managed Care Litig.*, 150 F. Supp. 2d 1330, 1347 (S.D. Fla. 2001) (dismissing claims where plaintiffs failed to "fully identify which materials were received or which advertisements were actually viewed and relied upon by the individual plaintiffs"); *Berenguer v. Warner-Lambert Co.*, No. 02-05242, 2003 WL 24299241, *2 (Fla. Cir. Ct. July 31, 2003) (dismissing FDUTPA claim where plaintiffs "[did] not allege that they saw any of the advertisements . . . let alone that they saw an alleged misrepresentation in an advertisement that caused them to purchase [defendant's products]").[16] Accordingly, Plaintiffs' fraud-based claims do not withstand scrutiny under Rule 9(b).

### 3. The Complaint Fails to Allege That Plaintiffs Suffered Harm As a Result of Any Fraudulent Statement.

Plaintiffs also have failed to set forth any facts showing they were harmed as a result of any allegedly false or misleading statements by any Defendant. As discussed in Sections I and II above, Plaintiffs' Complaint offers only conclusory statements to the effect that "Plaintiffs

---

[16] As discussed above, Plaintiffs do not advise the Court or Defendants what representations are alleged to have misled whom. To the extent that they complain of Defendants touting their product as "healthiest and best tasting," of "world-class quality," having the "Best Nutrition" and "Great Taste" and the like (*see, e.g.*, Compl. ¶¶ 72, 79, 80, 84, 85), however, they cannot state a claim. As a matter of law, such statements are too subjective to support a misrepresentation claim. *See, e.g., Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674, 686 (5th Cir. 1986) (vacating the verdict and judgment and directing the district court to dismiss the complaint, which involved such claims as "easy," "prime," "amazing," "perfect," "wonderful," and "excellent"); *Hoyte v. Yum! Brands, Inc.*, No. 06-1127, 2007 WL 1302590, *4 (D.D.C. May 2, 2007) (noting that restaurant's claim to serve the "best food" is non-actionable puffery); *Fraker v. KFC Corp.*, No. 06-CV-01284-JM, 2007 WL 1296571, *3 (S.D. Cal. Apr. 30, 2007) (dismissing as non-actionable the phrases "best food," "only the highest quality ingredients," and "innovative recipes," among others); *Tylka v. Gerber Prods. Co.*, No. 96-C-1647, 1999 WL 495126, *8 (N.D. Ill. July 1, 1999) (granting summary judgment because "'optimum nutrition' . . . or 'the most wholesome nutritious safe foods you can buy anywhere in the world' add little to the daily informational barrage to which consumers are exposed").

suffered damages" or "purchased pet foods," rather than providing any of the requisite factual support for those assertions. (*See, e.g.*, Compl. ¶¶ 176, 179). Such conclusory allegations are insufficient under even liberal pleading standards, much less under the more stringent standards of Rule 9(b). *See, e.g., Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002) (FDUTPA claim dismissed where plaintiff only alleged that she did not receive product promised to her).[17]

In sum, the Complaint consists of nothing more than overly broad generalities, lumping unique and differently-situated Defendants together in a one-size-fits-all complaint and wholly failing to apprise each Defendant of the particular acts of alleged fraud in which it is alleged to have engaged. For all of the reasons stated above, Counts I-V of the Complaint fail to meet the standards of Rule 9(b) and should be dismissed.

**B.    Counts I and II Are Duplicative.**

Because Plaintiffs' allegations are based on advertisements that purportedly induced the purchase of pet food, Count I (Fraudulent Misrepresentation and Concealment) and Count II (Fraud in the Inducement) are duplicative, and one of them must be dismissed. *See, e.g., True Title, Inc. v. Blanchard*, No. 6:06-cv-1871-Orl-19DAB, 2007 WL 430659, *4 (M.D. Fla. Feb. 5, 2007) (dismissing redundant and unnecessarily duplicative count); *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000) (dismissing duplicative claims).

---

17  *See also Haun*, 285 F. Supp. 2d at 1307 ("[B]ecause Plaintiff fails to allege *how* he was 'aggrieved by' Defendant's acts, he fails to state the elements of harm and causation, essential to his claim. ... Though pleading rules are liberal, conclusory statements of 'direct and proximate result' do not state an element.") (emphasis in original).

C.    **Plaintiffs' Consumer Protection Act Claim (Count IV) Fails to State a Claim.**

Count IV of Plaintiffs' Complaint alleges that Defendants have violated state consumer protection statutes "in the advertising, marketing, distribution, and sale of Defendants' pet foods regarding the nutritional, health and other benefits and/or of the safety of same." (Compl. ¶ 205).[18] Plaintiffs' allegations are defective for two reasons: First, as discussed above, Plaintiffs have failed to plead causation sufficiently. Second, Plaintiffs complain of marketing language that is specifically authorized by the Association of American Feed Control Officials ("AAFCO")[19] and by state law incorporating AAFCO's standards. Accordingly, their challenges to such language and to the AAFCO standards cannot state a claim under the consumer protection statutes of Florida and many other potentially involved states that exempt conduct that complies with state or federal law.

Plaintiffs allege as unfair trade practices (1) Defendants' representations that its products are "'complete and balanced nutrition,' 'perfect,' 'natural,' 'veterinarian recommended,' and guaranteed'" (Compl. ¶ 66); and, (2) the use of certain ingredients in pet food and the

---

18  Count IV is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201 ("FDUTPA"). But perhaps recognizing that FDUTPA can be applied only to protect **Florida** residents, *see Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 228-29 (S.D. Fla. 2001), Plaintiffs' complaint, via a footnote, also alleges violations of "other state deceptive trade practice laws of the various states where Class members reside." (Compl. p. 84, n. 20).

19  As explained by the FDA, "AAFCO is composed of state, federal, and international regulatory officials who are responsible for the enforcement of state laws regulating the safe production and labeling of animal feed, including pet food. FDA and AAFCO work together in the area of feed regulation, particularly in the establishment of definitions to describe new feed ingredients." (U.S. Food and Drug Administration, "CVM and Animal Food, Feed Ingredients, and Additives," attached as Ex. 47 to Complaint).

descriptions of those ingredients on product labels and in advertisements. *Id.* ¶¶ 115-131. As

Plaintiffs recognize (*id.* ¶¶ 109-114), however, these descriptive terms and ingredients are

defined by regulations promulgated by AAFCO. Each year, AAFCO publishes its Official

Publication, which includes (1) model regulations for pet food, (2) a list of accepted feed

ingredients, which may be set forth as such on the product label, and (3) nutrient profiles or

feeding trial protocols that must be met before a manufacturer can make claims that a product is

"complete," "balanced," "100% nutritious," or other similar claims. (*See* FDA, "Selecting

Nutritious Pet Foods," attached as Ex. 53 to Complaint).

Florida has adopted AAFCO's definitions of feed ingredients and the AAFCO minimum

nutritional requirements, and it *mandates* that feed suppliers use the AAFCO names and

definitions. FLA. ADMIN. CODE 5E-3.004(1), 5E-3.013. The other states in which Plaintiffs

reside also have incorporated AAFCO regulations, to varying degrees. (*See* **APP. C.**) While

Plaintiffs may object to the use of these ingredients in food for their pets, or to the components

that AAFCO allows to be included in those ingredients, Plaintiffs have *not* alleged that

Defendants' ingredients did not meet AAFCO's definitions. As Plaintiffs concede in their

Complaint, "[i]f a food has met either AAFCO requirement, it may state on the label that the

food is 'complete and balanced.'" (Compl. ¶ 114). Plaintiffs apparently do not like the use of

these definitions and descriptions, but they do *not* argue that any Defendant failed to meet the

necessary AAFCO requirements for use of these phrases.

Because Defendants' labeling practices are required or specifically permitted by state law

– namely, the AAFCO regulations that Florida and other states have adopted – Plaintiffs' claims

under the consumer protection statutes must be dismissed. FDUTPA does not apply to "an act or

practice required or specifically permitted by federal or state law." Fla. Stat. § 501.212(1); *3B*

25

Case No. 07-21221-CIV-Altonaga

*TV, Inc. v. State,* 794 So. 2d 744, 747-48 (Fla. 1st DCA 2001). *See also, e.g., Eirman v. Olde Discount Corp.,* 697 So. 2d 865, 866 (Fla. 4th DCA 1997); *Berenguer v. Warner-Lambert Co.,* No. 02-05242, 2003 WL 24299241, *3 (Fla. Cir. Ct. July 31, 2003). A number of other potentially applicable state consumer protection statutes likewise do not apply to transactions or conduct authorized by state or federal law (*See* **APP. D**). In this case, the transaction at issue is the labeling of commercial pet food. As detailed above, applicable state laws adopt AAFCO definitions of feed ingredients, prescribe the information contained on commercial pet food labels, regulate the brand and product names on commercial pet food labels, and incorporate AAFCO standards for uses of the terms "complete, perfect, scientific, or balanced" and "meat" and "meat-by-products." Plaintiffs have not alleged that any Defendant violated any of the applicable FDA or AAFCO regulations (as incorporated by state law), much less that any such violation injured a Plaintiff. Therefore, Defendants' actions are exempted by the safe harbor provisions of the FDUTPA and other state consumer protection statutes, and Plaintiffs cannot state a cause of action under the FDUTPA – and many of the other potentially applicable state laws. For this independent reason, Count IV should be dismissed.[20]

---

[20] Courts have not hesitated to dismiss consumer protection act claims for failure to state a claim – at the pleading stage – where consumer protection act claims allege practices that are governed by a separate state or federal law. *See, e.g., McLiechy v. Bristol West Ins. Co.,* 474 F.3d 897 (6th Cir. 2007) (affirming dismissal of Michigan Consumer Protection Act claim where challenged transactions were subject to Insurance Code); *McEntee v. Incredible Techs., Inc.,* No. 263818, 2006 WL 659347 (Mich. App. Mar. 16, 2006) (consumer protection act claims dismissed where challenged products – arcade games – were governed by separate gaming act).

Case No. 07-21221-CIV-Altonaga

**D.    The Economic Loss Rule Bars Plaintiffs' Claims for Negligence (Count VI) and Negligence Per Se (Count VII).**

The economic loss rule also bars Plaintiffs' claims for negligence (Count VI) and

negligence per se (Count VII).  The Supreme Courts of Florida and Michigan, for example, have

held that the economic loss doctrine bars negligence actions "when there is a defect in a product

that causes damage to the product but causes no personal injury or damage to other property."

*Indemnity Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004); *Neibarger v.*

*Universal Coops.*, 486 N.W.2d 612, 618 (Mich. 1992) "where a plaintiff seeks to recover for

economic loss caused by a defective product purchased for commercial purposes, the exclusive

remedy is provided by the UCC").  The rule applies either where the parties are in contractual

privity or where the defendant is a manufacturer or distributor of a product, and it is intended to

"prevent parties to a contract from circumventing the allocation of losses set forth in the contract

by bringing an action for economic loss in tort." *Indemnity Ins. Co. N. Am.*, 891 So. 2d at 536.

Thus, where a plaintiff can do no more than claim "disappointed economic expectations," as is

the case here, the economic loss rule precludes a claim of negligence. *Casa Clara Condo. Ass'n,*

*Inc. v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244, 1246 (Fla. 1993) (internal citation and

quotation omitted).

Here, as discussed above, Plaintiffs fail to allege that any of their pets was harmed in any

way by any Defendant's pet food.  Plaintiffs seek damages on behalf of themselves and a class

related solely to their alleged purchase of pet food that allegedly did not meet their expectations.

(Compl. ¶¶ 2-25, 159).  Plaintiffs' Complaint does no more than claim "disappointed economic

expectations" -- the "quintessential" losses that the economic loss rule prohibits a party from

recovering under a negligence theory. *Casa Clara Condo.*, 620 So. 2d at 1246 (internal citation

Case No. 07-21221-CIV-Altonaga

and quotation marks omitted). Thus, Plaintiffs' claims of negligence and negligence per se

(Counts VI and VII) are barred by the economic loss rule and should be dismissed.

> **E.**      **Because Plaintiffs' Negligence Per Se Claim Is Based on Statutes That Do Not Provide For a Private Cause of Action, It Should Be Dismissed.**

Plaintiffs' negligence per se claim (Count VII) is fatally flawed on still further grounds

because it is based on statutes that do not provide for a private cause of action.

In *Blinn v. Smith & Nephew Richards, Inc.*, 55 F. Supp. 2d 1353 (M.D. Fla. 1999), the

court held that a negligence per se claim is not available to a plaintiff alleging violations of FDA

regulations or the Federal Food, Drug and Cosmetic Act (the "FDCA"). *Id.* at 1361. As the

court recognized, liability under Florida law for statutory violations depends on legislative intent.

Citing to *Murthy v. N. Sinha Corp.*, 644 So. 2d 983, 985 (Fla. 1994), the court explained that "in

the absence of evidence of a legislative intent to create a private cause of action, violation of a

statute creates no civil liability" under Florida law. According to the court, the FDCA "expressly

prohibits private claims for violations . . . strongly evidencing a legislative intent not to create a

private cause of action." 55 F. Supp. 2d at 1361; *see also Stevens v. Danek Med., Inc.*, No. 95-

14293-CIV-PAINE, 1999 WL 33217282, **5-6 (S.D. Fla. April 16, 1999) (dismissing plaintiff's

negligence per se claims based on alleged violations of the FDCA and stating that "Florida

courts have refused to recognize a private right of action for negligence per se based on an

alleged violation of a federal statute that does not provide for a private right of action.").

Plaintiffs' claim for negligence per se is based entirely on allegations that Defendants

have breached their obligations under 21 U.S.C. § 343, 9 C.F.R. 355.52, 59 and related

regulations. (*See* Compl. ¶ 232). Therefore, because the FDCA does not provide for a private

cause of action, Count VII must be dismissed.

**F.      Plaintiffs' Warranty Claims (Counts X and XI) Must Be Dismissed Because Plaintiffs Fail to Allege Privity.**

"[T]o recover for breach of a warranty, either express or implied, the plaintiff must be in privity of contract with the defendant." *T.W.M. v. Amer. Medical Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995). As courts consistently have recognized, "[a] warranty, whether express or implied, is fundamentally a contract. A contract cause of action requires privity." *Elizabeth N. v. Riverside Group, Inc.*, 585 So. 2d 376, 378 (Fla. 1st DCA 1991); *see also Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37, 39 (Fla. 1988) (noting that Florida Supreme Court has "abolished" cause of action for warranty where there is no privity).

**1.      Plaintiffs Fail to Allege Facts Establishing Privity With Regard to Any Defendant.**

Plaintiffs' breach of warranty claims (Counts X and XI) should be dismissed against all undersigned Defendants for failure to plead facts establishing the essential element of privity. In *Jacobs v. Osmose, Inc.*, No. 01-944-CIV, 2002 WL 34241682 (S.D. Fla. Jan. 3, 2002), a plaintiff filed a class action against manufacturers and retailers of pressure-treated wood alleging, among other claims, breach of implied warranty. The plaintiff, who was the sole putative class representative, alleged that he "had during the Class Period installed, constructed and/or existing upon his property a deck made of treated wood purchased at one of the retail defendants." *Id.* at *1. Because the court in *Jacobs* found it "difficult to determine from the Complaint whether [the plaintiff] even purchased any of the manufacturer defendants' products and from which retail stores such products were purchased," the court dismissed the breach of implied warranty claim, concluding that the complaint contained "no factual allegations showing privity of contract between [the plaintiff] and the Defendants." *Id.* at *5.

Similarly, in this case, Plaintiffs allege warranty claims against Defendants without attributing any of their alleged pet food purchases to a specific Retail Defendant. Like the vague allegations in *Jacobs* that the plaintiff had purchased wood products "at one of the retail defendants," the allegations in the Complaint merely refer to Plaintiffs' "various" purchases of "various" brands from a "group of products" from "various" Defendants. (*See* Compl. ¶¶ 2-25). The allegations in Count X and XI not only are insufficient to establish privity, but they also make it impossible to determine which warranties, if any, were made to Plaintiffs. Such pleading epitomizes the "improper lumping" this Court condemned in *Flamenbaum*, 2004 WL 1773207, *6. Because neither this Court nor any Defendant can identify which Plaintiffs purchased products from which Defendants, Plaintiffs cannot establish the requisite privity, and Counts X and XI of the Complaint should be dismissed with respect to all undersigned Defendants. *See Jacobs*, 2002 WL 34241682, *5.[21]

### 2. Plaintiffs Cannot Allege Privity With Respect to the Manufacturer Defendants

Even if Plaintiffs could identify specific purchases from one or more of the Retail Defendants, Plaintiffs would not thereby establish privity with the Manufacturer Defendants because a buyer has privity only with the particular Defendant from whom he or she ***directly*** purchases a product. *See T.W.M.*, 886 F. Supp. at 844 ("A plaintiff who purchases a product, but does not buy it *directly* from the defendant, is not in privity with that defendant.") (emphasis added); *Tolliver v. Monaco Coach Corp.*, No. 8:06-cv-856, 2006 WL 1678842, *2 (M.D. Fla. June 16, 2006) ("[P]rivity is required even if a suit is brought against a manufacturer.").

---

[21] Plaintiffs apparently wish to apply "other state breach of warranty laws of the various states where Class members reside." (Compl. n. 28 and 29.) However, such application does not save their claims. *See* **App. E**, "Breach of Warranty."

Applying this rule, courts consistently dismiss warranty claims brought by consumers against manufacturers from which they did not directly purchase the product. *See Montgomery v. Davol, Inc.*, No. 3:07cv176, 2007 WL 2155644, *2 (N.D. Fla. July 24, 2007) (dismissing a breach of implied warranty claim because there was "no claim that the defendants sold [the product] ***directly*** to the plaintiffs") (emphasis in original); *T.W.M.*, 866 F. Supp. at 844; *Tolliver*, 2006 WL 1678842, *2. Since Plaintiffs do not and cannot allege that they made any direct purchases from any of the Manufacturer Defendants, Plaintiffs' warranty claims against these Defendants fail as a matter of law and should be dismissed with prejudice.

### G.    Plaintiffs' Unjust Enrichment Claim (Count XII) Should Be Dismissed For Failure to State a Legally Cognizable Claim.

Unjust enrichment is an equitable cause of action. *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (11th Cir. 1999) (applying Florida law). As such, it may only be invoked in the absence of an adequate legal remedy. *Bowleg v. Bowe*, 502 So. 2d 71, 72 (Fla. 3d DCA 1987); *Liza Danielle, Inc. v. Jamko, Inc.*, 408 So.2d 735, 738 (Fla. 3d DCA 1982); *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005). Plaintiffs plead causes of action sounding in fraud, negligence, and contract, as well as various statutory violations, seeking "actual damages" under each of these claims. Far from viewing legal remedies as inadequate, they seek them at every turn. Nowhere in the Complaint have Plaintiffs alleged the inadequacy or unavailability of such remedies. Consequently, the claim of unjust enrichment must be dismissed, pursuant to Rule 12(b)(6). *See, e.g., Court Appointed Receiver for Lancer Mgmt. Group LLC v. Taubman*, No. 05-60199-CIV, 2007 WL 984452, **2-3 (S.D. Fla. Mar. 27, 2007); *Am. Honda Motor Co.*, 390 F. Supp. 2d at 1178.

Furthermore, to state a claim of unjust enrichment, a complaint must allege that: 1) the defendant received a benefit from the plaintiff; 2) the defendant had knowledge of the benefit;

and 3) the defendant's retention of said benefit would be inequitable. *See, e.g., Della Ratta v. Della Ratta,* 927 So. 2d 1055, 1059 (Fla. 4th DCA 2006); *Shands Teaching Hosp. and Clinics, Inc. v. Beech St. Corp.,* 899 So.2d 1222, 1227 (Fla. 1st DCA 2005); *Timberland Consol. P'ship v. Andrews Land and Timber, Inc.,* 818 So.2d 609 (Fla. 5th DCA 2002). As discussed in Section II.A above, Plaintiffs' Complaint nowhere specifies which of Defendants' many products each Plaintiff purchased, when these purchases took place, where any such purchases were made, or on how many occasions such purchases were made. Consequently, it is impossible to determine which Retail Defendants, if any, a particular Plaintiff might have benefited. Further, Plaintiffs have not pleaded sufficient facts to establish that any of them directly conferred a benefit upon any of the Manufacturer Defendants who were not involved in retail sales. A bald allegation that such Defendants received an indirect benefit is insufficient to support a claim of unjust enrichment. *See, e.g., Tilton v. Playboy Ent. Group, Inc.,* No. 88:05-cv-692-T-30TGW, 2007 WL 80858, *3 (M.D. Fla. Jan. 8, 2007); *Huntsman Pkg. Corp. v. Kerry Pkg. Corp.,* 992 F. Supp. 1439, 1446 (M.D. Fla. 1998); *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla.,* 667 So.2d 876, 879 (Fla. 3d DCA 1996). Because Plaintiffs have not alleged that they conferred a benefit on any particular Defendant, there is no basis for Plaintiffs' general allegation that Defendants had knowledge of such a benefit. Therefore, the unjust enrichment claim must be dismissed pursuant to Rule 12(b)(6) for failure sufficiently to plead the necessary elements of the claim. *See, e.g., Tilton,* 2007 WL 80858, *3.

Finally, Plaintiffs improperly attempt to base their unjust enrichment claim on allegations of Defendants' general "wrongdoing." (Compl. ¶¶ 258-260). However, an unjust enrichment claim is not designed to remedy wrongdoing. Instead, the unjust enrichment claim is intended to provide a mechanism for plaintiffs who establish that a particular defendant possesses funds

which, despite the ***absence*** of wrongdoing, it nevertheless should not retain.  When plaintiffs ***do*** allege wrongdoing, they must address that wrongdoing with other causes of action designed for that purpose.  *See, e.g., Guyana Tel. & Tel. Co. v. Melbourne Intern.*, 329 F.3d 1241, 1245 n.3 (11th Cir. 2003) (noting that unjust enrichment "has in principle nothing to do with fault…[but] with wealth being in one person's hands when it should be another person's."); *Flint v. ABB, Inc.*, 337 F.3d 1326, 1330 n. 2 (11th Cir. 2003) ("The law of unjust enrichment is concerned solely with enrichments that are unjust ***independently*** of wrongs.") (emphasis in original); *State of Fla., Office of Atty. Gen. v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1309 (S.D. Fla. 2005) ("[A]s soon as a claimant relies on a wrong to supply the unjust factor, as . . . Plaintiffs do here, the right on which the right on which the plaintiff relies arises from that wrong, not from unjust enrichment.") (internal punctuation omitted).  By predicating their unjust enrichment claim on allegations of Defendants' wrongdoing, Plaintiffs misapprehend the nature of the cause of action and seek to introduce it in a set of circumstances to which it has no application.  The unjust enrichment claims should consequently be dismissed.

## CONCLUSION

For all the foregoing reasons, the undersigned Defendants respectfully move this Court to dismiss Plaintiffs' Corrected Amended Class Action Complaint in its entirety.

Case No. 07-21221-CIV-Altonaga

Respectfully submitted,

/s/ Marty Steinberg
Marty Steinberg
Florida Bar Number 187293
Adriana Riviere-Badell
Florida Bar Number 30572
**HUNTON & WILLIAMS**
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
Telephone: 305-810-2500
Fax: 305-810-2460
E-Mail: msteinberg@hunton.com
ariviere-badell@hunton.com


Charles H. Abbott
Gail E. Lees
Gary L. Justice
William Edward Wegner
**GIBSON DUNN & CRUTCHER**
333 S. Grand Avenue, Suite 4600
Los Angeles, CA 90071-3197
Telephone: 213-229-7000
E-Mail: cabbott@gibsondunn.com
glees@gibsondunn.com
gjustice@gibsondunn.com
wwegner@gibsondunn.com


*Attorneys for Nutro Products, Inc.*

By: /s/ Carol A. Licko
Carol A. Licko
Florida Bar Number 435872
**HOGAN & HARTSON L.L.P.**
Mellon Financial Center
1111 Brickell Avenue, Suite 1900
Miami, Florida 33131
Telephone: 305-459-6500
Fax: 305-459-6550
E-Mail: calicko@hhlaw.com


Craig A. Hoover
Miranda L. Berge
**HOGAN & HARTSON L.L.P.**
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone: 202-637-5600
Fax: 202-637-5910
E-Mail: cahoover@hhlaw.com
mlberge@hhlaw.com


Robert C. Troyer
**HOGAN & HARTSON L.L.P.**
1200 17th Street
One Tabor Center, Suite 1500
Denver, CO 80202
Telephone: 303-899-7300
Fax: 303-899-7333
E-Mail: rctroyer@hhlaw.com


*Attorneys for Nestle USA, Inc. and
Nestle Purina Petcare Co.*

34

Case No. 07-21221-CIV-Altonaga

/s/ Omar Ortega
Omar Ortega
Florida Bar Number 0095117
**DORTA & ORTEGA, P.A.**
800 S. Douglas Road
Douglas Entrance Suite 149
Coral Gables, FL 33134
Telephone: 305-461-5454
Fax: 305-461-5226
E-Mail: ortegalaw@bellsouth.net

Dane H. Butswinkas
Philip A. Sechler
Thomas G. Hentoff
Christopher M. D'Angelo
Patrick J. Houlihan
**WILLIAMS & CONNOLLY**
725 12th Street, NW
Washington, DC 20005-3901
Telephone: 202-434-5000
E-Mail: cdangelo@wc.com
dbutswinkas@wc.com
phoulihan@wc.com
psechler@wc.com
thentoff@wc.com

*Attorneys for Mars, Incorporated and Mars
Petcare U.S., Inc.*

Case No. 07-21221-CIV-Altonaga

/s/ Alan G. Greer
Alan G. Greer
Florida Bar Number 123294
**RICHMAN GREER, P.A.**
201 S. Biscayne Blvd., Suite 1000
Miami, FL 33131
Telephone: 305-373-4000
Fax: 305-373-4099
E-Mail: agreer@richmangreer.com


D. Jeffrey Ireland
Brian D. Wright
Laura A. Sanom
**FARUKI IRELAND & COX P.L.L.**
10 North Ludlow Street
500 Courthouse Plaza, S.W.
Dayton, OH 45402
Telephone: 937-227-3710
Fax: 937-227-3717
E-Mail: djireland@ficlaw.com
bwright@ficlaw.com
lsanom@ficlaw.com

*Attorneys for Procter & Gamble Company
and The Iams Co.*

36

Case No. 07-21221-CIV-Altonaga

/s/ Benjamine Reid
Benjamine Reid
Florida Bar Number 183522
Olga M. Vieira
Florida Bar Number 999172
**CARLTON FIELDS, P.A.**
100 SE 2nd Street, Suite 4000
Miami, FL 33131-9101
Telephone: 305-530-0050
Fax: 305-530-0055
E-Mail: breid@carltonfields.com
ovieira@caroltonfields.com

James D. Arden
John J. Kuster
Kara L. McCall
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, NY 10019-6018
Telephone: 212-839-5300
Fax: 212-839-5889
E-Mail: jarden@sidley.com
jkuster@sidley.com
kmccall@sidley.com

*Attorneys for Colgate-Palmolive Company*
*and Hill's Pet Nutrition, Inc.*

37

Case No. 07-21221-CIV-Altonaga

/s/ Sherril M. Colombo
Sherril M. Colombo
Florida Bar Number 948799
**COZEN O'CONNOR**
200 S. Biscayne Blvd., Suite 4410
Miami, FL 33131
Telephone: 305-704-5940
Fax: 305-704-5955
E-Mail: scolombo@cozen.com

Richard Fama
John J. McDonough
**COZEN O'CONNOR**
45 Broadway
New York, NY 10006
Telephone: 212-509-9400
Fax: 212-509-9492
E-Mail: jmcdonough@cozen.com
rfama@cozen.com

John F. Mullen
**COZEN O'CONNOR**
1900 Market Street
3rd Floor The Atrium
Philadelphia, PA 19103
Telephone: 215-665-2179
E-Mail: jmullen@cozen.com

*Attorneys for Del Monte Foods, Co.*

Case No. 07-21221-CIV-Altonaga

/s/ Lonnie L. Simpson
/s/ S. Douglas Knox
Lonnie L. Simpson
Florida Bar Number 821871
S. Douglas Knox
Florida Bar Number 849871
**DLA PIPER LLP**
101 E. Kennedy Blvd., Suite 2000
Tampa, FL 33602
Telephone:  813-229-2111
Fax: 813-229-1447
E-Mail: lonnie.simpson@dlapiper.com
douglas.knox@dlapiper.com

Amy W. Schulman
Alexander Shaknes
**DLA PIPER LLP**
1251 Avenue of the Americas
New York, NY 10020-1104
Telephone: 212-335-4829
E-Mail: amy.schulman@dlapiper.com
alex.shaknes@dlapiper.com

William C. Martin
**DLA PIPER LLP**
203 N. LaSalle Street, Suite 1900
Chicago, IL 60601
Telephone:  312-368-4027
Fax: 312-236-7516
E-Mail: william.martin@dlapiper.com

*Attorneys for Menu Foods, Inc. and Menu
Foods Income Fund*

Case No. 07-21221-CIV-Altonaga

/s/ Hugh J. Turner, Jr.
Hugh J. Turner, Jr.
Florida Bar Number 203033
**AKERMAN SENTERFITT**
350 E. Las Olas Blvd., Suite 1600
Fort Lauderdale, FL 33301-0006
Telephone: 954-463-2700
Fax: 954-463-2224
E-Mail: hugh.turner@akerman.com

*Attorney for Publix Super Markets, Inc.*

/s/ John Brian Thomas Murray, Jr.
John B. T. Murray, Jr.
E-Mail: jbmurray@ssd.com
Florida Bar Number 962759
Mark C. Goodman
E-Mail: mgoodman@ssd.com
**SQUIRE SANDERS & DEMPSEY LLP**
1900 Phillips Point West
777 S Flagler Drive, Suite 1900
West Palm Beach, FL 33401-6198
Telephone: 561-650-7200
Fax: 561-655-1509

*Attorneys for PETCO Animal Supplies Stores,
Inc., PetSmart Inc., Wal-Mart Stores, Inc. and
Target Corporation*

Case No. 07-21221-CIV-Altonaga

/s/ Robin L. Hanger
Robin L. Hanger
Florida Bar Number 177172
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
200 S. Biscayne Boulevard, 40th Floor
Miami, FL 33131-2398
Telephone: 305-577-7040
Fax: 305-577-7001
E-Mail: rlhanger@ssd.com

*Attorneys for PETCO Animal Supplies Stores, Inc.*

/s/ Rolando Andres Diaz
/s/ Maria Kayanan
/s/ Cassidy Yen Dang
Rolando Andres Diaz
Florida Bar Number 963150
Maria Kayanan
Florida Bar Number 305601
Cassidy Yen Dang
Florida Bar Number 16482
**KUBICKI DRAPER**
25 W Flagler Street, Penthouse
Miami, FL 33130-1780
Telephone: 305-982-6615
Fax: 305-374-7846
E-Mail: rd@kubickidraper.com
mek@kubickidraper.com
cyd@kubickidraper.com

*Attorneys for Pet Supermarket, Inc.*

41

Case No. 07-21221-CIV-Altonaga

/s/ Ralph G. Patino
/s/ Dominick V. Tamarazzo
/s/ Carlos B. Salup
Ralph G. Patino
Florida Bar Number 768881
Dominick V. Tamarazzo
Florida Bar Number 92835
Carlos B. Salup
Florida Bar Number 26952
**PATINO & ASSOCIATES, P.A.**
225 Alcazar Avenue
Coral Gables, Florida 33134
Telephone: 305-443-6163
Fax: 305-443-5635
E-Mail: rpatino@patinolaw.com
dtamarazzo@patinolaw.com
csalup@patinolaw.com

*Attorneys for Pet Supplies "Plus" and Pet
Supplies "Plus"/USA, Inc.*

42

Case No. 07-21221-CIV-Altonaga

/s/ Craig P. Kalil
Craig P. Kalil
Florida Bar No. 607282
**ABALLI, MILNE, KALIL & ESCAGEDO,
P.A.**
2250 Sun Trust International Center
One Southeast Third Avenue
Miami, Florida  33131
Telephone:  305-373-6600
Fax:  305-373-7929
E-Mail:  ckalil@aballi.com


W. Randolph Teslik
Andrew Dober
**AKIN GUMP STRAUSS HAUER & FELD**
1333 New Hampshire Avenue, NW
Washington, D.C.  20036
Telephone:  202-887-4000
Fax:  202-887-4288
E-Mail:  rteslike@akingump.com
adober@akingump.com

*Attorneys for Albertson's LLC*

43

Case No. 07-21221-CIV-Altonaga

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 20, 2007, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic

filing to the counsel so indicated on the attached Service List.

By: /s/ Carol A. Licko
       Carol A. Licko

44

## CERTIFICATE OF SERVICE

### RENEE BLASZKOWSKI, ET AL., VS. MARS, INCORPORATED, ET AL.
### Case No. 07-21221-CIV-ALTONAGA/TURNOFF

### SERVICE LIST

Catherine J. MacIvor
E-mail:    cmacivor@mflegal.com
Jeffrey Eric Foreman
E-mail:  jforeman@mflegal.com
Jeffrey Bradford Maltzman
E-mail:  jmaltzman@mflegal.com
Darren W. Friedman
E-mail:  dfriedman@mflegal.com
**MALTZMAN FOREMAN PA**
One Biscayne Tower
2 South Biscayne Boulevard, Suite 2300
Miami, FL 33131-1803
Telephone: (305) 358-6555
Facsimile: (305) 374-9077

*Attorneys for Plaintiffs*

Rolando Andres Diaz
E-Mail:    rd@kubickdraper.com
Cassidy Yen Dang
E-mail:    cyd@kubickidraper.com
Maria Kayanan
E-mail:  mek@kubickidraper.com
**KUBICKI DRAPER**
25 W. Flagler Street
Penthouse
Miami, FL 33130-1712
Telephone: (305) 982-6708
Facsimile: (305) 374-7846

*Attorneys for Defendant Pet Supermarket, Inc.*

John B.T. Murray, Jr.
E-mail:    jbmurray@ssd.com
Mark C. Goodman
E-mail:    mgoodman@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, Florida 33401-6198
Telephone: (561) 650-7200
Facsimile: (561) 655-1509

*Attorneys for Defendants PETCO Animal
Supplies Stores, Inc., PetSmart, Inc., Wal-Mart
Stores, Inc. and Target Corporation*

Alexander Shaknes
E-mail: Alex.Shaknes@dlapiper.com
Amy W. Schulman
E-mail: amy.schulman@dlapiper.com
Lonnie L. Simpson
E-mail: Lonnie.simpson@dlapiper.com
S. Douglas Knox
E-mail: Douglas.knox@dlapiper.com
**DLA PIPER LLP**
1251 Avenue of the Americas
New York, New York 10020

*Attorneys for Defendants Menu Foods, Inc.
and Menu Foods Income Fund*

45

Case No. 07-21221-CIV-Altonaga

William C. Martin
**DLA PIPER LLP**
203 North LaSalle Street
Suite 1900
Chicago, Illinois 60601-1293
E-mail: William.Martin@dlapiper.com

*Attorneys for Defendants Menu Foods, Inc.
and Menu Foods Income Fund*

Hugh J. Turner, Jr.
**AKERMAN SENTERFITT**
350 E. Las Olas Boulevard
Suite 1600
Fort Lauderdale, FL 33301-2229
Telephone: (954) 463-2700
Facsimile: (954) 463-2224
E-mail:    hugh.turner@akerman.com

*Attorneys for Defendants Publix Super
Markets, Inc., H.E. Butt Grocery Co. and
Meijer, Inc.*

Gary L. Justice
E-mail: gjustice@gibsondunn.com
Charles H. Abbott
E-mail: cabbott@gibsondunn.com
Gail E. Lees
E-mail: glees@gibsondunn.com
William Edward Wegner
E-mail: wwegner@gibsondunn.com
**GIBSON DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 229-7000

*Attorneys for Defendant Nutro Products, Inc.*

Marty Steinberg
E-mail: msteinberg@hunton.com
Adriana Riviere-Badell
E-mail:    ariviere-badell@hunton.com
**HUNTON & WILLIAMS, LLP**
Mellon Financial Center
1111 Brickell Avenute, Suite 2500
Miami, FL 33131
Telephone: (305) 810-2500
Facsimile: (305 810-2460

*Attorneys for Defendant Nutro Products, Inc.*

Omar Ortega
**DORTA AND ORTEGA, P.A.**
Douglas Entrance
800 S. Douglas Road, Suite 149
Coral Gables, Florida 33134
Telephone: (305) 461-5454
Facsimile: (305) 461-5226
E-mail: oortega@dortaandortega.com

*Attorneys for Defendant Mars, Incorporated
and Mars Petcare U.S.*

Dane H. Butswinkas
E-mail: dbutswinkas@wc.com
Philip A. Sechler
E-mail: psechler@wc.com
Thomas G. Hentoff
E-mail: thentoff@wc.com
Christopher M. D'Angelo
E-mail: cdangelo@wc.com
Patrick J. Houlihan
E-mail: phoulihan@wc.com
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 200005

*Attorneys for Defendants Mars, Incorported
and Mars Petcare U.S.*

46

Benjamine Reid
E-mail: breid@carltonfields.com
Olga M. Vieira
E-mail: ovieira@carltonfields.com
**CARLTON FIELDS, P.A.**
100 S.E. Second Street, Suite 4000
Bank of America Tower at International Place
Miami, Florida  33131-9101
Telephone:  (305) 530-0050
Facsimile:   (305) 530-0055

*Attorneys for Defendants Colgate-Palmolive
Company and Hill's Pet Nutrition, Inc.*

Kara L. McCall
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois  60603
Telephone:  (312) 853-2666
E-mail:  kmccall@Sidley.com

*Attorneys for Defendants Colgate-Palmolive
Company and Hill's Pet Nutrition, Inc.*

Sherril M. Colombo
**COZEN O'CONNOR**
Wachovia Center, Suite 4410
200 South Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 704-5945
Facsimile: (305) 704-5955
E-mail:  scolombo@cozen.com

*Attorneys for Defendant Del Monte Foods, Co.*

John J. Kuster
E-mail: jkuster@sidley.com
James D. Arden
E-mail:  jarden@sidley.com
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

*Attorneys for Defendants Colgate-Palmolive
Company and Hill's Pet Nutrition, Inc.*

Marcus D. Jimenez
E-mail:  mdj@kennynachwalter.com
Robert J. Alwine II
E-mail:  ralwine@kennynachwalter.com
**KENNY NACHWALTER, P.A.**
1100 Miami Center
201 South Biscayne Boulevard
Miami, Florida  33131
Telephone:  (305) 373-1000
Facsimile:  (305) 372-1861

*Attorneys for Defendants Safeway, Inc. and
The Stop & Shop Supermarket Company LLC*

Richard Fama
E-mail: rfama@cozen.com
John J. McDonough
E-mail:  jmcdonough@cozen.com
**COZEN O'CONNOR**
45 Broadway
New York, New York  10006
Telephone:  (212) 509-9400
Facsimile:  (212) 509-9492

*Attorneys for Defendant Del Monte Foods*

Case No. 07-21221-CIV-Altonaga

John F. Mullen
**COZEN O'CONNOR**
1900 Market Street
Philadelphia, PA 19103
Telephone: (215) 665-2179
Facsimile: (215) 665-2013
E-mail: jmullen@cozen.com

*Attorneys for Defendant Del Monte Foods, Co.*


Robert C. Troyer
**HOGAN & HARTSON L.L.P.**
1200 17th Street
One Tabor Center, suite 1500
Denver, Colorado 80202
Telephone: (303) 899-7300
Facsimile: (303) 899-7333
E-mail: rctroyer@hhlaw.com

*Attorneys for Defendants Nestlé USA, Inc.
Nestlé Purina Petcare Co. and Nestlé S.A.*


James K. Reuss
**LANE ALTON & HORST, LLC**
Two Miranova Place
Suite 500
Columbus, Ohio 43215
Telephone: (614) 233-4719
E-mail: JReuss@lah4law.com

*Attorneys for Defendant The Kroger Co. of
Ohio*


Carol A. Licko
**HOGAN & HARTSON L.L.P.**
Mellon Financial Center
1111 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 459-6500
Facsimile: (305) 459-6550
E-mail: calicko@hhlaw.com

*Attorneys for Defendants Nestlé USA, Inc.
Nestlé Purina Petcare Co. and Nestlé S.A.*


Craig A. Hoover
E-mail: cahoover@hhlaw.com
Miranda L. Berge
E-mail: mlberge@hhlaw.com
**HOGAN & HARTSON L.L.P.**
555 13th Street, NW
Washington, D.C. 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910

*Attorneys for Defendants Nestlé USA, Inc.
Nestlé Purina Petcare Co. and Nestlé S.A.*


Alan G. Greer
**RICHMAN GREER, P.A.**
Miami Center – Suite 1000
201 South Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 373-4000
Facsimile: (305) 373-4099
E-mail: agreer@richmangreer.com

*Attorneys for Defendants Procter & Gamble
Co. and The Iams Co.*

48

D. Jeffrey Ireland
E-mail: djireland@ficlaw.com
Brian D. Wright
E-mail: Bwright@ficlaw.com
Laura A. Sanom
E-mail: lsanom@ficlaw.com
**FARUKI IRELAND & COX P.L.L.**
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, Ohio 45402

*Attorneys for Defendant Procter & Gamble
Co. and The Iams Co.*

Ralph G. Patino
E-mail: rpatino@patinolaw.com
Dominick V. Tamarazzo
E-mail: dtamarazzo@patinolaw.com
Carlos B. Salup
E-mail: csalup@patinolaw.com
**PATINO & ASSOCIATES, P.A.**
225 Alcazar Avenue
Coral Gables, Florida 33134
Telephone: (305) 443-6163
Facsimile: (305) 443-5635

*Attorneys for Defendants Pet Supplies "Plus"
and Pet Supplies "Plus"/USA, Inc.*

Craig P. Kalil
E-mail: ckalil@aballi.com
Joshua D. Poyer
E-mail: jpoyer@aballi.com
**ABALLI, MILNE, KALIL & ESCAGEDO,
P.A.**
2250 Sun Trust International Center
One Southeast Third Avenue
Miami, Florida 33131
Telephone: (305) 373-6600
Facsimile: (305) 373-7929

*Attorneys for Defendants New Albertson's Inc.
and Albertson's LLC*

Robin L. Hanger
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
200 S. Biscayne Boulevard
40th Floor
Miami, Florida 33131-2398
Telephone: (305) 577-7040
Facsimile: (305) 577-7001
E-mail: rlhanger@ssd.com

*Attorneys for Defendants PETCO Animal
Supplies Stores, Inc.*

Robert Valadez
E-mail: rvaladez@shelton-valadez.com
Javier Thomas Duran
E-mail: jduran@shelton-valadez.com
**SHELTON & VALADEZ, P.C.**
600 Navarro, Suite 500
San Antonio, Texas 78205
Telephone: (210) 349-0515
Facsimile: (210) 349-3666

*Attorneys for Defendant H.E. Butt Grocery Co.*

W. Randolph Teslik
E-mail: rteslik@akingump.com
Andrew Dober
E-mail: adober@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD
LLP**
1333 New Hampshire Avenue, NW
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288

*Attorneys for Defendants New Albertson's Inc.
and Albertson's LLC*

Case No. 07-21221-CIV-Altonaga

C. Richard Fulmer, Jr.
**FULMER, LeROY, ALBEE, BAUMANN &**
**GLASS, PLC**
2866 East Oakland Park Boulevard
Fort Lauderdale, Florida  33306
Telephone:  (954) 707-4430
Facsimile:  (954) 707-4431
E-mail:  rfulmer@Fulmer.LeRoy.com

*Attorneys for Defendant The Kroger Co. of*
*Ohio*

Jason Joffe
**SQUIRE SANDERS & DEMPSY, LLP**
200 South Biscayne Boulevard
Suite 4000
Miami, Florida 33131
Telephone:  (305) 577-7000
Facsimile:  (305) 577-7001
E-mail:  jjoffe@ssd.com

*Attorneys for Defendant Meijer, Inc.*

50

Case No. 07-21221-CIV-Altonaga

**APPENDIX A**
**ELEMENTS OF RELIANCE AND CAUSATION UNDER FLORIDA AND MICHIGAN LAW**

- **Count I:** *Simon v. Celebration Co.*, 883 So. 2d 826, 832-33 (Fla. 5th DCA 2004) (fraudulent misrepresentation requires reliance); *Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 264 F. Supp. 2d 1064, 1073–74 (S.D. Fla. 2003) (fraudulent concealment); *FFOC Co. v. Invent A.G.*, 882 F. Supp. 642, 658-59 (E.D. Mich. 1994) (fraudulent misrepresentation); *McEldowney v. Air Prods. & Chems., Inc.*, No. 273572, 2007 WL 1576390, *6 (Mich. Ct. App. May 31, 2007) (fraudulent concealment).

- **Count II:** *Tindall v. Gibbons*, 156 F. Supp. 2d 1292, 1298 (M.D. Fla. 2001) (fraud in the inducement requires causation); *Farris v. Am. Creditors Life Ins. Co.*, No. 258980, 2006 WL 1290421, *2 (Mich. Ct. App. May 11, 2006) (fraud in the inducement requires reliance).

- **Count III:** *Simon*, 883 So. 2d at 832-33 (negligent misrepresentation requires reliance); *Roncelli v. O'Reilly, Rancilio, Nitz, Andrews, Turnbull & Scott, P.C.*, No. 258951, 2006 WL 1360396 (Mich. Ct. App. May 18, 2006) (*per curiam*) (negligent misrepresentation).

- **Count IV:** *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 229 (S.D. Fla. 2001) (FDUTPA requires showing of causation); *Kussy v. Home Depot U.S.A. Inc.*, No. 06-12899, 2006 WL 3447146, **5-7 (E.D. Mich. Nov. 28, 2006) (Michigan Consumer Protection Act requires causation and reliance).

- **Count V:** *Nutrivida, Inc. v. Inmuno Vital, Inc.,*, No. 95-2250-CIV-GRAHAM, 1997 WL 1106569, *8 (S.D. Fla. Feb. 28, 1997) (misleading advertising claim requires reliance); *Baker v. Arbor Drugs, Inc.*, 544 N.W.2d 727, 732 (Mich. Ct. App. 1996) (same).

- **Count VI:** *Krehling v. Baron*, 900 F. Supp. 1578, 1582-83 (M.D. Fla. 1995) (negligence requires causation); *Baker*, 544 N.W.2d at 730 (same).

- **Count VII:** *Italiano v. Jones Chem., Inc.*, No. 95-1161-Civ-T-17A, 1997 WL 118426, **3-4 (M.D. Fla. Feb. 21, 1997) (negligence *per se* requires causation); *Schollenberger v. Sears, Roebuck & Co.,* 925 F. Supp. 1239, 1246 (E.D. Mich. 1996) (negligence *per se*, which under Michigan law merely provides a rebuttable presumption of negligence for statutory violations, requires causation).

- **Count X:** *Marking v. Novartis Pharm. Corp.*, No. 00-9108-CV, 2002 WL 32255405, *3 (S.D. Fla. Feb. 12, 2002) (breach of implied warranty requires causation); *Weier v. United Rentals, Inc.*, No. 1:05-CV-420, 2006 WL 3613304, *4, *7 (W.D. Mich. Dec. 11, 2006) (same).

- **Count XI:** *Marking*, 2002 WL 32255405, *3 (breach of express warranty requires causation); *Cavalier v. Werner Co.*, 976 F. Supp. 672, 679 n.11 (E.D. Mich. 1997) (same).

51

- **Count XII:** *Urquhart v. Manatee Mem'l Hosp.*, No. 8:06-cv-1418-T-17-EAJ, 2007 WL 781738, **5-6 (M.D. Fla. Mar. 13, 2007) (unjust enrichment requires causation); *Thomas v. City of Detroit*, No. 06-10453, 2007 WL 674593, *11 (E.D. Mich. Feb. 28, 2007) (same)

Case No. 07-21221-CIV-Altonaga

**APPENDIX B**
**STATE CONSUMER PROTECTION STATUTES**

- **Arizona**: *See Grismore v. Capitol One F.S.B.*, No. CV-05-2460-PHX-SMM, 2007 WL 841513, *7 (D. Ariz. Mar. 16, 2007) (dismissing Arizona Consumer Fraud Act claim for failure to comply with Rule 9(b));

- **Indiana**: *Stires*, 243 F. Supp. 2d at 1322 (FDUTPA claim deficient because it did not comply with Rule 9 particularity requirements); *SMC Corp. v. PeopleSoft U.S.A., Inc.*, No. 1:00-cv-01095-LJM-VS, 2004 WL 2538641, **4-5 (S.D. Ind. Oct. 12, 2004) (dismissing Indiana Deceptive Consumer Sales Act claim for failure to comply with Rule 9(b) particularity requirements);

- **Kansas**: *Gonzalez v. Pepsico*, 489 F. Supp. 2d 1233, 1247 (D. Kan. 2007) ("Allegations of unfair trade practices under the [Kansas] CPA must be pleaded with particularity in accordance with Rule 9(b)").;

- **Michigan**: *Parsley v. Monaco Coach Corp.*, 327 F. Supp. 2d 797, 807 (W.D. Mich. 2004) (Rule 9(b)'s particularity requirements apply to Michigan CPA claims based on fraud allegations);

- **Massachusetts**: *Moniz v. Bayer Corp.*, 484 F. Supp. 2d 228, 231 (D. Mass. 2007) (considering whether Chapter 93A claim met Rule 9(b) particularity requirements);

- **Nevada**: *George v. Morten*, No. 2:06-cv-1112-PMP-GWF, 2007 WL 680787, *12 (D. Nev. Mar. 1, 2007) (claim brought under Nevada consumer fraud act must satisfy Rule 9(b) particularity requirements);

- **Pennsylvania**: *Rosenberg v. Avis Rent a Car Sys., Inc.*, No. 07-1110, 2007 WL 2213642, **5-6 (E.D. Penn. July 31, 2007) (Rule 9(b) applies to Pennsylvania UTPCPL claims);

- **Tennessee**: *McLean v. Bourget's Bike Works, Inc.*, No. M2003-01944-COA-R3-CV, 2005 WL 2493479, *7 (Tenn. Ct. App. Oct. 7, 2005) ("Claims under the Tennessee Consumer Protection Act must be pleaded with the same particularity that Tenn. R. Civ. P. 9.02 requires of common-law fraud claims");

- **Texas**: *Sipes v. Petry*, 812 S.W.2d 428, 431 (Tex. App.—San Antonio 1991, no writ) ("[A]llegations under the Deceptive Trade Practices Act . . . require pleadings which designate or state with particularity which acts or events were relied upon as a basis for liability under the Texas Deceptive Trade Practices Act") (internal quotation marks omitted);

- **Washington**: *Fidelity Mortg. Corp. v. Seattle Times Co.*, 213 F.R.D. 573, 575 (W.D. Wash. 2003) (complaints under Consumer Protection Act are subject to particularity requirement of Rule 9(b));

Case No. 07-21221-CIV-Altonaga

- **West Virginia**: *Rouse v. Philip Morris, Inc.*, No. 2:03-2159, 2003 WL 22850072, *5 (S.D. W. Va. Nov. 18, 2003) (same, as applied to West Virginia Consumer Credit and Protection Act);

- **Wisconsin**: *D & B Auto Equip., Inc. v. Snap-on, Inc.*, No. 03-CV-141, 2006 WL 776749, *6 (E.D. Wis. Mar. 27, 2006) (same, as applied to Wisconsin Consumer Act).

APPENDIX C
AAFCO AND STATE PROVISIONS

- Arizona has incorporated by reference the feed ingredient definitions and feed terms, as well as the labeling and guarantee provisions, of the AAFCO Official Publication. (ARIZ. ADMIN. CODE R3-3-901, 905.)

- California has adopted the ingredient names and definitions of AAFCO, as well standards for "balanced" statements. (CAL. CODE REGS. tit. 17, § 19005.)

- Indiana has adopted the ingredient names and definitions of AAFCO, as well as its claims of nutritional adequacy, feeding directions, and testing procedures. (IND. ADMIN. CODE tit. 355, r. 6-1-1, 6-2-4 – 6-2-9.)

- Kansas regulations adopt the official feed terms, names, and definitions of AAFCO. (KAN. ADMIN. REGS. 4-3-7, 4-3-47, 4-3-48.)

- Massachusetts uses the AAFCO definitions, nutrient profiles, and testing procedures. (MASS. REGS. CODE tit. 330, §§13.01 – 13.08.)

- The Michigan Administrative Code mandates the use of AAFCO definitions of and terms for feed ingredients, as well as AAFCO testing procedures and nutrient profiles. (MICH. ADMIN. CODE r. 285.631, 283.635.)

- Nebraska has adopted certain portions of the AAFCO feed name and ingredient provisions. (NEB. ADMIN. CODE tit. 25, §§ 3-001, 3-003.)

- Nevada applies AAFCO ingredient definitions and AAFCO standards for product names of feeds with single ingredients. (NEV. ADMIN. CODE ch. 587 §§ 510, 520.)

- New York regulations adopt AAFCO terms and conditions where no such terms or definitions are otherwise provided, and provide that certain guarantees must comply with AAFCO nutrition requirements. (N.Y. COMP. CODES R. & REGS. tit. 1 §§ 257.1, 257.17.)

- Ohio has adopted the 2006 AAFCO Official Publication. (OHIO ADMIN. CODE § 901:5-7-01.)

- Oklahoma has adopted the definitions in AAFCO's Model Bill and Model Feed Regulations. (OKLA. ADMIN. CODE § 35:30-27-51.)

- Pennsylvania has adopted the AAFCO Official Definitions of Feed Ingredients and Official Feed Terms. (7 PA. CODE § 71.1.)

- South Carolina has not adopted the AAFCO regulations, but has adopted AAFCO definitions for ingredient names. (S.C. CODE ANN. REGS. 5-204.)

- Tennessee has adopted the complete AAFCO Official Definition of Feed Ingredients and Official Feed Terms. (TENN. COMP. R. & REGS. 0080-5-5.01.)

- Texas has adopted the AAFCO dog and cat food nutritional profiles. (4 TEX. ADMIN. CODE § 63.1.)

Case No. 07-21221-CIV-Altonaga

- Virginia has adopted the AAFCO regulations, definitions, and standards. (2 VA. ADMIN. CODE § 5-360-100.)

- Washington has adopted the AAFCO terms and definitions as well as its guarantee, vitamin, and labeling provisions. (WASH. ADMIN. CODE 16-252-010, *et seq*.)

- West Virginia has adopted AAFCO's Official Pet Food Regulations published in the 2004 edition of the Official Publication. (W.VA. CODE ST. R. § 61-5-2.)

- Wisconsin allows pet foods to use "common or usual" names or AAFCO's official names. (WIS. ADMIN. CODE § 42.32.)

Case No. 07-21221-CIV-Altonaga

### APPENDIX D
### STATE LAW EXEMPTIONS FOR AUTHORIZED CONDUCT

- California law provides that "[a]cts that the legislature has determined to be lawful may not form the basis for an action under the unfair competition law." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 541-42 (Cal. 1999).

- The Indiana Deceptive Consumer Sales Act expressly does not apply to "an act or practice that is (1) required or expressly permitted by federal law, rule, or regulation; or (2) required or expressly permitted by state law, rule, regulation, or local ordinance." (IND. CODE § 24-5-0.5-6.)

- The Kansas Consumer Protection Act does not apply when a more specific statute deals with the subject. *Chelsea Plaza Homes, Inc. v. Moore*, 601 P.2d 1100, 1102 (Kan. 1979).

- The Massachusetts Regulation of Business Practices for Consumer Protection does not apply to "transactions or actions otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of the commonwealth or of the United States." (MASS. GEN. LAWS ch. 93A § 3.)

- The Michigan Consumer Protection Act does not apply to a "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." (MICH. COMP. LAWS § 445.904.)

- The Nebraska Consumer Protection Act "shall not apply to actions or transactions otherwise permitted, prohibited, or regulated under laws administrated by . . . any other regulatory body or officer acting under statutory authority of this state or the Untied States." (NEB. REV. STAT. § 59-1617.)

- Nevada's Deceptive Trade Practices statute does not apply to "[c]onduct in compliance with the orders or rules of, or a statute administered by, a federal, state, or local governmental agency." (NEV. REV. STAT. § 598-0955.)

- New York law holds that it is a "complete defense" to a consumer protection act claim "that the act or practice . . . complies with the rules and regulations of, and the statutes administered by, . . . any official department, division, commission or agency of the United States . . ." (N.Y. GENERAL BUSINESS LAW § 349(d).)

- The Ohio Consumer Sales Practices Act does not apply to "[a]n act or practice required or specifically permitted by or under federal law." (OHIO REV. CODE ANN. § 1345.12.)

- The Oklahoma Consumer Protection Act does not apply to "[a]ctions or transactions regulated under laws administered by . . . any other regulatory body or officer acting under statutory authority of this state or the United States . . ." (OKLA. STAT. tit. 15, § 754(2).)

- The Tennessee Consumer Protection Act do not apply to "[a]cts or transactions required or specifically authorized under the laws administered by, or rules and regulations promulgated by, any regulatory body or officers acting under the authority of this state or of the United States." (TENN. CODE ANN. § 47-18-111(a)(1).)

57

- The Virginia Consumer Protection Act provides that "[n]othing in this chapter shall apply to any aspect of a consumer transaction which aspect is authorized under laws or regulations of this Commonwealth or the United States, or the formal advisory opinions of any regulatory body or official of this Commonwealth or the United States." (VA. CODE ANN. § 59.1-199(A).)

- The Washington Consumer Protection Act does not apply to "actions or transactions otherwise permitted, prohibited or regulated under laws administered by . . . any other regulatory body or officer acting under statutory authority of this state or the United States." (WASH. REV. CODE ANN. § 19.86.170.)

58

### APPENDIX E
### BREACH OF WARRANTY CLAIMS

- **Arizona**: *Chaurasia v. Gen. Motors Corp.*, 126 P.3d 165, 171 (Ariz. Ct. App. 2006) ("privity of contract is required to maintain an action for breach of an implied warranty");

- **California**: *Torres v. City of Madera*, No. Civ. 02-6385, 2005 WL 1683736, *16 (E.D. Cal. July 11, 2005) ("plaintiff alleging breach of warranty claims must stand in 'vertical privity' with the defendant");

- **Kansas**: *Postal Presort, Inc. v. Midwest Single Source, Inc.*, 130 P.3d 1247, **7-8 (Kan. Ct. App. 2006) (privity is required to claim breach of express or implied warranties if the product is not inherently dangerous and the claim is for economic loss);

- **Michigan**: *Pidcock v. Ewing*, 371 F. Supp. 2d 870, 877-78 (E.D. Mich. 2005) (granting summary judgment for defendant with respect to warranty claims for lack of privity);

- **New York**: *Kolle v. Mainship Corp.*, No. 04-CV-711, 2006 WL 1085067, *5 (E.D.N.Y. Apr. 20, 2006) ("New York law requires privity in order for Plaintiff to assert a breach of an implied warranty claim");

- **Ohio**: *Johnson v. Monsanto Co.*, No. 11-02-02, 2002 WL 2030889, **2-3 (Ohio Ct. App. Sept. 6, 2002) ("Appellants are precluded from raising claims founded on UCC implied warranty theories for want of privity");

- **Oklahoma**: *Hardesty v. Andro Corp.-Webster Div.*, 555 P.2d 1030, 1033-34 (Okla. 1976) (privity required where plaintiff seeks economic damages);

- **Tennessee**: *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 463 (Tenn. Ct. App. 2003) ("a plaintiff may not maintain a claim for purely economic losses absent contractual privity with the party charged with responsibility for those losses");

- **Washington**: *Fortune View Condo. Assoc. v. Fortune Star Dev't Co.*, 90 P.3d 1062, 1064-65 (Wash. 2004) (privity required for implied warranty claims);

- **Wisconsin**: *Northridge Co. v. W.R. Grace & Co.*, 471 N.W.2d 179, 187 n.15 (Wis. 1991) (dismissing plaintiffs' implied warranty claim because "[t]he plaintiffs in this case did not allege privity in their complaint").