## MOTION

Pursuant to Article III of the United States Constitution and Rules 8(a)(2), 9(b), 12(b)(1)

and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Mars, Incorporated; Mars

Petcare U.S., Inc.; Procter & Gamble Co.; The Iams Co.; Colgate-Palmolive Company; Hill's Pet

Nutrition, Inc.; Del Monte Foods, Co.; Nestlé U.S.A., Inc.; Nestlé Purina PetCare Company;

Nestlé S.A.; Nutro Products, Inc.; Menu Foods, Inc.; Menu Foods Income Fund; Publix

Supermarkets, Inc.; New Albertsons, Inc.; Albertsons LLC; The Kroger Co. of Ohio; Safeway

Inc.; H.E. Butt Grocery Company; Meijer Inc.; The Stop & Shop Supermarket Company LLC;

PETCO Animal Supplies Stores, Inc.; Pet Supermarket, Inc.; Pet Supplies "Plus"; Pet Supplies

Plus/USA, Inc.; PetSmart, Inc.; Target Corp.; and Wal-Mart Stores, Inc. (collectively,

"Defendants") hereby move this Court to dismiss Plaintiffs' Corrected Amended Class Action

Complaint: (i) as an initial matter, for ineffective service and/or lack of personal jurisdiction over

Defendants Nestlé S.A.; New Albertsons, Inc.; The Kroger Co. of Ohio; Safeway Inc.; H.E. Butt

Grocery Company; Meijer Inc.; The Stop & Shop Supermarket Company; Pet Supplies "Plus";

and Pet Supplies Plus/USA, Inc. ("non-resident Defendants"), who are specially appearing for

the limited purpose of this Motion, and without submitting to the jurisdiction or venue of this

Court; and (ii) as to all Defendants, for lack of subject matter jurisdiction based on Plaintiffs'

lack of standing to bring this suit, Plaintiffs' failure to state any claim upon which relief may be

granted, and other grounds fully articulated in the Memorandum of Law incorporated into this

Motion.[1]

---

[1]     At this Court's direction (*see* D.E. 142, Hearing Transcript at pgs. 22-25 and 27, lines 7-10), the undersigned Defendants are submitting one comprehensive Motion. With the Court's concurrent advance permission, this Motion exceeds the standard page limit.

Dockets.Justia.com

## MEMORANDUM OF LAW – INTRODUCTION

Plaintiffs – alleged purchasers of unspecified brands of pet food – have filed a sweeping Corrected Amended Class Action Complaint ("Complaint" or "Compl.") that broadly criticizes the manufacturing and marketing practices of the entire pet food industry in the United States, as well as the efforts and standards of the industry's regulators. Without once alleging (i) that any Plaintiff bought pet food manufactured or sold by any specific Defendant; (ii) that any Plaintiff was influenced to buy pet food by any particular Defendant's allegedly misleading statement; or (iii) that any Plaintiff's pet suffered any adverse health consequences from consuming any identified Defendant's product, Plaintiffs nevertheless have haled into this Court the bulk of the country's pet food business (including ten pet food manufacturers, eleven major retailers, and three specialty retailers), and have further *attempted* to hale into this Court (unsuccessfully, as discussed below) the nine non-resident Defendants.

Plaintiffs' ten-count Complaint is fatally flawed across the board. It fails to establish that Plaintiffs have standing to bring this suit, and it fails as a matter of law to allege conduct that would be actionable under state consumer protection statutes or state tort or contract law. The undersigned Defendants therefore jointly move to dismiss the Complaint, pursuant to Article III of the U.S. Constitution and Rules 8(a)(2), 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Furthermore, the nine non-resident Defendants move to dismiss the Complaint under Rule 12(b)(2).

## BACKGROUND

Plaintiffs initiated this lawsuit on May 9, 2007, and they filed their Corrected Amended Class Action Complaint on July 27, 2007. The Complaint, brought by twenty-four cat and dog owners (Compl. ¶¶ 1-25) on behalf of a putative class of millions of pet owners throughout the United States,[2] consists solely of broad and vague allegations about the general conduct of the entire pet food industry. In more than 150 paragraphs relying on generally available Internet postings and news articles, the Complaint alleges various actions and omissions by both the pet food industry and the government regulators overseeing the industry, and it targets unrelated activities ranging from some Defendants' alleged use of marketing terms as varied as "complete and balanced nutrition" and "premium" to the alleged inclusion by some Defendants of synthetic preservatives in pet food.

Although the Complaint includes ten claims for relief,[3] each hinges on the same basic allegations of wrongdoing – that the pet food industry advertises its dog and cat food products as healthy and nutritious without disclosing in those advertisements certain ingredients that might be included in packages of pet food, or without fully explaining the health effects of the ingredients that are described. One typical example is Plaintiffs' criticism of Defendants' disclosed use of grain as an ingredient on the ground that dogs and cats "are carnivores" (Compl. ¶¶ 131, 153). Plaintiffs repeatedly lament the alleged "lack of scientific support that dry food is

---

[2]   Plaintiffs allege that there are approximately 73 million "companion" dogs and 90 million "owned" cats in the United States. (Compl. ¶ 160). Plaintiffs seek to certify a putative class of consumers who own cats or dogs and who purchased pet food that was marketed, sold, manufactured, or distributed by any of the thirty-three named Defendants and marketed in certain enumerated ways. (*Id.* ¶ 159).

[3]   In their Complaint, Plaintiffs incorrectly numbered the counts, skipping from Count VII to Count X and failing to include Counts VIII and IX. This Motion refers to the counts as Plaintiffs labeled them.

beneficial to an obligate carnivore such as a cat who [sic] has a low thirst drive." (*Id.* ¶¶ 79, 83, 86, 88, 90).[4]

Throughout this broad-based attack on the pet food business, Plaintiffs acknowledge that much of the complained-of activity is, in fact, regulated and approved by existing government agencies. (Compl. ¶¶ 102-114). At bottom, Plaintiffs are seeking to replace the existing regulatory regime wholesale with one constructed by this Court. It would be inappropriate under any circumstance for Plaintiffs to use this Court as a vehicle for their regulatory ambitions. Particularly where, as here, Plaintiffs can show neither standing nor legally cognizable claims, this Court should dismiss their Complaint.

## **ARGUMENT**

As an initial matter, and as discussed in Sections I and II below, Plaintiffs' Complaint must be dismissed for ineffective service and/or lack of personal jurisdiction over the nine non-resident Defendants.

Moreover, as discussed in Sections III through V, the Complaint falls far short of stating a claim either on behalf of any Plaintiff or against *any* Defendant.[5] Each "count" asserts that Plaintiffs have been harmed in an unspecified manner by purchasing pet food products allegedly

---

[4] Some of Plaintiffs' statements are inconsistent with each other. For example, the Complaint alleges that "[t]here have been reports of euthanized cats and dogs that have been 'rendered' and ultimately made into pet food that would reach millions." (Compl. ¶ 122). However, Plaintiffs' own exhibits show that these 1990-era rumors were investigated by the FDA's Center for Veterinary Medicine in two studies of dog and cat food in 1998 and 2000 and were found to be utterly baseless. (Compl., Ex. 58). In fact, contrary to the allegations of the Complaint, the FDA's study "results demonstrated a *complete absence* of material that would have been derived from euthanized dogs or cats." (*Id.*)(emphasis added).

[5] Except for Counts VI (negligence) and VII (negligence per se), Plaintiffs bring each count against every Defendant. Counts VI and VII are not brought against Defendants PETCO, Pet Supermarket or Pet Supplies "Plus."

4

manufactured or sold by Defendants. But the Complaint does not identify a single Defendant that manufactured or distributed any pet food purchased by any named Plaintiff. Instead, Plaintiffs only state generally that each has purchased "various brands" of dog or cat food that are "in the group" of products allegedly made or sold by Defendants. (Compl. ¶¶ 2-25). Nor does the Complaint allege that any particular Defendant's allegedly misleading advertisement actually influenced any Plaintiff to purchase pet food, or that the consumption of any Defendant's (or anyone else's) pet food harmed any of Plaintiffs' pets. As demonstrated below, to avoid dismissal of their Complaint, Plaintiffs must establish that they – as individuals – have standing to sue and have stated claims on which relief can be granted. They cannot make such a showing.

All ten claims for relief in the Complaint should be dismissed, for the following reasons: First, having failed to allege the necessary elements of causation and particularized injury to themselves, Plaintiffs lack standing for purposes of Article III of the Constitution and Rule 12(b)(1) of the Federal Rules of Civil Procedure. Second, the Complaint does not contain a "short and plain statement" showing Plaintiffs' entitlement to relief as required by Rule 8 and fails to state any plausible claim for relief under Rule 12(b)(6). The Complaint does not link any specific Defendant with pet food allegedly purchased by any particular Plaintiff. Furthermore, the Complaint neither alleges facts indicating that at least one Plaintiff personally relied on a representation by any Defendant nor alleges how any Defendant's acts or omissions caused any harm to any Plaintiff. Third, each of Plaintiffs' claims suffers from still other fatal and irremediable defects detailed in Section V below, which independently warrant dismissal.

I.     **PLAINTIFFS' ATTEMPTED SERVICE OF THE SUMMONS AND AMENDED COMPLAINT ON NESTLÉ S.A. IS IMPROPER AND SHOULD BE QUASHED.**

As an initial matter, Plaintiffs' attempt to serve Nestlé S.A., a Swiss corporation, is legally defective and should be quashed. Under applicable Florida and federal law, Plaintiffs must serve Nestlé S.A. pursuant to the Hague Convention. *See* Fed. R. Civ. P. 4(f); Fla. Stat. § 48.194(1); *see also Vega Glen v. Club Mediterranee S.A.*, 359 F. Supp. 2d 1352, 1356 n.3 (S.D. Fla. 2005) (foreign corporation to be served pursuant to Hague Convention). Service under the Hague Convention requires "strict compliance with its mandates." *Rhodes v. J.P. Sauer & Sohn, Inc.*, 98 F. Supp. 2d 746, 750 (W.D. La. 2000); *see also Vega Glen*, 359 F. Supp. 2d at 1356 ("[c]ompliance with the [Hague] Service Convention is mandatory in all cases to which it applies").

For Swiss corporations like Nestlé S.A., the Hague Convention requires Plaintiffs to submit a request for service to the Central Authority of Switzerland that includes, among other things, a translation of all documents to be served, including supporting documentation. Hague Convention, Art. 5, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163; *Switzerland Decl. of Reservations to the Hague Convention, available at* http://www.hcch.net/index_en.php?act= status.comment&csid= 424&disp=resdn; *see also* "Switzerland Judicial Assistance," U.S. Department of State, *available at* http://travel.state.gov/law/info/judicial/judicial_668.html. As a number of courts have recognized, the failure to provide the translations required under the Hague Convention is a fatal defect. *See, e.g., Am. River Transp. Co. v. M/V BOW LION*, Nos. Civ.A. 03-1306, Civ.A. 03-1594, Civ.A. 03-1797, Civ.A. 03-1864, Civ.A. 03-2003, 2004 WL 764181, *2 (E.D. La. Apr. 7, 2004) (holding plaintiffs' purported service on foreign corporation ineffective under Hague Convention where translations not provided); *Froland v. Yamaha Motor Co.*, 296 F. Supp. 2d 1004, 1008 (D. Minn. 2003) (same); *Foster v. Dentaurum, Inc.*, Civ. A. No.

85-4432, 1986 WL 20900, *1 (D. Kan. June 27, 1986) (same). Moreover, courts have not allowed plaintiffs to circumvent the translation requirement by arguing that the party to be served understands English or is aware of the action. *See, e.g., Pa. Orthopedic Ass'n v. Mercedes-Benz A.G.*, 160 F.R.D. 58, 60 (E.D. Pa. 1995) (holding that plaintiff should have provided party to be served with translation required by the Hague Convention, even where party allegedly understood English and knew of action; to hold otherwise would ignore the fact that Congress has established the Hague Convention as the means by which to effect service upon foreign corporations).

In this case, Plaintiffs did not comply with the Hague Convention's strict translation requirement, opting instead to submit to the Swiss Central Authority only the English-language versions of the Summons, the Amended Complaint and attached exhibits. (*See* Declaration of Hans Peter Frick ("Frick Decl."), attached as **Exhibit A** ¶ 3). The sheer volume of the documents served here – a massive 100-page pleading and over 440 pages of exhibits, including highly technical reports from the United States Department of Agriculture and other entities – demonstrates the importance of the translation requirement, and Plaintiffs should not be allowed to opt out of compliance with that requirement. Plaintiffs have failed to effect valid service of process on Nestlé S.A. in this action, and accordingly, their attempted service of the summons and Complaint on Nestlé S.A. should be quashed. *See Am. River*, 2004 WL 764181, *2; *Froland*, 296 F. Supp. 2d at 1008; *Foster*, 1986 WL 20900, *1.

## II.  THE COMPLAINT SHOULD BE DISMISSED AS TO THE NON-RESIDENT DEFENDANTS FOR LACK OF PERSONAL JURISDICTION.

As a further initial matter, the Complaint should be dismissed as to the non-resident Defendants (Nestlé S.A., Safeway Inc., The Stop & Shop Supermarket Company LLC, The Kroger Co., Meijer, Inc., New Albertsons, Inc., H.E. Butt Grocery Company, Pet Supplies "Plus"

and Pet Supplies Plus/USA, Inc.), each of whom is specially appearing for the limited purpose of this Motion, and without submitting to the jurisdiction or venue of this Court, on grounds of lack of personal jurisdiction.

## A.    STANDARDS FOR DETERMINING PERSONAL JURISDICTION.

### 1.    The Eleventh Circuit's Required Two-Part Analysis and Plaintiffs' Burden.

This action is brought on an assertion of diversity jurisdiction. (*See* Compl. ¶ 52). A federal court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits and to the extent allowed under the Constitution. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). The Eleventh Circuit applies a two-part analysis to determine if personal jurisdiction exists over a non-resident defendant. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996); *Mother Doe I ex rel. R.M. v. Al Maktoum*, Slip Op., No. 06-22253, 2007 WL 2209258, *2 (S.D. Fla. July 30, 2007) (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999)).

First, the forum state's long-arm statute – in this case Florida – must provide a basis for personal jurisdiction. *Lauzon v. Joseph Ribkoff, Inc.*, 77 F. Supp. 2d 1250, 1253 (S.D. Fla. 1999). If this requirement is met, the second part of the analysis requires sufficient minimum contacts between the defendant and the forum state so as to satisfy "traditional notions of fair play and substantial justice" under the Due Process Clause of the Fourteenth Amendment. *Id.* Only if the court determines there is a basis for asserting personal jurisdiction under the forum's long-arm statute does it need to consider the due process analysis. *Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV-MOORE/GARBER, 2007 WL 712389, *2 (S.D. Fla. March 7, 2007).

Plaintiffs have the burden of pleading and proving "facts which clearly justify" the exercise of personal jurisdiction, *see Oriental Imps. & Exps. Inc. v. Maduro & Curiel's Bank*,

*N.V.*, 701 F.2d 889, 891 (11th Cir. 1983),[6] and this showing must be made for *each* efendant. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) (due process requires that "[e]ach defendant's contacts with the forum State must be assessed individually"). Plaintiffs' initial pleading burden requires them to allege a sufficient factual basis for the Court's personal jurisdiction over *each* non-resident Defendant. *Mother Doe I*, 2007 WL 2209258, *2 ("plaintiff's 'burden in alleging personal jurisdiction is to plead sufficient material facts to establish the basis for exercise of such jurisdiction'" (quoting *Future Tech.*, 218 F.3d at 1249)); *Miami Breakers Soccer Club, Inc. v. Women's United Soccer Ass'n*, 140 F. Supp. 2d 1325, 1328 (S.D. Fla. 2001) (plaintiff bears "initial burden of pleading facts to support personal jurisdiction over the defendant in its complaint").

As discussed below, Plaintiffs' Complaint does not allege, even in conclusory fashion, any factual basis for personal jurisdiction over any of the non-resident Defendants. Indeed, the Complaint does not allege any facts whatsoever that are specifically directed at any of these non-resident Defendants with respect to this Court's personal jurisdiction over them. Only three of the named plaintiffs reside in Florida. (*See* Compl. ¶¶ 3, 4, 24). The Complaint fails to allege that any of these Florida plaintiffs – or any plaintiff for that matter – purchased pet food manufactured, distributed or sold by any specific *Defendant*. Rather, each paragraph contains

---

[6] Under Florida law, the plaintiff bears the burden of proving personal jurisdiction: when a defendant raises through affidavits, documents or testimony a meritorious challenge to personal jurisdiction, the burden shifts to the plaintiff to prove jurisdiction by affidavits or other competent evidence. *Mother Doe I*, 2007 WL 2209258, *2 (citing *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (per curiam)). If the defendant sufficiently challenges the plaintiff's assertions, the plaintiff must affirmatively support its jurisdictional contentions with record evidence and may not merely rely on the factual allegations set forth in the complaint. *Future Tech.*, 218 F.3d at 1249; *Musiker v. Projectavision, Inc.*, 960 F. Supp. 292, 294-95 (S.D. Fla. 1997).

the identical conclusory allegation that the named plaintiff "purchased various brands of commercial dog and cat food over the lifespan of her cat and dog that are in the group of products that were manufactured, marketed, produced, distributed, advertised or sold by the Defendants." *Id.* This facial deficiency is sufficient to warrant dismissal of the Complaint as to the non-resident Defendants. *See, e.g., Mother Doe I*, 2007 WL 2209258, *2; *MeterLogic, Inc. v. Copier Solutions, Inc.*, 126 F. Supp. 2d 1346, 1353 (S.D. Fla. 2000) (granting motion to dismiss for, among other things, failure to allege facts sufficient to establish personal jurisdiction over defendant); *Am. Investors Life Ins. Co. v. Webb Life Ins. Agency, Inc.*, 876 F. Supp. 1278, 1282-83 (S.D. Fla. 1995) (granting dismissal where "plaintiff has failed to allege facts sufficient to support this Court's exercise of personal jurisdiction over the defendants").

**2.    Requirements For Jurisdiction Under Florida's Long-Arm Statute.**

The Florida long-arm statute, Fla. Stat. § 48.193, allows for two distinct categories of personal jurisdiction:  specific jurisdiction conferred under Fla. Stat. § 48.193(1), and general jurisdiction conferred under Fla. Stat. § 48.193(2).[7] Section 48.193(1) provides specific jurisdiction if a non-resident defendant engages in any of the following specifically enumerated activities, *and* the cause of action arises out of that activity:  (1) conducting business or having an office or agency in this state; (2) committing a tortious act within this state; or (3) causing injury to persons or property within this state arising out of the defendant's solicitation or service activities within this state or the products processed, serviced, or manufactured by the defendant that are used or consumed in this state in the ordinary course of commerce. *See* Fla. Stat. § 48.193(1)(a), (b) and (f); *see also Sun Trust Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 2d 1246,

---

[7]    The reach of the Florida long-arm statute is a question of Florida law, and the statute is to be strictly construed. *Oriental Imps. & Exps., Inc.*, 701 F.2d at 890-91.

1269 (S.D. Fla. 2001) (there must be some "direct affiliation," "nexus," or "substantial

connection" between the cause of action and the activities alleged within the state to support

specific jurisdiction under Fla. Stat. § 48.193(1)).

The Florida long-arm statute also provides for general jurisdiction if a non-resident

defendant engages "in substantial and not isolated activity within this state." Fla. Stat. §

48.193(2). *See also Am. Overseas Marine Corp. v. Patterson*, 632 So.2d 1124, 1127-28 (Fla. 1st

DCA 1994) . As this Court has noted:

> Florida courts hold that "substantial and not isolated activity" means "continuous
> and systematic general business contact" with Florida. *Autonation, Inc. v.
> Whitlock*, 276 F. Supp. 2d 1258, 1262 (S.D. Fla. 2003) (citing *Woods v. Nova
> Cos. Belize Ltd.*, 739 So.2d 617, 620 (Fla. 4th Dist. Ct. App. 1999)). The
> "continuous and systematic" contacts requirement exceeds the constitutional due
> process requirement of "minimum contacts." *Id.* Because § 48.193(2) requires this
> high threshold, if a defendant's activities meet the statutory requirements of §
> 48.193(2), the minimum contacts standard is also satisfied. *Woods*, 739 So.2d at
> 620.

*Rexam Airspray, Inc. v. Arminak,* 471 F. Supp. 2d 1292, 1298 (S.D. Fla. 2007).

Accordingly, for general jurisdiction to exist, this Court must find the non-resident

Defendants each maintained "'continuous and systematic...contacts' with the forum, so that

[they] can properly be considered to be 'present' in the forum." *See Am. Overseas Marine

Corp.,* 632 So.2d at 1127 (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S.

408, 411-12 (1984)); *Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*, 792 F.2d 989,

992 (11th Cir. 1986).

As discussed below, far from having "continuous and systematic" contact with Florida,

the non-resident Defendants named in this action have *no contact* or *virtually no contact* with

Florida. *Cf. Parker v. Century 21 Edwards Real Estate*, 183 Fed. Appx. 869, 870-71 (11th Cir.

June 8, 2006) (upholding dismissal for lack of personal jurisdiction because, *inter alia*, defendant

11

did not have offices in Florida, did not employ anyone in Florida, did not file taxes in Florida, and did not advertise or solicit business in Florida).

### 3. The Exercise Of Personal Jurisdiction Must Comport With Fundamental Principles Of Due Process.

This Court's exercise of personal jurisdiction must comport with constitutional due process requirements. Due process requires that a nonresident defendant have certain minimum contacts with the forum so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. State of Washington,* 326 U.S. 310, 316 (1945); *see also Mother Doe I,* 2007 WL 2209258, *3.

Like the Florida long-arm statute, notions of due process contemplate both specific and general jurisdiction over non-resident Defendants. The Eleventh Circuit has explained that as to personal jurisdiction the constitutional due process analysis is a two-step inquiry. *See Madara,* 916 F.2d at 1515-16. First, this Court must determine whether each of these non-resident Defendants has the required minimum contacts with Florida. *See id.* at 1516. "Factors that go into determining whether sufficient minimum contacts exist include the foreseeability that the defendant's conduct will result in suit in the forum state and the defendant's purposeful availment of the forum's privileges and protections." *Taskey v. Burtis,* 785 So.2d 557, 559 (Fla. 4th DCA 2001). The minimum contacts analysis requires that the plaintiff's claims stem from or have a nexus to the defendant's activities in the forum state. *See, e.g., Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985). Moreover, the minimum contacts analysis is grounded in fairness and is designed to assure that "the defendant's conduct and connection with the forum State [is] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980); *Burger King,* 471 U.S. at 474.

12

Second, this Court must determine whether notions of fair play and substantial justice comport with the exercise of personal jurisdiction. *See Int'l Shoe Co.*, 326 U.S. at 316. The "fair play and substantial justice" prong of personal jurisdiction analysis requires consideration of five factors: (1) the degree to which the defendant has purposefully interjected itself in the forum state; (2) the burden of requiring the non-resident defendant to appear in the forum state; (3) the forum state's interest in the litigation; (4) the plaintiff's interest in obtaining relief in the forum; and (5) the shared interest of the several states in furthering substantive social policies. *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987); *World-Wide Volkswagen Corp.*, 444 U.S. at 292.

As discussed below, application of these legal standards for personal jurisdiction to the individual facts, circumstances and activities of each non-resident Defendant compels the conclusion that there is no personal jurisdiction over any of them.

## B.      THERE IS NO JURISDICTION OVER NESTLÉ S.A

### 1.      Plaintiffs' Complaint Fails On Its Face To Establish Jurisdiction.

Even had they effected proper service, Plaintiffs have still failed to allege any basis for this Court to assert jurisdiction over Nestlé S.A.[8] Indeed, Plaintiffs do not even come close to satisfying their burden. Plaintiffs' Complaint fails to set forth a single specific allegation

---

[8]    Plaintiffs first filed a Complaint against Nestlé U.S.A., Inc. ("Nestlé U.S.A."), along with other defendants on May 9, 2007. [D.E. 1] In early June 2007, counsel for Nestlé U.S.A. advised Plaintiffs' counsel that Nestlé U.S.A. was not a proper party to the litigation because it does no business in the pet food industry. Nonetheless, Plaintiffs filed an Amended Complaint on July 25, 2007, which not only continued to name Nestlé U.S.A. but also added Nestlé Purina PetCare and Nestlé S.A., as well as a number of other companies, as Defendants. [D.E. 153] Plaintiffs subsequently filed another version of the Amended Complaint on July 27, 2007 "correcting scrivener's errors" in the prior version but dropping none of the new Defendants. [D.E. 156]

establishing that Nestlé S.A. has any contacts with this forum. Rather, in the nearly 100 pages of the Complaint, Plaintiffs specifically refer to Nestlé S.A. only once (*i.e.*, that "Nestlé S.A. is a Swiss corporation") and instead improperly lump together all three named Nestlé entities (Nestlé S.A., Nestlé U.S.A. and Nestlé Purina PetCare) as "Nestlé." (Compl. ¶ 30). As the basis for asserting that venue is proper in this district, Plaintiffs allege (mistakenly) that "Defendants have manufactured for sale, marketed, advertised and sold commercial pet food in this District." (*Id.* ¶ 53). However, there are no specific factual allegations that Nestlé S.A. did any of these things. Plaintiffs' failure to plead sufficient jurisdictional facts requires as a threshold matter that this Court dismiss the Complaint against Nestlé S.A. *See, e.g., Am. Investors Life Ins. Co.*, 876 F. Supp. at 1282-83; *Tramel v. D'Angel Bedding Corp.*, 917 So.2d 982, 983-84 (Fla. 3d DCA 2005) (requiring dismissal of action against foreign defendant where plaintiff failed to allege sufficient jurisdictional facts).[9]

### 2. There Is No Basis For Personal Jurisdiction Under Florida's Long-Arm Statute.

Even if Plaintiffs' Complaint did include jurisdictional allegations, dismissal of Nestlé S.A. from the action still would be required, because, as demonstrated by the Frick Declaration,

---

[9]  Defendant Nestlé Purina PetCare Company ("Nestlé Purina PetCare") is a Missouri corporation, with its principal place of business in Missouri. (Frick Decl. ¶ 13). It produces, sells and advertises a variety of pet care products. (Frick Decl. ¶ 14); *see also* Compl. ¶ 30. Nestlé Purina PetCare is owned by Nestlé Holdings, Inc., a Delaware corporation that is a wholly-owned subsidiary of Nestlé S.A. (Frick Decl. ¶ 13). Nestlé Purina PetCare and Nestlé S.A. are separate, distinct corporations: Nestlé S.A. has separate corporate structures, facilities, work forces, business records, bank accounts, tax returns, financial information, and budgets from Nestlé Purina PetCare. (Frick Decl. ¶ 15). Nestlé Purina PetCare makes decisions concerning the manufacturing, labeling, sales, advertising and marketing of its products, negotiates and executes sales agreements, markets and otherwise promotes its products, manages its personnel and handles all other day-to-day operations without the control of Nestlé S.A. (Frick Decl. ¶¶ 15-17). Moreover, Nestlé S.A. has no control over, or responsibility for, Nestlé Purina PetCare's manufacturing, labeling, sales, advertising or marketing strategies. *Id.*

14

Nestlé S.A. does not have any of the requisite contacts with the state of Florida. Nestlé S.A. is a Swiss corporation headquartered in Vevey, Switzerland. (Frick Decl. ¶ 2). It is not a Florida corporation, and it has no registered agent in Florida. (Frick Decl. ¶¶ 2, 5). Nestlé S.A. does not conduct any business in the state of Florida, or anywhere in the United States. Specifically, as evidenced by the Frick Declaration, Nestlé S.A.: (1) does not manufacture, label, sell, advertise or market products in the United States; (2) does not maintain any office or place of business in the United States; (3) does not have any officer or employee residing in the United States; (4) does not have any real estate, phone listing, mailing address or bank account located in the United States; (5) is not licensed to do business in the United States; and (6) has none of the foregoing contacts with the state of Florida. (Frick Decl. ¶¶ 5-12).

        In factually analogous situations, courts have refused to assert personal jurisdiction under Florida's long-arm statute. For example in *Air Turbine Tech., Inc. v. Atlas Copco AB*, 235 F. Supp. 2d 1287 (S.D. Fla. 2002), the court found no personal jurisdiction over a Swedish holding company where, as here, the holding company showed through a sworn affidavit that it did not engage in any business within the state of Florida; did not manufacture, distribute, market or sell products; and did not have an office or any employees or agent working within Florida. *Id.* at 1290. The court therefore found no basis for jurisdiction under Fla. Stat. § 48.193(1)(a) and dismissed the foreign holding company from the action. *Id.* at 1291; *see also MeterLogic, Inc.*, 126 F. Supp. 2d at 1346 (parent corporations not subject to personal jurisdiction under Florida long-arm statute where it had no offices within the state of Florida and established through affidavit that it did not do any business within the state). As evidenced by the Frick Declaration, the same result should be obtained here.

Likewise, Florida courts have refused to assert jurisdiction where, as here, Plaintiffs have failed to show (and, indeed, cannot show) that Nestlé S.A. "committed a *substantial aspect* of the alleged tort in Florida" and that the alleged tort caused injury in Florida. *L.O.T.I. Group Prods. v. Lund,* 907 F. Supp. 1528, 1532 (S.D. Fla. 1995) (emphasis in original); *Musiker,* 960 F. Supp. at 296-97. Plaintiffs have not specifically alleged any facts demonstrating that Nestlé S.A. itself has any involvement in the allegedly tortious conduct at issue in this action. Moreover, as the Frick Declaration makes clear, Nestlé S.A. does not manufacture, label, sell, advertise or market *any* products in the state of Florida (much less the pet food products at issue in the Complaint), and it is not involved in manufacturing, labeling, sales, advertising and marketing decisions and practices of its independent subsidiary, Nestlé Purina PetCare. (Frick Decl. ¶¶ 3, 5-12, 15-17). Again, faced with facts like these, courts have consistently refused to assert personal jurisdiction over foreign corporations under section (1)(b). *See, e.g., Air Turbine,* 235 F. Supp. 2d at 1291 (plaintiffs failed to establish prima facie showing that Swedish holding company was subject to personal jurisdiction under § 48.193(1)(b) where it did not manufacture, distribute or market any products and did not engage in any business in Florida); *MeterLogic,* 126 F. Supp. 2d at 1346.

For similar reasons, there is no jurisdiction over Nestlé S.A. under Fla. Stat. § 48.193(1)(f), which provides for jurisdiction over foreign defendants whose acts or omissions outside of Florida cause injury within the state. Again, the Complaint is devoid of any specific allegations that Nestlé S.A. committed any acts or omissions causing injury to persons within the state of Florida. That alone is fatal to Plaintiffs' baseless attempt to drag Nestlé S.A. into this litigation. *See Tramel,* 917 So.2d at 983-84. As the Frick Declaration makes clear, Nestlé S.A. is not engaged in any service activities within this state and does not manufacture, process or service "products, materials or things ... used or consumed in this state in the ordinary course of

16

commerce, trade or use" under Fla. Stat. § 48.193(1)(f).  (*See* Frick Decl. ¶¶ 5-12).  For that

reason, jurisdiction under this subsection is also not available.  *See Plantation-Pioneer Indus.*

*Corp. v. Koehler*, 689 So.2d 1293, 1295 (Fla. 4th DCA 1997); *Blumberg v. Steve Weiss & Co.,*

*Inc.*, 922 So.2d 361, 365 (Fla. 3d DCA 2006).

Plaintiffs have further failed to allege or demonstrate that Nestlé S.A. engaged in

"substantial and not isolated" business activities in Florida or otherwise availed itself of the

privilege of conducting business in this state.  *Rexam Airspray,* 471 F. Supp. 2d at 1298.

"Substantial and not isolated activity means 'continuous and systematic general business contact'

with Florida."  *Einmo v. Aecom Gov't Servs., Inc.*, No. 8:06-CV-1371, 2007 WL 2409816, *6

(M.D. Fla. Aug. 21, 2007).  Plaintiffs have failed completely to make the required showing here.

As Nestlé S.A. is not engaged in *any* business activity in the state of Florida, *see* Frick  Decl. ¶¶

5-12, let alone the "continuous and systematic" general business contacts with Florida required

to assert jurisdiction under Fla. Stat. § 48.193(2), dismissal is required.  *See Rexam Airspray*, 471

F. Supp. 2d at 1298 ("If a court determines that it has no personal jurisdiction over a defendant,

then the defendant has an unqualified right to have an order granting its motion to dismiss.")

(internal quotation omitted).

### 3.    The Exercise Of Personal Jurisdiction Over Nestlé S.A. Would Violate Fundamental Principles Of Due Process.

As noted, Nestlé S.A. does not have *any* contacts with the state of Florida, let alone the

requisite minimum contacts required by the Due Process Clause.  *See Helicopteros Nacionales*

*de Colombia, S.A.*, 466 U.S. at  411.  Moreover, haling Nestlé S.A. into a court in Florida, where

Nestlé S.A. has no contacts in a dispute that involves the manufacturing, labeling, sales and

marketing practices of an industry in which it conducts no business, would most certainly *not*

comport with even a skewed notion of fair play and substantial justice.  As the Supreme Court

has recognized, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co.*, 480 U.S. at 114. It would not be reasonable for this Court to impose upon Nestlé S.A. – a Swiss corporation – the unique burden of defending itself here. *Id.*

Plaintiffs are responsible for investigating their case and having a sound basis for jurisdiction and liability against a party before naming that party as a defendant. The law does not permit Plaintiffs to persist in asserting claims against a foreign corporation for which there is no basis to assert personal jurisdiction or liability – particularly where, as here, Plaintiffs have been specifically informed on numerous occasions that there is no factual or legal basis for asserting jurisdiction. Accordingly, Nestlé S.A. respectfully requests that the Court dismiss the Complaint with prejudice as to Nestlé S.A., award its legal fees and costs associated with bringing this Motion, and grant such other relief as the Court deems just and proper.

### C.    THERE IS NO JURISDICTION OVER H.E. BUTT GROCERY COMPANY.

#### 1.    Plaintiffs' Complaint Fails On Its Face To Establish Jurisdiction Over HE Butt.

The lion's share of Plaintiffs' Complaint treats the Defendants collectively, and does not indicate which, if any, of the representative Plaintiffs purchased pet food from HE Butt Grocery Company ("HE Butt"). Plaintiffs' Complaint does not even set forth one single allegation of any contact between HE Butt and the state of Florida under either the specific or general jurisdictional bases set out in the Florida long-arm statute. Rather, the sole specific allegation even mentioning HE Butt by name asserts merely that HE Butt is a Texas corporation with its principal place of business in Texas and alleges (incorrectly) that HE Butt sells the offending pet food products in its grocery stores in Texas and other unspecified states:

18

> Defendant, H.E. Butt Grocery Company ("HE Butt"), is a Texas corporation with its principal place of business in San Antonio, Texas. HE Butt is in the business of distributing, advertising and/or selling Defendant Manufacturers' pet food products in its grocery stores in Texas and other states. HE Butt adopts the marketing representations of the Defendant Manufacturers by placing point of purchase advertising at or near the Defendant Manufacturers [sic] pet food in its retail stores. HE Butt markets and advertises the Defendant Manufacturers' commercial pet food products with the intent to induce consumers to purchase its products.

(*See* Compl. ¶ 45). Plaintiffs' complete failure to plead sufficient jurisdictional facts requires that this Court dismiss their Complaint against HE Butt.

### 2.    There Is No Basis For Personal Jurisdiction Over HE Butt Under The Florida Long-Arm Statute.

Even if Plaintiffs had included jurisdictional allegations in their Complaint – which they did not – this Court nevertheless must dismiss their action against HE Butt because as demonstrated by the affidavit of Andrew Liang, Plaintiffs cannot satisfy the requirements of either specific or general jurisdiction under the Florida long-arm statute. As Plaintiffs admit in their Complaint, HE Butt is a Texas corporation with its principal place of business in Texas. (*See* Affidavit of Andrew Liang, attached as **Exhibit B** ¶ 4). But contrary to Plaintiffs' allegations, HE Butt is a holding company only, and does not own or operate any grocery stores, in Texas or in any other state. (*Id.* ¶ 5). Rather, all stores known as "HEB" grocery stores are owned and/or operated by HEB Grocery Company, L.P., not H.E. Butt Grocery Company, the entity plaintiffs have sued in this case. (*Id.* ¶ 6). HE Butt is not qualified to do business in Florida, nor does it have a principal place of business or any offices or agents there. (*Id.* ¶ 7). HE Butt does not own or lease any personal or real property in Florida, nor does it have a telephone listing, bank account, or mailing address in Florida. (*Id.* ¶ 8). Finally, HE Butt does not conduct any business, generate any income, or engage in any marketing of pet food or any other products in Florida. (*Id.* ¶ 9-10).

In short, HE Butt has absolutely no contact with the state of Florida, and thus Plaintiffs cannot satisfy the requirements of the Florida long-arm statute. Accordingly, their claims against HE Butt must be dismissed for lack of jurisdiction.

### 3.    There Is No Basis for Personal Jurisdiction Over HE Butt Under The Due Process Clause.

Because Plaintiffs cannot satisfy the Florida long-arm statute, this Court need not address whether they can meet the requirements of Due Process under the Fourteenth Amendment. *Perry Ellis Int'l, Inc.*, 2007 WL 712389, *2. Nevertheless, the affidavit of Andrew Liang, discussed above, similarly establishes that personal jurisdiction over HE Butt is constitutionally insupportable. Plaintiffs have not alleged any activity on HE Butt's part that was purposefully directed at any resident of Florida, nor have they asserted any injury arising out of or relating to such an activity. Indeed, they cannot, because HE Butt has no contact whatsoever with Florida or its residents. Furthermore, because HE Butt does not conduct any business in Florida, Plaintiffs cannot rely on principles of general jurisdiction to save their claims. Therefore, even if this Court were required to consider *in personam* jurisdiction under the Due Process Clause, it still would be required to dismiss all Plaintiffs' claims against HE Butt for lack of jurisdiction.

### D.    THERE IS NO JURISDICTION OVER SAFEWAY, INC. AND THE STOP & SHOP SUPERMARKET COMPANY LLC.

### 1.    Plaintiffs Have Failed To Allege That The Court Has Personal Jurisdiction Over Safeway And Stop & Shop.

Plaintiffs have also failed to allege any basis for personal jurisdiction over Safeway, Inc. ("Safeway") or The Stop & Shop Supermarket Company LLC ("Stop & Shop"). Despite its length, the only allegations of the Complaint specifically directed at either Safeway or Stop & Shop are located at paragraphs 44 (as to Safeway) and 47 (as to Stop & Shop). These essentially identical paragraphs allege that Safeway and Stop & Shop are in the business of manufacturing,

selling and marketing their own and other brands of pet food at their "grocery stores." Plaintiffs

further allege that Safeway markets and sells the "commercial pet food at issue" in "California

and other states," and that Stop & Shop does so in "Massachusetts and other states." (Compl. ¶¶

44, 47).

Tellingly, Plaintiffs do not specify the "other states" where Safeway and Stop & Shop

allegedly conduct these commercial pet food activities. With respect to the state of Florida,

Plaintiffs say absolutely nothing in those paragraphs, or anywhere else in the Complaint,[10] about

any sales, advertisement, marketing or other pet food activities in Florida by either Safeway or

Stop & Shop – which is not surprising because Safeway and Stop & Shop have not conducted

any such activities in Florida.

Safeway is a Delaware corporation with its principal place of business in Pleasanton,

California. Safeway is in the business of food and drug retail sales. Safeway operates retail

stores in the District of Columbia and 21 states, including California, Oregon, Washington,

Alaska, Colorado, Arizona, Texas, Illinois and Virginia. Safeway has no stores south of

Northern Virginia. Safeway does not have retail stores in the state of Florida. Safeway has no

office, facilities, employees, or operations in Florida. It has not manufactured, distributed, sold,

marketed, promoted or advertised any products, including commercial pet food products, in

Florida. (*See* Declaration of Laura A. Donald ("Donald Decl."), attached as **Exhibit C, ¶¶** 2-12).

Stop & Shop is a limited liability company organized in the state of Delaware, with its

principal place of business in Quincy, Massachusetts. Stop & Shop is in the business of

---

[10]    Plaintiffs' general and vague allegation in paragraph 53 that venue is proper because the "Defendants have systematically manufactured for sale, marketed, advertised and sold commercial pet food in this District" is wholly insufficient to establish the necessary factual basis for personal jurisdiction over non-resident Defendants, as explained below.

operating retail food stores.  Stop & Shop's retail stores are located in Massachusetts, Connecticut, New York, New Jersey, Rhode Island, New Hampshire and Maine.  Stop & Shop does not have retail stores in the state of Florida.  Stop & Shop has no office, facilities, employees, or operations in Florida.  It has not manufactured, distributed, sold, marketed, promoted or advertised any products, including commercial pet food products, in Florida. (*See* Declaration of Steven F. Rowell ("Rowell Decl."), attached as **Exhibit D**, ¶¶ 2-12).

The Complaint does not allege any basis whatsoever for this Court's personal jurisdiction over Safeway and Stop & Shop.  This facial deficiency is sufficient to warrant dismissal of the Complaint.  *See, e.g., Mother Doe I*, 2007 WL 2209258, *2; *MeterLogic, Inc.*, 126 F. Supp. 2d at 1353; *Am. Investors Life Ins. Co.*, 876 F. Supp. at 1282-83.

As noted above, Plaintiffs have alleged that venue, as opposed to personal jurisdiction, is proper "because the Defendants have systematically manufactured for sale, marketed, advertised and sold commercial pet food in this District," without differentiating as to any of the Defendants. (Compl. ¶ 53).  One is left to wonder which Defendant allegedly performed any of those particular acts in this District.  Plaintiffs do not make any such allegation specifically as to Safeway or Stop & Shop, either in the only two paragraphs directed at those two Defendants (¶¶ 44, 47), or anywhere else in the Complaint.[11]

Plaintiffs' personal jurisdiction burden is to allege material facts as to each individual Defendant, and they may not lump all Defendants together for that purpose.  *See Mother Doe I*,

---

[11]   The only other allegations in the Complaint regarding the purported location of the Defendants' activities are found in Counts I-XII, where Plaintiffs continue to lump all Defendants together by vaguely and generally alleging that Defendants were engaged in the business of manufacturing, distributing, marketing, promoting, advertising and selling pet food "throughout the United States." (Compl. ¶¶ 166, 183, 191, 202, 212, 221, 231, 239-240, 248-249 and 255-256).

2007 WL 2209258, *7; *see also Keeton*, 465 U.S. at 781 n. 13. Thus, the allegations of the Complaint, including paragraph 53, are wholly insufficient to meet the threshold requirement of pleading a factual basis for this Court's personal jurisdiction over Safeway and Stop & Shop.

> **2.    Even If Plaintiffs Had Alleged The Existence Of Personal Jurisdiction, Safeway And Stop & Shop Do Not Have The Requisite Contacts With Florida.**

In this case, Plaintiffs have wholly failed to meet their initial pleading burden with respect to personal jurisdiction. The Complaint does not allege the existence of either specific or general jurisdiction over Safeway or Stop & Shop. Indeed, the Complaint does not address this Court's personal jurisdiction at all. To eliminate any question that neverthless might exist, Safeway and Stop & Shop set forth below the absence of any factual basis for this Court's personal jurisdiction over them.

> **a.    The Amended Complaint Does Not Allege That Safeway Or Stop & Shop Committed Any Of The Acts Required For Personal Jurisdiction Pursuant To Florida's Long-Arm Statute.**

With respect to specific personal jurisdiction, Plaintiffs do not allege that their claims arise from any particular business, tort, contract, solicitation, service, or any act by Safeway or Stop & Shop in Florida. *See* Fla. Stat. § 48.193(1) (enumerating acts that subject a defendant to specific jurisdiction). Indeed, Plaintiffs do not allege that (i) any particular Plaintiff purchased pet food manufactured or sold by Safeway or Stop & Shop, either in Florida or anywhere else; (ii) any Plaintiff was influenced to buy pet food by any particular Defendant's allegedly misleading statement by Safeway or Stop & Shop, either in Florida or anywhere else; or (iii) any Plaintiff's pet suffered adverse health consequences from consuming any Safeway or Stop & Shop product, either in Florida or anywhere else. Clearly there is no allegation of any substantial connection between the Plaintiffs' claims and the activities of Safeway or Stop & Shop in

Florida, as required by Fla. Stat. § 48.193(1) for specific jurisdiction. *See, e.g., Meterlogic, Inc.,* 126 F. Supp. 2d at 1346; *L.O.T.I. Group Prods.,* 907 F. Supp at 1532.

> **b.    Safeway And Stop & Shop Do Not Have The Individual Contacts With Florida Sufficient To Establish Personal Jurisdiction.**

With respect to general personal jurisdiction, Plaintiffs must allege and prove that Safeway and Stop & Shop have engaged in "*substantial* and not isolated activity" in Florida within the scope of Fla. Stat. § 48.193(2).  No such facts are alleged or exist in this case with respect to Safeway and Stop & Shop.  As set forth in the attached Donald and Rowell Declarations, Safeway and Stop & Shop do not have continuous and systematic contacts, or any specific contacts related to this lawsuit, with Florida.  Neither Defendant operates retail stores or other facilities in the state of Florida, owns or leases property in the state of Florida, has employees in the state of Florida, has bank or investment accounts in the state of Florida, or maintains an office, mailing address, or telephone listing in the state of Florida.  (*See* Donald Decl. ¶¶ 2-12 and Rowell Decl. ¶¶ 2-12).  Safeway and Stop & Shop thus do not have the contacts necessary for general jurisdiction under Florida's long-arm statute.

Furthermore, even if the Court considers the insufficient allegations in the Complaint that lump Defendants together as having manufactured for sale, marketed, advertised and sold commercial pet food "in this District" or "throughout the United States," (Compl. ¶¶ 53, 166, 183, 191, 202, 212, 221, 231, 239-240, 248-249 and 255-256), those allegations are incorrect as to Safeway and Stop & Shop.  As set forth in the attached Donald and Rowell Declarations, neither Safeway nor Stop & Shop has manufactured, distributed, sold, marketed, promoted or advertised any products, including commercial pet food products, in Florida.  (*See* Donald Decl. ¶ 8 and Rowell Decl. ¶ 8).  Therefore, Safeway and Stop & Shop do not have the contacts

necessary to meet either the specific jurisdiction or general jurisdiction requirements of the Florida long-arm statute, no matter how Plaintiffs' general and vague allegations are construed.

### 3. Exercising Personal Jurisdiction Over Safeway And Stop & Shop Does Not Comport With Constitutional Due Process Requirements.

The minimum contacts due process requirement cannot be met for the same reasons that Safeway's and Stop & Shop's contacts are insufficient under Florida's long-arm statute. The Complaint does not allege any specific acts by Safeway or Stop & Shop in Florida. Moreover, as set forth in the attached Donald and Rowell Declarations, Safeway and Stop & Shop have had no such contacts with Florida. *See Helicopteros Nacionales de Colombia, S.A.,* 466 U.S. at 411. Based on the utter lack of sufficient contacts by Safeway or Stop & Shop with Florida, they could not have reasonably foreseen that they would be sued in Florida for the acts alleged in the Complaint. They have not purposefully availed themselves of the forum's privileges and protections.

Hauling Safeway and Stop & Shop into this Court in Florida would also offend traditional notions of fair play and substantial justice. Defending this action in Florida would be an unfair burden upon Safeway and Stop & Shop, which do not have operations in Florida and do not manufacture, sell, market or advertise any products, such as the commercial pet food at issue, in Florida. Moreover, Florida has no interest in adjudicating a dispute arising from activities that, as to Safeway and Shop & Stop, have no relation whatsoever to Florida. Requiring Safeway and Stop & Shop to defend this lawsuit in Florida would run afoul of the U.S. Constitution's due process requirements, and accordingly, the Complaint should be dismissed as to Safeway and Stop & Shop for lack of personal jurisdiction.

### E.     THERE IS NO JURISDICTION OVER MEIJER, INC.

Plaintiffs likewise fail to allege any basis for the Court to assert jurisdiction over Meijer, Inc. ("Meijer"). Plaintiffs' Complaint includes only one specific allegation as to Meijer and to an entity they named "Meijer Supermarkets, Inc.,"[12] which has been dismissed from the action:

> Defendant, Meijer Inc., is a Michigan corporation with its principal place of business in Grand Rapids, Michigan[13] and Defendant Meijer Supermarkets, Inc., is a Michigan corporation with its principal place of business in Grand Rapids, Michigan (collectively "Meijer"). Meijer is in the business of manufacturing, producing, distributing, advertising and/or selling Defendant pet food products. Meijer markets and sells the Defendant Manufacturers' brands of commercial pet food in its grocery stores in Michigan and other states.   Meijer adopts the marketing representations of the Defendant Manufacturers by placing point of purchase advertising at or near the Defendant Manufacturers [sic] pet food in its retail stores.   Meijer markets and advertises its commercial pet food with the intent to induce consumers to purchase its products.

(*See* Compl. ¶ 46.)  Plaintiffs allege neither that any one of them purchased food sold or manufactured by Meijer in the state of Florida nor that Meijer, Inc. ever advertised in Florida.

In fact, Meijer:

a.      does not own or operate any grocery stores in Florida;

b.      is not qualified to do business in Florida;

c.      does not have a principal place of business in Florida;

d.      does not have any offices or agents in Florida;

e.      does not own or lease tangible personal or real property in Florida;

f.      does not have a telephone listing, bank account or mailing address in Florida; and

---

[12]     "Meijer SuperMarkets, Inc." does not exist as a legal entity.  (*See* Affidavit of Robert VerHeulen ("VerHeulen Aff."), attached as **Exhibit E**, ¶ 8).

[13]     (*See* VerHeulen Aff., ¶ 3) (confirming allegation).

g.    at all times relevant to the allegations in the action, engaged in no

advertisement, marketing or sale of pet food or other products from retail stores

located in Florida.  (*See* VerHeulen Aff., ¶¶ 4-7).

The analysis put forward above with respect to the other non-resident Defendants applies

equally to Meijer, which should be dismissed from this action because it has no contacts, and

has had no contact, with the state of Florida.  Meijer meets none of the requirements of

Florida's long-arm statute.  Fla. Stat. § 48.193.  Plaintiffs' operative pleading also fails to

satisfy the requirements of the Due Process Clause of the Fourteenth Amendment to the U.S.

Constitution.

Meijer, therefore, respectfully requests that the Court dismiss the Complaint as to Meijer

for lack of personal jurisdiction.

**F.    THERE IS NO JURISDICTION OVER PET SUPPLIES "PLUS"
AND PET SUPPLIES PLUS/USA, INC.**

**1.    Plaintiffs' Complete Failure To Meet Their Initial Burden Of
Pleading Sufficient Material Facts Necessary To Establish A
Basis Of Personal Jurisdiction Over Pet Supplies "Plus" and
Pet Supplies Plus/USA, Inc. Requires Dismissal Of The
Complaint.**

The Plaintiffs' Complaint is fatally deficient in that it fails to assert any factual basis for

personal jurisdiction over Pet Supplies "Plus" (hereinafter "PLUS")[14] and Pet Supplies

Plus/USA, Inc.[15] (hereinafter "USA"), and thus, fails to make a prima facie case for personal

jurisdiction over either of these non-resident Defendants.  Plaintiffs' Complaint makes one

---

[14]    As further detailed and explained in sub-section 2 below, Plus is not a legal entity.  (*See*
Affidavit of Harvey Solway ("Solway Aff."), attached as **Exhibit F.**)  Specifically, PLUS is
not a corporate entity and is solely a trade name licensed for use by USA's franchisees.

[15]    The Plaintiffs have incorrectly stated USA's registered corporate name.  It is Pet Supplies
"Plus"/USA, Inc.

material reference to USA and numerous allegations against PLUS[16] - which are insufficient to

overcome dismissal. Specifically, the only paragraphs making relevant jurisdictional allegations

to PLUS and USA assert merely that these entities are Michigan corporations with their principal

place of business in Michigan. (Compl. ¶ 51). The same paragraph also alleges (incorrectly) that

PLUS and/or USA are in the business advertising, distributing, selling and making

recommendations to consumers regarding dog or cat food in its "retail stores." *Id*. Moreover,

Plaintiffs further allege in the same paragraph that PLUS markets, sells and makes

recommendations to consumers regarding the pet food at issue "in Michigan and other states."

*Id*. Paragraph 51 of the Complaint, reads as follows:

> Defendant, Pet Supplies "Plus" ("Pet Supplies Plus") [PLUS], is a Michigan
> corporation with its principal place of business in Michigan and Pet Supplies
> Plus/USA Inc. [USA] is a Michigan corporation with its principal place of
> business in Michigan. Pet Supplies[17] is in the business of advertising,
> distributing, selling and making recommendations to consumers regarding dog
> and/or cat food. Pet Supplies Plus [PLUS] markets, sells and makes
> recommendations to consumers regarding pet food at issue in Michigan and other
> states. Pet Supplies Plus [PLUS] adopts the marketing representations of the
> Defendant Manufacturers' by placing point of purchase marketing materials near
> the Defendant Manufacturers' pet food in its retail stores. Pet Supplies Plus
> [PLUS] markets and advertises the Defendant Manufacturers' commercial pet
> food products with the intent to induce consumers to purchase these products.

(Compl. ¶ 51).

The well-settled law in this jurisdiction imposes a burden on the Plaintiffs to plead

sufficient material facts to establish the basis for the exercise of personal jurisdiction over a non-

resident, and the subject Complaint simply does not and cannot allege any factual basis for this

---

[16]   Unlike the sole reference to USA, the Plaintiffs Complaint does assert allegations against
PLUS (Compl. ¶¶ 51, 97, 166 and 167) none of which cure the jurisdictional maladies which
warrant dismissal of the Complaint.

[17]   Plaintiffs fail to identify whether "Pet Supplies" as set forth therein pertains to USA or
PLUS.

Court's personal jurisdiction over USA and PLUS. This facial deficiency is sufficient to warrant dismissal of the Complaint. *Mother Doe I*, 2007 WL 2209258, at \*2; *Miami Breakers Soccer Club, Inc.*, 140 F. Supp. 2d at 1328; *MeterLogic, Inc.*, 126 F. Supp. 2d at 1353; *Am. Investors Life Ins. Co.*, 876 F. Supp. at 1282-83.

Instead, a plain reading of paragraph 51 of the Complaint demonstrates that the Plaintiffs did not so much as make an attempt to carry the burden imposed by law. Specifically, the *only* material fact pled by the Plaintiffs concerning personal jurisdiction states, "*Pet Supplies Plus* [PLUS] markets, sells and makes recommendations to consumers regarding the commercial pet food at issue in its retail stores in Michigan *and other states.*" (Compl. ¶ 51) (emphasis added). This sole jurisdictional allegation, directed only at PLUS, fails to meet the prima facie burden imposed by law as Plaintiffs do not plead a single material fact demonstrating how any of PLUS' alleged conduct and/or activity *in Michigan* supports personal jurisdiction *in Florida*. Plaintiffs make no allegations of any contact between PLUS and/or USA and the state of Florida in this paragraph, or anywhere else in the Complaint. The only specific jurisdiction in which Plaintiffs allege and contact by PLUS and/or USA is the State of Michigan. Plaintiffs' Complaint is silent as to the "other states" where PLUS and USA allegedly conducted these commercial pet food activities. Here, even without passing on the fact that PLUS is solely a trade name incapable of the conduct alleged (Section 2 below), the Complaint is again fatally defective. Accordingly, this Court need not conduct further analysis under Florida's long-arm statute (Fla. Stat. § 48.193) and, thereafter, the Due Process Clause of the Fourteenth Amendment, as the Plaintiffs' bare allegation render the Complaint subject to dismissal with prejudice.

As stated above, the sole jurisdictional allegation relative to non-resident Defendants PLUS and USA pertain only to PLUS. Accordingly, under similar analysis, Plaintiffs have

utterly failed to make any allegation (jurisdictional or otherwise) against USA. Therefore, USA should be dismissed as a party for lack of personal jurisdiction as a threshold issue. Here, as with their failure to state a claim upon which relief can be granted, the Plaintiffs fail to make a prima facie case for personal jurisdiction over USA, and, thus, no further Florida long-arm statute (Fla. Stat. § 48.193) and/or Due Process inquiry is required by this Court. Simply stated, the Plaintiffs have remained silent as to personal jurisdiction over USA and under well settled law their silence warrants dismissal with prejudice.

PLUS and USA, therefore, respectfully requests that the Court dismiss the Complaint as to these Defendants for lack of personal jurisdiction.

> **2.     The Plaintiffs' Complaint Fails To State A Claim Upon Which Relief Can Be Granted Against PLUS As It Is Nothing More Than A Trade Name.**

Unlike the sole reference to USA, the Plaintiffs' Complaint does assert allegations against PLUS. (Compl. ¶¶ 51, 97, 166 and 167). However, the Plaintiffs' allegations cannot, pursuant to Federal Rule of Civil Procedure 12 (b)(6)[18], stand as pled as PLUS is nothing more than a trade name. (*See* Solway Aff.) Specifically, PLUS is not a corporate entity and is solely a trade name licensed for use by USA's franchisees. *Id.* Accordingly, this Court should dismiss PLUS as a party to this action by virtue of its non-existence and inability to afford relief to the Plaintiffs for any allegations advanced against it – which clearly a trade name could not have performed. This defect is fatal and requires dismissal with prejudice.

---

[18]   Similarly, this Court is also without subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1), over PLUS as it has no citizenship recognizable under the laws of any state. Moreover, the Plaintiffs' service of process on a non-existent entity by definition is defective and subject to dismissal pursuant to Fed.R.Civ.P. 12(b)(4) and (5).

### G.    THERE IS NO JURISDICTION OVER NEW ALBERTSONS, INC.

#### 1.    The Complaint Contains Only A Single Reference To New Albertsons, Inc.

Plaintiffs' Complaint is virtually void of allegations pertaining to New Albertsons, Inc. ("New Albertsons"). There is only one substantive paragraph discussing the company. (*See* Compl. ¶ 42). While that paragraph accurately states that New Albertsons is a Delaware corporation with its principal place of business in Boise, Idaho, it incorrectly groups New Albertsons and Albertsons LLC into one collective entity described as "Albertson's" and asserts that both companies sell pet food in their "grocery stores in Florida and other states." *Id.* This is the only paragraph that seeks to tie New Albertsons to the state of Florida and its allegations are incorrect. New Albertsons and Albertsons LLC are completely separate entities. New Albertsons does not sell pet food, or any food for that matter, in the state of Florida. (*See* Affidavit of Julie T. Backe ("Backe Aff. ¶ ___"), attached as **Exhibit G, ¶** 4).

In June 2006, the company formerly known as Albertson's, Inc., was sold to three separate entities: Supervalu, Inc., CVS, Inc., and AB Acquisition LLC. (*See* Affidavit of Daniel S. Day ("Day Aff. ¶ __"), attached as **Exhibit H, ¶** 1). Albertsons stores in Southern California, Idaho, Montana, Nevada, North Dakota, Oregon, Utah, Washington and Wyoming were acquired by Supervalu, through a wholly-owned subsidiary now called New Albertsons, Inc. (*See* Backe Aff. ¶ 3, Day Aff. ¶ 2). Albertsons LLC, a subsidiary of AB Acquisition LLC, acquired Albertsons stores located in other parts of the country, including Florida. (Day Aff. ¶ 3). New Albertsons did qualify to do business in Florida in May 2006, but apart from filing a statutorily required Uniform Business Report with the Florida Department of State, its only presence in the state of Florida is a registered agent. (*See* Backe Aff. ¶ 2). For example, New Albertsons does

not maintain an office or bank account in the state nor does it have a single Florida employee.

(*Id.* ¶ 5).

### 2.    Plaintiffs' Failure To Meet Their Initial Pleading Burden Warrants Dismissal.

As discussed above, Plaintiffs bear "the burden of proving facts which clearly justify" the exercise of personal jurisdiction. *Oriental Imps. & Exps., Inc.*, 701 F.2d at 891; *Future Tech.*, 218 F.3d at 1249. In failing to set forth a single, specific *factual* allegation to justify personal jurisdiction over New Albertsons in Florida (as opposed to the one conclusory statement), Plaintiffs have not met their initial pleading burden and dismissal is warranted on this ground alone. *See, e.g. Am. Investors Life Ins. Co.*, 876 F. Supp. at 1282-83.

### 3.    New Albertsons Is Not Subject To Personal Jurisdiction Under The Florida Long-Arm Statute.

Assuming, for the sake of argument that the Complaint contains adequate allegations to meet Plaintiffs' initial pleading burden, the facts demonstrate that New Albertsons is not subject to personal jurisdiction under the Florida long-arm statute. Although it is difficult to discern the legal theories behind Plaintiffs' asserted causes of action, the core allegations stem from pet food advertising and sales practices. Plaintiffs appear to allege that the pet food industry erroneously sells and advertises its dog and cat food products as healthy and nutritious without fully explaining the health effects of the ingredients contained in the food. Thus, for the claims at issue to "arise from" any contacts New Albertsons may have with the state of Florida under § 48.193(1), it must be true that, at a bare minimum, New Albertsons sells or advertises pet food in Florida. New Albertsons does neither. (Backe Aff. ¶ 4).

With regard to the general jurisdiction provision of § 48.193(2), the only jurisdictional allegation pertaining to New Albertsons stems from the improper attempt to lump New Albertsons and Albertsons LLC into one entity. (Compl. ¶¶ 1, 42). Of course, New Albertsons

and Albertsons LLC are separate entities with separate ownership, retail stores, and management. New Albertsons does not conduct retail operations in Florida. (Backe Aff. ¶ 4). In fact, New Albertsons has virtually no contact with Florida. It does not own or operate any Albertsons stores in Florida, does not sell products in Florida, and does not have an office in the state. (*Id.* ¶¶ 4, 5). The company does not have a bank account or any employees in Florida. (*Id.* ¶ 5). *Cf. Parker*, 183 Fed. Appx. at 870-71.

While New Albertsons has a registered agent in the state (Backe Aff. ¶ 2), the mere presence of a registered agent in Florida does not alter the equation. The Eleventh Circuit, siding with other circuits that have addressed the issue, has held that the appointment of a registered agent is insufficient to confer general personal jurisdiction over a corporation: "The casual presence of a corporate agent in the forum is not enough to subject the corporation to suit where the cause of action is unrelated to the agent's activities." *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000) (*citing Bankhead Enterprises, Inc. v. Norfolk & Western Railway Co.*, 642 F.2d 802, 805 (5th Cir., Unit B, April 15, 1981)); *Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 183 (5th Cir. 1992) ("To assert, as plaintiffs do, that mere service on corporate defendant automatically confers general jurisdiction displays a fundamental misconception of corporate jurisdictional principles…A registered agent, from any conceivable perspective, hardly amounts to 'the general business presence' of a corporation so as to sustain an assertion of general jurisdiction") (additional citations omitted); *see also Sofrar, S.A. v. Graham Engineering Corp.*, 35 F. Supp. 2d 919, 921 (S.D. Fla. 1999) (finding no general jurisdiction under Florida's long-arm statute, even though defendants appointed an agent for service of process and were registered to do business in the state). Thus, the requirements of the long-arm statute have not been met and New Albertsons is not subject to personal jurisdiction in

Florida. *See, e.g., Casita, L.P. v. Maplewood Equity Partners L.P.*, 960 So.2d 854, 856 (Fla. 3d DCA 2007).

### 4.    Subjecting New Albertsons To Specific Personal Jurisdiction Would Run Afoul Of The Due Process Clause.

Fundamental principles of due process also counsel against subjecting New Albertsons to suit in Florida. New Albertsons virtually non-existent contacts are significantly more limited than in other cases where courts ruled that personal jurisdiction would be inconsistent with the due process clause. *Madara*, 916 F.2d at 1517 (eight performances, distribution of recordings and participation in partnership owning interests in Florida not sufficient); *Pace v. Platt*, No. 3:01-CV- 471/LAC, 2002 WL 32098709, *8 (N.D. Fla. Sept. 10, 2002) (conducting three interviews in Florida and attendance at a legal hearing not sufficient to establish personal jurisdiction).

Moreover, the exercise of personal jurisdiction over New Albertsons would be inconsistent with the "fair play and substantial justice" prong of personal jurisdiction analysis. *See Asahi Metal Indus. Co.*, 480 U.S. at 113; *World-Wide Volkswagen Corp.*, 444 U.S. at 292. New Albertsons could not reasonably have anticipated being haled into court in Florida and has not purposefully interjected itself into the state. (Backe Aff. ¶¶ 3, 4). New Albertsons does not own or operate any retail stores in Florida and it would be a significant inconvenience to require New Albertsons to defend this action in Florida as it maintains no office in the state. (Backe Aff. ¶¶ 4, 5). Finally, the interests of the state of Florida and Plaintiffs are fully satisfied by the presence of those entities that do conduct business in Florida, and Plaintiffs' desire to turn a federal legal proceeding into a nationwide forum in which to air their grievances against an entire industry and federal regulators does not trump a defendant's constitutional guarantee of due process.

**H.    THERE IS NO JURISDICTION OVER THE KROGER CO.**

**1.    Plaintiffs Have Failed To Meet Their Burden To Plead Sufficient Material Facts To Establish The Bases Of Personal Jurisdiction.**

Plaintiffs have failed to plead any material facts to establish the bases of personal jurisdiction against The Kroger Co. ("Kroger"). In their Complaint, Plaintiffs plead the following facts as to Kroger:

> Defendant, The Kroger Co. of Ohio ("Kroger"), is an Ohio corporation with its principal place of business in Cincinnati, Ohio. Kroger is in the business of manufacturing, producing, distributing, advertising and/or selling its own brand of pet food as well as distributing, advertising and/or selling the Defendants' pet food products. Kroger markets and sells its own brands and the other Defendants' brands of commercial pet food at issue in its grocery stores in Michigan and other states. Kroger adopts the marketing representations of the Defendant Manufacturers by placing point of purchase advertising at or near the Defendant Manufacturers pet food in its retail stores. See e.g., Composite Exhibit "7." Kroger markets and advertises its commercial pet food products with the intent to induce consumers to purchase its products.

(Compl. ¶ 43). Nowhere in their lengthy Complaint do Plaintiffs plead any material facts to state a prima facie case for personal jurisdiction over Kroger in this Court. Indeed, Plaintiffs do not even make a conclusory or formulaic allegation – nor could they in good faith – that this Court has personal jurisdiction over Kroger.

In the case at bar, Plaintiffs have entirely failed to meet their initial burden of pleading "material facts" (*Mother Doe I*, 2007 WL 2209258, *2) or "sufficient facts to make out a prima facie case of jurisdiction" (*Posner*, 178 F.3d 1209 at 1214) against Kroger. Indeed, in their Complaint, Plaintiffs plead no jurisdictional facts against Kroger whatsoever.[19] Plaintiffs make

---

[19]    Notably, the plaintiffs in *Mother Doe I*, pled specific jurisdictional facts against the specific defendants as part of their initial pleading burden to establish personal jurisdiction, although, as this Court noted, "these bare allegations" were "sufficiently overcome by the sworn declarations submitted by Defendants." *Mother Doe I*, 2007 WL 2209258, *7. On the other

[Footnote continued on next page]

no allegations of any contact between Kroger and the state of Florida under the specific or general jurisdictional bases set out in the Florida long-arm statute. Curiously, the only specific jurisdiction in which Plaintiffs allege any contact by Kroger is the state of Michigan. (Compl. ¶ 43).

Plaintiffs' failure to plead any jurisdictional facts as to Kroger whatsoever requires that this Court dismiss the Complaint against this Defendant with prejudice.

### 2.    There Is No Basis For Personal Jurisdiction Under The Florida Long-Arm Statute.

As indicated above, Plaintiffs have wholly failed to meet their threshold burden of pleading specific material facts to establish specific or general jurisdiction against Kroger under the Florida long-arm statute. Moreover, as verified in the Affidavit of Martha Cutright Sarra ("Sarra Aff."), an in-house attorney employed by Kroger, attached as **Exhibit I**, the lack of personal jurisdiction over Kroger is manifest. Kroger is an Ohio corporation with its principal place of business in the State of Ohio. (Sarra Aff. ¶ 2). Kroger operates over 2,400 retail supermarkets in several states, but does not operate any retail supermarkets or stores in the state of Florida (Sarra Aff. ¶ 3). While Kroger does not operate any retail supermarkets or stores in the state of Florida, Kroger and its subsidiary corporations have sales operations in the state of Florida which account for less than 1.0% of the total sales of Kroger and its subsidiary corporations. (Sarra Aff. ¶ 4). As this Court held in *Rexam Airspray,* such limited sales activity is insufficient to establish general jurisdiction under the Florida long-arm statute:

---

[Footnote continued from previous page]
hand, in the case at bar, plaintiffs have pled <u>no</u> material or sufficient facts "to make out a prima facie case of jurisdiction" (*Posner,* 178 F.3d at 1214) so as to even trigger Kroger's burden to challenge any jurisdictional allegations with rebutting evidence.

Moreover, Arminak, Inc.'s sales to customers in Florida such as KGI amount to less than 1% of its total sales. By comparison, courts confronting much higher percentages of forum-state sales have nonetheless concluded that general jurisdiction does not exist. *See Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (5% Florida sales; no general jurisdiction); *StairMaster Sport/Medical Prods. V. Pacific Fitness Corp.* 916 F. Supp. 1049, 1052-53 (W.D. Wash. 1994), affirmed, 78 F.3d 602 (Fed. Cir. 1996) (3% forum-state sales; no general jurisdiction); *Baker v. Carnival Corp.*, 2006 U.S. Dist. LEXIS 85114, 2006 WL 3360418, at *4 (S.D. Fla. Nov. 20, 2006) (1.5% Florida sales; no general jurisdiction).

*Rexam Airspray,* 471 F. Supp. 2d at 1299.

There is no basis for personal jurisdiction over this Defendant under the Florida long-arm statute. As such, Plaintiffs' Complaint against Kroger should be dismissed with prejudice.

### 3. The Exercise Of Personal Jurisdiction Over Kroger Would Violate Fundamental Principles Of Due Process.

As noted above, even if the long-arm statute of the forum state is satisfied, the Court must then determine whether sufficient "minimum contacts" exist to satisfy the due process requirements of the Fourteenth Amendment. *Mother Doe I,* 2007 WL 2209258, *2. As to the constitutional limits of specific personal jurisdiction, the Eleventh Circuit has held:

> Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires the defendant have "fair warning" that a particular activity may subject him to the jurisdiction of a foreign sovereign. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S. Ct. 2174, 2182, 85 L. Ed. 2d 528 (1985); *Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S. Ct. 2569, 2587, 53 L. Ed. 2d 683 (1977) (Stevens J. concurring in judgment). This fair warning requirement is satisfied if the defendant has "purposefully directed" his activities at the forum, *Keeton*, 465 U.S. at 774, 104 S. Ct. at 1473, and the litigation results from alleged injuries that "arise out of or relate to" those activities.   .   .

*Madara*, 916 F.2d at 1516. Moreover, as this Court has recently held, the rigorous standard for general jurisdiction under the Florida long-arm statute exceeds the constitutional "minimum contacts" standard mandated by due process considerations. *Rexam Airspray,* 471 F. Supp. 2d at 1298.

Simply stated, Plaintiffs make no allegation whatsoever of any specific "activities" which Kroger has "purposefully directed" at the state of Florida from which their claims allegedly arise. As such, the exercise of specific personal jurisdiction over Kroger is constitutionally impermissible.  Furthermore, as indicated above, Kroger's extremely limited general activities in the state of Florida fall far short of the benchmarks recognized by this Court as affording a basis for general personal jurisdiction under the long-arm statute.  Accordingly, the exercise of personal jurisdiction over Kroger would violate constitutional safeguards of due process.

For the foregoing reasons, non-resident Defendant Kroger respectfully urges the Court to dismiss Plaintiffs' Complaint against this Defendant with prejudice.

### III.    THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY AS TO *ALL* DEFENDANTS BECAUSE PLAINTIFFS DO NOT HAVE CONSTITUTIONAL STANDING TO ASSERT THEIR CLAIMS.

Standing for plaintiffs in a class action "directly implicates federal subject matter jurisdiction" and is a threshold issue for the Court.  *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263,  1272 (11th Cir. 2003); *Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006).  Since named Plaintiffs fail to allege that any Defendant's products caused them injury, they lack standing to sue under Article III of the U.S. Constitution, and their claims must all be dismissed under Fed. R. Civ. P. 12(b)(1).

Article III standing has three elements:  (1) "the plaintiff must have suffered an injury in fact[;]" (2) "there must be a causal connection between the injury and the conduct complained of[;]" and (3) "it must be likely . . . that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted). Plaintiffs have the burden to "allege and show that [they] personally suffered" an injury in fact. *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987).  The injury must be (a) "concrete and particularized," and (b) "actual or imminent, not conjectural or hypothetical." *London v. Wal-*

38

*Mart Stores, Inc.*, 340 F.3d 1246, 1251 (11th Cir. 2003). The injury requirement "cannot be met by an allegation that the injury may occur at some indefinite future time." *Lofton v. Butterworth*, 93 F. Supp. 2d 1343, 1346 (S.D. Fla. 2000).

In this case, named Plaintiffs do not and cannot sufficiently allege either injury-in-fact or a causal connection between any injury and any Defendants' conduct. Instead, Plaintiffs' Complaint expresses nothing more than Plaintiffs' general dissatisfaction with the regulated practices of the pet food industry. Despite lengthy diatribes about the industry's alleged advertising practices (*e.g.*, Compl. ¶¶ 54-97), named Plaintiffs do not allege that their own pets have fallen ill or suffered any adverse health effects as a result of any complained-of activity of any Defendant, or that the (unidentified) pet food they purchased harmed them or their pets in *any* way. They focus entirely on the bare existence of what they claim are "harmful and toxic ingredients and chemicals" in the pet food at issue (which is virtually all the pet food in the country) as well as a perceived "lack[] [of] nutritious qualities" in that same food (*id.* ¶ 155), rather than directing this Court's attention to any injury that any Plaintiff has actually suffered as a result of these alleged characteristics.

Plaintiffs' failure to plead actual injury is no mere oversight. In their proposed class definition, Plaintiffs meticulously avoid any suggestion that any class members actually suffered injury. Instead, the proposed class would effectively extend to all consumers in the nation who purchased pet food that was handled by at least one Defendant at some point in the distribution chain and that contains certain ingredients and lacks others, *regardless* of the impact that the formulation of the food might have had on putative class members or their pets. Plaintiffs thus have not simply overlooked their burden to demonstrate that named Plaintiffs suffered an injury – *they intentionally define the class without reference to injury.*

Plaintiffs' allegations that they purchased pet food, even if true, would not satisfy the actual injury requirement of standing even if the manufacturers and sellers of that pet food were specifically identified. Federal courts have not hesitated to dismiss actions where plaintiffs' only alleged injury is the purchase of the product. In *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315 (5th Cir. 2002), the plaintiffs purchased a drug that later was viewed as responsible for the liver failure of a few individual long-term users. *Id.* at 317. The plaintiffs' complaint was filed on behalf of all patients who took the drug *without* suffering any physical or emotional injury. *Id.* The Fifth Circuit squarely rejected the plaintiffs' contention that their "loss of cash [wa]s an 'economic injury'" and ruled that the action did not "present a justiciable case or controversy under Article III." *Id.* at 319, 321 (reversing the district court). The court held that the plaintiffs had not alleged the requisite "injury-in-fact" because, although they claimed "economic injury" from purchasing the drug, the plaintiffs did not allege that the drug caused them physical or emotional injury, was ineffective, or caused any future health consequences for them. *Id.* at 320-21.

This Court has applied the reasoning of *Rivera* in dismissing a "misleading advertising" case for lack of standing. In *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329 (S.D. Fla. 2007), prescription drug users brought claims against a drug manufacturer, alleging no injury other than so-called "price inflation" based on misleading advertising. *Id.* at 1334-36. Faced with nothing more than the plaintiffs' alleged purchase of the drug and resultant claims of economic injury, the Court could not "come up with any theory upon which [the plaintiffs were] actually injured or aggrieved by the allegedly misleading advertisement." *Id.* at 1336. Consequently, they had no standing. *Id.*

In *Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24 (D.D.C. 2007), the court reached the same conclusion as the court in *Rivera* in holding that the plaintiff had no standing to assert claims for breach of implied warranty and violation of a consumer protection statute. *Id.* at 28-29. The plaintiff claimed that defendant Kentucky Fried Chicken ("KFC") engaged in false advertising by referring to its chicken as the "best food" and by not disclosing the existence of trans fats in its chicken. *Id.* at 26. Plaintiff sought to represent all persons who purchased any food from KFC that contained this undisclosed ingredient. Noting an "absence of any allegation of injury" in the complaint, however, the court held that the plaintiff had "no standing" to bring suit. *Hoyte*, 489 F. Supp. 2d at 28, 29. Whereas the plaintiff's allegations in *Hoyte* of "economic injury" due to the purchase of food with an undisclosed ingredient did not suffice to confer standing, here, the Plaintiffs do not even explicitly allege economic injury. *Id.*

Like the plaintiffs in the "no injury" cases described above, Plaintiffs here allege various difficulties that some pets *could* conceivably encounter after ingesting certain foods, but completely fail to allege any actual injury that they or their pets *did* suffer from the use of any Defendant's products. Although they allege generally that each of them purchased various brands of pet food "in the group" of products made or sold by Defendants (Compl. ¶¶ 2-25), such broad assertions, devoid as they are of any allegation of actual injury, are as defective as the allegations in *Rivera* and *Hoyte*.[20] Additionally, as in *Prohias*, Plaintiffs cannot simply allege

---

[20] Moreover, certain of Defendants' pet foods named in the Complaint are available exclusively through veterinarians and are only for use under veterinarian authorization and supervision – for example, Iams' Eukanuba Veterinary Diet and Hill's Prescription Diet pet foods ("veterinary foods") (Compl. ¶¶ 59, 68, 78-79, 80-82). But the Complaint fails to allege that any named Plaintiff ever purchased, used, or received veterinary authorization for these products. Without having purchased or used the veterinary foods, named Plaintiffs could not have been injured by them. Thus, it is inconceivable that named Plaintiffs could have standing to assert claims concerning these foods. *Church v. City of Huntsville*, 30 F.3d

[Footnote continued on next page]

misleading advertisements and thereby obviate their obligation to allege injury resulting from those advertisements.

As they lack allegations of actual injury, all of Plaintiffs' claims should be dismissed for an absence of standing. *See Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 176-78 (D.D.C. 2003) (dismissing false advertising claims and holding that plaintiffs had no standing; concluding that plaintiffs lacked "particularized injury," even though they claimed economic damages from failure to receive advertised benefits of purchased drugs; agreeing with defendants that, without adverse health effects from drugs, plaintiffs must have received what they paid for). *See also, e.g., Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1017 (7th Cir. 2002) ("No injury, no tort, is an ingredient of every state's law[.]"); *Briehl v. GMC*, 172 F.3d 623, 627 (8th Cir. 1999) ("Courts have been particularly vigilant in requiring allegations of injury or damages in products liability cases.").

Lacking standing, named Plaintiffs also cannot assert claims for themselves or on behalf of a purported class.[21]  *See, e.g., Griffin*, 823 F.2d at 1482 ("A named plaintiff in a class action who cannot establish the requisite case or controversy between himself and the defendants

---

[Footnote continued from previous page]
1332, 1340 (11th Cir. 1994) (named plaintiffs had no standing to challenge an ordinance regulating homeless shelters, when they did not allege that they were staying at one of the shelters subject to ordinance but instead alleged generally that they had "no home or shelter"). Moreover, because veterinary offices sell regular pet food in addition to veterinary foods, Plaintiffs are not saved by their vague allegation that they purchased "pet food" from "veterinarian offices." (Compl. ¶ 66).

[21]  This defect is but one of many that would defeat class treatment here. For example, it would also be impossible to identify members of the proposed class, because the proposed class definition is impermissibly vague and would require this Court to examine the individual circumstances and mental state of each individual class member. Fundamentally, nothing ties together the wildly disparate claims asserted in the Complaint into common issues that makes this case suitable for class certification. Defendants reserve their rights to brief the inappropriateness of class treatment should the Complaint survive dismissal as a whole.

simply cannot seek relief for anyone – not for himself, and not for any other member of the class."); *Lynch v. Bexley*, 744 F.2d 1452, 1456 (11th Cir. 1984) ("If the named plaintiff seeking to represent a class fails to establish the requisite case or controversy, he may not seek relief on his behalf or on that of the class."). Plaintiffs' vague references to putative class members' "'pets' deaths and illnesses" (Compl. ¶ 252) and nonspecific allegations that certain such members "have now had to endure the costs associated with veterinarians, medicines, and treatments for their companion pets" (*id.* ¶ 259) thus do not suffice to confer standing, in the absence of factual allegations concerning any actual injuries suffered by any named Plaintiffs or their pets due to the actions of any Defendant.

Because Plaintiffs do not meet the threshold Article III standing requirements, the entire Complaint should be dismissed in its entirety as to all Defendants pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 807 n.8, 811 (11th Cir. 1993) (affirming dismissal due to plaintiffs' "fail[ure] to establish an injury to themselves sufficient to confer standing" and noting that such failure left court without subject matter jurisdiction and required dismissal pursuant to Rule 12(b)(1)). Plaintiffs would remain free to take advantage of the forums actually designed to address generalized grievances of this nature, including federal and state legislatures and administrative agencies. Federal courts simply do not play this role. *See, e.g., Williams*, 297 F. Supp. 2d at 178 (dismissing for lack of standing and explaining that "the invasion of a purely legal right without harm to the consumer – in this case, to freedom from alleged false and misleading advertising – can be addressed through the administrative process").

IV.    **THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO ALLEGE THAT THEY WERE HARMED BY AN ACT OR OMISSION OF ANY OF THE DEFENDANTS.**

The absence of injury and causation allegations in the Complaint dooms it to dismissal under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure, as well.[22] Moreover, these Rules bar the Complaint on a third ground: Plaintiffs have failed to plead that the named Plaintiffs personally relied on a particular Defendant's advertisements or statements.

In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the Supreme Court recently heightened the pleading requirements under both of these Rules. The Court underscored that Rule 8(a)(2) imposes a threshold requirement that the necessary "'plain statement' possess enough heft to 'show that the pleader is entitled to relief.'" *Id.* at 1966. Consistent with this requirement, the Court further held that, to survive dismissal under Rule 12(b)(6), a complaint's factual allegations must now rise above the "speculative level" and "state a claim to relief that is *plausible on its face.*" *Twombly*, 127 S. Ct. at 1965, 1974 (emphasis added).

This Court has been quick to recognize the unmistakable consequence of the Supreme Court's guidance. In *Moore v. Miami-Dade County*, No. 06-22705, 2007 WL 2302481, *2 (S.D. Fla. July 18, 2007), this Court acknowledged that a complaint must go beyond proffering "mere labels and conclusions" and that, in the wake of *Twombly*, plaintiffs can only survive a motion to

---

[22]    Plaintiffs' allegations against Pet Supplies Plus/USA Inc. provide a clear example of why their Complaint must be dismissed on these grounds. In the only paragraph specifically identifying Pet Supplies Plus/USA Inc., Plaintiffs include allegations against two named Defendants – Pet Supplies "Plus" (which, as previously discussed, is not even an entity but a trade name) and Pet Supplies Plus/USA Inc. Plaintiffs then allege that "**Pet Supplies** is in the business of advertising, distributing, selling and making recommendations to consumers regarding dog and/or cat food." (Compl. ¶ 51). Plaintiffs, however, never identify whether "Pet Supplies" refers to Defendant Pet Supplies "Plus" or Defendant Pet Supplies Plus/USA Inc. As a result, Plaintiffs' Complaint fails to state any cause of action against Pet Supplies Plus/USA Inc, and the Complaint must be dismissed pursuant to Rules 12(b)(6) and 8(a).

dismiss if they are able to "nudge [their] claims across the line from conceivable to plausible."
*Id.* This Court should just as quickly recognize that, as demonstrated below, Plaintiffs' claims
here do not reach even the "conceivable" level, much less the "plausible," and that their
Complaint should consequently be dismissed.

### A.     THE COMPLAINT FAILS TO LINK THE ALLEGATIONS OF ANY SPECIFIC PLAINTIFF TO ANY PARTICULAR DEFENDANT.

As noted earlier, nowhere in the Complaint do Plaintiffs claim that any particular named
Plaintiff purchased pet food from a specific Defendant. Although Rule 8 requires a "short and
plain statement" of Plaintiffs' claims, it "still requires a 'showing,' rather than a blanket
assertion, of entitlement to relief." *Twombly*, 127 S.Ct. at 1965 n.3. At a minimum, "Rule
8(a)... requires that a complaint against multiple defendants indicate clearly the defendants
against whom relief is sought and the basis upon which the relief is sought against the particular
defendants." *Yucyco, Ltd. v. Rep. of Slovn.*, 984 F. Supp. 209, 219-20 (S.D.N.Y. 1997)
(dismissing complaint) (citations and internal quotation marks omitted); *see also Mathews v.
Kilroe*, 170 F. Supp. 416, 417 (S.D.N.Y. 1959) ("To do less than [matching specific allegations
to specific defendants] is to cause an injustice to persons who are named as defendants in an
action."). Furthermore, in cases that may be costly or time-consuming to litigate, "a district
court must retain the power to insist upon some specificity in pleading *before* allowing a
potentially massive factual controversy to proceed." *Twombly*, 127 S. Ct. at 1967 (emphasis
added) (quotations omitted); *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346–47
(2004).

Even under pre-*Twombly* law, courts recognized that when plaintiffs substitute mere
conclusory allegations for the specific allegations against specific defendants required by Rule 8
(a)(2), dismissal is required under Rule 12(b)(6) as well. *See Jackson v. BellSouth Telecomms.*,

372 F.3d 1250, 1263 (11th Cir. 2004) ("To survive a motion to dismiss [brought under Rule 12(b)(6)], plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims."); *United States ex rel Feingold v. Palmetto Gov't Benefits Adm'rs*, 477 F. Supp. 2d 1187, 1193 (S.D. Fla. 2007) (dismissing amended complaint with prejudice [pursuant to Rule 12(b)(6)] where plaintiff "tr[ied] to avoid dismissal by the inclusion of [a] conclusory statement").[23]

Although the first 25 paragraphs of the Complaint ostensibly set forth allegations concerning named Plaintiffs themselves, these paragraphs contain no specific allegations about Plaintiffs' purchase of pet food. Instead, the Complaint contains variations on the vague, nonspecific statement that "[Plaintiff] has purchased various brands of commercial [cat or dog] food over the [lifespan of his or her pet] *that are in the group of products* that were manufactured, marketed, produced, distributed, advertised and sold by the various Defendants during [the class period]." (Compl. ¶¶ 2–25, 176, 188, 257, 259 (emphasis added)). These boilerplate allegations are the only assertions *anywhere* in the Complaint that even purport to be Plaintiff-specific. These overly generalized allegations are so broad and uninformative that they do not even assert that any named Plaintiff purchased any of the brands of pet food at issue in this case. In the absence of specific allegations against particular Defendants, Plaintiffs' *en masse* criticisms of Defendants' products simply do not constitute legally cognizable claims

---

[23] Among the undersigned Defendants are corporations that do not even produce or sell pet food – The Procter and Gamble Company, the Colgate-Palmolive Company, Nestlé U.S.A., Inc., Nestlé S.A. and New Albertsons. Plaintiffs do not state claims against such entities, but instead define each "collectively" with separately incorporated related entities that do produce pet food. (*See* Compl. ¶¶ 27, 28, 30 and 42). Because there are no substantive allegations concerning these corporations, the Complaint is wholly deficient against them, apart from the basic pleading infirmity of the "failure to differentiate between defendants." *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1440 (M.D. Fla. 1998).

sufficient to survive dismissal under Rule 12(b)(6). *See, e.g., Napier v. Osmose, Inc.*, 399 F.

Supp. 2d 811, 814 (W.D. Mich. 2005) (dismissing complaint on grounds that "threshold

requirement of any products liability action is identification of the injury-causing product and its

manufacturer" (internal quotations omitted)); *Prohias*, 485 F. Supp. 2d at 1333-34 (dismissing

fraud, unjust enrichment, and negligent misrepresentation claims where plaintiff health plan

failed to allege that it purchased defendant's product).

> **B.      THE COMPLAINT FAILS TO ALLEGE THE RELIANCE OR
>          CAUSATION ELEMENTS NECESSARY TO SUSTAIN EACH
>          CLAIM.**

Not one of Plaintiffs' ten causes of action is viable without allegations of reliance and

causation.[24] Counts I through V each assert some type of fraud or misrepresentation claim, all of

which require a Plaintiff's allegation of detrimental reliance on a Defendant's alleged

misrepresentations in order to demonstrate a causal link. Similarly, Counts VI and VII and

Counts X through XII each assert claims that require allegations of harm to Plaintiffs'

"companion pets" caused by specified Defendants' products.

Plaintiffs fail to plead reliance adequately. *Simon v. Celebration Co.*, 883 So.2d 826, 832

(Fla. 5th DCA 2004) (fraud-based claims such as fraudulent inducement and negligent

misrepresentation demand allegations that plaintiff relied on defendant's false statement); *see

also* **APP. A**, "Elements of Reliance and Causation under Florida and Michigan Laws." Nowhere

in the Complaint do they allege that any particular Plaintiff was aware of any particular allegedly

misleading statement, or that any specific Plaintiff purchased any particular Defendant's

---

[24]    The relevant laws of Michigan and Florida, home to four named Plaintiffs, require the
elements of reliance and causation and are detailed, in **Appendix A** to this Motion, by way
of example. Defendants employ appendices in order to set forth necessary citations to the
applicable laws of multiple jurisdictions without unduly lengthening the substantive
discussion in this brief.

products in reliance on such representations. As noted above, Plaintiffs merely allege that each of them "purchased *various brands* of commercial [cat or dog] food . . . that are *in the group of products* that were manufactured, marketed, produced, distributed, advertised and sold *by the various Defendants*." (*See, e.g.*, Compl. ¶ 2 (emphasis added)). Such broad allegations shed no light on any particular Plaintiff's reasons for making the alleged purchase and come nowhere close to the necessary showing of reliance.

Plaintiffs fare no better in pleading causation. Having alleged no actual injury to either themselves or their pets (*see* Section III) and having alleged no specific connection between particular Plaintiffs and particular Defendants (*see* Section IV.A), Plaintiffs necessarily fail to allege a sufficient causal nexus between any specific actions attributed to any Defendants and any alleged injury to Plaintiffs' pets. While the Complaint makes conclusory allegations that other people's pets have been harmed by certain (often undefined) products sold or manufactured by Defendants (*see, e.g.*, Compl. ¶¶ 140-52), there is not one single allegation suggesting that any of Plaintiffs' pets have been harmed by (or that they even consumed) any specific product manufactured or sold by any Defendant. *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 263 (S.D. Cal. 1988) (in denying class certification to plaintiff pet owners for injuries resulting from alleged defect in defendant manufacturer's medicinal pet product, explaining that the "most important" element of plaintiffs' negligence claim was proof that defendant's actions "proximately caused the plaintiffs' varying injuries" (citation omitted)); *see also* **APP. A.**

The absence of these requisite elements is no mere technical deficiency. As the Supreme Court emphasized in *Twombly*, 127 S. Ct. at 1965, a plaintiff's obligation under Rule 8 "to provide the grounds of his entitlement to relief requires more than labels and conclusions, and *a formulaic recitation of the elements of a cause of action will not do*" (emphasis added, internal

quotation marks omitted). When Plaintiffs allege that a named Plaintiff "was induced by the Defendants['] representations and marketing materials on the internet, on television, in print, in retail stores at point of purchase and on bags, pouches and cans to buy the Defendants' commercial pet food" (*e.g.*, Compl. ¶ 2), they attempt to evade their obligation to plead reliance with just such a formulaic recitation. Equally empty are Plaintiffs' attempts to plead causation with the bare and conclusory allegations that "[a]s a direct and proximate result of Defendants' [activities], the Plaintiffs/Class Representatives and the Class have suffered damages." (*See, e.g.*, Compl. ¶ 179). *See Haun v. Don Mealy Imports, Inc.*, 285 F. Supp. 2d 1297, 1307, 1309-10 (M.D. Fla. 2003) (granting Rule 12(b)(6) motion; explaining that conclusory allegation of "'direct and proximate result'" did not "state the elements of harm and causation, essential to his claim").

Failure to allege facts supporting the necessary reliance and causation elements requires dismissal. *See, e.g.*, *Williams*, 297 F. Supp. 2d at 177 (plaintiffs who alleged that defendants had engaged in false advertising but did not plead that they "were in any way deceived—or even saw—any of that advertising" failed to state claim). As noted above, such failure cannot be remedied through conclusory allegations that Plaintiffs were *en masse* "induced by the Defendants['] representations and marketing materials." (*E.g.*, Compl. ¶ 2). Further, aside from the question of whether any defendant even engaged in any wrongdoing, lack of causation will defeat a claim even where the defendant engaged in "obviously false advertising" (which these Defendants did not). *See Himes v. Brown & Co.*, 518 So.2d 937, 938 & n.1 (Fla. 3d DCA 1987).

## V.    EACH COUNT ALLEGED IN THE COMPLAINT WARRANTS DISMISSAL ON INDEPENDENT GROUNDS.

### A.    PLAINTIFFS' FRAUD-BASED CLAIMS (COUNTS I-V) ARE NOT ALLEGED WITH SUFFICIENT PARTICULARITY.

Because, as discussed above, Plaintiffs' Complaint fails to meet even the standard pleading requirements, it necessarily fails to meet the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure for the five fraud-based causes of action: fraudulent misrepresentation (Count I); fraud in the inducement (Count II); negligent misrepresentation (Count III); violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count IV); and violation of Florida's false advertising statute (Count V).[25]

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).[26]  These requirements are designed "to protect defendants from frivolous suits, or 'spurious charges of . . . fraudulent behavior.'"  *Box Office Entertainment, LLC*, 2007 WL 1362898, *7 n.3 (quoting *United States v. Lab. Corp. Am. Inc.*, 290 F.3d 1301, 1313 n.24 (11th Cir. 2002)).  The Eleventh Circuit has explained that Rule 9(b) requires that complaints asserting fraud-based causes of action set forth "(1) the precise statements, documents, or misrepresentations made; (2) the time,

---

[25]  The law is clear that each of these causes of action must satisfy the heightened pleading requirements of Rule 9(b).  *See, e.g., Box Office Entertainment, LLC v. Brian D. Gordon, CPA, P.A.*, No. 05-21010, 2007 WL 1362898, *7 (S.D. Fla. May 9, 2007) (granting Rule 9(b) motion to dismiss claims for fraud and negligent misrepresentation); *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002) (granting Rule 9(b) motion to dismiss FDUTPA claim); *Flamenbaum v. Orient Lines, Inc.*, No. 03-22549, 2004 WL 1773207, *5 (S.D. Fla. July 20, 2004) (granting a Rule 9(b) motion to dismiss fraud in the inducement claim), *Smith v. Mellon Bank*, 957 F.2d 856, 858 (11th Cir. 1992) (affirming directed verdict, and holding claim under Florida's false advertising statute requires pleading the same elements as fraud in the inducement).

[26]  A number of state consumer protection statutes impose this heightened pleading standard for fraud claims as well.  *See* **APP. B**, "State Consumer Protection Statutes."

place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380 (11th Cir. 1997).[27] In short, Plaintiffs must "allege the 'who, what, where, when and how' to survive a motion to dismiss." *Anderson v. Smithfield Foods, Inc.*, 207 F. Supp. 2d 1358, 1362 (M.D. Fla. 2002). Thus, it is axiomatic that "[p]laintiffs [cannot] simply lump[] together all [defendants] in their allegations of fraud[;]" rather, a complaint must reasonably notify each defendant of the specific nature of his or her alleged participation in the fraud. *Brooks*, 116 F.3d at 1381.

The Complaint here is deficient under Rule 9(b) standards on several fronts. <u>First</u>, it fails to identify (a) what particular statements were allegedly fraudulent; (b) which Defendants allegedly made these statements; (c) to which Plaintiffs the statements were allegedly made; and (d) when and in what manner the statements were allegedly made. <u>Second</u>, it fails to allege that any Plaintiffs saw, heard, or read any particular statements made by any Defendant, or that any

---

[27] These heightened pleading requirements are consistent with the basic elements Plaintiffs must allege for each of the five fraud-based claims. *See, e.g., Box Office*, 2007 WL 1362898, *7 (elements of a claim for fraudulent misrepresentation are (a) a false statement concerning a material fact, (b) the representor's knowledge that the representation is false, (c) an intention that the representation induce another to act on it, and (d) consequent injury by the party acting in reliance on the representation); *Biscayne Investment Group, Ltd. v. Guarantee Mgmt. Svcs., Inc.*, 903 So.2d 251, 255 (Fla. 3d DCA 2005) (claim for fraudulent inducement requires plaintiff to prove same elements); *Atlantic Nat'l Bank of Fla. v. Vest*, 480 So.2d 1328, 1331-32 (Fla. 2d DCA 1985) (negligent misrepresentation demands the same, except that the representor must know of the misrepresentation, must make the representation without knowledge as to its truth or falsity, or must make the representation under circumstances in which he ought to have known of its falsity); *Marino v. Home Depot U.S.A., Inc.*, No. 06-80343, 2007 WL 201260, *7 (S.D. Fla. Jan. 24, 2007) (claim under FDUTPA requires proof of (a) a deceptive act or unfair practice, (b) causation, and (c) actual damages); *Smith v. Mellon Bank*, 957 F.2d 856, 858 (11th Cir. 1992) (claim under Florida's false advertising statute requires basic elements of fraud plus reasonable reliance); *Rollins, Inc. v. Butland*, 951 So.2d 860, 877 (Fla. 2d DCA 2006) ("[M]isleading advertising is a particularized form of fraud.").

such statement played any role in any Plaintiff's decisions to purchase any Defendant's product.

Third, it contains none of the particularized allegations necessary to establish whether and how Plaintiffs were harmed by the alleged fraud. Instead, the Complaint contains only vague and conclusory allegations that sweep in virtually the entire pet food industry. This is just the sort of pleading Rule 9(b) is designed to protect defendants against. *See Lab. Corp.*, 290 F.3d at 1313 ("If Rule 9(b) is to carry any water, it must mean that an essential allegation and circumstance of fraudulent conduct cannot be alleged in such conclusory fashion"). Accordingly, Counts I-V should be dismissed.

### 1.    The Complaint Fails To Identify "Who" Did "What" To "Whom" And "When."

Nowhere in the 548 pages of the Complaint and its exhibits is the required factual description of a single, specific allegedly fraudulent act that meets the requirements of Rule 9(b). Plaintiffs make the deliberate choice *not* to identify any specific statement made by any Defendant to any Plaintiff, but instead to lump together all Defendants and all Plaintiffs. The Complaint depends almost entirely on improperly general descriptions of "industry practices" and suppositions about how such practices affect "consumers" in general. (*See, e.g.*, Compl. ¶ 64 ("the pet food industry . . . deliberately and intentionally capitalizes on the[] emotional bonds [between pet owners and pets] through 'humanization'")).[28] The only specific statements

---

[28]    *See also, e.g.,* Compl. ¶ 55 ("The Defendants' marketing leads consumers to believe that their pet food has choice chunks of chicken, beef, fresh fish, whole stalks of grains, other human-quality food ingredients and all of the other nutrients that a cat or dog needs to lead a healthy and happy life."); *id.* ¶ 65 ("The Defendants sell billions of dollars of commercial pet food to consumers who believe that they are feeding a balanced, healthy, human-like diet to their companion cats and dogs[.]"); *id.* ¶ 68 ("The Defendants' pet foods . . . are intentionally named to lead *consumers* to believe that they are wholesome, nutritional, natural, are healthy and/or provide health, medical, dental and other benefits for cats and dogs.") (emphases added).

identified in the Complaint – consisting of web-site printouts and sample packaging for a few specific products manufactured by some of the various Defendants and photos purportedly of sample in-store marketing at unidentified retail outlets (*see* Compl. ¶¶ 66-97, Exs. 1-44) – are not alleged to have been communicated to any particular Plaintiff.[29]  Moreover, the Complaint fails to allege that any specific statement is in fact false or misleading.  In resting solely on allegations about the manufacturing practices of the "pet food industry" as a whole, the Complaint fails to set forth any facts about the manufacturing practices of any particular Defendant, or about the quality or contents of pet food products they manufactured and sold.  (*See* Compl. ¶¶ 115-40 (describing alleged "pet food industry" manufacturing practices, not any actual practice of any individual defendant, and the alleged contents of "pet food," not of any particular product manufactured or sold by any particular Defendant)).  Finally, the Complaint is wholly devoid of any allegation as to when any fraudulent misrepresentations were made to each Plaintiff, the manner in which such misrepresentations were made, or the place where such misrepresentations were made.

This Court previously has rejected fraud claims for similar pleading deficiencies.  In *Flamenbaum*, 2004 WL 1773207, this Court dismissed, under Rule 9(b), claims of fraud in the inducement where the complaint simply alleged that misrepresentations had been made by the "defendants" and did not identify which parties were responsible for which alleged misrepresentations.  *Id.* at *6.  In addition, the Court found that the plaintiffs there had failed to allege particular facts establishing "the circumstances under which the alleged

---

[29]   *See, e.g.*, Compl. ¶ 73 (marketing of Mars "Good Life Recipe" brand products is "designed to appeal to *consumers*[]"); *id.* ¶ 75 (marketing of Mars' "Pedigree" brand products leads *consumers* to believe…"); *id.* ¶ 80 (marketing of Colgate-Palmolive's "Science Diet®" and "Prescription Diet®" brand products "urges *consumers* to trust") (emphases added).

misrepresentations were made" and the manner in which the statements at issue were misleading. *Id.* For the same reasons, the Court here should dismiss Counts I-V in the Complaint.

**2.      The Complaint Fails To Allege Any Facts Demonstrating That Any Plaintiff Relied On Any Defendant's Statements.**

Plaintiffs' failure to allege a specific fraudulent act also dooms their Complaint because it makes it impossible for them to allege that they were misled by any Defendant or that those allegedly misleading statements played any role in their decisions to purchase any Defendants' products. Instead, the Complaint breezily alleges that "[i]n reliance upon the Defendants' misrepresentations and false statements (and in the absence of disclosure of health risks), Plaintiffs/Class Representatives and the Class purchased the Defendants' pet foods for their companion pets" (*see, e.g.*, Compl. ¶ 176) and that "[a]s a direct and proximate result . . . Plaintiffs/Class Representatives and the Class have suffered damages." (*See, e.g., id.* ¶ 179). Yet the Complaint fails to allege *any* facts (let alone the particular facts required under Rule 9(b)) that establish that any Plaintiff actually saw, read, or heard any statement by any Defendant about one of its products that led Plaintiff to purchase that product. (*See id.* ¶¶ 72-97).[30] Having failed to allege the basic facts about any particular transaction, Plaintiffs do nothing more than offer wholly conclusory statements about why, how, and even whether they would have altered their purchasing decisions in the absence of Defendants' alleged misrepresentations. (*See, e.g., id.* ¶ 176).

---

[30] Plaintiffs' allegations refer to "consumers" who were allegedly misled; they do not identify how any particular named Plaintiff was misled. *See, e.g.*, Compl. ¶ 65 ("While the Defendants manufacture, distribute, market, advertise and sell these commercial pet foods as 'complete,' 'wholesome,' 'human-like,' medical and 'nutritional' diets with other benefits to prey upon the emotional bonds that *consumers* have for their companion dogs and cats, the matter contained in bags, pouches and cans is instead wholly or partially the product of recycling the inedible garbage of the human food industry.") (emphasis added).

The law is clear that fraud-based claims cannot survive a Rule 9(b) motion to dismiss where plaintiffs do not specify how they were misled. *See, e.g., In re Managed Care Litig.*, 150 F. Supp. 2d 1330, 1347 (S.D. Fla. 2001) (dismissing claims where plaintiffs failed to "fully identify which materials were received or which advertisements were actually viewed and relied upon by the individual plaintiffs"); *Berenguer v. Warner-Lambert Co.*, No. 02-05242, 2003 WL 24299241, *2 (Fla. Cir. Ct. July 31, 2003) (dismissing FDUTPA claim where plaintiffs "[did] not allege that they saw any of the advertisements . . . let alone that they saw an alleged misrepresentation in an advertisement that caused them to purchase [defendant's products]").[31] Accordingly, Plaintiffs' fraud-based claims do not withstand scrutiny under Rule 9(b).

### 3. The Complaint Fails To Allege That Plaintiffs Suffered Harm As A Result Of Any Fraudulent Statement.

Plaintiffs also have failed to set forth any facts showing they were harmed as a result of any allegedly false or misleading statements by any Defendant. As discussed in Sections I and II above, Plaintiffs' Complaint offers only conclusory statements to the effect that "Plaintiffs suffered damages" or "purchased pet foods," rather than providing any of the requisite factual

---

[31]    As discussed above, Plaintiffs do not advise the Court or Defendants what representations are alleged to have misled whom. To the extent that they complain of Defendants touting their product as "healthiest and best tasting," of "world-class quality," having the "Best Nutrition" and "Great Taste" and the like (*see, e.g.*, Compl. ¶¶ 72, 79, 80, 84, 85), however, they cannot state a claim. As a matter of law, such statements are too subjective to support a misrepresentation claim. *See, e.g., Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674, 686 (5th Cir. 1986) (vacating the verdict and judgment and directing the district court to dismiss the complaint, which involved such claims as "easy," "prime," "amazing," "perfect," "wonderful," and "excellent"); *Hoyte*, 2007 WL 1302590, *4 (noting that restaurant's claim to serve the "best food" is non-actionable puffery); *Fraker v. KFC Corp.*, No. 06-CV-01284-JM, 2007 WL 1296571, *3 (S.D. Cal. Apr. 30, 2007) (dismissing as non-actionable the phrases "best food," "only the highest quality ingredients," and "innovative recipes," among others); *Tylka v. Gerber Prods. Co.*, No. 96-C-1647, 1999 WL 495126, *8 (N.D. Ill. July 1, 1999) (granting summary judgment because "'optimum nutrition' . . . or 'the most wholesome nutritious safe foods you can buy anywhere in the world' add little to the daily informational barrage to which consumers are exposed").

support for those assertions.  (*See, e.g.*, Compl. ¶¶ 176, 179).  Such conclusory allegations are insufficient under even liberal pleading standards, much less under the more stringent standards of Rule 9(b).  *See, e.g., Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002) (FDUTPA claim dismissed where plaintiff only alleged that she did not receive product promised to her).[32]

In sum, the Complaint consists of nothing more than overly broad generalities, lumping unique and differently-situated Defendants together in a one-size-fits-all complaint and wholly failing to apprise each Defendant of the particular acts of alleged fraud in which it is alleged to have engaged.  For all of the reasons stated above, Counts I-V of the Complaint fail to meet the standards of Rule 9(b) and should be dismissed.

### B.    COUNTS I AND II ARE DUPLICATIVE.

Because Plaintiffs' allegations are based on advertisements that purportedly induced the purchase of pet food, Count I (Fraudulent Misrepresentation and Concealment) and Count II (Fraud in the Inducement) are duplicative, and one of them must be dismissed.  *See, e.g., True Title, Inc. v. Blanchard*, No. 6:06-cv-1871-Orl-19DAB, 2007 WL 430659, *4 (M.D. Fla. Feb. 5, 2007) (dismissing redundant and unnecessarily duplicative count); *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000) (dismissing duplicative claims).

### C.    PLAINTIFFS' CONSUMER PROTECTION ACT CLAIM (COUNT IV) FAILS TO STATE A CLAIM.

Count IV of Plaintiffs' Complaint alleges that Defendants have violated state consumer protection statutes "in the advertising, marketing, distribution, and sale of Defendants' pet foods

---

[32]    *See also Haun*, 285 F. Supp. 2d at 1307 ("[B]ecause Plaintiff fails to allege *how* he was 'aggrieved by' Defendant's acts, he fails to state the elements of harm and causation, essential to his claim. … Though pleading rules are liberal, conclusory statements of 'direct and proximate result' do not state an element.") (emphasis in original).

regarding the nutritional, health and other benefits and/or of the safety of same." (Compl. ¶ 205).[33]  Plaintiffs' allegations are defective for two reasons:  First, as discussed above, Plaintiffs have failed to plead causation sufficiently.  Second, Plaintiffs complain of marketing language that is specifically authorized by the Association of American Feed Control Officials ("AAFCO")[34] and by state law incorporating AAFCO's standards.  Accordingly, their challenges to such language and to the AAFCO standards cannot state a claim under the consumer protection statutes of Florida and many other potentially involved states that exempt conduct that complies with state or federal law.

Plaintiffs allege as unfair trade practices (1) Defendants' representations that its products are "'complete and balanced nutrition,' 'perfect,' 'natural,' 'veterinarian recommended,' and guaranteed'" (Compl. ¶ 66); and, (2) the use of certain ingredients in pet food and the descriptions of those ingredients on product labels and in advertisements. *Id.* ¶¶ 115-131.  As Plaintiffs recognize (*id.* ¶¶ 109-114), however, these descriptive terms and ingredients are defined by regulations promulgated by AAFCO.  Each year, AAFCO publishes its Official Publication, which includes (1) model regulations for pet food, (2) a list of accepted feed ingredients, which may be set forth as such on the product label, and (3) nutrient profiles or

---

[33]   Count IV is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 ("FDUTPA").  But perhaps recognizing that FDUTPA can be applied only to protect *Florida* residents, *see Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 228-29 (S.D. Fla. 2001), Plaintiffs' complaint, via a footnote, also alleges violations of "other state deceptive trade practice laws of the various states where Class members reside." (Compl. p. 84, n. 20).

[34]   As explained by the FDA, "AAFCO is composed of state, federal, and international regulatory officials who are responsible for the enforcement of state laws regulating the safe production and labeling of animal feed, including pet food.  FDA and AAFCO work together in the area of feed regulation, particularly in the establishment of definitions to describe new feed ingredients." (U.S. Food and Drug Administration, "CVM and Animal Food, Feed Ingredients, and Additives," attached as Ex. 47 to Complaint).

feeding trial protocols that must be met before a manufacturer can make claims that a product is "complete," "balanced," "100% nutritious," or other similar claims. (*See* FDA, "Selecting Nutritious Pet Foods," attached as Ex. 53 to Complaint).

Florida has adopted AAFCO's definitions of feed ingredients and the AAFCO minimum nutritional requirements, and it *mandates* that feed suppliers use the AAFCO names and definitions. Fla. Admin. Code 5E-3.004(1), 5E-3.013 . The other states in which Plaintiffs reside also have incorporated AAFCO regulations, to varying degrees. (*See* **App. C**.)  While Plaintiffs may object to the use of these ingredients in food for their pets, or to the components that AAFCO allows to be included in those ingredients, Plaintiffs have *not* alleged that Defendants' ingredients did not meet AAFCO's definitions. As Plaintiffs concede in their Complaint, "[i]f a food has met either AAFCO requirement, it may state on the label that the food is 'complete and balanced.'" (Compl. ¶ 114).  Plaintiffs apparently do not like the use of these definitions and descriptions, but they do *not* argue that any Defendant failed to meet the necessary AAFCO requirements for use of these phrases.

Because Defendants' labeling practices are required or specifically permitted by state law – namely, the AAFCO regulations that Florida and other states have adopted -- Plaintiffs' claims under the consumer protection statutes must be dismissed.  FDUTPA does not apply to "an act or practice required or specifically permitted by federal or state law." Fla. Stat. § 501.212(1); *3B TV, Inc. v. State,* 794 So.2d 744, 747-48 (Fla. 1st DCA 2001).  *See also, e.g., Eirman v. Olde Discount Corp.*, 697 So.2d 865, 866 (Fla. 4th DCA 1997); *Berenguer v. Warner-Lambert Co.*, No. 02-05242, 2003 WL 24299241, *3 (Fla. Cir. Ct. July 31, 2003).  A number of other potentially applicable state consumer protection statutes likewise do not apply to transactions or conduct authorized by state or federal law (*see* **App. D**).  In this case, the transaction at issue is

the labeling of commercial pet food. As detailed above, applicable state laws adopt AAFCO

definitions of feed ingredients, prescribe the information contained on commercial pet food

labels, regulate the brand and product names on commercial pet food labels, and incorporate

AAFCO standards for uses of the terms "complete, perfect, scientific, or balanced" and "meat"

and "meat-by-products." Plaintiffs have not alleged that any Defendant violated any of the

applicable FDA or AAFCO regulations (as incorporated by state law), much less that any such

violation injured a Plaintiff. Therefore, Defendants' actions are exempted by the safe harbor

provisions of the FDUTPA and other state consumer protection statutes, and Plaintiffs cannot

state a cause of action under the FDUTPA – and many of the other potentially applicable state

laws. For this independent reason, Count IV should be dismissed.[35]

### D.    THE ECONOMIC LOSS RULE BARS PLAINTIFFS' CLAIMS FOR NEGLIGENCE (COUNT VI) AND NEGLIGENCE PER SE (COUNT VII).

The economic loss rule also bars Plaintiffs' claims for negligence (Count VI) and

negligence per se (Count VII). The Supreme Courts of Florida and Michigan, for example, have

held that the economic loss doctrine bars negligence actions "when there is a defect in a product

that causes damage to the product but causes no personal injury or damage to other property."

*Indemnity Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So.2d 532, 536 (Fla. 2004); *Neibarger v.*

*Universal Coops.*, 486 N.W.2d 612, 618 (Mich. 1992) "where a plaintiff seeks to recover for

---

[35]    Courts have not hesitated to dismiss consumer protection act claims for failure to state a claim – at the pleading stage – where consumer protection act claims allege practices that are governed by a separate state or federal law. *See, e.g., McLiechy v. Bristol West Ins. Co.*, 474 F.3d 897 (6th Cir. 2007) (affirming dismissal of Michigan Consumer Protection Act claim where challenged transactions were subject to Insurance Code); *McEntee v. Incredible Techs., Inc.*, No. 263818, 2006 WL 659347 (Mich. App. Mar. 16, 2006) (consumer protection act claims dismissed where challenged products – arcade games – were governed by separate gaming act).

economic loss caused by a defective product purchased for commercial purposes, the exclusive remedy is provided by the UCC"). The rule applies either where the parties are in contractual privity or where the defendant is a manufacturer or distributor of a product, and it is intended to "prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." *Indemnity Ins. Co. N. Am.*, 891 So.2d at 536. Thus, where a plaintiff can do no more than claim "disappointed economic expectations," as is the case here, the economic loss rule precludes a claim of negligence. *Casa Clara Condo. Ass'n, Inc. v. Charley Toppino & Sons, Inc.*, 620 So.2d 1244, 1246 (Fla. 1993) (internal citation and quotation omitted).

Here, as discussed above, Plaintiffs fail to allege that any of their pets was harmed in any way by any Defendant's pet food. Plaintiffs seek damages on behalf of themselves and a class related solely to their alleged purchase of pet food that allegedly did not meet their expectations. (Compl. ¶¶ 2-25, 159). Plaintiffs' Complaint does no more than claim "disappointed economic expectations" – the "quintessential" losses that the economic loss rule prohibits a party from recovering under a negligence theory. *Casa Clara Condo.*, 620 So.2d at 1246 (internal citation and quotation marks omitted). Thus, Plaintiffs' claims of negligence and negligence per se (Counts VI and VII) are barred by the economic loss rule and should be dismissed.

> **E.    BECAUSE PLAINTIFFS' NEGLIGENCE PER SE CLAIM IS BASED ON STATUTES THAT DO NOT PROVIDE FOR A PRIVATE CAUSE OF ACTION, IT SHOULD BE DISMISSED.**

Plaintiffs' negligence per se claim (Count VII) is fatally flawed on still further grounds because it is based on statutes that do not provide for a private cause of action.

In *Blinn v. Smith & Nephew Richards, Inc.*, 55 F. Supp. 2d 1353 (M.D. Fla. 1999), the court held that a negligence per se claim is not available to a plaintiff alleging violations of FDA regulations or the Federal Food, Drug and Cosmetic Act (the "FDCA"). *Id.* at 1361. As the

court recognized, liability under Florida law for statutory violations depends on legislative intent. Citing to *Murthy v. N. Sinha Corp.*, 644 So.2d 983, 985 (Fla. 1994), the court explained that "in the absence of evidence of a legislative intent to create a private cause of action, violation of a statute creates no civil liability" under Florida law. According to the court, the FDCA "expressly prohibits private claims for violations . . . strongly evidencing a legislative intent not to create a private cause of action." *Blinn*, 55 F. Supp. 2d at 1361; *see also Stevens v. Danek Med., Inc.*, No. 95-14293-CIV-PAINE, 1999 WL 33217282, **5-6 (S.D. Fla. April 16, 1999 (dismissing plaintiff's negligence per se claims based on alleged violations of the FDCA and stating that "Florida courts have refused to recognize a private right of action for negligence per se based on an alleged violation of a federal statute that does not provide for a private right of action.").

Plaintiffs' claim for negligence per se is based entirely on allegations that Defendants have breached their obligations under 21 U.S.C. § 343, 9 C.F.R. 355.52, 59 and related regulations. (*See* Compl. ¶ 232). Therefore, because the FDCA does not provide for a private cause of action, Count VII must be dismissed.

### F.   PLAINTIFFS' WARRANTY CLAIMS (COUNTS X AND XI) MUST BE DISMISSED BECAUSE PLAINTIFFS FAIL TO ALLEGE PRIVITY.

"[T]o recover for breach of a warranty, either express or implied, the plaintiff must be in privity of contract with the defendant." *T.W.M. v. Amer. Med. Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995) . As courts consistently have recognized, "[a] warranty, whether express or implied, is fundamentally a contract. A contract cause of action requires privity." *Elizabeth N. v. Riverside Group, Inc.*, 585 So.2d 376, 378 (Fla. 1st DCA 1991); *see also Kramer v. Piper Aircraft Corp.*, 520 So.2d 37, 39 (Fla. 1988) (noting that Florida Supreme Court has "abolished" cause of action for warranty where there is no privity).

**1.    Plaintiffs Fail To Allege Facts Establishing Privity With Regard to Any Defendant.**

Plaintiffs' breach of warranty claims (Counts X and XI) should be dismissed against all undersigned Defendants for failure to plead facts establishing the essential element of privity.  In *Jacobs v. Osmose, Inc.*, No. 01-944-CIV, 2002 WL 34241682 (S.D. Fla. Jan. 3, 2002), a plaintiff filed a class action against manufacturers and retailers of pressure-treated wood alleging, among other claims, breach of implied warranty.  The plaintiff, who was the sole putative class representative, alleged that he "had during the Class Period installed, constructed and/or existing upon his property a deck made of treated wood purchased at one of the retail defendants." *Id.* at *1.  Because the court in *Jacobs* found it "difficult to determine from the Complaint whether [the plaintiff] even purchased any of the manufacturer defendants' products and from which retail stores such products were purchased," the court dismissed the breach of implied warranty claim, concluding that the complaint contained "no factual allegations showing privity of contract between [the plaintiff] and the Defendants." *Id.* at *5.

Similarly, in this case, Plaintiffs allege warranty claims against Defendants without attributing any of their alleged pet food purchases to a specific Retail Defendant.  Like the vague allegations in *Jacobs* that the plaintiff had purchased wood products "at one of the retail defendants," the allegations in the Complaint merely refer to Plaintiffs' "various" purchases of "various" brands from a "group of products" from "various" Defendants.  (*See* Compl. ¶¶ 2-25). The allegations in Count X and XI not only are insufficient to establish privity, but they also make it impossible to determine which warranties, if any, were made to Plaintiffs.  Such pleading epitomizes the "improper lumping" this Court condemned in *Flamenbaum*, 2004 WL 1773207, *6.  Because neither this Court nor any Defendant can identify which Plaintiffs purchased products from which Defendants, Plaintiffs cannot establish the requisite privity, and Counts X

and XI of the Complaint should be dismissed with respect to all undersigned Defendants. *See Jacobs,* 2002 WL 34241682, \*5.[36]

### 2. Plaintiffs Cannot Allege Privity With Respect To The Manufacturer Defendants.

Even if Plaintiffs could identify specific purchases from one or more of the Retail Defendants, Plaintiffs would not thereby establish privity with the Manufacturer Defendants because a buyer has privity only with the particular Defendant from whom he or she *directly* purchases a product. *See T.W.M.,* 886 F. Supp. at 844 ("A plaintiff who purchases a product, but does not buy it *directly* from the defendant, is not in privity with that defendant.") (emphasis added); *Tolliver v. Monaco Coach Corp.,* No. 8:06-cv-856, 2006 WL 1678842, \*2 (M.D. Fla. June 16, 2006) ("[P]rivity is required even if a suit is brought against a manufacturer.").

Applying this rule, courts consistently dismiss warranty claims brought by consumers against manufacturers from which they did not directly purchase the product. *See Montgomery v. Davol, Inc.,* No. 3:07cv176, 2007 WL 2155644, \*2 (N.D. Fla. July 24, 2007) (dismissing a breach of implied warranty claim because there was "no claim that the defendants sold [the product] *directly* to the plaintiffs") (emphasis in original); *T.W.M.,* 866 F. Supp. at 844; *Tolliver,* 2006 WL 1678842, \*2. Since Plaintiffs do not and cannot allege that they made any direct purchases from any of the Manufacturer Defendants, Plaintiffs' warranty claims against these Defendants fail as a matter of law and should be dismissed with prejudice.

---

[36] Plaintiffs apparently wish to apply "other state breach of warranty laws of the various states where Class members reside." (Compl. n. 28 and 29.) However, such application does not save their claims. *See* **App. E**, "Breach of Warranty."

**G.    PLAINTIFFS' UNJUST ENRICHMENT CLAIM (COUNT XII) SHOULD BE DISMISSED FOR FAILURE TO STATE A LEGALLY COGNIZABLE CLAIM.**

Unjust enrichment is an equitable cause of action. *Tooltrend, Inc. v. CMT Utensili, SRL,* 198 F.3d 802, 805 (11th Cir. 1999) (applying Florida law). As such, it may only be invoked in the absence of an adequate legal remedy. *Bowleg v. Bowe*, 502 So.2d 71, 72 (Fla. 3d DCA 1987); *Liza Danielle, Inc. v. Jamko, Inc.,* 408 So.2d 735, 738 (Fla. 3d DCA 1982); *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.,* 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005). Plaintiffs plead causes of action sounding in fraud, negligence, and contract, as well as various statutory violations, seeking "actual damages" under each of these claims. Far from viewing legal remedies as inadequate, they seek them at every turn. Nowhere in the Complaint have Plaintiffs alleged the inadequacy or unavailability of such remedies. Consequently, the claim of unjust enrichment must be dismissed, pursuant to Rule 12(b)(6). *See, e.g., Court Appointed Receiver for Lancer Mgmt. Group LLC v. Taubman*, No. 05-60199-CIV, 2007 WL 984452, **2-3 (S.D. Fla. Mar. 27, 2007); *Am. Honda Motor Co.*, 390 F. Supp. 2d at 1178.

Furthermore, to state a claim of unjust enrichment, a complaint must allege that: 1) the defendant received a benefit from the plaintiff; 2) the defendant had knowledge of the benefit; and 3) the defendant's retention of said benefit would be inequitable. *See, e.g., Della Ratta v. Della Ratta,* 927 So.2d 1055, 1059 (Fla. 4th DCA 2006); *Shands Teaching Hosp. and Clinics, Inc. v. Beech St. Corp.,* 899 So.2d 1222, 1227 (Fla. 1st DCA 2005); *Timberland Consol. P'ship v. Andrews Land and Timber, Inc.,* 818 So.2d 609 (Fla. 5th DCA 2002). As discussed in Section IV.A above, Plaintiffs' Complaint nowhere specifies which of Defendants' many products each Plaintiff purchased, when these purchases took place, where any such purchases were made, or on how many occasions such purchases were made. Consequently, it is impossible to determine which Retail Defendants, if any, a particular Plaintiff might have benefited. Further, Plaintiffs

have not pleaded sufficient facts to establish that any of them directly conferred a benefit upon any of the Manufacturer Defendants who were not involved in retail sales. A bald allegation that such Defendants received an indirect benefit is insufficient to support a claim of unjust enrichment. *See, e.g., Tilton v. Playboy Ent. Group, Inc.*, No. 88:05-cv-692-T-30TGW, 2007 WL 80858, *3 (M.D. Fla. Jan. 8, 2007); *Huntsman Pkg. Corp. v. Kerry Pkg. Corp.*, 992 F. Supp. 1439, 1446 (M.D. Fla. 1998); *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla.*, 667 So.2d 876, 879 (Fla. 3d DCA 1996). Because Plaintiffs have not alleged that they conferred a benefit on any particular Defendant, there is no basis for Plaintiffs' general allegation that Defendants had knowledge of such a benefit. Therefore, the unjust enrichment claim must be dismissed pursuant to Rule 12(b)(6) for failure sufficiently to plead the necessary elements of the claim. *See, e.g., Tilton*, 2007 WL 80858, *3.

Finally, Plaintiffs improperly attempt to base their unjust enrichment claim on allegations of Defendants' general "wrongdoing." (Compl. ¶¶ 258-260). However, an unjust enrichment claim is not designed to remedy wrongdoing. Instead, the unjust enrichment claim is intended to provide a mechanism for plaintiffs who establish that a particular defendant possesses funds which, despite the *absence* of wrongdoing, it nevertheless should not retain. When plaintiffs *do* allege wrongdoing, they must address that wrongdoing with other causes of action designed for that purpose. *See, e.g., Guyana Tel. & Tel. Co. v. Melbourne Intern.*, 329 F.3d 1241, 1245 n.3 (11th Cir. 2003) (noting that unjust enrichment "has in principle nothing to do with fault...[but] with wealth being in one person's hands when it should be another person's."); *Flint v. ABB, Inc.*, 337 F.3d 1326, 1330 n. 2 (11th Cir. 2003) ("The law of unjust enrichment is concerned solely with enrichments that are unjust *independently* of wrongs.") (emphasis in original); *State of Fla., Office of Atty. Gen. v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1309 (S.D. Fla.

2005) ("[A]s soon as a claimant relies on a wrong to supply the unjust factor, as . . . Plaintiffs do here, the right on which the plaintiff relies arises from that wrong, not from unjust enrichment.") (internal punctuation omitted).  By predicating their unjust enrichment claim on allegations of Defendants' wrongdoing, Plaintiffs misapprehend the nature of the cause of action and seek to introduce it in a set of circumstances to which it has no application.  The unjust enrichment claims should consequently be dismissed.

## CONCLUSION

For all the foregoing reasons, the undersigned Defendants respectfully move this Court to dismiss Plaintiffs' Corrected Amended Class Action Complaint in its entirety.

Respectfully submitted,

/s/ Marty Steinberg
Marty Steinberg
Florida Bar Number 187293
Adriana Riviere-Badell
Florida Bar Number 30572
**HUNTON & WILLIAMS**
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
Telephone: 305-810-2500
Fax: 305-810-2460
E-Mail: msteinberg@hunton.com
ariviere-badell@hunton.com


Charles H. Abbott
Gail E. Lees
Gary L. Justice
William Edward Wegner
**GIBSON DUNN & CRUTCHER**
333 S. Grand Avenue, Suite 4600
Los Angeles, CA 90071-3197
Telephone: 213-229-7000
E-Mail: cabbott@gibsondunn.com
glees@gibsondunn.com
gjustice@gibsondunn.com
wwegner@gibsondunn.com


*Attorneys for Nutro Products, Inc.*

By: /s/ Carol A. Licko
    Carol A. Licko
    Florida Bar Number 435872
    **HOGAN & HARTSON L.L.P.**
    Mellon Financial Center
    1111 Brickell Avenue, Suite 1900
    Miami, Florida 33131
    Telephone: 305-459-6500
    Fax: 305-459-6550
    E-Mail: calicko@hhlaw.com


    Craig A. Hoover
    Miranda L. Berge
    **HOGAN & HARTSON L.L.P.**
    555 Thirteenth Street, NW
    Washington, D.C. 20004
    Telephone: 202-637-5600
    Fax: 202-637-5910
    E-Mail: cahoover@hhlaw.com
    mlberge@hhlaw.com


    Robert C. Troyer
    **HOGAN & HARTSON L.L.P.**
    1200 17th Street
    One Tabor Center, Suite 1500
    Denver, CO 80202
    Telephone: 303-899-7300
    Fax: 303-899-7333
    E-Mail: rctroyer@hhlaw.com


    *Attorneys for Nestlé U.S.A., Inc.,*
    *Nestlé Purina PetCare Company and*
    *Nestlé, S.A.*

/s/ Omar Ortega
Omar Ortega
Florida Bar Number 0095117
**DORTA & ORTEGA, P.A.**
800 S. Douglas Road
Douglas Entrance Suite 149
Coral Gables, FL 33134
Telephone: 305-461-5454
Fax: 305-461-5226
E-Mail:  ortegalaw@bellsouth.net

Dane H. Butswinkas
Philip A. Sechler
Thomas G. Hentoff
Christopher M. D'Angelo
Patrick J. Houlihan
**WILLIAMS & CONNOLLY**
725 12th Street, NW
Washington, DC 20005-3901
Telephone: 202-434-5000
E-Mail: cdangelo@wc.com
dbutswinkas@wc.com
phoulihan@wc.com
psechler@wc.com
thentoff@wc.com

*Attorneys for Mars, Incorporated and Mars
Petcare U.S., Inc.*

/s/ Alan G. Greer
Alan G. Greer
Florida Bar Number 123294
**RICHMAN GREER, P.A.**
201 S. Biscayne Blvd., Suite 1000
Miami, FL 33131
Telephone: 305-373-4000
Fax: 305-373-4099
E-Mail: agreer@richmangreer.com


D. Jeffrey Ireland
Brian D. Wright
Laura A. Sanom
**FARUKI IRELAND & COX  P.L.L.**
10 North Ludlow Street
500 Courthouse Plaza, S.W.
Dayton, OH 45402
Telephone: 937-227-3710
Fax: 937-227-3717
E-Mail: djireland@ficlaw.com
bwright@ficlaw.com
lsanom@ficlaw.com

*Attorneys for The Procter & Gamble*
*Company and The Iams Co.*

/s/ Benjamine Reid
Benjamine Reid
Florida Bar Number 183522
Olga M. Vieira
Florida Bar Number 999172
**CARLTON FIELDS, P.A.**
100 SE 2nd Street, Suite 4000
Miami, FL 33131-9101
Telephone: 305-530-0050
Fax: 305-530-0055
E-Mail: breid@carltonfields.com
ovieira@caroltonfields.com

James D. Arden
John J. Kuster
Kara L. McCall
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, NY 10019-6018
Telephone: 212-839-5300
Fax: 212-839-5889
E-Mail: jarden@sidley.com
jkuster@sidley.com
kmccall@sidley.com

*Attorneys for Colgate-Palmolive Company
and Hill's Pet Nutrition, Inc.*

/s/ Sherril M. Colombo
Sherril M. Colombo
Florida Bar Number 948799
**COZEN O'CONNOR**
200 S. Biscayne Blvd., Suite 4410
Miami, FL 33131
Telephone: 305-704-5940
Fax: 305-704-5955
E-Mail: scolombo@cozen.com

Richard Fama
John J. McDonough
**COZEN O'CONNOR**
45 Broadway
New York, NY 10006
Telephone: 212-509-9400
Fax: 212-509-9492
E-Mail: jmcdonough@cozen.com
rfama@cozen.com

John F. Mullen
**COZEN O'CONNOR**
1900 Market Street
3rd Floor The Atrium
Philadelphia, PA 19103
Telephone: 215-665-2179
E-Mail: jmullen@cozen.com

*Attorneys for Del Monte Foods, Co.*

/s/ Lonnie L. Simpson
/s/ S. Douglas Knox
Lonnie L. Simpson
Florida Bar Number 821871
S. Douglas Knox
Florida Bar Number 849871
**DLA PIPER LLP**
101 E. Kennedy Blvd., Suite 2000
Tampa, FL 33602
Telephone:  813-229-2111
Fax: 813-229-1447
E-Mail: lonnie.simpson@dlapiper.com
douglas.knox@dlapiper.com

Amy W. Schulman
Alexander Shaknes
**DLA PIPER LLP**
1251 Avenue of the Americas
New York, NY 10020-1104
Telephone: 212-335-4829
E-Mail: amy.schulman@dlapiper.com
alex.shaknes@dlapiper.com

William C. Martin
**DLA PIPER LLP**
203 N. LaSalle Street, Suite 1900
Chicago, IL 60601
Telephone:  312-368-4027
Fax: 312-236-7516
E-Mail: william.martin@dlapiper.com

*Attorneys for Menu Foods, Inc. and Menu Foods Income Fund*

/s/ Hugh J. Turner, Jr.
Hugh J. Turner, Jr.
Florida Bar Number 203033
**AKERMAN SENTERFITT**
350 E. Las Olas Blvd., Suite 1600
Fort Lauderdale, FL 33301-0006
Telephone: 954-759-8930
Fax: 954-847-5365
E-Mail: hugh.turner@akerman.com

*Attorney for Publix Super Markets, Inc.*


/s/ Hugh J. Turner, Jr.
Hugh J. Turner, Jr.
Florida Bar Number 203033
**AKERMAN SENTERFITT**
350 E. Las Olas Blvd., Suite 1600
Fort Lauderdale, FL 33301-0006
Telephone: 954-759-8930
Fax: 954-847-5365
E-Mail: hugh.turner@akerman.com


Robert Valadez
Javier Thomas Duran
**SHELTON & VALADEZ, P.C.**
600 Navarro, Suite 500
San Antonio, Texas  78205
Telephone:  210-349-0515
Fax:  210-349-3666
E-Mail:  rvaladez@shelton-valadez.com
jduran@shelton-valadez.com

*Attorneys for H.E. Butt Grocery Company*

73

/s/ John Brian Thomas Murray, Jr.
John B. T. Murray, Jr.
Florida Bar Number 962759
**SQUIRE SANDERS & DEMPSEY LLP**
1900 Phillips Point West
777 S Flagler Drive, Suite 1900
West Palm Beach, FL 33401-6198
Telephone: 561-650-7200
Fax: 561-655-1509
E-Mail: jbmurray@ssd.com

*Attorneys for PETCO Animal Supplies Stores,*
*Inc., PetSmart Inc., Wal-Mart Stores, Inc.,*
*Target Corporation and Meijer, Inc.*


/s/ Robin L. Hanger
Robin L. Hanger
Florida Bar Number 177172
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
200 S. Biscayne Boulevard, 40th Floor
Miami, FL 33131-2398
Telephone: 305-577-7040
Fax: 305-577-7001
E-Mail: rlhanger@ssd.com

*Attorneys for PETCO Animal Supplies Stores,*
*Inc.*

/s/ Rolando Andres Diaz
/s/ Maria Kayanan
/s/ Cassidy Yen Dang
Rolando Andres Diaz
Florida Bar Number 963150
Maria Kayanan
Florida Bar Number 305601
Cassidy Yen Dang
Florida Bar Number 16482
**KUBICKI DRAPER**
25 W Flagler Street, Penthouse
Miami, FL 33130-1780
Telephone: 305-982-6615
Fax: 305-374-7846
E-Mail: rd@kubickidraper.com
mek@kubickidraper.com
cyd@kubickidraper.com

*Attorneys for Pet Supermarket, Inc.*


/s/ Ralph G. Patino
/s/ Dominick V. Tamarazzo
/s/ Carlos B. Salup
Ralph G. Patino
Florida Bar Number 768881
Dominick V. Tamarazzo
Florida Bar Number 92835
Carlos B. Salup
Florida Bar Number 26952
**PATINO & ASSOCIATES, P.A.**
225 Alcazar Avenue
Coral Gables, Florida 33134
Telephone:  305-443-6163
Fax:  305-443-5635
E-Mail:  rpatino@patinolaw.com
dtamarazzo@patinolaw.com
csalup@patinolaw.com

*Attorneys for Pet Supplies "Plus" and Pet*
*Supplies Plus/USA, Inc.*

/s/ Craig Kalil
Craig Kalil
Florida Bar No. 607282
Joshua D. Poyer
Florida Bar No. 653349
**ABALLI, MILNE, KALIL & ESCAGEDO, P.A.**
2250 Sun Trust International Center
One Southeast Third Avenue
Miami, Florida 33131
Telephone: 305-373-6600
Fax: 305-373-7929
E-Mail: ckalil@aballi.com
jpoyer@aballi.com


W. Randolph Teslik
Andrew Dober
**AKIN GUMP STRAUSS HAUER & FELD**
1333 New Hampshire Avenue, NW
Washington, D.C. 20036
Telephone: 202-887-4000
Fax: 202-887-4288
E-Mail: rteslik@akingump.com
adober@akingump.com

*Attorneys for New Albertsons, Inc. and Albertsons LLC*

/s/ C. Richard Fulmer, Jr.
C. Richard Fulmer, Jr.
Florida Bar No. 0370037
**FULMER LeROY ALBEE BAUMANN &
GLASS, PLC**
2866 East Oakland Park Boulevard
Fort Lauderdale, Florida  33306
Telephone:  954-707-4430
Fax:  954-707-4431
E-Mail:  rfulmer@Fulmer.LeRoy.com


James K. Reuss
**LANE ALTON & HORST, LLC**
Two Miranova Place
Suite 500
Columbus, Ohio  43215
Telephone:  (614) 233-4719
E-Mail:  jreuss@lanealton.com


*Attorneys for The Kroger Co. of Ohio*


/s/ Marcos Daniel Jiménez
Marcos Daniel Jiménez
Florida Bar No. 441503
Robert J. Alwine II
Florida Bar No. 404179
**KENNY NACHWALTER, P.A.**
201 South Biscayne Boulevard
1100 Miami Center
Miami, Florida  33131-4327
Telephone:  305-373-1000
Fax:  305-372-1861
E-Mail:  mjimenez@kennynachwalter.com
ralwine@kennynachwalter.com


*Attorneys for Safeway Inc. and The
Stop & Shop Supermarket Company LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 12 , 2007, I electronically filed the foregoing with

the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing

to the counsel so indicated on the attached Service List.

By: /s/ Carol A. Licko
Carol A. Licko