

# EXHIBIT B

Dockets.Justia.com

LexisNexis® *Total Research System*

Switch Client ┆ Preferences ┆ Sign Off ┆ ? Help

Search ┆ Research Tasks ┆ Get a Document ┆ Shepard's® ┆ Alerts ┆ Total Litigator          Dossier ┆ History ┆

Service: Get by LEXSEE®
Citation: 2007 U.S. Dist. LEXIS 23872

*2007 U.S. Dist. LEXIS 23872, \**

J.P. Morgan Trust Co., N.A. v. Potash Corp. of Sask., Inc. (In re Farmland Indus.)

Case No. 3:05-cv-587-J-32MCR

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, JACKSONVILLE
DIVISION

2007 U.S. Dist. LEXIS 23872

March 30, 2007, Decided
March 30, 2007, Filed

## CASE SUMMARY

**PROCEDURAL POSTURE:** In a patent case, two of the named corporate defendants filed a combined motion for summary judgment as to non liability and to dismiss the first of these two defendants. The second defendant filed a motion for summary judgment of lack of personal jurisdiction.

**OVERVIEW:** Plaintiff did not establish that any Florida direct or indirect subsidiary acted as an agent to the first defendant. The court found insufficient evidence to attribute to the first defendant operational control over one indirect wholly-owned subsidiary's operations. Further, the first defendant's guarantee of the subsidiary's environmental obligations did not create a basis for specific jurisdiction; the basis of this action--alleged patent infringement--was unrelated to the environmental guarantee. Next, inter-affiliate agreements between the subsidiary and the second defendant to "from time to time" provide an unspecified amount of raw materials to each other at no profit to each was not enough to establish that the second defendant was engaged in "substantial and not isolated" business contact with Florida. Further, inter alia, plaintiff adduced no evidence to suggest anything other than this defendant's product was sold nationwide, including in Florida, by a second indirect wholly-owned subsidiary of the first defendant; nor did plaintiff show that the second defendant had continuous and systematic, pervasive, "substantial and not isolated" contact with Florida.

**OUTCOME:** The court granted defendants' combined motion for summary judgment as to non-liability and to dismiss in part. To the extent the court found it did not have personal jurisdiction over the first defendant, this defendant was dismissed without prejudice. The court granted the second defendant's motion for summary judgment. That defendant was dismissed without prejudice.

**CORE TERMS:** phosphate, personal jurisdiction, subsidiary, long-arm, forum state's, entity, infringement, isolated, patent, minimum contacts ...

Case 1:07-cv-21221-CMA   Document 266-3   Entered on FLSD Docket 12/07/2007   Page 3 of 21

Get a Document - by Citation - 2007 U.S. Dist. LEXIS 23872                    Page 2 of 20

## LEXISNEXIS® HEADNOTES                                                      ⊟ Hide

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions >
General Overview

**HN1** Whether a court has personal jurisdiction over a party is a question of
law.  More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions >
General Overview
Patent Law > Jurisdiction & Review > Personal Jurisdiction & Venue > General Overview

**HN2** Federal Circuit law governs personal jurisdiction in patent
cases.  More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits
Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions >
Long-Arm Jurisdiction
Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection

**HN3** Determining whether personal jurisdiction exists over an out-of-state defendant
involves two inquiries: whether a forum state's long-arm statute permits service of
process and whether the assertion of personal jurisdiction violates federal due
process. In analyzing the forum state's long-arm statute, the United States Court of
Appeals for the Federal Circuit defers to that state's highest court. However, when
analyzing personal jurisdiction for purposes of compliance with federal due process,
Federal Circuit law applies.  More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > General Overview
Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions >
Minimum Contacts
Evidence > Procedural Considerations > Burdens of Proof > Preponderance of Evidence

**HN4** Where the parties have conducted extensive discovery directed toward the question
of personal jurisdiction, submitted evidentiary support, and did not request an
evidentiary hearing, a plaintiff bears the burden of proving by a preponderance of
the evidence the facts necessary to establish personal jurisdiction over the
defendants. While the plaintiff bears the burden to establish minimum contacts,
upon this showing, defendants must prove that the exercise of jurisdiction is
unreasonable. The reasonableness inquiry encompasses factors including (1) the
burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's
interest in obtaining relief, (4) the interstate judicial system's interest in obtaining
the most efficient resolution of controversies, and (5) the shared interest of the
several states in furthering fundamental substantive social
policies.  More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions >
Long-Arm Jurisdiction

**HN5** § 48.193, Fla. Stat. (2006).  More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions >
Long-Arm Jurisdiction
Patent Law > Infringement Actions > Infringing Acts > General Overview
Patent Law > Jurisdiction & Review > Personal Jurisdiction & Venue > Foreign Defendants

**HN6** Patent infringement constitutes a tortious act within the meaning of Florida's long-
arm statute for the purposes of establishing personal
jurisdiction.  More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits



Case 1:07-cv-21221-CMA    Document 266-3    Entered on FLSD Docket 12/07/2007    Page 4 of 21

Get a Document - by Citation - 2007 U.S. Dist. LEXIS 23872                                    Page 3 of 20

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions >
Minimum Contacts

Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection

*HN7* The Due Process Clause of the Fourteenth Amendment operates to limit the power of
a state to assert in personam jurisdiction over a nonresident defendant. The exercise
of jurisdiction over nonresident defendants of a forum state is not inconsistent with
due process if the nonresident defendants have certain "minimum contacts" with the
forum such that the maintenance of the suit does not offend "traditional notions of
fair play and substantial justice." The "minimum contacts" test examines the number
and nature of a defendant's contacts with the forum. The requirement for purposeful
minimum contacts helps ensure that non-residents have fair warning that a
particular activity may subject them to litigation within the
forum. More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions >
Minimum Contacts

*HN8* Specific jurisdiction exists when a non-resident defendant purposefully establishes
minimum contacts with the forum state, the cause of action arises out of those
contacts, and jurisdiction is constitutionally reasonable. Specific personal jurisdiction
may exist even if the defendant's contacts are isolated and
sporadic. More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions >
Minimum Contacts
Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions >
Purposeful Availment

*HN9* The United States Court of Appeals for the Federal Circuit applies a three-part test
for determining whether specific personal jurisdiction may be properly exercised over
an out-of-state defendant in a patent case: (1) whether the defendant purposefully
directed its activities at residents of the forum, (2) whether the claim arises out of or
relates to those activities, and (3) whether assertion of personal jurisdiction is
reasonable and fair. More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits
Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions >
Substantial Contacts

Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection

*HN10* Under general personal jurisdiction, the exercise of jurisdiction is proper where the
defendant has "continuous and systematic" general business contacts with the
forum state, even if those contacts are not related to the cause of action. These
contacts must be so substantial and of such a nature as to justify suit against the
defendant on causes of action arising from dealings entirely different from those
activities. The due process contacts requisite to establishing general personal
jurisdiction are more exacting than those for specific personal
jurisdiction. More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits
Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions >
Long-Arm Jurisdiction
Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions >
Minimum Contacts
Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions >
Substantial Contacts

Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection

*HN11* Florida courts have interpreted the term "substantial and not isolated activity," in

the long-arm statute to mean continuous and systematic general business contact with Florida, which fulfills the due process requirement of minimum contacts when asserting general jurisdiction. Thus, the analysis of general jurisdiction under § 48.193(2), Fla. Stat., and due process merge. Furthermore, the due process requirement for general personal jurisdiction recognized by the United States Court of Appeals for the Federal Circuit is identical to that of Florida's long-arm statute, § 48.193(2). Thus, a court's long-arm statute and due process analysis collapses into a single inquiry and case law construing § 48.193(2) is relevant.  More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Substantial Contacts 🔎
Patent Law > Jurisdiction & Review > Personal Jurisdiction & Venue > Foreign Defendants 🔎
*HN12* Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there. However, a corporation which engages in substantial activity in a state through a subsidiary is subject to personal jurisdiction in Florida.  More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Long-Arm Jurisdiction 🔎
*HN13* Under Florida's long-arm statute, a court may extend jurisdiction to any foreign corporation where the affiliated domestic corporation manifests no separate corporate interests of its own and functions solely to achieve the purpose of the dominant corporation. A foreign corporation will be held subject to personal jurisdiction if the subsidiary is a mere instrumentality.  More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Substantial Contacts 🔎
*HN14* To determine whether a foreign corporation is liable based on a subsidiary's substantial activity, a court considers the ownership of the subsidiary, the business activities of the subsidiary, and the financial relationship between the corporation and the subsidiary. Because the mere presence of a wholly owned subsidiary is insufficient to form a basis for the assertion of personal jurisdiction, one of the factors to be considered is the amount of control exercised by the foreign corporation. Jurisdiction over the foreign corporation will not be exercised based on the subsidiary's local activities where the subsidiary carries on its own business and preserves some independence from the foreign corporation. The requirement that the parent corporation approve major capital expenditures, and the fact that the parent corporation arranged financing and had overlapping board members does not in and of itself create the control necessary to establish an agency relationship. What is required for jurisdiction based on agency is not some control but "operational control" by the parent over the subsidiary.  More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits 🔎
Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Substantial Contacts 🔎
Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection 🔎
*HN15* For purposes of personal jurisdiction, the existence of a contractual relationship between a nonresident defendant and a Florida resident is not sufficient in itself to meet the requirements of due process. Furthermore, purchases by the nonresident defendant in a forum state do not warrant the exercise of general jurisdiction in that state. Indeed, mere purchases, even if occurring at regular intervals, are not enough to warrant a state's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions.  More Like This Headnote

Case 1:07-cv-21221-CMA    Document 266-3    Entered on FLSD Docket 12/07/2007    Page 6 of 21

Get a Document - by Citation - 2007 U.S. Dist. LEXIS 23872                    Page 5 of 20

Business & Corporate Law > Foreign Businesses > Qualifications
Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Agents
*HN16* Any corporation that is incorporated in or registered to do business in Florida must designate a registered agent for service of process. § 48.091, Fla. Stat.  More Like This Headnote

Business & Corporate Law > Foreign Businesses > Qualifications
Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits
Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Long-Arm Jurisdiction
Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Substantial Contacts
Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Agents
*HN17* Registering to do business and appointing a registered agent in the state of Florida, without more, does not subject a foreign corporation to the general personal jurisdiction of the state for any and all unrelated actions. Such a single contact does not meet the requirement for general personal jurisdiction that the defendant's contact with the forum state be "substantial and not isolated," "continuous and systematic," either under Florida's long-arm statute, or the tenets of due process.  More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Placement of Product in Commerce
Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Purposeful Availment
*HN18* The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward a forum state. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum state, for example, designing the product for the market in the forum state, advertising in the forum state, establishing channels for providing regular advice to customers in the forum state, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum state. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state.  More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Placement of Product in Commerce
Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Purposeful Availment
*HN19* Placement of a product into the stream of commerce is not an act purposefully directed toward a forum state, even if the defendant knows that commerce will sweep the product into the forum state. Additional conduct by the defendant, such as marketing the product through a distributor in the forum state or establishing channels for providing regular advice to customers, may, however, be considered in assessing whether defendant intended to serve a market in a forum state.  More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Substantial Contacts
*HN20* A general jurisdiction analysis must honor the requirement that a foreign corporation's contacts must be especially pervasive and substantial to permit a court to exercise jurisdiction over the foreign corporation.  More Like This Headnote

**OPINION**

**ORDER**

1

**FOOTNOTES**

1 Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it is intended to decide the motion addressed herein and is not intended for official publication or to serve as precedent.

This patent case is before the Court to determine whether it has personal jurisdiction over two of the named corporate defendants, Potash Corporation of Saskatchewan ⌄Inc. ("PCS, Inc.") and PCS Phosphate **[*3]** Company, Inc. ("PCS Phosphate"), and if so, whether, as a matter of law, the two defendants are not liable for the alleged patent infringement. Specifically, the Court considers PCS, Inc. and PCS Phosphate's Combined Motion For Summary Judgment As To Non-Liability Of PCS Inc. And PCS Phosphate And Motion To Dismiss PCS Inc. Under Rule 12(b)(2), (Doc. 23), and Motion Of PCS Phosphate Company, Inc. For Summary Judgment Of Lack Of Personal Jurisdiction (Doc. 32), as well as the parties' responses, reply, surreply, and supplemental briefing, and exhibits 2 all directed to the motions. (Docs. 29, 35-1, 37, 43, S-1, S-4.) Additionally, the Court considered argument of counsel presented at a hearing held on March 21, 2007. (Doc. 139.)

**FOOTNOTES**

2 The parties conducted discovery pertaining the question of personal jurisdiction over PCS, Inc. and PCS Phosphate. (See Doc. 88 at 3.)

**I. BACKGROUND** 3

**FOOTNOTES**

3 The Court draws the following facts from the parties' pleadings and briefs, and the evidentiary submissions accompanying the parties' briefs.

**[*4]** In this case, plaintiff J.P. Morgan Trust Company, ⌄National Association, ("J.P. Morgan"), in its capacity as Trustee of the FI Liquidating Trust for Farmland Industries, Inc. ⌄ n/k/a Reorganized FLI, Inc. ("Farmland"), alleges a claim of patent infringement against defendants based upon a process used in the manufacture of a fertilizer product known as green superphosphoric acid ("green SPA") as encompassed within the claims of U.S. Patent No. 4,808,391 ("the '391 patent) owned as assignee by Farmland. (Doc. 56-1, P 11.) The patent relates to a process for enhancing the color of and stabilizing wet process phosphoric acid. 4

**FOOTNOTES**

4

Patent '391 is entitled "Oxidation Reduction Process For Enhancing The Color Of And Stabilizing Wet Process Phosphoric Acid." (Doc. 56-2 at 1.) It relates to a method of converting black phosphoric acid to green phosphoric acid, by subjecting the black acid first to an oxidation step, and then to a reduction step. The color of the phosphoric acid depends upon the nature of the phosphate containing rock from which the acid is made. The black phosphoric acid is treated to change the color to green for marketing purposes. (See Doc. S-4 at 2 n.2 & 3.)

[*5]  The crux of defendants' position in these motions is that the green SPA at issue is manufactured by defendant White Springs Agricultural Chemicals, Inc., d/b/a PCS Phosphate-White Springs ("White Springs"), and sold by defendant PCS Sales (USA), Inc. ("PCS Sales"), and thus only these two entities are properly before the Court as defendants. (Doc. S-4 at 12 n.9.) Defendants contend that the remaining defendants, PCS, Inc. and PCS Phosphate, are separate corporate entities over which the Court has no personal jurisdiction, and who as a matter of law bear no liability for infringement of the '391 patent.

J.P. Morgan alleged in its complaint [5] that

> 9. Based upon information and belief, the Defendants are producers, sellers and/or users of green Superphosphoric Acid ("green SPA") manufactured at or shipped from the White Springs, Florida, facility.

> Defendants transact business in this judicial district as manufacturers, suppliers or users of green SPA that is sold and/or offered for sale in Florida, including the sale and/or offering for sale of other products in Florida. Defendants thus have sufficient contacts with this judicial district to subject it to the jurisdiction [*6] of the Court.

(Doc. 56-1, P 9.) As acknowledged by counsel for plaintiff at argument, the complaint alleges infringement of the '391 patent by the manufacturing process used at the White Springs facility owned and operated by defendant White Springs. The complaint does not allege defendants are infringing upon the '391 patent with any other product produced or at any other manufacturing facility. Thus, while plaintiff attempts in its responses to these motions to expand the breadth of its claim against defendants, in the Court's view the allegations of the complaint frame the issues and inform the Court's consideration of the pending motions. [6]

## FOOTNOTES

5 The Court will refer to plaintiff J.P. Morgan's Second Amended Complaint For Patent Infringement (Doc. 56-1) as "complaint" for convenience.

6 Plaintiff's efforts to expand the reach of this action to other plants and processes appears to be based mostly on conjecture and speculation.

[*7]

## A. Legal Standards

Whether this Court has personal jurisdiction over PCS, Inc. and PCS Phosphate is a question

Case 1:07-cv-21221-CMA    Document 266-3    Entered on FLSD Docket 12/07/2007    Page 9 of 21

Get a Document - by Citation - 2007 U.S. Dist. LEXIS 23872                Page 8 of 20

of law. Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1359 (Fed. Cir. 2001); 3D Systems, Inc. v. Aarotech Laboratories, Inc., 160 F.3d 1373, 1376 (Fed. Cir. 1998). Federal Circuit law governs personal jurisdiction in patent cases. Inamed Corp., 249 F.3d at 1359; Instabook Corp. v. Instantpublisher.com, 469 F. Supp. 2d 1120, 1122 (M.D. Fla. 2006). Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether the assertion of personal jurisdiction violates federal due process. Hockerson-Halberstadt, Inc. v. Propet USA, Inc., 62 Fed. Appx. 322, 336 (Fed. Cir. 2003); 3D Systems, Inc., 160 F.3d at 1376-77. In analyzing the forum state's long-arm statute, the Federal Circuit defers to that state's highest court. However, "when analyzing personal jurisdiction for purposes of compliance with federal due process, Federal Circuit law . . . applies. **[*8]** " 3D Systems, Inc., 160 F.3d at 1377.

Because the parties conducted extensive discovery directed toward the question of personal jurisdiction, submitted evidentiary support, and did not request an evidentiary hearing, "the plaintiff[] [bears] the burden of proving by a preponderance of the evidence the facts necessary to establish personal jurisdiction over the defendant[s]." Pieczenik v. Dyax Corp., 265 F.3d 1329, 1334 (Fed. Cir. 2001). [7] "While the plaintiff bears the burden to establish minimum contacts, upon this showing, defendants must prove that the exercise of jurisdiction is unreasonable." Elecs. for Imaging, Inc., 340 F.3d at 1350. "The reasonableness inquiry encompasses factors including (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." Elecs. for Imaging, Inc., 340 F.3d at 1352.

**FOOTNOTES**

7 Even applying the less stringent prima facie standard applicable when there has not been discovery on the jurisdictional issue, see Trintec Industries, Inc. v. Pedre Promotional Products, Inc., 395 F.3d 1275, 1282 (Fed. Cir. 2005); Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1349 (Fed. Cir. 2003)("where the district court's disposition as to the personal jurisdictional question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only make a *prima facie* showing that defendants are subject to personal jurisdiction"), the Court would reach the same result.

**[*9] 1. Florida Long-Arm Statute: § 48.193 Fla. Stat.**

The relevant provisions of Section 48.193, Florida's long-arm statute, identifying acts that may subject a defendant to jurisdiction reads as follows:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

(b) Committing a tortious act within this state. [8]

. . .

Case 1:07-cv-21221-CMA    Document 266-3    Entered on FLSD Docket 12/07/2007    Page 10 of 21

Get a Document - by Citation - 2007 U.S. Dist. LEXIS 23872                    Page 9 of 20

(d) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises **[*10]** from that activity.

Fla. Stat. § 48.193 (2006). The Court applies Florida law with respect to interpreting the state's long-arm statute. E.g. Graphic Controls Corp. v. Utah Med. Prods., Inc., 149 F.3d 1382, 1386 (Fed. Cir. 1998).

**FOOTNOTES**

8 Patent infringement constitutes a tortious act within the meaning of Florida's long-arm statute for the purposes of establishing personal jurisdiction. Elite Aluminum Corp., 451 F. Supp.2d 1311, 1314 (S.D. Fla. 2006); Adstep, Inc. v. Freeman Decorating Co., No. 3:02 CV 1002 J 21 HTS, 2003 U.S. Dist. LEXIS 25728, 2003 WL 25276323, at * 5 (M.D. Fla. 2003).

**2. Due Process**

"The Due Process Clause of the Fourteenth Amendment operates to limit the power of a State to assert in personam jurisdiction over a nonresident defendant." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413-14, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). "[T] he exercise of jurisdiction over nonresident defendants of a forum state is not inconsistent **[*11]** with due process if the nonresident defendants have certain 'minimum contacts' with the forum 'such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" Electronics for Imaging, Inc., 340 F.3d at 1350 (quoting Int'l Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). "'The "minimum contacts" test examines the number and nature of a defendant's contacts with the forum.'" Colida, 77 Fed. Appx. at 525. "The requirement for purposeful minimum contacts helps ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum." Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1565 (Fed. Cir. 1994).

Relevant to the Court's determination is whether its personal jurisdiction over the out-of-state defendants is defined as "general" or "specific." "Specific jurisdiction exists when a non-resident defendant purposefully establishes minimum contacts with the forum state, the cause of action arises out of those contacts, and jurisdiction is constitutionally reasonable." 3D Systems, Inc., 160 F.3d at 1378 **[*12]** Specific personal jurisdiction may exist "even if the defendant's contacts are 'isolated and sporadic.'" Silent Drive, Inc., 326 F.3d at 1200 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). 9

**FOOTNOTES**

9 The Federal Circuit applies a three-part test for determining whether specific personal jurisdiction may be properly exercised over an out-of-state defendant in a patent case: (1) whether the defendant purposefully directed its activities at residents of the forum, (2) whether the claim arises out of or relates to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair. Electronics for Imaging, Inc., 340

F.3d at 1350; 3D Systems, Inc., 160 F.3d at 1378.

Under general personal jurisdiction, the exercise of jurisdiction is proper where the defendant has "continuous and systematic" general business contacts with the 8 forum state, even if those contacts are not related to the cause of action. [*13] Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 415-16; Electronics for Imaging, Inc., 340 F.3d at 1349 (citation omitted). "[T]hese contacts must be 'so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely different from those activities.'" Hockerson-Halberstadt, Inc., 62 Fed. Appx. at 337. "The due process contacts requisite to establishing general personal jurisdiction are more exacting than those for specific personal jurisdiction." Kozial v. Bombardier-Rotax GMBH, 129 Fed. Appx. 543, 546 (11th Cir. 2005), cert. denied, 547 U.S. 1018, 126 S. Ct. 1568, 164 L. Ed. 2d 298 (2006). [10] "As general jurisdiction allows a court to exercise jurisdiction over any type of suit whatsoever, the contacts must be especially pervasive and substantial to satisfy § 48.193 (2)." General Cigar Holdings, Inc. v. Altadis, S.A., 205 F. Supp. 2d 1335, 1343 (S.D. Fla. 2002), aff'd 54 Fed. Appx. 492 (11th Cir. 2002).

**FOOTNOTES**

10

Florida courts have interpreted the term "substantial and not isolated activity," in the long-arm statute to mean "continuous and systematic"general business contact with Florida, which fulfills the due process requirement of minimum contacts when asserting general jurisdiction. See General Cigar Holdings, Inc. v. Altadis, S.A., 205 F. Supp. 2d 1335, 1343 (S.D. Fla. 2002); Woods v. Nova Companies Belize Ltd., 739 So. 2d 617, 620 (Fla. 4th DCA 1999). Thus, the analysis of general jurisdiction under section 48.193(2) and due process merge. Furthermore, the due process requirement for general personal jurisdiction recognized by the Federal Circuit is identical to that of Florida's long-arm statute, section 48.193(2). Thus, the Court's long-arm statute and due process analysis collapses into a single inquiry and case law construing section 48.193(2) is relevant. See Trintec Industries, Inc. v. Pedre Promotional, 395 F.3d 1275, 1279-80 (Fed. Cir. 2005); Inamed Corp., 249 F.3d at 1360.

[*14]  While plaintiff J.P. Morgan would have us analyze this Court's personal jurisdiction as being specific, the allegations of J.P. Morgan's complaint, which define the issues in this case, seek to hold PCS, Inc. and PCS Phosphate liable for the production of green SPA manufactured by defendant White Springs, and sold by PCS Sales. As set forth below, plaintiff has neither alleged or proffered any evidence that PCS, Inc.'s and PCS Phosphate's contacts with the state of Florida arise from that alleged White Springs activity. Accordingly, the Court considers whether it has general personal jurisdiction over PCS, Inc. and PCS Phosphate, based upon "continuous and systematic" and "substantial and not isolated" contacts with the state.

**B. Discussion**

**1. Personal Jurisdiction Over PCS, Inc.**

In support of its motion, PCS, Inc. offers the affidavit of its vice president general counsel, and secretary, Joseph A. Podwika ("Podwika") who sets forth the corporate structure of the defendants. (Doc. 24-2, P 1.) Podwika states that PCS, Inc. is a corporation organized under the laws of Canada, with its principal place of business in Saskatoon, Canada. It is not authorized to do [*15] business in Florida, and according to Podwika, does no business in

Florida. (Id., P 2.) PCS, Inc. has no registered agent, office, mailing address, or telephone number in Florida. It owns no real property within the state and maintains no bank accounts or any other type of account with a financial or other institution in Florida, and none of its employees are based in Florida. (Id. P 2.)

On September 11, 1995, PCS, Inc., through an indirect wholly owned subsidiary, acquired the stock of defendant White Springs, a Delaware corporation, which had a license to manufacture green SPA in accordance with the '391 patent. (Doc. 24-2, P 4.) Since that acquisition, White Springs has been an indirect wholly owned subsidiary of PCS, Inc. (Id., P 5.) "PCS, Inc. is neither a party nor a direct successor to . . . the Patent License Agreement . . ., nor is PCS Inc. directly involved in the sales or manufacture of green superphosphoric acid." (Doc. 24-2, P 6.)

Podwika states that the product manufactured at White Springs is marketed by PCS Sales, a Delaware corporation with principal place of business in Northbrook, Illinois, and another indirect wholly-owned subsidiary of PCS, Inc. (Doc. [*16] 24-2, P 9.) According to Podwika, PCS, Inc. does not hold out White Springs as its agent, or is White Springs authorized, or held out as authorized to conduct business or enter into contracts on behalf of PCS, Inc. (Id., P 10.) Further, PCS, Inc. is not involved in the day to day operations of White Springs: "White Springs owns its own assets, sets its own budgets, maintains its own bank accounts, and makes its own decisions regarding the products it produces." (Id., P 11; see also Doc. S-4, Ex. A at 35-36, 79 (White Springs budget prepared on-site).) White Springs employs between 880 and 980 persons, and hiring decisions are made at the local level, though salary levels are consistent with salary ranges systemwide. (Doc. S-4, Ex. A at 32, 38-39.)

> PCS Inc., PCS Phosphate, and White Springs do not commingle their funds. Each observes all appropriate corporate formalities, maintains appropriate corporate records, and maintains separate accounting records. The three entities are recognized as separate entities for tax purposes. White Springs is adequately capitalized and solvent.

(Doc. 24-2, P 12 (Podwika affidavit).)

An organizational chart of defendants [*17] identified by Podwika at his deposition, and submitted by plaintiff J.P. Morgan under seal, shows the interrelationship of over twenty entities, with PCS, Inc. as parent corporation at the top. (Doc. S-1, Ex. E.) It shows defendant PCS Sales as an indirect subsidiary of PCS, Inc. through a holding company named Potash Holding Co., Inc., a Delaware corporation. White Springs and PCS Phosphate are sister subsidiaries, each fully owned by Delaware corporation Phosphate Holding Co., Inc., which is a sister subsidiary to PCS Sales, and is an indirect subsidiary to PCS, Inc. though the same holding company, Potash Holding Co., Inc. (Doc. S-1, Ex. E.)

Plaintiffs argue that the requirements of Florida's long-arm statute and constitutional notions of due process are met as to PCS, Inc. because PCS, Inc. (1) is allegedly directly infringing on the '391 patent by producing, selling or using green SPA, and inducing and contributing to the infringement by others of the '391 patent (Docs. 29-1 at 2, 4; 43 at 3 (citing Doc. 56-1 at 3 (complaint)); (2) is guarantor of White Springs' environmental financial obligations to the Florida Department of Environmental Protection (Docs. 43-2 at 4, 29-1 at [*18] 12 (citing Doc. 29-6 at 9 (PCS, Inc. 2003 10-K); S-1 at 5); (3) is engaging in substantial and not isolated business activity in Florida through its subsidiaries which act as agents to PCS, Inc. (Doc. S-1 at 7720); and (4) is indirectly holding all outstanding interests in another entity called PCS Joint Venture LP (a Florida partnership). (Docs. 29-1 at 12; 29-6 at 8; 29-7 at 7 (Ex. F); 43 at 4.)

**a. Whether PCS, Inc. Has Substantial Activity Within Florida Through Its**

Case 1:07-cv-21221-CMA    Document 266-3    Entered on FLSD Docket 12/07/2007    Page 13 of 21

Get a Document - by Citation - 2007 U.S. Dist. LEXIS 23872                    Page 12 of 20

## Subsidiaries As Agents

J.P. Morgan urges that the Court ignore the corporate form, and accept that "PCS's subsidiaries function as 'mere departments' of their parent, PCS . . . " and that the enterprise holds itself out as a "'integrated company'" with the subsidiaries serving as agents. (Doc. S-1 at 9, 14 (citing Ex. D at 59), 18.) Plaintiff argues "the actions of PCS's [Inc.'s] subsidiaries may be imputed to PCS. And to the extent that any of PCS's subsidiaries engage in business in Florida, PCS will likewise be deemed to be engaging in that business." (Doc. S-1 at 19.) Thus, according to J.P. Morgan, "as agents of PCS, White Springs' and PCS Phosphate's infringement of the '391 patent also imputes **[*19]** to PCS." (Id. at 19.) Further, PCS, Inc. has minimum contacts with Florida because it "owns, operates, and profits from its operating facilities in Florida, including White Springs . . . ." (Doc. S-1 at 24.)

As support for its agency theory, J.P. Morgan contends that White Springs is one of many subsidiaries that constitutes an "operating facility," whose manufactured product is marketed and sold by defendant PCS Sales. (S-1 at 9 and Ex. C at 206- 07.) Another PCS, Inc. subsidiary (not named as a defendant here), PCS Administration (USA), Inc. provides administrative functions including management, accounting, legal engineering and environmental auditing services to the PCS "operating facilities" including White Springs, for a fee. (Doc. S-1 at 10 and Ex. B at 37, Ex. C at 81-82, 87.) Additionally, J.P. Morgan contends that the PCS network of corporations really all operate as one entity as evidenced by: (1) PCS, Inc.'s common ownership over all of the entire network of subsidiaries, holding companies, and joint ventures; (Doc. S-1 at 10); (2) interlocking boards of directors, with common board members for the various corporations, as well as interlocking corporate officers (Doc. **[*20]** S-1 at 11, 15, 25 and Ex. B at 14 (same individual serves as president of White Springs and PCS Phosphate)); (3) the interaction of the subsidiaries to benefit the entire PCS enterprise, including the shifting of funds from one subsidiary, PCS Phosphate to another subsidiary, White Springs, and not for each independent corporation's benefit (Doc. S-1 at 12, 13 and Ex. B at 68); (4) some PCS subsidiaries, including defendants PCS Sales and PCS Phosphate are operated out of the PCS corporate headquarters in Northbrook, Illinois (Doc. S-1 at 15); (5) subsidiaries use PCS, Inc. standard form corporate letterhead (Doc. S-1 at 15 and Ex. B at 67); (6) the PCS, Inc. board of directors approves all subsidiaries' budgets and multi-million dollar unbudgeted expenditures (Doc. S-1 at 16 and Ex. B at 33) [11]; (8) PCS, Inc. sets organization-wide employee salary levels, and sets organization-wide policies pertaining to procurement, safety, and customer service. (S-1 at 16-17.)

## FOOTNOTES

11 Specifically, a capital expenditure at White Springs for between $ 1 million and $ 5 million, not in the company's capital budget, must be submitted to the chief executive officer of PCS, Inc. for approval. An unbudgeted capital expenditure greater than $ 5 million is submitted to the PCS, Inc. board of directors for approval. (Doc. S-4, Ex. A at 33.)

PCS, Inc. Board of Directors has final approval for subsidiary budgets "when the budgets are consolidated." (Doc. S-4, Ex. A at 36.)

**[*21]** J.P. Morgan contends that PCS, Inc.'s due process minimum contacts with Florida are satisfied by PCS, Inc.'s owning, operating and profiting from its operating facilities in Florida, including White Springs; its guarantee of White Springs' environmental obligation; overlapping officers; the fact that PCS, Inc. conducted a board meeting in White Springs, Florida at the "Potash Corporation of Saskatchewan ⌄Conference Center"; and PCS, Inc.'s interactive website accessible by Florida residents. (Doc. S-1 at 24-26.)

"Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there." Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1272 (11th Cir. 2002). [12] However, "[a] corporation which engages in substantial activity in a state through a subsidiary is subject to personal jurisdiction in Florida." Abramson v. The Walt Disney Co., 132 Fed. Appx. 273, 275 (11th Cir. 2005). Under Florida's long-arm statute, "[t]he court may extend jurisdiction to any foreign corporation where the affiliated domestic corporation 'manifests no separate corporate interests of its own and functions [*22] solely to achieve the purpose of the dominant corporation.'" Meier, 288 F.3d at 1273 (citation of Florida case omitted). "A foreign corporation will be held subject to personal jurisdiction . . . if the subsidiary is a 'mere instrumentality.'" Abramson, 132 Fed. Appx. at 276.

## FOOTNOTES

12

J.P. Morgan relies primarily on Meier, supra, which held that Bahamian corporations, through their Florida subsidiaries, were subject to Florida's general personal jurisdiction in a personal injury suit by minor who was struck by a Bahamian hotel's commercial motorboat. The court found that the Florida subsidiaries, which solicited and coordinated reservations, advertising and marketing; provided day to day accounting services; purchased goods for the Bahamian corporations' hotel, and had significant financial ties, acted as the agents of the Bahamian corporations, subjecting the foreign corporations to Florida's jurisdiction. 288 F.3d at 1272-73. The facts in Meier are readily distinguishable.

[*23] "To determine whether a foreign corporation is liable based on a subsidiary's substantial activity, [the Court] consider[s] the ownership of the subsidiary, the business activities of the subsidiary, and the financial relationship between the corporation and the subsidiary." Abramson, 132 Fed. Appx. at 275-76 (citing Meier, 288 F.3d at 1272-73). "Because 'the mere presence of a wholly owned subsidiary is insufficient to form a basis for the assertion of personal jurisdiction,' one of the factors to be considered is the amount of control exercised by the foreign corporation." Abramson, 132 Fed. Appx. at 276 (quoting State of Florida v. American Tobacco Co., 707 So.2d 851, 854-55 (Fla. 4th DCA 1998). "Jurisdiction over the foreign corporation will not be exercised based on the subsidiary's local activities where the subsidiary carries on its own business and preserves some independence from the foreign corporation." Abramson, 132 Fed. Appx. at 276 (emphasis added)(citing Consolidated Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1293 (11th Cir. 2000)); see also Meier, 288 F.3d at 1272 n.11 [*24] (same); Capital One Financial Corp. v. Miller, 709 So. 2d 639, 640 (Fla. 2d DCA 1998)("the presence of a subsidiary corporation within Florida is not enough, without more, to subject a non-Florida parent corporation to long-arm jurisdiction within Florida"). The requirement that the parent corporation approve major capital expenditures, and the fact that the parent corporation arranged financing and had overlapping board members does not in and of itself create the control necessary to establish an agency relationship. See Akzona Inc. v. E.I. Du Pont de Nemours & Co., 607 F. Supp. 227, 238 (D. Del. 1984)(citing Kramer Motors, Inc. v. British Leyland, Ltd., 628 F.2d 1175 (9th Cir. 1980)). "What is required for jurisdiction based on agency is not *some* control but "*operational*" control" by the parent over the subsidiary." General Cigar Holdings, Inc., 205 F. Supp. 2d at 1344; see also Dev. Corp. of Palm Beach v. WBC Construction, L.L.C., 925 So. 2d 1156, 1161-62 (Fla. 4th DCA 2006)("[t]he amount of control exercised by the parent must be high and very significant," characterizing the requirement [*25] as being "operational control")(citing Kramer Motors, inc., supra).

The argument and evidence of corporate structure and operations offered by J.P. Morgan

Case 1:07-cv-21221-CMA    Document 266-3    Entered on FLSD Docket 12/07/2007    Page 15 of 21

Get a Document - by Citation - 2007 U.S. Dist. LEXIS 23872                    Page 14 of 20

does not contradict Podwika's testimony as to the separate business entities. J.P. Morgan has failed to adduce any evidence that PCS, Inc. directly carried on any activities within Florida and has failed to rebut PCS, Inc.'s denial that it does business in the state. Based upon the facts adduced, the Court finds insufficient evidence to attribute to PCS, Inc. operational control over White Springs' operations. See Consolidated Dev. Corp., 216 F.3d at 1292-94; Abramson, 132 Fed. Appx. at 276-77 & n. 2 (claim of "interdependence" does not nullify the fact that the defendant corporations operate autonomously, even if those autonomous operations are interrelated); Instabook Corp. v. Instantpublisher.com, 469 F. Supp. 2d 1120, 1127 (M.D. Fla. 2006)(interactive website not a basis for personal jurisdiction over foreign corporation); General Cigar Holdings, Inc., 205 F. Supp. 2d at 1344 (parent did not have sufficient operational control over subsidiary for the court [*26] to exert general personal jurisdiction though the two entities had "regular contact" and a "very close working relationship"); MeterLogic, Inc. v. Copier Solutions, Inc., 126 F. Supp. 2d 1346, 1354-1357 (S.D. Fla. 2000)(no agency relationship between nonresident parent and subsidiary for purposes of establishing personal jurisdiction over parent); Dev. Corp. of Palm Beach, 925 So.2d at 1161-62 (foreign parent corporation which shared at least one officer with subsidiary, had authority to approve some expenditures of its subsidiary and sales by its subsidiary, audited the subsidiary annually and reported the subsidiary's profits and losses on a consolidated financial statement, processed subsidiary's payroll, and represented its subsidiary as a "joint venture" was not engaged in substantial business activity); Enic, PLC v. F.F. South & Co., 870 So.2d 888, 892 (Fla. 5th DCA 2004)(parent not involved in the day to day operation of subsidiary). Based upon the pleadings and the evidence submitted by the parties, the Court finds that J.P. Morgan has not established that White Springs or any other Florida direct or indirect subsidiary acts [*27] as an agent to PCS, Inc.

**b. PCS, Inc.'s Guarantee of White Springs Environmental Obligations**

J.P. Morgan contends that PCS, Inc.'s guarantee of White Springs' environmental and financial obligations, "enabling" White Springs to operate in Florida, constitutes a substantial and not isolated business activity in the state of Florida, satisfying both specific and general jurisdictional provisions of Florida's long-arm statute, and minimum contacts required for due process. In the guarantee, PCS, Inc.

> guarantees to the FDEP that in the event that [White Springs] fails to perform closure and long-term care of [three specified phosphogypsum stack systems] in accordance with the closure and long-term care plan and the permit requirements whenever required to do so, the guarantor shall do so or establish a trust fund . . . in the name of [White Springs] in the amount of the current closure and/or long-term care cost estimated . . . .

(Doc. S-1, Ex. A at PCS 002768; see also Id., Ex. B at 44-46; Doc. 29-6 at 9 (guaranty is pursuant to "Florida's financial assurance regulatory requirements".)

In response, J.P. Morgan contends that PCS, Inc.'s guarantee [*28] of White Spring's environmental financial obligations is distinguishable from guaranteeing an ongoing business loan, and does not amount to "substantial and not isolated activity" or to "carrying on a business" in Florida: "[i]t's [simply] a means of assuring the state that the owner or operator of the system has the financial wherewithal to close them [the stacks] at the end of their useful life." (Doc. S-4, Ex. B at 16.)

Plaintiff cites to the case Compania Anonima Simontob v. Bank of America Int'l of Florida, 373 So. 2d 68 (Fla. 3d DCA 1979), which held that the Florida court had personal jurisdiction over a Venezuelan corporation which had allegedly failed to honor a contract of guaranty between defendant and plaintiff bank after the principal obligor defaulted in payment under a series of promissory notes. The court determined "that the execution of the guaranty by

Case 1:07-cv-21221-CMA    Document 266-3    Entered on FLSD Docket 12/07/2007    Page 16 of 21

Get a Document - by Citation - 2007 U.S. Dist. LEXIS 23872                Page 15 of 20

Simantob constitutes 'doing business' under the long-arm statute § 48.181 ["Service on nonresident engaging in business in state"] since the said act initiated and was an integral part of a series of obligations owed by other parties to the plaintiff bank." Compania, 373 So.2d at 70. [*29] J.P. Morgan also cites the case Horace v. American National Bank and Trust Co., 251 So. 2d 33 (Fla. 4th DCA 1971), in which the court exercised personal jurisdiction over an individual who personally appeared at a Florida bank for purpose of substituting his signature for present and future obligations and guaranteeing all such obligations of domestic corporation, opened a commercial checking account on behalf of the corporation and became a signatory on checks drawn on corporation's account. "By opening a checking account for [the domestic corporation] and becoming a guarantor for its financial obligations defendant purposefully availed himself of the privilege of transacting business in this state." Horace, 251 So.2d at 37. See also Marathon Metallic Bldg. Co. v. Mountain Empire Constr. Co., 653 F.2d 921 (5th Cir. 1981)(personal jurisdiction over guarantor in suit to recover on continuing guaranty where guarantor had extensive business transactions in forum state).

On the other hand, PCS, Inc. cites Dev. Corp. of Palm Beach, supra, which noted that a parent corporation's guarantee of obligations of a subsidiary [*30] to a bank did not subject the parent to personal jurisdiction. Dev. Corp. of Palm Beach, 925 So. 2d at 1162 (citing Kramer Motors, Inc., 628 F.2d at 1177.

In the cases cited by J.P. Morgan, the Florida courts exerted specific jurisdiction over the guarantors in actions directly related to the guarantee and seeking to recover on the very obligations guaranteed. The facts here are readily distinguishable. This is not an action related to or to enforce the environmental guarantee. Rather, the basis of this action -- the alleged infringement of the '391 patent -- is unrelated to the environmental guarantee of PCS, Inc.; thus, the guarantee does not create a basis for specific jurisdiction. Moreover, under a general jurisdiction analysis, PCS, Inc.'s guarantee to the state of White Springs' stack-closing obligations is no more than a single isolated contact.

Even considering the factors proffered by plaintiff concerning PCS, Inc.'s corporate structure and conduct in combination, the Court does not have personal jurisdiction over PCS, Inc. in this action.

## 2. Personal Jurisdiction Over PCS Phosphate

The first and a second Podwika affidavit are [*31] offered in support of PCS Phosphate's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. In it, Podwika states that PCS Phosphate "is a different indirect wholly owned subsidiary of PCS Inc., and is a sister subsidiary of White Springs," with no successor interest in the '391 patent license agreement. (Doc. 24-2, P 7.) PCS Phosphate is a Delaware corporation, with principal place of business in Northbrook, Illinois. (Doc. 33-2, P 2.) "PCS Phosphate has a facility in Aurora, North Carolina that manufactures a green superphosphoric acid product, by a procedure that does not use an oxidation/reduction process as used at the White Springs facility." (Doc. 24-2, P 7; see also S-4, Ex. A at 153.) It "does not have a regular and established place of business in Florida", or an office, mailing address, telephone number, bank account, real property, or employees based in Florida. (Doc. 33-2, P 2.) Podwika stated that PCS Phosphate does not advertise or solicit any business or market its products in the state of Florida. Rather, marketing of PCS Phosphate's products throughout the United States, including Florida, is conducted by an affiliate, also a subsidiary of PCS, Inc. [*32] , defendant PCS Sales. (Doc. 33-2, PP 2, 4.)

Podwika stated that PCS Phosphate does have an "inter-company agreement" with White Springs, pursuant to which it "from time to time provides certain raw materials to its sister affiliate White Springs . . . on a cost or net basis, i.e., at no profit to itself. Pursuant to another inter-company agreement, PCS Phosphate from time to time obtains from White

Case 1:07-cv-21221-CMA    Document 266-3    Entered on FLSD Docket 12/07/2007    Page 17 of 21

Get a Document - by Citation - 2007 U.S. Dist. LEXIS 23872                                    Page 16 of 20

Springs black superphosphoric acid." These agreements constitute "the only direct business activities of PCS Phosphate in the state of Florida, and are not for any pecuniary benefit of PCS Phosphate." (Doc. 33-2, P 3.)

Plaintiff J.P. Morgan bases its opposition to PCS Phosphate's motion on the following factors: (1) PCS Phosphate is authorized to transact business in Florida and maintains a registered agent in the state, and has consented to service of process (Docs. 35-1 at 2, 5-6; S-1 at 20-21); (2) PCS Phosphate does business in Florida, having a contractual agreement with White Springs in which PCS Phosphate "[f]rom time to time . . . sells small quantities of sulfur, phosphoric acid and a variety of other products . . . to White Springs" at "actual cost" and White Springs sells **[*33]** at cost superphosphoric black acid ("black acid") to PCS Phosphate for use in production of animal feed. (Docs. 35-1 at 8; S-1 at 22 and Exs. B at 92, 96, 102, G, H); (3) PCS Phosphate's products are sold through its affiliate PCS Sales into the stream of commerce with a reasonable expectation that the product would reach Florida. (Docs. 35-1 at 9, S-1 at 23); and as (4) as alleged in the complaint, PCS Phosphate has infringed upon the '391 patent by causing and aiding in the manufacture of the infringing green SPA in Florida, and introducing infringing green SPA produced in North Carolina and Louisiana. (Docs 35-1 at 9.) [13]

**FOOTNOTES**

13 J.P. Morgan's assertion that PCS Phosphate has a production facility in Geismer, Louisiana is mistaken. The Louisiana facility is under another entity, PCS Nitrogen Fertilizer, L.P., a Delaware limited partnership.

J.P. Morgan further confuses entities when it contends that "PCS Phosphate is identified on PCS, Inc.'s publicly available literature as being the *responsible entity* for the White Springs facility, which is a component of its phosphate operations." (Doc. 29-1 at 5 (citing Doc. 29-3, entitled "PCS Phosphate/White Springs"); see also Doc. 35-1 at 8 (PCS Phosphate's "role as the responsible party for the White Springs facility").) J.P. Morgan names as defendant "White Springs Agricultural Chemicals, Inc., d/b/a *PSC Phosphate/White Springs*." (Doc. 56-1 at 1 (emphasis added).) This is a different entity than named defendant PCS Phosphate Company, Inc. ("PCS Phosphate") which brings this Rule 12(b)(2) motion to dismiss.

**[*34] a. Purchase and Sales Agreements**

"The existence of a contractual relationship between a nonresident defendant and a Florida resident is not sufficient in itself to meet the requirements of due process." Jet Charter Service, Inc. v. Koeck, 907 F.2d 1110, 1113 (11th Cir. 1990)(citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528, (1985)). Furthermore, "purchases [by the nonresident defendant] in a forum state do not warrant the exercise of general jurisdiction in that state." Adstep, Inc. v. Freeman Decorating Co., No. 3:02 CV 1002 J 21 HTS, 2003 U.S. Dist. LEXIS 25728, 2003 WL 25276323, at * 7 (M.D. Fla. 2003). Indeed, "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 418; Consolidated Dev. Corp., 216 F.3d at 1292 ("merely purchasing materials, even if done regularly, is not contact sufficient to support [general] personal jurisdiction"); Structural Panels, Inc. v. Texas Aluminum Industries, Inc., 814 F. Supp. 1058, 1066 (M.D. Fla. 1993) **[*35]** (purchases and two sales of unrelated products in the state are insufficient to permit the court to exercise general jurisdiction under Fla. Stat. § 48.193(2) in a patent infringement action); compare LSI Industries, Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1375 (Fed. Cir. 2000)(general personal jurisdiction over corporation complies with due

Case 1:07-cv-21221-CMA    Document 266-3    Entered on FLSD Docket 12/07/2007    Page 18 of 21

Get a Document - by Citation - 2007 U.S. Dist. LEXIS 23872                    Page 17 of 20

process where corporation had "continuous and systematic" contacts with forum state based upon sales of "millions of dollars of sales of lighting products in [state] over the past several years and its broad distributorship network in [state]")

The inter-affiliate agreements between White Springs and PCS Phosphate to "from time to time" provide an unspecified amount of raw materials to each other at no profit to each is not enough to establish that PCS Phosphate is engaged in "substantial and not isolated" business contact with Florida. Plaintiff has adduced no evidence of the actual amount and value of the material transferred between White Springs and PCS, Phosphate, how often these transfers are made, and any relationship between the transfers and the alleged infringement of the '391 patent **[*36]** process.

### b. Registered Agent in Florida

Any corporation that is incorporated in or registered to do business in Florida must designate a registered agent for service of process. Fla. Stat. § 48.091; see Benedict v. General Motors Corp., 142 F. Supp. 2d 1330, 1333 (N.D. Fla. 2001). J.P. Morgan cites Benedict, which states that "service on the registered agent [is] sufficient, without more, to establish personal jurisdiction, and [it is] not necessary for the plaintiff to establish either any connection between the cause of action and the State of Florida or to meet the various criteria of the long-arm statute." Benedict, 142 F. Supp. 2d at 1334 (citing White v. Pepsico, Inc., 568 So. 2d 886, 889 (Fla. 1990)); see also Ranger Nationwide, Inc. v. Cook, 519 So.2d 1087, 1088 (Fla. 3d DCA 1988)("a foreign corporation which voluntarily registers and qualifies to do business in Florida is subject to the process of [Florida] courts, no matter what the nature of the claim or lack of so-called 'connexity' with its Florida business").

PCS Phosphate cites conflicting law. In Sofrar, S.A. v. Graham Engineering Corp., 35 F. Supp. 2d 919 (S.D. Fla. 1999), **[*37]** the court found no general jurisdiction under Florida's long-arm statute even though defendants appointed an agent for service of process and were registered to do business. The court concluded that the earlier lower Florida court decisions as standing for the proposition that a defendant's registration to do business in Florida in and of itself is enough to find personal jurisdiction over that defendant do not take into account the minimum contacts requirement of due process. 35 F. Supp. 2d at 920. Indeed, "registration alone . . . could not reasonably be seen as the 'substantial and not isolated activity' required" by Florida's long-arm statute. Sofrar, 35 F. Supp. 2d at 921 (citing Fla. Stat. § 48.193(2)). Noting that the defendant "does not conduct substantial business in Florida," the court concluded that the defendant did not meet the threshold test of "continued and systematic activity" to meet long-arm statute's requirement for personal jurisdiction. Sofrar, 35 F. Supp. 2d at 921.

Thereafter, the Eleventh Circuit, in Consolidated Dev. Corp., 216 F.3d at 1293, rejected plaintiff's argument **[*38]** offered here, finding that the defendant Canadian corporation's appointment of an agent for service of process in connection with offerings of bonds and debentures unrelated to the litigation did not subject the foreign corporation to general personal jurisdiction in Florida. "The casual presence of a corporate agent in the forum is not enough to subject the corporation to suit where the cause of action is unrelated to the agent's activities." Consolidated Dev. Corp. 216 F.3d at 1293 (noting that "[c]ourts of appeals have addressed this issue and have rejected the argument that appointing a registered agent is sufficient to establish general personal jurisdiction over a corporation," and citing cases); see also Wenche Siemer v. Learjet Acquisition Corp., 966 F.2d 179, 183 (5th Cir. 1992)(designating a corporate agent for service of process did not establish general personal jurisdiction over manufacturer).

The Court agrees with those cases holding that registering to do business and appointing a registered agent in the state of Florida, without more, does not subject a foreign corporation to the general personal jurisdiction of the state for any **[*39]** and all unrelated actions.

Such a single contact does not meet the requirement for general personal jurisdiction that the defendant's contact with the forum state be "substantial and not isolated," "continuous and systematic," either under Florida's long-arm statute, or the tenets of due process.

**c. Stream of Commerce Theory**

Turning to J.P. Morgan's argument that personal jurisdiction attaches to PCS Phosphate based upon the nationwide sale of its product, through co-subsidiary PCS Sales, under a "steam of commerce" theory, the Court is guided by the United States Supreme Court which, in a plurality opinion, stated:

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But [*40] a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

Asahi Metal Industry Co., Ltd. v. Superior Court of Calif., Solano County, 480 U.S. 102, 112, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987). [14] Thus "placement of a product into the stream of commerce is not an act purposefully directed toward the forum state, even if the defendant knows that commerce will sweep the product into the forum state." Nida Corp. v. Nida, 118 F. Supp. 2d 1223, 1229 (M.D. Fla. 2000). Additional conduct by the defendant, such as marketing the product through a distributer in the forum state or establishing channels for providing regular advice to customers, may, however, be considered in assessing whether defendant intended to serve a market in a forum state. Id. (citing Asahi, 480 U.S. at 112).

**FOOTNOTES**

14 In a concurring opinion, four justices considered the requirement of "additional conduct" unneeded to find personal jurisdiction. Asahi Metal Ind. Co., 480 U.S. at 116-17; Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558 (Fed. Cir. 1994)(finding personal jurisdiction under either interpretation of "stream of commerce" theory).

[*41] J.P. Morgan cites to the Federal Circuit case Beverly Hills Fan Co., supra, which it contends gives a broad interpretation to the "stream of commerce" theory. Beverly Hills Fan and its progeny are distinguishable, however, because they are based upon specific personal jurisdiction over an allegedly infringing defendant for sales of the infringing product within the forum state. In Beverly Hills Fan Co., the Court held that under either interpretation provided by the Supreme Court, the defendant manufacturer and importer accused of patent infringement were subject to personal jurisdiction of the forum state under the stream of commerce theory. "When viewed in the light of the allegations and the uncontroverted assertions in the affidavits, plaintiff has stated all of the necessary ingredients for an exercise of jurisdiction consonant with due process: defendants, acting in consort, placed the accused fan in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." Beverly Hills Fan Co., 21 F.3d at 1566. [*42]

J.P. Morgan has made no allegation or evidentiary showing that PCS Phosphate's sale of

Case 1:07-cv-21221-CMA     Document 266-3     Entered on FLSD Docket 12/07/2007     Page 20 of 21

Get a Document - by Citation - 2007 U.S. Dist. LEXIS 23872                     Page 19 of 20

green SPA produced in its North Carolina plant in any way relates to the alleged infringing process at White Springs to form a basis for arguing the Court has specific jurisdiction over PCS Phosphate. Plaintiff has also fallen short in establishing the Court's general personal jurisdiction over PCS Phosphate. The general jurisdiction analysis must honor the requirement that the foreign corporation's contacts must be "especially pervasive and substantial" to permit the Court to exercise jurisdiction over PCS Phosphate. See General Cigar Holdings, Inc., 205 F. Supp.2d at 1343. J.P. Morgan has adduced no evidence to suggest anything other than PCS Phosphate's product is sold nationwide, including in Florida, by PCS Sales, as admitted by defendants; nor has plaintiff shown that PSC Phosphate has continuous and systematic, pervasive, "substantial and not isolated" contact with Florida. Despite about a year's worth of discovery, plaintiff has adduced no evidence of a marketing plan directed by PCS Phosphate to Florida; a customer service procedure; or even of profits garnered by PCS Phosphate [*43] in Florida. It merely relies upon the conclusory fact that PCS Phosphate sells its product nationwide, including in Florida, through PCS Sales. This is not enough.

Again, plaintiff J.P. Morgan's theories of personal jurisdiction over PCS Phosphate, even taken together, do not, based upon the evidence submitted, support the Court's exercise of personal jurisdiction over PCS Phosphate.

**Conclusion**

Because of the Court's finding that plaintiff has failed to show by a preponderance of the evidence sufficient minimum contacts, the Court need not conduct the second inquiry requiring the defendants to prove the unreasonableness of the Court's exercise of personal jurisdiction over them.

For the foregoing reasons, and upon due consideration, it is hereby

**ORDERED:**

1. Defendants' Combined Motion For Summary Judgment As To Non-Liability Of PCS, Inc. And PCS Phosphate And Motion To Dismiss PCS, Inc. Under Rule 12(b)(2), (Doc. 23) is **GRANTED IN PART,** to the extent that the Court finds that it does not have personal jurisdiction over Potash Corporation of Saskatchewan, Inc.
Potash Corporation of Saskatchewan, Inc. is **DISMISSED WITHOUT PREJUDICE** from this action.

2. **[*44]** Motion Of PCS Phosphate Co., Inc. For Summary Judgment Of Lack Of Personal Jurisdiction (Doc. 32) is **GRANTED.** PCS Phosphate Company, Inc. is **DISMISSED WITHOUT PREJUDICE** from this action.

3. The Motion of PCS Sales (USA), Inc. For Summary Judgment Of Non-Infringement Of The Green SPA Processes At Aurora And Geismar (Doc. 82-1), which was abated by the Court because the Court declined to permit discovery on the issues raised by the motion (Doc. 88), is **DENIED WITHOUT PREJUDICE** to defendant's refiling the motion should the case develop so as to make the matters raised by the motion at issue in this case.

4. At the hearing held on March 21, 2007, both parties expressed an interest in mediation. The Court finds that this is an appropriate time for the parties to engage in mediation before this case proceeds further. Accordingly, the parties are directed to mediate this case no later than **June 1, 2007.** After consultation with plaintiff's counsel, defendants' counsel shall file a notice with the Court relating who the parties have selected as their mediator, and when mediation is scheduled to take place. Depending on the outcome of mediation, the Court will thereafter **[*45]** consider the submissions of the parties in determining how to proceed with this action.

**DONE AND ORDERED** at Jacksonville, Florida this 30<th> day of March, 2007.

**TIMOTHY J. CORRIGAN**

United States District Judge

Service: **Get by LEXSEE®**
Citation: **2007 U.S. Dist. LEXIS 23872**
View: **Custom**
Segments: Opinion
Date/Time: Friday, December 7, 2007 - 5:13 PM EST

* Signal Legend:
● - Warning: Negative treatment is indicated
▨ - Questioned: Validity questioned by citing refs
▲ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available

* Click on any *Shepard's* signal to *Shepardize*® that case.

Search | Research Tasks | Get a Document | *Shepard's*® | Alerts | Total Litigator
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Off | Help

 LexisNexis®   About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. **All rights reserved.**