UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 07-21221 CIV ALTONAGA/Turnoff

RENEE BLASZKOWSKI, *et al.*
individually and on behalf of
others similarly situated,

    Plaintiffs/Class Representatives,

vs.

MARS INC., *et al.*,

    Defendants.

_____/

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO CONDUCT PERSONAL JURISDICTION DISCOVERY AND CROSS-MOTION TO STRIKE PORTIONS OF RESPONSE**

    Plaintiffs, Renee Blaszkowski *et al.,* respectfully submit this Reply in Support of their Motion for Leave to Conduct Personal Jurisdiction Discovery as to Defendants, Meijer Inc. ("Meijer"), Pet Supplies Plus/USA, Inc. (Pet Supplies Plus"), H.E. Butt Grocery Co. ("HEB"), The Kroger Co. of Ohio ("Kroger"), Safeway Inc. ("Safeway") and the Stop & Shop Supermarket Company LLC ("Stop & Shop") (collectively the "Jurisdictional Defendants") and their Cross-Motion to Strike the highly improper and inappropriate references to confidential settlement communications improperly brought to the Court's attention in the Response.[1]

    The Jurisdictional Defendants' Response *at best* mischaracterizes both the law and the facts. Quite simply, according to the Jurisdictional Defendants, unless the Plaintiffs allege in the Second Amended Complaint ("SAC") in excruciating detail each and every fact demonstrating personal jurisdiction as to each Jurisdictional Defendant, the Plaintiffs have not made the requisite showing to obtain jurisdictional discovery. That is not the case. Knowing that the Plaintiffs have had no opportunity to conduct discovery to date and that each and every Defendant has either refused to provide mandatory disclosure or has provided mandatory disclosure that is woefully noncompliant with Rule 26, the Jurisdictional Defendants argue that the plaintiffs are not entitled to contest affidavits that are inconsistent with the facts that the Plaintiffs obtained from public information sources. Their arguments do not carry the day.

---

[1] All emphasis is added unless otherwise noted.

1

**MALTZMAN FOREMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077**

Just one example of the many factual misrepresentations in this Response is Meijer's rather vehement contention that Meijer "did not advertise, market, sell or offer for sale any pet food or pet treats on its Meijer.com website during the relevant class period." [DE 266-1 p. 12]. The Response, purportedly buttressed by yet another Affidavit from Meijer personnel, claims that Meijer only started operation of its website on September 9, 2007, and that "its sales to Florida consumers through meijer.com comprise no more than 2% of Meijer, Inc.'s total internet sales."[2] [DE 266-1 pp. 12-13]. First, the SAC clearly alleges that the Relevant Class Period is from May 9, 2003 through the *present*,[3] so even if Meijer's statements are true about when internet sales began, they *began during the class period*. [DE 260-1 p. 50 ¶117]. Second, while Meijer proclaims that sales to Florida consumers through meijer.com are only 2% of its "total" internet sales, Meijer does not indicate in the Response the total amount of all internet sales to Florida consumers through any other Meijer website. [DE 266-1 p. 13]. Moreover, Meijer has falsely stated to this Court that *after* the SAC was filed, Meijer began offering pet treats for sale on meijer.com website and that, to date, "not a single pet treat offered for sale on meijer.com has been sold to any Florida consumers."[4] [DE 266-1 pp. 12-13, 266-2 p. 3 ¶7. That statement is blatantly false. Pet treats were offered for sale to Florida consumers well before November 23, 2007 and as of November 16, 2007, which was prior to the filing of the SAC, Amanda Sample of the undersigned's law firm ordered pet treats from Meijer.com, which were delivered to Miami, Florida. *See* Declaration of Amanda Sample attached hereto as Exhibit "A." If the Plaintiffs are not allowed to test the Jurisdictional Defendants obvious mischaracterizations of fact through discovery, the Plaintiffs will clearly be unable to rebut such blatant falsehoods. *See Gleneagle Ship Management Co. v. Leondakos,* 602 So. 2d 1282, 1284 (Fla. 1992) (Under the *Venetian Salami* case, the Florida Supreme Court held that opposing affidavits must be filed on the personal jurisidiction issue, but that averments in a pleading may not always rise to assertions

---

[2] Meijer should have revealed the total revenue that they receive from Florida consumers, which is relevant to a determination of minimum contacts. While Meijer disclosed that 2% of its total internet sales comes from meijer.com, this does not reveal the percentage of revenue obtained from Meijer's "total" internet sales to Florida consumers or the dollar amount. Moreover, Meijer offers no information whatsoever about the web traffic from Florida consumers or any other information about internet exchanges between Florida residents and any other Meijer internet websites. This is all highly relevant to the issue of personal jurisdiction and is not otherwise available without discovery.

[3] The Jurisdictional Defendants seem to ignore the fact that the SAC seeks relief for false advertising, harm to the Plaintiffs dogs and cats through the sale of pet food and treats <u>and</u> *injunctive relief* to prevent further harm to the Plaintiffs' dogs and cats from the manufacture, sale and marketing of pet food and treats. The Jurisdictional Defendants, and in particular Meijer, fail to grasp the *prospective relief* that is encompassed by the SAC that subjects Meijer to this Court's jurisdiction through the ongoing sale of pet treats and other internet sales in Florida, which Meijer has yet to reveal.

[4] Another example of a blatant misrepresentation is the statement that the Plaintiffs have alleged that the Defendants have marketed their pet food and treats as healthy and nutritious, but have not "fully explained the potential negative health effects of the ingredients that are disclosed." [DE 266-1 p. 6]. There is no Rule 8(a) requirement that a pleading "fully explain" anything and yet the SAC nonetheless alleges precisely what the Defendants claim is not alleged. [*see e.g.,* DE 260-1 pp. 24-26 ¶ 74, 34 ¶86, 41-49 ¶¶97-112].

which could be made under oath and "[t]hus, a plaintiff should be able to conduct limited discovery on the jurisdictional question in order to gather facts and file an opposing affidavit.").

I. **The Jurisdictional Defendants' contention that the Plaintiff must allege each and every specific fact supporting each and every basis for personal jurisdiction is *wrong***

The Jurisdictional Defendants yet again claim that the allegations in the SAC are "conclusory" and "speculative." [DE 266-1 p. 2]. However, the Defendants' arguments ignore the fact that this Court already properly granted the Plaintiffs leave to conduct personal jurisdiction discovery as to New Albertson's, Inc.[5] by deeming the allegations in the Amended Complaint sufficient.[6] [DE 251 pp. 3, 5]. The SAC now contains similar allegations as to these Jurisdictional Defendants, but *also* specifically alleges the statutory conditions for the Florida long arm statute, which the Jurisdictional Defendants' Response *completely ignores*. [DE 260-1 p. 21 ¶67, 266-1 p. 21]. In *Stirling Homex Corp. v. Homasote Co.,* 437 F.2d 87, 88 (2d Cir. 1971), the Second Circuit ruled that "*Rule 8(a) of the Federal Rules of Civil Procedure* prescribes the rather simple requirements of a sufficient complaint," which only needs to be a short and plain statement of the basis for jurisdiction.[7] *Id.* The *Stirling* case has been widely cited by numerous District Courts as authoritative on what specifically needs to be alleged. In *Burger King Corp. v. Holder,* 844 F. Supp. 1528, 1531 (S.D. Fla. 1993), Judge Nesbitt followed *Stirling* by ruling that Federal Rule of Civil Procedure 8(a) *does not* require a plaintiff to plead the basis for personal jurisdiction over a defendant. *Id.* (finding that the District Court's personal jurisdiction over the parties does not depend on allegations in a counterclaim). A plaintiff may plead either the statutory conditions for Florida's long arm statute or allege substantive facts to support jurisdiction under the long arm statute. *Id. See also Gill v. Three Dimension Systems, Inc.,* 87 F. Supp. 2d 1278, 1284 (M.D. Fla. 2000)(a pleading is sufficient if it alleges the language of the long arm statute *or* alleges substantive facts to support long-arm jurisdiction); *Century Container Corp. v. Sunclipse, Inc.,* 1995 U.S. Dist. LEXIS 8877 (N.D. Fla. 1995)("Federal Rule of Civil Procedure 8(a) does not require a plaintiff to plead the basis for personal jurisdiction" and in fact no specific pleading requirements exist when courts have consistently resolved personal jurisdiction facts outside the pleadings); *Moncevoir Hyppolite v. Gorday,* 1990 U.S. Dist. LEXIS 20967 *3 (S. D. Fla. 1990 March 22, 1990). Finally, this Court's ruling in *Mother Doe v. Al Maktoum,*

---

[5] The allegations in the Amended Complaint were more than sufficient to grant the Plaintiffs leave for personal jurisdiction discovery as to New Albertson's, Inc. In the SAC, the Plaintiffs also allege the requirements of the long arm statute. [DE 260-1 p. 21 ¶ 67].

[6] New Albertsons, Inc. never moved for reconsideration of that order.

[7] The Jurisdictional Defendants will undoubtedly argue that *Bell Atlantic v. Twombly*, 127 S. Ct. 1955 (2007), somehow places additional burdens on Plaintiffs, but that is also incorrect since *Twombly* states that "[i]n reaching this conclusion, we do not apply any "heightened" pleading standard, nor do we seek to broaden the scope of Federal Rule of Civil Procedure 9, which can only be accomplished 'by the process of amending the Federal Rules, and not by judicial interpretation.'" *Twombly,* 127 S.Ct. at 1973 (citation omitted). *See also Moore v. Maimi-Dade County,* 205 F.Supp.2d 1224, 1228-29 (S.D. Fla. 007)("we believe that the [U.S. Supreme] Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausible standard.'").

2007 U.S. Dist. LEXIS 54918 *8 (S.D. Fla. 2007) specifically acknowledges this Eleventh Circuit precedent. *Id.* ("Under Florida law, '[a] plaintiff seeking to obtain jurisdiction over a nonresident defendant initially need only allege jurisdiction.'"). The Jurisdictional Defendants are wrong. The Plaintiffs have alleged the requisite *prima facie* showing of personal jurisdiction in the SAC.

The Jurisdictional Defendants also mischaracterize the law by claiming that the Plaintiffs have not alleged in the SAC *any* connection between the Plaintiffs/Class Representatives and "any pet food allegedly distributed, advertised, 'and/or' sold by any of the Jurisdictional Defendants." [DE 266-1 p. 4]. This is also false. The SAC clearly alleges that each and every Plaintiff/Class Representative purchased pet food from one or more of the Defendants, i.e., if the Defendant is included in the suit, then one or more of the Plaintiffs bought pet food or treats from that Defendant. [DE 260-1 pp. 2-8 ¶¶3-33]. The Defendants claim that each Plaintiff must specifically state in the SAC which pet food or treats it bought and from which Defendant is simply not required at the pleading stage as set forth *supra.* A pleading in federal court is not a substitute for discovery. [DE 266-1 pp. 4, 5, 14]. Allegedly in support of this argument, the Jurisdictional Defendants cite several cases, including *Miami Breakers Soccer Club, Inc. v. Women's United Soccer Ass'n,* 140 F.Supp.2d 1325, 1328 (S.D. Fla. 2001), *Williams v. Firstplus Home Loan Trust 1996-2,* 209 F.R.D. 404 (W.D. Tenn. 2002), *Barry v. Mortgage Servicing Acq. Corp.,* 909 F. Supp. 65 (D. R. I. 1995), none of which refer to the binding Eleventh Circuit precedent cited *supra* that requires no such heightened pleading standard.

**II.    The Jurisdictional Defendants misconstrue the "qualified right" to jurisdictional discovery**

The Jurisdictional Defendants attempt to make much of the Plaintiffs "qualified" right to discovery and appear to suggest that there is no entitlement to same. According to the Eleventh Circuit, the "qualified" right is intended to relate to the *scope* of discovery, which can be dealt with appropriately through a protective order if the parties cannot come to an agreement, but allowing the discovery in the first place is not necessarily discretionary. In *Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 728-33 (11th Cir. 1982),[8] the Eleventh Circuit determined "[t]he problem is the degree to which such discovery is mandatory or discretionary. We have held that such jurisdictional discovery is *not entirely discretionary*, and this appears to be the better view." In a footnote the Court specifically referenced the following:

> Thus, though numerous courts have indicated that they have discretion in granting or denying jurisdictional discovery, this is not exactly correct. In the final analysis, a court does not have discretion to grant or deny a request for jurisdictional discovery [when jurisdictional facts are in dispute]. Rather, it is appropriate to speak in terms of a qualified "right" to jurisdictional discovery when a court's jurisdiction is genuinely in dispute. In order to satisfy the Federal Rules' implicit policy that cases be decided on the merits, a court should order discovery while protecting the defendant's interests where

---

[8] In *Mother Doe,* this Court cited to *Posner v. Essex Ins. Co., Ltd.,* 178 F.3d 1209, 1214 (11th Cir. 1999), which relied upon *Eaton. See Posner* at fn 7.

necessary through a Rule 26(c) protective order. Thus, the element of discretion, *if any,* exists not with respect to whether there will be jurisdictional discovery, but rather *only with respect to the form that the discovery will take.*

*Id.* a fn 7 citing Note, The Use of Discovery to Obtain Jurisdictional Facts, 59 Va.L.Rev. 533, 546-47 (1973) (footnotes omitted). Citing numerous former Fifth Circuit cases where jurisdictional discovery was deemed necessary to allow the plaintiff a fair opportunity to demonstrate facts peculiarly within the defendants' knowledge, custody and control, the Eleventh Circuit reversed the district court's dismissal as premature because, as here, no discovery had been conducted: "Plaintiff must be given an opportunity to develop facts sufficient to support a determination on the issue of jurisdiction. As we said in *Blanco* [*v. Carigulf Lines, 632 F.2d 656 (5th Cir. 1980)*], 'the rules *entitle* a plaintiff to elicit material through discovery before a claim may be dismissed for lack of jurisdiction.'"[9] *Id.* at 729-31. Contrary to the Jurisdictional Defendants' contention, the issue is not whether the discovery should go forward, but as to what the scope of the discovery should be, which can be left to the parties and if no agreement can be reached, Judge Turnoff is more than capable of resolving any personal jurisdiction discovery issues should a defendant find it ultimately necessary to file a protective order.

**III.    The Plaintiffs have provided specific examples of how they will show that the Jurisdictional Defendants have subjected themselves to this Court's jurisdiction**

The Plaintiffs have provided <u>*specific*</u> examples of facts obtained publicly that, when substantiated through discovery, will demonstrate that the Jurisdictional Defendants' claims lack merit and their affidavits have been less than forthcoming. For example, even without the benefit of discovery, Meijer's false statements about its internet sales of pet treats alone is a sufficient basis to order jurisdictional discovery. *See Unique Industries, Inc. v. SUI International Trading Corp.,* 2007 U.S. Dist. LEXIS 83725 **24-25 (S.D.N.Y. November 9, 2007) (where the plaintiff has made a sufficient start towards showing general jurisdiction via a defendant's interactive internet sales activity, and because the defendant was less than forthcoming about its sales in New York, the district court declared that it had no problem ordering jurisdictional discovery to proceed).

Each one of the Jurisdictional Defendants runs a multi-million or billion dollar grocery business for which the Plaintiffs believe the Jurisdictional Defendants obtain at least produce and orange juice on a regular and systematic basis from Florida suppliers. *See e.g.,* Exhibit "B" where the Plaintiffs determined that Safeway has an orange juice supplier in Florida. Moreover, Safeway recently disclosed in a supplemental affidavit that it somehow failed to apprise the Plaintiffs and the Court that it has at least

---

[9] Given the plethora of former Fifth Circuit and Eleventh Circuit law on the issue, the Jurisdictional Defendants inexplicably chose to cite a Middle District of North Carolina case holding to the contrary which is not precedent in this jurisdiction. [DE 266-1 p. 3]. The Eleventh Circuit adopted as precedent all Fifth Circuit cases decided before September 30, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981).

four (4) employees who it admits work with suppliers. [DE 253 pp. 9-10]. The Plaintiffs believe that these supplies are regularly and systematically obtained through contracts and regular business dealings in the State of Florida and that payments are made to these suppliers in Florida. Given the fact that these are multi-million to multi-billion dollar grocery businesses, there is a high degree of likelihood that the volume of purchases and the number of suppliers and/or contracts with Florida suppliers will more than adequately demonstrate general personal jurisdiction under the Florida long arm statute.

      Kroger and Safeway are each registered to do business in Florida and maintain a registered agent in the state for the purpose of serving process on them. In this case, the Plaintiffs completed service of process upon Kroger's and Safeway's registered agents in this state. While the Defendants cite *Consolidated Dev. Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1293 (11th Cir. 2000) for the position that a corporation is not subject to general jurisdiction because it appointed an agent for service of process for the offering of bonds and debentures, *Consolidated* never addressed Florida law at all yet it cannot be disputed that Florida law applies as to the construction of the Florida long arm statute. *See Oriental Imports and Exports, Inc. v. Maduro & Curiel's Bank, N.V.,* 701 F.2d 889, 890-91 (11th Cir. 1983). In responding to a certified question from the Eleventh Circuit, in *White v. Pepsico, Inc.,* 568 So. 2d 886 (Fla. 1990), the Florida Supreme Court ruled on the issue and held that under Florida law, service on Pepsico's registered agent was sufficient in and of itself to confer personal jurisdiction even over actions unrelated to Florida's activities. *Id.* at 890. The Eleventh Circuit accepted the decision and reversed the order dismissing the complaint. *See White v. Pepsico, Inc., 923 F.2d 1473 (11th Cir. 1991).* In *Sofrar, S.A. v. Graham Engr., Corp.,* 35 F. Supp 2d 919, 919-921 (S.D. Fla. 1999), Judge Hoeveler's ruling did not contradict *Benedict v. General Motors Corp.,* 142 F.Supp.2d 1330 (N.D. Fla. 2001) because both cases recognize that *Pepsico* did not address minimum contacts. The Plaintiffs never suggested in their Motion that service on a registered agent alone was sufficient for personal jurisdiction as the Jurisdictional Defendants seem to suggest. However, given the Eleventh Circuit's dismissal it is at least a factor and when combined with numerous other contacts with Florida, it will, in combination with other factors, demonstrate that personal jurisdiction exists as to Kroger and Safeway. The Plaintiffs simply want to pursue discovery concerning the reasons for Kroger and Safeway having registered agents in Florida so that when taken in combination with Safeway and Kroger's numerous other activities in Florida, minimum contacts will be established (particularly where Safeway's affidavits have been inconsistent and all affidavits are silent as to suppliers).

      Pet Supplies Plus mischaracterizes the facts as well by claiming that the Plaintiffs assert that the presence of a franchisee or Pet Supplies Plus entity is in Florida is sufficient to establish jurisdiction. To the contrary, the SAC specifically alleges that through its franchises, Pet Supplies Plus advertises, distributes and sells dog and/or cat food and treats in Florida, markets pet food and places products in the

stream of commerce in Florida. [DE 260-1 p. 21 ¶¶64, 67]. Additionally, the Plaintiffs' Motion states that based on representations on the Pet Supplies Plus website, Pet Supplies Plus is directly involved with the marketing, advertising material and a buying program that provides franchisees with deals on pet food and pet products. Such conduct goes well beyond a franchise contract. Franchisor's have been subject to personal jurisdiction because they have engaged in the purposeful activity of selling franchises and benefitted from the sale of same in the forum state. *See e.g., Retail Software Svcs., Inc. v. Lashlee,* 854 F.2d 18, 22 (2d Cir. 1998) (officers and directors of franchisor subject to personal jurisdiction in New York because franchisor engaged in purposeful activity of selling franchises and benefitted from doing so). Pet Supplies Plus activities are directly related to all of the allegations in this lawsuit and go well beyond simply having the presence of a franchisee in the state.

As discussed in the Plaintiff's Motion for Leave to Conduct Personal Jurisdiction Discovery, Kroger, Meijer, Safeway, HEB and Stop & Shop all operate highly interactive websites for marketing and the sale of products to consumers nationwide, which specifically targets Florida residents. As discussed *supra,* miejer.com sells pet treats, but it also sells a range of other items from electronics to furniture and pet-related merchandise. Courts have recognized that whether personal jurisdiction attaches based on internet websites is based on a sliding scale that is directly proportionate to the nature and activity that an entity conducts over the internet. *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp 119, 1124 (W.D. Pa. 1997). A cursory review of Meijer's meijer.com website shows that it is highly interactive and allows orders to be taken over the internet, including forms for detailing a Florida resident's address, contact information and method of payment. *See* www.meijer.com. Meijer, Kroger, HEB, Stop & Shop and Safeway are targeting a nationwide customer base,[10] including Floridians, and, for example, Meijer is operating a virtual store from which it derives profits. This has been found to be sufficient for general jurisdiction to attach. *See Mieczkowski v. Masco Corp.,* 997 F. Supp. 782, 785-86 (E.D. Tex. 1998)(general jurisdiction attaches when defendant operated interactive website available to Texans, sold and shipped $5.7 million in products to Texas residents, received 3.2% of its gross sales income from Texas residents); *Coremetrics, Inc. v. AtomicPark.com, LLC,* 370 F. Supp. 2d 1013, 1015-1024 (N.D. Cal. 2005)(internet retailer that did millions of dollars worth of business with California residents over internet, advertised through companies with offices in California and purchased products from California vendors was subject to general personal jurisdiction).[11] The Plaintiffs believe that each of the Jurisdictional Defendants have regular and systematic contacts with vendors in Florida in addition to their internet sales which would subject them to general jurisdiction, but cannot further demonstrate this

---

[10] *See* Google advertising which directs Florida consumer to its virtual retail store at meijer.com for the purchase of electronics and other products attached hereto as Composite Exhibit "C."

[11] The Jurisdictional Defendants are thus wrong again – courts have recognized that operating highly interactive websites and virtual stores should subject a defendant to general jurisdiction. [DE 266-1 p. 8].

without discovery. *See Unique Ind., Inc.,* 2007 U.S. Dist LEXIS 83725 at *23-27. Discovery of the following is highly relevant to the jurisdiction issue: the number of times that Florida consumers have accessed the website; the number of Florida consumers that have utilized the Defendants' services and/or purchased their products; the number of times that one of the Defendants' representatives have responded to Florida residents after they have used one of the Defendants' websites; whether accounts have been set up for Florida residents through the websites; whether the Defendants directly market to Florida consumers through internet e-mail, Google internet or other advertising; the number and amount of services provided and/or products purchased that resulted from online submission by Florida consumers. *See Lakin v. Prudential Secs., Inc.,* 348 F.3d 704, 712-713 (8th Cir. 2003)(court ruled it was an abuse of discretion to deny jurisdictional discovery when no discovery had taken place in the case). The *Lakin* decision is far more consistent with Eleventh Circuit and Florida precedent cited *supra* than the *Carefirst of Md., Inc. v. Carefirst Preganancy Ctrs., Inc.,* case so heavily relied upon by the Jurisdictional Defendants. 348 F.3d 390 (4th Cir. 2003).

      Kroger and, it appears, Safeway also own and operate bricks and mortar Tom Thumb convenience stores in Florida, which, combined with all of the other factors addressed in the Plaintiffs' Motion would more than adequately show general jurisdiction. Based upon public information, it appears that Kroger also owns jewelry stores in Miami and offers jewelry for sale on the internet. *See* Exhibit "D" attached hereto. Most, if not all, of the Jurisdictional Defendants offer credit cards to Florida consumers and while they claim that these are operated by third parties, it is unclear what revenue is derived from Florida residents from the marketing of these cards on their websites. *See* Amanda Sample Declaration, Exhibit "A" attaching relevant websites as Exhibit "A" to her declaration. While the Jurisdictional Defendants appear to neither admit nor deny that they market flowers to Florida residents, the website pages demonstrating the orders are attached as Exhibit "A" to the Declaration of Amanda Sample. Moreover, Safeway has recently acknowledged that it has at least four employees in Florida in an affidavit filed with this Court and Kroger website shows that Kroger sought to employ a pharmacist in Pennsacola. Despite all of these contacts with Florida, almost all of which were never previously revealed by the Jurisdictional Defendants, they argue that the Plaintiffs should not be entitled to personal jurisdiction discovery to test the statements submitted to this Court in affidavits filed in support of dismissal. The Jurisdictional Defendants appear to suggest that this Court should determine personal jurisdiction as a Star Chamber court without allowing the Plaintiffs any discovery whatsoever. Incredibly they argue that the Plaintiffs' request for leave to conduct personal jurisdiction discovery should be denied because the Plaintiffs have failed to provide evidence of sales to Florida consumers, which is not accurate, and revenues from sales. Such evidence cannot be provided absent discovery and the Jurisdictional Defendants are fully aware of that. Such arguments stand in distinct contrast to the

**MALTZMAN FOREMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077**

Eleventh Circuit and Florida Supreme Court authority ruling that jurisdictional discovery must go forward to allow the Plaintiffs an opportunity to rebut the factual allegations in the Jurisdictional Defendants' affidavits.

**IV.    The Jurisdictional Defendants repeatedly mischaracterize the Plaintiffs' Motion**

In a disingenuous attempt to bolster their claim that the Plaintiffs are seeking a fishing expedition as to the numerous contacts with Florida addressed both in the Motion and *supra,* the Jurisdictional Defendants state that the Plaintiffs do not suggest that Meijer does any business in Florida. [DE 266-1 p. 20]. Selling products to Florida consumers is doing business in Florida. The Plaintiffs listed a number of ways in which all of the Jurisdictional Defendants do business in Florida, but unless discovery is allowed, no statements can be made with absolute certainty because the information needed to substantiate the revenues, the reason for having employees in Florida (other than Safeway's cursory explanaton), the number of jewelry stores and revenues derived therefrom, etc., are exclusively within the knowledge, custody and control of the Jurisdictional Defendants.

**V.     The Plaintiffs complied with Rule 7.1 regarding jurisdictional discovery**

One of the many and most egregious misrepresentations in the Jurisdictional Defendants' Response is the claim that the undersigned did not confer with the Jurisdictional Defendants prior to filing the Motion. To the contrary, once the Court granted leave to file the SAC, the undersigned immediately requested the Defendants' designated representative as to whether the Jurisdictional Defendants would agree to jurisdictional discovery or whether the Plaintiffs would be forced to endure the expense of motion practice regarding same after having more than adequately alleged a basis for same in the SAC. As part of a cost benefit analysis, the undersigned contacted several counsel, including counsel for Safeway and Stop & Shop, to discuss a potential voluntary dismissal. To be clear, this was not because the Plaintiffs believe that jurisdiction will not be established, but rather because the Plaintiffs were attempting to evaluate the cost and the benefit to the action of pursuing that portion of the litigation and the delay that it may cause in reaching the merits. At the time that the undersigned contacted counsel for Safeway and Stop & Shop, Robert Alwine, to *discuss* a potential dismissal because the Plaintiffs were considering moving towards the merits as quickly as possible, Mr. Alwine indicated that he was providing another affidavit indicating that Safeway had several employees in Florida.

After the discussion with Mr. Alwine, other facts came to the attention of the undersigned that had to be considered in the determination of whether to dismiss any Jurisdictional Defendant. Based upon Safeway's disclosure (of which the undersigned learned through the discussion with Mr. Alwine) that four (4) Florida employees which had never previously been disclosed to the Plaintiffs apparently work with vendors in Florida [DE 253 pp. 9-10] and Meijer's failure to disclose the website that is a virtual retail store, the Plaintiffs obviously opted not to dismiss based upon the Jurisdictional Defendants' lack of

consistency in the affidavits previously filed in opposition to personal jurisdiction. *See Unique Industries, Inc.,* 2007 U.S. Dist LEXIS 83725 at *26 (court shared concern with plaintiff about defendant's inconsistent statements made in affidavits and had no trouble granting limited personal jurisdiction discovery to explore the reasons for the inconsistencies since it appeared that defendant was less than forthcoming). Contrary to Stop & Shop's and Safeway's representations, any discussion regarding a potential dismissal was intended to be confidential and was for discussion only. No final agreement was entered into with counsel and nothing was reduced to writing. Nestlé SA was ultimately dismissed based on similar discussions due to a cost benefit analysis, but Safeway and Stop & Shop were not because the Plaintiffs determined that it was not appropriate based on the new information received.

Between November 15, 2007 and the time that the motion was filed on December 3, 2007, the undersigned exchanged e-mails with the Defendants' designated representative, Carol Licko, regarding whether the Jurisdictional Defendants would agree to discovery.[12] In fact, attached as Exhibit "F" hereto is an e-mail received from Ms. Licko acknowledging that all Jurisdictional Defendants remaining in the case opposed discovery, which was every Jurisdictional defendant except Nestlé SA.[13] Prior to filing the Motion, on November 30, 2007, the undersigned also sent letters to counsel for Safeway and Stop & Shop, reminding counsel that the Plaintiffs had not entered into any agreement to dismiss them, setting forth a confidential proposal for settlement, clearly indicating that the Plaintiffs intended to go forward with the Motion for Leave for Personal Jurisdiction Discovery and unequivocally stating that the undersigned understood that both Safeway and Stop & Shop opposed the Motion. The undersigned never received a telephone call, e-mail or any other communication that counsel was not a part of a 7.1 conference prior to filing the Motion. Counsel for Safeway and Stop & Shop's highly improper and inappropriate references to the settlement proposal will be addressed in the Plaintiffs' cross-motion to strike references to same. Counsel for Safeway and Stop & Shop have misrepresented the facts.

**VI.    Conclusion**

For all of the reasons set forth in the Plaintiff's Motion and herein, the Plaintiff's respectfully request this Court to grant personal jurisdiction discovery and for all other relief that this Court deems just and proper.

---

[12] In yet another blatant misrepresentation, counsel for Stop & Shop and Safeway makes the statement that they determined not to oppose the motion for leave to file the SAC based upon a purported "agreement" to dismiss them. DE 266-1 fn 8]. There was no agreement, but rather a discussion occurred that such a dismissal might take place as set forth *supra, which in any event, was intended to be confidential.* There is quite simply no basis to strike the SAC based on counsel's unsupported and unsubstantiated statement revealing discussion that were confidential and never reduced to writing.

[13] The undersigned was very ill after Thanksgiving and barely able to speak.

MALTZMAN FOREMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077

## CROSS-MOTION TO STRIKE REFERNCES TO
## CONFIDENTIAL SETTLEMENT DISCUSSIONS

The Plaintiffs respectfully request this Court to enter an Order striking the improper and inappropriate references to settlement proposals which were sent to counsel for Safeway and Stop & Shop in an effort to see if the case as to these two Defendants could be resolved at an early stage.[14] In fifteen years of practice, the undersigned has never seen a simple settlement proposal vilified as it was in the Response. Safeway and Stop & Shop's lawyers indicate in the Response that there was a "threat" of protracted litigation if they did not settle. Such an allegation is a flat out misrepresentation and completely mischaracterizes the intent behind the letter. Without waiving the confidentiality of the contents of the letter, the specific portion referenced by Safeway and Stop & Shop actually stated: "We have considered the facts and circumstances of [Safeway['s] and Stop & Shop's] position, contacts with Florida and the likelihood of finding personal jurisdiction in this case. *In order to avoid the expense of the Plaintiffs and [Safeway and Stop & Shop] going through with protracted jurisdictional discovery and briefing regarding same, we are willing to recommend to our clients the following….*" That is not a threat, but rather a reasonable attempt to see if the parties could come to an agreement at this stage of the litigation. Such settlement discussions are universally encouraged. Revealing the contents of confidential settlement proposals creates a chilling effect on the Plaintiffs from seeking to create any sort of a dispute resolution dialogue with the Defendants in the future because it obviously appears that such communications will be obfuscated, twisted and misrepresented in a clear attempt to gain a competitive advantage in this litigation and to poison the well against the Plaintiffs. Such conduct should not go unchecked as it thwarts the laudable intent of attempting to resolve litigation disputes. *See St. Paul Fire & Marine Ins. Co. v. Brother Int'l Co.,* 2007 U.S. Dist. LEXIS 64648 *52-55 (D.N.J. 2007) (motion to strike numerous references to confidential settlement communications in motion for summary judgment stricken as irrelevant and in violation of Federal Rule of Evidence 408's policy to encourage confidential settlement communications between parties to resolve disputes); *Braman v Woodfield Gardens Assoc.,* 715 F. Supp. 226, 230 (N.D. Ill. 1989) (granting motion to strike reference to confidential settlement communications in complaint as improper); *Fidelity & Deposit Co. v. Hudson United Bank,* 653 F.2d 766, 445 (3d Cir 1981)(sustaining objection to the admissibility of confidential settlement discussions because it was not necessary for the court to consider same and because such admission would only serve to discourage future settlement discussions). In this case, it was clearly unnecessary, improper and inappropriate to reveal the contents of the settlement proposal in the Response and any such references should be stricken.

Contrary to defense counsel's attempts to portray the Plaintiffs/Class representatives as solely interested in pursuing this case for money, the Plaintiffs/Class Representatives have been drastically

---

[14] The letters clearly stated "Confidential Settlement Proposal" in bold capital letters.

11

impacted by the subject matter of the SAC. They are people who are passionate about their pets and feel deeply betrayed by these Defendants. Contrary to the number of references made by the Defendants during this litigation and again in this Response, money is *not* the motivating factor in this lawsuit. The primary motivating factor in this lawsuit is the attempt to get the Defendants to market and sell what they claim to sell and to ensure that what they market and sell is truthful and does not kill or injure their beloved companion cats and dogs. Since the Defendants' marketing professes to care so much about the consumer and cat and dog bond and the consumer's pets, this should not be a difficult lawsuit to prosecute because what the Plaintiffs seek is simply to have the Defendants do the right thing.

WHERFORE, the Plaintiffs respectfully request this Court to enter an Order striking the references to the settlement proposal and settlement discussions regarding dismissal from the Jurisdictional Response and for all other relief that this Court deems just and proper.

Dated:  December 10, 2007
        Miami, FL

                               /s Catherine J. MacIvor
                               CATHERINE J. MACIVOR (FBN 932711)
                               cmacivor@mflegal.com
                               BJORG EIKELAND (FBN 037005)
                               beikeland@mflegal.com
                               MALTZMAN FOREMAN, PA
                               One Biscayne Tower
                               2 South Biscayne Boulevard -Suite 2300
                               Miami, Florida 33131
                               Tel: 305-358-6555 / Fax: 305-374-9077
                               *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

      WE HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of the Court via CM/ECF on this 10th day of December, 2007. We also certify that the foregoing was served on all counsel or parties of record on the attached Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

                                            /s Catherine J. MacIvor
                                            Catherine MacIvor

## SERVICE LIST

### CASE NO. 07-21221 ALTONAGA/Turnoff

**CATHERINE J. MACIVOR**
cmacivor@mflegal.com
**JEFFREY B. MALTZMAN**
jmaltzman@mflegal.com
**JEFFREY E. FOREMAN**
jforeman@mflegal.com
**DARREN W. FRIEDMAN**
dfriedman@mflegal.com
**MALTZMAN FOREMAN, PA**
One Biscayne Tower
2 South Biscayne Boulevard -Suite 2300
Miami, Florida 33131
Tel: 305-358-6555 / Fax: 305-374-9077

*Attorneys for Plaintiffs*

**ROLANDO ANDRES DIAZ**
E-Mail: rd@kubickdraper.com
**CASSIDY YEN DANG**
E-mail: cyd@kubickidraper.com
**MARIA KAYANAN**
E-Mail: mek@kubickidraper.com
**KUBICKI DRAPER**
25 W. Flagler Street
Penthouse
Miami, Florida 33130-1712
Telephone: (305) 982-6708
Facsimile: (305) 374-7846

*Attorneys for Defendant Pet Supermarket, Inc.*

**JOHN B.T. MURRAY, JR.**
E-Mail**: jbmurray@ssd.com**
**MARK C. GOODMAN**
**SQUIRE, SANDERS & DEMPSEY LLP**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, Florida 33401-6198
Telephone: (561) 650-7200
Facsimile:   (561) 655-1509

*Attorneys for Defendants PETCO Animal Supplies Stores Inc., PetSmart, Inc., Wal-Mart Stores, Inc., Target Corporation and Meijer, Inc.*

**ALEXANDER SHAKNES**
E-Mail: Alex.Shaknes@dlapiper.com
**AMY W. SCHULMAN**
E-Mail: Amy.schulman@dlapiper.com
**LONNIE L. SIMPSON**
E-Mail: Lonnie.Simpson@dlapiper.com
**S. DOUGLAS KNOX**
E-Mail: Douglas.knox@dlapiper.com
**DLA PIPER RUDNICK GRAY CARY US LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4829

*Attorneys for Defendants Menu Foods, Inc. and Menu Foods Income Fund*

| | |
|---|---|
| **WILLIAM C. MARTIN**<br>E-Mail: william.martin@dlapiper.com<br>**DLA PIPER RUDNICK GRAY CARY US LLP**<br>203 North LaSalle Street<br>Suite 1900<br>Chicago, Illinois 60601-1293<br><br>*Attorneys for Defendants Menu Foods, Inc. and Menu Foods Income Fund* | **HUGH J. TURNER, JR.**<br>E-Mail: hugh.turner@akerman.com<br>**AKERMAN SENTERFITT & EDISON**<br>350 E. Las Olas Boulevard<br>Suite 1600<br>Fort Lauderdale, Florida 33301-2229<br>Telephone: (954)463-2700<br>Facsimile: (954)463-2224<br><br>*Attorneys for Defendants Publix Super Markets, Inc. and H.E. Butt Grocery Co.* |
| **GARY L. JUSTICE**<br>E-Mail: gjustice@gibsondunn.com<br>**CHARLES H. ABBOTT**<br>E-Mail: cabbott@gibsondunn.com<br>**GAIL E. LEES**<br>E-Mail: glees@gibsondunn.com<br>**WILLIAM EDWARD WEGNER**<br>E-Mail: wwegner@gibsondunn.com<br>**GIBSON DUNN & CRUTCHER LLP**<br>333 South Grand Avenue, Suite 4600<br>Los Angeles, California 90071-3197<br>Telephone: (213) 229-7000<br><br>*Attorneys for Defendant Nutro Products, Inc.* | **MARTY STEINBERG**<br>E-Mail: msteinberg@hunton.com<br>**ADRIANA RIVIERE-BADELL**<br>E-Mail: ariviere-badell@hunton.com<br>**HUNTON & WILLIAMS**<br>Mellon Financial Center<br>1111 Brickel Avenue, Suite 2500<br>Miami, Florida 33131<br>Telephone: (305) 810-2500<br>Facsimile: (305) 810-2460<br><br>*Attorneys for Defendant Nutro Products, Inc.* |
| **OMAR ORTEGA**<br>Email: ortegalaw@bellsouth.net<br>**DORTA & ORTEGA, P.A.**<br>Douglas Entrance<br>800 S. Douglas Road, Suite 149<br>Coral Gables, Florida 33134<br>Telephone: (305) 461-5454<br>Facsimile: (305) 461-5226<br><br>*Attorneys for Defendant Mars, Inc. and Mars Petcare U.S.* | **DANE H. BUTSWINKAS**<br>E-Mail: dbutswinkas@wc.com<br>**PHILIP A. SECHLER**<br>E-Mail: psechler@wc.com<br>**THOMAS G. HENTOFF**<br>E-Mail: thentoff@wc.com<br>**CHRISTOPHER M. D'ANGELO**<br>E-Mail: cdangelo@wc.com<br>**PATRICK J. HOULIHAN**<br>E-Mail: phoulihan@wc.com<br>**WILLIAMS & CONNOLLY LLP**<br>725 12th Street, N.W.<br>Washington, DC 20005<br>Telephone: (202)434-5000<br><br>*Attorneys for Defendants Mars, Incorporated and Mars Petcare U.S.* |

**BENJAMIN REID**
E-Mail: bried@carltonfields.com
**OLGA M. VIEIRA**
E-Mail: ovieira@carltonfields.com
**CARLTON FIELDS, P.A.**
100 S.E. Second Street, Suite 4000
Miami, Florida 33131-0050
Telephone: (305)530-0050
Facsimile: (305) 530-0050

*Attorneys for Defendants Colgate-Palmolive Company and Hill's Pet Nutrition, Inc.*

**KARA L. McCALL**
kmccall@sidley.com
Sidley Austin LLP
One S. Dearborn Street
Chicago, ILL 60633
Telephone: (312) 853-2666

*Attorneys for Defendants Colgate-Palmolive Company and Hill's Pet Nutrition, Inc.*

**SHERRIL M. COLOMBO**
E-Mail: scolombo@cozen.com
**COZEN O'CONNOR**
200 South Biscayne Boulevard
Suite 4410
Miami, Florida 33131
Telephone: (305) 704-5945
Facsimile: (305) 704-5955

*Attorneys for Defendant Del Monte Foods Co.*

**JOHN J. KUSTER**
jkuster@sidley.com
**JAMES D. ARDEN**
jarden@sidley.com
Sidley Austin LLP
787 Seventh Avenue
New York, New York 10019-6018
Telephone: (212) 839-5300

*Attorneys for Defendants Colgate-Palmolive Company and Hill's Pet Nutrition, Inc.*

**MARCOS DANIEL JIMINEZ**
E-Mail: mjimenez@kennynachwalter.com
**ROBERT J. ALWINE, II**
E-Mail ralwine@kennynachwalter.com
**KENNY NACHWALTER, P.A.**
201 South Biscayne Boulevard
Suite 1100
Miami, Florida 33131
Telephone: (305) 373-1000
Facsimile:   (305) 372-1861

*Attorneys for Defendants Safeway, Inc. and The Stop & Shop Supermarket Company*

**RICHARD FAMA**
E-Mail: rfama@cozen.com
**JOHN J. McDONOUGH**
E-Mail: jmcdonough@cozen.com
**COZEN O'CONNOR**
45 Broadway
New York, New York 10006
Telephone: (212) 509-9400
Facsimile:   (212) 509-9492

*Attorneys for Defendant Del Monte Foods*

**JOHN F. MULLEN**
**COZEN O'CONNOR**
E-Mail: jmullen@cozen.com
1900 Market Street
Philadelphia, PA 19103
Telephone: (215) 665-2179
Facsimile: (215) 665-2013

*Attorneys for Defendant Del Monte Foods, Co.*

**ROBERT C. TROYER**
E-Mail: rctroyer@hhlaw.com
**HOGAN & HARTSON**
1200 17th Street
 One Tabor Center, Suite 1500
Denver, Colorado 80202
Telephone: (303) 899-7300
Facsimile: (303) 899-7333

*Attorneys for Defendants Nestle U.S.A., Inc. and Nestle Purina Petcare Co.*

**JAMES K. REUSS**
E-Mail: jreuss@lanealton.com
**LANE ALTON & HORST**
Two Miranova Place
Suite 500
Columbus, Ohio 43215
Telephone: (614) 233-4719

*Attorneys for Defendant The Kroger Co. of Ohio*

**CAROL A. LICKO**
E-Mail: calicko@hhlaw.com
**HOGAN & HARTSON**
Mellon Financial Center
1111 Brickell Avenue, Suite 1900
Miami, Florida 33131
Telephone (305) 459-6500
Facsimile (305) 459-6550

*Attorneys for Defendants Nestle U.S.A., Inc. and Nestle Purina Petcare Co.*

**CRAIG A. HOOVER**
E-Mail: cahoover@hhlaw.com
**MIRANA L. BERGE**
E-Mail: mlberge@hhlaw.com
**HOGAN & HARTSON L.L.P.**
555 13th Street, N.W.
Washington, D.C. 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910

*Attorneys for Defendants Nestle U.S.A., Inc. and Nestle Purina Petcare Co.*

**ALAN G. GREER**
agreer@richmangreer.com
**RICHMAN GREER WEIL BRUMBAUGH MIRABITO & CHRISTENSEN**
201 South Biscayne Boulevard
Suite 1000
Miami, Florida 33131
Telephone: (305) 373-4000
Facsimile: (305) 373-4099

*Attorneys for Defendants Proctor & Gamble Co. and The Iams Co.*

| | |
|---|---|
| **D. JEFFREY IRELAND**<br>E-Mail: djireland@ficlaw.com<br>**BRIAN D. WRIGHT**<br>E-Mail: bwright@ficlaw.com<br>**LAURA A. SANOM**<br>E-Mail: lsanom@ficlaw.com<br>**FARUKI IRELAND & COX**<br>500 Courthouse Plaza, S.W.<br>10 North Ludlow Street<br>Dayton, Ohio 45402<br><br>*Attorneys for Defendant Proctor & Gamble Co. and The Iams Co.* | **ROBIN L. HANGER**<br>E-Mail: rlhanger@ssd.com<br>**SQUIRE, SANDERS & DEMPSEY LLP**<br>200 S. Biscayne Boulevard<br>40th Floor<br>Miami, Florida 33131-2398<br>Telephone: (305) 577-7040<br>Facsimile:  (305) 577-7001<br><br>*Attorneys for Defendants PETCO Animal Supplies Stores, Inc.* |
| **RALPH G. PATINO**<br>E-Mail: rpatino@patinolaw.com<br>**DOMINICK V. TAMARAZZO**<br>E-Mail: dtamarazzo@patinolaw.com<br>**CARLOS B. SALUP**<br>E-Mail: csalup@patinolaw.com<br>**PATINO & ASSOCIATES, P.A.**<br>225 Alcazar Avenue<br>Coral Gables, Florida 33134<br>Telephone: (305) 443-6163<br>Facsimile:  (305) 443-5635<br><br>*Attorneys for Defendants Pet Supplies "Plus" and Pet Supplies Plus/USA, Inc.* | **ROBERT VALADEZ**<br>E-Mail: rvaladez@shelton-valadez.com<br>**JAVIER THOMAS DURAN**<br>E-Mail: jduran@shelton-valadez.com<br>**SHELTON & VALADEZ**<br>600 Navarro, Suite 500<br>San Antonio, Texas 78205<br>Telephone: (210) 349-0515<br>Facsimile:  (210) 349-3666<br><br>*Attorneys for Defendant H.E. Butt Grocery Co.* |
| **CRAIG P. KALIL**<br>E-Mail: ckalil@aballi.com<br>**JOSHUA D. POYER**<br>E-Mail: jpoyer@aballi.com<br>**ABALLI MILNE KALIL & ESCAGEDO**<br>2250 Sun Trust International Center<br>One S.E. Third Avenue<br>Miami, Florida 33131<br>Telephone:  (303) 373-6600<br>Facsimile:  (305) 373-7929<br><br>*Attorneys for New Albertson's Inc. and Albertson's LLC* | **W. RANDOLPH TESLIK**<br>E-Mail: rteslik@akingump.com<br>**ANDREW J. DOBER**<br>E-Mail: adober@akingump.com<br>**AKIN GUMP STRAUSS HAUER & FELD LLP**<br>1333 New Hampshire Avenue, NW<br>Washington, D.C. 20036<br>Telephone: (202) 887-4000<br>Facsimile:  (202) 887-4288<br><br>*Attorneys for Defendants New Albertson's Inc. and Albertson's LLC* |

**MALTZMAN FOREMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077**

**C. RICHARD FULMER, JR.**
E-Mail: rfulmer@Fulmer.LeRoy.com
**FULMER, LEROY, ALBEE, BAUMANN, & GLASS**
2866 East Oakland Park Boulevard
Fort Lauderdale, Florida 33306
Telephone: (954) 707-4430
Facsimile: (954) 707-4431

*Attorneys for Defendant The Kroger Co. of Ohio*

**JASON JOFFEE**
E-Mail: jjoffe@ssd.com
**SQUIRE, SANDERS & DEMPSEY LLP**
200 S. Biscayne Boulevard
40th Floor
Miami, Florida 33131-2398
Telephone: (305) 577-7040
Facsimile:   (305) 577-7001

*Attorneys for Defendant Meijer, Inc.*