UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 07-21221-CIV-ALTONAGA/TURNOFF

RENEE BLASZKOWSKI, *et al.*,
individually and on behalf of
others similarly situated,

        Plaintiffs,

vs.

MARS, INCORPORATED, *et al.*,

        Defendants.

_____/

**DEFENDANTS' CONSOLIDATED MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED CLASS ACTION COMPLAINT AND INCORPORATED
<u>MEMORANDUM OF LAW</u>**

Dockets.Justia.com

**<u>TABLE OF CONTENTS</u>**

**<u>Page(s)</u>**

MOTION......................................................................................................... 1

MEMORANDUM OF LAW—INTRODUCTION ........................................ 4

BACKGROUND .......................................................................................... 4

ARGUMENT................................................................................................. 7

I.      THE SAC SHOULD BE DISMISSED AS TO THE NON-RESIDENT DEFENDANTS FOR LACK OF PERSONAL JURISDICTION........................ 9

      A.      PLAINTIFFS DO NOT SATISFY THEIR OVERALL OBLIGATION TO SHOW THAT THIS COURT HAS PERSONAL JURISDICTION UNDER FLORIDA'S LONG-ARM STATUTE AND THAT THE ASSERTION OF SUCH JURISDICTION COMPORTS WITH DUE PROCESS........................... 9

            1.      Plaintiffs Generally Fail To Carry Their Burden Pursuant To The Eleventh Circuit's Two-Part Jurisdictional Analysis.................................................. 9

            2.      Plaintiffs Fail To Satisfy The Specific Requirements Of Florida's Long-Arm Statute........................................................ 12

            3.      Plaintiffs Fail To Show That An Assertion Of Jurisdiction Over The Non-Resident Defendants Would Comport With Due Process. ........................................................ 14

      B.      THERE IS NO JURISDICTION OVER H.E. BUTT GROCERY CO. ........................................................................ 16

            1.      Plaintiffs' Complaint Fails On Its Face To Establish Jurisdiction Over H.E. Butt Grocery Co...................................... 16

            2.      There Is No Basis For Personal Jurisdiction Over HEB Under The Florida Long-Arm Statute........................................... 17

            3.      There Is No Basis For Personal Jurisdiction Over HEB Under The Due Process Clause.................................................... 18

      C.      THERE IS NO JURISDICTION OVER SAFEWAY, INC. AND THE STOP & SHOP SUPERMARKET CO. LLC........................ 18

1.    Plaintiffs Have Not Alleged That Either Safeway Or
Stop & Shop Committed Any Of The Acts Required
For Specific Personal Jurisdiction. ................................ 21

2.    Safeway And Stop & Shop Do Not Have The Requisite
Contacts With Florida Sufficient To Establish General
Personal Jurisdiction. ..................................................... 22

3.    Exercising Personal Jurisdiction Over Safeway And
Stop & Shop Does Not Comport With Constitutional
Due Process Requirements. .......................................... 26

D.    THERE IS NO JURISDICTION OVER MEIJER, INC. ....................... 27

1.    Plaintiffs' SAC Fails To Establish Jurisdiction Over
Meijer, Inc. .................................................................... 27

2.    There Is No Basis For Personal Jurisdiction Over
Meijer, Inc. Under The Florida Long-Arm Statute. ..................... 29

E.    THERE IS NO JURISDICTION OVER PET SUPPLIES
PLUS/USA, INC. .......................................................................... 32

1.    The Plaintiffs Have Failed To Meet Their Burden Of
Pleading Sufficient Material Facts Necessary To
Establish A Basis Of Personal Jurisdiction Over Pet
Supplies Plus/USA, Inc. ................................................ 32

2.    There Is No General Or Specific Jurisdiction Over Pet
Supplies Under The Florida Long-Arm Statute. ......................... 34

3.    Exercising Personal Jurisdiction Over Pet Supplies
Would Violate The Due Process Clause. .................................... 37

F.    THERE IS NO JURISDICTION OVER NEW
ALBERTSONS, INC. ...................................................................... 40

1.    Plaintiffs Have Still Not Met Their Initial Pleading
Burden. .......................................................................... 40

2.    New Albertsons Does Not Own Or Operate An
Albertsons Store Within 1,500 Miles Of Florida. ....................... 40

3.    New Albertsons Does Not Sell Groceries To Individual
Consumers Thousands Of Miles Away From Florida
With The Expectation That The Products They Sell
Will Reach Florida Consumers. .................................... 41

ii

4. The Presence Of A Registered Agent Does Not Subject New Albertsons To Personal Jurisdiction In Florida. .................. 42

G. THERE IS NO JURISDICTION OVER THE KROGER CO. ................ 43

1. Plaintiffs Have Failed To Meet Their Burden To Plead Sufficient Material Facts To Establish The Bases Of Personal Jurisdiction Against The Kroger Co. ........................... 43

2. There Is No Basis For Personal Jurisdiction Against Kroger Under The Florida Long-Arm Statute. ........................... 45

3. The Exercise Of Personal Jurisdiction Over Kroger Would Violate Fundamental Principles Of Due Process. ............ 47

II. THE SAC SHOULD BE DISMISSED IN ITS ENTIRETY AS TO *ALL* DEFENDANTS BECAUSE PLAINTIFFS DO NOT ALLEGE LEGALLY COGNIZABLE INJURY TO THEMSELVES AS INDIVIDUALS SUFFICIENT TO CONFER STANDING OR TO SATISFY FED. R. CIV. P. 8(a) OR 12(b)(6). ..................................................... 48

A. THE SAC ALLEGES INSUFFICIENT FACTS TO SHOW NAMED PLAINTIFFS' STANDING AS INDIVIDUALS. .................. 50

B. BECAUSE IT LACKS THE NECESSARY ALLEGATIONS OF PARTICULARIZED INJURY, THE SAC FAILS TO MEET THE REQUIREMENTS OF RULE 8 AND RULE 12(b)(6), AS DESCRIBED IN *TWOMBLY*. ............................................ 56

III. EACH COUNT ALLEGED IN THE SAC WARRANTS DISMISSAL ON INDEPENDENT GROUNDS. ....................................................... 59

A. ALL COUNTS ARE FATALLY DEFECTIVE BECAUSE THE SAC FAILS TO ALLEGE RELIANCE OR CAUSATION. ....................................................................... 59

B. PLAINTIFFS' FRAUD-BASED CLAIMS (COUNTS I-III) ARE NOT ALLEGED WITH SUFFICIENT PARTICULARITY. ................................................................. 62

1. The SAC Fails to Identify "Who" Did "What" to "Whom" and "When." .................................................. 64

2. The SAC Fails To Allege Any Facts Demonstrating That Any Defendant's Statements Caused Any Plaintiff To Alter Any Purchasing Decision. ............................................ 66

3.   The SAC Fails To Allege That Plaintiffs Suffered Harm As A Result Of Any Fraudulent Statement.................................. 68

C.   PLAINTIFFS' CONSUMER PROTECTION ACT CLAIM (COUNT III) FAILS TO STATE A CLAIM. ......................... 68

D.   THE ECONOMIC LOSS RULE BARS PLAINTIFFS' CLAIM FOR NEGLIGENCE (COUNT IV)........................... 71

E.   PLAINTIFFS FAIL TO STATE A CLAIM FOR STRICT PRODUCTS LIABILITY. ......................................... 72

F.   PLAINTIFFS' CLAIM FOR INJUNCTIVE RELIEF (COUNT VI) IS NOT A SUBSTANTIVE CLAIM, AND, IN ANY EVENT, PLAINTIFFS MAKE NO SHOWING OF INADEQUACY OF LEGAL REMEDIES OR IRREPARABLE HARM. ....................................... 75

G.   PLAINTIFFS' WARRANTY CLAIMS (COUNTS VII AND VIII) ARE BARRED BECAUSE PLAINTIFFS FAIL TO ALLEGE PRIVITY. ................................................... 77

1.   Plaintiffs Fail To Allege Facts Establishing Privity With Regard To Any Defendant.................................. 77

2.   Plaintiffs Cannot Allege Privity With Respect To The Manufacturer Defendants............................... 78

H.   PLAINTIFFS' UNJUST ENRICHMENT CLAIM (COUNT IX) DOES NOT STATE A LEGALLY COGNIZABLE CLAIM................................................. 79

CONCLUSION..................................................................... 81

APPENDIX A .......................................................................... 82

APPENDIX B .......................................................................... 83

APPENDIX C .......................................................................... 85

APPENDIX D .......................................................................... 87

APPENDIX E .......................................................................... 89

**TABLE OF AUTHORITIES**

<u>**Page(s)**</u>

Cases

*3B TV, Inc. v. State,*
   794 So. 2d 744 (Fla. 1st DCA 2001) ................................................... 70

*Ala. v. U.S. Army Corps of Engineers,*
   424 F.3d 1117 (11th Cir. 2005) ................................................... 75, 76

*Al-Babtain v. Banoub,*
   No. 8:06-cv-1973-T-30TGW, 2007 WL 2774210 (M.D. Fla. 2007) ...................... 58

*Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.,*
   390 F. Supp. 2d 1170 (M.D. Fla. 2005) .......................................... 79, 80

*Am. Investors Life Ins. Co. v. Webb Life Ins. Agency, Inc.,*
   876 F. Supp. 1278 (S.D. Fla. 1995) .............................................. 11, 33

*Am. Overseas Marine Corp. v. Patterson,*
   632 So. 2d 1124 (Fla. 1st DCA 1994) .................................... 13, 14, 22, 34

*Anderson v. Smithfield Foods, Inc.,*
   207 F. Supp. 2d 1358 (M.D. Fla. 2002) ............................................. 63

*Asahi Metal Indus. Co. v. Superior Court of California,*
   480 U.S. 102 (1987) ............................................................ 15, 18, 37

*Atlantic Nat'l Bank of Fla. v. Vest,*
   480 So. 2d 1328 (Fla. 2d DCA 1985) ............................................... 63

*Baker v. Carnival Corp.,*
   No. 06-21527-CIV-HUCK, 2006 WL 3360418 (S.D. Fla. Nov. 20, 2006) ............... 31

*Bankhead Enterprises, Inc. v. Norfolk & Western Railway Co.,*
   642 F.2d 802 (5th Cir., Unit B, April 15, 1981) ...................................... 43

*Barry v. Mortgage Servicing Acquisition Corp.,*
   909 F. Supp. 65 (D.R.I. 1995) .................................................... 12, 30

*Bell Atlantic Corp. v. Twombly,*
   127 S. Ct. 1955 (2007) ........................................................ 56, 57, 61

*Berenguer v. Warner-Lambert Co.,*
   No. 02-05242, 2003 WL 24299241 (Fla. Cir. Ct. July 31, 2003) ................... 67, 70

*Bird v. Parsons,*
   289 F.3d 865 (6th Cir. 2002) ...................................................... 24

*Bowen v. First Family Financial Services, Inc.,*
   233 F.3d 1331 (11th Cir. 2000) .................................................... 51

*Bowleg v. Bowe*,
    502 So. 2d 71 (Fla. 3d DCA 1987) .......................................................................... 79

*Box Office Entertainment, LLC v. Brian D. Gordon, CPA, P.A.*,
    No. 05-21010, 2007 WL 1362898 (S.D. Fla. May 9, 2007) ................................ 62, 63

*Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*,
    288 F.3d 1012 (7th Cir. 2002) .............................................................................. 54

*Briehl v. GMC*,
    172 F.3d 623 (8th Cir. 1999) ................................................................................. 54

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
    116 F.3d 1364 (11th Cir. 1997) ............................................................................. 63

*Buckhannon v. Monarch Life Ins. Co.*,
    No. 94-1071, 1995 WL 43593 (10th Cir. February 2, 1995) ................................. 44

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ................................................................................. 15, 37, 47

*Casa Clara Condo. Ass'n, Inc. v. Charley Toppino & Sons, Inc.*,
    620 So. 2d 1244 (Fla. 1993) ................................................................................. 72

*Cate v. Oldham*,
    707 F.2d 1176 (11th Cir. 1983) ............................................................................. 76

*Church v. City of Huntsville*,
    30 F.3d 1332 (11th Cir. 1994) .............................................................................. 54

*City of Marietta v. CSX Transp., Inc.*,
    196 F.3d 1300 (11th Cir. 1999) ............................................................................. 76

*Clark v. Boeing Co.*,
    395 So. 2d 1226 (Fla. 1981) ............................................................................ 73, 75

*Conley v. Boyle Drug Co.*,
    570 So. 2d 275 (Fla. 1990) ................................................................................... 74

*Consol. Dev. Corp. v. Sherritt, Inc.*,
    216 F.3d 1286 (11th Cir. 2000) ................................................................. 25, 26, 43

*Court Appointed Receiver for Lancer Mgmt. Group LLC v. Taubman*,
    No. 05-60199-CIV, 2007 WL 984452 (S.D. Fla. Mar. 27, 2007) ........................... 80

*Dania Jai-Alai Palace, Inc. v. Sykes*,
    450 So. 2d 1114 (Fla. 1984) ................................................................................. 58

*Della Ratta v. Della Ratta*,
    927 So. 2d 1055 (Fla. 4th DCA 2006) ................................................... 80

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2004) ............................................................................ 57

*Eirman v. Olde Discount Corp.*,
    697 So. 2d 865 (Fla. 4th DCA 1997) ..................................................... 70

*Elend v. Basham*,
    471 F.3d 1199 (11th Cir. 2006) ............................................................ 50

*Elizabeth N. v. Riverside Group, Inc.*,
    585 So. 2d 376 (Fla. 1st DCA 1991) ..................................................... 77

*Elmex Corp. v. Atlantic Fed. Sav. and Loan Assoc. of Ft. Lauderdale*,
    325 So.2d 58 (Fla. 4th DCA 1976) ........................................................ 34

*Flamenbaum v. Orient Lines, Inc.*,
    No. 03-22549, 2004 WL 1773207 (S.D. Fla. July 20, 2004) ..................... 65, 66, 78

*Focus on the Family v. Pinellas Suncoast Transit Auth.*,
    344 F.3d 1263 (11th Cir. 2003) ............................................................ 50

*Ford Motor Co. v. Atwood Vacuum Machine Co.*,
    392 So. 2d 1305 (Fla. 1981) ................................................................ 42

*Fraker v. KFC Corp.*,
    No. 06-CV-01284-JM, 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007) ..................... 67

*Future Tech. Today, Inc. v. OSF Healthcare Sys.*,
    218 F.3d 1247 (11th Cir. 2000) ............................................................ 10, 28, 47

*Goforit Entertainment LLC v. Digimedia*,
    513 F. Supp. 2d 1325 (M.D. Fla. 2007) ................................................. 24, 30

*Haun v. Don Mealy Imports, Inc.*,
    285 F. Supp. 2d 1297 (M.D. Fla. 2003) ................................................. 61, 68

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) ............................................................................ 14, 23, 24, 34

*Himes v. Brown & Co.*,
    518 So. 2d 937 (Fla. 3d DCA 1987) ...................................................... 62

*Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*,
    421 F.3d 1162 (11th Cir. 2005) ............................................................ 31

*Hoyte v. Yum! Brands, Inc.*,
  489 F. Supp. 2d 24 (D.D.C. 2007) ............................................................... 53, 54, 67

*Huntsman Pkg. Corp. v. Kerry Pkg. Corp.*,
  992 F. Supp. 1439 (M.D. Fla. 1998) .......................................................................... 80

*Ikonen v. Hartz Mountain Corp.*,
  122 F.R.D. 258 (S.D. Cal. 1988) ................................................................................ 61

*In re Managed Care Litig.*,
  150 F. Supp. 2d 1330 (S.D. Fla. 2001) ..................................................................... 67

*Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*,
  891 So. 2d 532 (Fla. 2004) .......................................................................................... 71

*Int'l Shoe Co. v. State of Washington*,
  326 U.S. 310 (1945) ...................................................................... 14, 15, 39, 47

*Jackson v. BellSouth Telecomms.*,
  372 F.3d 1250 (11th Cir. 2004) ................................................................................. 57

*Jacobs v. Osmose, Inc.*,
  No. 01-944-CIV, 2002 WL 34241682 (S.D. Fla. Jan. 3, 2002) ........................ 77, 78

*Keeton v. Hustler Magazine, Inc.*,
  465 U.S. 770 (1984) ............................................................................................ 10, 47

*King v. Cutter Labs., Div. of Miles*,
  714 So. 2d 351 (Fla. 1998) ......................................................................................... 74

*Klay v. United Healthgroup, Inc.*,
  376 F.3d 1092 (11th Cir. 2004) ................................................................................. 75

*Kramer v. Piper Aircraft Corp.*,
  520 So. 2d 37 (Fla. 1988) ........................................................................................... 77

*L.O.T.I. Group Productions v. Lund*,
  907 F. Supp. 1528 (S.D. Fla. 1995) ........................................................................... 38

*Lauzon v. Joseph Ribkoff, Inc.*,
  77 F. Supp. 2d 1250 (S.D. Fla. 1999) ........................................................................ 10

*Liza Danielle, Inc. v. Jamko, Inc.*,
  408 So. 2d 735 (Fla. 3d DCA 1982) .......................................................................... 79

*Lofton v. Butterworth*,
  93 F. Supp. 2d 1343 (S.D. Fla. 2000) ........................................................................ 51

*London v. Wal-Mart Stores, Inc.*,
   340 F.3d 1246 (11th Cir. 2003) ............................................................ 50

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................. 50

*Lynch v. Bexley*,
   744 F.2d 1452 (11th Cir. 1984) ............................................................ 55

*Madara v. Hall*,
   916 F.2d 1510 (11th Cir. 1990) .......................................... 9, 14, 15, 47

*Marino v. Home Depot U.S.A., Inc.*,
   No. 06-80343, 2007 WL 201260 (S.D. Fla. Jan. 24, 2007) .................... 63

*Mathews v. Kilroe*,
   170 F. Supp. 416 (S.D.N.Y. 1959) ....................................................... 57

*McEntee v. Incredible Techs., Inc.*,
   No. 263818, 2006 WL 659347 (Mich. App. Mar. 16, 2006) .................. 71

*McLiechy v. Bristol West Ins. Co.*,
   474 F.3d 897 (6th Cir. 2007) ............................................................... 71

*MeterLogic, Inc. v. Copier Solutions, Inc.*,
   126 F. Supp. 2d 1346 (S.D. Fla. 2000) ........................................... 11, 33

*Miami Breakers Soccer Club, Inc. v. Women's United Soccer Ass'n*,
   140 F. Supp. 2d 1325 (S.D. Fla. 2001) ....................................... 10, 33, 44

*Milberg Factors, Inc. v. Greenbaum*,
   585 So. 2d 1089 (Fla.3d DCA 1991) .................................................... 36

*Moltz v. Seneca Balance, Inc.*,
   606 F. Supp. 612 (S.D. Fla. 1985) ....................................................... 33

*Montgomery v. Davol, Inc.*,
   No. 3:07cv176, 2007 WL 2155644 (N.D. Fla. July 24, 2007) ............... 79

*Montgomery v. New Piper Aircraft, Inc.*,
   209 F.R.D. 221 (S.D. Fla. 2001) .......................................................... 69

*Moore v. Miami-Dade County*,
   502 F. Supp. 2d 1224 (S.D. Fla. 2007) ................................................ 56

*Mother Doe I ex rel. R.M. v. Al Maktoum*,
   No. 06-22253, 2007 WL 2209258 (S.D. Fla. July 30, 2007) ......... passim

*Musiker v. Projectavision, Inc.*,
  960 F. Supp. 292 (S.D. Fla. 1997) ................................................................. 10, 36

*Napier v. Osmose, Inc.*,
  399 F. Supp. 2d 811 (W.D. Mich. 2005) ......................................................... 59, 73

*Nat'l Wrestling Coaches Assoc. v. Dept. of Educ.*,
  366 F.3d 930 (D.C. Cir. 2004) ............................................................................ 55

*Neibarger v. Universal Coops.*,
  486 N.W.2d 612 (Mich. 1992) ............................................................................. 71

*Oriental Imps. & Exps., Inc. v. Maduro & Curiel's Bank, N.V.*,
  701 F.2d 889 (11th Cir. 1983) ................................................................. 10, 12, 37

*Paisey v. Vitale*,
  807 F.2d 889 (11th Cir. 1986) ............................................................................. 76

*Parker v. Century 21 J. Edwards Real Estate*,
  183 Fed. Appx. 869 (11th Cir. June 8, 2006) ...................................................... 14

*Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla.*,
  667 So. 2d 876 (Fla. 3d DCA 1996) .................................................................... 80

*Perry Ellis Int'l, Inc. v. URI Corp.*,
  No. 06-22020-CIV-MOORE/GARBER, 2007 WL 712389 (S.D. Fla. March 7, 2007) .... 10, 18

*Posner v. Essex Ins. Co.*,
  178 F.3d 1209 (11th Cir. 1999) ................................................................. 9, 44, 46

*Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*,
  784 F.2d 674 (5th Cir. 1986) .............................................................................. 67

*Prohias v. Pfizer*, Inc.,
  485 F. Supp. 2d 1329 (S.D. Fla. 2007) ............................................. 52, 53, 54, 59

*Pulte Home Corp. v. Ply Gem Indus., Inc.*,
  804 F. Supp. 1471 (M.D. Fla. 1992) ................................................................... 73

*QSR, Inc. v. Concord Food Festival Inc.*,
  766 So. 2d 271 (Fla. 4th DCA 2000) ................................................................... 34

*Region 8 Forest Serv. Timber Purchasers Council v. Alcock*,
  993 F.2d 800 (11th Cir. 1993) ............................................................................ 55

*Reliance Steel Prods. Co. v. Watson, ESS, Marshall & Enggas*,
  675 F.2d 587 (3d Cir. 1982) ............................................................................... 23

*Revell v. Lidov*,
  317 F.3d 467 (5th Cir., 2002) ........................................................................... 24, 30

*Rexam Airspray, Inc. v. Arminak*,
  471 F. Supp. 2d 1292 (S. D. Fla. 2007) ........................................................... passim

*Rivera v. Wyeth-Ayerst Labs.*,
  283 F.3d 315 (5th Cir. 2002) ........................................................... 52, 53, 54, 72

*Scott v. Home Choice, Inc.*,
  252 F. Supp. 2d 1129 (D. Kan. 2003) ..................................................................... 44

*Sculptchair, Inc. v. Century Arts, Ltd.*,
  94 F.3d 623 (11th Cir. 1996) ........................................................... 9, 37, 38, 39

*Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*,
  792 F.2d 989 (11th Cir. 1986) ..................................................................... 14, 34

*Selman v. Harvard Medical School*,
  494 F. Supp. 603 (S.D.N.Y. 1980) ..................................................................... 12, 30

*Shaffer v. Heitner*,
  433 U.S. 186 (1977)........................................................................................... 47

*Shands Teaching Hosp. and Clinics, Inc. v. Beech St. Corp.*,
  899 So. 2d 1222 (Fla. 1st DCA 2005) ..................................................................... 80

*Simon v. Celebration Co.*,
  883 So. 2d 826 (Fla. 5th DCA 2004) ..................................................................... 60

*Snow v. DirecTV, Inc.*,
  450 F.3d 1314 (11th Cir. 2006) ..................................................................... passim

*StairMaster Sport/Medical Prods. v. Pacific Fitness Corp.*,
  916 F. Supp. 1049 (W.D. Wash. 1994), *aff'd*, 78 F.3d 602 (Fed. Cir. 1996) ........................... 31

*Stires v. Carnival Corp.*,
  243 F. Supp. 2d 1313 (M.D. Fla. 2002) ........................................................... 62, 68

*Structural Panels, Inc. v. Texas Aluminum Industries, Inc.*,
  814 F. Supp. 1058 (M.D. Fla. 1993)........................................................... 24, 36

*Sun Trust Bank v. Sun Int'l Hotels, Ltd.*,
  184 F. Supp. 2d 1246 (S.D. Fla. 2001) ..................................................................... 13

*T.W.M. v. Amer. Medical Sys., Inc.*,
  886 F. Supp. 842 (N.D. Fla. 1995) ..................................................................... 77, 78, 79

*Taskey v. Burtis*,
 785 So. 2d 557 (Fla. 4th DCA 2001) ........................................................... 15

*Tilton v. Playboy Ent. Group, Inc.*,
 No. 88:05-cv-692-T-30TGW, 2007 WL 80858 (M.D. Fla. Jan. 8, 2007) ................................. 80

*Timberland Consol. P'ship v. Andrews Land and Timber, Inc.*,
 818 So. 2d 609 (Fla. 5th DCA 2002) ........................................................... 80

*Tolliver v. Monaco Coach Corp.*,
 No. 8:06-cv-856, 2006 WL 1678842 (M.D. Fla. June 16, 2006) ............................................ 79

*Tooltrend, Inc. v. CMT Utensili, SRL*,
 198 F.3d 802 (11th Cir. 1999) ................................................................. 79

*Tucker v. Citigroup Global Markets Inc.*,
 No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502 (M.D. Fla. July 17, 2007) ....................... 76

*Tylka v. Gerber Prods. Co.*,
 No. 96-C-1647, 1999 WL 495126 (N.D. Ill. July 1, 1999) ...................................... 67

*U.S. ex rel Feingold v. Palmetto Gov't Benefits Adm'rs*,
 477 F. Supp. 2d 1187 (S.D. Fla. 2007) ....................................................... 57

*U.S. v. Lab Corp. Am. Inc.*,
 290 F.3d 1301 (11th Cir. 2002) ......................................................... 62, 64

*Vermont Agency of Natural Res. v. U.S. ex rel. Stevens*,
 529 U.S. 765 (2000) ......................................................................... 50

*Watson v. Lucerne Mach. & Equip., Inc.*,
 347 So. 2d 459 (Fla. 2d DCA 1977) ........................................................... 73

*Wenche Siemer v. Learjet Acquisition Corp.*,
 966 F.2d 179 (5th Cir. 1992) ................................................................. 43

*West v. Caterpillar Tractor Co., Inc.*,
 336 So. 2d 80 (Fla. 1976) ................................................................... 72

*Williams v. Firstplus Home Loan Trust 1996-2*,
 209 F.R.D. 404 (W.D. Tenn. 2002) ..................................................... 12, 30, 48

*Williams v. Purdue Pharma Co.*,
 297 F. Supp. 2d 171 (D.D.C. 2003) .................................................... 54, 55, 61

*Wooden v. Board of Regents of University System of Georgia*,
 247 F.3d 1262 (11th Cir. 2001) ............................................................... 51

*Woods v. Nova Companies Belize Ltd.*,
    739 So.2d 617 (Fla. 4th DCA 1999) ...................................................................... 38

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ................................................................................................ 15, 41

*Yucyco, Ltd. v. Rep. of Slovn.*,
    984 F. Supp. 209 (S.D.N.Y. 1997) .......................................................................... 57

Statutes

Fla. Stat. § 48.193 ............................................................................................ passim

Fla. Stat. § 501.212(1) ...................................................................................... 70

Fla. Stat. Ann. § 501.201 ................................................................................. 68

Other Authorities

Rest. (3d) Torts: Prod. Liab. § 7 (1998) ......................................................... 74

Rules

Fed. R. Civ. P. 8 .............................................................................................. passim

Fed. R. Civ. P. 9(b) ......................................................................................... passim

Fed. R. Civ. P. 12(b)(6) .................................................................................. passim

## MOTION

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, Defendants New Albertsons, Inc.; The Kroger Co. of Ohio; Safeway Inc.; H.E. Butt Grocery Co.; Meijer, Inc.; The Stop & Shop Supermarket Co.; and Pet Supplies Plus/USA, Inc. ("non-resident Defendants") move this Court to dismiss Plaintiffs' Second Amended Class Action Complaint ("SAC") as to them for lack of personal jurisdiction. The non-resident Defendants are specially appearing for the limited purpose of this Motion, without submitting to the jurisdiction or venue of this Court.

Pursuant to Article III of the United States Constitution and Rules 8(a)(2), 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure, the non-resident Defendants; Defendants Mars, Inc.; Mars Petcare U.S., Inc.; Procter & Gamble Co.; The Iams Co.; Colgate-Palmolive Co.; Hill's Pet Nutrition, Inc.; Del Monte Foods, Co.; Nestlé U.S.A., Inc.; Nestlé Purina PetCare Co.; Nutro Products, Inc.;[1] Menu Foods, Inc.; Menu Foods Income Fund; Publix Supermarkets, Inc.; Albertsons LLC; PETCO Animal Supplies Stores, Inc.; Pet Supermarket, Inc.; PetSmart, Inc.; Target Corp.; and Wal-Mart Stores, Inc. (collectively, "Defendants") hereby move this Court to dismiss Plaintiffs' SAC as to all Defendants, based generally on the lack of alleged injury to specific Plaintiffs at the hands of specific Defendants. This general fatal flaw requires dismissal, more particularly, for: (a) lack of subject matter jurisdiction based on Plaintiffs' lack of standing to bring this suit; (b) lack of a short and plain statement showing Plaintiffs' entitlement to relief; and (c) failure to state any plausible claim for relief.

---

[1] Natura Pet Products, Inc., is also named in the SAC. However, as of the date of this Motion, that entity has not been served. Pursuant to the Court's comments at a hearing on December 12, 2007, Defendants are filing a consolidated motion on behalf of all Defendants, with the exception of Natura Pet Products, Inc.

These failures permeate each and every cause of action alleged in the SAC. Furthermore, each of Plaintiffs' claims fails for additional reasons, separate and distinct from their failure to allege particularized injury. Specifically:

- **All counts** are fatally defective because the necessary elements of reliance and causation have not been pleaded;

- **Counts I-III** (fraudulent misrepresentation and concealment, negligent misrepresentation, and violation of state deceptive trade practices laws) lack the particularity necessary to render these claims cognizable;

- **Count III** (violation of state deceptive trade practices laws) also fails because the relevant claims target conduct specifically authorized by the Association of American Feed Control Officials and state laws incorporating the standards of that agency;

- **Count IV** (negligence) is barred by the economic loss rule;

- **Count V** (strict liability) is deficient because Plaintiffs are unable to link any named Plaintiff with any specific product that allegedly caused him or her harm or to allege adequately that any specific product was unreasonably dangerous;

- **Count VI** (injunctive relief) is not a substantive claim and must fall away, in any event, because Plaintiffs have not shown the inadequacy of available legal remedies or risk of irreparable harm;

- **Counts VII and VIII** (breach of implied and express warranty) fail because of lack of privity; and

- **Count IX** (unjust enrichment) is barred because Plaintiffs show no inadequacy of available legal remedies, and allege facts insufficient to establish that any individual

Plaintiff conferred a benefit on any individual Defendant and that any individual Defendant might have had knowledge regarding any such benefit.

In light of these deficiencies, each fully discussed in the Memorandum of Law incorporated into this Motion,[2] Defendants respectfully request that this Court dismiss Plaintiffs' Second Amended Class Action Complaint in its entirety.

---

[2]  At this Court's direction (*see D.E. 142, Hearing Transcript at pgs. 22-25 and 27, lines 7-10*), the undersigned Defendants are submitting one comprehensive Motion.  With the Court's concurrent advance permission, this Motion exceeds the standard page limit.

## MEMORANDUM OF LAW—INTRODUCTION

Plaintiffs—alleged purchasers of unspecified brands of pet food—have filed a sweeping Second Amended Class Action Complaint ("SAC") that broadly criticizes the manufacturing and marketing practices of the entire pet food industry in the United States. Without once alleging (i) that any named Plaintiff bought pet food manufactured or sold by any specific Defendant; (ii) that any named Plaintiff was influenced to buy pet food by any particular Defendant's allegedly misleading statement; or (iii) that any named Plaintiff's pet suffered any adverse health consequences from consuming any identified Defendant's product, Plaintiffs nevertheless have haled into this Court the bulk of the country's pet food business. The assemblage of Defendants includes pet food manufacturers, major retailers, and specialty retailers. It also includes seven non-resident Defendants over whom this Court lacks personal jurisdiction.

Plaintiffs' nine-count SAC is fatally flawed across the board. As an initial matter, the seven non-resident Defendants move to dismiss the SAC under Rule 12(b)(2) because of the absence of personal jurisdiction over them. With respect to all Defendants, the SAC fails to establish that named Plaintiffs have standing to bring this suit and fails as a matter of law to allege conduct that would be actionable under state consumer protection statutes or state tort or contract law. The undersigned Defendants therefore jointly move to dismiss the SAC, pursuant to Article III of the U.S. Constitution and Rules 8(a)(2), 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## BACKGROUND

Plaintiffs initiated this lawsuit on May 9, 2007, filed a Corrected Amended Class Action Complaint on July 27, 2007, and filed this Second Amended Class Action Complaint on

November 19, 2007, refiling with modifications on November 29, 2007.  The SAC, brought by thirty owners of either cats or dogs (SAC ¶¶ 3-33),[3] consists solely of broad and vague allegations about the general conduct of the entire pet food industry.  In more than 100 paragraphs relying on generally available Internet postings and news articles, the SAC alleges various actions and omissions by the pet food industry, and it targets unrelated activities ranging from some Defendants' alleged use of marketing terms as varied as "premium" and "good for your cat" to the alleged inclusion by some Defendants of synthetic preservatives in pet food.

Although the SAC includes nine claims for relief, each hinges on the same basic allegations of wrongdoing—that the pet food industry advertises its dog and cat food products as healthy and nutritious without disclosing in those advertisements certain ingredients that might be included in packages of pet food, or without fully explaining the health effects of the ingredients that are disclosed.  One typical example is Plaintiffs' criticism of Defendants' disclosed use of grain as an ingredient on the ground that dogs and cats "are carnivores" (SAC ¶ 110).  Another example is Plaintiffs' lamentation regarding an alleged lack of adequate scientific documentation to support the benefits, content, and quality of Defendants' pet food (*id*. ¶¶ 74, 75).  Plaintiffs even go so far as to attack the very ***names*** of some Defendants' products. (*See, e.g.*, *id*. ¶ 77.)  In general, Plaintiffs contend that Defendants try to make consumers "feel

---

[3] Plaintiffs allege that there are approximately 88.3 million "companion" dogs and 74.8 million "companion" cats in the United States (SAC ¶ 119).  Plaintiffs seek to certify a putative class of consumers who own cats or dogs and who purchased pet food that was marketed, sold, manufactured, or distributed by any of the thirty named Defendants and marketed in certain vaguely described ways (*id*. ¶ 117).

good" about purchasing their products (*id.* ¶ 75), but do not provide food that consumers ought to "feel good" about feeding their pets (*id.* ¶ 81).[4]

Throughout this broad-based attack on the pet food industry, Plaintiffs ignore the significance of the fact that much of the complained-of activity already is actively regulated and approved by both state and federal administrative agencies.  (*See, e.g.*, Section III.C below).  For example, the Association of American Feed Control Officials has developed standards *specifically authorizing* much of the marketing language that Plaintiffs decry here.  Many states, *including Florida*, have incorporated these standards into their state laws.  At bottom, Plaintiffs are seeking to replace the existing regulatory regime wholesale with one constructed by this Court.  It would be inappropriate under any circumstance for Plaintiffs to use this Court as a vehicle for their regulatory ambitions.  Particularly where, as here, Plaintiffs can show neither standing nor legally cognizable claims, this Court should dismiss the SAC.

---

[4]  Some of Plaintiffs' statements also are inconsistent with each other.  For example, the SAC alleges that "[t]here have been reports of euthanized cats and dogs that have been 'rendered' and ultimately made into pet food that would reach millions" (SAC ¶ 102).  However, Plaintiffs' own exhibits show that these 1990-era rumors were investigated by the FDA's Center for Veterinary Medicine in two studies of dog and cat food in 1998 and 2000 and were found to be utterly baseless (*id.*, Ex. 32).  In fact, contrary to the allegations of the SAC, the FDA's study "results demonstrated a *complete absence* of material that would have been derived from euthanized dogs or cats" (*id.*) (emphasis added).  Although the SAC cites one other study (*id.*, Ex. 33) as somehow undermining the FDA's findings (*id.* ¶ 103), this very study states unequivocally that "rendered protein from euthanized dogs and cats *[was] not present* in these dog food samples" (*id.*, Ex. 33, p. 101) (emphasis added) and concludes that the "results of our study . . . provide evidence *against* the presumption that euthanized pets are routinely rendered and used in pet food" (*id.* at p. 103) (emphasis added).

# **ARGUMENT**

As an initial matter, and as discussed in Section I below, Plaintiffs' Second Amended Class Action Complaint must be dismissed for lack of personal jurisdiction over the seven non-resident Defendants.

Moreover, as discussed in Section II, named Plaintiffs lack standing for purposes of Article III of the Constitution and Rule 12(b)(1) of the Federal Rules of Civil Procedure.  The SAC falls fatally short of alleging that ***any*** named Plaintiff suffered a legally cognizable injury at the hands of ***any*** Defendant.[5]  Each "count" asserts that "Plaintiffs" have been harmed in an unspecified manner by purchasing pet food products allegedly manufactured or sold by Defendants.  Elsewhere, the SAC vaguely asserts that Defendants' actions somehow collectively damaged "Plaintiffs" because "Plaintiffs" as a group "would not have otherwise purchased these products had they known the truth and/or their cats and/or dogs became ill and/or died from ingesting the pet food" (SAC ¶ 74).  Nowhere does the SAC tell the Defendants or the Court which specific Plaintiff  made a purchase from a specific Defendant that he or she would not have made had he or she known the "truth," and the mere purchase of a product cannot qualify as a cognizable injury in any event.  Nor does the SAC tell us which (if any) Plaintiff's cat or dog became ill or died from ingesting *any* pet food, much less does the SAC tie any such illness or death to any particular product.   The only factual allegations in the SAC regarding any such injuries reference merely "consumers" (*see, e.g.*, SAC ¶ 109) or "Plaintiffs" as a group (*see, e.g.*, *id*. ¶ 114).  Named Plaintiffs may hope to bring all consumers of pet food within the last four

---

5  Except for Counts IV (negligence) and VII (breach of implied warranty), Plaintiffs bring each count against every Defendant.  Count IV does not name the Retailer Defendants (except for PetSmart, Inc.).  Count VII does not name the Manufacturer Defendants.

years before this Court, but, without having alleged legally cognizable injuries to themselves as individuals, they lack standing and thus may not even take the first step towards this wildly ambitious goal.

Plaintiffs' failure to plead actual injury is no mere oversight. In their proposed class definition, Plaintiffs meticulously avoid any suggestion that any class members actually suffered injury. Instead, the proposed class would extend to all consumers in the nation who purchased pet food that was handled by at least one Defendant at some point in the distribution chain and that contains certain ingredients and lacks others, *regardless* of the impact that the formulation of the food might have had on putative class members or their pets. Plaintiffs thus have not simply overlooked their burden to demonstrate that named Plaintiffs suffered an injury—*they intentionally define the class without reference to injury*.

In fact, so defective is the SAC with regard to its injury allegations that it does not identify a single Defendant that manufactured or distributed any pet food purchased by any specific named Plaintiff. Instead, Plaintiffs only state generally that each has purchased "one or more brands of the Defendants' commercial pet food and/or treats for daily consumption by [her/his] cat(s)/dog(s) . . . ." (SAC ¶¶ 3-33). The SAC consequently offers nothing approaching the short and plain statement of Plaintiffs' entitlement to relief required by Fed. R. Civ. P. 8(a) and fails to state a plausible claim for relief as required by Fed. R. Civ. P. 12(b)(6).

Finally, as discussed in Section III below, all nine claims for relief in the SAC should be dismissed for additional and independent reasons. As an initial matter, the SAC neither alleges facts establishing that at least one Plaintiff personally relied on a representation by each (or indeed any) Defendant nor alleges how each (or indeed any) specific Defendant's acts or omissions caused any harm to any specific named Plaintiff. Because each of Plaintiffs'

substantive claims requires allegations of either reliance or causation or both, none of the claims can survive this defect. Furthermore, each of Plaintiffs' claims suffers from other fatal and irremediable defects which independently warrant dismissal.

## I.    THE SAC SHOULD BE DISMISSED AS TO THE NON-RESIDENT DEFENDANTS FOR LACK OF PERSONAL JURISDICTION.

As an initial matter, the SAC should be dismissed as to the non-resident Defendants (Safeway, Inc.; The Stop & Shop Supermarket Co. LLC; The Kroger Co.; Meijer, Inc.; New Albertsons, Inc.; H.E. Butt Grocery Co.; Pet Supplies Plus/USA, Inc.), each of whom is specially appearing for the limited purpose of this Motion, and without submitting to the jurisdiction or venue of this Court, on grounds of lack of personal jurisdiction.

### A.    PLAINTIFFS DO NOT SATISFY THEIR OVERALL OBLIGATION TO SHOW THAT THIS COURT HAS PERSONAL JURISDICTION UNDER FLORIDA'S LONG-ARM STATUTE AND THAT THE ASSERTION OF SUCH JURISDICTION COMPORTS WITH DUE PROCESS.

#### 1.    Plaintiffs Generally Fail To Carry Their Burden Pursuant To The Eleventh Circuit's Two-Part Jurisdictional Analysis.

This action is brought on an assertion of diversity jurisdiction (*see* SAC ¶ 65). A federal court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits and to the extent allowed under the Constitution. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). The Eleventh Circuit applies a two-part analysis to determine if personal jurisdiction exists over a non-resident defendant. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996); *Mother Doe I ex rel. R.M. v. Al Maktoum*, No. 06-22253, 2007 WL 2209258, *2 (S.D. Fla. July 30, 2007) (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999)).

First, the forum state's long-arm statute—in this case Florida—must provide a basis for personal jurisdiction. *Lauzon v. Joseph Ribkoff, Inc.*, 77 F. Supp. 2d 1250, 1253 (S.D. Fla.

1999).  If this requirement is met, the second part of the analysis requires sufficient minimum

contacts between the defendant and the forum state so as to satisfy "traditional notions of fair

play and substantial justice" under the Due Process Clause of the Fourteenth Amendment.  *Id*.  If

the court determines that the forum's long-arm statute is satisfied, it must engage in the due

process analysis.  *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th

Cir. 2000); *Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV-MOORE/GARBER, 2007

WL 712389, *2 (S.D. Fla. March 7, 2007).

       Plaintiffs have the burden of pleading and proving "facts which clearly justify" the

exercise of personal jurisdiction (*see Oriental Imps. & Exps., Inc. v. Maduro & Curiel's Bank,

N.V.*, 701 F.2d 889, 891 (11th Cir. 1983)),[6] and this showing must be made for each defendant.

*See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n. 13 (1984) (due process requires that

"[e]ach defendant's contacts with the forum State must be assessed individually").  Plaintiffs'

initial pleading burden requires them to allege a sufficient ***factual*** basis for the Court's personal

jurisdiction over each non-resident Defendant.  *Mother Doe I*, 2007 WL 2209258, *2

("[P]laintiff's burden in alleging personal jurisdiction is to plead sufficient ***material facts*** to

establish the basis for exercise of such jurisdiction'" (quoting *Future Tech*., 218 F.3d at 1249))

(emphasis added); *Miami Breakers Soccer Club, Inc. v. Women's United Soccer Ass'n*, 140 F.

Supp. 2d 1325, 1328 (S.D. Fla. 2001) (plaintiff bears "initial burden of pleading ***facts*** to support

---

  6  Under Florida law, the plaintiff bears the burden of proving personal jurisdiction; when a
defendant raises a meritorious challenge to personal jurisdiction through affidavits,
documents or testimony, the burden shifts to the plaintiff to prove jurisdiction by affidavits or
other competent evidence.  *Mother Doe I*, 2007 WL 2209258, *2 (citing *Future Tech.*, 218
F.3d at 1249).  If the defendant sufficiently challenges the plaintiff's assertions, the plaintiff
must affirmatively support its jurisdictional contentions with record evidence and may not
merely rely on the factual allegations set forth in the complaint.  *Future Tech.*, 218 F.3d at
1249; *Musiker v. Projectavision, Inc.*, 960 F. Supp. 292, 294-95 (S.D. Fla. 1997).

personal jurisdiction over the defendant **in its complaint**") (emphasis added); *Rexam Airspray, Inc. v. Arminak*, 471 F. Supp. 2d 1292, 1295 (S. D. Fla. 2007) (plaintiff asserted three specific facts which allegedly permitted the court to exercise personal jurisdiction).

Remarkably, after no less than four iterations of their complaint, Plaintiffs have yet to allege any connection whatsoever between **any** named Plaintiff and **any** Defendant in the state of Florida.  Notably, only two of the named Plaintiffs reside in Florida (*see* SAC ¶¶ 4, 25).[7]  The SAC continues to fail to identify which Defendant, if any, allegedly sold pet food to either of these Florida Plaintiffs—or any other named Plaintiff.  Instead, each of the paragraphs of the SAC regarding the named Plaintiffs merely alleges, in conclusory fashion, that each named Plaintiff "regularly purchased one or more brands of . . . [unnamed, unidentified] Defendants'" pet food (*See* SAC ¶¶ 3-33).[8] This facial deficiency is sufficient to warrant dismissal of the SAC as to the non-resident Defendants, because the Plaintiffs have not alleged that their claims arise from any specific conduct in the forum by any particular non-resident Defendant.  *See, e.g.*, *Mother Doe I*, 2007 WL 2209258, *2; *MeterLogic, Inc. v. Copier Solutions, Inc.*, 126 F. Supp. 2d 1346, 1353 (S.D. Fla. 2000) (granting motion to dismiss for, among other things, failure to allege facts sufficient to establish personal jurisdiction over defendant); *Am. Investors Life Ins. Co. v. Webb Life Ins. Agency, Inc.*, 876 F. Supp. 1278, 1282-83 (S.D. Fla. 1995) (granting

---

[7] Curiously, while Amy Hollub, purportedly a resident of Florida, attempted to state a claim as a named Plaintiff in Plaintiffs' earlier-filed Corrected Amended Class Action Complaint, she does not purport to state a claim in the pending SAC, although her name remains in its caption.

[8] While named Plaintiffs Patricia Davis and Raul Isern allege that each is a resident of Florida and that each purchased pet food in Florida during the Class Period, neither of these Plaintiffs—nor any other Plaintiff—has alleged that he or she purchased pet food products from any *specific* Defendant.

dismissal where "plaintiff has failed to allege facts sufficient to support this Court's exercise of personal jurisdiction over the defendants").[9]

Plaintiffs' shotgun pleading lumping some or all Defendants together as having sold pet food to the two Florida Plaintiffs does not meet this Court's and the Eleventh Circuit's requirement that a plaintiff plead and prove the material *facts* establishing this Court's personal jurisdiction over each particular Defendant.  The vague amalgamation of some or all Defendants—and not just the non-resident Defendants—as having sold pet food to the two named Plaintiffs in Florida falls far short of meeting Plaintiffs' burden.

> **2.    Plaintiffs Fail To Satisfy The Specific Requirements Of Florida's Long-Arm Statute.**

The Florida long-arm statute, Fla. Stat. § 48.193, allows for two distinct categories of personal jurisdiction: specific jurisdiction conferred under Fla. Stat. § 48.193(1), and general jurisdiction conferred under Fla. Stat. § 48.193(2).[10]  At the outset, the Court should note that Plaintiffs have not identified whether they seek to establish specific jurisdiction, general jurisdiction or both.  The SAC merely refers to Section 48.193 in its entirety (SAC ¶ 67).  Since specific and general jurisdiction have distinct and separate requirements, Plaintiffs' vague pleading simply serves up confusion and vagueness.

---

[9] Of course, it is the named Plaintiffs themselves who must satisfy these elements of personal jurisdiction in order for the Court to have personal jurisdiction over the particular Defendants.  *See Williams v. Firstplus Home Loan Trust 1996-2*, 209 F.R.D. 404, 410 n.4 (W.D. Tenn. 2002); *Barry v. Mortgage Servicing Acquisition Corp.*, 909 F. Supp. 65, 73 (D.R.I. 1995).  *See also Selman v. Harvard Medical School*, 494 F. Supp. 603, 613 n.6 (S.D.N.Y. 1980) ("[I]t is clear that the named class representative himself must satisfy all jurisdictional prerequisites [under the New York long-arm statute] before the action can go forward.").

[10] The reach of the Florida long-arm statute is a question of Florida law, and the statute is to be strictly construed.  *Oriental Imps. & Exps., Inc.*, 701 F.2d at 890-91.

Section 48.193(1) provides specific jurisdiction if a non-resident defendant engages in any of the following specifically enumerated activities, *and* the cause of the action *arises out* of that activity: (1) conducting business or having an office or agency in this state; (2) committing a tortious act within this state; or (3) causing injury to persons or property within this state arising out of the defendant's solicitation or service activities within this state or the products processed, serviced, or manufactured by the defendant that are used or consumed in this state in the ordinary course of commerce. *See* Fla. Stat. § 48.193(1)(a), (b) and (f); *see also Sun Trust Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1269 (S.D. Fla. 2001) (there must be some "direct affiliation," "nexus," or "substantial connection" between the cause of the action and the activities alleged within the state to support specific jurisdiction under Fla. Stat. § 48.193(1)).

The Florida long-arm statute also provides for general jurisdiction, which does not require a specific nexus between the defendant's conduct in the forum state and the plaintiffs' claims, if a non-resident defendant engages "in substantial and not isolated activity within this state." Fla. Stat. § 48.193(2); *see also Am. Overseas Marine Corp. v. Patterson*, 632 So. 2d 1124, 1127-28 (Fla. 1st DCA 1994). This is a "high threshold." *Rexam Airspray,* 471 F. Supp. 2d at 1298. As this Court has explained:

> Florida courts hold that "substantial and not isolated activity" means "continuous and systematic general business contact" with Florida. *Autonation, Inc. v. Whitlock*, 276 F. Supp. 2d 1258, 1262 (S.D. Fla. 2003) (citing *Woods v. Nova Cos. Belize Ltd.*, 739 So. 2d 617, 620 (Fla. 4th Dist. Ct. App. 1999)). The "continuous and systematic" contacts requirement exceeds the constitutional due process requirements of "minimum contacts." *Id.* Because § 48.193(2) requires this high threshold, if a defendant's activities meet the statutory requirements of § 48.193(2), the minimum contacts standard is also satisfied. *Woods*, 739 So. 2d at 620.

*Rexam Airspray, Inc.*, 471 F. Supp 2d at 1298.

Accordingly, for general jurisdiction to exist, this Court must find that the non-resident Defendants each maintained "'continuous and systematic . . . contacts' with the forum, so that

[they] can properly be considered to be 'present' in the forum" and could reasonably anticipate being haled into court in the forum. *Am. Overseas Marine Corp.*, 632 So. 2d at 1127 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411-12 (1984)); *see also Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*, 792 F.2d 989, 992 (11th Cir. 1986).

As discussed below, the non-resident Defendants do not have "continuous and systematic" contact with Florida. *Cf. Parker v. Century 21 J. Edwards Real Estate*, 183 Fed. Appx. 869, 870-71 (11th Cir. June 8, 2006) (upholding dismissal for lack of personal jurisdiction because, among other things, defendant did not have offices in Florida, did not employ anyone in Florida, did not file taxes in Florida, and did not advertise or solicit business in Florida); *Rexam Airspray*, 471 F. Supp. 2d at 1303 (defendants' business relationship with the Florida plaintiff, occasional visits to Florida on behalf of the plaintiff, sales in Florida of less than 1% of its total sales, placement of advertisements in national trade journals and a passive website did not confer general jurisdiction).

3.    **Plaintiffs Fail To Show That An Assertion Of Jurisdiction Over The Non-Resident Defendants Would Comport With Due Process.**

This Court's exercise of personal jurisdiction must comport with constitutional due process requirements. Due process requires that a nonresident defendant have certain minimum contacts with the forum so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945); *see also Mother Doe I*, 2007 WL 2209258, *2.

Like the Florida long-arm statute, notions of due process apply to both specific and general jurisdiction over non-resident Defendants. The Eleventh Circuit has explained that the constitutional due process analysis is a two-step inquiry. *See Madara*, 916 F.2d at 1515-16. First, the Court must determine whether each of these non-resident Defendants has the required

14

minimum contacts with Florida. *See id.* at 1516. "Factors that go into determining whether sufficient minimum contacts exist include the foreseeability that the defendant's conduct will result in suit in the forum state and the defendant's purposeful availment of the forum's privileges and protections." *Taskey v. Burtis*, 785 So. 2d 557, 559 (Fla. 4th DCA 2001). The minimum contacts analysis requires that the plaintiff's claims stem from or have a nexus to the defendant's activities in the forum state. *See, e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Moreover, the minimum contacts analysis is grounded in fairness and is designed to assure that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Burger King*, 471 U.S. at 474.

Second, this Court must determine whether notions of fair play and substantial justice comport with the exercise of personal jurisdiction. *See Int'l Shoe Co.*, 326 U.S. at 316. The "fair play and substantial justice" prong of the personal jurisdiction analysis requires consideration of five factors: (1) the degree to which the defendant has purposefully interjected itself in the forum state; (2) the burden of requiring the non-resident defendant to appear in the forum state; (3) the forum state's interest in the litigation; (4) the plaintiff's interest in obtaining relief in the forum; and (5) the shared interest of the several states in furthering substantive social policies. *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987); *World-Wide Volkswagen Corp.*, 444 U.S. at 292.

As discussed in Sections I.B to I.G below, the assertion of personal jurisdiction would not comport with due process with respect to any of the non-resident Defendants.

## B.     THERE IS NO JURISDICTION OVER H.E. BUTT GROCERY CO.

### 1.     Plaintiffs' Complaint Fails On Its Face To Establish Jurisdiction Over H.E. Butt Grocery Co..

The lion's share of Plaintiffs' Complaint treats Defendants collectively and does not indicate which, if any, of the named Plaintiffs purchased pet food from H.E. Butt Grocery Co. ("HEB").  Rather, the sole specific allegation even mentioning HEB by name asserts merely that HEB is a Texas corporation with its principal place of business in Texas and alleges (incorrectly) that HEB conducts business in Florida and is in the business of selling the offending pet food products in Florida:

> 58.     Defendant, H.E. Butt Grocery Company ("HEB"), is a Texas corporation with its principal place of business in Texas.  HEB conducts business in Florida and/or places products in the stream of commerce that reach Florida consumers.  HEB is in the business of distributing, advertising and/or selling Defendant Manufacturers' pet food and treat products in Florida which has injured the Plaintiffs in Florida.  HEB adopts the marketing representations of the Defendant Manufacturers by placing point of purchase advertising at or near the Defendant Manufacturers pet food in its retail stores with the intent to induce consumers to purchase its products.

SAC ¶ 58.  The only other mention of any jurisdictional facts again treats Defendants collectively:

> 67.     Pursuant to Florida Statute § 48.193, each of the remaining named Defendants has subjected itself to the jurisdiction of Florida courts by virtue of engaging in and/or carrying on a business or business venture in Florida; having an office or agency in Florida; committing a tortious and/or deceptive act in Florida; and/or by breaching warranties in this state and/or by committing one or more of the acts enumerated in Florida Statute § 48.193.  The Defendants [sic] deceptive, tortious and other actionable conduct described herein caused injury and harm to the Plaintiffs in Florida.

SAC ¶ 67.

As discussed above, Plaintiffs' burden is to plead *sufficient material facts* to establish the basis for exercise of jurisdiction over each non-resident Defendant.  *Mother Doe I*, 2007 WL 2209258, * 2.  Thus, Plaintiffs' global assertion as to all defendants in SAC ¶ 67 is clearly

insufficient to support jurisdiction as to HEB.  Furthermore, although SAC ¶ 58 specifically

names HEB, it contains only conclusory statements regarding HEB doing business in Florida and

is completely devoid of any material facts supporting this Court's exercise of jurisdiction over

HEB.  Plaintiffs' complete failure to plead sufficient jurisdictional facts requires that this Court

dismiss their Complaint against HEB.

### 2. There Is No Basis For Personal Jurisdiction Over HEB Under The Florida Long-Arm Statute.

Even if Plaintiffs had included jurisdictional allegations in their Complaint—which they

did not—this Court nevertheless must dismiss their action against HEB because, as demonstrated

by the affidavit of Andrew Liang ("Liang Aff.", attached as Exhibit A), Plaintiffs cannot satisfy

the requirements of either specific or general jurisdiction under the Florida long-arm statute.  As

Plaintiffs admit in their SAC (¶ 58), HEB is a Texas corporation with its principal place of

business in Texas.  *See also* Liang Aff. ¶ 4.  But contrary to Plaintiffs' allegations, HEB is a

holding company only and does not own or operate any grocery stores in Texas or in any other

state.  *Id.* ¶ 5.  Rather, all stores known as "HEB" grocery stores are owned and/or operated by a

separate entity, HEB Grocery Company, L.P., not H.E. Butt Grocery Company, the entity

Plaintiffs have sued in this case.  *Id.* ¶ 6.  HEB is not qualified to do business in Florida, nor does

it have a principal place of business or any offices or agents there.  *Id.* ¶ 7.  HEB does not own or

lease any personal or real property in Florida, nor does it have a telephone listing, bank account,

or mailing address in Florida.  *Id.* ¶ 8.  Finally, HEB does not conduct any business, generate any

income, or engage in any marketing of pet food or any other products in Florida.  *Id.* ¶¶ 9-10.

In short, HEB has absolutely no contact with the state of Florida, and, thus, Plaintiffs

cannot satisfy the requirements of the Florida long-arm statute.  Accordingly, their claims against

HEB must be dismissed for lack of jurisdiction.

3.      **There Is No Basis For Personal Jurisdiction Over HEB Under The Due Process Clause.**

Because Plaintiffs cannot satisfy the Florida long-arm statute, this Court need not address whether they can meet the requirements of Due Process under the Fourteenth Amendment. *Perry Ellis*, 2007 WL 712389, *2.  Nevertheless, the affidavit of Andrew Liang, discussed above, similarly establishes that personal jurisdiction over HEB is constitutionally insupportable. Plaintiffs have not alleged any activity on HEB's part that was purposefully directed at any resident of Florida, nor have they asserted any injury arising out of or relating to such an activity. Indeed, they cannot, because HEB has no contact whatsoever with Florida or its residents. Furthermore, because HEB does not conduct any business in Florida, Plaintiffs cannot rely on principles of general jurisdiction to save their claims.  Therefore, even if this Court were required to consider *in personam* jurisdiction under the Due Process Clause, it still would be required to dismiss all Plaintiffs' claims against HEB for lack of jurisdiction.

C.      **THERE IS NO JURISDICTION OVER SAFEWAY, INC. AND THE STOP & SHOP SUPERMARKET CO. LLC**

The only allegations specifically directed at either Safeway, Inc. ("Safeway") or The Stop & Shop Supermarket Co. LLC ("Stop & Shop") are located at paragraphs 57 (as to Safeway) and 60 (as to Stop & Shop) of the SAC.  These essentially identical paragraphs vaguely and in conclusory fashion allege that Safeway and Stop & Shop each "conducts business in Florida" and/or "places products in the stream of commerce that reach Florida consumers,"[11] and that

---

[11] The "stream of commerce" allegation is deficient.  As the Supreme Court held in *Asahi Metal*, 480 U.S. at 112, the mere placement of a product in the stream of commerce without more is not enough; additional conduct such as advertising or marketing the product in the forum state is necessary.  It is absurd even to suggest that Safeway and Stop & Shop place pet food in the stream of commerce with the intention or foreseeability that such products

[Footnote continued on next page]

each "is in the business of manufacturing, producing, distributing, advertising **and/or** selling its

own brand of pet food as well as distributing, advertising **and/or** selling the Defendant' pet food

and treat products in Florida which has injured the Plaintiffs" (SAC ¶¶ 57, 60) (emphasis added).

On their own, these allegations are not only hopelessly vague, but also spurious.  It is

wholly irresponsible for Plaintiffs to allege that Safeway and Stop & Shop manufacture, produce,

distribute, advertise "and/or" sell their own brands of pet food "in Florida," as well as distribute,

advertise "and/or" sell the other Defendants' pet food products "in Florida," when Plaintiffs

cannot identify even a single can or bag of pet food either sold, manufactured, distributed or

advertised by either Safeway or Stop & Shop to any named Plaintiff (or anyone else for that

matter) in this case in Florida.  Plaintiffs are well aware that Safeway and Stop & Shop do not

have a store anywhere near Florida.  Plaintiffs' counsel most likely has unsuccessfully tried to

purchase pet food from Safeway and Stop & Shop in Florida.  Plaintiffs' counsel has succeeded

only in purchasing a pet treat through a Meijer.com website allegedly operated by non-resident

Defendant Meijer, Inc. as reflected in papers filed by Plaintiffs in support of their Motion for

Jurisdictional Discovery [D.E. 268-2 at 2].[12]  Plaintiffs' allegations regarding the purported pet

food business that Safeway and Stop & Shop conduct in Florida is sanctionable, and this Court

should not accept them in any way as sufficient.

---

[Footnote continued from previous page]
will reach Florida residents; Safeway's and Stop & Shop's stores are located hundreds of
miles from Florida, and Plaintiffs do not and cannot allege any specific marketing in or
shipping of those products to Florida.

[12] This is in no way to suggest that the single sale orchestrated by Plaintiffs' counsel well after
the Class Period by accessing the Meijer.com website is sufficient to the personal
jurisdictional analysis.  It is relevant only because this is the *only* specific sale of pet food
that Plaintiffs claim actually to have occurred "in Florida" with respect to ***any of the non-
resident Defendants***.

Furthermore, immediately after the vague conclusion that Safeway and Stop & Shop somehow manufacture, produce, distribute, advertise and/or sell their own and other Defendants' pet food products in Florida, Plaintiffs allege that Safeway and Stop & Shop conduct those activities in their "grocery stores" and "retail stores." As to Stop & Shop, Plaintiffs state that such marketing and sales occur at "**its grocery stores in Massachusetts and other states.**" As to Safeway, Plaintiffs simply allege that "Safeway markets and sells . . . pet food at issue in **its grocery stores**" (SAC ¶¶ 57, 60).

These allegations reveal a dearth of the "material facts" that this Court recently held plaintiffs must allege in support of personal jurisdiction. *Mother Doe I,* 2007 WL 2209258, *2. There is no allegation that those grocery stores or retail stores are in Florida. Nor can there be. Plaintiffs know full well that the grocery stores and retail stores of Safeway and Stop & Shop are far from Florida. Plaintiffs purposefully have ignored this fact to maintain the veneer of their vague and spurious allegation that Safeway and Stop & Shop are somehow "in the business of" manufacturing, producing, selling, marketing "and/or" advertising their brand and other brands of pet food "in Florida."

Although this Court found sufficient, for the purpose of personal jurisdiction discovery, the allegation that Defendants New Albertsons and Albertsons LLC "collectively, market and sell pet food in their **grocery stores in Florida**" (D. E. 251, at 3), there is no such allegation, nor can there be, with respect to the grocery stores of Safeway and Stop & Shop. There are no alleged Safeway or Stop & Shop pet food manufacturing facilities, pet food advertisements, or marketing activities (which are inherently public and obvious) in Florida. There are no alleged Safeway and Stop & Shop pet food sales in Florida. Accordingly, this Court, consistent with its earlier ruling in this case, and consistent with this Court's prior decisions requiring plaintiffs to

allege "material facts" supporting personal jurisdiction, should find that the allegations against Safeway and Stop & Shop are insufficient.

Plaintiffs' only other assertion regarding jurisdiction over Safeway and Stop & Shop is a conclusory and speculative recitation of the acts that potentially subject a defendant to personal jurisdiction under the Florida long-arm statute.

> 67.    Pursuant to Florida Statute § 48.193, each of the remaining named Defendants has subjected itself to the jurisdiction of Florida courts by virtue of engaging in **and/or** carrying on a business or business venture in Florida; having an office or agency in Florida; committing a tortious **and/or** deceptive act in Florida; **and/or** by breaching warranties in this state and/or by committing **one or more** of the acts enumerated in Florida Statute § 48.193.  The Defendants [sic] deceptive, tortious and other actionable conduct described herein caused injury and harm to the Plaintiffs in Florida.

SAC ¶ 67 (emphasis added).  Absolutely none of those acts are alleged to have been committed by Safeway or Stop & Shop in Florida.

> **1.    Plaintiffs Have Not Alleged That Either Safeway Or Stop & Shop Committed Any Of The Acts Required For Specific Personal Jurisdiction.**

Plaintiffs do not allege in the SAC that their claims arise from any specific acts by Safeway or Stop & Shop in Florida, as required for personal jurisdiction under Section 48.193(1).  Indeed, Plaintiffs do not even allege that (i) any particular Plaintiff purchased pet food manufactured or sold by Safeway or Stop & Shop in Florida, (ii) any Plaintiff was influenced to buy pet food by any allegedly misleading statement by Safeway or Stop & Shop in Florida, or (iii) any Plaintiff's pet suffered adverse health consequences from consuming Safeway or Stop & Shop product, either in Florida or anywhere else.

Recently, in their reply in support of jurisdictional discovery, Plaintiffs did engage in a futile attempt to link their claims to the pet food sold by Defendants, stating that the SAC "clearly alleges" that each Plaintiff "purchased pet food from one or more of the Defendants, i.e.,

if the Defendant is included in the suit, then one or more of the Plaintiffs bought pet food or

treats from that Defendant"[13] (D.E. 268 at 4). This is inadequate, of course, to establish any link

between Plaintiffs' claims and either Safeway or Stop & Shop's (or any other Defendant's) acts

in Florida. Indeed, the two named Plaintiffs who allegedly bought pet food in Florida do not

allege that either Safeway or Stop & Shop sold, manufactured or had anything to do with the pet

food or treats they purchased (SAC ¶¶ 4, 25). Clearly, Plaintiffs have failed to allege any

connection between their claims and any activities of Safeway or Stop & Shop in Florida, as

required by Fla. Stat. §48.193(1) for specific jurisdiction.

> ### 2. Safeway And Stop & Shop Do Not Have The Requisite Contacts With Florida Sufficient To Establish General Personal Jurisdiction.

As an initial matter, this Court should recognize that Plaintiffs have not alleged sufficient

jurisdictional *facts* that could conceivably give rise to general personal jurisdiction.

As noted above, for this Court to have general jurisdiction as a result of acts unrelated to

Plaintiffs' claims, Safeway and Stop & Shop must have engaged in "substantial and not isolated

activity" in Florida. Fla. Stat. § 48.193(2). To meet the "substantial and not isolated activity"

requirement, which is a "high standard" (*Rexam Airspray, Inc.*, 471 F. Supp 2d at 1298),

Safeway and Stop & Shop must have maintained continuous and systematic contacts with the

forum so that they can properly be considered to be present in the forum. *See Am. Overseas*

*Marine Corp.*, 632 So. 2d at 1127. "[T]he facts required to assert . . . general jurisdiction must

be 'extensive and pervasive.'" *Id.* at 1127-28 (*citing Reliance Steel Prods. Co. v. Watson, ESS,*

---

[13] What each named Plaintiff has actually alleged is that he or she bought "one *or more* brands of the Defendants' commercial pet food or treats" that "was/were manufactured, marketed, produced, distributed, advertised *and/or* sold by the Defendants" (SAC ¶¶ 3-33) (emphasis added).

*Marshall & Enggas*, 675 F.2d 587, 589 (3d Cir. 1982)).  No such facts are alleged or exist in this case with respect to Safeway and Stop & Shop.

As set forth in the attached Declaration of Laura A. Donald ("Donald Dec." attached as Exhibit B) and Declaration of Steven F. Rowell ("Rowell Dec." attached as Exhibit C), neither Safeway nor Stop & Shop operates retail stores or other facilities in Florida, owns or leases property in Florida, has bank or investment accounts in Florida, conducts significant business in Florida, or maintains an office, mailing address, or telephone listing in Florida.  *See* Donald Dec. ¶¶ 2-12 and Rowell Dec. ¶¶ 2-12.  Consequently, Safeway and Stop & Shop do not have the contacts necessary for general jurisdiction under Florida's long-arm statute.

In separate filings, Plaintiffs have suggested, though they have failed to plead, that general jurisdiction over Safeway and Stop & Shop exists because: Safeway and Stop & Shop make purchases in Florida and have internet websites that Florida residents may access to order flowers (as to Safeway and Stop & Shop) and gift baskets and certain home furnishings (as to Safeway), and because Safeway has a registered agent and four out of its 171,000 employees in Florida.  These are briefly addressed below to the extent the Court considers facts not alleged in the SAC.

**Purchases in Florida.**  Plaintiffs have argued elsewhere that Safeway and Stop & Shop "obtain at least produce and orange juice on a regular and systematic basis from Florida producers" and that this gives rise to general jurisdiction over Safeway and Stop & Shop (D. E. 268 at 5).  However, the fact that Safeway and Stop & Shop purchased oranges (or anything else) in the State of Florida, is wholly insufficient for general personal jurisdiction.  In *Helicopteros*, the U.S. Supreme Court directly addressed the argument that Plaintiffs advance here: "[W]e hold that mere purchases, even if occurring at regular intervals, are not enough to warrant a State's

assertion of in personam jurisdiction over a nonresident corporation in a cause of action not

related to those purchase transactions." *Helicopteros Nacionales*, 466 U.S. at 418; *see also*

*Structural Panels, Inc. v. Texas Aluminum Industries, Inc.*, 814 F. Supp. 1058 (M.D. Fla. 1993)

(purchases from vendors in Florida insufficient to permit exercise of general jurisdiction under

Fla. Stat. § 48.193(2)).

      **Websites Accessible to Florida Residents.**  Plaintiffs have suggested in other filings

(but have not alleged in their SAC) that Safeway and Stop & Shop maintain "interactive"

websites that are accessible to consumers in Florida for the purchase of flowers (both Safeway

and Stop & Shop), gift baskets (Safeway), and certain home goods (Safeway)—not pet food

products.  However, the interactivity of a website "available" to Florida consumers is not a

sufficient ground to assert general personal jurisdiction over a non-resident defendant.  As the

Fifth Circuit held in a Texas personal jurisdiction case, the interactivity of a website "is not well-

adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents

by a foreign defendant may not constitute the requisite substantial, continuous and systematic

contacts required for a finding of general jurisdiction—in other words, while it may be doing

business *with* Texas, it is not doing business *in* Texas."  *Revell v. Lidov*, 317 F.3d 467, 471 (5th

Cir., 2002) (emphasis in original).  Websites that simply enable residents in a forum state to do

business with a non-resident defendant, and that are equally accessible to the residents of all

states, do not establish general personal jurisdiction, particularly when the amount of business

conducted with the forum state's residents is a minor part of the defendant's overall business.

*See, e.g., Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002); *Goforit Entertainment LLC v.*

*Digimedia*, 513 F. Supp. 2d 1325, 1330 (M.D. Fla. 2007) (websites that are "equally accessible

everywhere does not establish targeting of Florida"; *Rexam Airspray, Inc.* 471 F. Supp. 2d at

1303 (passive website and less than 1% sales in Florida insufficient for general personal jurisdiction). In short, the existence of websites accessible by Florida residents is insufficient for general personal jurisdiction.

**Limited Sales to Consumers in Florida.** Limited sales to consumers in Florida, through the internet or otherwise, is an insufficient basis on which to assert general personal jurisdiction over a non-resident. For example, in *Rexam Airspray,* 471 F. Supp. 2d, at 1299, the Court found that limited sales in Florida constituting less than 1% of the defendant's total sales in Florida did not establish the continuous and systematic contacts required for general jurisdiction. Indeed, courts have deemed much higher percentages sales in the forum, up to 5%, insufficient. *Id*. at 1300.

**Safeway's Registered Agent and Four Employees.** As noted above, the mere presence of a registered agent in Florida in no way alters the equation. "Courts of appeals that have addressed this issue have rejected the argument that appointing a registered agent is sufficient to establish general personal jurisdiction over a corporation." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000) ("The casual presence of a corporate agent in the forum is not enough to subject the corporation to suit where the cause of action is unrelated to the agents activities.")

Likewise, the presence of four employees out of Safeway's 171,000 employees in the United States, is insufficient to establish general personal jurisdiction in this case. Safeway's four employees (three of whom inspect flowers arriving from Latin America through the airport while in transit to their ultimate destinations outside of Florida, and one of whom monitors information technology for computer systems outside Florida but simply happens to live in Florida) constitute .002% of Safeway's employees. *See* D.E. 253, at ¶¶ 5, 7 (Supplemental

Declaration of Laura Donald (attached as Exhibit D)).  These employees, like suppliers and

vendors in Florida, simply facilitate business conducted by Safeway in other states, and do not in

any way approximate the type of physical presence in Florida required for general personal

jurisdiction.

**3.    Exercising Personal Jurisdiction Over Safeway And Stop &
Shop Does Not Comport With Constitutional Due Process
Requirements.**

Because Plaintiffs have not alleged that their claims arise directly from any sales of pet

food by Safeway or Stop & Shop in Florida, the Court must apply the more stringent due process

test required for general personal jurisdiction analysis.  *Consol. Dev. Corp.*, 216 F.3d at 1292

(due process requirements for general personal jurisdiction more stringent than for specific

personal jurisdiction).  These requirements cannot be met.  As set forth in the attached Donald

and Rowell Declarations, Safeway and Stop & Shop do not have the level of continuous and

systematic contacts required for due process, and they could not have reasonably foreseen that

they would be sued in Florida for the acts alleged in the SAC.  They have not purposefully

availed themselves of the forum's privileges and protections.

Hauling Safeway and Stop & Shop into this Court in Florida would also offend

traditional notions of fair play and substantial justice.  Safeway is a Delaware corporation with

its principal place of business in Pleasanton, California.  Safeway is in the business of food and

drug retail sales.  Safeway operates retail stores in the District of Columbia and 21 states,

including California, Oregon, Washington, Alaska, Colorado, Arizona, Texas, Illinois and

Virginia.  Safeway has no stores south of Northern Virginia.  Safeway does not have retail stores

in the State of Florida.  Safeway has no office, facilities, or operations in Florida.  It has not

manufactured, distributed, sold, marketed, promoted or advertised any products, including

commercial pet food products, in Florida.  *See* Donald Dec. ¶¶ 2-12.

26

Stop & Shop is a limited liability company organized in the state of Delaware, with its principal place of business in Quincy, Massachusetts. Stop & Shop is in the business of operating retail food stores. Stop & Shop's retail stores are located in Massachusetts, Connecticut, New York, New Jersey, Rhode Island, New Hampshire and Maine. Stop & Shop does not have retail stores in the State of Florida. Stop & Shop has no office, facilities, employees, or operations in Florida. It has not manufactured, distributed, sold, marketed, promoted or advertised any products, including commercial pet food products, in Florida. *See* Rowell Dec. ¶¶ 2-12.

Defending this action in Florida would be an unfair burden upon Safeway and Stop & Shop, which do not manufacture, sell, market or advertise any products, such as the commercial pet food at issue, in Florida. Moreover, Florida has no interest in adjudicating a dispute arising from activities that, as to Safeway and Shop & Stop, have no relation whatsoever to Florida. Accordingly, requiring Safeway and Shop & Stop to defend this lawsuit in Florida would run afoul of the stringent due process requirements.

### D. THERE IS NO JURISDICTION OVER MEIJER, INC.

Plaintiffs fail to allege material facts that support a basis for this Court to assert jurisdiction over Meijer, Inc.

#### 1. Plaintiffs' SAC Fails To Establish Jurisdiction Over Meijer, Inc.

As a threshold matter, Plaintiffs fail to allege that ***any*** named Plaintiff (let alone one of the two Florida resident Plaintiffs) purchased pet food or pet treats manufactured, distributed, marketed, advertised or sold by Meijer, Inc. Plaintiffs are required to make such an allegation to meet their initial pleading burden to establish personal jurisdiction over Meijer, Inc. *Mother Doe I*, 2007 WL 2209258, *2. For this reason alone, Plaintiffs fail adequately to allege personal

jurisdiction over Meijer, Inc. and the claims alleged against Meijer, Inc. should be dismissed.

*See* Section I.A.1 above.

Indeed, the operative complaint includes only one specific allegation as to Meijer, Inc.:

> 59.    Defendant, Meijer Inc., ("Meijer"), is a Michigan corporation with its principal place of business in Michigan.  Meijer conducts business in Florida and/or places products in the stream of commerce that reach Florida consumers. Meijer is in the business of manufacturing, producing, distributing, advertising and/or selling its own brand of pet food products as well as distributing, advertising and/or selling the Defendants' pet food and treat products in Florida which has injured the Plaintiffs.  Meijer markets and sells the Defendant Manufacturers' brands of commercial pet food in its grocery stores in Michigan and other states.  Meijer adopts the marketing representations of the Defendant Manufacturers by placing point of purchase advertising at or near the Defendant Manufacturers' pet food in its retail stores with the intent to induce consumers to purchase its products.

SAC ¶ 59.  The bare (and incorrect) allegations that Meijer, Inc. "conducts business in Florida"

(*id.*), and that it is engaged in "distributing, advertising and/or selling the Defendants' pet food

and treat products in Florida" (*id.*), without allegations establishing ***how*** or ***when*** or ***where***

Meijer, Inc. conducted these activities, are plainly insufficient.

The only other mention of any jurisdictional facts is not specifically directed to Meijer,

Inc.:

> 67.    Pursuant to Florida Statute § 48.193, each of the remaining named Defendants has subjected itself to the jurisdiction of Florida courts by virtue of engaging in and/or carrying on a business or business venture in Florida; having an office or agency in Florida; committing a tortious and/or deceptive act in Florida; and/or by breaching warranties in this state and/or by committing one or more of the acts enumerated in Florida Statute § 48.193.  The Defendants [sic] deceptive, tortious and other actionable conduct described herein caused injury and harm to the Plaintiffs in Florida.

SAC ¶ 67.  This allegation is directed to ***all*** Defendants collectively and, therefore, cannot be

considered adequate to meet Plaintiffs' burden to plead ***sufficient material facts*** to establish the

basis for the exercise of jurisdiction over a non-resident Defendant such as Meijer, Inc.  *See*

*Mother Doe*, 2007 WL 2209258, * 2 (*quoting Future Tech.*, 218 F.3d at 1249).  Because

Plaintiffs fail to meet their threshold burden of alleging adequate facts in support of jurisdiction over Meijer, Inc., the claims against Meijer, Inc. should be dismissed.

> ### 2.    There Is No Basis For Personal Jurisdiction Over Meijer, Inc. Under The Florida Long-Arm Statute.

Additionally, Plaintiffs' claims against Meijer, Inc. should be dismissed because, as demonstrated by the attached affidavit of Robert VerHeulen ("VerHeulen Aff." attached as Exhibit E), Plaintiffs cannot satisfy the requirements of either specific or general jurisdiction under the Florida long-arm statute, Fla. Stat. § 48.193.  Mr. VerHeulen's affidavit sets forth the following facts that were publicly available to Plaintiffs at the time of filing of the SAC:

- Meijer, Inc. does not own or operate any grocery stores in Florida;

- Meijer, Inc. is not qualified to do business in Florida;

- Meijer, Inc. does not have a principal place of business in Florida;

- Meijer, Inc. does not have any offices or employees in Florida;

- Meijer, Inc. does not own or lease tangible personal or real property in Florida;

- Meijer, Inc. does not have a telephone listing, bank account or mailing address in Florida;

- and at all relevant times, Meijer, Inc. did not sell pet food or other products from retail stores located in the State of Florida, nor did it engage in any advertising or marketing within the State of Florida in connection with the sale of pet food or other products from its retail stores outside the State of Florida.

(*See* VerHeulen Aff. ¶¶ 4-7.)

This Court lacks specific jurisdiction over Meijer, Inc. under Fla. Stat. § 48.193(1).  As outlined above, the SAC lacks any allegations concerning the existence of sales directly from Meijer, Inc. to any Plaintiff, let alone a Plaintiff who is a Florida resident.  Though Plaintiffs'

filings in support of their motion to conduct jurisdictional discovery refer to a Florida purchase of pet treats from the Meijer.com website, this purchase—even had it been pled—is insufficient to establish specific jurisdiction.

As Plaintiffs concede in their filings, the single purchase of pet treats from Meijer.com was made by a lawyer for Plaintiffs, not by a named Plaintiff, as would be necessary for specific jurisdiction to attach. *See Williams,* 209 F.R.D. at 410 n.4; *Barry,* 909 F. Supp. at 73; *see also Selman*, 494 F. Supp. at 613 n.6. Thus, the record in this action cannot support a finding that Meijer, Inc. has committed any specific act in Florida that would subject it to personal jurisdiction in this Court. *See* Fla. Stat. § 48.193(1).

Likewise, the record does not support a finding of general jurisdiction over Meijer, Inc. under Fla. Stat. § 48.193(2). The activities of Meijer, Inc. in connection with the operation of its retail stores do not constitute substantial, continuous and systematic contact with Florida. As the VerHeulen affidavit makes clear, there were no sales and there was no advertising in Florida in connection with the operation of Meijer, Inc.'s out-of-state retail stores (*See* VerHeulen Aff. ¶ 7).

Moreover, the operation of the interactive Meijer.com website is insufficient as a matter of law to confer general jurisdiction. As noted above, the interactivity of a website "is not well-adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction[.]" *Revell*, 317 F.3d at 471; *see also Goforit Entertainment LLC*, 513 F. Supp. 2d at 1330. In other words, adopting the Fifth Circuit's analysis in *Revell*, while Meijer.com may be doing a very small percentage of business *with* Florida, it is not doing business *in* Florida. *Revell*, 317 F.3d at 471 ("in other words, while it may be doing business *with* Texas, it is not doing business in Texas.").

30

The Eleventh Circuit has held that for the operation of an interactive website to establish general jurisdiction over the website owner, the owner must derive, at a minimum, more than 5% of its revenues from website sales to Florida purchasers. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (no general jurisdiction where Florida sales comprised 5%). In this case, sales of goods to Florida residents from Meijer.com comprised less than 5% of the total sales of goods from Meijer.com from the website's go-live date of September 18, 2007, through December 13, 2007. (VerHeulen Aff. ¶ 17.) If compared to Meijer, Inc.'s $4 billion in sales of goods in its physical retail stores in states other than Florida during the same period (VerHeulen Aff. ¶ 18), Internet sales of goods to Florida purchasers from Meijer.com would represent an extremely small fraction of a percentage. Either way, sales of goods to Florida purchasers from Meijer.com comprise far less than the minimum 5% required to argue general jurisdiction. *See Horizon Aggressive Growth, L.P.*, 421 F.3d at 1167; *StairMaster Sport/Medical Prods. v. Pacific Fitness Corp.*, 916 F. Supp. 1049, 1052-53 (W.D. Wash. 1994), *aff'd*, 78 F.3d 602 (Fed. Cir. 1996) (no general jurisdiction where forum-state sales comprised 3%); *Baker v. Carnival Corp.*, No. 06-21527-CIV-HUCK, 2006 WL 3360418, *4 (S.D. Fla. Nov. 20, 2006), (no general jurisdiction where Florida sales comprised 1.5%), and, therefore, sales to Florida purchasers from the Meijer.com website do not meet the minimum threshold to establish general jurisdiction.

Finally, the analyses aptly detailed by the other non-resident Defendants apply equally to Meijer, Inc. Plaintiffs' operative complaint also fails to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Meijer, Inc. has no relevant contacts with the State of Florida during the class period and meets none of the requirements of Florida's long-arm statute. *See* Fla. Stat. § 48.193. Accordingly, Meijer, Inc.

requests that the Court dismiss the Plaintiffs' Second Amended Class Action Complaint as to Meijer, Inc. for lack of personal jurisdiction.

### E. THERE IS NO JURISDICTION OVER PET SUPPLIES PLUS/USA, INC.

#### 1. The Plaintiffs Have Failed To Meet Their Burden Of Pleading Sufficient Material Facts Necessary To Establish A Basis Of Personal Jurisdiction Over Pet Supplies Plus/USA, Inc.

The Plaintiffs' latest complaint is fatally deficient in that it fails to assert any factual basis for personal jurisdiction over Pet Supplies Plus/USA, Inc. ("Pet Supplies"), and thus, fails to make a *prima facie* case for personal jurisdiction over this Defendant. Once again, no allegations demonstrate sufficient material facts to establish the bases of personal jurisdiction. In the SAC, Plaintiffs make two (2) references to Pet Supplies—both of which are insufficient to overcome dismissal. Specifically, the only paragraph making relevant jurisdictional allegations to Pet Supplies asserts that this entity is a Michigan Corporation with its principal place of business in Michigan (SAC ¶ 64). The same paragraph also alleges (incorrectly) that Pet Supplies "markets, distributes, sells and advertises Defendants' commercial pet food at issue through its franchises in Florida with the intent to induce customers to purchase these products" (*id*). In full, paragraph 64 of the SAC reads as follows:

> 64. Defendant, Pet Supplies "Plus"/USA, Inc. ("Pet Supplies"), is a Michigan corporation with its principal place of business in Michigan. Through its franchises, Pet Supplies is in the business of advertising, distributing and selling dog and/or cat food and treats in Florida. As part of its franchise business, Pet Supplies Plus conducts business in Florida and/or places products in the stream of commerce that reach Florida consumers. Pet Supplies markets, distributes, sells and advertises the Defendants' commercial pet food at issue through its franchises in Florida with the intent to induce consumers to purchase these products.

SAC at ¶ 64. Plaintiffs further allege that Pet Supplies "sells and advertises commercial pet food and distributes point of purchase advertising to Pet Supplies' franchising in Florida and other states" (SAC ¶ 94).

Initially, as noted above, to establish that the Court has personal jurisdiction over a non-resident such as Pet Supplies, the SAC must allege a sufficient factual basis for the Court's personal jurisdiction. *Mother Doe I*, 2007 WL 2209258 at *2 (quoting *Future Tech.*, 218 F.3d at 1249); *Miami Breakers Soccer Club*, 140 F. Supp. 2d at 1328; *MeterLogic, Inc.*, 126 F. Supp. 2d at 1353; *Am. Investors Life Ins. Co.*, 876 F. Supp. at 1282-83; *Moltz v. Seneca Balance, Inc.*, 606 F. Supp. 612, 615 (S.D. Fla. 1985) (before "personal jurisdiction may attach over a defendant, proper allegations must be pled").

Therefore, the well-settled law in this jurisdiction imposes a burden on Plaintiffs to plead sufficient material facts to establish the basis for the exercise of personal jurisdiction over a non-resident, and the SAC simply does not and cannot allege any factual basis for this Court's personal jurisdiction over Pet Supplies. Specifically, the SAC continues to fail to allege that any specific named Plaintiff purchased pet food or pet treats marketed, distributed, sold or advertised by Pet Supplies in Florida - even assuming that Pet Supplies (a franchisor) directly markets, distributes, sells and advertises pet food in Florida—which it vehemently denies. Given the facts established by the Affidavit of Harvey Solway ("Solway Aff." attached as Exhibit F), it is clear that Pet Supplies is not engaged in the very commercial retail activities alleged by Plaintiffs in the State of Florida or this District. In fact, during the relevant class period, Pet Supplies has *never* itself advertised, marketed, manufactured, and/or offered for retail sale any pet food or pet treat to consumers in Florida (*see* Solway Aff. ¶ 8). Moreover, the SAC fails to allege material facts evidencing any consumer transaction, communication, or contact whatsoever between the

Plaintiffs and Pet Supplies in the State of Florida.  The reason for this is simple as Pet Supplies, a franchisor, does not have any direct interaction whatsoever with its franchisees' retail customers who wish to purchase pet food and pet treats in Florida (*id.* ¶¶ 8, 9).  The essential allegations of the Plaintiffs' SAC stem from pet food advertising, sales and marketing practices.  Therefore, at a minimum, Pet Supplies must sell, market or advertise pet food in Florida—activities which it does not do (Solway Aff. ¶ 8).

### 2. There Is No General Or Specific Jurisdiction Over Pet Supplies Under The Florida Long-Arm Statute.

As discussed above, if the suit does not arise out of or relate to the Defendant's contact with the forum, then the defendant must have engaged in "substantial and not isolated" activity in Florida before a court can subject it to general jurisdiction under Fla. Stat. § 48.193(2). *See, e.g., QSR, Inc. v. Concord Food Festival Inc.,* 766 So. 2d 271 (Fla. 4th DCA 2000); *Helicopteros*, 466 U.S. at 414-15.  "Substantial activity" within the state requires that the defendant maintain "continuous and systematic general business contacts" with the forum state. *Rexam Airspray*, 471 F. Supp. 2d at 1298;  *Am. Overseas Marine Corp.*, 632 So. 2d at 1127; *Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*, 792 F.2d 989, 992 (11th Cir. 1986); *Elmex Corp. v. Atlantic Fed. Sav. and Loan Assoc. of Ft. Lauderdale*, 325 So. 2d 58, 63 (Fla. 4th DCA 1976) (holding that shipping merchandise to Florida by itself does not constitute "doing business" in Florida so as to invoke the application of the long-arm statute).

Moreover, it is insufficient for Plaintiffs to state unsupported, vague and conclusory allegations to establish a basis for jurisdiction over any Defendant.  *Snow*, 450 F.3d. at 1318.  In this case, the SAC sets forth only general and conclusory allegations in an attempt to establish an inference of personal jurisdiction over the nonresident Defendants under Florida's long-arm statute.  Plaintiffs have not and cannot allege that Pet Supplies maintains "continuous and

systematic general business contacts" with Florida.  Plaintiffs have alleged that Pet Supplies "conducts business in the State of Florida and/or places products in the stream of commerce that reach Florida consumers" and "sells and advertises commercial pet food and distributes point of purchase advertising to Pet Supplies' franchising in Florida" (SAC ¶¶ 64, 94).  These allegations fall far short of the specificity necessary to state a cause of action and are among the type of allegations that Courts within this jurisdiction has found to be too conclusory to establish a *prima facie* case for personal jurisdiction.  *Id.* at 1318.  Plaintiffs have once again failed to allege any connection between their claims and any activities of Pet Supplies in Florida and therefore, there is no specific jurisdiction over Pet Supplies under Fla. Stat. §48.193(1).  At any rate, the Affidavit of Harvey Solway makes it clear that Pet Supplies' contacts with Florida, if any, do not rise to the level required to sustain the exercise of general jurisdiction as general jurisdiction is premised on continuous and systematic contacts with the forum state.  Pet Supplies, the franchisor is not a retail seller pet food and pet treats in Florida and, as such, cannot even begin to breach the limited sales activity figures held insufficient for general jurisdiction in the matter of *Rexam Airspray*, 471 F. Supp. 2d at 1299, discussed above.  Accordingly, Pet Supplies is not subject to personal jurisdiction in the State of Florida.

Furthermore, in Plaintiffs' Reply filed in support of jurisdictional discovery, they made an effort to create a connection to the pet food allegedly sold by Defendants, stating that the SAC "clearly alleges that each and every Plaintiff/Class Representative purchased pet food from one or more of the Defendants, i.e., if the Defendant is included in the suit, then one or more of the Plaintiffs bought pet food or treats from that Defendant" (*See* D.E. 268 at 4).  This too is inadequate to establish any link between Plaintiffs' claims and any of Pet Supplies' purported commercial activity in Florida.  Indeed, the two Florida named Plaintiffs who allegedly bought

pet food and pet treats in Florida do not even allege that Pet Supplies specifically marketed, distributed, sold, advertised or had anything to do with the pet food or treats they purchased (*See* SAC ¶¶ 4, 25.)  Clearly, Plaintiffs have failed to allege any connection between their claims and any activities of Pet Supplies (or any other Defendant) in Florida, as required by Fla. Stat. § 48.193(1) for specific jurisdiction.

In fact, courts have declined to find jurisdiction under Fla. Stat. § 48.193(2) in instances where the defendant had greater contacts with the forum than that alleged in this case.  The Eleventh Circuit in *Snow* affirmed that Court's refusal to assert general jurisdiction over a nonresident law firm despite its seven appearances as counsel of record in Florida, its representation of four (4) Florida clients, and negotiations conducted with Florida residents by telephone, email and regular mail.  *Id.* at 1319.  Likewise, in *Musiker v. Projectavision, Inc.*, 960 F. Supp. 292, 297 (S.D. Fla. 1997), that Court found a lack of general jurisdiction even though employees or officers of the nonresident corporation made telephone calls to a Florida resident, faxed and mailed corporate materials to a stock purchaser in Florida, and made a presentation to stockbrokers at a meeting in Florida. Similarly, in *Structural Panels*, 814 F. Supp. at 1065-66, that Court held that a foreign defendant corporation was not engaged in "substantial activity" in Florida so as to justify the exercise of general jurisdiction where: (1) the defendant corporation's sales manager had a meeting with a representative from another company in Florida; (2) the defendant had two sales of unrelated products in Florida which amounted to less than 0.2% of its gross revenue; (3) the defendant purchased products from Florida companies; and (4) the defendant purchased a machine from a Florida corporation to manufacture the alleged infringing product. *See also Milberg Factors, Inc. v. Greenbaum*, 585 So. 2d 1089, 1091-92 (Fla. 3d DCA 1991) (nonresident defendant's acts were insufficient to invoke Florida long-arm jurisdiction

despite the fact that defendant executed a guaranty, filed U.C.C. financing statements, and filed

five (5) lawsuits unrelated to the subject action, all in Florida).

Based upon the foregoing facts and authority, Pet Supplies respectfully submits that it is

not subject to personal jurisdiction within the State of Florida and further, that the Court dismiss

Plaintiff's SAC with prejudice.

### 3.    Exercising Personal Jurisdiction Over Pet Supplies Would Violate The Due Process Clause.

Because the Court can exercise personal jurisdiction over a non-resident defendant only

to the extent permitted by the forum state's long-arm statute, the Plaintiffs' utter failure to

satisfy the requirements of the long-arm statute is fatal and renders any due process analysis

unnecessary. *See Oriental Imps. & Exps.,* 701 F.2d at 890. Nevertheless, even if Plaintiffs had

established this Court's jurisdiction under Florida's long-arm statute, which seems contrary to

the record, exercising personal jurisdiction over Pet Supplies would not comport with due

process.

As discussed above, due process requires Plaintiffs to prove that Pet Supplies, by its

activities in Florida, *personally and purposefully* availed itself of the privilege of conducting

activities in Florida so as to invoke the benefits and protections of the state's laws. *See Asahi*

*Metal*, 480 U.S. at 109. To comply with constitutional due process concerns, Plaintiffs must

establish that "minimum contacts" exist between Pet Supplies and Florida, and that the exercise

of personal jurisdiction does not offend "traditional notions of fair play and substantial justice."

*Sculptchair, Inc.*, 94 F.3d at 631. The key to any constitutional inquiry into personal jurisdiction

is foreseeability. *See Burger King Corp.*, 471 U.S. at 476-77. The Due Process Clause requires

that a defendant have "fair warning" that a particular activity may subject it to the jurisdiction of

the forum. *See id*. at 472.

Determining whether minimum contacts exist requires an examination of the "quality and nature" of the non-resident defendant's activity with the forum state. *See L.O.T.I. Group Productions v. Lund*, 907 F. Supp. 1528, 1533 (S.D. Fla. 1995). For minimum contacts between Pet Supplies and Florida to be sufficient to satisfy the first element of due process, the contacts must: **(1)** relate to the plaintiffs' cause of action; **(2)** involve some purposeful availment of the privilege of conducting activities within the State of Florida, thereby invoking the benefits and protections of Florida's laws; and **(3)** be such that Pet Supplies reasonably anticipated being haled into this Court. *See Sculptchair, Inc.*, 94 F.3d at 631. The minimum contacts requirement under the due process analysis parallels the substantial and continuous activity required under Fla. Stat. §48.193(2) of Florida's long-arm statute. *See Woods v. Nova Companies Belize Ltd.*, 739 So. 2d 617, 620 (Fla. 4th DCA 1999).

In the case at bar, there has been no contact between Pet Supplies and any Florida residents pertinent to this action. There has been no specific showing of any purposeful availment by Pet Supplies of conducting any activities within Florida and thus, there can be no reasonable anticipation by Pet Supplies of being hauled into Court in Florida. Plaintiffs have made no showing which specific "activities" of Pet Supplies was "purposefully directed" at the State of Florida from which the claim of any specific named plaintiff allegedly arises. Because the Plaintiffs have not demonstrated that Pet Supplies' contacts with Florida satisfy the necessary minimum, the exercise of personal jurisdiction would offend precepts of due process.

The second prong of the due process analysis prohibits courts from exercising personal jurisdiction over a foreign resident if such exercise would "offend traditional notions of fair play and substantial justice." *Sculptchair, Inc.*, 94 F.3d at 631. This determination primarily entails considering: (1) the burden on Pet Supplies in defending itself in a Florida court; (2) Florida's

interest in the subject matter of this action; and (3) the Plaintiffs' interests in obtaining the requested relief. *See id.*

It is unfair for Pet Supplies to bear the burden of defending this action in Florida. To force Pet Supplies to defend the action in Florida would offend traditional notions of fair play and substantial justice. Pet Supplies is a Michigan corporation with its principal place of business also the State of Michigan. Pet Supplies is in the business of granting franchises not running the retail operations of its franchises' stores in the State of Florida. Pet Supplies has no office, facilities, or operations in Florida. Pet Supplies itself has not engaged in the very commercial retail activities alleged by the Plaintiffs in the State of Florida, i.e., marketing, distributing, selling or advertising any products, including commercial pet food products to Florida consumers. Solway Aff. ¶¶ 7-10.

In sum, Plaintiffs have not met their pleading burden of alleging facts sufficient to bring their claims within the ambit of Florida's long-arm statute. Having failed to sufficiently plead, it is unnecessary to address the due process element in the personal jurisdiction analysis. The U.S. Supreme Court has established that the "[Due Process Clause] does not contemplate that a state may make binding a judgment in personam against an individual or a corporate defendant with which the state has no contact, ties, or relations." *International Shoe Co.*, 326 U.S. at 319. Based on the foregoing, the assertion of personal jurisdiction by a Florida court over Pet Supplies would offend due process concerns. Accordingly, this Court should decline to assert personal jurisdiction over Pet Supplies and should dismiss the Complaint as to Pet Supplies with prejudice.

**F.      THERE IS NO JURISDICTION OVER NEW ALBERTSONS, INC.**

**1.      Plaintiffs Have Still Not Met Their Initial Pleading Burden.**

Plaintiffs' SAC remains virtually void of allegations pertaining to New Albertsons, Inc.

("New Albertsons").  As a preliminary matter, Plaintiffs fail to allege that any of the Florida

Plaintiffs, or any Plaintiff for that matter, purchased pet food from New Albertsons (SAC ¶¶ 3-

33).  As set forth above in Section I.A.1, this defect is fatal.

**2.      New Albertsons Does Not Own Or Operate An Albertsons
        Store Within 1,500 Miles Of Florida.**

There is only one substantive paragraph discussing New Albertsons (SAC ¶ 55).  While

that paragraph accurately states that New Albertsons is a Delaware corporation with its principal

place of business in Boise, Idaho, it incorrectly asserts that New Albertsons conducts business in

Florida, "places products in the stream of commerce that reach Florida consumers" and "is in the

business of manufacturing, producing, distributing, advertising and/or selling its own brand of

pet food as well as distributing, advertising and/or selling the Defendant Manufacturers' pet food

products in Florida, which has injured the Plaintiffs in Florida."  *Id.*  This is the only mention of

New Albertsons in the entire SAC and it is incorrect.

In June 2006, the company formerly known as Albertson's, Inc, was sold to three

separate entities:  Supervalu, Inc., CVS, Inc., and AB Acquisition LLC.  *See* Affidavit of Daniel

S. Day at ¶ 1 ("Day Aff.", attached as Exhibit G).  Albertsons stores in Southern California,

Idaho, Montana, Nevada, North Dakota, Oregon, Utah, Washington and Wyoming were acquired

by Supervalu, through a wholly-owned subsidiary now called New Albertsons, Inc.  *See*

Affidavit of Julie T. Backe at ¶ 3 ("Backe Aff.", attached as Exhibit H); Day Aff. ¶ 2.

Albertsons LLC, a subsidiary of AB Acquisitions LLC, acquired Albertsons stores located in

other parts of the country, including Florida.  Day Aff. ¶ 3.[14]  Thus, New Albertsons does not

sell pet food, or any food for that matter, in the state of Florida.  Backe Aff. ¶ 4.  New Albertsons

does not have an office or bank account in the state nor does it have a single Florida employee.

*Id.* ¶ 5.

> 3. **New Albertsons Does Not Sell Groceries To Individual Consumers Thousands Of Miles Away From Florida With The Expectation That The Products They Sell Will Reach Florida Consumers.**

Plaintiffs' conclusory statement that New Albertsons places products in the "stream of

commerce" that reach the state of Florida does not alter the equation.  New Albertsons does not

own or operate a single Albertsons store within 1,500 miles of Florida.[15]  While it is certainly

conceivable that some New Albertsons products reach Florida, the mere fact that some

vacationers might decide to stop at a New Albertsons store in Washington state prior to boarding

a flight back to their home Florida is hardly sufficient to support a claim of personal jurisdiction

in Florida (especially when none of the Plaintiffs even allege they purchased pet food, or any

food, from any New Albertsons store).

Stream of commerce cases invariably involve manufacturers one (or more) steps removed

from the end product purchases, and the issue is whether the manufacturer delivered the product

in question into the stream of commerce with the expectation that it would be purchased by

consumers in the forum state.  *See, e.g.*, *World-Wide Volkswagen Corp.*, 444 U.S. at 295-96

(New York automobile wholesaler and retailer not subject to personal jurisdiction in Oklahoma

---

[14]  Albertsons LLC is a named Defendant in this lawsuit and has not moved to dismiss the suit on personal jurisdiction grounds.

[15]  It is approximately 1,500 miles from the edge of Wyoming to the Florida border.

where New York couple suffered accident in Oklahoma); *cf. Ford Motor Co. v. Atwood Vacuum Machine Co.*, 392 So. 2d 1305, 1311 (Fla. 1981) (Illinois corporate that manufactured hinges for use in Ford cars shipped to Florida subject to personal jurisdiction in Florida because manufacturer knew cars would be sold in Florida) .  But New Albertsons, like all the jurisdictional Defendants, is a retailer.  Retailers sells groceries to individual consumers.  Even assuming for the sake of argument that that a stream of commerce theory is applicable to a retailer, such as New Albertsons, it is well established that a defendant must have inserted "its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State" to be subject to personal jurisdiction.  *Id.*  It is simply illogical to think that New Albertsons sells groceries to individual customers thousands of miles away from Florida with the expectation that the individuals will somehow place them in the stream of commerce such that they reach Florida consumers.  Exercising personal jurisdiction under these circumstances would eviscerate constitutional restraints on the exercise of personal jurisdiction over non-resident defendants.

> **4.    The Presence Of A Registered Agent Does Not Subject New Albertsons To Personal Jurisdiction In Florida.**

New Albertsons did qualify to do business in Florida in May 2006, but apart from filing a statutorily required Uniform Business Report with the Florida Department of State, its only presence in Florida is a registered agent.  Backe Aff. ¶ 2.

While New Albertsons has a registered agent in the state (Backe Aff. ¶ 2), the mere presence of a registered agent in Florida does not alter the jurisdictional equation.  The Eleventh Circuit, siding with other circuits that have addressed the issues, has held that the appointment of a registered agent is insufficient to confer general personal jurisdiction over a corporation:  "The casual presence of a corporate agent in the forum is not enough to subject the corporation to a

42

suit where the cause of action is unrelated to the agent's activities."  *See Consol. Dev. Corp.*, 216

F.3d at 1293 (*citing Bankhead Enterprises, Inc. v. Norfolk & Western Railway Co.,* 642 F.2d

802, 805 (5th Cir., Unit B, April 15, 1981); *Wenche Siemer v. Learjet Acquisition Corp.*, 966

F.2d 179, 183 (5th Cir. 1992) ("To assert, as plaintiffs do, that mere service on a corporate agent

automatically confers **general jurisdiction** displays a fundamental misconception of corporate

jurisdictional principles . . . A registered agent, from any conceivable perspective, hardly

amounts to 'the general business presence' of a corporation so as to sustain an assertion of

general jurisdiction") (emphasis in original) (additional citations omitted)).  For the reasons set

forth above, New Albertsons is not subject to personal jurisdiction in the state of Florida.

### G.    THERE IS NO JURISDICTION OVER THE KROGER CO.

#### 1.    Plaintiffs Have Failed To Meet Their Burden To Plead Sufficient Material Facts To Establish The Bases Of Personal Jurisdiction Against The Kroger Co.

In their SAC, Plaintiffs still have failed to plead sufficient material facts to establish the

bases of personal jurisdiction against The Kroger Co. ("Kroger").  Plaintiffs plead the following

facts as to Kroger:

> 56.    Defendant, The Kroger Co. of Ohio, is an Ohio corporation with its principal place of business in Cincinnati, Ohio.  Kroger conducts business in Florida and/or places products in the stream of commerce that reach Florida consumers.  Kroger is in the business of manufacturing, producing, distributing, advertising and/or selling its own brand of pet food and treats as well as distributing, advertising and/or selling the Defendants' pet food products in Florida which has injured the Plaintiffs in Florida. Kroger markets and sells its own brands and the other Defendants' brands of commercial pet food at issue in Florida.  Kroger adopts the marking representations of the Defendant Manufacturers by placing point of purchase advertising at or near the Defendant Manufacturers' pet food in its retail stores with the intent to induce consumers to purchase its products.

SAC ¶ 56.  Tellingly, even after issuing no less than four different versions of their complaint,

Plaintiffs' SAC continues to fail to allege that any specific named Plaintiff purchased pet food

distributed, advertised, or sold by Kroger in Florida.  Indeed, Plaintiffs' SAC continues to fail to allege any contact, transaction, or connection whatsoever between any specific named Plaintiff and Kroger in the state of Florida.

In the case at bar, Plaintiffs have entirely failed to meet their initial burden of pleading "material facts" (*Mother Doe I*, 2007 WL 2209258, *2) or "sufficient facts to make out a *prima facie* case of jurisdiction" (*Posner*, 178 F.3d at 1214) against Kroger.[16]  *See also Rexam Airspray*, 471 F. Supp. 2d at 1298 (requiring "facts which clearly justify the exercise of personal jurisdiction.").  As this Court held in *Miami Breakers Soccer Club*, 140 F. Supp. 2d at 1328, "[i]f a plaintiff alleges personal jurisdiction, then it bears **the initial burden of pleading facts** to support personal jurisdiction over the defendant **in its complaint**" (emphasis added).

Moreover, mere conclusory allegations are insufficient to establish a basis for jurisdiction.  *Scott v. Home Choice, Inc.*, 252 F. Supp. 2d 1129, 1136 (D. Kan. 2003); *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006); *Buckhannon v. Monarch Life Ins. Co.*, No. 94-1071, 1995 WL 43593, *2 (10th Cir. February 2, 1995).  As such, the allegations in the SAC that Kroger generally "conducts business in Florida" or "places products in the stream of commerce that reach Florida consumers" or "sells pet food products in Florida" are among the type of allegations that the Eleventh Circuit has found to be too conclusory to establish a *prima facie* case for personal jurisdiction. In *Snow*, an anti-piracy action brought under the federal

---

[16] Notably, the plaintiffs in *Mother Doe I* pled specific jurisdictional facts against the specific defendants as part of their initial pleading burden to establish personal jurisdiction, although, as this Court noted, "these . . . bare allegations" were "sufficiently overcome by the sworn declarations submitted by Defendants[.]"  *Mother Doe I*, 2007 WL 2209258, *7.  On the other hand, in the case at bar, Plaintiffs have pled no material or sufficient facts "to make out a *prima facie* case of jurisdiction" (*Posner*, 178 F.3d at 1214) so as even to trigger Kroger's burden to challenge any jurisdictional allegations with rebutting evidence.

Stored Communications Act against several defendants, including a law firm, the Eleventh

Circuit rejected the following allegations as too conclusory to establish a *prima facie* case for

personal jurisdiction against the defendant law firm:

> DIRECTV, STUMP, and YARMUTH have committed, and conspired to commit,
> acts and have acted alone and in concert to commit acts within the State of Florida
> . . . relevant to and giving rise to the claims herein.

450 F.3d at 1318 n.3.  In similar fashion, in the instant case Plaintiffs rely upon equally

conclusory allegations to support personal jurisdiction against Kroger, even to the point of failing

to allege that any specific named Plaintiff had any dealings whatsoever with this Defendant in

Florida.

Plaintiffs' failure to plead sufficient material facts to establish a *prima facie* case for

personal jurisdiction against Kroger requires that this Court dismiss the SAC against this

Defendant with prejudice.

> **2.**      **There Is No Basis For Personal Jurisdiction Against Kroger**
> **Under The Florida Long-Arm Statute.**

As noted above, the Florida long-arm statute provides the bases of both specific and

general jurisdiction over a non-resident defendant.  In their SAC, Plaintiffs have again failed to

meet their threshold burden of pleading material facts to establish specific jurisdiction against

Kroger under the Florida long-arm statute.  The SAC lacks any allegation that any specific

Plaintiff purchased pet food from Kroger in Florida or suffered damage connected with pet food

purchased from Kroger in Florida.  It contains nothing more than conclusory allegations that

Kroger sells pet food in Florida "which has injured the Plaintiffs in Florida."  However, the SAC

does not identify a specific named Plaintiff who purchased a product from, or who was injured

by, Kroger. Without this allegation, Plaintiffs cannot establish specific personal jurisdiction.

Plaintiffs' SAC also fails to meet Plaintiffs' threshold burden of pleading sufficient material facts to establish general jurisdiction against Kroger. As noted above, the allegations relating to Kroger's supposed contacts in Florida are of a general and conclusory nature of the type rejected by the Eleventh Circuit in *Snow*, 450 F.3d at 1318. Plaintiffs' allegations that Kroger "conducts business in Florida and/or places products in the stream of commerce that reach Florida consumers" (SAC ¶ 56) fall woefully short of satisfying Plaintiffs' initial burden of pleading "material facts," *Mother Doe I*, 2007 WL 2209258, *2, or "sufficient facts to make out a *prima facie* case of jurisdiction," *Posner*, 178 F.3d at 1214.

Moreover, Plaintiffs' failure to allege specific material facts establishing that Kroger "is engaged in substantial and not isolated activity" in the state of Florida is understandable. As verified in the Affidavit of Martha Cutright Sarra ("Sarra Aff." attached as Exhibit I), an in-house attorney employed by Kroger, the lack of personal jurisdiction over Kroger is manifest. Kroger is an Ohio corporation with its principal place of business in the State of Ohio. (Sarra Aff. ¶ 2). Kroger operates over 2,400 retail supermarkets in several states, but does not operate any retail supermarkets or stores in the state of Florida (Sarra Aff. ¶ 3). While Kroger does not operate any retail supermarkets or stores in the state of Florida, Kroger and its subsidiary corporations have sales operations in the state of Florida which account for less than 1.0% of the total sales of Kroger and its subsidiary corporations. (Sarra Aff. ¶ 4). As this Court held in *Rexam Airspray*, such limited sales activity is insufficient to establish general jurisdiction under the Florida long-arm statute:

> Moreover, Arminak, Inc.'s sales to customers in Florida such as KGI amount to less than 1% of its total sales. By comparison, courts confronting much higher percentages of forum-state sales have nonetheless concluded that general jurisdiction does not exist. *See Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162 (5% Florida sales; no general jurisdiction); *StairMaster Sport/Medical Prods. v. Pacific Fitness Corp.* 916 F. Supp. 1049, 1052-53 (W.D.

Wash. 1994), *affirmed*, 78 F.3d 602 (Fed. Cir. 1996) (3% forum-state sales; no general jurisdiction); *Baker v. Carnival Corp.*, 2006 U.S. Dist. LEXIS 85114, 2006 WL 3360418, at *4 (S.D. Fla. Nov. 20, 2006) (1.5% Florida sales; no general jurisdiction).

*Rexam Airspray*, 471 F. Supp. 2d at 1300.

There is no basis for personal jurisdiction over Kroger under the Florida long-arm statute.

As such, Plaintiffs' SAC should be dismissed with prejudice as to Kroger.

### 3.    The Exercise Of Personal Jurisdiction Over Kroger Would Violate Fundamental Principles Of Due Process.

As noted above, even if the long-arm statute of the forum state is satisfied, the Court must then determine "whether sufficient 'minimum contacts' exist to satisfy the due process requirements of the Fourteenth Amendment, which include 'traditional notions of fair play and substantial justice.'" *Mother Doe I*, 2007 WL 2209258, at *2 (citing *Future Tech.*, 218 F.3d at 1249; *Int'l Shoe Co.*, 326 U.S. at 316).

As to the constitutional limits of specific personal jurisdiction, the Eleventh Circuit has held:

> Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires the defendant have "fair warning" that a particular activity may subject him to the jurisdiction of a foreign sovereign. This fair warning requirement is satisfied if the defendant has "purposefully directed" his activities at the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities.

*Madara*, 916 F.2d at 1516 (citing *Burger King*, 471 U.S. at 472; *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens J., concurring in judgment); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). Furthermore, as noted above, it is the named Plaintiffs whose claims must satisfy these elements in order for the Court to have personal jurisdiction over Defendants.

Plaintiffs make no allegation whatsoever of any specific "activities" which Kroger has "purposefully directed" at the State of Florida from which the claim of any specific named

Plaintiff allegedly arises. Plaintiffs fail to identify a single named Plaintiff who suffered damage or injury as a result of Kroger's conduct in Florida. Without an allegation that a named Plaintiff suffered injury as a result of Kroger's conduct in Florida, none of the named Plaintiffs can satisfy the elements of specific personal jurisdiction. As such, the exercise of specific personal jurisdiction over Kroger is constitutionally impermissible.

The SAC also fails the constitutional test for general jurisdiction. As this Court has recently held, the rigorous standard for general jurisdiction under the Florida long-arm statute exceeds the constitutional "minimum contacts" standard mandated by due process considerations. See, *Rexam Airspray*, 471 F. Supp. 2d at 1298. However, even under the less rigorous due process standard for "minimum contacts," the courts have recognized that "proving general jurisdiction over a nonresident defendant is difficult, as evidenced by the greater number of cases rejecting such jurisdiction rather than finding it." *Williams*, 209 F.R.D. at 410.

Kroger's extremely limited general activities in the State of Florida fall far short of the benchmarks recognized by this Court as affording a basis for general personal jurisdiction under the long-arm statute. The limited nature of Kroger's contacts with the state of Florida fall far below the threshold established in Florida's long-arm statute as construed by this Court in *Rexam Airspray*, 471 F. Supp. 2d at 1298.

For the foregoing reasons, Defendant Kroger respectfully urges the Court to dismiss Plaintiffs' SAC as to it with prejudice.

## II.     THE SAC SHOULD BE DISMISSED IN ITS ENTIRETY AS TO *ALL* DEFENDANTS BECAUSE PLAINTIFFS DO NOT ALLEGE LEGALLY COGNIZABLE INJURY TO THEMSELVES AS INDIVIDUALS SUFFICIENT TO CONFER STANDING OR TO SATISFY FED. R. CIV. P. 8(a) OR 12(b)(6).

As noted above, Plaintiffs nowhere allege that *any* named Plaintiffs suffered legally cognizable injury at the hands of *any* Defendant. Plaintiffs' injury allegations consist entirely of

vague and ambiguous references to "consumers" and "Plaintiffs" lumped together.  Defendants

called this fatal deficiency to Plaintiffs' attention in their initial Motion to Dismiss, but this

Second Amended Complaint remains devoid of the requisite specific allegations of injury to a

named Plaintiff from the purchase and consumption of a named Defendant's product.  The *entire*

set of "injury" allegations is listed below:[17]

- **SAC ¶ 2** references "the illnesses and deaths of the Plaintiffs' cats and dogs from ingesting the Defendants' commercial pet food and treats[;]"

- **SAC ¶ 74** complains that "the Defendants' [activities] . . . resulted in damage to the Plaintiffs because they would not have otherwise purchased these products had they known the truth and/or their cats and/or dogs became ill and/or died from ingesting the pet food[;]"

- **SAC ¶ 109** lists injuries allegedly suffered by "consumers" as a result of pet food products later recalled;

- **SAC ¶ 114** alleges generally that "[t]he Plaintiffs have also had to pay thousands of dollars in veterinarian bills and/or other expenses as a result of their dogs' and cats' illnesses from ingesting this food[;]"

- **SAC ¶ 165** asserts that "[t]he pet food product" of all Defendants taken as a whole "caused injury, illness and/or death to the Plaintiffs [sic] companion pets due to

---

[17] This list does not include the Complaint's numerous bare and conclusory references to "injury" or "damages" in the abstract bereft of any description of any kind.  *See, e.g.*, SAC ¶ 34 ("Mars markets and advertises pet food which injured the Plaintiffs in Florida and nationwide.").  Such abstract references occur also at *id*. ¶¶ 35-44, 47, 51, 54-63, 67, 132, 142-43, 155, 162, 166, 172-73, 181-82, and 190.  Brief cameo appearances of words such as "injury" do not affect the above analysis.  ***None*** of these paragraphs connect ***any*** specific named Plaintiff with ***any*** injury of ***any*** description.

harmful substances, including, but not limited to, additives, chemicals, toxins and

contaminants[;]" and

- **SAC ¶ 168** makes cursory and conclusory reference to "needless deaths of the

Plaintiffs' and consumers' cats and dogs[.]"

That is the full set of scattered "injury" allegations in Plaintiffs' 200-paragraph SAC.  Not one of

these broad allegations could possibly confer standing on any named Plaintiffs, **_not one_** of whom

is tied to any of these vague allegations.  These allegations are also untethered to any Defendant.

Without these links, the SAC does not provide the short and plain statement of Plaintiffs'

entitlement to relief under Rule 8(a) or supply a plausible claim for relief for purposes of Rule

12(b)(6).

### A.    THE SAC ALLEGES INSUFFICIENT FACTS TO SHOW NAMED PLAINTIFFS' STANDING AS INDIVIDUALS.

Standing for plaintiffs in a class action "directly implicates federal subject matter

jurisdiction" and is a threshold issue for the Court.  *Focus on the Family v. Pinellas Suncoast

Transit Auth.*, 344 F.3d 1263, 1272 (11th Cir. 2003) (citing *Vermont Agency of Natural Res. v.

U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000)); *Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir.

2006).  Since named Plaintiffs fail to allege that any Defendant's product caused them injury as

individuals, they lack standing to sue under Article III of the United States Constitution.  Article

III standing has three elements:  (1) "the plaintiff must have suffered an injury in fact[;]" (2)

"there must be a causal connection between the injury and the conduct complained of[;]" and (3)

"it must be likely . . . that the injury will be redressed by a favorable decision."  *Lujan v.

Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted).  The

injury must be (a) "concrete and particularized," and (b) "actual or imminent, not conjectural or

hypothetical."  *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1251 (11th Cir. 2003).  The

injury requirement "cannot be met by an allegation that the injury may occur at some indefinite future time." *Lofton v. Butterworth*, 93 F. Supp. 2d 1343, 1346 (S.D. Fla. 2000).

In a putative class action lawsuit, such as this one, plaintiffs must allege sufficient facts to show that ***each*** named plaintiff has standing. *See, e.g.*, *Wooden v. Board of Regents of University System of Georgia*, 247 F.3d 1262, 1284 n. 20 (11th Cir. 2001) ("[T]he fact that [a] suit was brought as a class action does not alter [each named plaintiff's] obligation to show that he ***individually*** satisfies the constitutional requirements of standing") (emphasis added); *Bowen v. First Family Financial Services, Inc.*, 233 F.3d 1331, 1339 n.6 (11th Cir. 2000) ("A plaintiff cannot include class action allegations in a complaint and expect to be relieved of ***personally*** meeting the requirements of constitutional standing, even if the persons described in the class definition would have standing themselves to sue.") (emphasis added, citation and internal quotation marks omitted).

In this case, named Plaintiffs do not and cannot sufficiently allege either injury-in-fact or a causal connection between an injury to any one of them and any Defendant's conduct. Instead, Plaintiffs' SAC expresses nothing more than Plaintiffs' general dissatisfaction with the regulated practices of the pet food industry and a broad-based enumeration of injuries allegedly suffered by consumers in general or, utterly implausibly, all thirty named Plaintiffs as a group. Despite lengthy diatribes about the industry's alleged advertising and manufacturing practices (*e.g.*, SAC ¶¶ 69-115), named Plaintiffs do not individually and specifically allege that any particular Plaintiff's pet has fallen ill or suffered any adverse health effects as a result of any complained-of activity of any Defendant or that any identified pet food any Plaintiff purchased harmed that Plaintiff or his or her pets in ***any*** way. The SAC's vague and generalized allegations of injury to "Plaintiffs" or "consumers" do not suffice.

Tellingly, as noted earlier, Plaintiffs have intentionally defined their putative class without *any* reference to injury whatsoever. In their overly optimistic ambition to encompass *all* purchasers of pet food in the last four years within the scope of the SAC, they conspicuously avoid such allegations. Consequently, despite the fact that Plaintiffs have amended their complaint yet a second time, it remains just as defective in this regard as before.

Plaintiffs' allegations that they purchased pet food would not satisfy the actual injury requirement of standing even if Plaintiffs had specifically identified which Plaintiffs had purchased what pet food from which manufacturer and seller. Federal courts have not hesitated to dismiss actions where plaintiffs' only alleged injury is the purchase of a product. In *Rivera v. Wyeth-Ayerst Labs.,* 283 F.3d 315 (5th Cir. 2002), the plaintiffs purchased a drug that later was viewed as responsible for the liver failure of a few individual long-term users. *Id*. at 317. Plaintiffs filed their complaint on behalf of all patients who took the drug *without* suffering any physical or emotional injury. *Id*. The Fifth Circuit squarely rejected the plaintiffs' contention that their "loss of cash [wa]s an 'economic injury'" and ruled that the action did not "present a justiciable case or controversy under Article III." *Id*. at 319, 321. The court held that the plaintiffs had not alleged the requisite "injury-in-fact" because, although they claimed "economic injury" from purchasing the drug, the plaintiffs did not allege that the drug caused them physical or emotional injury, was ineffective, or caused any future health consequences for them. *Id*. at 320-21.

This Court has applied the reasoning of *Rivera* in dismissing a "misleading advertising" case for lack of standing. In *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329 (S.D. Fla. 2007), prescription drug users brought claims against a drug manufacturer, alleging no injury other than so-called "price inflation" based on misleading advertising. *Id*. at 1334-36. Faced with nothing

more than the plaintiffs' alleged purchase of the drug and resultant claims of economic injury, the Court could not "come up with any theory upon which [the plaintiffs were] actually injured or aggrieved by the allegedly misleading advertisement." *Id*. at 1336.  Consequently, they had no standing. *Id*.

In *Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24 (D.D.C. 2007), the court reached the same conclusion as the court in *Rivera* and held that the plaintiff had no standing to assert claims for breach of implied warranty and violation of a consumer protection statute. *Id*. at 28-29.  The plaintiff claimed that defendant Kentucky Fried Chicken ("KFC") engaged in false advertising by referring to its chicken as the "best food" and by not disclosing the existence of trans fats in its chicken. *Id*. at 26.  Plaintiff sought to represent all persons who purchased any food from KFC that contained this undisclosed ingredient.  Noting an "absence of any allegation of injury" in the complaint, however, the court held that the plaintiff had "no standing" to bring suit. *Id*. at 28, 29.  As here, the plaintiff's vague allegations in *Hoyte* of "economic injury" due to the purchase of food with an undisclosed ingredient did not suffice to confer standing. *Id*.

Like the plaintiffs in the "no injury" cases described above, named Plaintiffs here allege various difficulties that some pets ***could*** conceivably encounter after ingesting certain foods, but they fail completely to allege as individuals any particular facts showing that each named Plaintiff individually was injured as a result of his or her pet's consumption of any particular Defendant's product.  Although they allege generally that each of them purchased "one or more brands of the Defendants' commercial pet food and/or treats for daily consumption by [her/his] cat(s)/dog(s)" (SAC ¶¶ 3-33), such broad assertions, devoid as they are of any factual allegations demonstrating that any individual named Plaintiff was actually injured as a result of any

Defendant's pet food product, are as defective as the allegations in *Rivera* and *Hoyte*.[18]

Additionally, as in *Prohias*, Plaintiffs cannot simply allege misleading advertisements and

thereby obviate their obligation to allege injury resulting from those advertisements.

As they lack allegations of actual injury, all of Plaintiffs' claims should be dismissed for

an absence of standing.  *See, e.g.*, *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 176-78

(D.D.C. 2003) (dismissing false advertising claims and holding that plaintiffs had no standing;

concluding that plaintiffs lacked "particularized injury," even though they claimed economic

damages from failure to receive advertised benefits of purchased drugs; agreeing with defendants

that, without adverse health effects from drugs, plaintiffs must have received what they paid for);

*Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1017 (7th Cir. 2002) ("No

injury, no tort, is an ingredient of every state's law[.]"); *Briehl v. GMC*, 172 F.3d 623, 627 (8th

Cir. 1999) ("Courts have been particularly vigilant in requiring allegations of injury or damages

in products liability cases.").

Without standing in their own right, named Plaintiffs cannot assert claims on behalf of a

purported class.[19]  *See, e.g.*, *Griffin*, 823 F.2d at 1482 ("A named plaintiff in a class action who

---

[18]  Moreover, certain of Defendants' pet foods named in the SAC are available exclusively
through veterinarians and are only for use under veterinarian authorization and supervision –
for example, Iams' Eukanuba Veterinary Diet and Hill's Prescription Diet pet foods
("veterinary foods") (SAC ¶¶ 49, 84-86).  Yet the SAC fails to allege that any named
Plaintiff ever purchased, used, or received veterinary authorization for these products.
Without having purchased or used the veterinary foods, named Plaintiffs could not have been
injured by them.  Thus, Plaintiffs could not have standing to assert claims concerning these
foods.  *Church v. City of Huntsville*, 30 F.3d 1332, 1340 (11th Cir. 1994) (named plaintiffs
had no standing to challenge an ordinance regulating homeless shelters, when they did not
allege that they were staying at one of the shelters subject to ordinance but instead alleged
generally that they had "no home or shelter").

cannot establish the requisite case or controversy between himself and the defendants simply cannot seek relief for anyone – not for himself, and not for any other member of the class."); *Lynch v. Bexley*, 744 F.2d 1452, 1456 (11th Cir. 1984) ("If the named plaintiff seeking to represent a class fails to establish the requisite case or controversy, he may not seek relief on his behalf or on that of the class.").

Because Plaintiffs do not meet the threshold Article III standing requirements, the entire SAC should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See, e.g.*, *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 807 n.8, 811 (11th Cir. 1993) (affirming dismissal due to plaintiffs' "fail[ure] to establish an injury to themselves sufficient to confer standing" and noting that such failure left the court without subject matter jurisdiction and required dismissal pursuant to Rule 12(b)(1)); *Nat'l Wrestling Coaches Assoc. v. Dept. of Educ.*, 366 F.3d 930, 936 (D.C. Cir. 2004) (affirming dismissal of complaint because plaintiffs had "failed to allege sufficient facts demonstrating their standing"). Plaintiffs would remain free to take advantage of the forums actually designed to address generalized grievances of this nature, including federal and state legislatures and administrative agencies. Federal courts simply do not play this role. *See*, *e.g., Williams*, 297 F. Supp. 2d at 178 (dismissing for lack of standing and explaining that "[t]he invasion of a purely legal right

---

[Footnote continued from previous page]

19  This defect is one of many that would preclude class treatment here.  For example, it would be impossible to identify members of the proposed class, because the proposed class definition is impermissibly vague and would require this Court to examine the individual circumstances and mental state of each individual putative class member.  Fundamentally, nothing ties together the wildly disparate claims asserted in the SAC into common issues that make this case suitable for class certification.  Defendants reserve their rights to brief the inappropriateness of class treatment should the SAC survive dismissal as a whole.

without harm to the consumer – in this case, to freedom from alleged false and misleading advertising – can be addressed through the administrative process").

  **B. BECAUSE IT LACKS THE NECESSARY ALLEGATIONS OF PARTICULARIZED INJURY, THE SAC FAILS TO MEET THE REQUIREMENTS OF RULE 8 AND RULE 12(b)(6), AS DESCRIBED IN *TWOMBLY*.**

  The missing allegations of particularized injury to individual named Plaintiffs that defeat standing here also doom the SAC to dismissal under both Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.

  In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the Supreme Court recently heightened the pleading requirements under both Rules 8 and 12(b)(6). The Court underscored that Rule 8(a)(2) imposes a threshold requirement that the necessary "'plain statement' possess enough heft to 'show that the pleader is entitled to relief.'" *Id*. at 1966. Consistent with this requirement, the Court further held that, to survive dismissal under Rule 12(b)(6), a complaint's factual allegations must rise above the "speculative level" and "state a claim to relief that is ***plausible on its face***." *Twombly*, 127 S. Ct. at 1965, 1974 (emphasis added).

  This Court has been quick to recognize the unmistakable consequence of the Supreme Court's directive. In *Moore v. Miami-Dade County*, 502 F. Supp. 2d 1224, 1228 (S.D. Fla. 2007), this Court acknowledged that a complaint must go beyond proffering "mere labels and conclusions" and that, in the wake of *Twombly*, plaintiffs can survive a motion to dismiss only if they are able to "nudge [their] claims across the line from conceivable to plausible." *Id*. This Court should just as quickly recognize that Plaintiffs' claims here do not reach even the "conceivable" level, much less the "plausible," and that their SAC should consequently be dismissed as a whole.

As noted earlier, nowhere in the SAC do Plaintiffs claim that any specific named Plaintiff purchased pet food from a specific Defendant. Although Rule 8 requires a "short and plain statement" of Plaintiffs' claims, it "still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 127 S. Ct. at 1965 n.3. At a minimum, "Rule 8(a) . . . requires that a complaint against multiple defendants indicate clearly the defendants against whom relief is sought and the basis upon which the relief is sought against the particular defendants." *Yucyco, Ltd. v. Rep. of Slovn.*, 984 F. Supp. 209, 219-20 (S.D.N.Y. 1997) (dismissing complaint) (citations and internal quotation marks omitted); *see also Mathews v. Kilroe*, 170 F. Supp. 416, 417 (S.D.N.Y. 1959) ("To do less than [matching specific allegations to specific defendants] is to cause an injustice to persons who are named as defendants in an action."). Furthermore, in cases that may be costly or time-consuming to litigate, "a district court must retain the power to insist upon some specificity in pleading ***before*** allowing a potentially massive factual controversy to proceed." *Twombly*, 127 S. Ct. at 1967 (emphasis added) (quotations omitted); *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346-47 (2004).

Even under pre-*Twombly* law, courts recognized that when plaintiffs substitute mere conclusory allegations for the specific allegations against specific defendants required by Rule 8(a)(2), dismissal is required under Rule 12(b)(6) as well. *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1263 (11th Cir. 2004) ("To survive a motion to dismiss [brought under Rule 12(b)(6)], plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims."); *U.S. ex rel Feingold v. Palmetto Gov't Benefits Adm'rs*, 477 F. Supp. 2d 1187, 1193 (S.D. Fla. 2007)

(dismissing amended complaint with prejudice [pursuant to Rule 12(b)(6)] where plaintiff

"tr[ied] to avoid dismissal by the inclusion of [a] conclusory statement").[20]

Although paragraphs 3-33 of the SAC ostensibly set forth allegations concerning named

Plaintiffs themselves, these paragraphs contain no specific allegations about Plaintiffs' purchase

of any particular pet food.  Instead, the SAC contains variations on the vague, nonspecific

---

[20] Among the undersigned Defendants are corporations that do not even manufacture or sell pet food – The Procter and Gamble Co. ("P&G") and Colgate-Palmolive Co. ("Colgate").  P&G and Colgate are simply parent companies that own shares in, respectively, The Iams Co. ("Iams") and Hill's Pet Nutrition, Inc. ("Hill's").  As reflected in Ex. 18 to the SAC, the Science Diet and Prescription Diet pet foods—the only "Colgate" pet food brands specifically referred to in the SAC (*see* SAC ¶¶ 84-86)—are produced by Hill's, **not** Colgate.  Similarly, as reflected in Ex. 16 to the SAC, it is Iams, **not** P&G, that produces Iams pet food.  The SAC recognizes that Iams and Hill's are corporations, not divisions of ultimate parents, and does not even allege that the corporate forms should be disregarded (¶¶ 37, 39).

Furthermore, Plaintiffs are unable to identify any pet food brands manufactured or sold or any alleged misrepresentations made by Nestlé U.S.A.  Instead of making specific substantive allegations as to Nestlé U.S.A., Plaintiffs attempt to obfuscate matters by improperly lumping Nestlé U.S.A. together with Nestlé Purina PetCare Company ("Nestlé Purina")—a separately incorporated legal entity.  (*See* SAC ¶ 88 n.3 (defining the two companies "collectively as 'Nestlé'"); *see also* ¶¶ 41-42).  Plaintiffs purport to do so on a corporate veil-piercing theory, making the conclusory allegation that "there is a lack of corporate distinction between these two entities and both companies are involved in the manufacture [sic], marketing, distribution and sale of pet food and treats." (*Id.*)  That allegation is both legally deficient and undermined by the exhibits to the SAC.  As demonstrated by Exhibits 8, 11 and 23 to the SAC, the Beneful and Mighty Dog pet food brands—the only "Nestlé" pet food brand specifically referenced in the SAC (*see* SAC ¶¶ 88, 109)—are Nestlé Purina brands.  Moreover, under Florida law, to state a claim against Nestlé U.S.A. on the basis of alleged conduct by Nestlé Purina, Plaintiffs would have to allege facts sufficient to show that: (1) Nestlé U.S.A. is a mere instrumentality of Nestlé Purina; (2) Nestlé U.S.A.'s corporate form was used fraudulently or for improper purpose; and (3) the fraudulent or improper use of corporate form caused Plaintiffs' injuries.  *See Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1117 (Fla. 1984).  Plaintiffs do not (and cannot) meet any of these three requirements and thus fail to state a claim against Nestlé U.S.A.  *See Al-Babtain v. Banoub*, No. 8:06-cv-1973-T-30TGW, 2007 WL 2774210, **2-3 (M.D. Fla. 2007) (dismissing count against corporation based on piercing the corporate veil, where pleadings did not allege the corporation was "organized or employed to 'accomplish some fraud or illegal purpose,' 'evade some statute,' or 'accomplish some fraud or illegal purpose'").

statement that "[Plaintiff] regularly purchased **one or more brands of the Defendants' commercial pet food and/or treats** for daily consumption by [her/his] cat(s)/dog(s) . . . during the Class Period that was/were manufactured, marketed, produced, distributed, advertised and/or sold by the Defendants" (SAC ¶¶ 3-33) (emphasis added).  These boilerplate allegations are the only assertions **anywhere** in the SAC that even purport to be Plaintiff-specific.  These overly generalized allegations are so broad and uninformative that they do not even assert that any named Plaintiff purchased any of the brands of pet food at issue in this case.  In the absence of specific allegations against particular Defendants, Plaintiffs' *en masse* criticisms of Defendants' products simply do not constitute legally cognizable claims sufficient to survive dismissal under Rule 12(b)(6).  *See, e.g.*, *Napier v. Osmose, Inc.*, 399 F. Supp. 2d 811, 814 (W.D. Mich. 2005) (dismissing complaint on grounds that "threshold requirement of any products liability action is identification of the injury-causing product and its manufacturer") (internal quotations omitted); *Prohias*, 485 F. Supp. 2d at 1333-34 (dismissing fraud, unjust enrichment, and negligent misrepresentation claims where plaintiff health plan failed to allege that it purchased defendant's product).

III.    **EACH COUNT ALLEGED IN THE SAC WARRANTS DISMISSAL ON INDEPENDENT GROUNDS.**

   A.    **ALL COUNTS ARE FATALLY DEFECTIVE BECAUSE THE SAC FAILS TO ALLEGE RELIANCE OR CAUSATION.**

   Not one of Plaintiffs' nine causes of action is viable without allegations of reliance and/or causation.[21]  Counts I and II each assert some type of common law fraud or misrepresentation

---

[21] The relevant laws of Michigan and Florida, home to three named Plaintiffs, require the elements of reliance and causation and are detailed, in **APPENDIX A** to this Motion, by way of example.  Defendants employ appendices in order to set forth necessary citations to the

[Footnote continued on next page]

claim, all of which require allegations of reliance on a Defendant's alleged misrepresentations in order to determine a causal link.  Similarly, Counts III through V and Counts VII through IX each assert claims that require allegations of harm to Plaintiffs' pets caused by specified Defendants' products.[22]

Plaintiffs fail to plead reliance adequately.  *Simon v. Celebration Co.*, 883 So. 2d 826, 832 (Fla. 5th DCA 2004) (fraud-based claims such as negligent misrepresentation demand allegations that plaintiff relied on defendant's false statement); *see also* **APPENDIX A**, "Elements of Reliance and Causation under Florida and Michigan Law."  Nowhere does the SAC allege that any particular Plaintiff was aware of any particular allegedly misleading statement, or that any particular Plaintiff purchased any particular Defendant's product in reliance on any such representation.  As noted above, Plaintiffs merely allege that each of them "purchased ***one or more brands of the Defendants' commercial pet food and/or treats*** for daily consumption by [her/his] cat(s)/dog(s) . . . ." (*See, e.g.*, SAC ¶ 3 (emphasis added).)  Such broad allegations shed no light on any particular Plaintiff's reasons for making the alleged purchase and come nowhere close to the necessary showing of reliance.

Plaintiffs fare no better in pleading causation.  Having alleged no actual injury to either themselves or their pets (*see* Section II.A) and having alleged no specific connection between particular Plaintiffs and particular Defendants (*see* Section II.B), Plaintiffs necessarily fail to allege a sufficient causal nexus between any specific actions attributed to any Defendants and

---

[Footnote continued from previous page]
applicable laws of multiple jurisdictions without unduly lengthening the substantive discussion in this brief.

[22]  As discussed further in Section III.F below, Count VI does not constitute an independent substantive claim.

any alleged injury to Plaintiffs' pets. *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 263 (S.D. Cal. 1988) (denying class certification to plaintiff pet owners for injuries resulting from alleged defect in defendant manufacturer's medicinal pet product and explaining that the "most important" element of plaintiffs' negligence claim was proof that defendant's actions "proximately caused the plaintiffs' varying injuries" (citation omitted)); *see also* **APP. A.**

The absence of these requisite elements is no mere technical deficiency. As the Supreme Court emphasized in *Twombly*, 127 S. Ct. at 1965, a plaintiff's obligation under Rule 8 "to provide the grounds of his entitlement to relief requires more than labels and conclusions, and ***a formulaic recitation of the elements of a cause of action will not do***" (emphasis added, internal quotation marks omitted). When Plaintiffs allege without specific reference to any named Plaintiff or any particular Defendant that "[t]he Plaintiffs/Class Representatives and the Class . . . justifiably relied on [Defendants'] representations and omissions" (SAC ¶ 131), they attempt to evade their obligation to plead reliance with just such a formulaic recitation. Equally empty are Plaintiffs' attempts to plead causation with the bare and conclusory allegations that "[a]s a direct and proximate result of Defendants' [activities], the Plaintiffs/Class Representatives and the Class have suffered damages" (*see, e.g.*, SAC ¶ 132). *See, e.g.*, *Haun v. Don Mealy Imports, Inc.*, 285 F. Supp. 2d 1297, 1307, 1309-10 (M.D. Fla. 2003) (granting Rule 12(b)(6) motion and explaining that conclusory allegation of "direct and proximate result" did not "state the elements of harm and causation, essential to his claim").

Failure to allege facts supporting the necessary reliance and causation elements requires dismissal. *See, e.g.*, *Williams*, 297 F. Supp. 2d at 177 (plaintiffs who alleged that defendants had engaged in false advertising but did not plead that they "were in any way deceived—or even saw—any of that advertising" failed to state claim). As noted above, such failure cannot be

remedied through conclusory allegations that Plaintiffs collectively "justifiably relied on [Defendants'] representations and omissions" (SAC ¶ 131). Further, aside from the question of whether any Defendant even engaged in any wrongdoing, lack of causation would defeat a claim even had the Defendant engaged in "obviously false advertising" (which these Defendants did not). *See Himes v. Brown & Co.*, 518 So. 2d 937, 938 & n.1 (Fla. 3d DCA 1987).

### B.  PLAINTIFFS' FRAUD-BASED CLAIMS (COUNTS I-III) ARE NOT ALLEGED WITH SUFFICIENT PARTICULARITY.

Because, as discussed above, Plaintiffs' SAC fails to meet even the standard pleading requirements, it necessarily fails to meet the heightened pleading standards of Rule 9(b) for the three fraud-based causes of action: fraudulent misrepresentation and concealment (Count I); negligent misrepresentation (Count II); and violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count III).[23]

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).[24] These requirements are designed "to protect defendants from frivolous suits, or 'spurious charges of . . . fraudulent behavior.'" *Box Office*, 2007 WL 1362898, *7 n.3 (quoting *U.S. v. Lab Corp. Am. Inc.*, 290 F.3d 1301, 1313 n.24 (11th Cir. 2002)). The Eleventh Circuit has explained that Rule 9(b) requires that complaints asserting fraud-based causes of action set forth "(1) the precise

---

[23] The law is clear that each of these causes of action must satisfy the heightened pleading requirements of Rule 9(b). *See, e.g.*, *Box Office Entertainment, LLC v. Brian D. Gordon, CPA, P.A.*, No. 05-21010, 2007 WL 1362898, *7 (S.D. Fla. May 9, 2007) (granting Rule 9(b) motion to dismiss claims for fraud and negligent misrepresentation); *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002) (granting Rule 9(b) motion to dismiss FDUTPA claim).

[24] A number of other state consumer protection statutes impose this heightened pleading standard for fraud claims as well. *See* **APP. B**, "State Consumer Protection Statutes."

statements, documents, or misrepresentations made; (2) the time, place, and person responsible

for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and

(4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of

*Fla., Inc.*, 116 F.3d 1364, 1380 (11th Cir. 1997).[25]  In short, Plaintiffs must "allege the 'who,

what, where, when and how' to survive a motion to dismiss." *Anderson v. Smithfield Foods,*

*Inc.*, 207 F. Supp. 2d 1358, 1362 (M.D. Fla. 2002).  Thus, it is axiomatic that "[p]laintiffs

[cannot] simply lump[] together all [defendants] in their allegations of fraud[;]" rather, a

complaint must reasonably notify each defendant of the specific nature of his or her alleged

participation in the fraud.  *Brooks*, 116 F.3d at 1381.

    The SAC here is deficient under Rule 9(b) standards on several fronts.  <u>First</u>, it fails to

identify (a) what particular statements were allegedly fraudulent; (b) which Defendants allegedly

made these statements; (c) to which Plaintiffs the statements were allegedly made; and (d) when

and in what manner the statements were allegedly made.  <u>Second</u>, it fails to allege that any

Plaintiffs saw, heard, or read any particular statements made by any Defendant, or that any such

statement played any role in any Plaintiff's decisions to purchase any Defendant's product.

<u>Third</u>, it contains none of the particularized allegations necessary to establish whether and how

---

[25]  These heightened pleading requirements are consistent with the basic elements Plaintiffs
must allege for each of the three fraud-based claims.  *See, e.g.*, *Box Office*, 2007 WL
1362898, *7 (elements of a claim for fraudulent misrepresentation are (a) a false statement
concerning a material fact, (b) the representor's knowledge that the representation is false, (c)
an intention that the representation induce another to act on it, and (d) consequent injury by
the party acting in reliance on the representation); *Atlantic Nat'l Bank of Fla. v. Vest*, 480 So.
2d 1328, 1331-32 (Fla. 2d DCA 1985) (negligent misrepresentation demands the same,
except that the representor must know of the misrepresentation, must make the representation
without knowledge as to its truth or falsity, or must make the representation under
circumstances in which he ought to have known of its falsity); *Marino v. Home Depot U.S.A.,*
*Inc.*, No. 06-80343, 2007 WL 201260, *7 (S.D. Fla. Jan. 24, 2007) (claim under FDUTPA
requires proof of (a) a deceptive act or unfair practice, (b) causation, and (c) actual damages).

Plaintiffs were harmed by the alleged fraud.  Instead, the SAC contains only vague and conclusory allegations that sweep in virtually the entire pet food industry.  This is just the sort of pleading Rule 9(b) is designed to protect defendants against.  *See Lab. Corp.*, 290 F.3d at 1313 ("If Rule 9(b) is to carry any water, it must mean that an essential allegation and circumstance of fraudulent conduct cannot be alleged in such conclusory fashion").  Accordingly, Counts I-III should be dismissed.

> **1.    The SAC Fails to Identify "Who" Did "What" to "Whom" and "When."**

Nowhere in the 157 pages of the SAC and its exhibits is the required factual description of a single, specific allegedly fraudulent act that meets the requirements of Rule 9(b).  Plaintiffs make the deliberate choice ***not*** to identify any specific statement made by any specific Defendant to any specific Plaintiff, but instead to lump together all Defendants and all Plaintiffs.  As noted above in the discussion of standing and Rule 8 and 12 failings, the SAC depends almost entirely on improperly general descriptions of industry practices and suppositions about how such practices might affect consumers and Plaintiffs generally.  (*See, e.g.*, SAC ¶ 75 ("the Defendants [sic] marketing is intended to entice the Plaintiffs and ***consumers*** to purchase pet food that they believe is human-grade quality because the Defendants intentionally depict it as such in their marketing to boost sales because marketing studies have shown that the Plaintiffs and ***consumers*** want the best for their pets, including human-grade pet food products") (emphasis added).[26]  In

---

[26] *See also, e.g.*, SAC ¶ 72 ("The Defendant Manufacturers have claimed throughout the class period that they promote scientific research as to their pet food products leading the Plaintiffs and ***consumers*** to believe that their pet food and treat ingredients and claimed benefits are adequately supported by scientific data."); *id.* ¶ 74 ("The Defendants [sic] deceptive marketing leads ***consumers*** to believe that the ingredients used in their brands of pet food are 'human quality,' but they, or their co-packers, use material other than human-grade 'real

[Footnote continued on next page]

resting largely on allegations about the manufacturing and marketing practices of the "pet food industry" as a whole, the SAC fails to set forth any facts about the manufacturing practices of any particular Defendant and does not intelligibly articulate how the quality or contents of any particular pet food product renders any statement by any Defendant false or misleading.  (*See* SAC ¶¶ 74-78 (describing "Defendants'" manufacturing and marketing practices, not any actual practice of any individual Defendant, and the alleged contents of "pet food," with only an occasional and fleeting reference to the contents of a particular product sold by a particular Defendant).

Moreover, the only specific statements identified in the SAC – consisting of web-site printouts and sample packaging for a few specific products manufactured by some of the various Defendants and photos purportedly of sample in-store marketing at unidentified retail outlets (*see* SAC ¶¶ 75-93, Exs. 1-14, 26-30) – are never alleged to have been seen, heard or read by any particular Plaintiff.  *See, e.g.*, SAC ¶ 79 (marketing of Mar's "Good Life  Recipe" brand products is "designed to appeal to ***consumers***[]").[27]  Indeed, the SAC is wholly devoid of any allegation

---

[Footnote continued from previous page]
meat, chicken, lamb,' etc., as a nitrogen source to boost 'protein' content unbeknownst to the ***consumer***."); *id*. ¶ 77 ("The Defendants' pet foods . . . are intentionally named to lead ***consumers*** to believe that they are wholesome and/or provide benefits to cats and dogs.") (emphases added).

[27]  *See also*, *e.g.*, SAC ¶ 81 (marketing of Mars' "Pedigree" brand products "leads ***consumers*** to believe . . ."); *id*. ¶ 84 (marketing of Hill's "Science Diet®" and "Prescription Diet®" brand products "promotes a relationship of trust and confidence that exists between the ***consumer*** and the company.") (emphases added).  Plaintiffs offer these paragraphs, themselves highly general and vague, as "an example" of Defendants' allegedly misleading marketing but elsewhere complain even more vaguely of "[t]he Defendants' marketing" (*see, e.g.*, SAC ¶ 74).  Such hazy allegations cannot serve as the basis for any fraud claim.  *See, e.g.*, *Flamenbaum v. Orient Lines, Inc.*, No. 03-22549, 2004 WL 1773207, *6 (S.D. Fla. July 20, 2004), discussed below.

as to when any fraudulent misrepresentations were made to each Plaintiff, the manner in which

such misrepresentations were made, or the place where such misrepresentations were made.

This Court previously has rejected fraud claims for similar pleading deficiencies.  In

*Flamenbaum*, 2004 WL 1773207, *6, this Court dismissed fraud claims pursuant to Rule 9(b)

where the complaint simply alleged that misrepresentations had been made by the "defendants"

and did not identify which parties were responsible for which alleged misrepresentation.  In

addition, the Court found that the plaintiffs there had failed to allege particular facts establishing

"the circumstances under which the alleged misrepresentations were made" and the manner in

which the statements at issue were misleading.  *Id*.  For the same reasons, the Court here should

dismiss Counts I-III of the SAC.

> **2.     The SAC Fails To Allege Any Facts Demonstrating That Any
> Defendant's Statements Caused Any Plaintiff To Alter Any
> Purchasing Decision.**

Plaintiffs' failure to allege a specific fraudulent act also dooms their SAC because it

makes it impossible for them to allege that they were misled by any Defendant or that those

allegedly misleading statements played any role in their decisions to purchase any Defendant's

products.  Instead, the SAC breezily alleges that "[t]he Plaintiffs/Class Representatives and the

Class were unaware of the falsity of [Defendants'] omissions and concealment and justifiably

relied on the representations and omissions" (SAC ¶ 131) and that "[a]s a direct and proximate

result . . . Plaintiffs/Class Representatives and the Class have suffered damages." (*See, e.g.*, *id*.

¶ 132).  Yet the SAC fails to allege ***any*** facts (let alone the particular facts required under Rule

9(b)) that establish that any Plaintiff actually saw, read, or heard any statement by any Defendant

about one of its products that led Plaintiff to purchase that product (*see id.* ¶¶ 74-93).  Having

failed to allege the basic facts about any particular transaction, Plaintiffs do nothing more than

offer wholly conclusory statements about why, how, and even whether they would have altered

their purchasing decisions in the absence of Defendants' alleged misrepresentations.  (*see, e.g.*, *id*. ¶ 131).

The law is clear that fraud-based claims cannot survive a Rule 9(b) motion to dismiss where plaintiffs do not specify how they were misled.  *See, e.g.*, *In re Managed Care Litig.*, 150 F. Supp. 2d 1330, 1347 (S.D. Fla. 2001) (dismissing claims where plaintiffs failed to "fully identify which materials were received or which advertisements were actually viewed"); *Berenguer v. Warner-Lambert Co.*, No. 02-05242, 2003 WL 24299241, *2 (Fla. Cir. Ct. July 31, 2003) (dismissing FDUTPA claim where plaintiffs did "not allege that they saw any of the advertisements . . . let alone that they saw an alleged misrepresentation in an advertisement that caused them to purchase [defendant's products]").[28]  Accordingly, Plaintiffs' fraud-based claims cannot withstand scrutiny under Rule 9(b) and should be dismissed.

---

[28]  As discussed above, Plaintiffs do not advise the Court or Defendants what representations by which Defendant are alleged to have misled whom.  Even if they had, to the extent that they complain of Defendants touting their product as "healthiest and best tasting," "rich in quality," "[r]ich in nutrients" and having "wholesome flavor" and the like (*see, e.g.*, SAC ¶¶ 79, 81, 87, 88, 92), they cannot state a claim.  As a matter of law, such statements are too subjective to support a misrepresentation claim.  *See, e.g.*, *Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674, 686 (5th Cir. 1986) (vacating the judgment and directing the district court to dismiss the complaint, which involved such claims as "easy," "prime," "amazing," "perfect," "wonderful," and "excellent"); *Hoyte*, 489 F. Supp. 2d at 30 (noting that restaurant's claim to serve the "best food" is non-actionable puffery); *Fraker v. KFC Corp.*, No. 06-CV-01284-JM, 2007 WL 1296571, *3 (S.D. Cal. Apr. 30, 2007) (dismissing as non-actionable the phrases "best food," "only the highest quality ingredients," and "innovative recipes," among others); *Tylka v. Gerber Prods. Co.*, No. 96-C-1647, 1999 WL 495126, *8 (N.D. Ill. July 1, 1999) (granting summary judgment because "'optimum nutrition' . . . or 'the most wholesome nutritious safe foods you can buy anywhere in the world' add little to the daily informational barrage to which consumers are exposed").

3.    **The SAC Fails To Allege That Plaintiffs Suffered Harm As A Result Of Any Fraudulent Statement.**

As discussed in Section II above, Plaintiffs also have failed to set forth any specific facts showing they were individually harmed as a result of any allegedly false or misleading statement by any Defendant.  The conclusory allegations provided are insufficient under even liberal pleading standards, much less under the more stringent standards of Rule 9(b).  *See, e.g.*, *Stires*, 243 F. Supp. 2d at 1322 (FDUTPA claim dismissed where plaintiff only alleged that she did not receive product promised to her).[29]

In sum, the SAC consists of nothing more than overly broad generalities, lumping unique and differently-situated Defendants together in a one-size-fits-all complaint and wholly failing to apprise each Defendant of the particular acts of alleged fraud in which it is alleged to have engaged.  For all of the reasons stated above, Counts I-III of the SAC fail to meet the standards of Rule 9(b) and should be dismissed.

C.    **PLAINTIFFS' CONSUMER PROTECTION ACT CLAIM (COUNT III) FAILS TO STATE A CLAIM.**

Count III of Plaintiffs' SAC alleges that Defendants have violated state consumer protection statutes by "making deceptive representations to, and omissions and/or concealing materials facts . . . in the advertising, marketing, distribution, and sale of the Defendants' pet food" (SAC ¶ 149).[30]  Plaintiffs' allegations fail for two reasons: First, as discussed above,

---

[29]  *See also Haun*, 285 F. Supp. 2d at 1307 ("[B]ecause Plaintiff fails to allege *how* he was 'aggrieved by' Defendant's acts, he fails to state the elements of harm and causation, essential to his claim. . . . Though pleading rules are liberal, conclusory statements of 'direct and proximate result' do not state an element.") (emphasis in original).

[30]  Count III is brought pursuant to the FDUTPA, Fla. Stat. Ann. § 501.201.  But perhaps recognizing that FDUTPA can be applied only to protect *Florida* residents, *see Montgomery*

[Footnote continued on next page]

Plaintiffs have failed to plead causation sufficiently.  Second, Plaintiffs complain of language that is specifically authorized by the Association of American Feed Control Officials ("AAFCO") and by state law incorporating AAFCO's standards.[31]  Accordingly, their challenges to such language and to the AAFCO standards cannot state a claim under the consumer protection statutes of Florida and many other states that exempt conduct that complies with state or federal law.

Plaintiffs allege as unfair trade practices (1) Defendants' representations that their products are "quality," "wholesome," "prescription," "premium," (SAC ¶¶ 74, 110), "veterinarian recommended" (*id.* ¶¶ 74, 82, 84), "balanced" (*id.* ¶ 81, 88), and "guaranteed" (*id.* ¶ 89) among others descriptions; and, (2) the use of certain ingredients in pet food and the descriptions of those ingredients on product labels and in advertisements.  (*Id.* ¶¶ 74, 98-108.) These descriptive terms and ingredients, however, are defined by regulations promulgated by AAFCO.  Each year, AAFCO publishes its Official Publication, which includes (1) model regulations for pet food; (2) a list of accepted feed ingredients, which may be set forth as such on the product label; and (3) nutrient profiles or feeding trial protocols that must be met before a manufacturer can make claims that a product is "complete," "balanced," "nutritious," or other

---

[Footnote continued from previous page]
  *v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 228-29 (S.D. Fla. 2001), Plaintiffs' complaint, via a footnote, also alleges violations of "other state deceptive trade practice laws of the various states where Class members reside" (SAC p. 58, n. 7).

[31]  As explained by the U.S. Food and Drug Administration, "AAFCO is composed of state, federal, and international regulatory officials who are responsible for the enforcement of state laws regulating the safe production and labeling of animal feed, including pet food.  FDA and AAFCO work together in the area of feed regulation, particularly in the establishment of definitions to describe new feed ingredients."  (FDA, "CVM and Animal Food, Feed Ingredients, and Additives," http://www.fda.gov/cvm/animalfeed_info.htm).

similar claims.  (S*ee* FDA, Center for Veterinary Medicine, "Selecting Nutritious Pet Foods,"

http://www.fda.gov/cvm/petfood.htm).  (*See also* SAC ¶ 99 (recognizing the existence of

"minimum requirements of pet foods based on the current nutrient allowances").)

Florida has adopted AAFCO's definitions of feed ingredients and the AAFCO minimum

nutritional requirements, and it ***mandates*** that feed suppliers use the AAFCO names and

definitions.  FLA. ADMIN. CODE 5E-3.004(1) 5E-3.013.  The other states in which Plaintiffs

reside also have incorporated AAFCO regulations, to varying degrees.  (*See* **APP. C**.)  While

Plaintiffs may object to the use of these ingredients in food for their pets, or to the components

that AAFCO allows to be included in those ingredients, Plaintiffs have ***not*** alleged that

Defendants' ingredients did not meet AAFCO's definitions.  Plaintiffs apparently do not like the

use of these definitions and descriptions, but they do ***not*** argue that any Defendant failed to meet

the necessary AAFCO requirements for use of these phrases.

Because Defendants' labeling practices are required or specifically permitted by state law

– namely, the AAFCO regulations that Florida and other states have adopted – Plaintiffs' claims

under the consumer protection statutes must be dismissed.  FDUTPA does not apply to "an act or

practice required or specifically permitted by federal or state law."  Fla. Stat. § 501.212(1); *3B

TV, Inc. v. State*, 794 So. 2d 744, 747-48 (Fla. 1st DCA 2001) *also, e.g., Eirman v. Olde

Discount Corp.*, 697 So. 2d 865, 866 (Fla. 4th DCA 1997); *Berenguer v. Warner-Lambert Co.*,

No. 02-05242, 2003 WL 24299241, *3 (Fla. Cir. Ct. July 31, 2003).  A number of other

potentially applicable state consumer protection statutes likewise do not apply to transactions or

conduct authorized by state or federal law (*See* **APP. D**).  In this case, the transaction at issue is

the labeling of commercial pet food.  As detailed above, applicable state laws adopt AAFCO

definitions of feed ingredients, prescribe the information contained on commercial pet food

labels, regulate the brand and product names on commercial pet food labels, and incorporate

AAFCO standards for uses of terms like "complete," "perfect," "guaranteed," or "balanced" and

"meat" or "meat-by-products."  Plaintiffs have not alleged that any Defendant violated any of the

applicable AAFCO regulations (as incorporated by state law), much less that any such violation

injured a Plaintiff.  Therefore, Defendants' actions are exempted by the safe harbor provisions of

the FDUTPA and other state consumer protection statutes, and Plaintiffs cannot state a cause of

action under the FDUTPA – and many of the other potentially applicable state laws.  For this

independent reason, Count III should be dismissed.[32]

### D.    THE ECONOMIC LOSS RULE BARS PLAINTIFFS' CLAIM FOR NEGLIGENCE (COUNT IV).

The economic loss rule also bars Plaintiffs' claim for negligence (Count IV).  The

Supreme Courts of Florida and Michigan, for example, have held that the economic loss doctrine

bars negligence actions either where the parties are in contractual privity or where the defendant

is a manufacturer or distributor of a product and "there is a defect in a product that causes

damage to the product but causes no personal injury or damage to other property."  *Indem. Ins.*

*Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004); *Neibarger v. Universal*

*Coops.*, 486 N.W.2d 612, 618 (Mich. 1992) ("[W]here a plaintiff seeks to recover for economic

loss caused by a defective product purchased for commercial purposes, the exclusive remedy is

provided by the UCC").  Thus, where a plaintiff can do no more than claim "disappointed

---

[32] Courts have not hesitated to dismiss consumer protection act claims for failure to state a claim – at the pleading stage – where consumer protection act claims allege practices that are governed by a separate state or federal law.  *See, e.g.*, *McLiechy v. Bristol West Ins. Co.*, 474 F.3d 897 (6th Cir. 2007) (affirming dismissal of Michigan Consumer Protection Act claim where challenged transactions were subject to Insurance Code); *McEntee v. Incredible Techs., Inc.*, No. 263818, 2006 WL 659347 (Mich. App. Mar. 16, 2006) (dismissing consumer protection act claims where challenged products – arcade games – were governed by separate gaming act).

economic expectations," as is the case here, the economic loss rule precludes a claim of negligence. *Casa Clara Condo. Ass'n, Inc. v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244, 1246 (Fla. 1993) (internal citation and quotation omitted).

Here, as discussed in Section II above, named Plaintiffs fail sufficiently to allege any facts establishing that they were individually harmed as a result of their pets' consumption of any particular Defendant's pet food. Mere allegations of "disappointed economic expectations" are precisely the "quintessential" losses that the economic loss rule prohibits a party from recovering under a negligence theory. *Casa Clara Condo.*, 620 So. 2d at 1246 (internal citation and quotation marks omitted). Thus, Plaintiffs' claim of negligence (Count IV) is barred by the economic loss rule and should be dismissed.

### E.    PLAINTIFFS FAIL TO STATE A CLAIM FOR STRICT PRODUCTS LIABILITY.

A strict products liability claim requires a plaintiff to prove that (1) a product (2) produced by a manufacturer (3) was defective or created an unreasonably dangerous condition (4) that proximately caused (5) injury. *West v. Caterpillar Tractor Co., Inc.*, 336 So. 2d 80, 87 (Fla. 1976) (adopting the doctrine of strict liability set forth in the Restatement (Second) of Torts §402A (1965)). Plaintiffs have failed to allege ultimate material facts establishing these elements, requiring dismissal of their claim for strict products liability.

As discussed in Section II above, Plaintiffs have failed to link any specific Plaintiff to any particular Defendant or any particular pet food. There can be no claim for strict products liability where the defendant did not place the specific product claimed to have caused some injury into the stream of commerce. *See Rivera v. Baby Trend, Inc.,* 914 So. 2d 1102, 1104 (Fla. 4th DCA 2005). Thus, an essential requirement of any products liability claim is the identification of both the product that allegedly caused the injury, and the manufacturer or seller

72

of that product. *See Pulte Home Corp. v. Ply Gem Indus., Inc.*, 804 F. Supp. 1471, 1484-85

(M.D. Fla. 1992) (collecting cases and observing that "[w]ithout this element every manufacturer

and vendor would become a virtual insurer of all like products on the market"); *Napier*, 399 F.

Supp. 2d at 813-14 (dismissing complaint because of plaintiffs' "inability to trace the product

. . . to a particular defendant" and noting that "[u]nder Michigan law, the threshold requirement

of ***any*** products liability action is identification of the injury-causing product and its

manufacturer") (citation and internal quotation marks omitted; emphasis added). Plaintiffs'

claim for strict products liability fails to meet this essential requirement.

Moreover, as discussed in Section III.A above, the SAC is devoid of any allegations

establishing a causal connection between a specific product put into the chain of commerce by a

particular Defendant and any purported injury to a specific pet belonging to a particular Plaintiff.

Plaintiffs' strict liability claim must fail as a matter of law, therefore, as it is well-established that

pleadings must contain ultimate facts supporting each element of ***any*** claim alleged, including a

strict liability claim. *See Clark v. Boeing Co.*, 395 So. 2d 1226, 1229 (Fla. 1981) (dismissing

strict products liability action for failure to allege ultimate facts supporting allegation that defects

in airplane engine or aircraft proximately caused plaintiff's injury). There can be no strict

products liability claim absent a proximate causal connection between the alleged defect and the

plaintiff's alleged injury or damage. *See Watson v. Lucerne Mach. & Equip., Inc.*, 347 So. 2d

459, 461 (Fla. 2d DCA 1977) ("In order to hold a manufacturer liable on the theory of strict

liability in tort, the user must establish the manufacturer's relationship to the product in question,

the defect and unreasonably dangerous condition of the product, ***and the existence of the***

*proximate causal connection between such condition and the user's injuries or damages*")

(emphasis in original; citation omitted).[33]

Further, Plaintiffs' allegation that the unspecified pet food and/or snacks are defective or unreasonably dangerous is also insufficient and conclusory.  Plaintiffs allege only that the unspecified pet food and snacks are defective and unreasonably dangerous because they contain "harmful substances" (SAC ¶ 165), but Plaintiffs have failed to allege what "harmful substances" were purportedly included in the specific pet food and/or snacks they purchased and fed to their pets.  The Restatement (Second) of Torts provides that a "defective" condition is a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him.  (Rest. (2d) Torts § 402A, Cmt. g.)  For a product to be "unreasonably dangerous," it must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.  (*Id.*, Cmt i.)[34] Plaintiffs fail to make any such allegations about ***any*** Defendant's product, thereby failing to provide Defendants with requisite notice of the nature of their claim and impermissibly leaving Defendants no choice but to speculate as to what Plaintiffs intend.  To the extent Plaintiffs believe that the food is unreasonably dangerous because of the ingredients used, any

---

[33]  Plaintiffs appear to attempt to excuse their failure to plead the essential elements of their claim by reference to the relative market share of certain Defendants in the pet food industry. However, Plaintiffs here cannot rely on a market share theory of liability, which in certain limited circumstances (not present here) obviate the requirement of pleading an injury caused by a particular defendant's product, because this doctrine is unavailable in strict liability cases.  *See King v. Cutter Labs., Div. of Miles*, 714 So. 2d 351, 354 (Fla. 1998); *Conley v. Boyle Drug Co.*, 570 So. 2d 275, 286 (Fla. 1990).

[34]  The Restatement (Third) of Torts: Products Liability provides that "a harm-causing ingredient of the food product constitutes a defect if a reasonable consumer would not expect the food product to contain that ingredient."  (Rest. (3d) Torts: Prod. Liab. § 7 (1998).)

such claim is belied by the fact that what constitutes permissible pet food ingredients is defined

by regulations promulgated by AAFCO.  (*See* Section III.C above.)   Plaintiffs do not (and

cannot) allege that the ingredients in the food at issue fail to comply with these regulatory

requirements.  To the extent Plaintiffs claim the pet food at issue was contaminated by "harmful

substances" in the manufacturing process, Plaintiffs have failed to allege what substances

contaminated the specific pet food they purchased and that these substances proximately caused

any injury to their specific pets.  *See Clark*, 395 So. 2d at 1229.

For the foregoing reasons, Plaintiffs' claim of strict products liability (Count V) is fatally

defective and should be dismissed.

### F.   PLAINTIFFS' CLAIM FOR INJUNCTIVE RELIEF (COUNT VI) IS NOT A SUBSTANTIVE CLAIM, AND, IN ANY EVENT, PLAINTIFFS MAKE NO SHOWING OF INADEQUACY OF LEGAL REMEDIES OR IRREPARABLE HARM.

Although Plaintiffs bring a claim for "Injunctive Relief" as a separate Count VI, such a

claim does not constitute an independent substantive cause of action and should thus be

dismissed along with the substantive claims on which it depends.  *See, e.g.*, *Ala. v. U.S. Army

Corps of Engineers*, 424 F.3d 1117, 1127 (11th Cir. 2005) ("An injunction is a remedy

potentially available only after a plaintiff can make a showing that some independent legal right

is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief,

injunctive or otherwise.") (citation and internal quotation marks omitted); *Klay v. United

Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (reversing a district court's grant of

injunctive relief and noting that "[t]here is no such thing as a suit for a traditional injunction in

the abstract.  For a traditional injunction to be even theoretically available, a plaintiff must be

able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6)

(failure to state a claim)."); *City of Marietta v. CSX Transp., Inc.*, 196 F.3d 1300, 1303 n.3 (11th

Cir. 1999) (noting that "[o]ne of the separately numbered 'counts' (VI) is simply a request for injunctive relief, presumably on the basis of the . . . substantive counts" and declining to treat it as a separate cause of action); *Paisey v. Vitale*, 807 F.2d 889, 892 (11th Cir. 1986) ("[T]he district court did not err in . . . dismissing the injunctive count of [the plaintiff's] complaint because [the plaintiff] has failed to state a claim for relief").

Even if any of Plaintiffs' substantive claims could somehow survive dismissal and thus lend support to their derivative request for injunctive relief, this claim should nevertheless be dismissed, because Plaintiffs fail to offer any showing of the inadequacy of legal remedies or of irreparable harm. *See, e.g.*, *Ala.*, 424 F.3d at 1128 ("[T]o obtain a[n] . . . injunction, a party must show . . . there is no adequate remedy at law for the violation of [the right asserted in his complaint] [and that] irreparable harm will result if the court does not order injunctive relief.").[35] Plaintiffs nowhere give any indication as to how the legal remedies sought elsewhere in the SAC would be inadequate, if their claims somehow survived. In fact, as discussed further in Section IV.G below, Plaintiffs seek legal monetary remedies at every turn. Plaintiffs' failure to show the inadequacy of these remedies also precludes any showing of irreparable harm. *See, e.g.*, *Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies."). In any event, as discussed in Sections II and III above, Plaintiffs have made no showing that they have been harmed at all by any of Defendants'

---

[35] Injunctions based on state law require these elements as well. *See, e.g.*, *Tucker v. Citigroup Global Markets Inc.*, No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502, *6 (M.D. Fla. July 17, 2007) ("To state a cause of action for injunctive relief in Florida, a plaintiff must allege ultimate facts which, if true, would establish (1) irreparable injury [], (2) a clear legal right, (3) lack of an adequate remedy at law and (4) that the requested injunction would not be contrary to the interest of the public generally.") (citation and internal quotation marks omitted).

activities, much less that they risk harm, irreparable or otherwise, in the future.  Thus, Plaintiffs'

claim for injunctive relief (Count VI) should be dismissed.

### G.    PLAINTIFFS' WARRANTY CLAIMS (COUNTS VII AND VIII) ARE BARRED BECAUSE PLAINTIFFS FAIL TO ALLEGE PRIVITY.

"[T]o recover for breach of a warranty, either express or implied, the plaintiff must be in

privity of contract with the defendant."  *T.W.M. v. Amer. Medical Sys., Inc.*, 886 F. Supp. 842,

844 (N.D. Fla. 1995).  As courts consistently have recognized, "[a] warranty, whether express or

implied, is fundamentally a contract.  A contract cause of action requires privity."  *Elizabeth N.*

*v. Riverside Group, Inc.*, 585 So. 2d 376, 378 (Fla. 1st DCA 1991); *see also Kramer v. Piper*

*Aircraft Corp.*, 520 So. 2d 37, 39 (Fla. 1988) (noting that Florida Supreme Court has "abolished"

cause of action for warranty where there is no privity).

### 1.    Plaintiffs Fail To Allege Facts Establishing Privity With Regard To Any Defendant.

Plaintiffs' breach of warranty claims (Counts VII and VIII) should be dismissed against

all undersigned Defendants for failure to plead facts establishing the essential element of privity.

In *Jacobs v. Osmose, Inc.*, No. 01-944-CIV, 2002 WL 34241682 (S.D. Fla. Jan. 3, 2002), a

plaintiff filed a class action against manufacturers and retailers of pressure-treated wood

alleging, among other claims, breach of implied warranty.  The plaintiff, who was the sole

putative class representative, alleged that he "had during the Class Period installed, constructed

and/or existing upon his property a deck made of treated wood purchased at one of the retail

defendants."  *Id.* at *1.  Because the court in *Jacobs* found it "difficult to determine from the

Complaint whether [the plaintiff] even purchased any of the manufacturer defendants' products

and from which retail stores such products were purchased," the court dismissed the breach of

implied warranty claim, concluding that the complaint contained "no factual allegations showing privity of contract between [the plaintiff] and the Defendants." *Id*. at *5.

Similarly, in this case, Plaintiffs allege warranty claims against Defendants without attributing any of their alleged pet food purchases to a specific Retail Defendant. Like the vague allegations in *Jacobs* that the plaintiff had purchased wood products "at one of the retail defendants," the allegations in the SAC merely refer to Plaintiffs' purchases of "one or more brands of the Defendants' commercial pet food and/or treats . . . that was/were manufactured, marketed, produced, distributed, advertised and/or sold by the Defendants" (SAC ¶¶ 3-33). The allegations in Counts VII and VIII not only are insufficient to establish privity, but they also make it impossible to determine which warranties, if any, were made to Plaintiffs. Such pleading epitomizes the "improper lumping" this Court condemned in *Flamenbaum*, 2004 WL 1773207, *6. Because neither this Court nor any Defendant can identify which Plaintiffs purchased products from which Defendants, Plaintiffs cannot establish the requisite privity, and Counts VII and VIII of the SAC should be dismissed. *See Jacobs,* 2002 WL 34241682, *5.[36]

### 2. Plaintiffs Cannot Allege Privity With Respect To The Manufacturer Defendants.

Even if Plaintiffs could identify specific purchases from one or more of the Retail Defendants, Plaintiffs would not thereby establish privity with the Manufacturer Defendants because a buyer has privity only with the particular Defendant from whom he or she ***directly*** purchases a product. S*ee T.W.M.,* 886 F. Supp. at 844 ("A plaintiff who purchases a product, but does not buy it ***directly*** from the defendant, is not in privity with that defendant.") (emphasis

---

[36] Plaintiffs apparently wish to apply "other state breach of warranty laws of the various states where Class members reside" (SAC n. 28 and 29). However, such application does not save their claims. (*See* **APP. E**, "Breach of Warranty.")

added); *Tolliver v. Monaco Coach Corp.*, No. 8:06-cv-856, 2006 WL 1678842, *2 (M.D. Fla.

June 16, 2006) ("[P]rivity is required even if a suit is brought against a manufacturer.").

Applying this rule, courts consistently dismiss warranty claims brought by consumers

against manufacturers from which they did not directly purchase the product. *See, e.g.*,

*Montgomery v. Davol, Inc.,* No. 3:07cv176, 2007 WL 2155644, *2 (N.D. Fla. July 24, 2007)

(dismissing breach of implied warranty claim because there was "no claim that the defendants

sold [the product] *directly* to the plaintiffs") (emphasis in original); *T.W.M.*, 866 F. Supp. at 844;

*Tolliver*, 2006 WL 1678842, *2. Since Plaintiffs do not and cannot allege that they made any

direct purchases from any of the Manufacturer Defendants, Plaintiffs' warranty claims against

these Defendants fail as a matter of law and should be dismissed.

### H.    PLAINTIFFS' UNJUST ENRICHMENT CLAIM (COUNT IX) DOES NOT STATE A LEGALLY COGNIZABLE CLAIM.

Unjust enrichment is an equitable cause of action. *Tooltrend, Inc. v. CMT Utensili, SRL*,

198 F.3d 802, 805 (11th Cir. 1999) (applying Florida law). As such, it may only be invoked in

the absence of an adequate legal remedy. *Bowleg v. Bowe*, 502 So. 2d 71, 72 (Fla. 3d DCA

1987); *Liza Danielle, Inc. v. Jamko, Inc.*, 408 So. 2d 735, 738 (Fla. 3d DCA 1982); *Am. Honda

Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005).

Plaintiffs plead causes of action sounding in fraud, negligence, strict liability, and contract,

seeking "actual damages" under each of these claims. Far from viewing legal remedies as

inadequate, they seek them at every turn. Despite conclusory recitations of inadequacy,

Plaintiffs make no showing in the SAC of the inadequacy or unavailability of such remedies.

Consequently, the claim of unjust enrichment must be dismissed, pursuant to Rule 12(b)(6). *See,

e.g.*, *Court Appointed Receiver for Lancer Mgmt. Group LLC v. Taubman*, No. 05-60199-CIV,

2007 WL 984452, **2-3 (S.D. Fla. Mar. 27, 2007); *Am. Honda Motor Co.*, 390 F. Supp. 2d at 1178.

Furthermore, to state a claim of unjust enrichment, a complaint must allege that: 1) the defendant received a benefit from the plaintiff; 2) the defendant had knowledge of the benefit; and 3) the defendant's retention of the benefit would be inequitable.  *See, e.g.*, *Della Ratta v. Della Ratta*, 927 So. 2d 1055, 1059 (Fla. 4th DCA 2006); *Shands Teaching Hosp. and Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005); *Timberland Consol. P'ship v. Andrews Land and Timber, Inc.*, 818 So. 2d 609 (Fla. 5th DCA 2002).  As discussed in Section III.A above, Plaintiffs' SAC nowhere specifies which of Defendants' many products each Plaintiff purchased, when these purchases took place, where any such purchases were made, or on how many occasions such purchases were made.  Consequently, it is impossible to determine which Retail Defendants, if any, a particular Plaintiff might have benefited.  Further, Plaintiffs have not pleaded sufficient facts to establish that any of them directly conferred a benefit upon any of the Manufacturer Defendants who were not involved in retail sales.  A bald allegation that such Defendants received an indirect benefit is insufficient to support a claim of unjust enrichment.  *See, e.g.*, *Tilton v. Playboy Ent. Group, Inc.*, No. 88:05-cv-692-T-30TGW, 2007 WL 80858, *3 (M.D. Fla. Jan. 8, 2007); *Huntsman Pkg. Corp. v. Kerry Pkg. Corp.*, 992 F. Supp. 1439, 1446 (M.D. Fla. 1998); *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla.*, 667 So. 2d 876, 879 (Fla. 3d DCA 1996).  Because Plaintiffs have not alleged that they conferred a benefit on any particular Defendant, there is no basis for Plaintiffs' general and conclusory allegations that Defendant had knowledge of such a benefit.  Therefore, the unjust enrichment claim should be dismissed pursuant to Rule 12(b)(6) for failure sufficiently to plead the necessary elements of the claim.  *See, e.g.*, *Tilton*, 2007 WL 80858, *3.

## CONCLUSION

For all the foregoing reasons, the undersigned Defendants respectfully move this Court to dismiss Plaintiffs' Second Amended Class Action Complaint in its entirety.

## APPENDIX A

### ELEMENTS OF RELIANCE AND CAUSATION UNDER
### FLORIDA AND MICHIGAN LAW

- **Count I:** *Simon v. Celebration Co.*, 883 So. 2d 826, 832-33 (Fla. 5th DCA 2004) (fraudulent misrepresentation requires reliance); *Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 264 F. Supp. 2d 1064, 1073–74 (S.D. Fla. 2003) (fraudulent concealment); *FFOC Co. v. Invent A.G.*, 882 F. Supp. 642, 658-59 (E.D. Mich. 1994) (fraudulent misrepresentation); *McEldowney v. Air Prods. & Chems., Inc.*, No. 273572, 2007 WL 1576390, *6 (Mich. Ct. App. May 31, 2007) (fraudulent concealment).

- **Count II:** *Simon*, 883 So. 2d at 832-33 (negligent misrepresentation requires reliance); *Roncelli v. O'Reilly, Rancilio, Nitz, Andrews, Turnbull & Scott, P.C.*, No. 258951, 2006 WL 1360396 (Mich. Ct. App. May 18, 2006) (*per curiam*) (negligent misrepresentation).

- **Count III:** *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 229 (S.D. Fla. 2001) (FDUTPA requires showing of causation); *Kussy v. Home Depot U.S.A. Inc.*, No. 06-12899, 2006 WL 3447146, **5-7 (E.D. Mich. Nov. 28, 2006) (Michigan Consumer Protection Act requires causation and reliance).

- **Count IV:** *Krehling v. Baron*, 900 F. Supp. 1578, 1582-83 (M.D. Fla. 1995) (negligence requires causation); *Baker*, 544 N.W.2d at 730 (same).

- **Count V:** *Rivera v. Baby Trend, Inc.*, 914 So. 2d 1102, 1104 (Fla. 4th DCA 2005) (strict liability requires showing of causation); *Williams v. Detroit Edison Co.*, 234 N.W.2d 702, 707 (Mich. App. 1975) (same).

- **Count VI:** Not applicable, because this count does not represent an independent substantive claim.

- **Count VII:** *Marking v. Novartis Pharm. Corp.*, No. 00-9108-CV, 2002 WL 32255405, *3 (S.D. Fla. Feb. 12, 2002) (breach of implied warranty requires causation); *Weier v. United Rentals, Inc.*, No. 1:05-CV-420, 2006 WL 3613304, *4, *7 (W.D. Mich. Dec. 11, 2006) (same).

- **Count VIII:** *Marking*, 2002 WL 32255405, *3 (breach of express warranty requires causation); *Cavalier v. Werner Co.*, 976 F. Supp. 672, 679 n.11 (E.D. Mich. 1997)\ (same).

- **Count IX:** *Urquhart v. Manatee Mem'l Hosp.*, No. 8:06-cv-1418-T-17-EAJ, 2007 WL 781738, **5-6 (M.D. Fla. Mar. 13, 2007)\ (unjust enrichment requires causation); *Thomas v. City of Detroit*, No. 06-10453, 2007 WL 674593, *11 (E.D. Mich. Feb. 28, 2007) (same)

## APPENDIX B

## STATE CONSUMER PROTECTION STATUTES

- **Arizona**: *Grismore v. Capital One F.S.B.*, No. CV-05-2460-PHX-SMM, 2007 WL 841513, *7 (D. Ariz. Mar. 16, 2007) (dismissing Arizona Consumer Fraud Act claim for failure to comply with Rule 9(b));

- **Arkansas:** *Wallis v. Ford Motor Co.*, 208 S.W.3d 153, 161-62 (Ark. 2005) (likening Arkansas Deceptive Trade Practice Act claims to common-law fraud claims);

- **Florida:** *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002) (FDUTPA claim deficient because it did not comply with Rule 9 particularity requirements);

- **Georgia:** *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 198 F.R.D. 560, 562 (N.D. Ga. 2000) (plaintiffs must plead fraud with particularity "whether the fraud is in statutory or common law form"), *aff'd*, 290 F.3d 1301 (11th Cir. 2002);

- **Indiana**: *SMC Corp. v. PeopleSoft U.S.A., Inc.*, No. 1:00-cv-01095-LJM-VS, 2004 WL 2538641, **4-5 (S.D. Ind. Oct. 12, 2004) (dismissing Indiana Deceptive Consumer Sales Act claim for failure to comply with Rule 9(b) particularity requirements);

- **Kansas**: *Jamieson v. Vatterott Education Center, Inc.*, 473 F. Supp. 2d 1153, 1156-1158 (D. Kan. 2007) (dismissing KCPA claim for failure to meet Rule 9 (b));

- **Maryland:** *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007) (Rule 9(b) particularity requirement applied to Consumer Protection Act claim); *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 150-54 (Md. 2007)\ (same);

- **Massachusetts**: *Moniz v. Bayer Corp.*, 484 F. Supp. 2d 228, 231 (D. Mass. 2007) (considering whether Chapter 93A claim met Rule 9(b) particularity requirements);

- **Michigan**: *Parsley v. Monaco Coach Corp.*, 327 F. Supp. 2d 797, 807 (W.D. Mich. 2004) (Rule 9(b)'s particularity requirements apply to Michigan Consumer Protection Act claims based on fraud allegations);

- **Nevada**: *George v. Morten*, No. 2:06-cv-1112-PMP-GWF, 2007 WL 680787, *12 (D. Nev. Mar. 1, 2007) (claim brought under Nevada consumer fraud act must satisfy Rule 9(b) particularity requirements);

- **North Carolina**: *Bob Timberlake Collection, Inc. v. Edwards*, 626 S.E.2d 315, 323 (N.C. Ct. App. 2006) (dismissing North Carolina Unfair and Deceptive Trade Practices Act claim where plaintiff failed to specify the alleged conduct that constituted unfair and deceptive trade practices);

- **Pennsylvania**: *Rosenberg v. Avis Rent a Car Sys., Inc.*, No. 07-1110, 2007 WL 2213642, **5-6 (E.D. Penn. July 31, 2007) (Rule 9(b) applies to Pennsylvania UTPCPL claims);

- **Tennessee**: *McLean v. Bourget's Bike Works, Inc.*, No. M2003-01944-COA-R3-CV, 2005 WL 2493479, *7 (Tenn. Ct. App. Oct. 7, 2005) ("Claims under the Tennessee Consumer Protection Act must be pleaded with the same particularity that Tenn. R. Civ. P. 9.02 requires of common-law fraud claims");

- **Texas**: *Sipes v. Petry*, 812 S.W.2d 428, 431 (Tex. App.—San Antonio 1991, no writ) ("[A]llegations under the Deceptive Trade Practices Act . . . require pleadings which designate or state with particularity which acts or events were relied upon as a basis for liability under the Texas Deceptive Trade Practices Act") (internal quotation marks omitted);

- **Washington**: *Fidelity Mortg. Corp. v. Seattle Times Co.*, 213 F.R.D. 573, 575 (W.D. Wash. 2003)(complaints under Consumer Protection Act are subject to particularity requirement of Rule 9(b));

- **West Virginia**: *Rouse v. Philip Morris, Inc.*, No. 2:03-2159, 2003 WL 22850072, *5 (S.D. W. Va. Nov. 18, 2003) (complaints under West Virginia Consumer Credit and Protection Act are subject to particularity requirement of Rule 9(b));

- **Wisconsin**: *D & B Auto Equip., Inc. v. Snap-on, Inc.*, No. 03-CV-141, 2006 WL 776749, *6 (E.D. Wis. Mar. 27, 2006) (complaints under Wisconsin Consumer Act (and consumer acts of other states) are subject to particularity requirement of Rule 9(b)).

## APPENDIX C

## AAFCO AND STATE PROVISIONS

- **Arizona:** Arizona has incorporated by reference the feed ingredient definitions and feed terms, as well as the labeling and guarantee provisions, of the AAFCO Official Publication. (ARIZ. ADMIN. CODE R3-3-901, 905.)

- **California:** California has adopted the ingredient names and definitions of AAFCO, as well standards for "balanced" statements. (CAL. CODE REGS. tit. 17, § 19005.)

- **Georgia:** Georgia has adopted AAFCO's ingredient names, definitions and feed terms for commercial feed. (GA. COMP. R & REGS. 40-5-1-.01.) Georgia regulations include a specific chapter on pet food that refers to AAFCO's Dog or Cat Nutrition Profile as a "recognized authority," and mandates the use of AAFCO's medicated labeling format. (GA. COMP. R & REGS. 40-5-8-.04)

- **Indiana:** Indiana has adopted the ingredient names and definitions of AAFCO, as well as its claims of nutritional adequacy, feeding directions, and testing procedures. (IND. ADMIN. CODE tit. 355, r. 6-1-1, 6-2-4 – 6-2-9.)

- **Kansas:** Kansas regulations adopt the official feed terms, names, and definitions of AAFCO. (KAN. ADMIN. REGS. 4-3-7, 4-3-47, 4-3-48.)

- **Kentucky:** Kentucky's pet food regulations incorporate by reference AAFCO's Official Publication. (12 KY. ADMIN. REGS. 3:012.)

- **Maryland:** Maryland's Commercial Feed Law states that the definitions issued by AAFCO are "commonly accepted." (MD. CODE REGS. 6-101.)

- **Massachusetts:** Massachusetts uses the AAFCO definitions, nutrient profiles, and testing procedures. (MASS. REGS. CODE tit. 330, §§13.01 – 13.08.)

- **Michigan:** The Michigan Administrative Code mandates the use of AAFCO definitions of and terms for feed ingredients, as well as AAFCO testing procedures and nutrient profiles. (MICH. ADMIN. CODE r. 285.631, 283.635.)

- **Nebraska:** Nebraska has adopted certain portions of the AAFCO feed name and ingredient provisions. (NEB. ADMIN. CODE tit. 25, §§ 3-001, 3-003.)

- **Nevada:** Nevada applies AAFCO ingredient definitions and AAFCO standards for product names of feeds with single ingredients. (NEV. ADMIN. CODE ch. 587 §§ 510, 520.)

- **New York:** New York regulations adopt AAFCO terms and conditions where no such terms or definitions are otherwise provided, and provide that certain guarantees must comply with AAFCO nutrition requirements. (N.Y. COMP. CODES R. & REGS. tit. 1 §§ 257.1, 257.17.)

- **North Carolina:** North Carolina regulations adopt AAFCO's ingredient names, definitions and feed terms for commercial feed. (2 N.C. ADMIN. CODE 9E.0001.) Regulations governing pet food specify that AAFCO's ingredient names for pet food

must be used, as well as the use of AAFCO's medicated labeling format.  (2 N.C. ADMIN. CODE 9D.00015.)

- **Ohio:**  Ohio has adopted the 2006 AAFCO Official Publication.  (OHIO ADMIN. CODE § 901:5-7-01.)

- **Oklahoma:**  Oklahoma has adopted the definitions in AAFCO's Model Bill and Model Feed Regulations.  (OKLA. ADMIN. CODE § 35:30-27-51.)

- **Pennsylvania:**  Pennsylvania has adopted the AAFCO Official Definitions of Feed Ingredients and Official Feed Terms.  (7 PA. CODE § 71.1.)  Specific pet food regulations mandate the use of AAFCO's ingredient names for pet food, as well as the use of AAFCO's medicated labeling format.  (7 PA. CODE §§ 72.5, 72.10.)

- **South Carolina:**  South Carolina has adopted AAFCO definitions for ingredient names.  (S.C. CODE ANN. REGS. 5-204.)

- **Tennessee:** Tennessee  has adopted the complete AAFCO Official Definition of Feed Ingredients and Official Feed Terms.  (TENN. COMP. R. & REGS. 0080-5-5.01.)

- **Texas:** Texas has adopted the AAFCO dog and cat food nutritional profiles.  (4 TEX. ADMIN. CODE § 63.1.)

- **Virginia:** Virginia has adopted the AAFCO regulations, definitions, and standards.  (2 VA. ADMIN. CODE § 5-360-100.)

- **Washington:**  Washington has adopted the AAFCO terms and definitions as well as its guarantee, vitamin, and labeling provisions.  (WASH. ADMIN. CODE 16-252-010, *et seq*.)

- **West Virginia:**  West Virginia has adopted AAFCO's Official Pet Food Regulations published in the 2004 edition of the Official Publication.  (W.VA. CODE ST. R. § 61-5-2.)

- **Wisconsin:**  Wisconsin allows pet foods to use "common or usual" names or AAFCO's official names.  (WIS. ADMIN. CODE § 42.32.)

## APPENDIX D

## STATE LAW EXEMPTIONS FOR AUTHORIZED CONDUCT

- **Arkansas:**  The Arkansas Deceptive Trade Practices Act does not apply to "[a]ctions or transactions permitted under laws administered by [a] regulatory body or officer acting under statutory authority of this state or the United States." (ARK. CODE ANN. §§ 4-88-101.)

- **California**:  California law provides that "[a]cts that the legislature has determined to be lawful may not form the basis for an action under the unfair competition law." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 541-42 (Cal. 1999).

- **Georgia:**  The Georgia Uniform Deceptive Trade Practices Act does not apply to "[c]onduct in compliance with the orders or rules of or a statute administered by a federal, state, or local governmental agency." (GA. STAT. ANN § 10-1-374.)  Georgia's Fair Business Practices Act does not apply to "[a]ctions or transactions specifically authorized under laws administered by or rules and regulations promulgated by any regulatory agency of this state or the United States." (*Id.* § 10-1-396).

- **Indiana:**  The Indiana Deceptive Consumer Sales Act expressly does not apply to "an act or practice that is (1) required or expressly permitted by federal law, rule, or regulation; or (2) required or expressly permitted by state law, rule, regulation, or local ordinance." (IND. CODE § 24-5-0.5-6.)

- **Kansas:** The Kansas Consumer Protection Act does not apply when a more specific statute deals with the subject.  *Chelsea Plaza Homes, Inc. v. Moore*, 601 P.2d 1100, 1102 (Kan. 1979).

- **Kentucky:**  The Kentucky Consumer Protection Act does "not apply to activities authorized or approved under any federal or state statute or regulation."  (KY. REV. STAT. ANN. § 367.176.)

- **Massachusetts:** The Massachusetts Regulation of Business Practices for Consumer Protection does not apply to "transactions or actions otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of the commonwealth or of the United States."  (MASS. GEN. LAWS ch. 93A § 3.)

- **Michigan:** The Michigan Consumer Protection Act does not apply to a "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States."  (MICH. COMP. LAWS § 445.904.)

- **Nebraska:** The Nebraska Consumer Protection Act "shall not apply to actions or transactions otherwise permitted, prohibited, or regulated under laws administrated by . . . any other regulatory body or officer acting under statutory authority of this state or the Untied States."  (NEB. REV. STAT. § 59-1617.)

- **Nevada: The** Nevada Deceptive Trade Practices statute does not apply to "[c]onduct in compliance with the orders or rules of, or a statute administered by, a federal, state, or local governmental agency." (NEV. REV. STAT. § 598-0955.)

- **New York:** New York law holds that it is a "complete defense" to a consumer protection act claim "that the act or practice . . . complies with the rules and regulations of, and the statutes administered by, . . . any official department, division, commission or agency of the United States . . ." (N.Y. GENERAL BUSINESS LAW § 349(d).)

- **North Carolina:** The scope of North Carolina's Unfair and Deceptive Trade Practices Act may be limited by the presence of other statutory schemes that create overlapping supervision, enforcement, and liability. *See, e.g., State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 646 S.E.2d 790, 798 (N.C. Ct. App. 2007) (affirming dismissal of claim under NCUDTPA because statute regulating conduct of cigarette manufacturers overlapped with NCUDTPA).

- **Ohio:** The Ohio Consumer Sales Practices Act does not apply to "[a]n act or practice required or specifically permitted by or under federal law." (OHIO REV. CODE ANN. § 1345.12.)

- **Oklahoma:** The Oklahoma Consumer Protection Act does not apply to "[a]ctions or transactions regulated under laws administered by . . . any other regulatory body or officer acting under statutory authority of this state or the United States . . ." (OKLA. STAT. tit. 15, § 754(2).)

- **Tennessee:** The Tennessee Consumer Protection Act do not apply to "[a]cts or transactions required or specifically authorized under the laws administered by, or rules and regulations promulgated by, any regulatory body or officers acting under the authority of this state or of the United States." (TENN. CODE ANN. § 47-18-111(a)(1).)

- **Virginia:** The Virginia Consumer Protection Act provides that "[n]othing in this chapter shall apply to any aspect of a consumer transaction which aspect is authorized under laws or regulations of this Commonwealth or the United States, or the formal advisory opinions of any regulatory body or official of this Commonwealth or the United States." (VA. CODE ANN. § 59.1-199(A).)

- **Washington:** The Washington Consumer Protection Act does not apply to "actions or transactions otherwise permitted, prohibited or regulated under laws administered by . . . any other regulatory body or officer acting under statutory authority of this state or the United States." (WASH. REV. CODE ANN. § 19.86.170.)

## APPENDIX E

## BREACH OF WARRANTY CLAIMS

- **Arizona**: *Chaurasia v. Gen. Motors Corp.*, 126 P.3d 165, 171 (Ariz. Ct. App. 2006) ("privity of contract is required to maintain an action for breach of an implied warranty");

- **California**: *Torres v. City of Madera*, No. Civ. 02-6385, 2005 WL 1683736, *16 (E.D. Cal. July 11, 2005) ("plaintiff alleging breach of warranty claims must stand in 'vertical privity' with the defendant");

- **Georgia**: *Keaton v. A.B.C. Drug Co*., 467 S.E.2d 558, 560–61(Ga. 1996)  ("Georgia law establishes that in order to recover under a theory of breach of implied warranty of merchantability, a plaintiff must have privity with the seller.");

- **Kansas**:  *Postal Presort, Inc. v. Midwest Single Source, Inc.*, 130 P.3d 1247, **7-8 (Kan. Ct. App. 2006) (privity is required to claim breach of express or implied warranties if the product is not inherently dangerous and the claim is for economic loss);

- **Kentucky**:  *Compex Int'l Co. v. Taylor*, 209 S.W.3d 462, 464 (Ky. 2006) ("privity remains a prerequisite for products liability claims based on warranty");

- **Maryland**:  *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 637–38 (Md. 1995) (horizontal privity is still required where plaintiff was not "injured in person");

- **Michigan**:  *Pidcock v. Ewing*, 371 F. Supp. 2d 870, 877-78 (E.D. Mich. 2005) (granting summary judgment for defendant with respect to warranty claims for lack of privity);

- **New York**:  *Kolle v. Mainship Corp.*, No. 04-CV-711, 2006 WL 1085067, *5 (E.D.N.Y. Apr. 20, 2006) ("New York law requires privity in order for Plaintiff to assert a breach of an implied warranty claim");

- **North Carolina**:  *Atl. Coast Mech., Inc. v. Arcadis, Geraghty & Miller of N.C. et al*, 623 S.E.2d 334, 345–46 (N.C. Ct. App. 2006) ("Privity is still required in an action for breach of implied warranties that seeks recovery for economic loss.");

- **Ohio**:  *Johnson v. Monsanto Co.*, No. 11-02-02, 2002 WL 2030889, **2-3 (Ohio Ct. App. Sept. 6, 2002) ("Appellants are precluded from raising claims founded on UCC implied warranty theories for want of privity.");

- **Oklahoma**:  *Hardesty v. Andro Corp.-Webster Div.*, 555 P.2d 1030, 1033-34 (Okla. 1976) (privity required where plaintiff seeks economic damages);

- **Tennessee**:  *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 463 (Tenn. Ct. App. 2003) ("a plaintiff may not maintain a claim for purely economic losses absent contractual privity with the party charged with responsibility for those losses");

- **Washington**: *Fortune View Condo. Assoc. v. Fortune Star Dev't Co.*, 90 P.3d 1062, 1064-65 (Wash. 2004) (privity required for implied warranty claims);

- **Wisconsin**: *Northridge Co. v. W.R. Grace & Co.*, 471 N.W.2d 179, 187 n.15 (Wis. 1991) (dismissing plaintiffs' implied warranty claim because "[t]he plaintiffs in this case did not allege privity in their complaint").

100355329_3.DOC

Respectfully submitted,

/s/ Marty Steinberg
Marty Steinberg
Florida Bar Number 187293
Adriana Riviere-Badell
Florida Bar Number 30572
**HUNTON & WILLIAMS**
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
Telephone: 305-810-2500
Fax: 305-810-2460
E-Mail: msteinberg@hunton.com
ariviere-badell@hunton.com


Mark Whitburn
Gail E. Lees
Gary L. Justice
William Edward Wegner
**GIBSON DUNN & CRUTCHER**
333 S. Grand Avenue, Suite 4600
Los Angeles, CA 90071-3197
Telephone: 213-229-7000
E-Mail: cabbott@gibsondunn.com
glees@gibsondunn.com
gjustice@gibsondunn.com
wwegner@gibsondunn.com


*Attorneys for Nutro Products, Inc.*

By: /s/ Carol A. Licko
Carol A. Licko
Florida Bar Number 435872
**HOGAN & HARTSON L.L.P.**
Mellon Financial Center
1111 Brickell Avenue, Suite 1900
Miami, Florida 33131
Telephone: 305-459-6500
Fax: 305-459-6550
E-Mail: calicko@hhlaw.com


Craig A. Hoover
Miranda L. Berge
**HOGAN & HARTSON L.L.P.**
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone: 202-637-5600
Fax: 202-637-5910
E-Mail: cahoover@hhlaw.com
mlberge@hhlaw.com


Robert C. Troyer
**HOGAN & HARTSON L.L.P.**
1200 17th Street
One Tabor Center, Suite 1500
Denver, CO 80202
Telephone: 303-899-7300
Fax: 303-899-7333
E-Mail: rctroyer@hhlaw.com


*Attorneys for Nestlé U.S.A., Inc. and*
*Nestlé Purina PetCare Company*

Case No. 07-21221-CIV-Altonaga

/s/ Omar Ortega

Omar Ortega
Florida Bar Number 0095117
**DORTA & ORTEGA, P.A.**
800 S. Douglas Road
Douglas Entrance Suite 149
Coral Gables, FL 33134

Telephone: 305-461-5454

Fax: 305-461-5226
E-Mail:  ortegalaw@bellsouth.net


Dane H. Butswinkas
Philip A. Sechler
Thomas G. Hentoff
Patrick J. Houlihan
**WILLIAMS & CONNOLLY**
725 12th Street, NW
Washington, DC 20005-3901
Telephone: 202-434-5000
E-Mail: cdangelo@wc.com
dbutswinkas@wc.com
phoulihan@wc.com
psechler@wc.com
thentoff@wc.com

*Attorneys for Mars, Incorporated and Mars
Petcare U.S., Inc.*

\\\MI - 059726/000032 - 115450 v2

Case No. 07-21221-CIV-Altonaga

/s/ Alan G. Greer
Alan G. Greer
Florida Bar Number 123294
**RICHMAN GREER, P.A.**
201 S. Biscayne Blvd., Suite 1000
Miami, FL 33131
Telephone: 305-373-4000
Fax: 305-373-4099
E-Mail: agreer@richmangreer.com


D. Jeffrey Ireland
Brian D. Wright
Laura A. Sanom
**FARUKI IRELAND & COX  P.L.L.**
10 North Ludlow Street
500 Courthouse Plaza, S.W.
Dayton, OH 45402
Telephone: 937-227-3710
Fax: 937-227-3717
E-Mail: djireland@ficlaw.com
bwright@ficlaw.com
lsanom@ficlaw.com

*Attorneys for The Procter & Gamble
Company and The Iams Co.*

Case No. 07-21221-CIV-Altonaga

/s/ Benjamine Reid
Benjamine Reid
Florida Bar Number 183522
Ana Craig
Florida Bar Number 091847
**CARLTON FIELDS, P.A.**
100 SE 2nd Street, Suite 4000
Miami, FL 33131-9101
Telephone: 305-530-0050
Fax: 305-530-0055
E-Mail: breid@carltonfields.com
ovieira@caroltonfields.com

James D. Arden
John J. Kuster
Kara L. McCall
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, NY 10019-6018
Telephone: 212-839-5300
Fax: 212-839-5889
E-Mail: jarden@sidley.com
jkuster@sidley.com
kmccall@sidley.com

*Attorneys for Colgate-Palmolive Company*
*and Hill's Pet Nutrition, Inc.*

\\\MI - 059726/000032 - 115450 v2

Case No. 07-21221-CIV-Altonaga

/s/ Sherril M. Colombo
Sherril M. Colombo
Florida Bar Number 948799
**COZEN O'CONNOR**
200 S. Biscayne Blvd., Suite 4410
Miami, FL 33131
Telephone: 305-704-5940
Fax: 305-704-5955
E-Mail: scolombo@cozen.com

Richard Fama
John J. McDonough
**COZEN O'CONNOR**
45 Broadway
New York, NY 10006
Telephone: 212-509-9400
Fax: 212-509-9492
E-Mail: jmcdonough@cozen.com
rfama@cozen.com

John F. Mullen
**COZEN O'CONNOR**
1900 Market Street
3rd Floor The Atrium
Philadelphia, PA 19103
Telephone: 215-665-2179
E-Mail: jmullen@cozen.com

*Attorneys for Del Monte Foods, Co.*

Case No. 07-21221-CIV-Altonaga

/s/ Lonnie L. Simpson
/s/ S. Douglas Knox
Lonnie L. Simpson
Florida Bar Number 821871
S. Douglas Knox
Florida Bar Number 849871
**DLA PIPER LLP**
101 E. Kennedy Blvd., Suite 2000
Tampa, FL 33602
Telephone: 813-229-2111
Fax: 813-229-1447
E-Mail: lonnie.simpson@dlapiper.com
douglas.knox@dlapiper.com

Amy W. Schulman
Alexander Shaknes
**DLA PIPER LLP**
1251 Avenue of the Americas
New York, NY 10020-1104
Telephone: 212-335-4829
E-Mail: amy.schulman@dlapiper.com
alex.shaknes@dlapiper.com

William C. Martin
**DLA PIPER LLP**
203 N. LaSalle Street, Suite 1900
Chicago, IL 60601
Telephone: 312-368-4027
Fax: 312-236-7516
E-Mail: william.martin@dlapiper.com

*Attorneys for Menu Foods, Inc. and Menu
Foods Income Fund*

\\\MI - 059726/000032 - 115450 v2

Case No. 07-21221-CIV-Altonaga

/s/ Hugh J. Turner, Jr.
Hugh J. Turner, Jr.
Florida Bar Number 203033
**AKERMAN SENTERFITT**
350 E. Las Olas Blvd., Suite 1600
Fort Lauderdale, FL 33301-0006
Telephone: 954-759-8930
Fax: 954-847-5365
E-Mail: hugh.turner@akerman.com

*Attorney for Publix Super Markets, Inc.*
*and H.E. Butt Grocery Company*

/s/ John Brian Thomas Murray, Jr.
John B. T. Murray, Jr.
Florida Bar Number 962759
**SQUIRE SANDERS & DEMPSEY LLP**
1900 Phillips Point West
777 S Flagler Drive, Suite 1900
West Palm Beach, FL 33401-6198
Telephone: 561-650-7200
Fax: 561-655-1509
E-Mail: jbmurray@ssd.com

*Attorneys for PETCO Animal Supplies Stores,*
*Inc., PetSmart Inc., Wal-Mart Stores, Inc.,*
*Target Corporation and Meijer, Inc.*

Case No. 07-21221-CIV-Altonaga

/s/ Robin Lea Hanger
Robin Lea Hanger
Florida Bar Number 177172
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
200 S. Biscayne Boulevard, 40th Floor
Miami, FL 33131-2398
Telephone: 305-577-7040
Fax: 305-577-7001
E-Mail: rlhanger@ssd.com

*Attorneys for PETCO Animal Supplies Stores, Inc.*


/s/ Rolando Andres Diaz
/s/ Maria Kayanan
/s/ Cassidy Yen Dang
Rolando Andres Diaz
Florida Bar Number 963150
Maria Kayanan
Florida Bar Number 305601
Cassidy Yen Dang
Florida Bar Number 16482
**KUBICKI DRAPER**
25 W Flagler Street, Penthouse
Miami, FL 33130-1780
Telephone: 305-982-1212
Fax: 305-374-7846
E-Mail: rd@kubickidraper.com
mek@kubickidraper.com
cyd@kubickidraper.com

*Attorneys for Pet Supermarket, Inc.*

\\\MI - 059726/000032 - 115450 v2

Case No. 07-21221-CIV-Altonaga

/s/ Ralph G. Patino
/s/ Dominick V. Tamarazzo
/s/ Carlos B. Salup
Ralph G. Patino
Florida Bar Number 768881
Dominick V. Tamarazzo
Florida Bar Number 92835
Carlos B. Salup
Florida Bar Number 26952
**PATINO & ASSOCIATES, P.A.**
225 Alcazar Avenue
Coral Gables, Florida 33134
Telephone:  305-443-6163
Fax:  305-443-5635
E-Mail:  rpatino@patinolaw.com
dtamarazzo@patinolaw.com
csalup@patinolaw.com

*Attorneys for Pet Supplies "Plus" and Pet Supplies Plus/USA, Inc.*

\\\MI - 059726/000032 - 115450 v2

Case No. 07-21221-CIV-Altonaga

/s/ Craig Kalil
Craig Kalil
Florida Bar No. 607282
Joshua D. Poyer
Florida Bar No. 653349
**ABALLI, MILNE, KALIL & ESCAGEDO, P.A.**
2250 Sun Trust International Center
One Southeast Third Avenue
Miami, Florida  33131
Telephone:  305-373-6600
Fax:  305-373-7929
E-Mail:  ckalil@aballi.com
jpoyer@aballi.com


W. Randolph Teslik
Andrew Dober
**AKIN GUMP STRAUSS HAUER & FELD**
1333 New Hampshire Avenue, NW
Washington, D.C.  20036
Telephone:  202-887-4000
Fax:  202-887-4288
E-Mail:  rteslik@akingump.com
adober@akingump.com

*Attorneys for New Albertsons, Inc. and Albertson's LLC*

\\\MI - 059726/000032 - 115450 v2

Case No. 07-21221-CIV-Altonaga

/s/ C. Richard Fulmer, Jr.
C. Richard Fulmer, Jr.
Florida Bar No. 0370037
**FULMER LeROY ALBEE BAUMANN &**
**GLASS, PLC**
2866 East Oakland Park Boulevard
Fort Lauderdale, Florida  33306
Telephone:  954-707-4430
Fax:  954-707-4431
E-Mail:  rfulmer@Fulmer.LeRoy.com

James K. Reuss
**LANE ALTON & HORST, LLC**
Two Miranova Place
Suite 500
Columbus, Ohio  43215
Telephone:  (614) 233-4719
E-Mail:  jreuss@lanealton.com

*Attorneys for The Kroger Co. of Ohio*

/s/ Marcos Daniel Jiménez
Marcos Daniel Jiménez
Florida Bar No. 441503
Robert J. Alwine II
Florida Bar No. 404179
**KENNY NACHWALTER, P.A.**
201 South Biscayne Boulevard
1100 Miami Center
Miami, Florida  33131-4327
Telephone:  305-373-1000
Fax:  305-372-1861
E-Mail:  mjimenez@kennynachwalter.com
ralwine@kennynachwalter.com

*Attorneys for Safewy Inc. and The*
*Stop & Shop Supermarket Company LLC*

\\\MI - 059726/000032 - 115450 v2

Case No. 07-21221-CIV-Altonaga

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 14, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the counsel so indicated on the attached Service List.

By: <u>/s/ Adriana Riviere-Badell</u>

<u>**CERTIFICATE OF SERVICE**</u>

**RENEE BLASZKOWSKI, ET AL., VS. MARS, INCORPORATED, ET AL.**
**Case No. 07-21221-CIV-ALTONAGA/TURNOFF**

<u>**SERVICE LIST**</u>

Catherine J. MacIvor
E-mail:    cmacivor@mflegal.com
Jeffrey Eric Foreman
E-mail: jforeman@mflegal.com
Jeffrey Bradford Maltzman
E-mail: jmaltzman@mflegal.com
Darren W. Friedman
E-mail: dfriedman@mflegal.com
Bjorg Eikeland
E-mail: beikeland@mflegal.com
**MALTZMAN FOREMAN PA**
One Biscayne Tower
2 South Biscayne Boulevard,  Suite 2300
Miami, FL 33131-1803
Telephone: (305) 358-6555
Facsimile:  (305) 374-9077

*Attorneys for Plaintiffs*

John B.T. Murray, Jr.
E-mail:    jbmurray@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, Florida 33401-6198
Telephone: (561) 650-7200
Facsimile:  (561) 655-1509

*Attorneys for Defendants PETCO Animal*
*Supplies Stores, Inc., PetSmart, Inc., Wal-Mart*
*Stores, Inc., Target Corporation and Meijer,*
*Inc.*

Rolando Andres Diaz
E-Mail:    rd@kubickdraper.com
Cassidy Yen Dang
E-mail:    cyd@kubickidraper.com
Maria Kayanan
E-mail: mek@kubickidraper.com
**KUBICKI DRAPER**
25 W. Flagler Street
Penthouse
Miami, FL 33130-1712
Telephone: (305) 982-6708
Facsimile:  (305) 374-7846

*Attorneys for Defendant Pet Supermarket, Inc.*

Alexander Shaknes
E-mail:  Alex.Shaknes@dlapiper.com
Amy W. Schulman
E-mail:  amy.schulman@dlapiper.com
Lonnie L. Simpson
E-mail: Lonnie.simpson@dlapiper.com
S. Douglas Knox
E-mail:  Douglas.knox@dlapiper.com
**DLA PIPER LLP**
1251 Avenue of the Americas
New York, New York 10020

*Attorneys for Defendants Menu Foods, Inc.*
*and Menu Foods Income Fund*

<u>CERTIFICATE OF SERVICE</u>

**RENEE BLASZKOWSKI, ET AL., VS. MARS, INCORPORATED, ET AL.**
**Case No. 07-21221-CIV-ALTONAGA/TURNOFF**

<u>SERVICE LIST</u>

William C. Martin
**DLA PIPER LLP**
203 North LaSalle Street
Suite 1900
Chicago, Illinois  60601-1293
E-mail:  William.Martin@dlapiper.com

*Attorneys for Defendants Menu Foods, Inc.*
*and Menu Foods Income Fund*


Gary L. Justice
E-mail:  gjustice@gibsondunn.com
Gail E. Lees
E-mail:  glees@gibsondunn.com
William Edward Wegner
E-mail:  wwegner@gibsondunn.com
**GIBSON DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, California  90071
Telephone:  (213) 229-7000

*Attorneys for Defendant Nutro Products, Inc.*

Omar Ortega
**DORTA AND ORTEGA, P.A.**
Douglas Entrance
800 S. Douglas Road, Suite 149
Coral Gables, Florida 33134
Telephone: (305) 461-5454
Facsimile: (305) 461-5226
E-mail: oortega@dortaandortega.com

*Attorneys for Defendant Mars, Incorporated*
*and Mars Petcare U.S.*

Hugh J. Turner, Jr.
**AKERMAN SENTERFITT**
350 E. Las Olas Boulevard
Suite 1600
Fort Lauderdale, FL 33301-2229
Telephone:  (954) 463-2700
Facsimile:  (954) 463-2224
E-mail:    hugh.turner@akerman.com

*Attorneys for Defendants Publix Super*
*Markets, Inc and H.E. Butt Grocery Co.*

Marty Steinberg
E-mail:  msteinberg@hunton.com
Adriana Riviere-Badell
E-mail:    ariviere-badell@hunton.com
**HUNTON & WILLIAMS, LLP**
Mellon Financial Center
1111 Brickell Avenute, Suite 2500
Miami, FL 33131
Telephone:  (305) 810-2500
Facsimile:  (305  810-2460

*Attorneys for Defendant Nutro Products, Inc.*

Dane H. Butswinkas
E-mail:  dbutswinkas@wc.com
Philip A. Sechler
E-mail:  psechler@wc.com
Thomas G. Hentoff
E-mail:  thentoff@wc.om
Christopher M. D'Angelo
E-mail:  cdangelo@wc.com
Patrick J. Houlihan
E-mail:  phoulihan@wc.com
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C.  200005

*Attorneys for Defendants Mars, Incorported*
*and Mars Petcare U.S.*

## CERTIFICATE OF SERVICE

**RENEE BLASZKOWSKI, ET AL., VS. MARS, INCORPORATED, ET AL.**
**Case No. 07-21221-CIV-ALTONAGA/TURNOFF**

### SERVICE LIST

Benjamine Reid
E-mail: breid@carltonfields.com
Olga M. Vieira
E-mail: ovieira@carltonfields.com
**CARLTON FIELDS, P.A.**
100 S.E. Second Street, Suite 4000
Bank of America Tower at International Place
Miami, Florida 33131-9101
Telephone: (305) 530-0050
Facsimile: (305) 530-0055

*Attorneys for Defendants Colgate-Palmolive*
*Company and Hill's Pet Nutrition, Inc.*

Kara L. McCall
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-2666
E-mail: kmccall@Sidley.com

*Attorneys for Defendants Colgate-Palmolive*
*Company and Hill's Pet Nutrition, Inc.*

Sherril M. Colombo
**COZEN O'CONNOR**
Wachovia Center, Suite 4410
200 South Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 704-5945
Facsimile: (305) 704-5955
E-mail: scolombo@cozen.com

*Attorneys for Defendant Del Monte Foods, Co.*

John J. Kuster
E-mail: jkuster@sidley.com
James D. Arden
E-mail: jarden@sidley.com
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

*Attorneys for Defendants Colgate-Palmolive*
*Company and Hill's Pet Nutrition, Inc.*

Marcos Daniel Jiménez
E-mail: mdj@kennynachwalter.com
Robert J. Alwine II
E-mail: ralwine@kennynachwalter.com
**KENNY NACHWALTER, P.A.**
1100 Miami Center
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 373-1000
Facsimile: (305) 372-1861

*Attorneys for Defendants Safeway, Inc. and*
*The Stop & Shop Supermarket Company LLC*

Richard Fama
E-mail: rfama@cozen.com
John J. McDonough
E-mail: jmcdonough@cozen.com
**COZEN O'CONNOR**
45 Broadway
New York, New York 10006
Telephone: (212) 509-9400
Facsimile: (212) 509-9492

*Attorneys for Defendant Del Monte Foods*

3

### CERTIFICATE OF SERVICE

**RENEE BLASZKOWSKI, ET AL., VS. MARS, INCORPORATED, ET AL.**
**Case No. 07-21221-CIV-ALTONAGA/TURNOFF**

### SERVICE LIST

John F. Mullen
**COZEN O'CONNOR**
1900 Market Street
Philadelphia, PA  19103
Telephone:  (215) 665-2179
Facsimile:  (215) 665-2013
E-mail:  jmullen@cozen.com

*Attorneys for Defendant Del Monte Foods, Co.*

Robert C. Troyer
**HOGAN & HARTSON L.L.P.**
1200 17th Street
One Tabor Center, suite 1500
Denver, Colorado  80202
Telephone:  (303) 899-7300
Facsimile:  (303) 899-7333
E-mail:  rctroyer@hhlaw.com

*Attorneys for Defendants Nestlé USA, Inc. and Nestlé Purina Petcare Co.*

James K. Reuss
**LANE ALTON & HORST, LLC**
Two Miranova Place
Suite 500
Columbus, Ohio  43215
Telephone:  (614) 233-4719
E-mail:  JReuss@lanealton.com

*Attorneys for Defendant The Kroger Co. of Ohio*

Carol A. Licko
**HOGAN & HARTSON L.L.P.**
Mellon Financial Center
1111 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 459-6500
Facsimile: (305) 459-6550
E-mail: calicko@hhlaw.com

*Attorneys for Defendants Nestlé USA, Inc. and Nestlé Purina Petcare Co.*

Craig A. Hoover
E-mail:  cahoover@hhlaw.com
Miranda L. Berge
E-mail:  mlberge@hhlaw.com
**HOGAN & HARTSON L.L.P.**
555 13TH Street, NW
Washington, D.C.  20004
Telephone:  (202) 637-5600
Facsimile:  (202) 637-5910

*Attorneys for Defendants Nestlé USA, Inc. and Nestlé Purina Petcare Co.*

Alan G. Greer
**RICHMAN GREER, P.A.**
Miami Center – Suite 1000
201 South Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 373-4000
Facsimile: (305) 373-4099
E-mail: agreer@richmangreer.com

*Attorneys for Defendants Procter & Gamble Co. and The Iams Co.*

<u>**CERTIFICATE OF SERVICE**</u>

**RENEE BLASZKOWSKI, ET AL., VS. MARS, INCORPORATED, ET AL.**
**Case No. 07-21221-CIV-ALTONAGA/TURNOFF**

<u>**SERVICE LIST**</u>

D. Jeffrey Ireland
E-mail:  djireland@ficlaw.com
Brian D. Wright
E-mail:  Bwright@ficlaw.com
Laura A. Sanom
E-mail:  lsanom@ficlaw.com
**FARUKI IRELAND & COX P.L.L.**
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, Ohio  45402

*Attorneys for Defendant Procter & Gamble*
*Co. and The Iams Co.*

Robin L. Hanger
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
200 S. Biscayne Boulevard
40th Floor
Miami, Florida  33131-2398
Telephone:  (305) 577-7040
Facsimile:  (305) 577-7001
E-mail:  rlhanger@ssd.com

*Attorneys for Defendants PETCO Animal*
*Supplies Stores, Inc.*

Ralph G. Patino
E-mail:  rpatino@patinolaw.com
Dominick V. Tamarazzo
E-mail:  dtamarazzo@patinolaw.com
Carlos B. Salup
E-mail:  csalup@patinolaw.com
**PATINO & ASSOCIATES, P.A.**
225 Alcazar Avenue
Coral Gables, Florida  33134
Telephone:  (305) 443-6163
Facsimile:  (305) 443-5635

*Attorneys for Defendants Pet Supplies "Plus"*
*and Pet Supplies Plus/USA, Inc.*

Robert Valadez
E-mail:  rvaladez@shelton-valadez.com
Javier Thomas Duran
E-mail:  jduran@shelton-valadez.com
**SHELTON & VALADEZ, P.C.**
600 Navarro, Suite 500
San Antonio, Texas  78205
Telephone:  (210) 349-0515
Facsimile:  (210) 349-3666

*Attorneys for Defendant H.E. Butt Grocery Co.*

<u>CERTIFICATE OF SERVICE</u>

**RENEE BLASZKOWSKI, ET AL., VS. MARS, INCORPORATED, ET AL.**
**Case No. 07-21221-CIV-ALTONAGA/TURNOFF**

<u>SERVICE LIST</u>

Craig P. Kalil
E-mail:  ckalil@aballi.com
Joshua D. Poyer
E-mail:  jpoyer@abailli.com
**ABALLI, MILNE, KALIL & ESCAGEDO,**
**P.A.**
2250 Sun Trust International Center
One Southeast Third Avenue
Miami, Florida  33131
Telephone:  (305) 373-6600
Facsimile:  (305) 373-7929

*Attorneys for Defendants New Albertson's Inc.*
*and Albertson's LLC*

W. Randolph Teslik
E-mail:  rteslik@akingump.com
Andrew Dober
E-mail:  adober@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD**
**LLP**
1333 New Hampshire Avenue, NW
Washington, D.C.  20036
Telephone:  (202) 887-4000
Facsimile:  (202) 887-4288

*Attorneys for Defendants New Albertson's Inc.*
*and Albertson's LLC*

C. Richard Fulmer, Jr.
**FULMER, LeROY, ALBEE, BAUMANN &**
**GLASS, PLC**
2866 East Oakland Park Boulevard
Fort Lauderdale, Florida  33306
Telephone:  (954) 707-4430
Facsimile:  (954) 707-4431
E-mail:  rfulmer@Fulmer.LeRoy.com

*Attorneys for Defendant The Kroger Co. of*
*Ohio*

Jason Joffe
**SQUIRE SANDERS & DEMPSY, LLP**
200 South Biscayne Boulevard
Suite 4000
Miami, Florida 33131
Telephone:  (305) 577-7000
Facsimile:  (305) 577-7001
E-mail:  jjoffe@ssd.com

*Attorneys for Defendant Meijer, Inc.*

Mark Whitburn
E-mail:  mwhitburn@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
2100 McKinney Avenue
Suite 1100
Dallas, Texas 75201
Telephone:  (214) 698-3100

*Attorneys for Nutro Products, Inc.*