## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
## CASE NO. 07-21221-CIV-ALTONAGA/TURNOFF

RENEE BLASZKOWSKI, et al.,
individually and on behalf of others
similarly situated,
Plaintiffs/Class Representatives,
                    vs.
MARS, INC., et al.,
Defendants.

_____/

## SUPPLEMENTAL MOTION FOR PROTECTIVE ORDER OF
## DEFENDANT THE KROGER CO.

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and Local Rule 26.1., Defendant The Kroger Co. (hereafter, "Kroger") respectfully moves the Court for a protective order prohibiting Plaintiffs from obtaining certain irrelevant and unnecessary jurisdictional discovery requested in their Fed.R.Civ.P. 30(b)(6) Notice *duces tecum*. Kroger requests that this Court prohibit Plaintiffs from obtaining discovery (1) beyond the appropriate temporal limitations of the class period, (2) regarding subsidiary corporations not named in Plaintiffs' Second Amended Complaint, (3) regarding Kroger's Florida suppliers, and (4) regarding irrelevant website activity.

The bases of this Motion are more fully set forth in the attached Memorandum in Support.

Respectfully submitted,

  /s/ C. Richard Fulmer, Jr.
C. Richard Fulmer, Jr.
Florida Bar No. 0370037

**FULMER LeROY ALBEE**
**BAUMANN & GLASS, PLC**
2866 East Oakland Park Boulevard
Fort Lauderdale, Fl 33306
(954)707-4430/(954)707-4431 (Facsimile)
rfulmer@FulmerLeRoy.com

James K. Reuss (Ohio Bar No. 0022070)
Monica L. Waller (Ohio Bar No. 0070941)
**LANE, ALTON & HORST, LLC**
Two Miranova Pl., 5th Floor
Columbus, Ohio 43215
(614)228-6885/(614)228-0146 (Facsimile)
jreuss@lanealton.com
mwaller@lanealton.com

*Attorneys for The Kroger Co.*

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION

Defendant Kroger respectfully requests that this Court grant this Defendant a

protective order limiting Plaintiffs' jurisdictional discovery to exclude areas of inquiry that

2

are beyond the appropriate scope of jurisdictional discovery and irrelevant to the jurisdictional issues.  Specifically, Kroger asks that the Court impose temporal limitations corresponding to the contended class period, prohibit discovery regarding subsidiary corporations not named in Plaintiffs' Second Amended Complaint, preclude discovery regarding Kroger's Florida vendors and suppliers, and preclude discovery regarding irrelevant website and e-mail activity.

## II.    <u>STATEMENT OF THE CASE</u>

On December 3, 2007, Plaintiffs' filed their Motion to Conduct Personal Jurisdiction Discovery as to several Defendants asserting the defense of lack of personal jurisdiction.  [DE 262].  On December 7, 2007, the jurisdictional Defendants filed their Memorandum in Opposition to Plaintiffs' Motion, citing the inadequacy of the allegations in Plaintiff's Second Amended Complaint as a basis of their opposition to such discovery.  [DE 266].  Defendants also argued that the scope of Plaintiffs' proposed jurisdictional discovery was too broad and attached the Amended Notice of Taking Corporate Representative Deposition *Duces Tecum* as to Personal Jurisdiction Pursuant to Rule 30(b)(6) that Plaintiffs served upon Defendant New Albertsons as an example.  [DE 266-4] The 30(b)(6) Notice identified thirty-two (32) different topic areas about which Plaintiffs sought to question a corporate representative and fifty-six (56) different document requests.

On December 12, 2007, the Court held a hearing and considered arguments on the jurisdictional discovery issues presented by Plaintiffs' motion.  The Court ruled that Plaintiffs would be entitled to jurisdictional discovery, but that, if the scope of the discovery could not be resolved by agreement of the parties, the parties would be back

3

before the Court for further resolution. Notably, the Court was assured by Plaintiffs' counsel that, "I have every confidence that we will be able to narrow down the documents." (See Transcript of December 12, 2007 Hearing at p. 71.) With the New Albertsons' discovery requests before it, the Court also stated that the discovery requests to be directed to the jurisdictional Defendants would "hopefully be narrowed by agreement and, if not, by this Court." (Ibid, pp. 77-78).

On December 15, 2007, three days after the hearing before the Court, counsel for Kroger received an "Amended Re-Notice of Taking Corporate Representative Depositions of The Kroger Co. of Ohio *Duces Tecum* as to Personal Jurisdiction Pursuant to Rule 30(b)(6)." [See attached Exhibit A]. Despite Plaintiffs' counsel's assurance to the Court that she would "narrow down the documents," the Notice directed to Kroger contained seventy-four (74) topic areas about which Plaintiffs sought to question a corporate representative and eighty-four (84) document requests.

As the Court had instructed, the jurisdictional Defendants attempted to resolve their issues regarding jurisdictional discovery with Plaintiffs' counsel, but were unsuccessful. Thereafter, Defendant Safeway filed a Motion for Protective Order on December 17, 2007. [DE 283]. Defendant Kroger filed its Motion for Protective Order the following day [DE 291] and the Court set the matter for a hearing on December 19, 2007 [DE 285]. At the hearing, the Court again asked the parties to meet and to confer in an attempt to resolve the jurisdictional discovery issues. At that juncture, the Court denied Defendants' pending Motions for a Protective Order as moot. [DE 294]. The

4

Court also set a status conference for January 15, 2008[1] to determine whether the parties were able to resolve the outstanding jurisdictional discovery issues.

Noting that there was a very high degree of commonality in the subject areas of the jurisdictional discovery requests sent to all jurisdictional Defendants, counsel for the jurisdictional Defendants contacted Plaintiffs' counsel both before and after the Christmas holiday and requested an opportunity to meet with her in person to discuss limitations on the scope of several subject areas of jurisdictional discovery directed, in common, to all of the jurisdictional Defendants. On January 7, 2008, counsel for each jurisdictional Defendant met with Plaintiffs' counsel at her office - - a conference arranged on the initiative of the jurisdictional Defendants - - in an attempt to resolve the outstanding disagreements over the scope of jurisdictional discovery. Little, if any, progress was made during that meeting with Plaintiffs' counsel. Following that meeting, counsel for Kroger has had two follow-up telephone conferences with Plaintiffs' counsel in an attempt to resolve any remaining jurisdictional discovery issues relating to Kroger. Although Plaintiffs and Kroger have been able to reach an agreement on many discovery issues, the issues that are raised in this motion remain.

Since the parties were last before the Court, the jurisdictional defendants have dwindled down to Kroger. Plaintiffs voluntarily dismissed Meijer, Inc. [DE 301], Stop & Shop [DE 302], H.E. Butt Grocery Company [303], and Safeway [DE 307]. Another Defendant, New Albertson's, Inc., withdrew its personal jurisdiction objection. [DE 306] Counsel for Defendant Pet Supplies Plus has also noted its client's intention to withdraw

---

[1] At Plaintiffs' counsel's request, the January 15, 2008 hearing was postponed. The hearing has since been rescheduled for January 25, 2008.

its personal jurisdiction objection.  Therefore, the only Defendant for which jurisdiction remains an issue is Kroger.

### III.    LAW AND ARGUMENT

The Eleventh Circuit recognizes a qualified right to conduct discovery to establish either specific or general personal jurisdiction.  See, *Posner v. Essex Ins. Co.*, 178 F.3d 1209, at fn. 7 (11th Cir. 1999).  However, the scope of jurisdictional discovery is not unlimited.  Jurisdictional discovery should involve the least intrusive type of inquiries. See, *Fishel v. BASF Group*, 175 F.R.D. 525, 529 (D. Iowa 1997); see also, *Steinberg v. Lancer Management Group LLC*, 2007 U.S. Dist. LEXIS 89422 (S.D. Fla. Dec. 5, 2007); see also, *Mvisible Technologies, Inc. v. Mixxer, Inc.*, 2007 U.S. Dist. LEXIS 18308, (S.D. Fla. March 15, 2007).  Indeed, this Court's Order permitting jurisdictional discovery expressly recognized these limitations.  See [D.E. 251] p. 3, citing *Instabook Corp. v. Instantpublisher.com*, 469 F. Supp. 2d 1120, 1127 (M.D. Fla. 2006) (plaintiff must "explain[] how such discovery would bolster its contentions" regarding personal jurisdiction).

The discovery sought must also add significant facts relevant to the issue of personal jurisdiction.  See, *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000); see also, *Gleneagle Ship Management Co. v. Leondakos*, 602 So. 2d 1282, 1284 (Fla. 1992) ("[w]e adopt the federal courts' policy allowing discovery on questions of jurisdiction because limited discovery in such instances will provide the trial court with additional information on which to base its decision regarding jurisdiction").  Under either the specific or general jurisdiction theory, the only relevant contact for determining personal jurisdiction is that which occurred in the forum state.  See, *Tillotson Corp. v.*

*Top Glove Sdn. Bhd.*, 2007 U.S. Dist. LEXIS 5080; see also, *Hollenbeck v. Comeq, Inc.*, 2007 U.S. Dist. LEXIS 63547, *21 (N.D. N.Y. Aug. 28 2007).

Kroger seeks a protective order because many of Plaintiffs' discovery requests far exceed anything that can be considered "narrowly tailored discovery." Plaintiffs seek discovery that exceeds the appropriate temporal limitations for this action. The discovery also extends beyond the named parties to this action and seeks information regarding suppliers which will add nothing to the jurisdictional analysis. The Court should limit Plaintiffs' discovery to eliminate the inquiry into these areas.

## A.    Plaintiffs' Discovery Requests Exceed the Temporal Scope of the Court's Jurisdictional Analysis.

Most of the proposed topics and document requests by Plaintiffs seek discovery from Kroger over a nine-year period -- from 2000 to the present, and a significant number of the requests contain no temporal limitation whatsoever.[2] Plaintiffs' proposed requests exceed the scope of the limited jurisdictional discovery for two reasons.

First, the relevant time period for assessing a defendant's jurisdictional contacts ends at the time the complaint is filed. In this case, Plaintiffs' original Complaint was filed on May 9, 2007, and Kroger was first named in Plaintiffs' Amended Complaint filed on July 25, 2007[3]. Thus, discovery pertaining to Kroger's forum contacts after these dates is irrelevant to the Court's jurisdictional analysis and should not be permitted.

---

[2] For example, "Exhibit A" of the *Duces Tecum* attached to the Kroger Rule 30(b)(6) Notice seeks unlimited temporal discovery on 20 individual topics. See "Exhibit A" topic no.'s 1, 7, 22, 23, 24, 25, 26, 27, 31, 37, 42, 43, 45, 48, 49, 50, 51, 52, 72 and 74. In addition, "Exhibit B" lists 39 categories of document requests which contain no temporal limitations. See "Exhibit B" request no.'s 2, 4, 20, 23, 24, 25, 27, 34, 35, 36, 37, 39, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 63, 64, 67, 68, 74, 76, 79, 80, 81, 83 and 84.

[3] The Amended Complaint was filed on July 25, 2007 and a Corrected Amended Complaint was filed on July 27, 2007 to correct a scrivener's error. We have assumed that the July 25, 2007 version of the Amended Complaint controls here.

Second, every court that has considered the scope of jurisdictional discovery has limited the review of a defendant's forum contacts to the time the cause of action arose or a reasonable period of years prior to the filing of a complaint. In this case, Plaintiffs' chosen class period of May 9, 2003 -- four years prior to the filing of the Complaint -- should guide this Court's exercise of discretion in determining how far back in time limited jurisdictional discovery should be permitted. Therefore, discovery of Kroger's forum contacts prior to May 9, 2003 is irrelevant and should not be permitted.

### 1.    Discovery of Forum Contacts After the Date of the Complaint Should Not be Permitted.

District courts considering general jurisdiction cases should examine a defendant's contacts with the forum state over a period that is *reasonable* under the circumstances--up to and including the date the suit was filed--to assess whether they satisfy the "continuous and systematic" standard. See ***United States of America  vs. Subklew***, 2001 U.S. Dist. LEXIS 9518, *citing* Metropolitan Life Insurance Co. v. Robertson-Ceco Corp, 84 F.3d 560 569 (2nd Cir. 1996). Similarly, other courts have held that for purposes of analyzing contacts with the forum state to determine personal jurisdiction, the clock stops when the complaint is filed. *See, e.g., United Phosphorus, Ltd. v. Angus Chemical Company*, 43 F. Supp. 2d 904, 911 (N.D. Ill. 1999). This is true despite the existence of claims alleging an ongoing harm. See *Id*.

On its face, Plaintiffs' proposed scope of discovery "to the present" seeks information and documents pertaining to forum contacts long after the dates of the Complaint and Amended Complaint. This discovery is not relevant to the Court's jurisdictional analysis and should not be permitted. Kroger therefore asks that the Court limit the scope of all jurisdictional discovery to end on May 9, 2007, the date of the

8

Original Complaint, or alternatively, on  July 25, 2007, the date of the Amended Complaint.

### 2.    Discovery of Forum Contacts Before the Date of the Complaint Should be Limited to the Proposed Class Period.

Plaintiffs define the class period to begin on  May 9, 2003.  Yet, the vast majority of their jurisdictional discovery requests seek testimony or documents relating to Kroger's business contacts with Florida dating from the year 2000 and beyond -- more than three years before their designated class period and more than seven years before they filed this lawsuit.

As stated above, the Court should examine a defendant's contacts with the forum state over a period that is reasonable under the circumstances to assess whether they satisfy the minimum contacts requirements of the Florida Long-Arm Statute and Constitutional Due Process.  *See Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2nd Cir. 1996); *Woods v. Nova Companies Belize Ltd.*, 739 So.2d 617, 621 (4th DCA 1999).  The determination of what period is reasonable in the context of each case should be left to the court's discretion.  *Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.*, 84 F.3d at 570.

In order to survive Kroger's jurisdictional challenge, Plaintiffs must demonstrate that Kroger had sufficient minimum contacts with Florida either at the time their causes of action arose, the time suit was filed, or within a reasonable period of time immediately prior to the filing of the lawsuit.  *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir.), *cert. denied*, 127 S.Ct. 217 (2006).  Thus, in analyzing jurisdiction, this Court may examine Kroger's contacts, if any, with Florida at the time the cause of action arose. *See, e.g., Cambridge Literary Properties v. W. Goebel Porzellanfabrik*, 295 F.3d 59, 66

9

(1st Cir. 2002); see also, *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987);

see also, *Tecre Co., Inc. v. Buttonpro, Inc.*, 387 F.Supp.2d 927, 930 (E.D.Wis. 2005);

see also, *United States v. Smithfield Foods, Inc.*, 332 F.Supp.2d 55, 61 (D.D.C. 2004);

see also, *Danton v. Innovative Gaming Corp. of America*, 246 F.Supp.2d 64, 70 (D.Me.

2003); see also, *General Motors Corp. v. Ignacio Lopez De Arriortua*, 948 F.Supp. 656,

663 (E.D.Mich. 1996).

Limiting jurisdictional discovery to Plaintiff's proposed class period of May 9,

2003 -- four years prior to the filing of the complaint -- is consistent with the vast

majority of courts that have considered the temporal scope of jurisdictional discovery.

See e.g., *Helicopteros Nacionales De Colombia, S. A. v. Hall,* 466 U.S. 408, 409-11

(1984) (reviewing contacts over a seven year period); *Gates LearJet Corp. v. Jensen,*

743 F.2d 1325, 1330-31 (9th Cir. 1994) (reviewing contacts over a three year period);

*Gates v. Learjet Corp. v. Jensen*, 743 F.2d 1324, 1329, 1330-31 (9th Cir. 1984)

(reviewing contacts over three-year period); *Autonation, Inc. v. Whitlock*, 276 F.Supp.2d

258, 1263 (S.D. Fla. 2003) (reviewing contacts over a five-year period); *United States v.

Subklew*, No. 00-3518-CIV GRAHAM, 2001 U.S. Dist. LEXIS 9518, at *10-11 (S.D. Fla .

2001) (unreasonable to consider contacts beyond five years); *Metropolitan Life Ins. Co.

v. Robertson-Ceco Corp.,* 84 F.3d 560, 569 (2d Cir. 1996) (reviewing contacts over a six

year period).

Because the relevant contacts with the forum begin at the time the cause of

action arises or within a reasonable time before the filing of the complaint, the Court

should limit the scope of jurisdictional discovery to this time. That date is established by

Plaintiffs' chosen class period, which begins May 9, 2003, and Kroger's Florida

activities, if any, occurring before that date are irrelevant to this Court's jurisdictional determination. Accordingly, this Court should not require Kroger to produce any jurisdictional discovery pre-dating May 9, 2003.

**B.** **Plaintiffs Are Not Entitled to Discovery Regarding Subsidiary Corporations Based on the Allegations in the Second Amended Complaint.**

Under Florida law, "[p]ersonal jurisdiction over a resident parent corporation or a resident corporate officer does not necessarily translate into personal jurisdiction over a non-resident subsidiary or wholly-owned corporation." *Davis v. Vinnell Corp.*, 2007 U.S. Dist. LEXIS 62885, *8 (N.D. Fla. Aug. 27, 2007); see also, *Hobbs v. Don Mealey Chevrolet, Inc.*, 642 So. 2d 1149, 1155 (Fla. 5th DCA 1994). There is an exception "where the non-resident corporation is merely the alter ego of the resident owner or parent, over whom the court does have jurisdiction." *Id.* at 1155-56 ("[m]ost courts . . . have held that a subsidiary is subject to personal jurisdiction based on its parent's contacts with the forum only if the subsidiary and parent are alter egos"). By the same token, a district court may exercise general jurisdiction over an out-of-state corporation based on the activities of a subsidiary only where the subsidiary itself is subject to the Court's general jurisdiction and the corporations are so integrated as to form a single business enterprise. See, *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 428 (5th Cir. 2005).

Establishing an alter-ego theory of liability is not an easy burden. To pierce the corporate veil it is insufficient for a plaintiff to plead merely that a corporation is an "alter ego" or "mere instrumentality" of the primary, or sole, shareholder, but must also plead "improper conduct" on the part of the shareholder. See, *Dania Jai-Alai Palace, Inc. v.*

11

*Sykes*, 450 So. 2d 1114, 1121 (Fla. 1984); *see also*, *Lipsig v. Ramlawi*, 760 So. 2d 170, 187 (Fla. 3d DCA 2000); see also, *USP Real Estate Investment Trust v. Discount Auto Parts, Inc.*, 570 So. 2d 386, 390 (Fla. 1st DCA 1990).

Similarly, a plaintiff is not entitled to jurisdictional discovery regarding a subsidiary unless the allegations in the complaint are sufficient. The plaintiff must set forth sufficient allegations that the subsidiary is subject to the Court's general jurisdiction and part of a single business enterprise with the parent corporation. See, *Stutts v. De Dietrich Group*, 465 F. Supp. 2d 156, 169 (D.N.Y. 2006); see also, *Jazini by Jazini v. Nissan Motor Co.*, 148 F.3d 181 (2d Cir. 1998); see also, *In re Ski Train Fire in Kaprun, Aus.*, 343 F. Supp. 2d 208, 217 (D.N.Y. 2004).

In this case, Plaintiffs have asserted no claims against any subsidiary of Kroger. Plaintiffs also have not asserted that Kroger was engaged in a single business enterprise with any parent or subsidiary corporation so as to establish personal jurisdiction over Kroger based upon any such subsidiary's contacts with the State of Florida. Plaintiffs have not asserted any alter ego allegations relating to Kroger and any parent or subsidiary corporation whatsoever. Therefore, Plaintiffs should not be entitled to jurisdictional discovery on this issue.

Nonetheless, Plaintiffs seek to engage in a fishing expedition on the topic of subsidiary corporations through their discovery requests.[4] For example, Plaintiffs have requested:

> 6.    Each and every document in Kroger Co. of Ohio's custody or control which reflect the corporate structure of Kroger Co. of Ohio

---

[4] The topic areas relating to subsidiaries include topic areas #1-4, 7, 19, 53, 54, 58, 60, 63-64 and 67-68. The document requests include request #5-6, 14, 17, 20, 30 and 34. Kroger has agreed to respond to these requests to the extent that they seek information about Kroger, but maintains an objection to the portions of these requests that seek information about other entities which are not parties to this lawsuit.

and/or any predecessor corporation, subsidiary(ies), parent company(ies) and sister corporation(s) of Kroger Co. of Ohio from 2000 to the present.

14.    Each and every document in Kroger Co. of Ohio's custody or control reflecting the corporate structure of Florists' Transworld Delivery, Inc., Tom Thumb Food Stores, Tom Thumb Food & Pharmacy, Littman Jewelers, Fred Meyer Jewelers and/or the relationship between those entities and Kroger Co. of Ohio between 2000 to the present.

17.    All documents reflecting the business activities, operations and business ventures of Florists' Transworld Delivery, Inc., Tom Thumb, Tom Thumb Food Stores, Tom Thumb Food & Pharmacy in Florida, Littman Jewelers and Fred Meyers Jewelers from 2000 through the present.

34.    Copies of contracts, including but not limited to joint ventures, letter(s) of intent, and memorandum(s) of understanding, entered into between and amongst Kroger Co. of Ohio and the following entities relating to business activities in Florida (regardless of whether the word "Florida" is mentioned in such document):

    a)    Florists' Transworld Delivery;

    b)    Tom Thumb

    c)    Tom Thumb Food Stores;

    d)    Tom Thumb Food & Pharmacy;

    e)    Littman Jewelers'

    f)    Fred Meyer Jewelers; and

    g)    Any third party with which Kroger Co. of Ohio does business in Florida.

(See, Kroger Rule 30(b)(6) Notice at Exhibit B, attached as Exhibit A.)  Again, Plaintiffs

have not asserted any claims against these entities in this case, nor have Plaintiffs

alleged - - nor could they - - that Kroger is engaged in a single enterprise with any of

13

these companies.  Therefore, Plaintiffs are not entitled to engage in any jurisdictional discovery on these issues.

Plaintiffs chose whom to sue and what to allege against each Defendant.  They should not be permitted to now seek wide-ranging discovery from non-parties or on topics far outside the pleadings they have drafted, simply by arguing that the proverbial fishing expedition may allow them to stumble across some information in the process that could be relevant.  Plaintiffs cannot fall back on the position that Kroger is in control of the information that would uncover these relationships as justification for its broad-reaching requests.  The Court in *Stutts v. De Dietrich Group*, 465 F. Supp. 2d 156, 169 (D.N.Y. 2006) rejected this same argument when it was advanced by the plaintiff in that case, explaining that:

> The Court "recognize[s] that without discovery it may be extremely difficult for plaintiffs . . . to make a prima facie showing of jurisdiction over a foreign corporation that they seek to sue in the federal courts in New York. That, however, is the consequence of the problems inherent in attempting to sue a foreign corporation that has carefully structured its business so as to separate itself from the operation of its wholly-owned subsidiaries in the United States -- as it properly may do."

See, *Stutts*, supra at n. 12, citing, *Jazini*, 148 F.3d at 186.

The Court should reach the same conclusion here.  Plaintiffs have not named any of the entities it claims are subsidiaries of Kroger.  Plaintiffs have not alleged that any of these subsidiaries are alter egos or engaged in a common business enterprise with Kroger.  Plaintiffs' complaint even fails to allege that any of these subsidiaries are themselves subject to the Court's jurisdiction.  Therefore, Plaintiffs are not entitled to any discovery on these entities.

14

C.    **Whether Kroger Purchased Goods From Florida Vendors Is Entirely Irrelevant To The Court's Personal Jurisdiction Analysis As A Matter Of Law.**

It is well-settled that merely purchasing materials, even if done regularly, is not sufficient contact to support personal jurisdiction not arising from those purchases. *Helicópteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 418 (1984) (citing *Rosenberg Bros. & Co. v. Curtis Brown Co.*, 260 U.S. 516, 518 (1923)); *Consolidated Development Corp v. Sherritt Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000). The facts of controlling law are analogous to those at issue here.

In *Rosenberg*, for example, the Supreme Court held that because the only business alleged to have been transacted by the company in New York was the purchase of goods there, "even if occurring at regular intervals, [such business] would not warrant the inference that the corporation was present within the jurisdiction of the State." *Id.*

Likewise, in *Helicópteros*, the Columbian defendant corporation, Helicol, negotiated a contract for services and supplies in Texas, accepted checks drawn on a Houston bank, purchased more than $4 million worth of helicopters, equipment and received training services from Bell Helicopter in Fort Worth, sending management and maintenance personnel to Bell Helicopter's Fort Worth facility for training. *Id.* at 411, 416. Relying on its holding in *Rosenberg*, the Supreme Court again held that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Id.* at 418.

The Southern District of Florida also cited both these holdings with approval in the *Consolidated* case, affirming dismissal of claims against Canadian defendants and their affiliates on grounds that the district court lacked personal jurisdiction. The Southern District "emphasize[d] that a nonresident corporation's contacts with the forum that are unrelated to the litigation must be substantial in order to warrant the exercise of personal jurisdiction . . . . For example, merely purchasing materials, even if done regularly, is not contact sufficient to support personal jurisdiction." 216 F.3d at 1292 (citing *Rosenberg*, 260 U.S. at 518, and *Helicópteros*, 466 U.S at 418).

Despite the unequivocal case law on purchases in a forum state, Plaintiffs demand irrelevant (and unnecessarily duplicative) discovery of Kroger,[5] such as the requests for documents contained in Exhibit B to the 30(b)(6) Notice excerpted below:

8.    All documents reflecting any and all of Kroger of Ohio's suppliers from Florida from 2000 through the present.

***

15.    All documents reflecting the Florida suppliers for Kroger Co. of Ohio stores, from 2000 to present, including, but not limited to, purchase orders and invoices.

---

[5] The topic areas relating to suppliers and vendors include topic areas #4-5, 12, 16-17 and 39. Document requests relating to suppliers and vendors include requests #8, 15-16, 21 and 38-40.

\*\*\*

21.    All documents in Kroger Co. of Ohio's custody or control reflecting all Florida suppliers and other Florida entities which Kroger Co. of Ohio has engaged in Florida from 2000 to the present.

\*\*\*

38.    Documents reflecting product(s) shipped to and from Florida from 2000 to the present.

39.    Documents reflecting Kroger Co. of Ohio's utilization of ports and airports in Florida for export, import or shipment interstate of any product.

40.    Documents reflecting supplies received from Florida by Kroger Co. of Ohio from 2000 to present.

(See, Kroger Rule 30(b)(6) Notice, attached as Exhibit B.)

Each of these requests is directed at Kroger's purchases in the state of Florida. According to the courts in *Helicopteros*, *Rosenberg*, and *Consolidated Development Corporation*, these purchases are irrelevant to the question of personal jurisdiction. Therefore, Plaintiffs should be prohibited from making these inquiries.

**D.    Plaintiffs' Requests For Documents Related To Kroger's Website and E-Mails Are Overly Broad and Largely Irrelevant to the Jurisdictional Analysis.**

The Southern District of Florida recently held that a passive website "cannot possibly create general jurisdiction." *Rexam Airspray, Inc. v. Arminak*, 471 F. Supp.2d 1292, 1301 (S.D. Fla. 2007). *The Rexam* Court defines "passive" as a website that does not allow direct contracting to purchase merchandise directly from the defendant's website. *Id.* (citing *Miami Breakers Soccer Club, Inc. v. Women's United Soccer Ass'n*, 140 F. Supp. 2d 1325, 1329-30 (S.D. Fla. 2001) ("A passive web site only makes information available to those interested in viewing the website in foreign jurisdictions whereas an active web site allows for those interested in foreign jurisdictions to enter into contracts over the Internet with the defendant.")

Even an interactive website may not be sufficient to create general jurisdiction if revenue earned from these websites is minimal. The Eleventh Circuit has held that for the operation of an interactive website to establish general jurisdiction over the website owner, the owner must derive, at a minimum, more than 5% of its revenues from website sales to Florida purchasers. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (no general jurisdiction where Florida sales comprised 5%); *see also StairMaster Sport/Medical Prods. v. Pacific Fitness Corp.* 916 F. Supp. 1049, 1052-53 (W.D. Wash. 1994), affirmed, 78 F.3d 602 (Fed. Cir. 1996) (no general jurisdiction where forum-state sales comprised 3%); *Baker v. Carnival*

*Corp.*, 2006 U.S. Dist. LEXIS 85114, 2006 WL 3360418, at *4 (S.D. Fla. Nov. 20, 2006) (no general jurisdiction where Florida sales comprised 1.5%).

Plaintiffs' inquiry into the details of Kroger's internet presence comprises more than thirty-two (32) topic areas and twenty-six (26) document requests.[6]    These requests seek information regarding non-interactive contacts with Kroger the Kroger website, e-mail contact with Kroger, and contact with other entities for which the Kroger website provides links.    However, the only information that is relevant to the jurisdictional analysis is the proportion of Kroger's revenue that it derives from website sales to Florida purchasers. See, *Horizon Aggressive Growth*, supra.  Kroger does not object to providing information regarding revenue it earns from purchases by Florida residents through its website.    However, Kroger should not be forced to produce documents or a representative to be deposed on every aspect of its website operation. Kroger asks that this Court limit the Plaintiffs' discovery requests relating to internet activity to revenues earned by Kroger.

## IV.    RULE 7.1 CERTIFICATION

The undersigned counsel certifies that he has conferred with Plaintiffs' counsel, as reflected above, in a good faith effort to resolve the issues raised in this Motion but has been unable to do so.  Plaintiffs and Kroger have resolved the jurisdictional discovery issues other than those referenced in this Motion.

## V.    CONCLUSION

For the foregoing reasons, Defendant Kroger respectfully requests that this Court enter a protective order and limit the scope of Plaintiffs' jurisdictional discovery to this Defendant.  Specifically, Kroger requests that the Court impose a temporal limitation upon jurisdictional discovery to correspond with the period of time from the beginning of the contended class period on May 9, 2003 through the date of the filing of Plaintiffs' original Complaint on May 9, 2007, or, alternatively, to the date of the filing of the Amended Complaint, in which Kroger was first joined in this action, on July 25, 2007. Kroger further requests that the Court prohibit any discovery relating to subsidiary corporations or other entities not named in this action as Plaintiffs have not asserted sufficient allegations that any such subsidiaries or entities are engaged in a common business enterprise with, or otherwise alter egos of, Kroger.  Kroger also requests that this Court preclude any discovery regarding Kroger's vendors and suppliers in the state of Florida because such information is not relevant to the jurisdictional analysis. Finally, Kroger asks that this Court prohibit any discovery regarding irrelevant website and e-mail activity.

Respectfully submitted,
 /s/ C. Richard Fulmer, Jr.
C. Richard Fulmer, Jr.
Florida Bar No. 0370037
**FULMER LeROY ALBEE**

---

[6] The topic areas relating to internet or e-mail include topic areas #7, 20-25, 27-39, 41-44, 46-48, 50-51, 54-55 and 57.  The document requests relating to internet or e-mail include document requests #42-44, 46-47, 49-60, 62-69 and 72.

**BAUMANN & GLASS, PLC**
2866 East Oakland Park Boulevard
Fort Lauderdale, Fl 33306
(954)707-4430/(954)707-4431 (Facsimile)
rfulmer@FulmerLeRoy.com

James K. Reuss (Ohio Bar No. 0022070)
Monica L. Waller (Ohio Bar No. 0070941)
**LANE, ALTON & HORST, LLC**
Two Miranova Pl., 5th Floor
Columbus, Ohio 43215
(614)228-6885/(614)228-0146 (Facsimile)
jreuss@lanealton.com
mwaller@lanealton.com

*Attorneys for The Kroger Co.*

18