UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 07-21221-CIV-ALTONAGA/TURNOFF

RENEE BLASZKOWSKI, *et al.*,
individually and on behalf of
others similarly situated,

        Plaintiffs,

vs.

MARS, INCORPORATED, *et al.*,

        Defendants.
_____/

**DEFENDANTS' CONSOLIDATED MOTION TO DISMISS PLAINTIFFS' THIRD
AMENDED CLASS ACTION COMPLAINT AND INCORPORATED
<u>MEMORANDUM OF LAW</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF CONTENTS ................................................................................................. i

MOTION ..................................................................................................................... 1

MEMORANDUM OF LAW—INTRODUCTION .................................................... 4

<u>BACKGROUND</u> ...................................................................................................... 5

      A.     Through Its Multiple Iterations, Plaintiffs' Complaint Has Not Progressed Beyond a Generalized Barrage Against the Entire Pet Food Industry. ............................................................................... 5

      B.     Both State and Federal Administrative Agencies Regulate the Pet Food Industry Heavily ...................................................................... 7

<u>ARGUMENT</u> ............................................................................................................ 11

      I.     This Court Should Dismiss the TAC as to All Defendants Because Plaintiffs Do Not Allege Legally Cognizable Injury to Themselves as Individuals Sufficient to Confer Standing or to Satisfy Fed. R. Civ. P. 8(a) or 12(b)(6). ................................................................................ 14

      A.     The TAC Alleges Insufficient Facts to Show Named Plaintiffs' Standing as Individuals. ....................................................................... 16

      B.     The TAC Fails to Meet the Requirements of Rule 8 and Rule 12(b)(6). ............................................................................................... 24

           1.     Plaintiffs Fail to Allege That Any of Them Relied on Any Particular Defendant's Advertising or Marketing. ............. 27

           2.     The TAC Does Not Allege Which Defendants' Products, If Any, Caused Harm to Plaintiffs' Pets ...................... 29

      II.     Each Count Alleged in the TAC Warrants Dismissal on Independent Grounds ............................................................................................... 32

      A.     Plaintiffs Fail to Allege Their Fraud-Based Claims (Counts I-III) with Sufficient Particularity. .............................................................. 32

           1.     The TAC Fails to Identify "Who" Did "What" to "Whom" and "When." ............................................................. 35

           2.     The TAC Fails to Allege Any Facts Demonstrating That Any Defendant's Statements Caused Any Plaintiff to Alter Any Purchasing Decision. .............................................. 37

           3.     The TAC Fails to Allege That Any Plaintiff Suffered Harm as a Result of Any Fraudulent Statement. ......................... 39

i

**TABLE OF CONTENTS** (*continued*)

Page

B. Plaintiffs' Consumer Protection Act Claim (Count III) Fails to State a Claim.................................................................................... 40

  1. FDA and AAFCO Regulate Pet Food, Including Ingredients and Labeling. ................................................ 41

  2. Most States Have Adopted the AAFCO Regulations, Creating a "Safe Harbor" Under the Consumer Protection Statutes.................................................... 46

C. The Economic Loss Rule Bars Plaintiffs' Claim for Negligence (Count IV). .................................................................................. 48

D. Plaintiffs Fail to State a Claim for Strict Products Liability (Count V)...................................................................................... 49

E. Plaintiffs' Claim for Injunctive Relief (Count VI) Is Not a Substantive Claim and Fails in Any Event............................................ 51

  1. The Injunctive Relief Count Cannot Function as an Independent Claim, and Plaintiffs Fail Adequately to Allege Inadequacy of Legal Remedies or Irreparable Harm. ................................................................. 51

  2. If Granted, Plaintiffs' Requested Injunctive Relief Would Violate the First Amendment to the United States Constitution.................................................. 53

F. Plaintiffs' Failure to Allege Privity Bars Their Warranty Claims (Counts VII and VIII)................................................................ 55

  1. Plaintiffs Fail to Allege Facts Establishing Privity with Regard to Any Defendant. .......................................... 56

  2. Plaintiffs Cannot Allege Privity with Respect to the Manufacturer Defendants........................................... 57

G. Plaintiffs' Unjust Enrichment Claim (Count IX) Does Not State a Legally Cognizable Claim. ........................................................... 58

III. This Court Should Dismiss the TAC as to the Nonresident Defendant Kroger for Lack of Personal Jurisdiction................................................... 60

A. Plaintiffs Must Satisfy Their Burden to Show That This Court Has Personal Jurisdiction over Kroger Under the Florida Long-Arm Statute and That the Assertion of Such Jurisdiction Comports with Due Process. .......................................................... 60

  1. Plaintiffs Must Carry Their Burden Under the Eleventh Circuit's Two-Part Jurisdictional Analysis................................ 60

  2. Plaintiffs Must Carry Their Burden Under the Florida Long-Arm Statute................................................ 62

## TABLE OF CONTENTS (*continued*)

Page

3. Plaintiffs Must Show That the Assertion of Jurisdiction over Kroger Would Comport with Due Process. ........................ 64

B. Plaintiffs Have Failed to Meet Their Burden to Plead Sufficient Material Facts to Establish the Basis of Personal Jurisdiction Against Kroger. .................................................................... 65

    1. Introduction ........................................................................ 65

    2. Kroger's Appointment of a Registered Agent and Its Qualification to Conduct Business in the State of Florida Do Not Establish General Personal Jurisdiction. ............ 67

    3. The Presence of Independent Subsidiary Corporations Doing Business in the State of Florida Does Not Confer General Personal Jurisdiction over Kroger. ............................... 68

    4. Kroger's Extremely Limited Commercial Sales Activity in the State of Florida Falls Well Short of the Threshold Recognized by This Court as Affording a Basis of General Personal Jurisdiction. ..................................... 70

    5. The Limited Sales of Flowers and Gourmet Fruit Baskets to Florida Residents from Partner Websites Accessible Through the "Kroger.com" Website Does Not Afford a Basis of General Personal Jurisdiction over Kroger. ..................................................................... 73

    6. Kroger's Purchases from Florida Vendors Do Not Afford a Basis of General Personal Jurisdiction over Kroger. ................................................................................. 74

    7. Kroger Does Not Have Employees with Business Addresses in Florida. ........................................................ 76

C. The Exercise of Personal Jurisdiction over Kroger Would Violate Fundamental Principles of Due Process. ................................. 77

CONCLUSION ......................................................................................... 80

APPENDIX A ........................................................................................... 81

APPENDIX B ........................................................................................... 82

APPENDIX C ........................................................................................... 84

APPENDIX D ........................................................................................... 86

APPENDIX E ........................................................................................... 89

# TABLE OF AUTHORITIES

Cases

*3B TV, Inc. v. State,*
  794 So. 2d 744 (Fla. 1st DCA 2001) ................................................................. 46

*Adstep, Inc. v. Freeman Decorating Co.,*
  No. 3:02-cv-1002-J-21 HTS, 2003 WL 25276323 (M.D. Fla. Sept. 16, 2003) ..................... 75

*Ala. v. U.S. Army Corps of Eng'rs,*
  424 F.3d 1117 (11th Cir. 2005) ....................................................................... 52

*Alan Richard Textiles, Ltd. v. Vertilux, Inc.,*
  627 So. 2d 529 (Fla. 3d DCA 1993) .................................................................. 75

*Al-Babtain v. Banoub,*
  No. 8:06-cv-1973-T-30TGW, 2007 WL 2774210 (M.D. Fla. Sept. 24, 2007) .................... 26

*Aldon Indus., Inc. v. Don Myers & Assoc., Inc.,*
  517 F.2d 188 (5th Cir. (Fla) 1975) ................................................................... 30

*Allison v. McGhan Med. Corp.,*
  184 F.3d 1300 (11th Cir. 1999) ....................................................................... 28

*Aluminator Trailers, L.L.C. v. Loadmaster Aluminum Boat Trailers, Inc.,*
  832 So. 2d 822 (Fla. 2d DCA 2002) ................................................................. 75

*Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.,*
  390 F. Supp. 2d 1170 (M.D. Fla. 2005) ......................................................... 53, 58

*Am. Investors Life Ins. Co. v. Webb Life Ins. Agency, Inc.,*
  876 F. Supp. 1278 (S.D. Fla. 1995) .................................................................. 62

*Am. Overseas Marine Corp. v. Patterson,*
  632 So. 2d 1124 (Fla. 1st DCA 1994) .......................................................... 63, 64

*Anderson v. Smithfield Foods, Inc.,*
  207 F. Supp. 2d 1358 (M.D. Fla. 2002) ............................................................. 34

*Angel Music, Inc. v. ABC Sports, Inc.,*
  112 F.R.D. 70 (S.D.N.Y. 1986) ....................................................................... 23

*Asahi Metal Indus. Co. Ltd. v. Superior Court of California,*
  480 U.S. 102 (1987) ............................................................................... 65, 79

*Assoc. Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.,*
  197 F.3d 1070 (11th Cir. 1999) ............................................................. 72, 75, 77

*Atlantic Nat'l Bank of Fla. v. Vest,*
  480 So. 2d 1328 (Fla. 2d DCA 1985) ........................................................ 34

*Attorney's Title Ins. Fund, Inc. v. Regions Bank,*
  491 F.Supp.2d 1087 (S.D. Fla. 2007) ........................................................ 26

*Autonation, Inc. v. Whitlock,*
  276 F. Supp. 2d 1258 (S.D. Fla. 2003) ...................................................... 63

*Barry v. Mortgage Servicing Acquisition Corp.,*
  909 F. Supp. 65 (D.R.I. 1995) .................................................................. 62

*Bearry v. Beech Aircraft Corp.,*
  818 F.2d 370 (5th Cir. 1987) ............................................................. 72, 75

*Bell Atlantic Corp. v. Twombly,*
  127 S. Ct. 1955 (2007) .............................................. 1, 13, 24, 25, 27, 29

*Berenguer v. Warner-Lambert Co.,*
  No. 02-05242, 2003 WL 24299241 (Fla. Cir. Ct. July 31, 2003) ........................... 38

*Berry v. Budget Rent A Car Syss., Inc.,*
  497 F. Supp. 2d 1361 (S.D. Fla. 2007) .................................................. 24, 27, 38

*Biospherics, Inc. v. Forbes, Inc.,*
  151 F.3d 180 (4th Cir. 1998) .................................................................. 55

*Blackston v. Shook and Fletcher Insulation Co.,*
  764 F.2d 1480 (11th Cir. 1985) .............................................................. 31

*Bolger v. Youngs Drug Prod., Corp.,*
  463 U.S. 60 (1983) ............................................................................ 55

*Bowen v. First Family Fin. Servs., Inc.,*
  233 F.3d 1331 (11th Cir. 2000) .............................................................. 17

*Bowleg v. Bowe,*
  502 So. 2d 71 (Fla. 3d DCA 1987) .......................................................... 58

*Box Office Entertainment, LLC v. Brian D. Gordon, CPA, P.A.,*
  No. 05-21010, 2007 WL 1362898 (S.D. Fla. May 9, 2007) ............................... 33

*Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.,*
  288 F.3d 1012 (7th Cir. 2002) ............................................................... 21

*Briehl v. GMC,*
  172 F.3d 623 (8th Cir. 1999) ................................................................ 21

*Brogdon v. Nat'l Healthcare Corp.*,
  103 F. Supp. 2d 1322 (N.D. Ga. 2000) ................................................................ 47

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
  116 F.3d 1364 (11th Cir. 1997) ................................................................ 33, 34

*Brown v. Kelly*,
  244 F.R.D. 222 (S.D.N.Y. 2007) ................................................................ 22

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ................................................................ 64

*Burton v. William Beaumont Hosp.*,
  373 F. Supp. 2d 707 (E.D. Mich. 2005) ................................................................ 47, 78

*Canady v. Allstate Ins. Co.*,
  No. 96CV0174, 1997 WL 33384270 (W.D. Mo. June 19, 1997) ................................ 23

*Casa Clara Condo. Ass'n, Inc. v. Charley Toppino & Sons, Inc.*,
  620 So. 2d 1244 (Fla. 1993) ................................................................ 48

*Cate v. Oldham*,
  707 F.2d 1176 (11th Cir. 1983) ................................................................ 53

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
  447 U.S. 557 (1980) ................................................................ 54

*City of Marietta v. CSX Transp., Inc.*,
  196 F.3d 1300 (11th Cir. 1999) ................................................................ 52

*Clark v. Boeing Co.*,
  395 So. 2d 1226 (Fla. 1981) ................................................................ 50, 51

*Consolidated Dev. Corp. v. Sherritt, Inc.*,
  216 F.3d 1286 (11th Cir. 2000) ................................................................ 67, 69

*Cordova v. Lehman Bros., Inc.*,
  No. 05-21169-CIV, 2007 WL 4287729 (S.D. Fla. Dec. 7, 2007) ................................ 37, 39

*Crowe v. Paragon Relocation Res., Inc.*,
  506 F. Supp. 2d 1113 (N.D. Fla. 2007) ................................................................ 72, 77

*Dalton v. R & W Marine, Inc.*,
  897 F.2d 1359 (5th Cir. 1990) ................................................................ 72, 75

*Davis v. Coca-Cola Bottling Co. Consol.*,
  No. 05-12988, 2008 WL 314962 (11th Cir. Feb. 6, 2008) ................................ 6

*Della Ratta v. Della Ratta,*
   927 So. 2d 1055 (Fla. 4th DCA 2006) .......................................................... 58

*Doug Grant, Inc. v. Greate Bay Casino Corp.,*
   3 F. Supp. 2d 518 (D.N.J. 1998) ................................................................ 47

*Dura Pharms., Inc. v. Broudo,*
   544 U.S. 336 (2004) .................................................................................... 25

*Edenfield v. Fane,*
   507 U.S. 761 (1993) .................................................................................... 55

*Einmo v. Aecom Gov't Serv. Inc.,*
   No. 8:06-cv-1371-T-27TBM, 2007 WL 2409816, *6 (M.D. Fla. Aug. 21, 2007) ................. 77

*Eirman v. Olde Discount Corp.,*
   697 So. 2d 865 (Fla. 4th DCA 1997) .................................................... 46, 48

*Elend v. Basham,*
   471 F.3d 1199 (11th Cir. 2006) ................................................................ 16

*Elizabeth N. v. Riverside Group, Inc.,*
   585 So. 2d 376 (Fla. 1st DCA 1991) ......................................................... 55

*Flamenbaum v. Orient Lines, Inc.,*
   No. 03-22549-CIV, 2004 WL 1773207 (S.D. Fla. July 20, 2004) ................. 36, 37, 57

*Focus on the Family v. Pinellas Suncoast Transit Auth.,*
   344 F.3d 1263 (11th Cir. 2003) ................................................................ 16

*Fraker v. KFC Corp.,*
   No. 06-CV-01284-JM, 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007) ................. 39

*Fullman v. Graddick,*
   739 F.2d 553 (11th Cir. 1984) ................................................................ 27

*Future Tech. Today, Inc. v. OSF Healthcare Sys.,*
   218 F.3d 1247 (11th Cir. 2000) .......................................................... 61, 77

*Garcia v. Santa Maria Resort, Inc.,*
   Civ. No. 07-10017, 2007 WL 4127628 (S.D. Fla. Nov. 15, 2007) ................. 29, 33

*Gen. Cigar Holdings, Inc. v. Altadis, S.A.,*
   205 F. Supp. 2d. 1335 (S.D. Fla. 2002) .......................................... 69, 70, 77

*Griffin v. Dugger,*
   823 F.2d 1476 (11th Cir. 1987) ................................................................ 21

*Haun v. Don Mealy Imports, Inc.*,
    285 F. Supp. 2d 1297 (M.D. Fla. 2003) ............................................................. 39

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) ................................................................................... 63, 75

*Hoyte v. Yum! Brands, Inc.*,
    489 F. Supp. 2d 24 (D.D.C. 2007) ............................................................... 20, 39

*Huntsman Pkg. Corp. v. Kerry Pkg. Corp.*,
    992 F. Supp. 1439 (M.D. Fla. 1998) ................................................................. 59

*Ikonen v. Hartz Mountain Corp.*,
    122 F.R.D. 258 (S.D. Cal. 1988) ...................................................................... 30

*In re Cascade Int'l Sec. Litig.*,
    840 F. Supp. 1558 (S.D. Fla. 1993) .................................................................. 28

*In re Enron Corp. Secs., Derivative & ERISA Litig.*,
    No. MDL-1446, Civ.A. H-01-3624, 2004 WL 405886 (S.D. Tex. Feb. 25, 2004) ................ 22

*In re Managed Care Litig.*,
    150 F. Supp. 2d 1330 (S.D. Fla. 2001) .............................................................. 38

*In re Tri-State Crematory Litig.*,
    215 F.R.D. 660 (N.D. Ga. 2003) ...................................................................... 23

*Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*,
    891 So. 2d 532 (Fla. 2004) .............................................................................. 48

*Instituto de Prevision Militar v. Merrill Lynch & Co., Inc.*,
    No. 05-22721-CIV, 2007 WL 2900318 (S.D. Fla. Sept. 28, 2007) ......................... 12

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ................................................................................... 64, 65

*J.P. Morgan Trust Co., N.A. v. Potash Corp. of Saskatchewan, Inc.*,
    No. 3:05-cv-587-J-32MCR, 2007 U.S. Dist. Lexis 23872 (M.D. Fla. Mar. 30, 2007) ........... 75

*Jackson v. BellSouth Telecomms.*,
    372 F.3d 1250 (11th Cir. 2004) ....................................................................... 29

*Jacobs v. Osmose, Inc.*,
    No. 01-944-CIV, 2002 WL 34241682 (S.D. Fla. Jan. 3, 2002) ......................... 56, 57

*James v. Meow Media, Inc.*,
    300 F.3d 683 (6th Cir. 2002) ........................................................................... 55

*Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.,*
  175 F.3d 848 (10th Cir. 1999) ................................................................. 55

*Keeton v. Hustler Magazine, Inc.,*
  465 U.S. 770 (1984) ...................................................................... 72, 78

*Klay v. United Healthgroup, Inc.,*
  376 F.3d 1092 (11th Cir. 2004) ............................................................... 52

*Klein v. Council of Chem. Assocs.,*
  587 F. Supp. 213 (E.D. Pa. 1984) ............................................................ 32

*Kozial v. Bombardier-Rotax GMBH, Motorenfabrik,*
  129 Fed. Appx. 543 (11th Cir. 2005) ........................................................ 69

*Kramer v. Piper Aircraft Corp.,*
  520 So. 2d 37 (Fla. 1988) .................................................................. 56

*Lauzon v. Joseph Ribkoff, Inc.,*
  77 F. Supp. 2d 1250 (S.D. Fla. 1999) ....................................................... 60

*Leider v. Ralfe,*
  387 F. Supp. 2d 283 (S.D.N.Y. 2005) ........................................................ 28

*Liza Danielle, Inc. v. Jamko, Inc.,*
  408 So. 2d 735 (Fla. 3d DCA 1982) .......................................................... 58

*Lofton v. Butterworth,*
  93 F. Supp. 2d 1343 (S.D. Fla. 2000) ....................................................... 17

*London v. Wal-Mart Stores, Inc.,*
  340 F.3d 1246 (11th Cir. 2003) ............................................................. 16

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ........................................................................ 16

*Lynch v. Bexley,*
  744 F.2d 1452 (11th Cir. 1984) ............................................................. 22

*Madara v. Hall,*
  916 F.2d 1510 (11th Cir. 1990) ....................................................... 60, 64, 78

*Marino v. Home Depot U.S.A., Inc.,*
  245 F.R.D. 729 (S.D. Fla. 2007) ........................................................... 34

*Marsh Supermarkets, Inc. v. The Queen's FS Corp.,*
  696 So. 2d 1207 (Fla. 3d DCA 1997) ........................................................ 75

*Mathews v. Kilroe,*
    170 F. Supp. 416 (S.D.N.Y. 1959) ................................................................ 25

*McEntee v. Incredible Techs., Inc.,*
    No. 263818, 2006 WL 659347 (Mich. App. Mar. 16, 2006) ................................ 47

*McLiechy v. Bristol West Ins. Co.,*
    474 F.3d 897 (6th Cir. 2007) ....................................................................... 47

*Meier v. Sun Int'l Hotels, Ltd.,*
    288 F.3d 1264 (11th Cir. 2002) .................................................................... 69

*MeterLogic, Inc. v. Copier Solutions, Inc.,*
    126 F. Supp. 2d 1346 (S.D. Fla. 2000) ......................................................... 61

*Miami Breakers Soccer Club, Inc. v. Women's United Soccer Ass'n,*
    140 F. Supp. 2d 1325 (S.D. Fla. 2001) .................................................... 61, 66

*Montgomery v. Davol, Inc.,*
    No. 3:07cv176, 2007 WL 2155644 (N.D. Fla. July 24, 2007) ............................ 57

*Montgomery v. New Piper Aircraft, Inc.,*
    209 F.R.D. 221 (S.D. Fla. 2001) .................................................................. 40

*Moore v. Miami-Dade County,*
    502 F. Supp. 2d 1224 (S.D. Fla. 2007) ......................................................... 24

*Mother Doe I ex rel. R.M. v. Al Maktoum,*
    No. 06-22253, 2007 WL 2209258 (S.D. Fla. July 30, 2007) .............. 60, 61, 64, 66, 77

*Musiker v. Projectavision, Inc.,*
    960 F. Supp. 292 (S.D. Fla. 1997 .................................................................. 61

*Napier v. Osmose, Inc.,*
    399 F. Supp. 2d 811 (W.D. Mich. 2005) ................................................... 32, 49

*Neibarger v. Universal Coops.,*
    486 N.W.2d 612 (Mich. 1992) ..................................................................... 48

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (1964) .................................................................................. 55

*Nichols v. G.D. Searle Co.,*
    991 F.2d 1195 (4th Cir. 1993) ................................................................ 72, 75

*Noonan v. Winston Co.,*
    135 F.3d 85 (1st Cir. 1998) ........................................................................ 72

*O'Brien Glass Co. v. Miami Wall Sys., Inc.*,
   645 So. 2d 142 (Fla, 3d DCA 1994)..................................................................... 75

*Oriental Imps. & Exps., Inc. v. Maduro & Curiel's Bank, N.V.*,
   701 F.2d 889 (11th Cir. 1983)..............................................................61, 62, 70

*Paisey v. Vitale*,
   807 F.2d 889 (11th Cir. 1986).............................................................................. 52

*Payless Drug Stores N.W., Inc. v. Innovative Clothing Exch., Inc.*,
   615 So. 2d 249 (Fla. 3d DCA 1993)...................................................................... 75

*Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla.*,
   667 So. 2d 876 (Fla. 3d DCA 1996)...................................................................... 59

*Perry Ellis Int'l, Inc. v. URI Corp.*,
   No. 06-22020-CIV-MOORE/GARBER, 2007 WL 712389 (S.D. Fla. March 7, 2007).......... 61

*Philadelphia v. Lead Industries Ass'n, Inc.*,
   994 F.2d 112 (3d Cir. 1993)................................................................................. 32

*Pope v. Clearwater*,
   138 F.R.D. 141 (M.D. Fla. 1991) .......................................................................... 22

*Posner v. Essex Ins. Co.*,
   178 F.3d 1209 (11th Cir. 1999).................................................................... 60, 66

*Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*,
   784 F.2d 674 (5th Cir. 1986)................................................................................ 39

*Prohias v. Pfizer, Inc.*,
   485 F. Supp. 2d 1329 (S.D. Fla. 2007)...................................................19, 20, 21

*Pulte Home Corp., Inc. v. Ply Gem Industries, Inc.*,
   804 F. Supp. 1471 (M.D. Fla. 1992) .............................................................. 31, 49

*Ratliff v. Cooper Labs, Inc.*,
   444 F.2d 745 (4th Cir. 1971)................................................................................ 67

*Region 8 Forest Serv. Timber Purchasers Council v. Alcock*,
   993 F.2d 800 (11th Cir. 1993).............................................................................. 23

*Reliance Steel Products Co. v. Watson, ESS, Marshall & Enggas*,
   675 F.2d 587 (3d Cir. 1982)................................................................................. 64

*Rexam Airspray, Inc. v. Arminak*,
   471 F. Supp. 2d 1292 (S.D. Fla. 2007).............................. 61, 63, 66, 69, 71, 72, 74, 77, 78, 79

*Riccio v. Ford Motor Credit Co.*,
238 F.R.D. 44 (D. Mass. 2006) ........................................................................ 47

*Rivera v. Baby Trend, Inc.*,
914 So. 2d 1102 (Fla. 4th DCA 2005) .............................................................. 49

*Rivera v. Wyeth-Ayerst Labs.*,
283 F.3d 315 (5th Cir. 2002) ...................................................................... 19, 20

*Rogers v. Nacchio*,
241 Fed. Appx. 602 (11th Cir. 2007) ............................................................ 37, 38

*Roldos v. Americargo Lines, Inc.*,
698 So. 2d 1368 (Fla. 3d DCA 1997) ............................................................... 75

*Sculptchair, Inc. v. Century Arts, Ltd.*,
94 F.3d 623 (11th Cir. 1996) ............................................................................ 60

*Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*,
792. F.2d 989 (11th Cir. 1986) ......................................................................... 64

*Selman v. Harvard Med. Sch.*,
494 F. Supp. 603 (S.D.N.Y. 1980) ................................................................... 62

*Shaffer v. Heitner*,
433 U.S. 186 (1977) .......................................................................................... 78

*Shands Teaching Hosp. and Clinics, Inc. v. Beech St. Corp.*,
899 So. 2d 1222 (Fla. 1st DCA 2005) .............................................................. 58

*Siemer v. Learjet Acquisition Corp.*,
966 F.2d 179 (5th Cir. 1992) ............................................................................ 67

*Sikes v. Teleline, Inc.*,
281 F.3d 1350 (11th Cir. 2002) ........................................................................ 28

*Simon v. Celebration Co.*,
883 So. 2d 826 (Fla. 5th DCA 2004) ................................................................ 28

*Sofrar, S.A. v. Graham Eng'g Corp.*,
35 F. Supp. 2d 919 (S.D. Fla. 1999) ................................................................. 67

*StairMaster Sport/Medical Prods. v. Pacific Fitness Corp.*,
916 F. Supp. 1049 (W.D. Wash. 1994), *affirmed*, 78 F. 3d 602 (Fed. Cir. 1996) ............ 71, 72

*Stires v. Carnival Corp.*,
243 F. Supp. 2d 1313 (M.D. Fla. 2002) ...................................................... 33, 39

*Stover v. Eagle Prods., Inc.*,
  No. 93-4047-SAC, 1996 WL 172972 (D. Kan. Mar. 19, 1996) ............................................. 10

*Structural Panels, Inc. v. Texas Aluminum Industries, Inc.*,
  814 F. Supp. 1058 (M.D. Fla. 1993) ................................................................................... 75

*Sun Trust Bank v. Sun Int'l Hotels, Ltd.*,
  184 F. Supp. 2d 1246 (S.D. Fla. 2001) ............................................................................... 63

*T.W.M. v. Amer. Medical Sys., Inc.*,
  886 F. Supp. 842 (N.D. Fla. 1995) ............................................................................... 55, 57

*Talley v. City Tank Corp.*,
  279 S.E.2d 264 (Ga. App. 1981) ........................................................................................ 31

*Taskey v. Burtis*,
  785 So. 2d 557 (Fla. 4th DCA 2001) ................................................................................. 64

*Thompson v. W. States Med. Ctr.*,
  535 U.S. 357 (2002) ........................................................................................................... 55

*Tilton v. Playboy Ent. Group, Inc.*,
  No. 88:05-cv-692-T-30TGW, 2007 WL 80858 (M.D. Fla. Jan. 8, 2007) .............................. 59

*Timberland Consol. P'ship v. Andrews Land and Timber, Inc.*,
  818 So. 2d 609 (Fla. 5th DCA 2002) .................................................................................. 58

*Tolliver v. Monaco Coach Corp.*,
  No. 8:06-cv-856, 2006 WL 1678842 (M.D. Fla. June 16, 2006) ........................................... 57

*Tooltrend, Inc. v. CMT Utensili, SRL*,
  198 F.3d 802 (11th Cir. 1999) ............................................................................................ 58

*Tucker v. Citigroup Global Markets Inc.*,
  No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502, (M.D. Fla. July 17, 2007) ..................... 53

*Turpeau v. Fidelity Fin. Servs., Inc.*,
  936 F.Supp. 975 (N.D. Ga. 1996) ...................................................................................... 23

*Tylka v. Gerber Prods. Co.*,
  No. 96-C-1647, 1999 WL 495126 (N.D. Ill. July 1, 1999) ................................................... 39

*U.S. ex rel Feingold v. Palmetto Gov't Benefits Adm'rs*,
  477 F. Supp. 2d 1187 (S.D. Fla. 2007) ............................................................................... 29

*U.S. v. Lab Corp. Am. Inc.*,
  290 F.3d 1301 (11th Cir. 2002) .................................................................................... 33, 34

*VA State Bd. of Pharmacy v. VA Citizens Consumer Council, Inc.*,
   425 U.S. 748 (1976) ................................................................. 54

*Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*,
   529 U.S. 765 (2000) ................................................................. 16

*Warner-Lambert Co.*,
   No. 02-05242, 2003 WL 24299241 (Fla. Cir. Ct. July 31, 2003) .......................... 46

*Waters v. Int'l Precious Metals Corp.*,
   172 F.R.D. 479 (S.D. Fla. 1996) ................................................... 28

*Watson v. Lucerne Mach. & Equip., Inc.*,
   347 So. 2d 459 (Fla. 2d DCA 1977) ................................................. 50

*West v. Caterpillar Tractor Co., Inc.*,
   336 So. 2d 80 (Fla. 1976) .......................................................... 49

*Williams v. FirstPlus Home Loan Trust 1996-2*,
   209 F.R.D. 404 (W.D. Tenn. 2002) ............................................. 62, 78

*Williams v. Purdue Pharma Co.*,
   297 F. Supp. 2d 171 (D.D.C. 2003) ........................................... 21, 24, 28

*Wooden v. Bd. of Regents of Univ. Sys. of Ga.*,
   247 F.3d 1262 (11th Cir. 2001) .................................................... 17

*Woods v. Nova Cos. Belize Ltd.*,
   739 So. 2d 617 (Fla. 4th Dist. Ct. App. 1999) ....................................... 63

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) ............................................................. 64, 65

*Yucyco, Ltd. v. Rep. of Slovn.*,
   984 F. Supp. 209 (S.D.N.Y. 1997) .................................................. 25

Statutes

21 U.S.C. § 2101-10 ................................................................. 10

21 U.S.C. § 2102 .................................................................... 10

21 U.S.C. § 321 ..................................................................... 8

21 U.S.C. § 331(a) .................................................................. 8

21 U.S.C. § 342(a)(1) ............................................................... 8

21 U.S.C. § 342(a)(2)C)(i) .......................................................... 8

21 U.S.C. § 342(a)(3) ................................................................. 8

21 U.S.C. § 342(a)(5) ................................................................. 8

21 U.S.C. § 342(b)(2) ................................................................. 8

21 U.S.C. § 342(b)(4) ................................................................. 8

21 U.S.C. § 343(a) ...................................................................... 8

21 U.S.C. § 343(a)(1) ................................................................. 8

21 U.S.C. § 393 .......................................................................... 8

21 U.S.C. § 394 .......................................................................... 10

21 U.S.C. § 395(a) ...................................................................... 10

Fla. Admin. Code r. 5E-3.004(1) .......................................... 10, 46

Fla. Admin. Code r. 5E-3.013 ................................................ 10, 46

Fla. Stat. § 48.193 ...................................................................... 62

Fla. Stat. § 48.193(1) ............................................................ 62, 63

Fla. Stat. § 48.193(2) .........................................................62, 63, 75

Fla. Stat. § 501.201 ................................................................... 40

Fla. Stat. § 501.212(1) .............................................................. 46

Other Authorities

FDA, "Interpreting Pet Food Labels," available at
    http://www.fda.gov/cvm/petlabel.htm ..................................9, 39, 42, 45, 46

FDA, "CVM and Animal Food, Feed Ingredients, and Additives," available at
    http://www.fda.gov/cvm/animalfeed_info.htm ............................ 41, 42

FDA, "FDA, AAFCO Sign Agreement on Feed Ingredient Listing," available at
    http://www.fda.fov/cvm/CVM_Updates/AAFCO_MOU.htm ................. 42

FDA, "How Pet Food Is Regulated" (available at
    http://www.aafco.org/Portals/0/Public/petfood_regulations.pdf) ............ 9

FDA, "Pet Foods," http://www.fda.gov/cvm/petfoods.htm.................... 41, 43

FDA, "Selecting Nutritious Pet Foods," http://www.fda.gov/cvm/petfood.htm ............ 45

Restatement (Second) of Torts § 402A (1965) ................................................................ 49

Restatement (Second) of Torts § 402A, Cmt i ................................................................ 51

Restatement (Second) of Torts § 402A, Cmt. g ............................................................. 50

Restatement (Third) of Torts § 7 (1998) ........................................................................ 51

Rules

Fed. R. Civ. P. 12 ......................................................................................................... 35

Fed. R. Civ. P. 12(b)(1) ...................................................................... 1, 5, 11, 23, 24

Fed. R. Civ. P. 12(b)(2) ............................................................................. 2, 5, 60

Fed. R. Civ. P. 12(b)(6) ................................................ 1, 5, 13, 14, 16, 24, 52, 59

Fed. R. Civ. P. 8 .................................................................................... 24, 25, 35

Fed. R. Civ. P. 8(a) ...................................................................................... 13, 14, 16

Fed. R. Civ. P. 8(a)(2) .......................................................................................... 1, 5

Fed. R. Civ. P. 9(b) .................................................. 1, 5, 12, 32, 33, 34, 35, 37, 38, 39, 40

Regulations

21 C.F.R. § 501.1, *et seq* ............................................................................................ 8

21 C.F.R. §§ 582.1-582.99 ......................................................................................... 43

Constitutional Provisions

U.S. Const. amd. I ................................................................................................ 53, 55

U.S. Const. art. III ...................................................................................... 1, 5, 11, 17

# MOTION

Pursuant to Article III of the United States Constitution and Rules 8(a)(2), 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure, all Defendants[1] hereby move this Court to dismiss Plaintiffs' Third Amended Class Action Complaint ("TAC" or "Complaint") as to each of them, based principally on the absence of allegations in the TAC of alleged injury to specific Plaintiffs at the hands of specific Defendants. This fatal flaw permeates the Complaint, deprives each claim for relief of any vitality, and requires dismissal of the Complaint in its entirety. More particularly, the absence of injury allegations with the required nexus between specific Defendants and specific Plaintiffs warrants dismissal for: (a) lack of subject matter jurisdiction based on Plaintiffs' lack of standing to bring this suit; (b) lack of a short and plain statement showing Plaintiffs' entitlement to relief; and (c) failure to show a "plausible entitlement to relief." *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1967 (2007).

Furthermore, each of Plaintiffs' claims fails for additional reasons, apart from their failure to allege particularized injury and the required causal nexus. Specifically:

---

[1] Pursuant to this Court's order, this Motion is made on behalf of all Defendants and includes the arguments of Defendant Kroger Co. of Ohio ("Kroger") with respect to lack of personal jurisdiction. Defendants are: Mars, Incorporated; Mars Petcare U.S., Inc.; Procter & Gamble Co.; The Iams Co.; Colgate-Palmolive Co.; Hill's Pet Nutrition, Inc.; Del Monte Foods, Co.; Nestlé U.S.A., Inc.; Nestlé Purina PetCare Co.; Nutro Products, Inc.; Natura Pet Products, Inc.; Menu Foods, Inc.; Menu Foods Income Fund; Publix Supermarkets, Inc.; New Albertsons, Inc.; Albertsons LLC; The Kroger Co. of Ohio; PETCO Animal Supplies Stores, Inc.; Pet Supermarket, Inc.; Pet Supplies Plus/USA, Inc.; PetSmart, Inc.; Target Corp.; and Wal-Mart Stores, Inc. (collectively, "Defendants"). At this Court's direction (*see D.E. 142, Hearing Transcript at pgs. 22-25 and 27, lines 7-10*), Defendants are submitting one comprehensive motion. With the Court's concurrent advance permission, this motion exceeds the standard page limit.

- **Counts I-III** (fraudulent misrepresentation and concealment, negligent misrepresentation, and violation of state deceptive trade practices laws) lack the particularity necessary to render these claims cognizable;

- **Count III** (violation of state deceptive trade practices laws) also fails because the relevant claims target conduct specifically authorized by state and federal laws incorporating the standards of the Association of American Feed Control Officials and the FDA;

- **Count IV** (negligence) is barred by the economic loss rule;

- **Count V** (strict liability) fails because Plaintiffs are unable to link any named Plaintiff with any specific product that allegedly caused him or her harm or to allege adequately that any specific product was unreasonably dangerous;

- **Count VI** (injunctive relief) is not a substantive claim and would not state a claim for relief in any event, because Plaintiffs have not shown the inadequacy of available legal remedies or a risk of irreparable harm;

- **Counts VII and VIII** (breach of implied and express warranty) fail for lack of privity; and

- **Count IX** (unjust enrichment) is barred because Plaintiffs cannot plead an inadequacy of available legal remedies and because they allege insufficient facts to establish the degree, if any, to which any individual Plaintiff conferred a benefit on any individual Defendant and the degree to which any individual Defendant might have had knowledge regarding any such benefit.

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, Defendant The Kroger Co. of Ohio ("Kroger") moves this Court to dismiss the TAC as to it for lack of personal

2

jurisdiction.  Kroger is specially appearing for the limited purpose of this Motion, without submitting to the jurisdiction or venue of this Court.

In light of these deficiencies, each fully discussed in the Memorandum of Law incorporated into this Motion, Defendants respectfully request that this Court dismiss Plaintiffs' Third Amended Class Action Complaint in its entirety.

**MEMORANDUM OF LAW—INTRODUCTION**

Despite having reviewed three motions to dismiss detailing the fatal deficiencies in their allegations, Plaintiffs continue in their latest Complaint to ignore the legal requirements that they must satisfy in order to state a legally cognizable claim for relief.  Although Plaintiffs have begrudgingly listed Defendants from whom they claim to have purchased pet food in general, they still fail to allege, as in the previous iterations of Amended and/or Corrected Complaints, that any particular product manufactured or distributed by a particular Defendant injured any particular Plaintiff's pet, let alone any particular Plaintiff, or that a specific representation induced any of them to purchase a Defendant's product.  The continued absence of these crucial allegations is telling.  Having filed several Complaints without such allegations, it is clear that Plaintiffs do not and never will have any basis to make them.  The absence of these allegations renders the Plaintiffs unable to state any claims for relief, and this Court should consequently dismiss their Complaint with prejudice.

Plaintiffs in reality seek not the adjudication of a legally cognizable claim, but rather a rulemaking designed fundamentally to change—at the federal level—the regulation of pet food in all fifty states.  In the service of this goal, Plaintiffs broaden even further than in prior drafts their criticism of the manufacturing and marketing practices of the entire pet food industry, while at the same time failing to seek relief for any named Plaintiff from any specified injury due to the acts of a specified Defendant.  In short, Plaintiffs have chosen the wrong means and the wrong forum to advance their cause.

Indeed, the TAC includes new allegations that compound the fundamental problem with Plaintiffs bringing their grievance to this Court.  By seeking to have this Court certify a Defendant class consisting of all manufacturers, producers, distributors, marketers, and retailers of pet food and treats in the United States over the last four years—in addition to a Plaintiff class

of all U.S. consumers of such food and treats—Plaintiffs demonstrate that the TAC's driving purpose is not to obtain compensation for the injuries any named Plaintiff (or indeed anyone at all) suffered at the hands of any particular Defendant but instead to persuade this Court to install itself as a super-regulatory authority, substituting its own mandates for the considered determinations of state and federal legislative and administrative bodies.  Such wholesale usurpation of authority and function would be both inappropriate and impermissible.

Plaintiffs' nine-count TAC is fatally flawed across the board.  With respect to all Defendants, the TAC fails to establish that a single named Plaintiff has standing to bring this suit and fails as a matter of law to allege conduct that would be actionable under state consumer protection statutes or state tort or contract law.  Defendants therefore jointly move to dismiss the TAC with prejudice pursuant to Article III of the U.S. Constitution and Rules 8(a)(2), 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Further, Kroger moves to dismiss the TAC under Rule 12(b)(2) because of the absence of personal jurisdiction.

## BACKGROUND

### A.  Through Its Multiple Iterations, Plaintiffs' Complaint Has Not Progressed Beyond a Generalized Barrage Against the Entire Pet Food Industry.

Plaintiffs initiated this lawsuit on May 9, 2007; filed a Corrected Amended Class Action Complaint on July 27, 2007; filed a Second Amended Class Action Complaint on November 19, 2007; refiled with modifications on November 29, 2007; and then filed this ***Third*** Amended Class Action Complaint on January 25, 2008.  Despite the fact that Plaintiffs now list various

Defendants from whom each of the thirty named Plaintiffs (owners of either cats or dogs)[2] allegedly purchased some unidentified pet food product, the TAC offers no further specifics about these purchases, their context, or their consequences, and instead remains squarely focused on broad and vague allegations about the general conduct of the entire pet food industry.  In more than 100 paragraphs relying on generally available Internet postings and news articles, the TAC alleges various actions and omissions by this industry and targets unrelated activities ranging from some Defendants' alleged use of marketing terms as varied as "premium" and "good for your cat" to the alleged inclusion by some Defendants of synthetic preservatives in pet food.  The ever-expanding Complaint has become so broad in its fifth iteration that it now seeks to have certified an entire putative class of *all* manufacturers, producers, distributors, marketers, and retailers of pet food and/or treats in the United States over the last four years, regardless of whether named Plaintiffs had any dealings with these new and unidentified putative defendants or are even aware of their existence.[3]

Although the TAC includes nine claims for relief, each hinges on the same basic allegations of wrongdoing—that the pet food industry advertises dog and cat food products as

---

[2]  Plaintiffs allege that there are approximately 88.3 million "companion" cats and 74.8 million "companion" dogs in the United States (TAC ¶ 116).  Plaintiffs seek to certify a putative plaintiffs' class of consumers who own cats or dogs and who purchased pet food that was marketed, sold, manufactured, or distributed by any of the Defendants and marketed in certain vaguely described ways (*id*. ¶ 114).  Plaintiffs also seek to certify a putative defendants' class of manufacturers, producers, distributors, marketers, and retailers of pet food and/or treats in the United States over the last four years (*id*. ¶ 122).

[3]  The Eleventh Circuit has repeatedly expressed its distaste for just this sort of shotgun pleading.  *See, e.g.*, *Davis v. Coca-Cola Bottling Co. Consol.*, No. 05-12988, 2008 WL 314962, *12 (11th Cir. Feb. 6, 2008) ("[Plaintiffs'] complaint is a model 'shotgun' pleading of the sort this court has been roundly, repeatedly, and consistently condemning for years, long before this lawsuit was filed.").

healthy and nutritious without disclosing certain ingredients that might be included in pet food, or without fully explaining the health effects of those ingredients that are disclosed. As one typical example, Plaintiffs criticize Defendants' disclosed use of grain as an ingredient on the ground that dogs and cats "are carnivores" (TAC ¶ 107). As another example, Plaintiffs lament the alleged lack of adequate scientific documentation to support the benefits, content, and quality of Defendants' pet food (*id*. ¶¶ 69, 70). Plaintiffs even go so far as to attack the very ***names*** of Defendants' products. (*See, e.g.*, *id*. ¶ 73). In general, Plaintiffs contend that Defendants try to make consumers "feel good" about purchasing their products (*id*. ¶ 71), but do not provide food that consumers ought to "feel good" about feeding their pets (*id*. ¶ 77).[4]

### B.   Both State and Federal Administrative Agencies Regulate the Pet Food Industry Heavily.

By launching this broad-based attack on the pet food industry in this forum, untethered to any allegations of particularized injury to each individual Plaintiff or harm caused by a specific Defendant, and by couching their demands for policy-laden judicial mandates as requests for injunctive relief, Plaintiffs clearly seek a super-regulatory regime over U.S. pet food under this Court's supervision. In pursuing this goal, Plaintiffs ignore that both state and federal

---

[4] Many of Plaintiffs' statements also are inconsistent with each other. For example, the TAC alleges that "[t]here have been reports of euthanized cats and dogs that have been 'rendered' and ultimately made into pet food that would reach millions" (TAC ¶ 99). However, Plaintiffs' own exhibits show that the FDA's Center for Veterinary Medicine investigated these 1990-era rumors in two studies of dog and cat food in 1998 and 2000 and found them utterly baseless (*id*., Ex. 31). In fact, contrary to the allegations of the TAC, the FDA's study "results demonstrated a ***complete absence*** of material that would have been derived from euthanized dogs or cats" (*id*.) (emphasis added). Although the TAC cites one other study (*id*., Ex. 32) as somehow undermining the FDA's findings (TAC ¶ 100), this very study states unequivocally that "rendered protein from euthanatized dogs and cats ***[was] not present*** in these dog food samples" (*id*., Ex. 32, p. 101) (emphasis added) and concludes that the "results of our study . . . provide evidence ***against*** the presumption that euthanatized pets are routinely rendered and used in pet food" (*id*. at p. 103) (emphasis added).

administrative agencies already take an active role in regulating and approving much of the complained-of activity and that judicial rule-making is impermissible.

Under the Federal Food, Drug and Cosmetic Act ("FDCA"), Congress requires the FDA to ensure that foods and drinks for humans and animals "are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. §§ 321, 393. The FDCA prohibits the introduction or delivery for introduction in interstate commerce of food that is "adulterated," which is defined to include, among other things, food that contains any "deleterious substance which may render it injurious to health," 21 U.S.C. § 342(a)(1); food that contains "any food additive that is unsafe," *id*. at § 342(a)(2)C)(i); food in which "any substance has been substituted wholly or in part [for a valuable constituent]," *id*. at § 342(b)(2); food that contains any "filthy, putrid, or decomposed substances," *id*. at § 342(a)(3); food that is, "in whole or in part, the product of a diseased animal or of an animal which has died otherwise than by slaughter," *id*. at § 342(a)(5); or food to which "any substance has been added . . . or mixed . . . so as to . . make it appear better or of greater value than it is," *id*. at § 342(b)(4). The FDCA authorizes the FDA to take appropriate action and to investigate the safety and health of pet food when necessary. *Id*. at §§ 321, 393.

Additionally, under the FDCA, food cannot be "misbranded," which includes labeling that is "false or misleading in any particular." *See* 21 U.S.C. § 343(a)(1). Labels that are "misbranded" are unlawful. *Id*. at §§ 331(a), 343(a). The FDCA requires that the FDA take "appropriate action on the marketing of regulated products in a timely manner." *Id*. at § 393. Indeed, the FDA has promulgated numerous regulations regarding the labeling, advertising, and packaging of animal food. *See* 21 C.F.R. § 501.1, *et seq*.

The FDA, through its Center for Veterinary Medicine ("CVM"), works closely with the pet food industry, state officials and the Association of American Feed Control Officials

("AAFCO") to address issues relating to animal food ingredients and the labeling of pet food. Regulatory officials from the FDA and each state are members of AAFCO, and at least one FDA official serves on AAFCO's Board of Directors.[5]   One purpose of AAFCO is to help animal food regulators develop uniform laws regarding "the production, labeling, distribution, or sale of animal feeds" and develop "definitions and policies to be followed in enforcing such laws." (AAFCO's Statement of Purpose, available at http://www.aafco.org/Home/tabid/36/Default.aspx).  Every year, AAFCO publishes its model regulations for pet food.  (FDA, "Interpreting Pet Food Labels," available at http://www.fda.gov/cvm/petlabel.htm).  The model regulations address nutritional requirements for animal food and set forth "a list of all ingredient definitions that AAFCO has reviewed and found suitable for use in animal feeds."[6]  The FDA has formally recognized AAFCO's list of feed ingredients, and AAFCO has agreed to seek approval from the FDA before promulgating new standards.  (Memorandum of Understanding Between the FDA and AAFCO  ("MOU"), p.

---

[5]  *See* FDA, "How Pet Food Is Regulated" (available at http://www.aafco.org/Portals/0/Public/petfood_regulations.pdf); AAFCO's List of Board of Directors (available at http://www.aafco.org/BoardofDirectors/tabid/61/Default.aspx). Indeed, Plaintiffs also have a direct voice at AAFCO.  Mike Floyd, a former named Plaintiff (*see* Second Amended Complaint), was appointed recently as a consumer representative to the AAFCO Pet Food Committee, and Plaintiffs' counsel, Catherine MacIvor, is his alternate. AAFCO's List of Committee Advisors (available at http://www.aafco.org/Directory/CommitteeAdvisors/tabid/64/Default.aspx).

[6]  AAFCO Press Release, available at http://www.aafco.org/Portals/0/Public/AAFCO%20MOU%20announcement%2011-20-07.pdf.

1).[7]  In addition, Congress amended the FDCA in 2007 (21 U.S.C. §§ 2101-10) to require the

FDA to establish additional ingredient and processing standards for pet food within two (2)

years.  *Id*. at § 2102.  Pursuant to the new amendments, the FDA has announced its intent to hold

a public meeting to discuss "the development of ingredient, processing, and labeling standards to

ensure the safety of pet food."  Fed. Register, Vol. 73, No. 4, p. 1225 (Jan. 7, 2008).

As the MOU and the 2007 FDCA Amendments demonstrate, the FDA's regulation of the

pet food industry, in conjunction with AAFCO officials, is dynamic; these agencies modify or

add relevant standards based on the most recent scientific data.  (*See* FDA, "Interpreting Pet

Food Labels" (prohibiting "propylene glycol" based on new studies).)  To this end, the FDCA

authorizes the FDA to hire "health professionals" and "technical and scientific review groups as

are needed to carry out the functions of the [FDA]."  21 U.S.C. §§ 394, 395(a).

Many states, including Florida, have adopted AAFCO's model regulations in whole or in

part.  The Florida regulations (and others) ***require*** pet food supplies and sellers to use the

AAFCO names and definitions on pet food labels.  Fla. Admin. Code r. 5E-3.004(1), 5E-3.013;

*see* Appendix C (indicating that many of the states where Plaintiffs reside have incorporated the

AAFCO regulations).  Courts have recognized that the AAFCO regulations provide adequate

guidelines for protecting consumers and pets.  *See, e.g.*, *Stover v. Eagle Prods., Inc.*, No. 93-

4047-SAC, 1996 WL 172972, *5 (D. Kan. Mar. 19, 1996) (granting summary judgment for dog

food manufacturer and explaining that the percentage of calcium in the food at issue was within

the "norms" set by AAFCO).

---

[7]  Memorandum of Understanding Between the FDA and AAFCO (April 2007, eff. August 30,
2007), available at http://www.fda.gov/OHRMS/DOCKETS/98fr/fda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-
mou0001.pdf.  *See also* FDA, "FDA's Regulation of Pet Food," available at
http://www.fda.gov/cvm/petfoodflier.html.

Indeed, as discussed more fully in Section II.B below, AAFCO and, by extension, the FDA have adopted standards *specifically authorizing* much of the marketing language and nutritional content of pet food that Plaintiffs challenge in the TAC.  By making this authorized language a focal point of the TAC, Plaintiffs reveal their desire to replace the existing regulatory regime wholesale with one constructed by this Court.  It would be inappropriate under any circumstance for Plaintiffs to use this Court as a vehicle for their regulatory ambitions.  Particularly where, as here, Plaintiffs can show neither standing nor legally cognizable claims, this Court should dismiss the TAC in its entirety.

## ARGUMENT

Named Plaintiffs lack standing for purposes of Article III of the Constitution and Rule 12(b)(1) of the Federal Rules of Civil Procedure (Section I, below).  The TAC falls fatally short of alleging that *any* named Plaintiff suffered a legally cognizable injury at the hands of *any* Defendant.[8]  Each "count" asserts that "Plaintiffs" have been harmed in some unspecified manner by purchasing pet food products allegedly manufactured or sold by Defendants.  Elsewhere, the TAC vaguely asserts that Defendants' actions somehow collectively damaged "Plaintiffs" because "Plaintiffs" as a group "would not have otherwise purchased these products had they known the truth about them and/or their cats and/or dogs became ill and/or died from ingesting the pet food" (TAC ¶ 69).  Although each named Plaintiff now has a list of Defendants next to his or her name from whom he or she allegedly purchased unidentified pet food products, nowhere does the TAC allege that any specific Plaintiff was induced to purchase a specific

---

[8]  Except for Counts IV (negligence) and VII (breach of implied warranty), Plaintiffs bring each count against every Defendant.  Count IV does not name the Retailer Defendants (except for PetSmart, Inc.).  Count VII does not name the Manufacturer Defendants.

product from a specific Defendant that the Plaintiff would not have purchased had he or she known the "truth." However, the Eleventh Circuit requires just such specificity in allegations of fraud or misrepresentation.[9] Nor could the mere purchase of a product qualify as a cognizable injury in any event. Furthermore, nowhere does the TAC tell Defendants or this Court which (if any) Plaintiff's cat or dog became ill or died from ingesting *any* pet food, much less does the TAC tie any such illness or death to any particular Defendant's product. The only factual allegations in the TAC regarding any such injuries reference merely "consumers" (*see, e.g.*, TAC ¶ 106) or "Plaintiffs" as a group (*see, e.g.*, *id.* ¶ 111).

Plaintiffs' failure to plead actual injury is no mere oversight. In their proposed class definition, Plaintiffs meticulously avoid any suggestion that any class members actually suffered injury. Instead, the proposed class would extend to all consumers in the U.S. who purchased pet food that was handled by at least one Defendant at some point in the distribution chain and that contains certain ingredients and lacks others, *regardless* of the impact that the formulation of the food might have had on class members or their pets. Plaintiffs thus have not overlooked their burden to demonstrate that named Plaintiffs suffered an injury—*they intentionally define the class without reference to injury*.

In fact, so defective is the TAC with regard to its injury allegations that it does not identify a single specific pet food product or treat manufactured or distributed by any specific

---

[9]  As discussed further in Section II.A below, Rule 9(b) requires that an adequate pleading of fraud or misrepresentation include "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence[.]" *Instituto de Prevision Militar v. Merrill Lynch & Co., Inc.*, No. 05-22721-CIV, 2007 WL 2900318, *3 (S.D. Fla. Sept. 28, 2007).

named Defendant and purchased by any specific named Plaintiff.  Instead, Plaintiffs make bare

and fleeting reference to Defendants from whom each has allegedly purchased some unidentified

pet food product or treat (TAC ¶¶ 3-32),[10] without suggesting that any of these unidentified

purchases were prompted by specific misrepresentations upon which they as individuals relied or

which caused legally cognizable injury.  Perhaps hoping to gloss over this defect, Plaintiffs have

sprinkled into their TAC a few more references to "reliance" and "injury" (*see, e.g.*, TAC ¶ 1

("[Plaintiffs] relied upon and trusted the Defendants' representations and/or omissions")), as if

the pleading requirements could be satisfied by mere repetition of the words themselves.

However, as discussed in Section I.B below, such conclusory allegations bring the TAC no

closer to offering the short and plain statement of Plaintiffs' entitlement to relief required by Fed.

R. Civ. P. 8(a) and to stating a "plausible entitlement to relief" as required by Fed. R. Civ. P.

12(b)(6) under *Twombly*, 127 S. Ct. at 1967.

     Furthermore, all nine claims for relief in the TAC should be dismissed for additional and

independent reasons (Section II, below).  Plaintiffs do not plead their fraud claims (Counts I-III)

with the necessary particularity; they press a FDUTPA claim (Count III), although Defendants'

activities fall squarely within the safe harbor exception to that statute; their negligence claim

(Count IV) is barred by the economic loss rule; their strict liability claim (Count V) is vitiated by

their failure to plead that any specific product caused any one of them harm of any sort; their

injunctive relief claim (Count VI) is not a substantive claim at all and is, in any event, barred by

their failure to show the inadequacy of legal remedies; their warranty claims (Counts VII and

_____

[10]  As Plaintiffs themselves point out elsewhere in the TAC, many of the manufacturer
     Defendants produce several different pet food brands and several different products within
     each brand.

VIII) are precluded by their failure to show privity; and their unjust enrichment claim (Count IX) must fall in light of Plaintiffs' failure to show the inadequacy of legal remedies and because the facts that they allege are insufficient to establish the degree, if any, to which any individual Plaintiff conferred a benefit on any individual Defendant and to which any individual Defendant might have had knowledge regarding any such benefit.

Finally, the TAC must be dismissed as to Kroger for lack of personal jurisdiction.

**I.      This Court Should Dismiss the TAC as to All Defendants Because Plaintiffs Do Not Allege Legally Cognizable Injury to Themselves as Individuals Sufficient to Confer Standing or to Satisfy Fed. R. Civ. P. 8(a) or 12(b)(6).**

As noted above, Plaintiffs nowhere allege that *any* named Plaintiff suffered legally cognizable injury at the hands of *any* Defendant.  Plaintiffs' injury allegations consist entirely of vague and ambiguous references to "consumers" and "Plaintiffs" lumped together.  Defendants called this fatal deficiency to Plaintiffs' attention in their initial Motion to Dismiss and then again in their Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint, but this Third Amended Complaint remains devoid of the requisite specific allegations of injury to a named Plaintiff from the purchase and consumption of a named Defendant's product.  The *entire* set of "injury" allegations, listed below, refers to the "Plaintiffs" or "Defendants" as a group, or to "consumers," in general:[11]

- •    **TAC ¶ 1** asserts that "the Plaintiffs would not have purchased the pet food and/or treats had had [sic] they known the truth about the nature, character, quality, ingredients

---

[11]  This list does not include the TAC's numerous bare and conclusory references to "injury" or "damages" in the abstract bereft of any description of any kind.  *See, e.g.*, TAC ¶ 33 ("Mars markets and advertises pet food and/or treats which injured the Plaintiffs and the Class"). Such abstract references occur also at *id*. ¶¶ 34-43, 46, 50-59, 63, 113, 136, 145-46, 157, 164, 168, 174-75, 183-84, 191, and 197.  *None* of these paragraphs connects *any* specific named Plaintiff with *any* injury of *any* description.

and/or harmful effects; [] did not receive a benefit from the purchase of pet food and/or treats that were materially different from what was advertised; and/or [] the Plaintiffs' cat(s) and/or dog(s) have suffered illness and/or death as a result of ingesting the pet food and/or treats as described more fully below[;]"[12]

- **TAC ¶ 2** references "the illness and/or deaths of the Plaintiffs' cats and dogs from ingesting the Defendants' commercial pet food and treats[;]"

- **TAC ¶ 69** complains that "the Defendants' [activities] . . . resulted in damage to the Plaintiffs because they would not have otherwise purchased these products had they known the truth about them and/or their cats and/or dogs became ill and/or died from ingesting the pet food[;]"

- **TAC ¶ 106** lists injuries allegedly suffered by "consumers" as a result of pet food products later recalled;

- **TAC ¶ 111** alleges generally that "[t]he Plaintiffs have also had to pay thousands of dollars in veterinarian bills and/or other expenses as a result of their dogs and cats illnesses [sic] and/or deaths from ingesting this food[;]"

- **TAC ¶ 167** asserts that "[t]he pet food product" of all Defendants taken as a whole "caused injury, illness and/or death to the Plaintiffs [sic] companion pets by including, but not limited to, adulterated ingredients, additives, chemicals, toxins and/or contaminants[;]"

---

[12]  As the accompanying compilation of Plaintiffs' injury allegations shows, Plaintiffs' repeated promises to describe Plaintiffs' alleged injuries more fully never comes to fruition.

- **TAC ¶ 170** makes cursory and conclusory reference to "needless illness and deaths of the Plaintiffs' and the Plaintiff Class' cats and dogs[;]"

- **TAC ¶ 171** similarly references "the illness and/or loss of [] cats and dogs" of "Plaintiffs and the Class," taken as a group.

That is the full set of scattered "injury" allegations in Plaintiffs' 200-paragraph TAC. Not one of these broad allegations could possibly confer standing on any named Plaintiff, ***not one*** of whom is tied to any of these vague allegations. These allegations also are untethered to any Defendant. Without these links, the TAC does not provide the short and plain statement of Plaintiffs' entitlement to relief under Rule 8(a) or supply a plausible claim for relief for purposes of Rule 12(b)(6). In short, Plaintiffs' allegations do not present a justiciable controversy or cognizable claims.

### A. The TAC Alleges Insufficient Facts to Show Named Plaintiffs' Standing as Individuals.

Standing for plaintiffs in a class action "directly implicates federal subject matter jurisdiction" and is a threshold issue for the Court. *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1272 (11th Cir. 2003) (citing *Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000)); *Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006). Article III standing has three elements: (1) "the plaintiff must have suffered an injury in fact[;]" (2) "there must be a causal connection between the injury and the conduct complained of[;]" and (3) "it must be likely . . . that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted). The injury must be (a) "concrete and particularized," and (b) "actual or imminent, not conjectural or hypothetical." *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1251 (11th Cir. 2003). The injury requirement "cannot be met by an allegation that the injury may occur at some indefinite

future time." *Lofton v. Butterworth*, 93 F. Supp. 2d 1343, 1346 (S.D. Fla. 2000).  Since named

Plaintiffs fail to allege that any specific Defendant's product caused any one of them injury as an

individual, they each lack standing to sue under Article III of the United States Constitution.

As for a putative class action lawsuit, courts in this Circuit and nationwide have been

very clear that named plaintiffs may not satisfy these standing requirements through collective

allegations.  ***Each*** named plaintiff must allege sufficient facts to show that ***each*** named plaintiff

has standing.  *See, e.g.*, *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 n. 20

(11th Cir. 2001) ("the fact that [a] suit was brought as a class action does not alter [each named

plaintiff's] obligation to show that he ***individually*** satisfies the constitutional requirements of

standing") (emphasis added); *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1339 n.6

(11th Cir. 2000) ("A plaintiff cannot include class action allegations in a complaint and expect to

be relieved of ***personally*** meeting the requirements of constitutional standing, even if the persons

described in the class definition would have standing themselves to sue.") (emphasis added,

citation and internal quotation marks omitted).

In this case, named Plaintiffs do not—and cannot—sufficiently allege either injury-in-

fact or a causal connection between an injury to any one of them and any Defendant's conduct.

Rather, Plaintiffs' TAC continues to dwell on Plaintiffs' general dissatisfaction with the

regulated practices of the pet food industry and a broad-based enumeration of injuries allegedly

suffered by "Plaintiffs" or "consumers" in general.  (*See, e.g.*, TAC ¶ 1 ("Plaintiffs' cat(s) and/or

dog(s) have suffered illness and/or death as a result of ingesting the pet food and/or treats").)

Despite such broad assertions, nestled among lengthy diatribes about the industry's alleged

advertising and manufacturing practices (*e.g.*, TAC ¶¶ 64-112), named Plaintiffs do not

specifically allege that any particular Plaintiff's pet has fallen ill or suffered any adverse health

effects as a result of any complained-of activity of any specific Defendant or that any identified

pet food any Plaintiff purchased has actually harmed that Plaintiff or his or her pets in *any* way.

The TAC's vague and generalized allegations of injury to "Plaintiffs" or "consumers" do not

suffice.

Tellingly, as noted earlier, Plaintiffs have intentionally defined their putative class (TAC

¶ 114) without *any* reference to injury whatsoever.  In their overly optimistic ambition to

encompass *all* purchasers of pet food in the last four years within the scope of the TAC, they

conspicuously avoid such allegations.  Despite the fact that Plaintiffs have amended their

Complaint yet a third time, it remains just as defective in this regard as before.  Paragraph 1 of

the TAC—in the Introduction—has been amended to state:

> Each and every Plaintiff purchased pet food and/or treats that were
> manufactured, produced, distributed, marketed, advertised, and/or
> sold by one or more of the named Defendant Manufacturers and
> Retailers and (a) relied upon and trusted the Defendants'
> representations and/or omissions in purchasing the pet food and/or
> treats; (b) the Plaintiffs would not have purchased the pet food
> and/or treats had they known the truth about the nature, character,
> quality, ingredients and/or harmful effects; (c) did not receive a
> benefit from the purchase of pet food and/or treats that were
> materially different from what was advertised; *and/or (d) the
> Plaintiffs' cat(s) and/or dog(s) have suffered illness and/or death*
> as a result of ingesting the pet food and/or treats as described more
> fully below.

(TAC ¶ 1, emphasis added).  The use of "and/or" in the introduction makes clear that *not all*

*named Plaintiffs' pets suffered injury—if any did at all.*[13]  Later in the TAC, when each named

---

[13]  It is clear from other parts of the TAC that the use of "and/or" with respect to allegations of
injury is no mere oversight.  In paragraph 69, for example, the TAC alleges that Plaintiffs
have been "damaged" by Defendants' marketing "because they would not have otherwise
purchased these products had they known the truth about them *and/or* their cats and/or dogs
became ill and/or died from ingesting the pet food." (TAC ¶ 69, emphasis added).

Plaintiff is listed, not one Plaintiff makes an allegation that his or her pet suffered any adverse health effects associated with any specific Defendant's products.  (*See, e.g.,* TAC ¶¶ 3-32).  The failure to correct this fatal flaw despite having amended the Complaint yet a third time reveals Plaintiffs' inability to do so.

As allegations of individual injury, Plaintiffs offer only the bare assertions, bereft of any specific factual allegations, that they purchased pet food from groups of Defendants based on their marketing.  (*Id.*)  However, leaving momentarily aside the problem that these conclusory assertions do not suffice to allege either reliance or causation, which are necessary elements of ***all*** of Plaintiffs' claims (*see* Section 1.B, below), federal courts have not hesitated to dismiss actions where the only alleged injury is the purchase of a product.  In *Rivera v. Wyeth-Ayerst Labs.,* 283 F.3d 315 (5th Cir. 2002), the plaintiffs purchased a drug that later was viewed as possibly linked to the liver failure of a few individual long-term users.  *Id.* at 317.  Plaintiffs filed their complaint on behalf of all patients who took the drug ***without*** suffering any physical or emotional injury.  *Id.*  The Fifth Circuit squarely rejected the contention that the plaintiffs' "loss of cash [wa]s an 'economic injury'" and ruled that the action did not "present a justiciable case or controversy under Article III."  *Id.* at 319, 321.  The court held that the plaintiffs had not alleged the requisite "injury-in-fact" because, although they claimed "economic injury" from purchasing the drug, they did not allege that the drug had caused them physical or emotional injury, was ineffective, or had caused any future health consequences for them.  *Id.* at 320-21.

This Court has applied the reasoning of *Rivera* in dismissing a "misleading advertising" case for lack of standing.  In *Prohias v. Pfizer*, *Inc.*, 485 F. Supp. 2d 1329 (S.D. Fla. 2007), prescription drug users brought claims against a drug manufacturer, alleging no injury other than so-called "price inflation" based on misleading advertising.  *Id.* at 1334-36.  Faced with nothing

more than the plaintiffs' alleged purchase of the drug and resultant claims of economic injury, the Court could not "come up with any theory upon which [the plaintiffs were] actually injured or aggrieved by the allegedly misleading advertisement." *Id*. at 1336. Consequently, they had no standing. *Id*. at 1336-37.

In *Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24 (D.D.C. 2007), the court reached the same conclusion as the court in *Rivera* and held that the plaintiff had no standing to assert claims for breach of implied warranty and violation of a consumer protection statute. *Id*. at 28-29. The plaintiff claimed that defendant Kentucky Fried Chicken ("KFC") had engaged in false advertising by referring to its chicken as the "best food" and by not disclosing the existence of trans fats in it. *Id.* at 26. The plaintiff sought to represent all persons who purchased any food from KFC that contained this undisclosed ingredient. Noting an "absence of any allegation of injury" in the complaint, however, the court held that the plaintiff had no standing to bring suit. *Id*. at 28, 29. As here, the plaintiff's vague allegations of economic injury due to the purchase of food with an undisclosed ingredient did not suffice to confer standing. *Id*.

Like the plaintiffs in the cases described above, named Plaintiffs here allege various difficulties that some pets ***could*** conceivably encounter after ingesting certain foods (*see, e.g.,* TAC ¶¶ 107-09), but they fail to allege any particular facts showing that each named Plaintiff individually was injured as a result of his or her pet's consumption of any particular Defendant's product. Although they allege generally that they purchased pet food from certain Defendants (TAC ¶¶ 3-32), such allegations, devoid as they are of any claim that any individual named Plaintiff was actually injured as a result of any Defendant's pet food product, are as defective as the allegations in *Rivera* and *Hoyte*. Additionally, as in *Prohias*, Plaintiffs cannot simply allege

20

misleading advertisements and thereby obviate their obligation to allege injury resulting from those advertisements (or even identify the advertisements to which each plaintiff was exposed).

Because Plaintiffs fail to allege actual injury, this Court should dismiss all of their claims for an absence of standing. *See, e.g.*, *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 176-78 (D.D.C. 2003) (dismissing false advertising claims at motion to dismiss stage and holding that plaintiffs had no standing; concluding that plaintiffs lacked "particularized injury," even though they claimed economic damages from failure to receive advertised benefits of purchased drugs; and agreeing with defendants that, without adverse health effects from drugs, plaintiffs must have received what they paid for); *Prohias*, 485 F. Supp. 2d at 1329 (granting motion to dismiss for lack of standing where plaintiffs failed to allege injury). *See also Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1017 (7th Cir. 2002) ("No injury, no tort, is an ingredient of every state's law[.]"); *Briehl v. GMC*, 172 F.3d 623, 627 (8th Cir. 1999) ("Courts have been particularly vigilant in requiring allegations of injury or damages in products liability cases.").

Without standing in their own right, named Plaintiffs cannot assert claims on behalf of a purported class.[14]  *See, e.g.*, *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) ("A named plaintiff in a class action who cannot establish the requisite case or controversy between himself

---

[14]  This defect is one of many that would preclude class treatment here.  For example, it would be impossible to identify members of the proposed class, because the proposed class definition is impermissibly vague and because the claims would require this Court to examine the individual circumstances and mental state of each individual putative class member as well as individual inquiries into the alleged cause of injury to specific pets. Fundamentally, nothing ties together the wildly disparate claims asserted in the TAC into common issues that make this case suitable for class treatment.  Defendants reserve their rights to brief the inappropriateness of class certification were the TAC to survive dismissal as a whole.

and the defendants simply cannot seek relief for anyone – not for himself, and not for any other member of the class."); *Lynch v. Bexley*, 744 F.2d 1452, 1456 (11th Cir. 1984) ("If the named plaintiff seeking to represent a class fails to establish the requisite case or controversy, he may not seek relief on his behalf or on that of the class.").

Nor do named Plaintiffs improve their position by seeking to have this Court certify a Defendant Class, when they have not even alleged that they have been injured as individuals by *any* named Defendant, much less an unidentified member of the putative class. *See, e.g.*, *In re Enron Corp. Secs., Derivative & ERISA Litig.*, No. MDL-1446, Civ.A. H-01-3624, 2004 WL 405886, **27, 32 (S.D. Tex. Feb. 25, 2004) (holding that a named plaintiff could only sue those against whom it had individual standing and noting the "general rule that each class representative must have a plausible claim against each named defendant in a class or subclass"). In fact, some courts have held that named plaintiffs must show that they have standing even with respect to unnamed defendants in the putative class. *See, e.g.*, *Pope v. Clearwater*, 138 F.R.D. 141, 145 (M.D. Fla. 1991) ("The named representative plaintiff does not allege that he has been injured by any [unnamed member of the putative class]. . . . Therefore, the named representative plaintiff does not have standing to bring this class action against the proposed class of defendants.").[15]

Presumably hoping to shoehorn the TAC into the "juridical link" exception, recognized by some courts as eliminating the requirement that named Plaintiffs show their standing to sue each Defendant, Plaintiffs offer up the unsupported and highly implausible allegation that

---

[15]   Other courts have analyzed the absence of links between named plaintiffs and unnamed defendants as defects in typicality rather than standing. *See, e.g.*, *Brown v. Kelly*, 244 F.R.D. 222, 239 (S.D.N.Y. 2007).

Defendants are "juridically related" in light of the allegedly "homogenous" nature of the pet food industry and their relationship to trade associations to which they are allegedly "bound by a common course of conduct to injure the Plaintiffs" (TAC ¶ 113). These allegations offer no support to Plaintiffs' position. "A juridical link . . . generally must stem from an independent legal relationship." *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 686 (N.D. Ga. 2003) (citing *Canady v. Allstate Ins. Co.,* No. 96CV0174, 1997 WL 33384270, *6 (W.D. Mo. June 19, 1997)). In general, the juridical link "exception is limited to cases where the defendants' conduct 'is standardized by a common link to an agreement, contract or enforced system which acts to standardize the factual underpinnings of the claims and to insure the assertion of defenses common to the class.'" *Id.* (citing *Angel Music, Inc. v. ABC Sports, Inc.*, 112 F.R.D. 70, 75 (S.D.N.Y. 1986)). Participation in an industry or interactions with trade associations do not put Defendants in this type of independent legal relationship with one another. Furthermore, the "juridical link" exception is limited almost entirely to cases involving a defendant class of state officials, which clearly is not the case here. *See, e.g.*, *Turpeau v. Fidelity Fin. Servs., Inc.*, 936 F.Supp. 975, 979 (N.D. Ga. 1996) (cursorily rejecting "juridical link" allegations because "Defendants are not state officials"). Finally, even plaintiffs who do sufficiently allege a "juridical link" among defendants must still adequately allege that each of them, as an individual, has suffered actual injury at the hands of at least *one* of the Defendants. As discussed above, the TAC is fatally deficient in this regard.

Because Plaintiffs do not meet the threshold Article III standing requirements, this Court should dismiss the entire TAC pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See, e.g.*, *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 807 n.8, 811 (11th Cir. 1993) (affirming dismissal due to plaintiffs' "fail[ure] to establish an injury to

themselves sufficient to confer standing" and noting that such failure left the court without subject matter jurisdiction and required dismissal pursuant to Rule 12(b)(1)). Plaintiffs would remain free to take advantage of the forums actually designed to address generalized grievances of this nature, including federal and state legislatures and the administrative agencies described more fully above. Federal courts simply do not play this role. *See*, *e.g., Williams*, 297 F. Supp. 2d at 178 (dismissing for lack of standing and explaining that "[t]he invasion of a purely legal right without harm to the consumer—in this case, to freedom from alleged false and misleading advertising—can be addressed through the administrative process").

### B. The TAC Fails to Meet the Requirements of Rule 8 and Rule 12(b)(6).

Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure both require dismissal of the TAC because Plaintiffs fail to allege a causal link between any acts, omissions or products attributable to any Defendant and any harm suffered by an identified Plaintiff.

In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the Supreme Court announced heightened pleading requirements under Rules 8 and 12(b)(6), and this Court has been quick to recognize the unmistakable consequence of the Supreme Court's directive. In *Moore v. Miami-Dade County*, 502 F. Supp. 2d 1224 (S.D. Fla. 2007), this Court acknowledged that a complaint must go beyond proffering "mere labels and conclusions" and that, in the wake of *Twombly*, Plaintiffs can survive a motion to dismiss only if they are able to "nudge [their] claims across the line from conceivable to plausible." *Id.* at 1228. Likewise, in *Berry v. Budget Rent A Car Syss., Inc.*, 497 F. Supp. 2d 1361 (S.D. Fla. 2007), Judge James Cohn recognized that, whereas before *Twombly* the federal pleading standard was highly deferential to plaintiffs, "pursuant to *Twombly*, to survive a motion to dismiss, a complaint must now contain factual allegations which are enough to raise a right to relief beyond the speculative level." *Id.* at 1364 (quoting *Twombly*, 127 S. Ct. at 1965).

Although Rule 8 requires a "short and plain statement" of a plaintiff's claims, it "still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 127 S. Ct. at 1965 n.3. At a minimum, "Rule 8(a) . . . requires that a complaint against multiple defendants indicate clearly the defendants against whom relief is sought and the basis upon which the relief is sought against the particular defendants." *Yucyco, Ltd. v. Rep. of Slovn.*, 984 F. Supp. 209, 219-20 (S.D.N.Y. 1997) (dismissing complaint) (citations and internal quotation marks omitted); *see also Mathews v. Kilroe*, 170 F. Supp. 416, 417 (S.D.N.Y. 1959) ("To do less than [matching specific allegations to specific defendants] is to cause an injustice to persons who are named as defendants in an action."). Furthermore, in cases that may be costly or time-consuming to litigate, "a district court must retain the power to insist upon some specificity in pleading ***before*** allowing a potentially massive factual controversy to proceed." *Twombly*, 127 S. Ct. at 1967 (emphasis added) (quotations omitted); *see also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346-47 (2004). The words "potentially massive factual controversy" from *Twombly* do not begin to do justice to the morass that the TAC asks this Court to confront.

Defendants have repeatedly called Plaintiffs' attention to the fact that each of their claims requires a factually supported allegation of causation. Nevertheless, although they identify manufacturers and retailers from which they allegedly purchased pet food for the first time in the TAC (*see* TAC ¶¶ 3-32), Plaintiffs once again have failed to provide any factual basis for asserting either that any particular Plaintiff relied on any specific advertising of any specific Defendant or that any product in particular caused any injury to any particular Plaintiff.[16] Not

---

[16] Among the Defendants in this matter, there are corporations that do not manufacture or sell any pet food. The Procter and Gamble Company ("P&G") and Colgate-Palmolive Company ("Colgate") are simply parent companies that own shares in other Defendants. P&G owns

[Footnote continued on next page]

[Footnote continued from previous page]

shares in The Iams Co. ("Iams"), and Colgate owns shares in Hill's Pet Nutrition, Inc. ("Hill's"). As reflected in Ex. 5 of the TAC, Hill's Science Diet pet food—the only "Colgate" pet food brand specifically referred to in the TAC (*see* TAC ¶¶ 80-82)—is produced by Hill's, not Colgate. Similarly, as reflected in Ex. 3 to the TAC, it is Iams, not P&G, that produces Iams pet food. Plaintiffs recognize in the TAC that Iams and Hill's are corporations, not divisions of ultimate parents (*see* ¶¶ 35, 37). While Plaintiffs offer conclusory and insufficient allegations that P&G is "affiliated" with Iams (*see* TAC ¶ 35) and that Colgate is "affiliated" with Hill's (*see* TAC ¶ 37), the TAC does not contain any allegations that the independent corporate forms of P&G and Colgate should be disregarded (¶¶ 35 and 37).

Furthermore, Plaintiffs fail to make any substantive allegations as to Nestlé U.S.A. as they are unable to identify any pet food brands manufactured or sold or any alleged misrepresentations made by Nestlé U.S.A. As Plaintiffs' own exhibits to the Complaint demonstrate, the only "Nestlé" pet food brands specifically referenced in the TAC—the Beneful and Mighty Dog pet food brands—are brands of a separately incorporated legal entity, Nestlé Purina PetCare Company ("Nestlé Purina"). (*See* TAC ¶¶ 40-41 (recognizing that Nestlé U.S.A. and Nestlé Purina are separate companies and incorporated and doing business in different states); *see also* ¶¶ 84, 106; Exhs. 8, 11 and 22 (showing that Beneful and Mighty Dog are Nestlé Purina brands)). Instead, Plaintiffs attempt to obfuscate the issue by improperly lumping Nestlé U.S.A. together with Nestlé Purina. (*See* TAC ¶ 84 n.3 (defining the two companies "collectively as 'Nestlé' and alleging that "there is a lack of corporate distinction between these two entities and both companies are involved in the manufacture [sic], marketing, distribution and sale of pet food and treats").) That conclusory allegation, however, is wholly insufficient under Florida law to pierce the corporate veil and state a claim against Nestlé U.S.A. on the basis of alleged conduct by Nestlé Purina. *See, e.g.*, *Al-Babtain v. Banoub*, No. 8:06-cv-1973-T-30TGW, 2007 WL 2774210, **2-3 (M.D. Fla. Sept. 24, 2007) (dismissing count against corporation based on piercing the corporate veil, where pleadings did not allege the corporation was mere instrumentality of second corporation or "organized or employed to 'accomplish some fraud or illegal purpose,' 'evade some statute,' or 'accomplish some fraud or illegal purpose'"). Likewise, Plaintiffs' recently added, conclusory allegation that Nestlé U.S.A. participates in the pet food industry "directly and/or through an agent" (*see* TAC ¶ 40) also is insufficient under Florida law to state a claim against Nestlé U.S.A., as Plaintiffs fail to identify Nestlé U.S.A.'s alleged agent, any conduct by such agent on behalf of Nestlé U.S.A., or any of the other facts required to state a claim against Nestlé U.S.A. on the basis of an agency theory of liability. *See, e.g.*, *Attorney's Title Ins. Fund, Inc. v. Regions Bank*, 491 F.Supp.2d 1087, 1095-96 (S.D. Fla. 2007) (dismissing claim against defendant based on conduct of third party where plaintiff failed to allege facts sufficient to establish agency relationship between defendant and third party).

one of Plaintiffs' nine causes of action is viable without such allegations of individual reliance and/or individual causation.[17]  Counts I and II each assert some type of common law fraud or misrepresentation claim, all of which require allegations of individual reliance on a Defendant's specified alleged misrepresentation in order to determine a causal link.  Similarly, Counts III through V and Counts VII through IX each assert claims that require allegations of harm to a particular Plaintiff caused by specified Defendants' products.[18]  Plaintiffs give occasional conclusory nods to these requirements.  (*See, e.g.*, TAC ¶¶ 3-32 (vaguely alleging that Plaintiffs' purchases "were made based upon the above-referenced Defendants' marketing.").)  However, even before *Twombly*, such vague nexus allegations were deemed insufficient.  *See, e.g.*, *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984) ("[a] complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations").  After *Twombly*, it is crystal clear that this sort of "formulaic recitation of the elements of a cause of action will not do."  *Berry*, 497 F. Supp. 2d at 1364 (quoting *Twombly*, 127 S. Ct. at 1964-65).

> **1.      Plaintiffs Fail to Allege That Any of Them Relied on Any Particular Defendant's Advertising or Marketing.**

Paragraphs 75 to 92 of the TAC set forth in detail a number of advertisements and representations that Plaintiffs claim are misleading, yet nowhere do Plaintiffs allege which, if any, of them viewed any specific advertisements or packaging, or that the specific

---

[17]  The relevant laws of Michigan and Florida, home to three named Plaintiffs, require the elements of reliance and causation and are detailed, in **APPENDIX A** to this Motion, by way of example.  Defendants employ appendices in order to set forth the necessary citations to the applicable laws of multiple jurisdictions without unduly lengthening the substantive discussion in this brief.

[18]  As discussed further in Section II.E below, Count VI does not constitute an independent substantive claim.

representations they viewed induced any of them to purchase any Defendant's product. Plaintiffs' failure to allege which, if any, named Plaintiff actually saw, much less relied on, specific advertising of a specific Defendant that Plaintiffs allege was misleading requires dismissal of their common law fraud and misrepresentation claims.[19]

In *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171 (D.D.C. 2003), a group of consumers brought a class action for false advertising against a pharmaceutical manufacturer and sought all monies paid by the class for the pain reliever they purchased. *Id.* at 174-77. Like Plaintiffs' TAC here, the complaint in *Williams* did not allege that the plaintiffs had actually seen or relied on the advertising that was alleged to be misleading. In dismissing the complaint, the district court stated that the complaint failed because, "[w]hile [the complaint] asserts that defendants engaged in false and misleading advertising, it does not plead that these [plaintiffs] were in any way deceived—or even saw—any of that advertising." *Id.* at 177. *See also, e.g., Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1308 (11th Cir. 1999) (fraud and misrepresentation claims failed where plaintiff did not claim she read alleged misrepresentation); *Simon v. Celebration Co.*, 883 So. 2d 826, 832 (Fla. 5th DCA 2004) (fraud-based claims such as negligent misrepresentation require allegation that plaintiff relied on defendant's false statement); *Leider v. Ralfe*, 387 F. Supp. 2d 283, 298 (S.D.N.Y. 2005) (class plaintiffs failed to

---

[19] Of course, Plaintiffs cannot invoke any presumption of reliance. As the Eleventh Circuit has observed, the presumption of reliance applied in securities cases does not apply to cases alleging consumer fraud, as "[t]he securities market presents a wholly different context than a consumer fraud case." *See Sikes v. Teleline, Inc.,* 281 F.3d 1350, 1363 (11th Cir. 2002); *see also Waters v. Int'l Precious Metals Corp.*, 172 F.R.D. 479, 502 (S.D. Fla. 1996) ("Florida does not recognize the presumption of reliance . . . . Plaintiffs must affirmatively prove reliance in both omissions and misrepresentations cases."); *In re Cascade Int'l Sec. Litig.*, 840 F. Supp. 1558, 1571 (S.D. Fla. 1993) ("Florida does not recognize a 'fraud on the market' theory to establish reliance, but requires allegations of actual reliance.").

state claim for false advertising where complaint did not "point to any specific advertisement or public pronouncement . . . which was . . . seen by all class members") (citations and quotations omitted).

Plaintiffs do not salvage their claims with their vague allegations that each made purchases "based upon the . . . Defendants' marketing" (TAC ¶¶ 3-32). Such conclusory allegations do not suffice. *See Garcia v. Santa Maria Resort, Inc.*, Civ. No. 07-10017, 2007 WL 4127628, *10 (S.D. Fla. Nov. 15, 2007) (dismissing false advertising and negligent misrepresentation claims for failure to specify the alleged misrepresentations). In fact, the federal courts long have recognized that conclusory allegations are not facts and thus are insufficient to defeat a motion to dismiss for failure to state a claim. *See, e.g.*, *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1263 (11th Cir. 2004) ("To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims."); *U.S. ex rel Feingold v. Palmetto Gov't Benefits Adm'rs*, 477 F. Supp. 2d 1187, 1193 (S.D. Fla. 2007) (dismissing amended complaint with prejudice where plaintiff "tr[ied] to avoid dismissal by the inclusion of a conclusory statement"). Further, as discussed above, these conclusory allegations are even more inadequate in the wake of *Twombly*. In short, Plaintiffs' conclusory assertions in the TAC, unaccompanied by any allegation that a named Plaintiff relied on any identified allegedly misleading statement by a specific Defendant, are insufficient to support Counts I and II. These counts should be dismissed.

> **2. The TAC Does Not Allege Which Defendants' Products, If Any, Caused Harm to Plaintiffs' Pets.**

Plaintiffs fare no better in pleading causation. Having alleged no actual injury to either themselves or their pets or even the purchase of specific products that could have caused such

injury (*see* Section I.A), Plaintiffs necessarily fail to allege a sufficient causal nexus between any specific actions attributed to any Defendant and any alleged injury to a specific Plaintiff.  Counts III through V and Counts VII through IX must therefore fail.  *See Aldon Indus., Inc. v. Don Myers & Assoc., Inc.*, 517 F.2d 188, 191 (5th Cir. (Fla) 1975) (affirming dismissal of claims for breach of warranty and negligence where plaintiff could not show "that the plaintiff suffered damages and that the damages flowed as the natural and proximate result of the defendant's wrongful conduct"); *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 263 (S.D. Cal. 1988) (denying class certification to plaintiff pet owners for injuries resulting from alleged defect in defendant manufacturer's medicinal pet product and explaining that the "most important" element of plaintiffs' negligence claim was proof that defendant's actions "proximately caused the plaintiffs' varying injuries" (internal citation omitted)).

As an initial matter, as discussed above in Section I.A, the TAC limits its injury allegations to "Plaintiffs" and "consumers" generally.  Further, the TAC hedges those already vague injury allegations by phrasing them in terms of "and/or" (*e.g.*, TAC ¶ 1), leaving the Complaint without a single allegation that any specific named Plaintiff or his or her pet was actually harmed.

However, even if Plaintiffs had alleged an identifiable injury—which they have not—the relevant claims would still fail for lack of causation due to Plaintiffs' failure to allege which Defendant's products caused such an injury.  In paragraphs 3 through 32 of the TAC, named Plaintiffs list several manufacturers and retailers as the source of the pet food they purchased. For example, paragraph 9 asserts the following allegations with respect to Plaintiff Claire Kotzampaltiris:

> Plaintiff/Class Representative, Claire Kotzampaltiris, is a resident
> of Massachusetts during the class period.  Plaintiff Kotzampaltiris

> regularly purchased pet food during the class period for daily
> consumption for her cat(s)/dog(s) in Massachusetts, which was
> manufactured and marketed by Defendants, Mars and Mars Pet
> Care, Procter & Gamble and Iams, Nestlé USA and Nestlé Purina
> Petcare, Colgate Palmolive and Hill's, Nutro and on information
> and belief Menu Foods. Defendants, [sic] Wal-Mart, Target, Petco
> and Petsmart marketed and sold Plaintiff Kotzampaltiris pet food
> from the above-referenced manufacturers and marketers, which
> purchases were made based upon the above referenced
> Defendants' marketing.

TAC ¶ 9.  But Plaintiffs fail to identify which of the several brands or products manufactured by

the various Defendants listed were purchased by Ms. Kotzampaltiris, further adding to the

vagueness and inadequacy of Plaintiffs' allegations.  For example, Ms. Kotzampaltiris states that

she "regularly purchased pet food during the class period for daily consumption for her

cat(s)/dog(s) . . . which was manufactured by . . . Mars."  As Plaintiffs recognize in paragraphs

75 through 77 of the TAC, Mars produces multiple pet food brands, including "The Good Life"

and "Pedigree," and, under each brand name, Mars manufactures and distributes multiple pet

food products.

It is axiomatic that, in products liability suits like this one purports to be, the plaintiff

must be able to identify not only the manufacturer, but the specific product that he or she alleges

caused his or her injury.  In *Pulte Home Corp., Inc. v. Ply Gem Industries, Inc.*, 804 F. Supp.

1471, 1484-85 (M.D. Fla. 1992), the district court emphasized the importance of "the issue of

product identification" in a suit for strict liability, stating unequivocally that "[t]he requirement

for product identification in products liability is an important one" and referring to product

identification as "fundamental" in tort claims.  *Id*. at 1484-85.  *See also Blackston v. Shook and

Fletcher Insulation Co.*, 764 F.2d 1480, 1482-83 (11th Cir. 1985) ("Unless the manufacturer's

defective product can be shown to be the proximate cause of the injuries, there can be no

recovery.") (quoting *Talley v. City Tank Corp.*, 279 S.E.2d 264, 169 (Ga. App. 1981));

*Philadelphia v. Lead Industries Ass'n, Inc.*, 994 F.2d 112, 123 (3d Cir. 1993) ("Proof of causation is . . . necessary in products liability actions.  A plaintiff must establish that a particular product of a defendant manufacturer caused her injuries."); *Napier v. Osmose, Inc.*, 399 F. Supp. 2d 811, 814 (W.D. Mich. 2005) ("the threshold requirement of any products liability action is identification of the injury-causing product and its manufacturer") (alteration and internal quotation omitted); *Klein v. Council of Chem. Assocs.*, 587 F. Supp. 213, 221-22 (E.D. Pa. 1984) (dismissing products liability action brought against eleven manufacturers and suppliers of chemical products, as well as a putative defendant class of other such manufacturers and suppliers (as well as trade associations), because "plaintiffs fail to allege the defective product(s) to which [the plaintiff] was exposed[,]" and noting that "[i]njured plaintiffs may recover if a defective product causes them injury but prospective plaintiffs may not search for defective products in order to find something to which to attribute liability for their injuries").

Here, the TAC fails to link identifiable, specific conduct by a Defendant or a specific Defendant's product to an injury suffered by any Plaintiff.  The failure to specify which brands or products any Plaintiff purchased, combined with Plaintiffs' refusal to allege whether any of these brands or products actually caused injury to Ms. Kotzampaltiris or her "cat(s)/dog(s)," further demonstrates the TAC's failure to place Defendants on notice of the claims against them and necessitates dismissal of these claims.

## II.     Each Count Alleged in the TAC Warrants Dismissal on Independent Grounds.

### A.     Plaintiffs Fail to Allege Their Fraud-Based Claims (Counts I-III) with Sufficient Particularity.

Because Plaintiffs' TAC fails to meet even the standard pleading requirements, as discussed above, it necessarily fails to meet the heightened pleading standards of Rule 9(b) for the three fraud-based causes of action: fraudulent misrepresentation and concealment (Count I);

negligent misrepresentation (Count II); and violation of Florida's Deceptive and Unfair Trade

Practices Act ("FDUTPA") (Count III).[20]

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances

constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).[21]  These

requirements are designed "to protect defendants from frivolous suits, or 'spurious charges of

. . . fraudulent behavior.'"  *Box Office*, 2007 WL 1362898, *7 n.3 (quoting *U.S. v. Lab Corp. Am.

Inc.*, 290 F.3d 1301, 1313 n.24 (11th Cir. 2002)).  The Eleventh Circuit has explained that Rule

9(b) requires that complaints asserting fraud-based causes of action set forth "(1) the precise

statements, documents, or misrepresentations made; (2) the time, place, and person responsible

for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and

(4) what the defendants gained by the alleged fraud."  *Brooks v. Blue Cross & Blue Shield of

Fla., Inc.*, 116 F.3d 1364, 1380 (11th Cir. 1997).[22]  In short, Plaintiffs must "allege the 'who,

---

[20]  The law is clear that Plaintiffs' fraudulent concealment and negligent misrepresentation
claims must satisfy the heightened pleading requirements of Rule 9(b).  *See, e.g.*, *Box Office
Entertainment, LLC v. Brian D. Gordon, CPA, P.A.*, No. 05-21010, 2007 WL 1362898, *7
(S.D. Fla. May 9, 2007) (granting Rule 9(b) motion to dismiss claims for fraud and negligent
misrepresentation).  Additionally, a number of courts in this Circuit have held that Rule
9(b)'s heightened pleading requirements apply to causes of action under FDUTPA that are,
as is the case here, based on allegations of fraud.  *See, e.g.*, *Garcia v. Santa Maria Resort,
Inc.*, No. 07-10017, 2007 WL 4127628, *10 (S.D. Fla. Nov. 15, 2007) (granting Rule 9(b)
motion to dismiss FDUTPA claim); *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322
(M.D. Fla. 2002) (same); *Cannon v. Metro Ford Inc.*, 242 F. Supp. 2d 1322, 1332 (S.D. Fla.
2002) (same).

[21]  A number of other state consumer protection statutes impose this heightened pleading
standard for fraud claims as well.  *See* **APP. B**, "State Consumer Protection Statutes."

[22]  These heightened pleading requirements are consistent with the basic elements Plaintiffs
must allege for each of the three fraud-based claims.  *See, e.g.*, *Box Office*, 2007 WL
1362898, *7 (elements of a claim for fraudulent misrepresentation are (a) a false statement

[Footnote continued on next page]

33

what, where, when and how' to survive a motion to dismiss." *Anderson v. Smithfield Foods, Inc.*, 207 F. Supp. 2d 1358, 1362 (M.D. Fla. 2002). Thus, it is axiomatic that "[p]laintiffs [cannot] simply lump[] together all [defendants] in their allegations of fraud[;]" rather, a complaint must reasonably notify each defendant of the specific nature of his or her alleged participation in the fraud. *Brooks*, 116 F.3d at 1381.

Here, as has been the case with Plaintiffs' prior complaints, the TAC is deficient under Rule 9(b) standards on several fronts. <u>First</u>, it fails to identify (a) what particular statements were allegedly fraudulent; (b) which Defendants allegedly made each such statement; (c) to which Plaintiff a specific fraudulent statement was allegedly made; and (d) when and in what manner the allegedly fraudulent statement was allegedly made. <u>Second</u>, it fails to allege that ***any*** Plaintiffs saw, heard, or read ***any*** particular statements made by ***any*** Defendant or set forth ***any*** facts demonstrating that ***any*** such statement played ***any*** role in ***any*** Plaintiff's decisions to purchase ***any*** Defendant's product. <u>Third</u>, it contains none of the particularized allegations necessary to establish whether and how a particular Plaintiff was harmed by the alleged fraud of a specific Defendant. Instead, the TAC contains only vague and conclusory allegations that sweep in virtually the entire pet food industry. This is just the sort of pleading Rule 9(b) is designed to protect defendants against. *See Lab Corp.*, 290 F.3d at 1313 ("[i]f Rule 9(b) is to

---

[Footnote continued from previous page]

    concerning a material fact, (b) the representor's knowledge that the representation is false, (c) an intention that the representation induce another to act on it, and (d) consequent injury by the party acting in reliance on the representation); *Atlantic Nat'l Bank of Fla. v. Vest*, 480 So. 2d 1328, 1331-32 (Fla. 2d DCA 1985) (negligent misrepresentation demands the same, except that the representor must know of the misrepresentation, must make the representation without knowledge as to its truth or falsity, or must make the representation under circumstances in which he ought to have known of its falsity); *Marino v. Home Depot U.S.A., Inc.*, 245 F.R.D. 729, 737 (S.D. Fla. 2007) (claim under FDUTPA requires proof of (a) a deceptive act or unfair practice, (b) causation, and (c) actual damages).

carry any water, it must mean that an essential allegation and circumstance of fraudulent conduct cannot be alleged in such conclusory fashion").  Accordingly, Counts I-III should be dismissed.

> ### 1.   The TAC Fails to Identify "Who" Did "What" to "Whom" and "When."

Nowhere in the 167 pages of their TAC and its exhibits do Plaintiffs provide the required factual description of a single, specific allegedly fraudulent act that meets the requirements of Rule 9(b).  Instead, in their fifth filed Complaint in this action, Plaintiffs again make the deliberate choice ***not*** to identify any specific statement made by any specific Defendant to any specific Plaintiff, but instead to lump together all Defendants and all Plaintiffs.  As noted above in the discussion of standing and Rule 8 and Rule 12 failings, the TAC depends almost entirely on improperly general descriptions of industry practices and suppositions about how such practices might affect consumers and Plaintiffs generally.  (*See, e.g.*, TAC ¶ 70 ("the Defendants [sic] marketing is intended to entice the ***Plaintiffs*** and ***consumers*** to purchase pet food that they believe is human-grade quality because the Defendants intentionally depict it as such in their marketing to boost sales because marketing studies have shown that the ***Plaintiffs*** and ***consumers*** want the best for their pets, including human-grade, healthy pet food products") (emphasis added).)[23]  In resting largely on allegations about the manufacturing and marketing

---

[23] *See also, e.g.*, TAC ¶ 67 ("Defendant Manufacturers have claimed throughout the class period that they promote scientific research as to their pet food products thus leading the ***Plaintiffs*** and ***consumers*** to believe that their pet food and/or treat ingredients and claimed benefits are adequately supported by competent and reliable scientific data"); *id*. ¶ 69 ("The Defendants [sic] deceptive marketing leads ***consumers*** to believe that the ingredients used in their brands of pet food are 'human quality,' but they, or their co-packers, use material other than human-grade 'real meat, chicken, lamb,' etc., as a nitrogen source to boost 'protein' content unbeknownst to the ***consumer***"); *id*. ¶ 73 ("The Defendants' pet foods . . . are intentionally named to lead ***consumers*** to believe that they are wholesome and/or provide benefits to cats and dogs.") (emphases added).

practices of the "pet food industry" as a whole, the TAC fails to set forth any facts about the manufacturing practices of any particular Defendant and does not intelligibly articulate how the quality or content of any particular pet food product renders any statement by any Defendant false or misleading.  (*See* TAC ¶¶ 64-74, 92-106 (describing "Defendants'" manufacturing and marketing practices, not any actual practice of any individual Defendant, and the alleged contents of "pet food," with only an occasional and fleeting reference to the contents of a particular product sold by a particular Defendant).)

Moreover, the only specific statements identified in the TAC—consisting of web-site printouts and sample packaging for a few specific products manufactured by some of the various Defendants and photos purportedly of sample in-store marketing at unidentified retail outlets (*see* TAC ¶¶ 75-89, Exs. 1-14, 26-30)—are never alleged to have been seen, heard or read by any particular Plaintiff, let alone to have led to a specific purchase of a particular Defendant's product, which, in turn, caused injury to a specific Plaintiff.  (*See, e.g.*, TAC ¶ 75 (marketing of Mars' "Good Life Recipe" brand products is "designed to appeal to **consumers**[]") (emphasis added).)[24]  Indeed, the TAC is wholly devoid of any allegations of what statements were made by any specific Defendant to any particular Plaintiff, the manner in which such misrepresentations were made, when such misrepresentations were made, or the place where such misrepresentations were made.

---

[24] *See also*, *e.g.*, TAC ¶ 77 (marketing of Mars' "Pedigree" brand products "leads **consumers** to believe . . ."); *id.* ¶ 83 ("Del Monte deceptively advises **consumers** that dry food is *good* for their cats") (emphases added).  Plaintiffs offer these paragraphs, themselves highly general and vague, as "an example" of Defendants' allegedly misleading marketing but elsewhere complain even more vaguely of "[t]he Defendants' marketing" (*see, e.g.*, TAC ¶¶ 69, 132).  Such hazy allegations cannot serve as the basis for any fraud claim.  *See, e.g.*, *Flamenbaum v. Orient Lines, Inc.*, No. 03-22549, 2004 WL 1773207, *6 (S.D. Fla. July 20, 2004), discussed below.

This Court previously has rejected fraud claims for similar pleading deficiencies.  In *Flamenbaum v. Orient Lines, Inc.*, No. 03-22549-CIV, 2004 WL 1773207, *6 (S.D. Fla. July 20, 2004), this Court dismissed fraud claims pursuant to Rule 9(b) where the complaint simply alleged that misrepresentations had been made by the "defendants" and did not identify which parties were responsible for which alleged misrepresentation.  In addition, the Court found that the plaintiffs there had failed to allege particular facts establishing "the circumstances under which the alleged misrepresentations were made" and the manner in which the statements at issue were misleading.  *Id.  See also Rogers v. Nacchio*, 241 Fed. Appx. 602, 608 (11th Cir. 2007) (affirming dismissal of fraud-based claims where complaint failed to allege which defendant made certain statements); *Cordova v. Lehman Bros., Inc.*, No. 05-21169-CIV, 2007 WL 4287729, **6-7 (S.D. Fla. Dec. 7, 2007) (dismissing fraud-based claims where complaint lumped defendants together and failed to identify "specific misrepresentations, omissions, or actions and stat[e] clearly how they are attributable, on which occasions or in which documents, to specific individual Defendants").  For the same reasons, the Court here should dismiss Counts I-III of the TAC.

> **2.**     **The TAC Fails to Allege Any Facts Demonstrating That Any Defendant's Statements Caused Any Plaintiff to Alter Any Purchasing Decision.**

Plaintiffs' failure to allege a specific fraudulent act also dooms their TAC because it makes it impossible for them to allege that they relied on or were misled by any Defendant or that any allegedly misleading statement played any role in a specific Plaintiff's decision to purchase a specific Defendant's product.  Instead, the TAC breezily alleges that "[t]he Plaintiffs/Class Representatives and the Class were unaware of the falsity of [Defendants'] omissions and concealment and justifiably relied on the representations and omissions" (TAC ¶ 135) and that "[a]s a direct and proximate result . . . Plaintiffs/Class Representatives and the

Class have suffered damages" (*see, e.g.*, *id*. ¶ 136).  Yet the TAC fails to allege ***any*** facts (let

alone the particular facts required under Rule 9(b)) that establish that any Plaintiff actually saw,

read, or heard any statement by any Defendant about one of its products that led Plaintiff to

purchase that product (*see id*. ¶¶ 75-89).  Having failed to allege the basic facts about any

particular transaction, Plaintiffs do nothing more than offer wholly conclusory statements about

why, how, and even whether they would have altered their purchasing decisions in the absence

of Defendants' alleged misrepresentations (*see, e.g.*, *id*. ¶ 136).

      The law is clear that fraud-based claims cannot survive a Rule 9(b) motion to dismiss

where plaintiffs do not specify how they were misled.  *See, e.g.*, *Berry, Inc.*, 497 F. Supp. 2d at

1368 (dismissing plaintiffs' FDUTPA claims because the plaintiffs had failed to allege that they

actually viewed the allegedly misleading advertising at issue); *In re Managed Care Litig.*, 150 F.

Supp. 2d 1330, 1347 (S.D. Fla. 2001) (dismissing claims where plaintiffs failed to "fully identify

which materials were received or which advertisements were actually viewed"); *Berenguer v.

Warner-Lambert Co.*, No. 02-05242, 2003 WL 24299241, *2 (Fla. Cir. Ct. July 31, 2003)

(dismissing FDUTPA claim where plaintiffs did "not allege that they saw any of the

advertisements . . . let alone that they saw an alleged misrepresentation in an advertisement that

caused them to purchase [defendant's products]").  *See also Rogers*, 241 Fed. Appx. at 608

(affirming dismissal of fraud-based claims where complaint failed to set forth particular facts

regarding the manner in which plaintiffs were misled).[25]  Accordingly, Plaintiffs' fraud-based

claims cannot withstand scrutiny under Rule 9(b) and should be dismissed.

---

[25] As discussed above, Plaintiffs do not advise the Court or Defendants what representations by
which Defendant are alleged to have misled whom.  Even if they had, to the extent that they
complain of Defendants touting their product as "healthiest and best tasting," "rich in

[Footnote continued on next page]

### 3. The TAC Fails to Allege That Any Plaintiff Suffered Harm as a Result of Any Fraudulent Statement.

As discussed in Section I above, Plaintiffs also have failed to set forth any specific facts showing that a specific Plaintiff was individually harmed as a result of a specific allegedly false or misleading statement by a particular Defendant. The conclusory allegations Plaintiffs do provide are insufficient under even liberal pleading standards, much less under the more stringent standards of Rule 9(b). *See, e.g., Stires*, 243 F. Supp. 2d at 1322 (FDUTPA claim dismissed where plaintiff only alleged that she did not receive product promised to her); *Cordova*, 2007 WL 4287729, *8 (dismissing fraud-based claims where plaintiffs did not clearly allege what defendants obtained as a consequence of the alleged fraud).[26]

---

[Footnote continued from previous page]

quality," "[r]ich in nutrients" and having "wholesome flavor" and the like (*see, e.g.*, TAC ¶¶ 75, 77, 83, 84, 88), they cannot state a claim. As a matter of law, such statements are too subjective to support a misrepresentation claim. *See, e.g., Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674, 686 (5th Cir. 1986) (vacating the judgment and directing the district court to dismiss the complaint, which involved such claims as "easy," "prime," "amazing," "perfect," wonderful," and "excellent"); *Hoyte*, 489 F. Supp. 2d at 30 (noting that restaurant's claim to serve the "best food" is non-actionable puffery); *Fraker v. KFC Corp.*, No. 06-CV-01284-JM, 2007 WL 1296571, *3 (S.D. Cal. Apr. 30, 2007) (dismissing as non-actionable the phrases "best food," "only the highest quality ingredients," and "innovative recipes," among others); *Tylka v. Gerber Prods. Co.*, No. 96-C-1647, 1999 WL 495126, *8 (N.D. Ill. July 1, 1999) (granting summary judgment because "'optimum nutrition' . . . or 'the most wholesome nutritious safe foods you can buy anywhere in the world' add little to the daily informational barrage to which consumers are exposed").

The FDA has recognized and approved these kinds of statements as entirely permissible as well. *See, e.g.*, FDA, "Interpreting Food Labels," http://www.fda.gov/cvm/petlabel.htm ("Many pet foods are labeled as 'premium' and some are now 'super premium' and even 'ultra premium.' Other products are touted as 'gourmet' items. Products labeled as premium or gourmet are not required to contain any different or higher quality ingredients, nor are they held up to any higher nutritional standards than are any other complete and balanced products.").

[26] *See also Haun v. Don Mealy Imports, Inc.*, 285 F. Supp. 2d 1297, 1307 (M.D. Fla. 2003) ("[B]ecause Plaintiff fails to allege *how* he was 'aggrieved by' Defendant's acts, he fails to

[Footnote continued on next page]

In sum, the TAC consists of nothing more than overly broad generalities, lumping unique and differently-situated Defendants together in a one-size-fits-all complaint and failing altogether to apprise each Defendant of the particular acts of alleged fraud in which it is alleged to have engaged.  For all of the reasons stated above, Counts I-III of the TAC fail to meet the standards of Rule 9(b) and should be dismissed.

### B.   Plaintiffs' Consumer Protection Act Claim (Count III) Fails to State a Claim.

Count III of Plaintiffs' TAC alleges that Defendants have violated state consumer protection statutes by "making deceptive statements to, and omissions and/or concealing material facts . . . in the advertising, marketing, distribution, and sale of the Defendants' pet food" (TAC ¶ 151).[27]  Plaintiffs allege as unfair trade practices (1) Defendants' representations that their products are "quality," "premium," or "wholesome" (TAC ¶¶ 67, 68, 69, 71), "healthy" or "balanced" (*id.* ¶ 75), "light" (*id.* ¶ 69), or "guaranteed" (*id.* ¶ 85), among other descriptions; and

---

[Footnote continued from previous page]
state the elements of harm and causation, essential to his claim. . . . Though pleading rules are liberal, conclusory statements of 'direct and proximate result' do not state an element.") (emphasis in original).

[27]  Count III is brought pursuant to the FDUTPA, Fla. Stat. § 501.201.  But perhaps recognizing that the FDUTPA can be applied only to protect **Florida** residents (*see Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 228-29 (S.D. Fla. 2001)), Plaintiffs' TAC, via a footnote, also alleges violations of "other state deceptive trade practice laws of the various states where Plaintiff Class members reside."  (TAC p. 73, n. 7).  Since Plaintiffs are seeking a national class, in referencing and implicitly relying on "other state deceptive trade practice laws of the various states where Plaintiff Class members reside" Plaintiffs are in effect asking the Court to parse and apply on a piecemeal basis the statutes of each and every state and territory of the United States to this case without respect to whether those statutes may be inconsistent or in conflict with each other or as to which members of the class may or may not seek relief from all those varying statutes.  This, of course, will create an impermissible legal and administrative nightmare for the Court should such a sweeping standard be accepted.

(2) the use of certain ingredients in pet food and the descriptions of those ingredients on product labels and in advertisements  (*id.* ¶¶ 69, 71-105).

Plaintiffs' allegations fail for two reasons:  First, as discussed above (Section I.B), Plaintiffs have failed sufficiently to plead causation—a required element for most state consumer protection acts.  Second, Plaintiffs complain of advertising and labeling language that the FDA, AAFCO, and state laws incorporating AAFCO standards specifically authorize (or that has been recognized by both courts and administrative agencies as mere puffery, as discussed in footnote 25 above).  Accordingly, Plaintiffs' challenges to such language and to the AAFCO standards cannot state a claim under the consumer protection statutes of Florida and many other states that exempt conduct that complies with state or federal law.

### 1.   FDA and AAFCO Regulate Pet Food, Including Ingredients and Labeling.

As explained above, the FDA is the primary federal agency responsible for regulating all animal feed, including pet food.  As the FDA has stated:

> The FDA regulates that can of cat food, bag of dog food, or box of dog treats or snacks in your pantry.  The FDA's regulation of pet food is similar to that for other animal feeds.  The Federal Food, Drug, and Cosmetic Act (FFDCA) requires that pet foods, like human foods, be pure and wholesome, safe to eat, produced under sanitary conditions, contain no harmful substances, and be truthfully labeled.

(FDA, "Pet Foods," http://www.fda.gov/cvm/petfoods.htm).  FDA and AAFCO work together in the area of feed regulation, particularly in the establishment of definitions to describe new feed ingredients."  (FDA, "CVM and Animal Food, Feed Ingredients, and Additives," available at http://www.fda.gov/cvm/animalfeed_info.htm).   "[N]early all states" have adopted the AAFCO model regulations "as the basis for their feed control program."  (MOU at p. 1.)  The FDA has stated that "the result of this collaboration [between AAFCO and the FDA] has been the

establishment of an effective program of benefit to feed regulatory officials, the industry and the public." (*Id*.)  The FDA has also stated that its partnership with AAFCO is "vital to the effective regulation of pet food products"  (FDA, "FDA's Regulation of Pet Food," available at http://www.fda.gov/cvm/petfoodflier.htm).

     *Ingredients:*  As approved by the FDA, AAFCO "provides a process . . . to identify the suitability of ingredients used in animal feed" (MOU at p. 1), and lists appropriate pet food ingredients—including the common names, descriptions, and limitations for their use, if any—in its annual Official Publication.  (*Id.; see also* FDA, "FDA's Regulation of Pet Food.")  As the FDA has recognized, "most ingredients on pet food labels have a corresponding definition in the AAFCO Official Publication."  (FDA, "Interpreting Pet Food Labels").  For instance, AAFCO defines "meat," "meat by-products," and "meat meal" and allows those ingredients to be included in pet food.  If the pet food ingredients meet these definitions, those ingredients can be listed as such on the product label.  The FDA has formally approved the AAFCO ingredient definition process and the ingredient list.  (FDA, "FDA, AAFCO Sign Agreement on Feed Ingredient Listing," available at http://www.fda.gov/cvm/CVM_Updates/AAFCO_MOU.htm); *see also* FDA, "CVM and Animal Food, Feed Ingredients, and Additives" ("FDA has recognized the definitions as they appear in the Official Publication of AAFCO as the common or usual name for animal feed ingredients including pet food"); FDA Compliance Policy Guide 7126.08.).  The AAFCO ingredient list also lists chemical preservatives that may be used in animal food, and provides any limitations or restrictions on their use as well.  (*See* Official Names and Definitions of Feed Ingredients Established by the Association of American Feed Control Officials, § 18, attached as Exhibit A ("AAFCO/FDA Ingredient List").)  Quite simply, the FDA has determined that "ingredients such as meat, poultry, grains, and their byproducts are

considered safe 'foods' and do not require premarket approval," and that "mineral and vitamin sources, colorings, flavorings, and preservatives may be generally recognized as safe." (FDA, "Pet Foods.")  The FDA regulations also enumerate numerous spices, seasonings, flavorings, oils, natural substances, and trace minerals that are generally recognized as safe.  21 C.F.R. §§ 582.1-582.99.

Plaintiffs themselves recognize the existence of the ingredient list and definitions. Without telling the Court they are doing so, they quote extensively from the AAFCO regulations in their Complaint.  For instance, in paragraph 76, they complain that several Defendants' products contain "chicken by-products, which consists of heads, feet, viscera free from fecal content and foreign matter only to the extent that the inclusion of such fecal matter and foreign matter might 'unavoidably' occur in good factory practice" (TAC, ¶ 76; *see also* ¶ 82).  This definition of "chicken by-products," however, is (when the word "only" is replaced by the word "except") exactly the definition of poultry by-products, as employed and approved by AAFCO and the FDA.  (*See* AAFCO/FDA Ingredient List, § 9.14.)  Similarly, the ingredients complained about in other paragraphs (*e.g.,* TAC ¶¶ 77, 83, 84, 85) are identical to those that are allowed by the AAFCO ingredient list and approved by the FDA (*id*. at, *e.g.*, § 9.2 ("Meat"), § 9.10 ("Poultry By-Product Meal"), § 9.14 ("Poultry By-Products"), § 9.40 ("Meat Meal"), § 9.42 ("Animal By-Product Meal")).

As another example, Plaintiffs complain about the use of "animal digest" (TAC ¶ 83), but, again, the AAFCO/FDA Ingredient List specifically allows "animal digest" as an ingredient and defines it precisely as it is defined in the TAC.  (AAFCO/FDA Ingredient List, § 9.68.) Plaintiffs also complain about the use of BHA, BHT, propyl gallate, and ethoxyquin as

preservatives (TAC ¶ 83, 103), but AAFCO and the FDA expressly allow these and other chemical preservatives in certain amounts.  (AAFCO/FDA Ingredient List, § 18.1.)

While Plaintiffs may disagree with AAFCO and the FDA on these issues, they cannot dispute that these agencies allow the inclusion of these and other ingredients in pet food and provide certain terms for the identification of such ingredients on labels.  In fact, the FDA recognizes that "[a]nimal feeds provide a practical outlet for plant and animal byproducts not suitable for human consumption."  (FDA, "CVM and Animal Food, Feed Ingredients, and Additives.")  Moreover, to the extent that Plaintiffs may not like the use of these ingredients in the pet food that they purchase, they can seek a change in the Ingredient List.  The MOU between FDA and AAFCO provides a process whereby individuals or entities—such as Plaintiffs or Plaintiffs' counsel—may petition AAFCO or the FDA to add new ingredients or to modify existing ingredient definitions.  (MOU at 2-3.)  The FDA has stated that, "[i]f scientific data are presented that show a health risk to animals of an ingredient or additive, CVM can act to prohibit or modify its use in pet food." (FDA, "Interpreting Pet Food Labels" (going on to discuss FDA's recent amendment of regulations expressly to prohibit the use of propylene glycol in cat foods after it was shown that the additive reduced red blood cell survival).)  Plaintiffs also complain at great length about the use of ethoxyquin, which was approved as a food additive more than 35 years ago as an antioxidant chemical preservative in animal feed.  But the FDA already reviewed the scientific data over the last ten years to determine its safety, and, while additional studies are being conducted, CVM asked the pet food industry to lower the ethoxyquin level in dog foods voluntarily.  (*Id.*)  Quite simply, court intervention is not the proper mechanism for a change in the ingredient list or definitions.

*Labeling:* FDA regulations require the label to contain a proper identification of the product, net quantity statement, name and place of business of the manufacturer or distributor, and a proper listing of all of the ingredients in order from most to least, based on weight.  (FDA, "Interpreting Pet Food Labels.")  States also enforce their own labeling regulations, many of which are based on the AAFCO Official Publication.  (*Id.*)  As part of the Official Publication, AAFCO provides nutrient profiles that must be met before a manufacturer can make claims that a product is "healthy," "complete," "balanced," "100% nutritious," or other similar claims of nutritional adequacy.  In order for its manufacturer to make such claims, a pet food must provide certain levels of protein, calcium, and other nutrients.  AAFCO has created separate nutrient profiles for dogs and cats, and separate nutrient profiles for growth and maintenance, which it updates as needed to incorporate new scientific information.  Alternatively, a manufacturer may substantiate the nutritional adequacy of a pet food product through AAFCO Feeding Trial Protocols.  (S*ee* FDA, "Selecting Nutritious Pet Foods," http://www.fda.gov/cvm/petfood.htm; "Interpreting Pet Food Labels.")  Plaintiffs themselves recognize the existence of these nutrient profiles (*see* TAC ¶ 95 (recognizing "current nutrient allowances")), but simply dismiss them out of hand as inadequate.

Plaintiffs similarly complain about one or another Defendant calling a certain food "dinner" or using descriptive names such as "light" (TAC ¶ 69).  But, again, AAFCO regulations also dictate a product's name and certain descriptions.  These rules dictate, for instance, whether a food can use an ingredient in the product name (*e.g.*, "Beef for Dogs"), the name "dinner" in the product name (*e.g.*, "Beef Dinner for Dogs"), the word "with" in the product name (*e.g.*, "Dog Food with Beef"), or whether a food can use the word "flavor" (*e.g.*, "Beef Flavor Dog Food").  (*See* FDA, "Interpreting Pet Food Labels.")  AAFCO regulations also dictate the

guaranteed analyses for minimum percentages of protein, fat, fiber, and moisture; the manner in which ingredients are listed; use and descriptions of additives; feeding directions on the package; calorie statements; and the use of descriptive terms such as "light" and "lean." (*Id.*).

### 2.    Most States Have Adopted the AAFCO Regulations, Creating a "Safe Harbor" Under the Consumer Protection Statutes.

Like many other states, Florida has adopted AAFCO's definitions of feed ingredients and the AAFCO minimum nutritional requirements, and it *mandates* that feed suppliers use the AAFCO names and definitions.  FLA. ADMIN. CODE R. 5E-3.004(1) 5E-3.013.  The other states in which Plaintiffs reside also have incorporated AAFCO regulations, to varying degrees.  (*See* APP. C*.*)  While Plaintiffs may disagree with the use of these ingredients in food for their pets, or with the components that AAFCO allows manufacturers to include in those ingredients, Plaintiffs have *not* alleged that Defendants' ingredients did not meet AAFCO's definitions.  To the contrary, they effectively concede that Defendants' products contain ingredients which Defendants accurately identify and describe pursuant to AAFCO.  Similarly, Plaintiffs apparently do not like the use of certain nutritional descriptions, but they do *not* argue that any Defendant failed to meet the necessary AAFCO requirements for use of these phrases.

Because Defendants' labeling practices are required or specifically permitted by federal and state law—namely, the FDA/AAFCO regulations, which Florida and other states have adopted—this Court should dismiss Plaintiffs' claims under the consumer protection statutes.  FDUTPA does not apply to "an act or practice required or specifically permitted by federal or state law."  Fla. Stat. § 501.212(1); *3B TV, Inc. v. State,* 794 So. 2d 744, 747-48 (Fla. 1st DCA 2001); *Eirman v. Olde Discount Corp.*, 697 So. 2d 865, 866 (Fla. 4th DCA 1997); *Berenguer v. Warner-Lambert Co.*, No. 02-05242, 2003 WL 24299241, *3 (Fla. Cir. Ct. July 31, 2003).  A number of other potentially applicable state consumer protection statutes likewise do not apply to

transactions or conduct authorized or regulated by state or federal law (*See* **APP. D**).  In this case, the transaction at issue is the labeling of commercial pet food.  As detailed above, applicable state and federal laws adopt AAFCO definitions of feed ingredients, prescribe the information contained on commercial pet food labels, regulate the brand and product names on commercial pet food labels, and incorporate AAFCO standards for uses of terms such as "complete," "perfect," "guaranteed," or "balanced," and "meat" or "meat-by-products."  Plaintiffs have not alleged that any Defendant violated any of the applicable FDA or AAFCO regulations (as incorporated by federal and state law), much less that any such violation injured a Plaintiff.  Therefore, Defendants' actions are exempted by the safe harbor provisions of the FDUTPA and other state consumer protection statutes, and Plaintiffs cannot state a cause of action under the FDUTPA—and many of the other potentially applicable state laws.  For this independent reason, Count III should be dismissed.[28]

--------------------------------------

[28] Courts have not hesitated to dismiss consumer protection act claims for failure to state a claim—at the pleading stage—where those claims complain about practices that are governed by a separate state or federal law.  *See, e.g.*, *McLiechy v. Bristol West Ins. Co.*, 474 F.3d 897 (6th Cir. 2007) (affirming dismissal of Michigan Consumer Protection Act claim where challenged transactions were subject to Insurance Code); *Burton v. William Beaumont Hosp.*, 373 F. Supp. 2d 707 (E.D. Mich. 2005) (dismissing Michigan Consumer Protection Act claim where hospital's billing practices were governed by various health care regulations); *Riccio v. Ford Motor Credit Co.*, 238 F.R.D. 44 (D. Mass. 2006) (dismissing consumer protection act claim where challenged practice—taxation of automobile leases— was governed by Department of Revenue regulations); *Brogdon v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1336-37 (N.D. Ga. 2000) (dismissing claim brought under Georgia Fair Business Practices Act where plaintiffs challenged nursing home practices governed by Medicare and Medicaid programs); *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 3 F. Supp. 2d 518, 536-37 (D.N.J. 1998) (dismissing claim brought under New Jersey Consumer Fraud Act where challenged casino practices were subject to Division of Consumer Affairs); *McEntee v. Incredible Techs., Inc.*, No. 263818, 2006 WL 659347 (Mich. App. Mar. 16, 2006) (dismissing consumer protection act claims where challenged products—arcade games—were governed by separate gaming act); *Eirman v. Olde Discount Corp.*, 697 So. 2d

[Footnote continued on next page]

### C.     The Economic Loss Rule Bars Plaintiffs' Claim for Negligence (Count IV).

The economic loss rule also bars Plaintiffs' claim for negligence (Count IV).  The Supreme Courts of Florida and Michigan (home to three named Plaintiffs; *see* footnote 17 above), for example, have held that the economic loss doctrine bars negligence actions either where the parties are in contractual privity or where the defendant is a manufacturer or distributor of a product and "there is a defect in a product that causes damage to the product but causes no personal injury or damage to other property."  *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004); *Neibarger v. Universal Coops.*, 486 N.W.2d 612, 618 (Mich. 1992) ("where a plaintiff seeks to recover for economic loss caused by a defective product purchased for commercial purposes, the exclusive remedy is provided by the UCC").  Thus, where a plaintiff can do no more than claim "disappointed economic expectations," as is the case here, the economic loss rule precludes a claim of negligence.  *Casa Clara Condo. Ass'n, Inc. v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244, 1246 (Fla. 1993) ("[E]conomic losses are 'disappointed economic expectations,' which are protected by contract law, rather than tort law.").

Here, as discussed in Section I, above, named Plaintiffs fail sufficiently to allege any facts establishing that they were individually harmed as a result of their pets' consumption of any particular Defendant's pet food.  Mere allegations of "disappointed economic expectations" are precisely the "quintessential" losses that the economic loss rule prohibits a party from recovering under a negligence theory.  *Casa Clara Condo.*, 620 So. 2d at 1246 (internal citation and

---

[Footnote continued from previous page]
865, 866 (Fla. 4th DCA 1997) (affirming dismissal of FDUTPA claim where challenged action was permitted by federal law).

quotation marks omitted).  Thus, Plaintiffs' claim of negligence (Count IV) is barred by the economic loss rule and should be dismissed.

### D.  Plaintiffs Fail to State a Claim for Strict Products Liability (Count V).

A strict products liability claim requires a plaintiff to prove that (1) a product (2) produced by a manufacturer (3) was defective or created an unreasonably dangerous condition (4) that proximately caused (5) injury.  *West v. Caterpillar Tractor Co., Inc.*, 336 So. 2d 80, 87 (Fla. 1976) (adopting the doctrine of strict liability set forth in the Restatement (Second) of Torts § 402A (1965)).  Plaintiffs have failed to allege ultimate material facts establishing these elements, requiring dismissal of their claim for strict products liability.

As discussed in Section I, above, Plaintiffs have failed to link any specific Plaintiff to any particular pet food product made by any particular Defendant.  Plaintiffs can make no claim for strict products liability, unless they allege that a specific Defendant placed into the stream of commerce a specific product that injured a specific Plaintiff.  *See Rivera v. Baby Trend, Inc.,* 914 So. 2d 1102, 1104 (Fla. 4th DCA 2005).  Thus, an essential requirement of any products liability claim is the identification of both the product that allegedly caused the injury, and the manufacturer or seller of that product.  *See Pulte Home Corp. v. Ply Gem Indus., Inc.*, 804 F. Supp. 1471, 1484-85 (M.D. Fla. 1992) (collecting cases and observing that "[w]ithout this element every manufacturer and vendor would become a virtual insurer of all like products on the market"); *Napier*, 399 F. Supp. 2d at 813-14 (dismissing complaint because of plaintiffs' "inability to trace the product . . . to a particular defendant" and noting that "the threshold requirement of ***any*** products liability action is identification of the injury-causing product and its manufacturer") (citation and internal quotation marks omitted; emphasis added).  Plaintiffs' claim for strict products liability fails to meet this essential requirement.

Moreover, as discussed in Section I.B, above, the TAC is devoid of any allegations establishing a causal connection between a specific product put into the chain of commerce by a particular Defendant and any purported injury to a specific Plaintiff or to a specific pet belonging to a particular Plaintiff.  Plaintiffs' strict liability claim must fail as a matter of law, therefore, as it is well-established that pleadings must contain ultimate facts supporting each element of *any* claim alleged, including a strict liability claim.  *See Clark v. Boeing Co.*, 395 So. 2d 1226, 1229 (Fla. 1981) (dismissing strict products liability action for failure to allege ultimate facts supporting allegation that defects in airplane engine or aircraft proximately caused plaintiff's injury).  There can be no strict products liability claim absent a proximate causal connection between the alleged defect and the plaintiff's alleged injury or damage.  *See Watson v. Lucerne Mach. & Equip., Inc.*, 347 So. 2d 459, 461 (Fla. 2d DCA 1977) ("[i]n order to hold a manufacturer liable on the theory of strict liability in tort, the user must establish the manufacturer's relationship to the product in question, the defect and unreasonably dangerous condition of the product, ***and the existence of the proximate causal connection between such condition and the user's injuries or damages***") (emphasis in original; citation omitted).

Further, Plaintiffs' allegation that unspecified pet food and snacks are defective or unreasonably dangerous also is insufficient and conclusory.  Plaintiffs allege only that unspecified pet food and snacks are defective and unreasonably dangerous because they contain "harmful substances" (TAC ¶ 165), but Plaintiffs have failed to allege what "harmful substances" were purportedly included in the specific pet food and/or snacks they purchased and fed to their pets.  The Restatement (Second) of Torts provides that a "defective" condition is a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him.  (Rest. (2d) Torts § 402A, Cmt. g.)  For a product to be "unreasonably dangerous," it must be dangerous

50

to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.  (*Id.*, Cmt i.)[29]  Plaintiffs fail to make any such allegations about *any* Defendant's product, thereby failing to provide each Defendant with requisite notice of the nature of their claim and impermissibly leaving Defendants no choice but to speculate as to Plaintiffs' intentions.  To the extent Plaintiffs believe that the very ingredients used in the food make it unreasonably dangerous, the fact that the FDA and AAFCO promulgate regulations expressly defining and approving these pet food ingredients as permissible belies this notion.  (*See* Section II.B above.)  Plaintiffs do not (and cannot) allege that the ingredients in the food at issue fail to comply with these regulatory requirements.  To the extent Plaintiffs claim the pet food at issue was contaminated by "harmful substances" in the manufacturing process, Plaintiffs have failed to allege what substances contaminated the specific pet food they purchased and that these substances proximately caused any injury to their specific pets.  *See Clark*, 395 So. 2d at 1229.

For the foregoing reasons, Plaintiffs' claim of strict products liability (Count V) is fatally defective and should be dismissed.

> **E.    Plaintiffs' Claim for Injunctive Relief (Count VI) Is Not a Substantive Claim and Fails in Any Event.**
>
>> **1.    The Injunctive Relief Count Cannot Function as an Independent Claim, and Plaintiffs Fail Adequately to Allege Inadequacy of Legal Remedies or Irreparable Harm.**

Although Plaintiffs bring a claim for "Injunctive Relief" as a separate Count VI, such a claim does not constitute an independent substantive cause of action and thus should be

---

[29]  The Restatement (Third) of Torts: Products Liability provides that "a harm-causing ingredient of the food product constitutes a defect if a reasonable consumer would not expect the food product to contain that ingredient."  (Rest. (3d) Torts: Prod. Liab. § 7 (1998).)

dismissed along with the substantive claims on which it depends.  *See, e.g.*, *Ala. v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005) ("An injunction is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise.") (citation and internal quotation marks omitted); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (reversing a district court's grant of injunctive relief and noting that "[t]here is no such thing as a suit for a traditional injunction in the abstract.  For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim).");  *City of Marietta v. CSX Transp., Inc.*, 196 F.3d 1300, 1303 n.3 (11th Cir. 1999) (noting that "[o]ne of the separately numbered 'counts' (VI) is simply a request for injunctive relief, presumably on the basis of the . . . substantive counts" and declining to treat it as a separate cause of action);  *Paisey v. Vitale*, 807 F.2d 889, 892 (11th Cir. 1986) ("the district court did not err in . . . dismissing the injunctive count of [the plaintiff's] complaint because [the plaintiff] has failed to state a claim for relief").

Even if any of Plaintiffs' substantive claims could somehow survive dismissal and thus lend support to their derivative request for injunctive relief, this Court should nevertheless dismiss the injunctive relief claim, because Plaintiffs fail to offer any showing of the inadequacy of legal remedies or of irreparable harm.  *See, e.g.*, *Ala.*, 424 F.3d at 1128 ("to obtain a[n] . . . injunction, a party must show . . . there is no adequate remedy at law for the violation of [the right asserted in his complaint] [and that] irreparable harm will result if the court does not order

injunctive relief.").[30]  Plaintiffs nowhere give any indication as to how the legal remedies sought

elsewhere in the TAC would be inadequate, if their claims were somehow to survive.  In fact, as

discussed further in Section II.F below, Plaintiffs fatally undermine their own requests for

equitable relief by predicating them on the same factual allegations as their numerous requests

for legal remedies.  *See, e.g.*, *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F.

Supp. 2d 1170, 1178 (M.D. Fla. 2005).  Plaintiffs' failure to show the inadequacy of these

remedies also precludes any showing of irreparable harm.  *See, e.g.*, *Cate v. Oldham*, 707 F.2d

1176, 1189 (11th Cir. 1983) ("An injury is 'irreparable' only if it cannot be undone through

monetary remedies.").  In any event, as discussed in Section I above, Plaintiffs have made no

showing that they have been harmed at all by any of Defendants' activities, much less that they

risk harm, irreparable or otherwise, in the future.  Thus, this Court should dismiss Plaintiffs'

claim for injunctive relief (Count VI).

### 2. If Granted, Plaintiffs' Requested Injunctive Relief Would Violate the First Amendment to the United States Constitution.

Even if somehow Plaintiffs could overcome the above-described grounds for dismissal of

their claim for injunctive relief, a grant of such relief would necessarily violate the First

Amendment to the United States Constitution.  As discussed above, Plaintiffs merely disguise as

an equitable claim their underlying ambition to make this Court a continuing "censor" or "super-

---

[30]  Injunctions based on state law require these elements as well.  *See, e.g.*, *Tucker v. Citigroup Global Markets Inc.*, No. 2:06-cv-585-FtM-34DNF, 2007 WL 2071502, *6 (M.D. Fla. July 17, 2007) ("To state a cause of action for injunctive relief in Florida, a plaintiff must allege ultimate facts which, if true, would establish (1) irreparable injury [], (2) a clear legal right, (3) lack of an adequate remedy at law and (4) that the requested injunction would not be contrary to the interest of the public generally.") (citation and internal quotation marks omitted).

regulator" of all (or nearly all) interstate advertising for pet food.  Such censorship and prior restraint could not possibly pass muster under the First Amendment.

Defendants' advertising constitutes commercial speech.  As such, this advertising is entitled to First Amendment protection unless it concerns an unlawful activity or is misleading. *See VA State Bd. of Pharmacy v. VA Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976); *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980).  Although Plaintiffs persistently couch their attacks on the pet food industry as targeting "false" or "misleading" advertising and marketing, the following considerations demonstrate clearly that Plaintiffs have no interest in shielding themselves or others from specific "misrepresentations" but hope rather to use this Court as a regulatory sword in the service of their own vantage point:

- As discussed above in Section II.B, Plaintiffs focus many of their attacks on language specifically and expressly authorized by the relevant federal and state agencies;

- As discussed above in Section II.A, Plaintiffs concentrate much of their criticism on language specifically and expressly recognized as puffery which would not mislead the reasonable consumer;

- Plaintiffs seek to have a Defendant class certified of all manufacturers, producers, distributors, marketers, and retailers in the pet food industry with no regard whatsoever to any specific representations, false or otherwise, that any such unnamed Defendants may have made;

- Plaintiffs complain repeatedly about the lack of support for some advertisements by what Plaintiffs call "scientifically valid research studies," but Plaintiffs ignore that such attacks on the state of relevant research do not by any means amount to a suggestion that Defendants have made false claims or misled anyone.

54

"It is well established that '[t]he party seeking to uphold a restriction on commercial speech carries the burden of justifying it.'" *Edenfield v. Fane*, 507 U.S. 761, 770 (1993) (quoting *Bolger v. Youngs Drug Prod., Corp.*, 463 U.S. 60, 71, n.20 (1983)); *see also Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 373 (2002). The constantly expanding scope of Plaintiffs' Complaint demonstrates that the only possible justification they can offer for their requests is their desire to replace currently existing restrictions and regulations, carefully crafted and vetted by agencies and legislative bodies tasked with that responsibility, with a set of their own choosing. The use of the judiciary to impose such private mandates on the speech of others would be a quintessential violation of the rights protected by the First Amendment.

Courts have not hesitated to dismiss a lawsuit that would, if permitted to proceed, infringe upon First Amendment rights, in part because of the "chilling effect" of expensive litigation and the threat of damages. *See Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 186 (4th Cir. 1998); *James v. Meow Media, Inc.*, 300 F.3d 683, 701 (6th Cir. 2002); *Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 857 (10th Cir. 1999). *Accord New York Times Co. v. Sullivan*, 376 U.S. 254, 277 (1964) ("[t]he fear of damage awards . . . may be markedly more inhibiting than the fear of prosecution under a criminal statute"). This Court should do the same.

### F.   Plaintiffs' Failure to Allege Privity Bars Their Warranty Claims (Counts VII and VIII).

"[T]o recover for breach of a warranty, either express or implied, the plaintiff must be in privity of contract with the defendant." *T.W.M. v. Amer. Medical Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995). As courts consistently have recognized, "[a] warranty, whether express or implied, is fundamentally a contract. A contract cause of action requires privity." *Elizabeth N. v. Riverside Group, Inc.*, 585 So. 2d 376, 378 (Fla. 1st DCA 1991); *see also Kramer v. Piper*

*Aircraft Corp.*, 520 So. 2d 37, 39 (Fla. 1988) (noting that Florida Supreme Court has "abolished" cause of action for warranty where there is no privity).

> **1.    Plaintiffs Fail to Allege Facts Establishing Privity with Regard to Any Defendant.**

This Court should dismiss Plaintiffs' breach of warranty claims (Counts VII and VIII) against all Defendants for failure to plead facts establishing the essential element of privity.  In *Jacobs v. Osmose, Inc.*, No. 01-944-CIV, 2002 WL 34241682 (S.D. Fla. Jan. 3, 2002), a plaintiff filed a class action against manufacturers and retailers of pressure-treated wood alleging, among other claims, breach of implied warranty.  The plaintiff, who was the sole putative class representative, alleged that he "had during the Class Period installed, constructed and/or existing upon his property a deck made of treated wood purchased at one of the retail defendants."  *Id.* at *1.  Because the court in *Jacobs* found it "difficult to determine from the Complaint whether [the plaintiff] even purchased any of the manufacturer defendants' products and from which retail stores such products were purchased," the court dismissed the breach of implied warranty claim, concluding that the complaint contained "no factual allegations showing privity of contract between [the plaintiff] and the Defendants."  *Id.* at *5.

Similarly, in this case, Plaintiffs allege warranty claims against Defendants without attributing specific pet food purchases to a specific Retail Defendant.  Like the vague allegations in *Jacobs* that the plaintiff had purchased wood products "at one of the retail defendants," the allegations in the TAC merely refer to Plaintiffs' purchases of several brands of the Defendants' products from several different distributors, without connecting any particular brands to any particular distributors.  (TAC ¶¶ 3-32.)  As an example, plaintiff Renee Blaszkowski alleges that she purchased pet food manufactured by 12 different manufacturers from 7 different retailers. (*Id.* ¶ 3.)  Such allegations are not only insufficient to establish privity, but they also make it

impossible to determine which warranties, if any, were made to which Plaintiffs with respect to which products. Such pleading epitomizes the "improper lumping" this Court condemned in *Flamenbaum*, 2004 WL 1773207, *6, and this Court should dismiss Counts VII and VIII of the TAC accordingly. *See Jacobs,* 2002 WL 34241682, *5.[31]

### 2.   Plaintiffs Cannot Allege Privity with Respect to the Manufacturer Defendants.

Plaintiffs have not established privity with the Manufacturer Defendants because a buyer has privity only with the particular Defendant from whom he or she **directly** purchases a product. S*ee T.W.M.,* 886 F. Supp. at 844 ("A plaintiff who purchases a product, but does not buy it **directly** from the defendant, is not in privity with that defendant.") (emphasis added); *Tolliver v. Monaco Coach Corp.*, No. 8:06-cv-856, 2006 WL 1678842, *2 (M.D. Fla. June 16, 2006) ("[P]rivity is required even if a suit is brought against a manufacturer.").

Applying this rule, courts consistently dismiss warranty claims brought by consumers against manufacturers from which they did not directly purchase the product. *See, e.g.*, *Montgomery v. Davol, Inc.,* No. 3:07cv176, 2007 WL 2155644, *2 (N.D. Fla. July 24, 2007) (dismissing breach of implied warranty claim because there was "no claim that the defendants sold [the product] **directly** to the plaintiffs") (emphasis in original); *T.W.M.*, 866 F. Supp. at 844; *Tolliver*, 2006 WL 1678842, *2.  Since Plaintiffs do not and cannot allege that they made any direct purchases from any of the Manufacturer Defendants, Plaintiffs' warranty claims against these Defendants fail as a matter of law and should be dismissed.

---

[31] Plaintiffs apparently wish to apply "other state breach of warranty laws of the various states where Class members reside" (TAC n.12 and n. 13).  However, such application does not save their claims. (*See* **APP. E**, "Breach of Warranty.")

G.    **Plaintiffs' Unjust Enrichment Claim (Count IX) Does Not State a Legally Cognizable Claim.**

Unjust enrichment is an equitable cause of action. *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (11th Cir. 1999) (applying Florida law). Plaintiffs may therefore invoke it only if they can show the inadequacy of available legal remedies. *Bowleg v. Bowe*, 502 So. 2d 71, 72 (Fla. 3d DCA 1987); *Liza Danielle, Inc. v. Jamko, Inc.*, 408 So. 2d 735, 738 (Fla. 3d DCA 1982); *Am. Honda Motor Co.*, 390 F. Supp. 2d at 1178. Plaintiffs plead causes of action sounding in fraud, negligence, strict liability, and contract, seeking "actual damages" under each of these claims. Despite conclusory recitations of inadequacy, Plaintiffs make no showing in the TAC of the inadequacy or unavailability of such remedies, but in fact seek them at every turn. Where Plaintiffs predicate their claims of unjust enrichment on the same factual allegations as those underlying their claims for which they seek legal remedies, the unjust enrichment claims must be dismissed. *See, e.g., Am. Honda Motor Co.*, 390 F. Supp. 2d at 1178 (Plaintiffs' unjust enrichment claim "is predicated on the same set of allegations supporting their claims under . . . FDUTPA. Accordingly, because an adequate remedy exists at law, the [Plaintiffs] have not stated a claim upon which relief may be granted for . . . unjust enrichment").

Furthermore, to state a claim of unjust enrichment, a complaint must allege that: (1) the defendant received a benefit from the plaintiff; (2) the defendant had knowledge of the benefit; and (3) the defendant's retention of the benefit would be inequitable. *See, e.g., Della Ratta v. Della Ratta*, 927 So. 2d 1055, 1059 (Fla. 4th DCA 2006); *Shands Teaching Hosp. and Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005); *Timberland Consol. P'ship v. Andrews Land and Timber, Inc.*, 818 So. 2d 609 (Fla. 5th DCA 2002). As discussed in Section I.B above, Plaintiffs' TAC nowhere specifies which Plaintiff purchased which product from which Defendant, when these purchases took place, where any such purchases were made,

or on how many occasions such purchases were made. Consequently, it is impossible to determine the degree, if any, to which a particular Plaintiff might have benefited any Retail Defendant. Further, Plaintiffs have not pleaded sufficient facts to establish that any of them directly conferred a benefit upon any of the Manufacturer Defendants who were not involved in retail sales. A bald allegation that such Defendants received an indirect benefit is insufficient to support a claim of unjust enrichment. *See, e.g.*, *Tilton v. Playboy Ent. Group, Inc.*, No. 88:05-cv-692-T-30TGW, 2007 WL 80858, *3 (M.D. Fla. Jan. 8, 2007); *Huntsman Pkg. Corp. v. Kerry Pkg. Corp.*, 992 F. Supp. 1439, 1446 (M.D. Fla. 1998); *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla.*, 667 So. 2d 876, 879 (Fla. 3d DCA 1996). Moreover, because Plaintiffs have not alleged that they conferred a benefit on any particular Defendant, there is no basis for Plaintiffs' general and conclusory allegations that Defendants had knowledge of such a benefit.

Finally, Plaintiffs have given no indication of why it would be unjust for Defendants to retain any benefit Plaintiffs may somehow have conferred. If Plaintiffs' theory is predicated on the allegations of wrongdoing strewn throughout the TAC, then it cannot serve as the basis of an unjust enrichment claim. *See, e.g.*, *Tilton*, 2007 WL 80858, *3 (dismissing unjust enrichment claim and holding that "[l]iability in unjust enrichment has in principle nothing to do with fault. . . . Where a plaintiff predicates their unjust enrichment claim on the wrongful conduct of a defendant, then the plaintiff's right of recovery, if any, arises from the wrong of the alleged tort rather than unjust enrichment.").

Therefore, this Court should dismiss Plaintiffs' unjust enrichment claim pursuant to Rule 12(b)(6) for failure sufficiently to plead the necessary elements of the claim.

III.    **This Court Should Dismiss the TAC as to the Nonresident Defendant Kroger for Lack of Personal Jurisdiction.**

Pursuant to Federal Civil Rule 12(b)(2), this Court should dismiss the TAC as to nonresident Defendant The Kroger Co. ("Kroger") on grounds of lack of personal jurisdiction. This Defendant is specially appearing for the limited purpose of this motion and without submitting to the jurisdiction and venue of this Court.

A.    **Plaintiffs Must Satisfy Their Burden to Show That This Court Has Personal Jurisdiction over Kroger Under the Florida Long-Arm Statute and That the Assertion of Such Jurisdiction Comports with Due Process.**

1.    **Plaintiffs Must Carry Their Burden Under the Eleventh Circuit's Two-Part Jurisdictional Analysis.**

Plaintiffs bring this action on an assertion of diversity jurisdiction (*see* TAC ¶ 60). A federal court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits and to the extent allowed under the Constitution. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). The Eleventh Circuit applies a two-part analysis to determine if personal jurisdiction exists over a nonresident defendant. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996); *Mother Doe I ex rel. R.M. v. Al Maktoum*, No. 06-22253, 2007 WL 2209258, *2 (S.D. Fla. July 30, 2007) (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999)).

First, the forum state's long-arm statute—in this case Florida—must provide a basis for personal jurisdiction. *Lauzon v. Joseph Ribkoff, Inc.*, 77 F. Supp. 2d 1250, 1253 (S.D. Fla. 1999). If this requirement is met, the second part of the analysis requires sufficient minimum contacts between the defendant and the forum state to satisfy "traditional notions of fair play and substantial justice" under the Due Process Clause of the Fourteenth Amendment. *Id.* If the court determines that the forum's long-arm statute is satisfied, it must engage in the due process

analysis. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir.

2000); *Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV-MOORE/GARBER, 2007 WL

712389, *2 (S.D. Fla. March 7, 2007).

   Plaintiffs have the burden of pleading and proving "facts which clearly justify" the

exercise of personal jurisdiction (*see Oriental Imps. & Exps., Inc. v. Maduro & Curiel's Bank*,

*N.V.*, 701 F.2d 889, 891 (11th Cir. 1983)).[32]  Plaintiffs' initial pleading burden requires them to

allege a sufficient factual basis for the Court's exercise of personal jurisdiction over Kroger.

*Mother Doe I*, 2007 WL 2209258, *2 ("[P]laintiff's burden in alleging personal jurisdiction is to

plead sufficient ***material facts*** to establish the basis for exercise of such jurisdiction'" (quoting

*Future Tech.*, 218 F.3d at 1249)) (emphasis added); *Miami Breakers Soccer Club, Inc. v.*

*Women's United Soccer Ass'n*, 140 F. Supp. 2d 1325, 1328 (S.D. Fla. 2001) (plaintiff bears the

"initial burden of pleading facts to support personal jurisdiction over the defendant in its

complaint"); *Rexam Airspray, Inc. v. Arminak*, 471 F. Supp. 2d 1292, 1295 (S.D. Fla. 2007)

(plaintiff asserted three specific facts which allegedly permitted the court to exercise personal

jurisdiction); *MeterLogic, Inc. v. Copier Solutions, Inc*., 126 F. Supp. 2d 1346, 1353-54 (S.D.

Fla. 2000) (granting motion to dismiss for, among other things, failure to allege facts sufficient

to establish personal jurisdiction over defendant); *Am. Investors Life Ins. Co. v. Webb Life Ins.*

---

[32] Under Florida law, the plaintiff bears the burden of proving personal jurisdiction; when a
defendant raises a meritorious challenge to personal jurisdiction through affidavits,
documents or testimony, the burden shifts to the plaintiff to prove jurisdiction by affidavits or
other competent evidence. *Mother Doe I,* 2007 WL 2209258, *2 (citing *Future Tech.*, 218
F.3d at 1249).  If the defendant sufficiently challenges the plaintiff's assertions, the plaintiff
must affirmatively support its jurisdictional contentions with record evidence and may not
merely rely on the factual allegations set forth in the complaint. *Future Tech.*, 218 F.3d at
1249; *Musiker v. Projectavision, Inc.*, 960 F. Supp. 292, 294-95 (S.D. Fla. 1997).

*Agency, Inc.*, 876 F. Supp. 1278, 1282-83 (S.D. Fla. 1995) (granting dismissal where "plaintiff has failed to allege facts sufficient to support this Court's exercise of personal jurisdiction over the defendants").[33]

### 2. Plaintiffs Must Carry Their Burden Under the Florida Long-Arm Statute.

The Florida long-arm statute, Fla. Stat. § 48.193, allows for two distinct categories of personal jurisdiction: specific jurisdiction conferred under Fla. Stat. § 48.193(1), and general jurisdiction conferred under Fla. Stat. § 48.193(2).[34]  At the outset, the Court should note that Plaintiffs have not specifically alleged whether they seek to establish specific jurisdiction, general jurisdiction or both.  The TAC merely refers to Section 48.193 almost in its entirety (TAC ¶ 62).  Since specific and general jurisdiction have distinct and separate requirements, Plaintiffs' vague pleading simply serves up confusion and vagueness.

Section 48.193(1) provides specific jurisdiction if a nonresident defendant engages in any of the following enumerated activities, and the cause of action arises out of that activity: (1) conducting business or having an office or agency in this state; (2) committing a tortious act within this state; or (3) causing injury to a person or property within this state arising out of the defendant's solicitation or service activities within this state or the products processed, serviced,

---

[33] Of course, it is the named Plaintiffs themselves who must satisfy the elements of personal jurisdiction in order for the Court to have personal jurisdiction over the particular Defendant. *See Williams v. FirstPlus Home Loan Trust 1996-2*, 209 F.R.D. 404, 410 n.4 (W.D. Tenn. 2002); *Barry v. Mortgage Servicing Acquisition Corp.*, 909 F. Supp. 65, 73 (D.R.I. 1995); *see also Selman v. Harvard Med. Sch.*, 494 F. Supp. 603, 613 n.6 (S.D.N.Y. 1980) ("it is clear that the named class representative himself must satisfy all jurisdictional prerequisites [under the New York long-arm statute] before the action can go forward.").

[34] The reach of the Florida long-arm statute is a question of Florida law, and the statute is to be strictly construed.  *Oriental Imps. & Exps., Inc.*, 701 F.2d at 890-91.

or manufactured by the defendant that are used or consumed in this state in the ordinary course of commerce.  *See* Fla. Stat. § 48.193(1)(a), (b) and (f); *see also Sun Trust Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1269 (S.D. Fla. 2001) (there must be some "direct affiliation," "nexus," or "substantial connection" between the cause of the action and the activities alleged within the state to support specific jurisdiction under Fla. Stat. § 48.193(1)).

The Florida long-arm statute also provides for general jurisdiction, which does not require a specific nexus between the defendant's conduct in the forum state and the plaintiffs' claims, if a nonresident defendant engages "in substantial and not isolated activity within this state." Fla. Stat. § 48.193(2); *see also Am. Overseas Marine Corp. v. Patterson*, 632 So. 2d 1124, 1127-28 (Fla. 1st DCA 1994).  This is a "high threshold."  *Rexam Airspray*, 471 F. Supp. 2d at 1298.  As this Court has explained:

> Florida courts hold that "substantial and not isolated activity" means "continuous and systematic general business contact" with Florida.  *Autonation, Inc. v. Whitlock*, 276 F. Supp. 2d 1258, 1262 (S.D. Fla. 2003) (citing *Woods v. Nova Cos. Belize Ltd.*, 739 So. 2d 617, 620 (Fla. 4th Dist. Ct. App. 1999)).  The "continuous and systematic" contacts requirement exceeds the constitutional due process requirements of "minimum contacts." *Id.* Because § 48.193(2) requires this high threshold, if a defendant's activities meet the statutory requirements of §48.193(2), the minimum contacts standard is also satisfied.  *Woods*, 739 So. 2d at 620.

*Rexam Airspray, Inc.*, 471 F. Supp 2d at 1298.

In order for general jurisdiction to exist, the Court must find that the nonresident defendant maintained "'continuous and systematic . . . contacts' with the forum, so that [the defendant] can properly be considered to be 'present' in the forum" and could reasonably anticipate being haled into court in the forum.  *Am. Overseas Marine Corp.*, 632 So. 2d at 1127 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411-12 (1984)); *see also Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*, 792. F.2d 989, 992 (11th Cir.

1986).  In view of the rigorous standard for the assertion of general jurisdiction, "[t]he facts required to assert . . . general jurisdiction must be 'extensive and pervasive.'" *Am. Overseas Marine Corp.* at 1127-28 (citing *Reliance Steel Products Co. v. Watson, ESS, Marshall & Enggas*, 675 F.2d 587, 589 (3d Cir. 1982)).

> ### 3.   Plaintiffs Must Show That the Assertion of Jurisdiction over Kroger Would Comport with Due Process.

This Court's exercise of personal jurisdiction must comport with constitutional due process requirements.  Due process requires that a nonresident defendant have certain minimum contacts with the forum so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.  *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also Mother Doe I,* 2007 WL 2209258, *2.

Like the Florida long-arm statute, notions of due process apply to both specific and general jurisdiction over a nonresident defendant.  The Eleventh Circuit has explained that the constitutional due process analysis is a two-step inquiry.  *See Madara*, 916 F.2d at 1515-16.  First, the Court must determine whether the nonresident defendant has the required minimum contacts with Florida.  *See id.* at 1516.  "Factors that go into determining whether sufficient minimum contacts exist include the foreseeability that the defendant's conduct will result in suit in the forum state and the defendant's purposeful availment of the forum's privileges and protections."  *Taskey v. Burtis*, 785 So. 2d 557, 559 (Fla. 4th DCA 2001).  Moreover, the minimum contacts analysis is grounded in fairness and is designed to assure that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985).

64

Second, this Court must determine whether notions of fair play and substantial justice comport with the exercise of personal jurisdiction. *See Int'l Shoe Co.,* 326 U.S. at 316. The "fair play and substantial justice" prong of the personal jurisdiction analysis requires consideration of five factors: (1) the degree to which the defendant has purposefully injected itself in the forum state; (2) the burden of requiring the nonresident defendant to appear in the forum state; (3) the forum state's interest in the litigation; (4) the plaintiff's interesting obtaining relief in the forum; and (5) the shared interest of several states in furthering substantive social policies. *Asahi Metal Indus. Co. Ltd. v. Superior Court of California,* 480 U.S. 102, 113 (1987); *World Wide Volkswagen Corp.*, 444 U.S. at 292.

> **B.    Plaintiffs Have Failed to Meet Their Burden to Plead Sufficient Material Facts to Establish the Basis of Personal Jurisdiction Against Kroger.**
>
> **1.    Introduction**

In their TAC, Plaintiffs have failed to plead sufficient material facts to establish the basis of personal jurisdiction against Kroger. Plaintiffs plead the following facts as to Kroger:

> 55.    Defendant, The Kroger Co. of Ohio ("Kroger"), is an Ohio corporation with its principal place of business in Cincinnati, Ohio. Kroger is registered to do business in Florida, has a registered agent in Florida upon which service has been executed and is qualified to do business in Florida. Kroger, either directly and/or through its parent, subsidiaries, affiliates, agents, or sister corporations, operates, conducts, engages in or carries on a business venture in Florida pursuant to Florida Statute § 48.193(1) and/or (2). For example, pet food is sold at Tom Thumb convenience stores that may be owned and operated by Kroger. Kroger also appears to own and operate jewelry stores in Florida through which it conducts substantial and not isolated business activity in Florida. Kroger has officers in the State of Florida, has employees working in the State of Florida, appears to hold an active business license in Florida through an agency and/or affiliated partnership and has entered into contracts for active leaseholds in Florida. Flowers and gourmet fruit baskets can be purchased through the Kroger website for delivery to consumers in Florida. Kroger also advertises job openings in Florida. Upon information and belief, Kroger also enters into contracts with suppliers and/or has suppliers in Florida with which it regularly and systematically conducts business. On information and belief, Kroger has also done business in Florida through "custom sales activity" in Florida and

distributes, advertises and/or sells the Defendants' pet food products through its agents, affiliates and/or subsidiaries in convenience retail stores in Florida. Kroger is in the business of manufacturing, producing, distributing, advertising and/or selling its own brand of pet food as well as distributing, advertising and/or selling the Defendants' pet food and treat products which have injured the Plaintiffs as described more fully below. On information and belief, Kroger adopts the marketing representations of the Defendant Manufacturers by placing point of purchase advertising at or near the Defendant Manufacturers' pet food in its retail stores with the intent to induce the Plaintiffs and the Plaintiff Class to purchase its products.

TAC ¶ 55.

Remarkably, after no less than five iterations of their Complaint, Plaintiffs continue to fail to allege that any specific named Plaintiff purchased pet food distributed, advertised, or sold by Kroger in Florida. Indeed, Plaintiffs' TAC continues to fail to allege any contact, transaction, or connection whatsoever between any specific named plaintiff and Kroger in the state of Florida.[35] As such, Plaintiffs do not even raise the pretense of suggesting the basis of specific jurisdiction over Kroger under the Florida long-arm statute.

As to general jurisdiction, Plaintiffs also have failed to meet their initial burden of pleading "material facts" (*Mother Doe I*, 2007 WL 2209258, *2) or "sufficient facts to make out a prima facie case of jurisdiction" (*Posner*, 178 F.3d at 1214) against Kroger. *See also Rexam Airspray*, 471 F. Supp. 2d at 1298 (requiring "facts which clearly justify the exercise of personal jurisdiction."). As this Court held in *Miami Breakers Soccer Club*, 140 F. Supp. 2d at 1328, "[i]f a plaintiff alleges personal jurisdiction, then it bears *the initial burden of pleading facts* to support personal jurisdiction over the defendant *in its complaint*" (emphasis added).

---

[35] While named Plaintiffs Patricia Davis and Raul Isern allege that each is a resident of Florida and that each purchased pet food in Florida during the class period, neither of these named Plaintiffs—nor any other plaintiffs—has alleged that she or he purchased pet food products from Kroger in the state of Florida.

Notably, in this last in a long succession of their operative Complaints, Plaintiffs have alleged certain specific facts—although none which justify the exercise of personal jurisdiction here—not previously pled in the earlier versions of their Complaint.  None of these supposed "jurisdictional facts" serves to support the exercise of general personal jurisdiction over this nonresident Defendant.

> **2.  Kroger's Appointment of a Registered Agent and Its Qualification to Conduct Business in the State of Florida Do Not Establish General Personal Jurisdiction.**

The presence of a registered agent for service of process and the filing of business qualification reports with the Florida Secretary of State do not serve to confer general personal jurisdiction over Kroger in this action.  Recognizing that other circuits "have rejected the argument that appointing a registered agent is sufficient to establish general personal jurisdiction over a corporation," *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000), the Eleventh Circuit held:

> [t]he casual presence of a corporate agent in the forum is not enough to subject the corporation to suit where the cause of action is unrelated to the agent's activities.

*id.  See also Sofrar, S.A. v. Graham Eng'g Corp.*, 35 F. Supp. 2d 919, 921 (S.D. Fla. 1999) (citing *Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 182 (5th Cir. 1992) ("the appointment of an agent for process and registration to do business does not suffice to satisfy the criteria for the exercise of general jurisdiction.")).  As this Court noted in *Sofrar, S.A.*:

> registration to do business and appointment of an agent is "of no special weight" since applying for the privilege of doing business is one thing, but the actual exercise of that privilege is quite another.

*Sofrar, S.A.*, 35 F. Supp. 2d at 921 (citing *Ratliff v. Cooper Labs, Inc.*, 444 F.2d 745, 748 (4th Cir. 1971)).

As such, Kroger's appointment of a registered agent for service of process and its qualification to do business in the state of Florida are of no relevance in the jurisdictional analysis.

**3. The Presence of Independent Subsidiary Corporations Doing Business in the State of Florida Does Not Confer General Personal Jurisdiction over Kroger.**

In paragraph 55 of the TAC, Plaintiffs attempt to premise their claim of general personal jurisdiction over Kroger, in part, upon the presence and activities of two wholly independent subsidiary corporations in Florida.  Contrary to Plaintiffs' contentions, the Tom Thumb convenience stores and the jewelry stores referred to in Plaintiffs' jurisdictional allegations are owned and operated by independent corporations over which Kroger does not have operational control.

As reflected in the attached Affidavit of Paul Schulte, Manager of Tax Planning and Research, Kroger Corporate Tax Department ("Schulte Aff.," attached as Exhibit B), "Tom Thumb Food Stores" is the name of a chain of retail convenience stores in Florida and Alabama, which are owned and operated by Junior Food Stores of West Florida, Inc. ("JFS"), a Florida corporation. (Schulte Aff. ¶ 4).  JFS is one of several subsidiaries of Dillon Companies, Inc. ("Dillon"), which, in turn, is one of several subsidiaries of Kroger." (*Id.*)  As further reflected in Mr. Schultz's Affidavit, JFS, doing business as Tom Thumb Food Stores, maintains its own facilities, distributes its own merchandise through its retail convenience stores, maintains its own accounts, and hires and pays its own employees.  (Schulte Aff. ¶ 5).  Kroger does not maintain any operational control over JFS, which has a separate corporate existence of its own. (Schulte Aff. ¶ 6).

Similarly, Fred Meyer Jewelers, Inc. ("FMJ") is a California corporation which owns and operates the several jewelry stores in Florida referred to in Plaintiffs' jurisdictional allegations,

which operate under the names of "Fred Meyer Jewelers" and "Littman Jewelers." (Schulte Aff. ¶ 7). FMJ is one of several subsidiaries of Fred Meyers Stores, Inc. ("FMS"). (*Id.*) FMS is one of several subsidiaries of Fred Meyer, Inc. ("FM"). (*Id.*) FM is one of several subsidiaries of Kroger. (Schulte Aff. ¶ 7). As further reflected in Mr. Schulte's Affidavit, FMJ, doing business as Fred Meyer Jewelers and Littman Jewelers, maintains its own facilities, distributes its own merchandise through its retail jewelry stores, maintains its own accounts, and hires and pays its own employees. (Schulte Aff. ¶ 8). Kroger does not maintain any operational control over FMJ, which has a separate corporate existence of its own. (Schulte Aff. ¶ 9).

General jurisdiction over a parent corporation is ***not*** established with evidence that a subsidiary operates in the forum. *Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d. 1335, 1343 (S.D. Fla. 2002) (citing *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002)); *see also Rexam Airspray,* 471 F. Supp. 2d at 1299. "[C]ourts are reluctant to impute the activities of the subsidiary to the parent." *Kozial v. Bombardier-Rotax GMBH, Motorenfabrik*, 129 Fed. Appx. 543, 547 (11th Cir. 2005) (citing *Consolidated Dev. Corp.*, 216 F.3d at 1293–94); *see also Rexam Airspray,* 471 F. Supp. 2d. at 1300.

General jurisdiction is proper only when the subsidiary is nothing more than "an agent through which the parent company conducts business." *Gen. Cigar Holdings, Inc.*, 205 F. Supp. 2d at 1343; *see also Meier*, 288 F.3d at 1273; *Kozial*, 129 Fed. Appx. at 547. If the subsidiary maintains "any semblance of individual identity" there is no jurisdiction over the parent. *Gen. Cigar Holdings, Inc.*, 205 F. Supp. 2d at 1343; *Kozial*, 129 Fed. Appx. at 547; *Rexam Airspray,* 471 F. Supp. 2d. at 1299. Plaintiffs must produce evidence that establishes that Kroger has "operational control" over the subsidiaries selling Kroger's products in Florida. *Gen. Cigar Holdings, Inc.*, 205 F. Supp. 2d at 1344; *Rexam Airspray,* 471 F. Supp. 2d. at 1299; *Oriental*

69

*Imps. and Exps.*, 701 F.2d at 893.  A "very close working relationship" does not establish

jurisdiction.  *Gen. Cigar Holdings, Inc.*, 205 F. Supp. 2d at 1344.[36]

 In short, Mr. Schulte's Affidavit clearly establishes that JFS and FMJ are not mere

"agent(s) through which the parent company conducts business" (*General Cigar Holdings, Inc.,*

205 F. Supp. 2d at 1343), so as to justify the disregard of their respective independent and

separate corporate identities.  Indeed, Mr. Schulte's Affidavit establishes an independence and

separateness of these tertiary subsidiary corporations from Kroger that goes well beyond the

"any semblance of individual identity" standard enunciated in *General Cigar Holdings, Inc.*  As

such, the presence of these two subsidiary corporations in Florida does not serve to confer

general personal jurisdiction over Kroger in this action.

   **4.**  **Kroger's Extremely Limited Commercial Sales Activity in the State of Florida Falls Well Short of the Threshold Recognized by This Court as Affording a Basis of General Personal Jurisdiction.**

 In their jurisdictional allegations raised in paragraph 55 of the TAC, Plaintiffs purport to

base their claim of general personal jurisdiction against Kroger, in part, on Kroger's commercial

or "custom" sales activities in the state of Florida.  As indicated below, Kroger's commercial

sales activities in Florida have been extremely limited, and, as such, do not afford a basis of

general personal jurisdiction over this Defendant.

 As reflected in the attached Affidavit of Mr. Schulte, over the several years prior to the

filing of Plaintiffs' Complaint, Kroger has not operated any retail supermarkets, nor has Kroger

---

[36] Indeed, in *General Cigar Holdings, Inc.,* this Court considered such matters as the subsidiary's independent ownership and maintenance of its business facilities, distribution of products through its own sales organization, maintenance of its own accounts, and payment of its own employees as indicative of the "semblance of individual identity" which defeats a claim of personal jurisdiction over the nonresident parent corporation.  *Id.* at 1344.

had any retail sales, in the state of Florida. (Schulte Aff. ¶ 2).  Over that period of time, Kroger

has made wholesale or "custom" sales to commercial customers (non consumers) in the state of

Florida.  (*Id.*)

Notably, for the four successive tax years beginning on February 1, 2003, the respective

percentages of Kroger's total sales revenue attributable to these Florida commercial sales were as

follows:

| Tax Year | Florida Sales |
|---|---|
| 2/1/03 - 1/31/04 | .0195% |
| 2/1/04 - 1/31/05 | .0061% |
| 2/1/05 - 1/31/06 | .0024% |
| 2/1/06 - 1/31/07 | .0014% |

(Schulte Aff. ¶ 3).

As this Court recently held in *Rexam Airspray*, in order to be subject to general personal

jurisdiction in Florida, a nonresident corporation's contacts with Florida must be "especially

pervasive and substantial."  Yet, as this Court held in *Rexam Airspray*, the limited sales activity

referenced in Mr. Schulte's Affidavit is insufficient to establish general jurisdiction under the

Florida long-arm statute.

> Moreover, Arminak, Inc.'s sales to customers in Florida such as KGI amount to
> less than 1% of its total sales.  By comparison, courts confronting much higher
> percentages of forum-state sales have nonetheless concluded that general
> jurisdiction does not exist.  *See Horizon Aggressive Growth, L.P. v. Rothstein-
> Kass, P.A.*, 421 F.3d 1162, 1167 (5% Florida sales, no general jurisdiction);
> *StairMaster Sport/Medical Prods. v. Pacific Fitness Corp.*, 916 F. Supp. 1049,
> 1052-53 (W.D. Wash. 1994), *affirmed*, 78 F. 3d 602 (Fed. Cir. 1996) (3% forum-
> state sales; no general jurisdiction); *Baker v. Carnival Corp.*, 2006 U.S. Dist.
> LEXIS 85114, 2006 WL 3360418, at *4 (S.D. Fla. Nov. 20, 2006) (1.5% Florida
> sales, no general jurisdiction).

*Rexam Airspray*, 471 F. Supp. 2d at 1300. *See also Crowe v. Paragon Relocation Res., Inc.*, 506 F. Supp. 2d 1113, 1123 (N.D. Fla. 2007) (2.7% Florida sales; no general jurisdiction); *Assoc. Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.,* 197 F.3d 1070, 1075 (11th Cir. 1999) (9 sales plus 193 purchases in forum; no general jurisdiction).

Indeed, courts in other jurisdictions have determined that there was no general personal jurisdiction over a nonresident corporation when confronted with far greater percentages or amounts of forum-state sales. *See StairMaster,* 916 F. Supp. at 1052-53 (3% forum-state sales; no general jurisdiction); *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1362 (5th Cir. 1990) (12.9% forum-state sales; no general jurisdiction); *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 772 (1984) (15,000 forum-state sales per month; no general jurisdiction); *Bearry v. Beech Aircraft Corp*., 818 F.2d 370, 372–73 (5th Cir. 1987) ($250 million sales plus $195 million purchases in forum-state; no general jurisdiction); *Nichols v. G.D. Searle Co*., 991 F.2d 1195, 1198 (4th Cir. 1993) ($13 million forum-state sales (2% of total sales) plus purchases and 17-21 employees in forum; no general jurisdiction); *Noonan v. Winston Co*., 135 F.3d 85, 93–94 (1st Cir. 1998) (1.5% of income in forum-state plus employees, agencies, and salespeople regularly in forum-state; no general jurisdiction).

As reflected in Mr. Schulte's Affidavit, Kroger's annual commercial sales in the state of Florida over the several years preceding the filing of Plaintiffs' Complaint have averaged less than 1/100[th] of 1% of Kroger's total sales revenue, falling exponentially below the parameters recognized in this Circuit and others as providing a basis for the exercise of general personal jurisdiction. As such, Kroger's extremely limited commercial sales activities in the state of Florida do not come close to establishing a basis of general jurisdiction over this Defendant.

5.      **The Limited Sales of Flowers and Gourmet Fruit Baskets to Florida Residents from Partner Websites Accessible Through the "Kroger.com" Website Does Not Afford a Basis of General Personal Jurisdiction over Kroger.**

In their jurisdictional allegations in paragraph 55 of the TAC, Plaintiffs suggest that the sale of flowers and gourmet fruit baskets "through the Kroger website" affords a basis of general jurisdiction over Kroger.  Plaintiffs' argument is without merit.

As reflected in the attached Affidavit of Angela Z. Rose, Senior Manager On-Line, Kroger Loyalty Department ("Rose Aff.," attached as Exhibit C), on and before May 9, 2007, Kroger operated the "Kroger.com" website over which consumers could electronically order certain goods, including flowers and gourmet fruit baskets, from "partner sites" operated by independent companies.  (Rose Aff. ¶ 2).  A consumer accessing the Kroger.com website and seeking to purchase flowers or gourmet fruit baskets would be redirected to a partner site, where the order would be taken electronically.  (*Id.*)  The partner would then ship the order of flowers or gourmet fruit baskets as directed by the ordering customer.  (*Id.*)  Payment is made directly to the partner, which pays Kroger a commission for the use of the Kroger.com website to redirect the consumer to the partner site.  (*Id.*)

As Ms. Rose's Affidavit further reflects, between April 24, 2005 and May 26, 2007, the dollar amount of commissions earned by Kroger for sales of flowers and gourmet fruit baskets ordered by Florida residents from partner sites accessed through the Kroger.com website totaled $3,568.32.  (Rose Aff. ¶ 3).

Kroger is a multi-billion dollar company, and the sales of these two products totals $3,568.32 over the course of two years.  Clearly, such limited sales of two discrete products from ***independent partner sites*** come nowhere close to establishing the "especially pervasive and substantial" contact by ***Kroger*** with the state of Florida recognized by this Court in *Rexam*

*Airspray* as necessary for the imposition of general personal jurisdiction over a nonresident corporation.  Accordingly, such activity does not provide a basis for the exercise of general personal jurisdiction over Kroger.

**6.     Kroger's Purchases from Florida Vendors Do Not Afford a Basis of General Personal Jurisdiction over Kroger.**

In their jurisdictional allegations in paragraph 55 of the TAC, Plaintiffs premise their claim of general personal jurisdiction over Kroger, in part, upon Kroger's transactions with vendors and suppliers in the state of Florida.  Plaintiffs' reliance upon forum-state purchases from vendors to establish general jurisdiction is without merit.

As reflected in the attached Affidavit of Lisa Byrd, Senior Manager Corporate Systems, Kroger Information Systems Department ("Byrd Aff.," attached as Exhibit D), a search of the Kroger electronic accounts payable database for the years 2002 through 2006 reveals the following percentages of the dollar amounts of Kroger's enterprise-wide vendor transactions which were attributable to Florida vendors:

| YEAR | PERCENTAGE FLORIDA VENDORS |
|------|----------------------------|
| 2002 | 0.86% |
| 2003 | 0.85% |
| 2004 | 1.03% |
| 2005 | 0.96% |
| 2006 | 1.09% |

Such low annual percentages attributable to forum-state purchases here belie any contention that Kroger's contacts with the state of Florida have been "especially pervasive and substantial" (*Rexam Airspray*, 471 F. Supp. 2d at 1303), as to warrant the exercise of general personal jurisdiction.

It is well established that "[m]ere purchases, even if occurring at regular intervals, are not enough to warrant . . . jurisdiction over a nonresident corporation in a cause of action unrelated

to those purchase transactions." *Helicopteros,* 466 U.S. at 411 (80% of helicopter fleet purchased in forum-state; no general jurisdiction); *see also Bearry*, 818 F.2d at 372–73 ($195 million forum-state purchases; no general jurisdiction); *Nichols*, 991 F.2d at 1198; *Dalton*, 897 F.2d at 1362.

The Eleventh Circuit has further held that mere purchases are insufficient to establish general personal jurisdiction. *See Assoc. Transp. Line*, 197 F.3d at 1075 (193 forum purchases; no general jurisdiction); *Consol. Dev. Corp.*, 216 F.3d at 1292; *see also Structural Panels, Inc. v. Texas Aluminum Industries, Inc.*, 814 F. Supp. 1058, 1065-66 (M.D. Fla. 1993) (purchases from vendors in Florida insufficient to permit exercise of general jurisdiction under Fla. Stat. § 48.193(2)); *Adstep, Inc. v. Freeman Decorating Co.,* No. 3:02-cv-1002-J-21 HTS, 2003 WL 25276323, at **2, 7 (M.D. Fla. Sept. 16, 2003) (transactions with 33 forum-state businesses; no general jurisdiction); *J.P. Morgan Trust Co., N.A. v. Potash Corp. of Saskatchewan, Inc.*, No. 3:05-cv-587-J-32MCR, 2007 U.S. Dist. Lexis 23872, at *34 (M.D. Fla. Mar. 30, 2007).

Florida state courts have further recognized "the well-established rule that mere purchases of goods in the forum state, even if accompanied by occasional visits to the forum in connection with the purchases and even when the purchases are extensive, are not sufficient minimum contacts to satisfy the test of due process." *Aluminator Trailers, L.L.C. v. Loadmaster Aluminum Boat Trailers, Inc.*, 832 So. 2d 822, 823 (Fla. 2d DCA 2002) (citing *Marsh Supermarkets, Inc. v. The Queen's FS Corp.*, 696 So. 2d 1207, 1209 (Fla. 3d DCA 1997)); *see also Roldos v. Americargo Lines, Inc.*, 698 So. 2d 1368, 1369 (Fla. 3d DCA 1997); *O'Brien Glass Co. v. Miami Wall Sys., Inc.*, 645 So. 2d 142, 144 (Fla, 3d DCA 1994); *Alan Richard Textiles, Ltd. v. Vertilux, Inc.*, 627 So. 2d 529, 530 (Fla. 3d DCA 1993); *Payless Drug Stores N.W., Inc. v. Innovative Clothing Exch., Inc.*, 615 So. 2d 249, 250 (Fla. 3d DCA 1993).

Accordingly, Kroger's purchases from Florida vendors do not serve to confer general jurisdiction over Kroger in this action.

### 7. Kroger Does Not Have Employees with Business Addresses in Florida.

In their jurisdictional allegations in paragraph 55 of the TAC, Plaintiffs premise their claim of general personal jurisdiction over Kroger, in part, upon the presence of Kroger employees in the state of Florida.  Plaintiffs' reliance upon the presence of employees to establish general jurisdiction is without merit.

As reflected in the attached Affidavit of Mr. Schulte, a review of company records reveals that The Kroger Co. did have employees maintaining a Florida company business address from May 9, 2003 through May 9, 2007.  (Schulte Aff. ¶ 10).  The percentage of wages paid to Kroger employees maintaining a business address in Florida were as follows:

| Year | Florida Wages |
|------|---------------|
| 2003 | .000% |
| 2004 | .000% |
| 2005 | .003% |
| 2006 | .005% |

(Schulte Aff. ¶ 10).

The Eleventh Circuit has held that the presence of employees regularly in the forum-state does not establish general jurisdiction.

> General jurisdiction has been found lacking even where a company had employees, agencies and salespeople regularly in the forum; where the company was qualified to do business in the forum; and where it regularly solicited business and derived more than 26% of its income from the forum. *Noonan v. Winston Co*., 135 F.3d 85, 93-94 (1st Cir. 1998) ($13 million in sales over five-year period insufficient -- even though company employed salespeople in forum).

*Assoc. Transport Line, LLC.*, 197 F.3d at 1075; *accord Gen. Cigar Holdings, Inc.*, 205 F. Supp. 2d at 1343 (employees visited forum state; no general jurisdiction).  Quite simply, wages amounting to a mere 5 one-thousandth of a percent of Kroger's corporate-wide wages constitutes nothing more than "isolated" activity in the forum. "§ 48.193(2) provides courts with general jurisdiction only over a defendant who has 'substantial and not isolated' contacts with Florida." *Gen. Cigar Holdings, Inc.*, 205 F. Supp. 2d at 1343.

Moreover, Kroger did not pay to any wages to Kroger employees with business addresses in Florida in 2003 or 2004. (Schulte Aff. ¶ 11). It is well established that a company is not subject to general jurisdiction when it has no employees in the forum state. *See, e.g.*, *Rexam Airspray*, 471 F. Supp. 2d at 1296 (no employees in forum state; no general jurisdiction); *Crowe*, 506 F. Supp. 2d at 1116 (no employees in forum state; no general jurisdiction); *Einmo v. Aecom Gov't Serv. Inc.*, No. 8:06-cv-1371-T-27TBM, 2007 WL 2409816, *6 (M.D. Fla. Aug. 21, 2007) (no employees in forum state; no general jurisdiction).

Accordingly, the absence of Kroger employees with business addresses in Florida supports dismissal of Plaintiffs' TAC against Kroger for lack of personal jurisdiction.

### C.   The Exercise of Personal Jurisdiction over Kroger Would Violate Fundamental Principles of Due Process.

As noted above, even if the long-arm statute of the forum state were satisfied, the Court would then have to determine "whether sufficient 'minimum contacts' exist to satisfy the due process requirements of the Fourteenth Amendment, which include 'traditional notions of fair play and substantial justice.'" *Mother Doe I*, 2007 WL 2209258, *2 (citing *Future Tech*, 218 F. 3d at 1249; *Int'l Shoe Co.*, 326 U.S. at 316).

As to the constitutional limits of specific personal jurisdiction, the Eleventh Circuit has held:

> Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires the defendant have "fair warning" that a particular activity may subject him to the jurisdiction of a foreign sovereign. This fair warning requirement is satisfied if the defendant has "purposefully directed" his activities at the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities.

*Madara*, 916 F.2d at 1516 (citing *Burger King*, 471 U.S. at 471; *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens J., concurring in judgment); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).  Furthermore, as noted above, it is named Plaintiffs whose claims must satisfy these elements in order for the Court to have personal jurisdiction over Defendants.

Plaintiffs make no allegation whatsoever of any specific "activities" which Kroger has "purposefully directed" at the state of Florida from which the claim of any specific named Plaintiff allegedly arises.  Plaintiffs fail to identify a single named Plaintiff who suffered damage or injury as a result of Kroger's conduct in Florida.  Without an allegation that a named Plaintiff suffered injury as a result of Kroger's conduct in Florida, none of the named Plaintiffs can satisfy the elements of specific personal jurisdiction.  As such, the exercise of specific personal jurisdiction over Kroger is constitutionally impermissible.

The TAC also fails the constitutional test for general jurisdiction.  As this Court has recently held, the rigorous standard for general jurisdiction under the Florida long-arm statute exceeds the constitutional "minimum contacts" standard mandated by due process considerations.  *See, Rexam Airspray*, 471 F. Supp. 2d at 1298.  However, even under the less rigorous due process standard for "minimum contacts," the courts have recognized that "proving general jurisdiction over a nonresident defendant is difficult, as evidenced by the greater number of cases rejecting such jurisdiction rather than finding it." *Williams*, 209 F.R.D. at 410.

Kroger's extremely limited general activities in the state of Florida fall far short of the benchmarks recognized by this Court as affording a basis for general personal jurisdiction under

the long-arm statute.  The limited nature of Kroger's contacts with the state of Florida fall well

below the threshold established in Florida's long-arm statute as construed by this Court in *Rexam*

*Airspray*, 471 F. Supp. 2d at 1298.

Moreover, the exercise of personal jurisdiction over Kroger would also run afoul of the

"fair play and substantial justice" prong of the personal jurisdiction analysis recognized in *Asahi*

*Metal Indus. Co*.  First, Kroger has not "purposefully injected itself" in the state of Florida to a

degree that renders it reasonable to assert jurisdiction over Kroger for claims unrelated to

Kroger's limited activities in the forum state.  Second, the burden of requiring Kroger to appear

in the forum state is manifest, insofar as none of the several witnesses and evidence needed for

its defense are located in the state of Florida.  Third, the state of Florida has a limited interest, if

any, in the prosecution of claims against Kroger, none of which, on the face of the TAC, are

made on behalf of Plaintiffs claiming to be injured by Kroger in Florida.  Fourth, none of the

Plaintiffs may claim a special interest in obtaining relief against Kroger in the state of Florida,

since no Plaintiff claims to have purchased pet food from Kroger in Florida.

Finally, the state of Florida can claim no "shared" interest with other states in furthering

"social policies" relating to the claims against Kroger at issue in this action.  In the TAC, claims

are presented on behalf of Plaintiffs who contend that they purchased pet food from, and were

damaged by, Kroger in the states of Michigan, Indiana, Ohio, Nevada, and Arizona—but not

Florida.  Plaintiffs can point to no "shared" interest of the state of Florida in the resolution of the

claims of other consumers in other states against a nonresident corporation with such extremely

limited contact with the forum state.

Accordingly, the exercise of personal jurisdiction over Kroger would violate fundamental

principles of due process.

Defendant Kroger therefore respectfully urges the Court to dismiss Plaintiffs' TAC against this Defendant with prejudice.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully move this Court to dismiss Plaintiffs' Third Amended Class Action Complaint in its entirety, with prejudice.

## APPENDIX A

### ELEMENTS OF RELIANCE AND CAUSATION UNDER
### FLORIDA AND MICHIGAN LAW

- **Count I:** *Simon v. Celebration Co.*, 883 So. 2d 826, 832-33 (Fla. 5th DCA 2004) (fraudulent misrepresentation requires reliance); *Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 264 F. Supp. 2d 1064, 1073–74 (S.D. Fla. 2003) (fraudulent concealment); *FFOC Co. v. Invent A.G.*, 882 F. Supp. 642, 658-59 (E.D. Mich. 1994) (fraudulent misrepresentation); *McEldowney v. Air Prods. & Chems., Inc.*, No. 273572, 2007 WL 1576390, *6 (Mich. Ct. App. May 31, 2007) (fraudulent concealment).

- **Count II:** *Romo v. Amedex Ins. Co.*, 930 So. 2d 643, 653 (Fla. 3d DCA 2006) (negligent misrepresentation requires reliance); *Roncelli v. O'Reilly, Rancilio, Nitz, Andrews, Turnbull & Scott, P.C.*, No. 258951, 2006 WL 1360396 (Mich. Ct. App. May 18, 2006) (*per curiam*) (negligent misrepresentation).

- **Count III:** *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 229 (S.D. Fla. 2001) (FDUTPA requires showing of causation); *Kussy v. Home Depot U.S.A. Inc.*, No. 06-12899, 2006 WL 3447146, **5-7 (E.D. Mich. Nov. 28, 2006) (Michigan Consumer Protection Act requires causation and reliance).

- **Count IV:** *Krehling v. Baron*, 900 F. Supp. 1578, 1582-83 (M.D. Fla. 1995) (negligence requires causation); *Baker v. Arbor Drugs*, 544 N.W.2d 727, 730 (Mich. App. 1996) (same).

- **Count V:** *Rivera v. Baby Trend, Inc.*, 914 So. 2d 1102, 1104 (Fla. 4th DCA 2005) (strict liability requires showing of causation); *Williams v. Detroit Edison Co.*, 234 N.W.2d 702, 707 (Mich. App. 1975) (same).

- **Count VI:** Not applicable, because this count does not represent an independent substantive claim.

- **Count VII:** *Marking v. Novartis Pharm. Corp.*, No. 00-9108-CV, 2002 WL 32255405, *3 (S.D. Fla. Feb. 12, 2002) (breach of implied warranty requires causation); *Weier v. United Rentals, Inc.*, No. 1:05-CV-420, 2006 WL 3613304, *4, *7 (W.D. Mich. Dec. 11, 2006) (same).

- **Count VIII:** *Marking*, 2002 WL 32255405, *3 (breach of express warranty requires causation); *Cavalier v. Werner Co.*, 976 F. Supp. 672, 679 n.11 (E.D. Mich. 1997)\ (same).

- **Count IX:** *Urquhart v. Manatee Mem'l Hosp.*, No. 8:06-cv-1418-T-17-EAJ, 2007 WL 781738, **5-6 (M.D. Fla. Mar. 13, 2007)\ (unjust enrichment requires causation); *Thomas v. City of Detroit*, No. 06-10453, 2007 WL 674593, *11 (E.D. Mich. Feb. 28, 2007) (same)

## APPENDIX B

### STATE CONSUMER PROTECTION STATUTES

- **Arizona**: *Grismore v. Capital One F.S.B.*, No. CV-05-2460-PHX-SMM, 2007 WL 841513, *7 (D. Ariz. Mar. 16, 2007) (dismissing Arizona Consumer Fraud Act claim for failure to comply with Rule 9(b));

- **Arkansas:** *Wallis v. Ford Motor Co.*, 208 S.W.3d 153, 161-62 (Ark. 2005) (likening Arkansas Deceptive Trade Practice Act claims to common-law fraud claims);

- **Florida:** *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002) (FDUTPA claim deficient because it did not comply with Rule 9 particularity requirements);

- **Georgia:** *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 198 F.R.D. 560, 562 (N.D. Ga. 2000) (plaintiffs must plead fraud with particularity "whether the fraud is in statutory or common law form"), *aff'd*, 290 F.3d 1301 (11th Cir. 2002);

- **Illinois:** *Pantoja-Cahue v. Ford Motor Credit Co.*, 872 N.E.2d 1039, 1048-49 (Ill. App. Ct. 2007) (claims under the Illinois Consumer Fraud and Deceptive Business Practices Act must be alleged with particularity and specificity);

- **Indiana**: *SMC Corp. v. PeopleSoft U.S.A., Inc.*, No. 1:00-cv-01095-LJM-VS, 2004 WL 2538641, **4-5 (S.D. Ind. Oct. 12, 2004) (dismissing Indiana Deceptive Consumer Sales Act claim for failure to comply with Rule 9(b) particularity requirements);

- **Kansas**: *Jamieson v. Vatterott Education Center, Inc.*, 473 F. Supp. 2d 1153, 1156-1158 (D. Kan. 2007) (dismissing KCPA claim for failure to meet Rule 9 (b));

- **Maryland:** *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007) (Rule 9(b) particularity requirement applied to Consumer Protection Act claim); *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 150-54 (Md. 2007) (same);

- **Massachusetts**: *Moniz v. Bayer Corp.*, 484 F. Supp. 2d 228, 231 (D. Mass. 2007) (considering whether Chapter 93A claim met Rule 9(b) particularity requirements);

- **Michigan**: *Parsley v. Monaco Coach Corp.*, 327 F. Supp. 2d 797, 807 (W.D. Mich. 2004) (Rule 9(b)'s particularity requirements apply to Michigan Consumer Protection Act claims based on fraud allegations);

- **Minnesota:** *Carlson v. A.L.S. Enterprises, Inc.*, No. 07-3970, 2008 WL 185710, *2 (D. Minn. Jan. 18, 2008) ("Rule 9(b) applies both to common-law fraud claims and statutory-fraud claims");

- **Nevada**: *George v. Morten*, No. 2:06-cv-1112-PMP-GWF, 2007 WL 680787, *12 (D. Nev. Mar. 1, 2007) (claim brought under Nevada consumer fraud act must satisfy Rule 9(b) particularity requirements);

- **New Jersey:** *Naporano Iron & Metal Co. v. Am. Crane Co.,* 79 F. Supp. 2d 494, 510-11 (D. N.J. 2000) (consumer protection claims "sounding in fraud" are subject to the particularity requirements of Rule 9(b));

- **North Carolina**: *Bob Timberlake Collection, Inc. v. Edwards*, 626 S.E.2d 315, 323 (N.C. Ct. App. 2006) (dismissing North Carolina Unfair and Deceptive Trade Practices Act claim where plaintiff failed to specify the alleged conduct that constituted unfair and deceptive trade practices);

- **Pennsylvania**: *Rosenberg v. Avis Rent a Car Sys., Inc.*, No. 07-1110, 2007 WL 2213642, **5-6 (E.D. Penn. July 31, 2007) (Rule 9(b) applies to Pennsylvania UTPCPL claims);

- **Tennessee**: *McLean v. Bourget's Bike Works, Inc.*, No. M2003-01944-COA-R3-CV, 2005 WL 2493479, *7 (Tenn. Ct. App. Oct. 7, 2005) ("Claims under the Tennessee Consumer Protection Act must be pleaded with the same particularity that Tenn. R. Civ. P. 9.02 requires of common-law fraud claims");

- **Texas**: *Sipes v. Petry*, 812 S.W.2d 428, 431 (Tex. App.—San Antonio 1991, no writ) ("[A]llegations under the Deceptive Trade Practices Act . . . require pleadings which designate or state with particularity which acts or events were relied upon as a basis for liability under the Texas Deceptive Trade Practices Act") (internal quotation marks omitted);

- **Washington**: *Fidelity Mortg. Corp. v. Seattle Times Co.*, 213 F.R.D. 573, 575 (W.D. Wash. 2003)(complaints under Consumer Protection Act are subject to particularity requirement of Rule 9(b));

- **West Virginia**: *Rouse v. Philip Morris, Inc.*, No. 2:03-2159, 2003 WL 22850072, *5 (S.D. W. Va. Nov. 18, 2003) (complaints under West Virginia Consumer Credit and Protection Act are subject to particularity requirement of Rule 9(b));

- **Wisconsin**: *D & B Auto Equip., Inc. v. Snap-on, Inc.*, No. 03-CV-141, 2006 WL 776749, *6 (E.D. Wis. Mar. 27, 2006) (complaints under Wisconsin Consumer Act (and consumer acts of other states) are subject to particularity requirement of Rule 9(b)).

# APPENDIX C

## AAFCO AND STATE PROVISIONS

- **Arizona:** Arizona has incorporated by reference the feed ingredient definitions and feed terms, as well as the labeling and guarantee provisions, of the AAFCO Official Publication. (ARIZ. ADMIN. CODE R3-3-901, 905.)

- **Arkansas:** Arkansas regulations adopt the AAFCO ingredient names, definitions, and feed terms. (003-11 ARK. CODE R. § 003 (e-f).)

- **California:** California has adopted the ingredient names and definitions of AAFCO, as well standards for "balanced" statements. (CAL. CODE REGS. tit. 17, § 19005.)

- **Connecticut:** Connecticut's Commercial and Customer-Formula Feeds Law adopts AAFCO's official definitions of feed ingredients and official feed terms. (CONN. GEN. STAT. § 22-188q.)

- **Georgia:** Georgia has adopted AAFCO's ingredient names, definitions and feed terms for commercial feed. (GA. COMP. R & REGS. 40-5-1-.01.) Georgia regulations include a specific chapter on pet food that refers to AAFCO's Dog or Cat Nutrition Profile as a "recognized authority," and mandates the use of AAFCO's medicated labeling format. (GA. COMP. R & REGS. 40-5-8-.04)

- **Illinois:** Illinois' Commercial Feed Act adopts the official definitions of feed ingredients and official feed terms as set forth by AAFCO. (ILL. COMP. STAT. 505/30-10.)

- **Indiana:** Indiana has adopted the ingredient names and definitions of AAFCO, as well as its claims of nutritional adequacy, feeding directions, and testing procedures. (IND. ADMIN. CODE tit. 355, r. 6-1-1, 6-2-4 – 6-2-9.)

- **Kansas:** Kansas regulations adopt the official feed terms, names, and definitions of AAFCO. (KAN. ADMIN. REGS. 4-3-7, 4-3-47, 4-3-48.)

- **Kentucky:** Kentucky's pet food regulations incorporate by reference AAFCO's Official Publication. (12 KY. ADMIN. REGS. 3:012.)

- **Maryland:** Maryland's Commercial Feed Law states that the definitions issued by AAFCO are "commonly accepted." (MD. CODE REGS. 6-101.)

- **Massachusetts:** Massachusetts uses the AAFCO definitions, nutrient profiles, and testing procedures. (MASS. REGS. CODE tit. 330, §§13.01 – 13.08.)

- **Michigan:** The Michigan Administrative Code mandates the use of AAFCO definitions of and terms for feed ingredients, as well as AAFCO testing procedures and nutrient profiles. (MICH. ADMIN. CODE r. 285.631, 283.635.)

- **Minnesota:** Minnesota's Commercial Feed Law adopts AAFCO provisions governing the official definition of feed ingredients and official feed terms. (MINN. STAT. § 25.40.)

- **Nebraska:**  Nebraska has adopted certain portions of the AAFCO feed name and ingredient provisions.  (NEB. ADMIN. CODE tit. 25, §§ 3-001, 3-003.)

- **Nevada:**  Nevada applies AAFCO ingredient definitions and AAFCO standards for product names of feeds with single ingredients.  (NEV. ADMIN. CODE ch. 587 §§ 510, 520.)

- **New Jersey:** New Jersey's Commercial Feed Law adopts AAFCO's definitions of feed ingredients and feed terms.  (N.J. STAT. ANN. § 4:4-20.10.)

- **New York:** New York regulations adopt AAFCO terms and conditions where no such terms or definitions are otherwise provided, and provide that certain guarantees must comply with AAFCO nutrition requirements.  (N.Y. COMP. CODES R. & REGS. tit. 1 §§ 257.1, 257.17.)

- **North Carolina:** North Carolina regulations adopt AAFCO's ingredient names, definitions and feed terms for commercial feed. (2 N.C. ADMIN. CODE 9E.0001.) Regulations governing pet food specify that AAFCO's ingredient names for pet food must be used, as well as the use of AAFCO's medicated labeling format.  (2 N.C. ADMIN. CODE 9D.00015.)

- **Ohio:**  Ohio has adopted the 2006 AAFCO Official Publication.  (OHIO ADMIN. CODE § 901:5-7-01.)

- **Oklahoma:**  Oklahoma has adopted the definitions in AAFCO's Model Bill and Model Feed Regulations.  (OKLA. ADMIN. CODE § 35:30-27-51.)

- **Pennsylvania:**  Pennsylvania has adopted the AAFCO Official Definitions of Feed Ingredients and Official Feed Terms.  (7 PA. CODE § 71.1.)  Specific pet food regulations mandate the use of AAFCO's ingredient names for pet food, as well as the use of AAFCO's medicated labeling format.  (7 PA. CODE §§ 72.5, 72.10.)

- **South Carolina:**  South Carolina has adopted AAFCO definitions for ingredient names. (S.C. CODE ANN. REGS. 5-204.)

- **Tennessee:** Tennessee  has adopted the complete AAFCO Official Definition of Feed Ingredients and Official Feed Terms.  (TENN. COMP. R. & REGS. 0080-5-5.01.)

- **Texas:** Texas has adopted the AAFCO dog and cat food nutritional profiles.  (4 TEX. ADMIN. CODE § 63.1.)

- **Virginia:** Virginia has adopted the AAFCO regulations, definitions, and standards.  (2 VA. ADMIN. CODE § 5-360-100.)

- **Washington:**  Washington has adopted the AAFCO terms and definitions as well as its guarantee, vitamin, and labeling provisions.  (WASH. ADMIN. CODE 16-252-010, *et seq.*)

- **West Virginia:**  West Virginia has adopted AAFCO's Official Pet Food Regulations published in the 2004 edition of the Official Publication.  (W.VA. CODE ST. R. § 61-5-2.)

- **Wisconsin:**  Wisconsin allows pet foods to use "common or usual" names or AAFCO's official names.  (WIS. ADMIN. CODE § 42.32.)

# APPENDIX D

## STATE LAW EXEMPTIONS FOR AUTHORIZED CONDUCT

- **Arkansas:**  The Arkansas Deceptive Trade Practices Act does not apply to "[a]ctions or transactions permitted under laws administered by [a] regulatory body or officer acting under statutory authority of this state or the United States."  (ARK. CODE ANN. §§ 4-88-101.)

- **California**:  California law provides that "[a]cts that the legislature has determined to be lawful may not form the basis for an action under the unfair competition law."  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 541-42 (Cal. 1999).

- **Connecticut:**  The Connecticut Unfair Trade Practices Act does not apply to "[t]ransactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority of the state or of the United States."  (735A CONN. GEN. STAT. § 42-110c.)

- **Georgia:**  The Georgia Uniform Deceptive Trade Practices Act does not apply to "[c]onduct in compliance with the orders or rules of or a statute administered by a federal, state, or local governmental agency."  (GA. STAT. ANN § 10-1-374.)  Georgia's Fair Business Practices Act does not apply to "[a]ctions or transactions specifically authorized under laws administered by or rules and regulations promulgated by any regulatory agency of this state or the United States."  (*Id.* § 10-1-396).

- **Illinois:**  The Illinois Uniform Deceptive Trade Practices Act does not apply to "conduct in compliance with the orders or rules of or a statute administered by a Federal, state or local governmental agency."  (815 ILL. COMP. STAT. § 510/4.)  The Illinois Consumer Fraud and Deceptive business Practices Act exempts conduct "specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States."  (815 ILL. COMP. STAT. § 505/10b(1).)

- **Indiana:**  The Indiana Deceptive Consumer Sales Act expressly does not apply to "an act or practice that is (1) required or expressly permitted by federal law, rule, or regulation; or (2) required or expressly permitted by state law, rule, regulation, or local ordinance."  (IND. CODE § 24-5-0.5-6.)

- **Kansas:**  The Kansas Consumer Protection Act does not apply when a more specific statute deals with the subject.  *Chelsea Plaza Homes, Inc. v. Moore*, 601 P.2d 1100, 1102 (Kan. 1979).

- **Kentucky:**  The Kentucky Consumer Protection Act does "not apply to activities authorized or approved under any federal or state statute or regulation."  (KY. REV. STAT. ANN. § 367.176.)

- **Massachusetts:** The Massachusetts Regulation of Business Practices for Consumer Protection does not apply to "transactions or actions otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of the commonwealth or of the United States."  (MASS. GEN. LAWS ch. 93A § 3.)

- **Michigan:** The Michigan Consumer Protection Act does not apply to a "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." (MICH. COMP. LAWS § 445.904.)

- **Minnesota:** The Minnesota Uniform Deceptive Trade Practices Act does not apply to "conduct in compliance with the orders or rules of, or a statute administered by, a federal, state, or local governmental agency." (MINN. STAT. § 325D.46.)

- **Nebraska:** The Nebraska Consumer Protection Act "shall not apply to actions or transactions otherwise permitted, prohibited, or regulated under laws administrated by . . . any other regulatory body or officer acting under statutory authority of this state or the Untied States." (NEB. REV. STAT. § 59-1617.)

- **Nevada:** The Nevada Deceptive Trade Practices statute does not apply to "[c]onduct in compliance with the orders or rules of, or a statute administered by, a federal, state, or local governmental agency." (NEV. REV. STAT. § 598-0955.)

- **New York:** New York law holds that it is a "complete defense" to a consumer protection act claim "that the act or practice . . . complies with the rules and regulations of, and the statutes administered by, . . . any official department, division, commission or agency of the United States . . ." (N.Y. GENERAL BUSINESS LAW § 349(d).)

- **North Carolina:** The scope of North Carolina's Unfair and Deceptive Trade Practices Act may be limited by the presence of other statutory schemes that create overlapping supervision, enforcement, and liability. *See, e.g., State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 646 S.E.2d 790, 798 (N.C. Ct. App. 2007) (affirming dismissal of claim under NCUDTPA because statute regulating conduct of cigarette manufacturers overlapped with NCUDTPA).

- **Ohio:** The Ohio Consumer Sales Practices Act does not apply to "[a]n act or practice required or specifically permitted by or under federal law." (OHIO REV. CODE ANN. § 1345.12.)

- **Oklahoma:** The Oklahoma Consumer Protection Act does not apply to "[a]ctions or transactions regulated under laws administered by . . . any other regulatory body or officer acting under statutory authority of this state or the United States . . ." (OKLA. STAT. tit. 15, § 754(2).)

- **Tennessee:** The Tennessee Consumer Protection Act do not apply to "[a]cts or transactions required or specifically authorized under the laws administered by, or rules and regulations promulgated by, any regulatory body or officers acting under the authority of this state or of the United States." (TENN. CODE ANN. § 47-18-111(a)(1).)

- **Virginia:** The Virginia Consumer Protection Act provides that "[n]othing in this chapter shall apply to any aspect of a consumer transaction which aspect is authorized under laws or regulations of this Commonwealth or the United States, or the formal advisory opinions of any regulatory body or official of this Commonwealth or the United States." (VA. CODE ANN. § 59.1-199(A).)

- **Washington:** The Washington Consumer Protection Act does not apply to "actions or transactions otherwise permitted, prohibited or regulated under laws administered by . . . any other regulatory body or officer acting under statutory authority of this state or the United States."  (WASH. REV. CODE ANN. § 19.86.170.)

## APPENDIX E

### BREACH OF WARRANTY CLAIMS

- **Arizona**: *Chaurasia v. Gen. Motors Corp.*, 126 P.3d 165, 171 (Ariz. Ct. App. 2006) ("privity of contract is required to maintain an action for breach of an implied warranty");

- **California**: *Torres v. City of Madera*, No. Civ. 02-6385, 2005 WL 1683736, *16 (E.D. Cal. July 11, 2005) ("plaintiff alleging breach of warranty claims must stand in 'vertical privity' with the defendant");

- **Georgia**: *Keaton v. A.B.C. Drug Co.*, 467 S.E.2d 558, 560– 61(Ga. 1996)  ("Georgia law establishes that in order to recover under a theory of breach of implied warranty of merchantability, a plaintiff must have privity with the seller.");

- **Illinois**: *Szajna v. Gen. Motors Corp*, 503 N.E.2d 760,767 (1986) (privity required in "implied-warranty economic-loss cases");

- **Kansas**: *Postal Presort, Inc. v. Midwest Single Source, Inc.*, 130 P.3d 1247, **7-8 (Kan. Ct. App. 2006) (privity is required to claim breach of express or implied warranties if the product is not inherently dangerous and the claim is for economic loss);

- **Kentucky**: *Compex Int'l Co. v. Taylor*, 209 S.W.3d 462, 464 (Ky. 2006) ("privity remains a prerequisite for products liability claims based on warranty");

- **Maryland**: *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 637–38 (Md. 1995) (horizontal privity is still required where plaintiff was not "injured in person");

- **Michigan**: *Pidcock v. Ewing*, 371 F. Supp. 2d 870, 877-78 (E.D. Mich. 2005) (granting summary judgment for defendant with respect to warranty claims for lack of privity);

- **New York**: *Kolle v. Mainship Corp.*, No. 04-CV-711, 2006 WL 1085067, *5 (E.D.N.Y. Apr. 20, 2006) ("New York law requires privity in order for Plaintiff to assert a breach of an implied warranty claim");

- **North Carolina**: *Atl. Coast Mech., Inc. v. Arcadis, Geraghty & Miller of N.C. et al*, 623 S.E.2d 334, 345–6 (N.C. Ct. App. 2006) ("Privity is still required in an action for breach of implied warranties that seeks recovery for economic loss.");

- **Ohio**: *Johnson v. Monsanto Co.*, No. 11-02-02, 2002 WL 2030889, **2-3 (Ohio Ct. App. Sept. 6, 2002) ("Appellants are precluded from raising claims founded on UCC implied warranty theories for want of privity.");

- **Oklahoma**: *Hardesty v. Andro Corp.-Webster Div.*, 555 P.2d 1030, 1033-34 (Okla. 1976) (privity required where plaintiff seeks economic damages);

- **Tennessee**: *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 463 (Tenn. Ct. App. 2003) ("a plaintiff may not maintain a claim for purely economic losses absent contractual privity with the party charged with responsibility for those losses");

- **Washington**: *Fortune View Condo. Assoc. v. Fortune Star Dev't Co.*, 90 P.3d 1062, 1064-65 (Wash. 2004) (privity required for implied warranty claims);

- **Wisconsin**: *Northridge Co. v. W.R. Grace & Co.*, 471 N.W.2d 179, 187 n.15 (Wis. 1991) (dismissing plaintiffs' implied warranty claim because "[t]he plaintiffs in this case did not allege privity in their complaint").

100386278_10.DOC

Respectfully submitted,

/s/ Marty Steinberg
Marty Steinberg
Florida Bar Number 187293
Adriana Riviere-Badell
Florida Bar Number 30572
**HUNTON & WILLIAMS**
1111 Brickell Avenue, Suite 2500
Miami, Florida  33131
Telephone:  305-810-2500
Fax:  305-810-2460
E-Mail:  msteinberg@hunton.com
ariviere-badell@hunton.com

Mark Whitburn
Gail E. Lees
Gary L. Justice
William Edward Wegner
**GIBSON DUNN & CRUTCHER**
333 S. Grand Avenue, Suite 4600
Los Angeles, CA  90071-3197
Telephone:  213-229-7000
E-Mail:  cabbott@gibsondunn.com
glees@gibsondunn.com
gjustice@gibsondunn.com
wwegner@gibsondunn.com

*Attorneys for Nutro Products, Inc.*

By: /s/ Carol A. Licko
Carol A. Licko
Florida Bar Number 435872
**HOGAN & HARTSON L.L.P.**
Mellon Financial Center
1111 Brickell Avenue, Suite 1900
Miami, Florida  33131
Telephone:  305-459-6500
Fax:  305-459-6550
E-Mail:  calicko@hhlaw.com

Craig A. Hoover
Miranda L. Berge
**HOGAN & HARTSON L.L.P.**
555 Thirteenth Street, NW
Washington, D.C.  20004
Telephone:  202-637-5600
Fax:  202-637-5910
E-Mail:  cahoover@hhlaw.com
mlberge@hhlaw.com

Robert C. Troyer
**HOGAN & HARTSON L.L.P.**
1200 17th Street
One Tabor Center, Suite 1500
Denver, CO  80202
Telephone:  303-899-7300
Fax:  303-899-7333
E-Mail:  rctroyer@hhlaw.com

*Attorneys for Nestlé U.S.A., Inc. and*
*Nestlé Purina PetCare Company*

Case No. 07-21221-CIV-Altonaga

/s/ Omar Ortega
Omar Ortega
Florida Bar Number 0095117
**DORTA & ORTEGA, P.A.**
800 S. Douglas Road
Douglas Entrance Suite 149
Coral Gables, FL 33134

Telephone: 305-461-5454

Fax: 305-461-5226
E-Mail:  ortegalaw@bellsouth.net

Dane H. Butswinkas
Philip A. Sechler
Thomas G. Hentoff
Patrick J. Houlihan
**WILLIAMS & CONNOLLY**
725 12th Street, NW
Washington, DC 20005-3901
Telephone: 202-434-5000
E-Mail: cdangelo@wc.com
dbutswinkas@wc.com
phoulihan@wc.com
psechler@wc.com
thentoff@wc.com

*Attorneys for Mars, Incorporated and Mars Petcare U.S., Inc.*

Case No. 07-21221-CIV-Altonaga

/s/ Alan G. Greer
Alan G. Greer
Florida Bar Number 123294
**RICHMAN GREER, P.A.**
201 S. Biscayne Blvd., Suite 1000
Miami, FL 33131
Telephone: 305-373-4000
Fax: 305-373-4099
E-Mail: agreer@richmangreer.com


D. Jeffrey Ireland
Brian D. Wright
Laura A. Sanom
**FARUKI IRELAND & COX  P.L.L.**
10 North Ludlow Street
500 Courthouse Plaza, S.W.
Dayton, OH 45402
Telephone: 937-227-3710
Fax: 937-227-3717
E-Mail: djireland@ficlaw.com
bwright@ficlaw.com
lsanom@ficlaw.com

*Attorneys for The Procter & Gamble*
*Company and The Iams Co.*

Case No. 07-21221-CIV-Altonaga

/s/ Benjamine Reid
Benjamine Reid
Florida Bar Number 183522
Ana Craig
Florida Bar Number 091847
**CARLTON FIELDS, P.A.**
100 SE 2nd Street, Suite 4000
Miami, FL 33131-9101
Telephone: 305-530-0050
Fax: 305-530-0055
E-Mail: breid@carltonfields.com
ovieira@caroltonfields.com

James D. Arden
John J. Kuster
Kara L. McCall
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, NY 10019-6018
Telephone: 212-839-5300
Fax: 212-839-5889
E-Mail: jarden@sidley.com
jkuster@sidley.com
kmccall@sidley.com

*Attorneys for Colgate-Palmolive Company
and Hill's Pet Nutrition, Inc.*

Case No. 07-21221-CIV-Altonaga

/s/ Sherril M. Colombo
Sherril M. Colombo
Florida Bar Number 948799
**COZEN O'CONNOR**
200 S. Biscayne Blvd., Suite 4410
Miami, FL 33131
Telephone: 305-704-5940
Fax: 305-704-5955
E-Mail: scolombo@cozen.com

Richard Fama
John J. McDonough
**COZEN O'CONNOR**
45 Broadway
New York, NY 10006
Telephone: 212-509-9400
Fax: 212-509-9492
E-Mail: jmcdonough@cozen.com
rfama@cozen.com

*Attorneys for Del Monte Foods, Co.*

\\\MI - 059726/000032 - 115450 v2

Case No. 07-21221-CIV-Altonaga

/s/ Lonnie L. Simpson
/s/ S. Douglas Knox
Lonnie L. Simpson
Florida Bar Number 821871
S. Douglas Knox
Florida Bar Number 849871
**DLA PIPER LLP**
101 E. Kennedy Blvd., Suite 2000
Tampa, FL 33602
Telephone:  813-229-2111
Fax: 813-229-1447
E-Mail: lonnie.simpson@dlapiper.com
douglas.knox@dlapiper.com

Amy W. Schulman
Alexander Shaknes
**DLA PIPER LLP**
1251 Avenue of the Americas
New York, NY 10020-1104
Telephone: 212-335-4829
E-Mail: amy.schulman@dlapiper.com
alex.shaknes@dlapiper.com

William C. Martin
**DLA PIPER LLP**
203 N. LaSalle Street, Suite 1900
Chicago, IL 60601
Telephone:  312-368-4027
Fax: 312-236-7516
E-Mail: william.martin@dlapiper.com

*Attorneys for Menu Foods, Inc. and Menu
Foods Income Fund*

Case No. 07-21221-CIV-Altonaga

/s/ Hugh J. Turner, Jr.
Hugh J. Turner, Jr.
Florida Bar Number 203033
**AKERMAN SENTERFITT**
350 E. Las Olas Blvd., Suite 1600
Fort Lauderdale, FL 33301-0006
Telephone: 954-759-8930
Fax: 954-847-5365
E-Mail: hugh.turner@akerman.com

*Attorney for Publix Super Markets, Inc.*
*and H.E. Butt Grocery Company*

/s/ John Brian Thomas Murray, Jr.
John B. T. Murray, Jr.
Florida Bar Number 962759
Barbara Bolton Litten
Florida Bar Number 91642
**SQUIRE SANDERS & DEMPSEY LLP**
1900 Phillips Point West
777 S Flagler Drive, Suite 1900
West Palm Beach, FL 33401-6198
Telephone: 561-650-7200
Fax: 561-655-1509
E-Mail: jbmurray@ssd.com

*Attorneys for PETCO Animal Supplies Stores,*
*Inc., PetSmart Inc., Wal-Mart Stores, Inc.,*
*Target Corporation and Meijer, Inc.*

Case No. 07-21221-CIV-Altonaga

/s/ Robin Lea Hanger
Robin Lea Hanger
Florida Bar Number 177172
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
200 S. Biscayne Boulevard, 40th Floor
Miami, FL 33131-2398
Telephone: 305-577-7040
Fax: 305-577-7001
E-Mail: rlhanger@ssd.com

*Attorneys for PETCO Animal Supplies Stores, Inc.*

/s/ Rolando Andres Diaz
/s/ Maria Kayanan
/s/ Cassidy Yen Dang
Rolando Andres Diaz
Florida Bar Number 963150
Maria Kayanan
Florida Bar Number 305601
Cassidy Yen Dang
Florida Bar Number 16482
**KUBICKI DRAPER**
25 W Flagler Street, Penthouse
Miami, FL 33130-1780
Telephone: 305-982-1212
Fax: 305-374-7846
E-Mail: rd@kubickidraper.com
mek@kubickidraper.com
cyd@kubickidraper.com

*Attorneys for Pet Supermarket, Inc.*

Case No. 07-21221-CIV-Altonaga

/s/ Ralph G. Patino
/s/ Dominick V. Tamarazzo
/s/ Carlos B. Salup
Ralph G. Patino
Florida Bar Number 768881
Dominick V. Tamarazzo
Florida Bar Number 92835
Carlos B. Salup
Florida Bar Number 26952
**PATINO & ASSOCIATES, P.A.**
225 Alcazar Avenue
Coral Gables, Florida 33134
Telephone:  305-443-6163
Fax:  305-443-5635
E-Mail:  rpatino@patinolaw.com
dtamarazzo@patinolaw.com
csalup@patinolaw.com

*Attorneys for Pet Supplies "Plus" and Pet Supplies Plus/USA, Inc.*

\\\MI - 059726/000032 - 115450 v2

Case No. 07-21221-CIV-Altonaga

/s/ Craig Kalil
Craig P. Kalil
Florida Bar Number 607282
Joshua D. Poyer
Florida Bar Number 653349
**ABALLI, MILNE, KALIL & ESCAGEDO, P.A.**
2250 Sun Trust International Center
One Southeast Third Avenue
Miami, Florida 33131
Telephone: 305-373-6600
Fax: 305-373-7929
E-Mail: ckalil@aballi.com
jpoyer@aballi.com


W. Randolph Teslik
Andrew Dober
**AKIN GUMP STRAUSS HAUER & FELD**
1333 New Hampshire Avenue, NW
Washington, D.C. 20036
Telephone: 202-887-4000
Fax: 202-887-4288
E-Mail: rteslik@akingump.com
adober@akingump.com

*Attorneys for New Albertson's, Inc. and Albertson's LLC*

\\\MI - 059726/000032 - 115450 v2

Case No. 07-21221-CIV-Altonaga

/s/ C. Richard Fulmer, Jr.
C. Richard Fulmer, Jr.
Florida Bar Number 0370037
**FULMER LeROY ALBEE BAUMANN &
GLASS, PLC**
2866 East Oakland Park Boulevard
Fort Lauderdale, Florida  33306
Telephone:  954-707-4430
Fax:  954-707-4431
E-Mail:  rfulmer@Fulmer.LeRoy.com


James K. Reuss
**LANE ALTON & HORST, LLC**
Two Miranova Place
Suite 500
Columbus, Ohio  43215
Telephone:  (614) 233-4719
E-Mail:  jreuss@lanealton.com


*Attorneys for The Kroger Co. of Ohio*

\\\MI - 059726/000032 - 115450 v2

Case No. 07-21221-CIV-Altonaga

/s/ Jeffrey S. York.

Jeffrey S. York
Florida Bar Number 987069
Sara F. Holladay-Tobias
Florida Bar Number 26225
**McGUIRE WOODS LLP**
50 N. Laura Street, Suite 3300
Jacksonville, FL 32202
Telephone: (904) 798-2680
Facsimile: (904) 360-6330
E-mail: jyork@mcguirewoods.com
E-Mail: sfhollad@mcguirewoods.com


Kristen E. Caverly
**HENDERSON & CAVERLY LLP**
P.O. Box 9144 (all U.S. Mail)
16236 San Dieguito Road, Suite 4-13
Rancho Santa Fe, California 92067
Telephone:  (858) 756-6342
Fax:  (858) 756-4732
E-Mail:  kcaverly@hcesq.com


*Attorneys for Defendant Natura Pet Products, Inc.*

Case No. 07-21221-CIV-Altonaga

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 14, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the counsel so indicated on the attached Service List.

By: /s/ Adriana Riviere-Badell

## CERTIFICATE OF SERVICE

**RENEE BLASZKOWSKI, ET AL., VS. MARS, INCORPORATED, ET AL.**
**Case No. 07-21221-CIV-ALTONAGA/TURNOFF**

## SERVICE LIST

Catherine J. MacIvor
E-mail:     cmacivor@mflegal.com
Jeffrey Eric Foreman
E-mail:   jforeman@mflegal.com
Jeffrey Bradford Maltzman
E-mail:   jmaltzman@mflegal.com
Darren W. Friedman
E-mail:   dfriedman@mflegal.com
Bjorg Eikeland
E-mail:  beikeland@mflegal.com
**MALTZMAN FOREMAN PA**
One Biscayne Tower
2 South Biscayne Boulevard,  Suite 2300
Miami, FL 33131-1803
Telephone: (305) 358-6555
Facsimile:  (305) 374-9077

*Attorneys for Plaintiffs*

Rolando Andres Diaz
E-Mail:     rd@kubickdraper.com
Cassidy Yen Dang
E-mail:     cyd@kubickidraper.com
Maria Kayanan
E-mail:  mek@kubickidraper.com
**KUBICKI DRAPER**
25 W. Flagler Street
Penthouse
Miami, FL 33130-1712
Telephone: (305) 982-6708
Facsimile:  (305) 374-7846

*Attorneys for Defendant Pet Supermarket, Inc.*

John B.T. Murray, Jr.
E-mail:     jbmurray@ssd.com
Barbara Bolton Litten
E-mail:     blitten@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, Florida 33401-6198
Telephone: (561) 650-7200
Facsimile:  (561) 655-1509

*Attorneys for Defendants PETCO Animal
Supplies Stores, Inc., PetSmart, Inc., Wal-Mart
Stores, Inc., Target Corporation and Meijer,
Inc.*

Alexander Shaknes
E-mail:  Alex.Shaknes@dlapiper.com
Amy W. Schulman
E-mail:  amy.schulman@dlapiper.com
Lonnie L. Simpson
E-mail:  Lonnie.simpson@dlapiper.com
S. Douglas Knox
E-mail:  Douglas.knox@dlapiper.com
**DLA PIPER LLP**
1251 Avenue of the Americas
New York, New York 10020

*Attorneys for Defendants Menu Foods, Inc.
and Menu Foods Income Fund*

## CERTIFICATE OF SERVICE

**RENEE BLASZKOWSKI, ET AL., VS. MARS, INCORPORATED, ET AL.**
**Case No. 07-21221-CIV-ALTONAGA/TURNOFF**

### SERVICE LIST

William C. Martin
**DLA PIPER LLP**
203 North LaSalle Street
Suite 1900
Chicago, Illinois  60601-1293
E-mail:  William.Martin@dlapiper.com

*Attorneys for Defendants Menu Foods, Inc.*
*and Menu Foods Income Fund*

Gary L. Justice
E-mail:  gjustice@gibsondunn.com
Gail E. Lees
E-mail:  glees@gibsondunn.com
William Edward Wegner
E-mail:  wwegner@gibsondunn.com
**GIBSON DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, California  90071
Telephone:  (213) 229-7000

*Attorneys for Defendant Nutro Products, Inc.*

Omar Ortega
**DORTA AND ORTEGA, P.A.**
Douglas Entrance
800 S. Douglas Road, Suite 149
Coral Gables, Florida 33134
Telephone: (305) 461-5454
Facsimile: (305) 461-5226
E-mail: oortega@dortaandortega.com

*Attorneys for Defendant Mars, Incorporated*
*and Mars Petcare U.S.*

Hugh J. Turner, Jr.
**AKERMAN SENTERFITT**
350 E. Las Olas Boulevard
Suite 1600
Fort Lauderdale, FL 33301-2229
Telephone:  (954) 463-2700
Facsimile:  (954) 463-2224
E-mail:      hugh.turner@akerman.com

*Attorneys for Defendants Publix Super*
*Markets, Inc and H.E. Butt Grocery Co.*

Marty Steinberg
E-mail:  msteinberg@hunton.com
Adriana Riviere-Badell
E-mail:  ariviere-badell@hunton.com
**HUNTON & WILLIAMS, LLP**
Mellon Financial Center
1111 Brickell Avenue, Suite 2500
Miami, FL 33131
Telephone:  (305) 810-2500
Facsimile:  (305  810-2460

*Attorneys for Defendant Nutro Products, Inc.*

Dane H. Butswinkas
E-mail:  dbutswinkas@wc.com
Philip A. Sechler
E-mail:  psechler@wc.com
Thomas G. Hentoff
E-mail:  thentoff@wc.om
Patrick J. Houlihan
E-mail:  phoulihan@wc.com
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C.  200005

*Attorneys for Defendants Mars, Incorporated*
*and Mars Petcare U.S.*

## CERTIFICATE OF SERVICE

**RENEE BLASZKOWSKI, ET AL., VS. MARS, INCORPORATED, ET AL.**
**Case No. 07-21221-CIV-ALTONAGA/TURNOFF**

## SERVICE LIST

Benjamine Reid
E-mail: breid@carltonfields.com
Olga M. Vieira
E-mail: ovieira@carltonfields.com
**CARLTON FIELDS, P.A.**
100 S.E. Second Street, Suite 4000
Bank of America Tower at International Place
Miami, Florida 33131-9101
Telephone: (305) 530-0050
Facsimile: (305) 530-0055

*Attorneys for Defendants Colgate-Palmolive*
*Company and Hill's Pet Nutrition, Inc.*

Kara L. McCall
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
E-mail: kmccall@Sidley.com

*Attorneys for Defendants Colgate-Palmolive*
*Company and Hill's Pet Nutrition, Inc.*

Sherril M. Colombo
**COZEN O'CONNOR**
Wachovia Center, Suite 4410
200 South Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 704-5945
Facsimile: (305) 704-5955
E-mail: scolombo@cozen.com

*Attorneys for Defendant Del Monte Foods, Co.*

John J. Kuster
E-mail: jkuster@sidley.com
James D. Arden
E-mail: jarden@sidley.com
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

*Attorneys for Defendants Colgate-Palmolive*
*Company and Hill's Pet Nutrition, Inc.*

Carol A. Licko
**HOGAN & HARTSON L.L.P.**
Mellon Financial Center
1111 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 459-6500
Facsimile: (305) 459-6550
E-mail: calicko@hhlaw.com

*Attorneys for Defendants Nestlé USA, Inc. and*
*Nestlé Purina Petcare Co.*

Richard Fama
E-mail: rfama@cozen.com
John J. McDonough
E-mail: jmcdonough@cozen.com
**COZEN O'CONNOR**
45 Broadway
New York, New York 10006
Telephone: (212) 509-9400
Facsimile: (212) 509-9492

*Attorneys for Defendant Del Monte Foods*

## CERTIFICATE OF SERVICE

**RENEE BLASZKOWSKI, ET AL., VS. MARS, INCORPORATED, ET AL.**
**Case No. 07-21221-CIV-ALTONAGA/TURNOFF**

### SERVICE LIST

Robert C. Troyer
**HOGAN & HARTSON L.L.P.**
1200 17th Street
One Tabor Center, suite 1500
Denver, Colorado  80202
Telephone:  (303) 899-7300
Facsimile:  (303) 899-7333
E-mail:  rctroyer@hhlaw.com

*Attorneys for Defendants Nestlé USA, Inc. and
Nestlé Purina Petcare Co.*

James K. Reuss
**LANE ALTON & HORST, LLC**
Two Miranova Place
Suite 500
Columbus, Ohio  43215
Telephone:  (614) 233-4719
E-mail:  JReuss@lanealton.com

*Attorneys for Defendant The Kroger Co. of
Ohio*

D. Jeffrey Ireland
E-mail:  djireland@ficlaw.com
Brian D. Wright
E-mail:  Bwright@ficlaw.com
Laura A. Sanom
E-mail:  lsanom@ficlaw.com
**FARUKI IRELAND & COX P.L.L.**
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, Ohio  45402

*Attorneys for Defendant Procter & Gamble
Co. and The Iams Co.*

Craig A. Hoover
E-mail:  cahoover@hhlaw.com
Miranda L. Berge
E-mail:  mlberge@hhlaw.com
**HOGAN & HARTSON L.L.P.**
555 13TH Street, NW
Washington, D.C.  20004
Telephone:  (202) 637-5600
Facsimile:  (202) 637-5910

*Attorneys for Defendants Nestlé USA, Inc. and
Nestlé Purina Petcare Co.*

Alan G. Greer
**RICHMAN GREER, P.A.**
Miami Center – Suite 1000
201 South Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 373-4000
Facsimile: (305) 373-4099
E-mail: agreer@richmangreer.com

*Attorneys for Defendants Procter & Gamble
Co. and The Iams Co.*

Robin L. Hanger
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
200 S. Biscayne Boulevard
40th Floor
Miami, Florida  33131-2398
Telephone:  (305) 577-7040
Facsimile:  (305) 577-7001
E-mail:  rlhanger@ssd.com

*Attorneys for Defendants PETCO Animal
Supplies Stores, Inc.*

4

## CERTIFICATE OF SERVICE

**RENEE BLASZKOWSKI, ET AL., VS. MARS, INCORPORATED, ET AL.**
**Case No. 07-21221-CIV-ALTONAGA/TURNOFF**

### SERVICE LIST

Ralph G. Patino
E-mail:  rpatino@patinolaw.com
Dominick V. Tamarazzo
E-mail:  dtamarazzo@patinolaw.com
Carlos B. Salup
E-mail:  csalup@patinolaw.com
**PATINO & ASSOCIATES, P.A.**
225 Alcazar Avenue
Coral Gables, Florida  33134
Telephone:  (305) 443-6163
Facsimile:  (305) 443-5635

*Attorneys for Defendants Pet Supplies "Plus"*
*and Pet Supplies Plus/USA, Inc.*

Craig P. Kalil
E-mail:  ckalil@aballi.com
Joshua D. Poyer
E-mail:  jpoyer@abailli.com
**ABALLI, MILNE, KALIL & ESCAGEDO,**
**P.A.**
2250 Sun Trust International Center
One Southeast Third Avenue
Miami, Florida  33131
Telephone:  (305) 373-6600
Facsimile:  (305) 373-7929

*Attorneys for Defendants New Albertson's Inc.*
*and Albertson's LLC*

Mark Whitburn
E-mail:  mwhitburn@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
2100 McKinney Avenue
Suite 1100
Dallas, Texas 75201
Telephone:  (214) 698-3100

*Attorneys for Defendant Nutro Products, Inc.*

C. Richard Fulmer, Jr.
**FULMER, LeROY, ALBEE, BAUMANN &**
**GLASS, PLC**
2866 East Oakland Park Boulevard
Fort Lauderdale, Florida  33306
Telephone:  (954) 707-4430
Facsimile:  (954) 707-4431
E-mail:  rfulmer@Fulmer.LeRoy.com

*Attorneys for Defendant The Kroger Co. of*
*Ohio*

W. Randolph Teslik
E-mail:  rteslik@akingump.com
Andrew Dober
E-mail:  adober@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD**
**LLP**
1333 New Hampshire Avenue, NW
Washington, D.C.  20036
Telephone:  (202) 887-4000
Facsimile:  (202) 887-4288

*Attorneys for Defendants New Albertson's Inc.*
*and Albertson's LLC*

Jeffrey S. York
E-mail: jyork@mcguirewoods.com
Sara F. Holladay-Tobias
E-Mail: sfhollad@mcguirewoods.com
**McGUIRE WOODS LLP**
50 N. Laura Street, Suite 3300
Jacksonville, FL 32202
Telephone: (904) 798-2680
Facsimile: (904) 360-6330

*Attorneys for Defendant Natura Pet Products,*
*Inc.*

## CERTIFICATE OF SERVICE

**RENEE BLASZKOWSKI, ET AL., VS. MARS, INCORPORATED, ET AL.**
**Case No. 07-21221-CIV-ALTONAGA/TURNOFF**

## SERVICE LIST

Kristen E. Caverly
E-Mail:  kcaverly@hcesq.com
**HENDERSON & CAVERLY LLP**
P.O. Box 9144 (all U.S. Mail)
16236 San Dieguito Road, Suite 4-13
Rancho Santa Fe, California 92067
Telephone:  (858) 756-6342
Fax:  (858) 756-4732

*Attorneys for Defendant Natura Pet Products,*
*Inc*