UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION


CASE NO. 07-21221 CIV ALTONAGA/Turnoff


RENEE BLASZKOWSKI, *et al.*,

Individually and on behalf of
others similarly situated,

Plaintiffs/Class Representatives,

vs.

MARS INC., *et al*,

Defendants



**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT**

Catherine J. MacIvor (FBN 932711)
cmacivor@mflegal.com
Bjorg Eikeland (FBN 037005)
beikeland@mflegal.com
MALTZMAN FOREMAN, PA
One Biscayne Tower
2 South Biscayne Boulevard -Suite 2300
Miami, Florida 33131
Tel: 305-358-6555 / Fax: 305-374-9077
*Attorneys for Plaintiffs/Class Representatives*

# TABLE OF CONTENTS

Introduction ........................................................................................................1

The Defendants' Motion to Dismiss should be denied ......................................2

I.   The Defendants are only minimally regulated ...........................................3

    A.   The Food and Drug Administration has nominal authority .................4

    B.   AAFCO has **_no_** regulatory authority ................................................6

II.  Neither preemption nor FDUTPA's safe harbor exemption operate
    to immunize the Defendants from liability for false, misleading
    deceptive and unfair advertising under FDUTPA ...........................................11

    A.   The Defendants deliberately distort the TAC in a specious attempt
        to create a plausible preemption and safe harbor argument...................13

    B.   The Plaintiffs' FDUTPA claim is **_not_** preempted under the
        Food and Drug Act....................................................................16

    C.   FDUTPA's safe harbor provision does not apply................................20

III. The Defendants' Motion ignores well-established
    Rule 12(b)(6) and 8(a) standards ....................................................22

    A.   _Bell Atlantic v. Twombly_ does not abrogate notice pleadings
        under the Federal Rules of Civil Procedure by requiring a
        heightened pleading standard.........................................................24

    B.   The Defendants argument that there is a heightened pleading
        standard for standing is also **_wrong_** ................................................26

IV.  The TAC meets the requirements of Rules 8(a), 9(b) and 12(b)(6)................27

    A.   The TAC pleads both reliance and causation when required ...............29

    B.   The TAC satisfies all of the requirements for standing .......................35

        1.   The TAC alleges the Plaintiffs Individual standing
            under Rule 8(a) ...........................................................43

        2.   The Plaintiffs have alleged class representative standing
            under Rule 8(a) ...........................................................53

C.      The Plaintiffs have stated claims for Negligent
        and Fraudulent Misrepresentation and under the
        Florida Deceptive Trade Practices Act. ...............................................59

        1.      A FDUTPA claim is __*not*__ subject to Rule 9(b)
                heightened pleading requirements ...........................................59

        2.      The Plaintiffs have stated a claim for FDUTPA
                under Rule 8(a) ...............................................................63

        3.      The Plaintiffs' Fraudulent and Negligent Misrepresentation
                claims meet Rule 9(b) requirements and state a claim ............................64

D.      The economic loss rule does __*not*__ bar the Plaintiffs'
        negligence claim ...............................................................70

E.      The Defendants have provided no legal basis to dismiss the
        Plaintiffs' strict liability claim ...............................................71

F.      The Defendants have failed to provide a valid legal basis
        to dismiss the Plaintiffs' injunctive relief claim ...................................78

G.      The Plaintiffs warranty claims are not "barred" ........................................83

        (a.)    There is no heightened pleading standard
                for warranty claims .......................................................84

        (b.)    The Plaintiffs have alleged privity as to the
                Defendant Manufacturers...................................................86

H.      Defendants have failed to present a valid legal basis
        to dismiss the Plaintiffs' unjust enrichment claim ...................................89

V.   Conclusion ...............................................................93

VI.  Certificate of Service ...............................................................94

## TABLE OF AUTHORITIES

*Adelphia Cable Partners, Inc. v. E. & A. Beepers Corp.,*
188 F.R.D. 662 (S.D. Fla. 1999) (J. King)...................................................................90

*Agron, Inc. v. Chen-Lu Lin,* No. CV-03-05872, 2004 U.S. Dist.
LEXIS 26605 (C.D. Cal. March 15, 2004) .............................................................28, 29

*Ala. v. U.S. Army Corps. Of Eng'rs.,* 424 F.3d 1117 (11th Cir. 2005)...........................78

*Aldon Indus., Inc. v. Don Myers & Assoc.,* Inc., 517 F.2d 188
(5th Cir. 1975).............................................................................................................31

*Alfaro v. E.F. Hutton,* 606 F. Supp. 1100 (E.D. Pa. 1985) .......................................67, 68

*Allison v. McGhan Med. Corp.,* 184 F.3d 1300 (11th Cir. 1999) ...................................30

*Allstate Ins. Co. v. James,* 779 F.2d 1536 (11th Cir. 1986) ..........................................90

*Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.,*
390 F. Supp. 2d 1170 (M.D. Fla. May 10, 2005)..........................................................90

*American Home Products Corp. v. FTC,* 695 F.2d 681 (3d Cir. 1982)...........................12

*Autohaus, Inc. v. Aguilar,* 794 S.W. 2d 459 (Tex. App. 1990)......................................13

*Baur v. Veneman,* 352 F.3d 625 (2d Cir. 2003) .............................................................36

*Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073(7th Cir. 1992).............................23

*Belaire at Boca, LLC v. Assoc. Ins. Agency, Inc.,* No. 06-80887,
2007 U.S. Dist. LEXIS 45415 (S.D. Fla. June 22, 2007) (J. Ryskamp).........................28

*Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955 (2007) .................................24, 25, 26, 27, 75, 91

*Berry v. Budget Rent a Car Sys.,* 497 F. Supp. 2d 1361 (S.D. Fla. 2007)(J. Cohn) .....................89

*Blackston v. Shook and Fletcher Insulation Co.,* 764 F.2d 1480
(11th Cir. 1985)............................................................................................................32

*Bonner v. Prichard,* 661 F.2d 1206 (11th Cir. 1981) .....................................................78

*Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.,* 2007 U.S. Dist.
LEXIS 85083 (M.D. Fla. November 16, 2007) .............................................................62

*Bowleg v. Bowe,* 502 So. 2d 71 (Fla. 3d DCA 1987) ....................................................90

*Bridgestone / Firestone Inc., Tires Prods. Liab. Litig.,*
288 F.3d 1012 (7th Cir. 2002) ....................................................................48, 49

*Briehl v. GMC,* 172 F.3d 623, 627 (8th Cir. 1999)......................................................48

*Bristol-Meyers Co.,* 102 FTC 21, 319 (1983), *aff'd,* 738 F.2d 554 (2d Cir. 1984),
cert. denied, 469 U.S. 1189 (1985) ..........................................................................12

*Bromley v Michigan Education Association-NEA*,
178 FRD 148 (E.D. Mich. 1998) ..............................................................................56

*Brown v. Kelly,* 244 FRD 222 (S.D.N.Y. 2007) .........................................................54

*Bruni v. FMCO, LLC,* 2007 U.S. Dist. LEXIS 18641
(M.D. Fla. March 16, 2007)......................................................................................44

*Brunwasser v. T.W.A., Inc.,* 541 F. Supp. 1338 (W.D. Pa. 1982)................................53

*Cannon v. Metro Ford, Inc.,* 242 F. Supp. 2d 1322 (S.D. Fla. 2002)....................60, 61

*Cate v. Oldham,* 707 F.2d 1176 (11th Cir. 1983) .......................................................79

*Cedar Crest Funeral Home, Inc. v. Lashley,* 889 SW2d 325 (Tex. App. 1993) ...........56

*Christidis v. First Pennsylvania Mortg. Trust,* 717 F.2d 96 ........................................67

*Chrysler Corp. v. Miller*, 310 So.2d 356 (Fla. 3d DCA 1975) .....................................88

*Cippollone v. Liggett Group, Inc.,* 505 U.S. 504 (1992) .............................................19

*City of Marietta v. CSX Transp., Inc.,* 196 F.3d 1300 (11th Cir. 1999) .......................78

*Clark v. Boeing Co.,* 395 So. 2d 1226 (Fla. 3d DCA 1981) ...................................72, 75

*Cler v. Ill. Educ. Ass'n,* 423 F.3d 726 (7th Cir. 2005) .................................................23

*Cohens v. Virginia,* 19 U.S. 264 (1821)......................................................................26

*Collins v. Daimler Chrysler Corp.,* 894 So. 2d 988 (Fla. 5th DCA 2004) .........48, 49, 51

*Conley v. Gibson*, 355 U.S. 41 (1957) ...................................................................23, 25

*Cottman Transmission Systems, Inc. v. Dubinsky*, 95 F.R.D. 351 (
E.D. Pa. 1983)..........................................................................................................66

**CASE NO. 07-21221 CIV ALTONAGA/Turnoff**
MALTZMAN FOREMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077

*County of Oakland v. Detroit,* 866 F.2d 839 (6th Cir. 1989)..........................................52

*Court-Appointed Receiver v. Taubman,* 2007 U.S. Dist. LEXIS 21702
(S.D. Fla. March 27, 2007) (J. Marra) ..........................................................................90

*Danvers Motor Co. v. Ford Motor Co.,* 432 F.3d 286 (3d Cir. 2005)...........................50

*Davis v. Powertel, Inc.,* 776 So. 2d 971 (Fla. 1st DCA 2000)........................29, 48, 49, 51, 53, 62

*Delahunt v. Cytodyne Techs.,* 241 F. Supp. 2d 827 (S.D. Ohio 2003) ..........................52

*Delgado v. J.W. Courtesy Pontiac GMC Truck, Inc.*,
693 So. 2d 602 (Fla. 2d DCA 1997) ..............................................................................51

*Della Ratta v. Della Ratta,* 927 So. 2d 1055 (Fla. 4th DCA 2006) ...............................89

*Denny v. Carey,* 72 F.R.D. 574 (E.D. Pa. 1976)...........................................................68

*Dix v. Amer. Bankers Life Assur. Co.,* 415 N.W. 2d 415 (Mich. 1987) ........................33

*Dunn v. The Gleason Four, Inc.,* 2007 U.S. Dist. LEXIS 62140 (M.D. Fla. 2007) .....................43

*duPont v. Wyly*, 61 F.R.D. 615 (D.Del. 1973) ..........................................................66, 68

*Durham v. Bus. Mgmnt. Assoc.,* 847 F.2d 1505, 1511 (11th Cir. 1988)..................64, 65

*Erickson v. Pardus,* 127 S. Ct. 2197, 167 L.Ed. 2d 1081 (2007) ..................................69

*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998).................................55

*FEC v. Akins,* 524 U.S. 11 (1998).................................................................................36

*Fin. Sec. Assur. Inc. v. Stephens, Inc*., 500 F.3d 1276 (11th Cir. 2007) .......................23

*Fla. Central and Peninsular R.R. Co. v. Davis,* 45 Fla. 276 (Fla. 1903).......................70

*Fla. Power Corp. v. City of Winter Park.,* 887 So. 2d 1237 (Fla. 2004) .......................91

*Flamenbaum v. Orient Lines, Inc., et al.,* 2004 U.S. Dist. LEXIS 14718
(S.D. Fla. July 28, 2004).........................................................................................86, 87

*Florida East Coast Railway Co. v. City of West Palm Beach,*
110 F.Supp.2d 1367 (N.D. Fla. 2000)...........................................................................19

*Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132 (1963).........................19

*Focus on the Family v. Pinellas Suncoast Transit. Auth.,*
344 F.3d 1263 (11th Cir. 2003) ................................................................44

*Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati,* 715 So. 2d 311
(Fla. 4th DCA 1998) ....................................................................49, 53

*Friedlander v. Nims*, 755 F.2d 810 (11th Cir. 1985) ....................................64

*FTC v. Peoples Credit First, LLC*, 2005 U.S. Dist. LEXIS 38545
(M.D. Fla. 2005) ..........................................................................12

*FTC v. Think Achievement Corp.,* 144 F. Supp. 2d 993 (N.D. Ind. 2000) ...................12

*FTC v. Windward*, 1997 U.S. Dist LEXIS 17114 (N.D. Ga. September 30, 1997) ...............33

*FTV v. Colgate-Palmolive Co.,* 380 U.S. 374 (1965) ..............................12, 13

*Garcia v. Copenhaver,* 104 F.3d 1256 (11th Cir. 1997) ..............................26

*Garcia v. Santa Maria Resort, Inc.,* 2007 U.S. Dist LEXIS 86193
(S.D. Fla. November 15, 2007) ..............................................................60

*Gilchrist Timber Co. v. ITT Rayonier Inc.,* 472F.3d 1329 (11th Cir. 2006) ...............52

*Gold Coast Racing, Inc. v. Home Depot USA, Inc.,* No. 05-61931,
2006 U.S. Dist. LEXIS 96386 (S.D. Fla. February 6, 2006) (J. Altonaga) .....12, 29, 33, 62, 63, 64

*Gold X-Press Corp. v. Very Beary Venture I,* 2003 U.S. Dist. LEXIS
19747 *8-9 (S.D. Fla. 2003) ................................................................64

*Gonzalez v. Pepsico.* 489 F. Supp. 2d 1233 (D. Kan. 2007) ..............................49, 50

*Griffin v Dugger,* 823 F.2d 1472 (11th Cir. 1987) ..............................45

*Gritzke v. M.R.A. Holding, LLC,* 2002 U.S. Dist. LEXIS 28085
(N.D. Fla. March 14, 2002) ..............................................................51

*Harper v. Blockbuster Entm't Corp.,* 139 F.3d 1385 (11th Cir. 1998) .....................23

*Heffler v. Glaxo Welcome Inc.,* 1992 U.S. Dist LEXIS 3090
(E.D. Pa. March 10, 1992) ..............................................................58

*Henningsen v. Bloomfield Motors, Inc.,* 32 N.J. 358, 161 A.2d 69 (1960) ...................88

*Hernandez v. Coopervision, Inc.,* 661 So.2d 33 (Fla. 2d DCA 1995) .......................18

*Holt v. O'Brien Imports of Ft. Myers, inc.,* 862 So. 2d 87 (Fla. 2d DCA 2003) ..................51, 52

*Howell Petroleum Corp. v. Weaver*, 780 F.2d 1198 (5th Cir.1986) .............................65

*Hoyte v. Yum! Brands, Inc.,* 489 F.Supp. 2d 24 (D.D.C. 2007)....................................47

*Hyland v. Parker,* 163 Fed. Appx. 793 (11th Cir. 2006) .................................................27

*Ikonen v. Hartz Mountain Corp.,* 122 F.R.D. 258 (S.D. Cal. 1988)................................31

*In re: Application for Appointment of Indep. Counsel,*
766 F.2d 70 (2d Cir. 1985)..............................................................................................43

*In re Bextra and Celebrex Marketing Sales Practices and Product
Liability Litigation,* 2006 U.S. Dist. LEXIS 95500, 2006 WL 2374742
(N.D.Cal. 2006)..................................................................................................18, 20, 21

*In re Caesars Palace Securities Litigation*, 360 F. Supp. 366,
(S.D.N.Y. 1973) .........................................................................................................67, 68

*In re Catanella and E.F. Hutton & Co. Securities Litigation,*
583 F. Supp. 1388, 1398 (E.D. Pa. 1984) ......................................................................67

*In re Enron Corp. Secs., Derivative & ERISA Litig.,*
2004 U.S. Dist LEXIS 8158 (S.D. Tex. February 25, 2004) .........................................54

*In re Farm Raised Salmon Cases,* 2008 Cal. LEXIS 1413.............................................19

*In re Plywood Antitrust Litig.*, 655 F.2d 627 (5th Cir. Unit A Sept. 8, 1981) ...............23

*In re TJX Cos.,* Retail Sec. Breach Litig., 524 F.Supp. 23 83 (D. Mass. 2007) ............25

*In re Tri-State Crematory Litig.,* 215 F.R.D. 660 (N.D. Ga. 2003)...........................55, 56

*In re U.S. Oil & Gas Litig.,* 1988 U.S. Dist LEXIS 2217
(S.D. Fla. February 8, 1988)(J. Hoeveler) ................................................................66, 68

*Indus-Ri-Chem v. Par-Pak Co.*, 602 S.W. 2d 282 (Tex. App. 1980) .............................88

*Int'l Harvester Co.,* 104 FTC 949 (1984) ......................................................................12

*Jackson v. H.L. Bouton Co.,* 630 So. 2d 1173 (Fla. 1st DCA 1994) ..............................77

*Jacobs v. Osmose,* 2002 U.S. Dist. LEXIS 1926 (S. D. Fla. 2002).........................84, 85

*James v. Ashley Adams Antiques, Inc.,* No. 2:05-cv-515-FtM-29DNF,
2006 U.S. Dist. LEXIS 39690 (M.D. Fla. June 15, 2006 ..............................................29

*James v. Meow Media, Inc.,* 300 F.3d 683 (6th Cir. 2002).........................................81

*James D. Hinson Elec. Contr. Co. v. Bellsouth Telco., Inc.,*
2008 U.S. Dist. LEXIS 9464  (M.D. Fla. February 8, 2008)..................................92, 93

*Kennedy v. Dr. Byas,* 867 So. 2d 1195 (Fla.1st DCA 2004) .........................................70

*Kennedy v. Health Options, Inc.*, 329 F.Supp.2d 1314 (S.D. Fla. 2004)....................19

*Kirschner v. Cable/Tel Corp.*, 576 F.Supp. 234 (E.D.Pa. 1983) ..................................66

*Klay v. United Healthgroup, Inc.,* 376 F.3d 1092 (11th Cir. 2004)............................78

*Klein v. Council of Chem. Assocs.,* 587 F. Supp. 213 (E.D. Pa. 1984)........................33

*Kramer v. Piper Aircraft Corp.,* 520 So. 2d 37 (Fla. 1988).......................................83

*La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973)...........................55

*Latman v. Costa Cruise Lines,* 758 So. 2d 699 (Fla. 3d DCA 2000) ......................33, 63

*Lawrence v. Dunbar,* 919 F.2d 1525 (11th Cir. 1990) ................................................26

*Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination
Unit,* 507 U.S. 163 (1993)...........................................................................................75

*Leer v. Washington Educ. Assoc.,* 172 FRD 439 (W.D. Wash. 1997).........................56

*Leider v. Ralfe,* 387 F. Supp. 2d 283 (S.D.N.Y. 2005)................................................30

*Levine v. Knowles,* 197 So. 2d 329 (Fla. 3d DCA 1967)..............................................70

*Levine et al. v. American Bison,* 2006 U.S. Dist. LEXIS 63667 (N.D. Cal. 2006) ......36

*Lewis v. Casey*, 518 U.S. 343........................................................................................27

*Liberty Homes, Inc. v Epperson,* 582 So. 2d 449 (Ala. 1991).....................................88

*Liza Danielle, Inc. v. Jamko, Inc.,* 408 So. 2d 735 (Fla. 3d DCA 1982)......................90

*London v. Wal-Mart Stores, Inc.,* 340 F.3d 1246 (11th Cir. 2003) ............................46

*Losure v. Capital One Servs.,* No. 2:05-CV-502-Ftm-29SPC,
2006 U.S. Dist. LEXIS 3977 (M.D. Fla. Jan. 23, 2006)................................................29

*Louie's Oyster, Inc. v. Villagio Di Las Olas, Inc.,* 915 So. 2d 220
(Fla. 4th DCA 2005) ........................................................................................................75

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ......................................27, 36, 44

*Luyando v Bowen*, 124 FRD 5 (S D NY 1989)..............................................................56

*Mack v. Bristol-Myers Squibb Co.*, 673 So. 2d 100 (Fla. 1st DCA 1996)....................45

*Manheim v. Ford Motor Co.*, 201 So.2d 440 (Fla. 1967) ..............................................88

*Marshall v. Knight*, 445 F.3d 965 (7th Cir. 2006) ........................................................23

*Martin v. Brown,* 566 So. 2d 890 (Fla. 4th DCA 1990) ................................................52

*Mathews v. Kilroe,* 170 F. Supp. 416 (S.D.N.Y. 1959) ................................................28

*McCorvey v. Baxter Healthcare Corp.,* 298 F.3d 1253 (11th Cir. 2002) ......................72

*McDonald v. Household Int'l, Inc.*, 425 F.3d 424 (7th Cir. 2005).................................23

*Medalie v. F.S.C. Sec. Corp,* 87 F. Supp. 2d 1295
(Fla. S.D. Fla. 2000)(J. Gold) ........................................................................................65

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) (J. Jordan) .................................17, 19, 20

*Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507 (5th Cir. 1980),
*cert. denied,* 449 U.S. 953, 101 S. Ct. 358, 66 L. Ed. 2d 217 (1980)...........................26

*Merrit v. Libby, McNeill & Libby,* 510 F.Supp. 366 (S.D.N.Y. 1981) .........................66

*Monaco v Stone*, 187 FRD 50 (E.D.N.Y. 1999) ...........................................................56

*Montgomery v. Davol,* 2007 U.S. Dist LEXIS 53348
(N. D. Fla. July 24, 2007) ..............................................................................................87

*Moore v. Comfed Sav. Bank*, 908 F.2d 834 (11th Cir. 1990)...................................55, 59

*Moore v. Miami-Dade County,* 502  F.Supp. 2d 1224
(S.D. Fla. 2007)(J. Gold) ................................................................................................27

*Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884 (3d Cir.1977)....................26

*Mouly v. Art-A-Glow,* 2007 U.S. Dist LEXIS 39960
(S.D. Fla. June 1, 2007) (J. Ryskamp) .......................................................................71

*Murer v. Montana State Comp. Mut. Ins. Fund*, 257 Mont. 434,
849 P.2d 1036, 1039 (Mont. 1993) ..........................................................................55

*N.G.L. Travel Assoc. v. Celebrity Cruises, Inc.,* 764 So. 2d 672
(Fla. 3d DCA 2000) ..................................................................................................91

*Napier v. Osmose, Inc.,* 399 F. Supp. 2d 811 (S.D. Mich. 2005) ...........................74, 75

*Niresk Indus., Inc. v. FTC,* 278 F.2d 337 (7th Cir. 1960) .........................................13

*Novartis Corp.,* 5 Trade Reg. Rep. (CCH) ¶24,614 FTC Dkt. 9279 (May 27, 1999) ...................12

*Office of the Attorney Gen., Dept. Legal Affairs v. Wyndham Int'l, Inc.,*
869 So. 2d 592 (Fla. 1st DCA 2004) ........................................................................62

*Paisey v. Vitale,* 807 F.2d 889 (11th Cir. 1986) ......................................................79

*Palmer v. Board of Educ.,* 46 F.3d 682 (7th Cir. 1995) ...........................................29

*Payton v. Kane,* 308 F.3d 673 (7th Cir. 2002) ........................................................59

*Philadelphia v. Lead Ind. Ass'n, Inc.,* 994 F. 2d 112 (3d Cir 1993)...........................32

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.,* 842 So.2d 773 (Fla. 2003)...........................62

*Pope v. Clearwater,* 138 FRD 141 (M.D. Fla. 1991) .................................................54

*Prohias v. Pfizer, Inc.,* 490 F.Supp.2d 1228 (S.D. Fla. 2007) .................17, 18, 20, 21, 22, 46, 47

*Public Health Trust v. Lake Aircraft*, 992 F.2d 291 (11th Cir. 1993) .........................18

*Pulte Home Corp. v. Ply Gem Ind., Inc.,* 804 F. Supp. 1471 (M.D. Fla. 1992).....................32, 74

*Ragsdale v. Turnock*, 841 F.2d 1358 (7th Cir. 1988) ................................................59

*Rehurek v. Chrysler Credit Corp.*, 262 So.2d 452 (Fla. 2d DCA),
*cert. denied,* 267 So.2d 833 (Fla. 1972)...................................................................88

*Removatron Int'l Corp. v. FTC,* 884 F.2d 1489 (11th Cir.1989)..................................33

*Rink v. Cheminova, Inc.,* 400 F.3d 1286 (11th Cir. 2005) .........................................73

*Rivera v. Baby Trend, Inc.,* 914 So. 2d 1102 (Fla. 4th DCA 2005)..............................73

*Rivera v. Wyeth-Ayerst Labs.,* 283 F.3d 315 (5th Cir. 2002).........................................................46

*Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305 (11th Cir. 1998)...........................................22

*Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678 (11th Cir. 2001) ...................23, 71, 85

*Rollins, Inc. v. Helle*r, 454 So. 2d 580 (Fla. 3d DCA 1984).......................................................52

*Romano v. Motorola, Inc.,* 2007 U.S. Dist. LEXIS 86472
(S.D. Fla. November 26, 2007).................................................................................................62, 91

*S & B Invs., LLC v. Motiva Enters.,* LLC, 18 Fla. L. Weekly Fed. D 396
(S.D. Fla. 2004)...............................................................................................................................29

*Samuel Friedland Family Enterprises v. Amoroso,* 630 So. 2d 1067 (Fla. 1994).......................72

*San Diego County Gun Rights Comm. v. Reno,* 98 F.3d 1121 (9th Cir. 1996)............................50

*Sarkis v. Pafford Oil Co., Inc.*, 697 So. 2d 524 (Fla. 1st DCA 1997) .........................................51

*Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*,
742 F.2d 786, 791 (3d Cir. 1984)............................................................................................66, 69

*Sheppard v. Revlon, Inc.,* 267 So. 2d 662 (Fla. 3d DCA 1972)...................................................88

*Sieman v. S.S. Kresge Co.,* 566 F.2d 551 (5th Cir. 1978)............................................................77

*Siemens Energy & Automation, Inc. v. Medina,* 719 So. 2d 312
(Fla. 3d DCA 1998) ........................................................................................................................72

*Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238 (1984).................................................................19

*Silver v. Digges,* 2006 U.S. Dist. LEXIS 48449 (M. D. Fla. July 17, 2006).........................89, 91

*Simanonok v. Simanonok,* 787 F.2d 1517 (11th Cir.1986) ..........................................................26

*Simon v. Celebration Co.,* 883 So. 2d 826 (Fla. 5th DCA 2004) .................................................30

*Small v. Lorillard Tobacco Co.,* 252 A.D. 2d 1 (N.Y. App. Div. 1998) ......................................30

*Sprietsma v. Mercury Marine,* 537 U.S. 51 (2002) ..............................................................18, 19

*Stalley v. Catholic Health Initiatives,* 509 F.3d 517 (8th Cir. 2007) ............................................27

*State of Fla. v. Tenet Healthcare, Corp.,* 420 F.Supp. 2d 1288
(S.D. Fla. 2005)................................................................................17, 18, 22, 29, 62

*Steyr v. Daimler Puch v. A. & A. Bicycle Mart, Inc.,* 453 So. 2d 1149
(Fla. 4th DCA 1984) ...................................................................................61

*Stires v. Carnival Corp.,* 243 F. Supp. 2d 1313 (M.D. Fla. 2002).........................60, 61

*Stover v. Eagle Prods., Inc.*, 1996, U.S. Dist. LEXIS 4893
(D. Kan. March 19, 1996).................................................................................10

*T.W.M. v. Amer. Med. Sys. Inc.,* 886 F.Supp 842 (N.D. Fla. 1995)....................84, 87

*Teper v. Miller,* 82 F.3d 989 (11th Cir. 1996) ...............................................19

*The Metrahealth Ins. Co. et al. v. Anciote Psych. Hospital Ltd.,*
1997 U.S. Dist. LEXIS 18699 *7 (M.D. Fla. October 23, 1997) ..........................69

*Thomas v. Tramiel*, 105 F.R.D. 568 (E.D.Pa. 1985)......................................66, 68

*Thompson v. Board of Educ.*, 709 F.2d 1200.................................................56

*Thompson v. W. States Med. Ctr.,* 535 U.S. 357 (2002) ....................................83

*Tolliver v. Monaco Coach, Corp.,* 2006 U.S. Dist. LEXIS 40007
(N.D. Fla. June 16, 2006)..................................................................................87

*Tooltrend, Inc. v. CMT Utensli, SRL,* 198 F.3d 802 (11th Cir. 1999) ....................89

*Trew v. Volvo Cars of  N. Am., L.L.C.,* No. CIV-S-051379,
2006 U.S. Dist. LEXIS 4890, 2006 WL 306904 (E.D. Cal. Feb. 8, 2006)...................50

*Turner Greenberg Assocs. v. Pathman,* 885 So. 2d 1004 (Fla. 4th DCA 2004) ....................62-63

*Urling v. Helms Exterminators, Inc.,* 468 So.2d 451 (Fla. 1st DCA 1985)...................62

*Va. State Bd. Of Pharmacy v. Va. Citizens Consumer Council, Inc.,*
425 U.S. 748 (1976)..........................................................................................82

*Vt. Pure Holdings, Ltd. v. Nestle Waters N. Am., Inc.,*
2006 U.S. Dist. LEXIS 13683 (D.Mass. March 28, 2006)......................................11

*W.S. Badcock Corp. v. Myers,* 696 So.2d 776 (Fla. 1st DCA 1996) ............................62

*Wanza v. Aetna Health,* 352 F.Supp. 2d 1320 (S.D. Fla. 2005)(J. Jordan) ...................24

*Watson v. Lucerne Mach. & Equip., Inc.,* 347 So. 2d 459 (Fla. 2d DCA 1977) ...........................75

*Webb Press Svcs.v. New London Motors, Inc.,* 205 Conn. 479,
(Conn. 1987) ...................................................................................................................13

*Wein v. American Huts, Inc.*, 313 F. Supp. 2d 1356 (S.D. Fla. 2004) (J. Moore) ........................22

*Weiss v Winner's Circle of Chicago, Inc, 1995 US Dist LEXIS 18713*
(N.D. Ill. 1995)................................................................................................................56

*Weld v. Glaxo Wellcome Inc.,* 746 N.E. 2d 522 (Mass. 2001) ......................................................58

*Williams v. Purdue Pharma Co.,* 297 F.Supp. 2d 171 (D.D.C. 2003)....................................30, 47

*Witezak v Pfizer, Inc.*, 377 F.Supp.2d 726 (D. Minn. 2005)..........................................................11

*Wooden v Bd. of Regents of the Univ. Sys.*, 247 F.3d 1269 (11th Cir. 2001) ...............................35

*Yucyco, Ltd. v. Rep. of Slovn.,* 984 F.Supp. 209 (S.D.N.Y. 1997).........................................28, 29

*Zapka v. Coca-Cola Co.*, 2001 U.S. Dist. LEXIS 20155
(N.D. Ill. Dec. 3, 2001) ...................................................................................................17

**Federal Rules of Civil Procedure**
Rule 8(a)..........................................23, 24, 25, 27, 30, 34, 43, 53, 63, 64, 72, 82, 84, 85, 86, 87, 88

Rule 9(b) ...............................................................29, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 75, 86

Rule 12(b)(1) ..................................................................................................................................3

Rule 12(b)(2) ..................................................................................................................................1

Rule 12(b)(6) ............................................................................................................................3, 22

**Statutes**
15 U.S.C. § 45(a)(1)......................................................................................................................12

21 U.S.C. §321(f) (2006) ................................................................................................................4

21 U.S.C. §321(s) (2006).................................................................................................................5

21 U.S.C. §§341-342 .......................................................................................................................4

21 U.S.C. §393(b)(2)(A)..................................................................................................................4

21 U.S.C. §2101-10 ..................................................................................................9

21 CFR 501.1-501.18 ...............................................................................................4

Fla. Stat. 501.203(8)................................................................................................45

Fla. Stat. § 501.204(2)..............................................................................................12

**THE DEFENDANTS' MOTION TO DISMISS[1]
OBFUSCATES THE LAW AND MISCHARACTERIZES THE
PLAINTIFFS' THIRD AMENDED COMPLAINT**

The Plaintiffs in this case are non-litigious individuals from various backgrounds who brought this case out of principle – to simply seek to have the Defendants do the right thing by being honest with pet owners about the food and treats that they manufacture, market and sell. They are _not_ requesting this Court to regulate an industry,[2] as the Defendants would have the Court believe; rather, they simply seek to hold the Defendants accountable for false, unfair and deceptive advertising intended to lead unsuspecting Plaintiffs to purchase food and treats which are materially different from the Defendants' advertising and for the illness and deaths of their cats and dogs.

These are not just "animals" to the Plaintiffs, they are family.  The Defendants know that, capitalize on and intentionally profit from that bond.  The Defendants continuously conduct market research concerning the strong emotional ties between cat and dog lovers and their pets so that their almost inconceivable profit margin can grow to even more staggering amounts every year while continually cutting costs at the expense of the cats and dogs they profess to care about so much. The Defendants deceive the Plaintiffs into thinking that they are buying a pet food that they are not, which has damaged the Plaintiffs because they did not get what the Defendants marketed and what they thought they were purchasing. Unlike a person who thought they purchased a car that was marketed as a Mercedes, but was really a Hyundai, the deception at issue involves the Plaintiffs' completely vulnerable living, breathing and much loved

---

[1] Per the Court's ruling at the January 25, 2008 hearing, once jurisdictional discovery has concluded, the Plaintiff will respond to Defendant Kroger's Rule 12(b)(2) motion to dismiss for a purported lack of personal jurisdiction. Moreover, per the Court's July 5, 2007 ruling, this response exceeds the page limitation of the Local Rules.

[2] The Defendants appear to suggest that because they are subject to _some_ regulation, that they are somehow immunized from liability for their wrongdoing.  [DE 336 pp. 58-65].  However, as will be demonstrated below, there is no blanket immunity to shield the Defendants from being held accountable for their unlawful conduct.

companions.  Their cats and dogs are completely dependent on the Plaintiffs to provide food to

not just to sustain life, but so that their companions will be healthy, happy, thrive and live long

lives.  To these Plaintiffs, the Defendants' deception is unforgiveable not only because they did

not get what they thought they purchased, but also because the Plaintiffs' cats and dogs are not as

healthy as they should be, have become ill or died from the Defendants' pet food.   The Plaintiffs

feel anguish and guilt about this because had they known the real contents of the Defendant

Manufacturers' pet food, they would never have paid for and fed this inedible, toxic garbage to

their highly vulnerable cats and dogs.   They feel guilty because they were responsible for

providing their companions with food so that they would thrive, not food that bears no relation to

what is marketed and which has made them ill or worse.  In this case, the Plaintiffs simply want

the Defendants to right their wrong by offering a food to all consumers who love their cats and

dogs that contains human-grade quality food, which is exactly what they market, but do not sell.[3]

One would think that is not a lot to ask, but apparently asking these Defendants to do the right

thing is a lot to ask indeed.

## THE DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED

In their 126 page Consolidated Motion to Dismiss ("Motion"), the Defendants continue

to urge this Court to err by repeatedly obfuscating both the law and the facts.  They have raised

any and all possible, and implausible, arguments in an attempt to present a motion more suited to

summary judgment or class certification than a motion to dismiss.  The Defendants seek to have

the Plaintiffs' Third Amended Complaint ("TAC") dismissed with prejudice[4] based upon an

---

[3] The Defendants argue that the Federal Drug Administration ("FDA") "recognizes that '[a]nimal feeds provide a practical outlet for plant and animal byproducts not suitable for human consumption,'" yet deceptively market the pet food as  having the same ingredients "you'd eat yourself." [DE 333 p. 61, 336 ¶86 Ex. 10].

[4] In *Friedlander v. Nims*, 755 F.2d 810, 813 (11th Cir. 1985), the Eleventh Circuit stated that "We are reluctant to approve rule 12(b)(6) dismissals in light of the well-established rule that 'a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his

alleged lack of standing under Rule 12(b)(1) and Article III of the Constitution, the First Amendment, an alleged lack of personal jurisdiction as to Defendant Kroger as well as a perceived "lack of vitality" as to the substantive counts under Rule 12(b)(6). [DE 336 p. 18]. Moreover, the Defendants continue to urge this Court to err by arguing that the TAC should be dismissed with prejudice under a "heightened" pleading standard that does not exist (except as provided by Rule 9). *Id.*  As will be demonstrated below, the Defendants' arguments are wrong, and some of them are so clearly devoid of merit that Rule 11 sanctions against the Defendants are appropriate, dismissal certainly is not.

## I.    The Defendants are only minimally regulated

The Defendants make the absurd leap that because the Plaintiffs have brought suit for the harm caused by the Defendants' unlawful marketing practices and the illness and deaths of their cats and dogs that the Plaintiffs are requesting this Court to impose a "super-regulatory" regime over a handful of Defendants. [DE 336 pp. 21-22]. That is flatly *wrong* and a complete mischaracterization of the TAC.  While the Defendants broadly claim that state and federal administrative agencies take an "active" role in regulating and "*approving* much[5] of the complained of activity," that is *not* the case.  Despite the bold pronouncement that these alleged state and federal regulations shield the Defendants from liability from their unlawful, false and deceptive marketing, they provide very little support for that conclusion of law and, in fact, the statutes and cases that they cite undermine it. To the extent that these regulations exist, they are *minimal* at both the state and federal level and while the Defendants' assert that both federal and state administrative agencies take an *"active role"* in regulating the pet food industry, these

---

claims which would entitle him to relief.'…Our strict adherence to this rule has led us to hold that a district court should give a plaintiff an opportunity to amend his complaint rather than dismiss it when it appears that a more carefully drafted complaint might state a claim upon which relief could be granted." *Id.*

[5] The qualifier "much," in and of itself, underscores the Defendants' concession that the "complained of activity" is *not* regulated. [DE 336 p. 25].

administrative agencies are not as actively involved as the Defendants contend. [DE 336 pp. 24-25].

**A.    The Food and Drug Administration has nominal authority**

The Food and Drug Administration ("FDA") has nominal authority over pet food under the Food, Drug and Cosmetic Act ("Food and Drug Act") because it has essentially delegated its role to the American Association of Feed Control Officials ("AAFCO"), a non-profit corporation comprised of a few federal and some state officials and lobbyist advisors from the pet food industry.[6]  In fact, the FDA has "partnered" with AAFCO because the FDA has acknowledged that it has "limited resources that are "focused on human food safety issues."[7] The Food and Drug Act defines food as "articles issued for food or drink for man or other animals…" and requires that all foods be free of adulteration and misbranding. 21 U.S.C. §321(f) (2006). The Act further requires that foods for animals be "safe, wholesome and sanitary. 21 U.S.C. §393(b)(2)(A).  While this would seem that pet foods are tested and approved prior to being sold to consumers, they are not.  The Food and Drug Act does _not_ require pre-approval of new foods, but only that foods be free of adulteration or misbranding.[8] Misbranded food includes those with a false or misleading label,[9] but there is no requirement for pre-approval of marketing. *See* 21 U.S.C. §§341-342.; 21 CFR 501.1-501.18. The Food and Drug Act also provides that a food may be deemed adulterated if it contains "any part or product of a diseased animal." 21 U.S.C. §342(a)(5)(2006). While the Defendants argue that they are heavily regulated as an industry, they only breezily refer to statutes indicating what the FDA *should* do and fail to demonstrate

---

[6] *See* Sharon Benz, *FDA's Regulation of Pet Food,* http://www.fda.gov/cvm/petfoodflier.html, p. 3 ("Benz").
[7] *Id.* at p. 3.
[8] *See* Center for Veterinary Medicine, Animal Food (Feed) Product Regulation: Premarket Approval, http://www.fda.gov/cvm/prodregulation.htm#preapproval. ("The [Food and Drug Act] does not require pre-market approval of 'food.'").
[9] Other than a broad statement that misbranding includes false or misleading information, the regulations focus on size, type, placement measurements, etc. *See* 21 U.S.C. §§331-42; 21 C.F.R. 501.1-501.18.

that the FDA has done anything at all, much less that it has approved their false and deceptive advertising or put its imprimatur on the harmful and toxic substances found in their pet food.[10] [DE 336 p. 25].

Food additives require pre-market approval and are defined as any substance not generally recognized as safe by qualified scientists if it either directly or indirectly becomes a component or otherwise affects the characteristics of any food. 21 U.S.C. §321(s) (2006).[11] For additives that are not generally recognized as safe, the pre-market approval requires the submission of a food additive petition to the FDA. However, contrary to the Food and Drug Act, the FDA's Center for Veterinary Medicine ("CVM") has used "regulatory discretion" and has not required _any_ food additive petitions for substances that do not raise "safety concerns."[12] The Spring 2007 melamine debacle, which resulted in the largest recall of pet food in United States history, is a clear example of the disastrous result of "regulatory discretion" and complete lack of "safety concerns." Thousands of consumers suffered the loss of much loved companion cats and dogs, spent thousands in veterinarian bills without any real answers from either the Defendants or the FDA as to how "complete and balanced" food could be so toxic and lethal. It was the massive public outcry and the horrifying admissions at Congressional hearings regarding a clear lack of any real safety concerns in the pet food industry that lead to the amendment of the Food and Drug Act referenced in the Defendant's Motion.[13] [DE 336 p. 27].

---

[10] _Id._ ("Although FDA has the responsibility for regulating the use of animal feed products, **_the ultimate responsibility for the production of safe and effective animal feed products lies with the manufacturers and distributors of the products_**.").

[11] Benz.

[12] Benz.

[13] The Defendants suggest, tongue in cheek, that the Plaintiffs have administrative options in lieu of their access to courts. They imply that the Plaintiffs can air their concerns at a "public meeting," but the meeting to which the Defendants refer has been relegated to e-mail comments on the FDA message board which has never accepted comments from the public. Moreover, when the Plaintiffs have inquired about attending, they have been told that the "public" meeting will be held _behind closed doors_ and will involve FDA employees and industry insiders only.

The FDA's Center for Veterinary Medicine has abdicated its regulatory powers and primarily monitors "health claims," which are statements that a product will treat, prevent or reduce the risk of a disease.[14]  Any food label bearing a claim that "consumption of the product will treat, prevent or otherwise affect a disease or condition, or to affect the structure or function of the body in a manner distinct from what would normally be described as its "nutritive value" is considered to offer the product as a drug.[15]  While the Nutrition Labeling and Education Act requires the FDA to promulgate regulations specifically permitting certain health claims on *human foods*, by incorporating the Nutrition Labeling and Education Act philosophy, the FDA's Center for Veterinary Medicine attempts to show "meaningful information on health foods."[16]  The FDA curiously does not, however, require proof of any sort of testing that a pet food treats or prevents a disease or a condition that it purports to treat or prevent.[17]  Contrary to the Defendant's representations, the CVM thus has very little do with pet food regulation, except as to certain health claims, because the FDA approves no pet food and has limited "enforcement resources that are focused on human food safety issues." [18]

**B.    AAFCO has _no_ Regulatory Authority**

Members of the FDA's CVM do work with AAFCO, but it is not the regulatory body that the Defendants' Motion suggests that it is.[19]  AAFCO is a private organization made up of members of state and federal officers of agricultural departments and the CVM with "input" from pet food industry trade groups and lobbyists such as the Pet Food Institute, American Pet Products Manufacturer's Association, the Cattleman's Beef Association and the National

---

[14] *See* Center for Veterinary Medicine, *Structure and Responsibilities,* http://www.fda.gov/cvm/structxt.html.
[15] *See* David A. Dzanis, *Interpreting Pet Food Labels* and *Interpreting Pet Food Labels – Special Use Foods,* http://www.fda.gov/cvm/labelint.html. See also Benz.
[16] Benz.
[17] *See* FDA Guideline No. 55.
[18] Benz.
[19] The Defendants are correct that the Plaintiffs' lead counsel is an alternate advisor to the AAFCO Pet Food Committee and is, accordingly, very familiar with what AAFCO does and does not do.

Renderer's Association, among others. AAFCO's stated purpose is "to…develop just and equitable standards, definitions and policies to be followed in enforcing [] laws, to promote uniformity in [] laws, regulations and enforcement policies, _and to cooperate with members of the industry producing such products in order to promote the effectiveness and usefulness of such products._" _See_ 2007 Official Publication of [AAFCO], By-Laws at p. 71 ("2007 AAFCO"). AAFCO has _no independent enforcement authority_, does not perform mandatory analytical testing on pet food nor does it issue any certificate that the pet food is "balanced and complete." AAFCO's Official Publication for 2007 specifically states under the heading, "AAFCO Philosophy Regarding Feed Regulation":  "The most important aspect of feed regulation is to provide protection for the consumer as well as the regulated industry."[20] _Id._ at p. 75.  AAFCO's only real "requirement" is that the manufacturer comply with an extensive list of ingredient _definitions_, which means that a manufacturer could use melamine as the main source of protein for pet food as long as it meets one of the "approved" definitions.

AAFCO has also established "Nutrient Profiles" and _voluntary_ feeding trial methods to guide the Defendant Manufacturers regarding the minimum nutritional adequacy of pet food to _sustain life_ over a short period of time. _Id._ at pp. 147-159.  However, the "Nutrient Profile" system does _not_ address the issue of ingredient _quality_ whatsoever, but the Defendants' marketing does. Moreover, _if_ a manufacturer wants to represent that its food is "nutritionally complete," it _only_ needs to: (a) establish that the product's formula meets the nutritional requirements of the nutrient profile; _**or**_ (b) establish that the product is nutritionally _similar_ to the "lead" product in the same product family.  _Id._ If the manufacturer opts for the "lead" product family option, a simple standard chemical analysis can be performed by the manufacturer to show that the product meets AAFCO nutrient profiles. While AAFCO "nutrient profiles" were

---

[20] The publication fails to clarify why the pet food industry needs protection.

previously based on the National Research Council Committee on Animal Nutrition, "[v]alues for specific nutrient requirements were added or modified…supported by [among other things] unpublished data." *Id* at 131.  For example, AAFCO reduced recommended protein from 22% to 18% for adult maintenance in dogs. *Id.* at 133. The pet food industry's influence is not difficult to discern in changes in regulations such as these because animal protein is expensive. According to a veterinarian with the CVM, the formulation testing method also fails to account for the "availability of nutrients," which means that while the product contains protein, AAFCO nutrient profiles do not ensure that the protein is digestible or available by a cat or dog.[21]

As for the AAFCO feeding trials, AAFCO recommended testing consists of a protocol for a *six month* feeding trial to be conducted by the manufacturers to determine *whether a food can sustain life* in a target test population (dogs or cats in all life stages, or specific stages of growth of maintenance). *Id.* at p. 148. Eight cats or dogs are fed nothing but the food in question for *six months*, and as long as six finish the trial by not losing more than 15% of their initial body weight and a passing a few blood tests, the food may be deemed "complete and balanced." *Id.* Thus, even if a dog or cat loses *15%* of its initial body weight during the trial in just *six months*, the feeding trial is nevertheless considered a "success." *Id*. This method would at least help a manufacturer demonstrate that a dog or cat can sustain life by eating the food over the short term, which the "nutrient profile" system does not. Many nutritional deficiencies or overdoses would not appear within six months. Contrary to the Defendants' advertising claims, the pet food's fitness for maintaining *longevity*, *reproductive*, or *multi-generational health* would not be demonstrated.  Growth food testing for kitten and puppy food is similar to maintenance testing except growth food testing lasts only 10 weeks despite the fact that the Defendants' recommend growth pet food *for the first year of the kitten or puppies' life*. *Id.* at 151. If a food has met either

---

[21] Douglas Kneuven DVM, *The Five Supplements Every Dog Needs,* Clean Run Magazine, Vol 11 # 12.

CASE NO. 07-21221 CIV ALTONAGA/Turnoff
MALTZMAN FOREMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077

AAFCO requirement, it may state on the label that the food is "complete and balanced." That imprimatur simply means that 6 out of 8 dogs or cats did not die from eating the tested pet food over a six month period of time.  The AAFCO seal may also mean that the nutrient profile is met, which means, for example, that anything that tests as "nitrogen" will be accepted as protein and that includes melamine which was the subject of the largest pet food recall in history in 2007 and resulted in the reported deaths of thousands of cats and dogs.

Consistent with the Defendants' failure to provide any actual support for their argument that the pet food industry is heavily regulated, they cite to 21 U.S.C. §2101-10 and assert that the FDA *will* establish additional ingredient and processing standards. [DE 336 p 10]. What the Defendants _omit_ is that this amendment to the Food and Drug Act was made in September 2007, after enormous public pressure from the massive 2007 Menu Foods recall and the Congressional hearings that uncovered multiple pet food safety and quality control concerns.  If any changes are made, they will allegedly take place within the next two years.  In addition, even if those changes are effective to establish some additional ingredient or processing standards, _they have no bearing on claims for conduct that occurred prior to the enactment of such amendments_, if they ever take place.  Further, §2101, in which Congress sets forth its findings on which this amendment is based, specifically states that _the death and illness of companion animals has been_ **_caused_** _by contaminated and unsafe food, which was the subject of the public outcry and Congressional hearings that prompted passage of the law in the first place_.  The pet food industry is minimally regulated.[22]

---

[22] The Defendants claim that the TAC is somehow "inconsistent" regarding the fact that pentobarbital has been repeatedly documented in cat and dog food, which many believe to be from rendering cats and dogs into it. [DE 333 ¶¶99-102 Ex. 30-33, 336 p. 24 fn 4].  _The TAC is **not** inconsistent_. The TAC specifically alleges that the FDA found pentobarbital in numerous brands of pet food and thereafter conducted an analysis based on only 31 samples. *Id.* _Without explaining their methodology_, the FDA subsequently issued a report based upon this small sampling, concluding  that no trace of cats or dogs could be found and the pentobarbital was likely rendered cattle or horses (even though cattle and horses are not often euthanized with pentobarbital). *Id.* A published scientific journal,

The Defendants fail to provide any case law supporting their contention that the abovementioned statutes and regulations provide such adequate protection to the Plaintiff consumers and their cats and dogs that their claims should be dismissed. Defendants cite to one case, *Stover v. Eagle Prods., Inc.*, 1996, U.S. Dist. LEXIS 4893 (D. Kan. March 19, 1996), and claim that the court granted *summary judgment* for the defendant pet food manufacturer because the conduct complained of by the plaintiff was "within the norms set by AAFCO." [DE 336 p. 27]. This is a complete misstatement of the court's holding in this case. The court granted *summary judgment without prejudice* in favor of the defendant because the plaintiff failed to prove *causation*. *Id.* at 36. The court mentioned in *dicta* that the defendant's conduct was in compliance with AAFCO's proposed regulations, but that was *not* the basis for the holding. *Id.* at 15. Further, this case actually underscores the Defendants' failure to establish that the existing *minimal* scheme of regulations governing the pet food industry does not preclude the Plaintiffs' claims because the mere existence of some regulations did not preclude the plaintiffs' in *Stover* from pursuing a remedy.

As an alternate advisor to AAFCO, it is important to note that the undersigned and the Plaintiffs are *not* criticizing the FDA or AAFCO, nor are Plaintiffs asking this court to super-regulate, reform or otherwise enhance the existing minimal regulatory scheme, as the Defendants suggest; rather, the Plaintiffs recognize that the government provides only minimal standards for the manufacturing, and labeling of pet food which in no way precludes them from redress through the courts for injuries caused by Defendants' marketing the illness and injury their pet

---

however, ruled out horses and cattle because that same small sampling of 31 foods did *not* test positive for bovine or equine-derived proteins. *Id.* The FDA never found the source. In any event, the point is that whatever the source, pentobarbital in pet food means that *dead animals are in pet food in violation of the Food and Drug Act*, which means that the Defendants *regularly violate the law* and had the Plaintiffs known that they were feeding adulterated pet food laced with pentobarbital to their cats and dogs, they would never have purchased it for their precious cats and dogs. *Id.*

food has caused. As the FDA noted, it is the Defendants who are ultimately responsible for ensuring that their product is safe and that it provides what they advertise.

**II.     Neither preemption nor FDUTPA's safe harbor exemption operate to immunize the Defendants from liability for false, misleading, deceptive and unfair advertising under FDUTPA**

The Defendants attempt to urge this Court to rule that the Plaintiffs' claims are somehow preempted by the FDA's nominal regulation and AAFCO, a non-regulatory private corporation with no independent enforcement authority, or that they fall under FDUTPA's safe harbor provisions, fail to carry the day.  The Defendants completely mischaracterize the relief sought by the Plaintiffs in the TAC as challenging ingredients and terms such as "quality," "premium" or "wholesome," "healthy" or "balanced." [DE 336 p. 57].  Such a blatant distortion of the relief sought by the Plaintiffs further demonstrates their failure to carry their burden to demonstrate the application of preemption and the safe harbor provision.  Moreover, the mere regulation of a term does not preclude false advertising claims relating to that term. *See Vt. Pure Holdings, Ltd. v. Nestle Waters N. Am., Inc.,* 2006 U.S. Dist. LEXIS 13683 \*\*3-4 (D.Mass. March 28, 2006)(No consumer fraud exception for compliance with Food and Drug Act's labeling requirements because FDA did not authorize deceptive marketing practices); *Witezak v Pfizer, Inc.*, 377 F.Supp.2d 726, 732 (D. Minn. 2005)(Federal labeling laws are <u>minimum</u> standards and do not shield manufacturers from state law liability because the primary purpose of the Food and Drug Act and the FDA's regulatory scheme is to <u>protect the public</u> and "<u>state consumer laws reinforce and enhance this objective</u>").

In order to understand just how disingenuous this argument is, it is necessary to understand the manner in which deceptive marketing is analyzed under the FDUTPA. As the Court is well aware, "in interpreting the FDUTPA, Florida courts must give 'due consideration

and great weight' to Federal Trade Commission and federal court interpretations of section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1)" ("FTC Act"). *See Gold Coast Racing, Inc. v. Home Depot USA, Inc.,* 2006 U.S. Dist. LEXIS 96386 **4-6 (S.D. Fla. February 6, 2006) (J. Altonaga), citing Fla. Stat. § 501.204(2). Actual consumer deception is unnecessary, and all that need be shown is that the practice has the capacity or tendency to deceive. *See FTV v. Colgate-Palmolive Co.,* 380 U.S. 374, 391-392 (1965); *American Home Products Corp. v. FTC,* 695 F.2d 681, 687 (3d Cir. 1982); *FTC v. Think Achievement Corp.,* 144 F. Supp. 2d 993, 1010 (N.D. Ind. 2000); *FTC v. Peoples Credit First, LLC*, No. 8:03-cv-2353-T-TBM 2005 U.S. Dist. LEXIS 38545 *23 (M.D. Fla. 2005). In determining whether marketing has a capacity or tendency to deceive, the appropriate inquiry is whether the intended audience is deceived when it is behaving reasonably for that audience under the circumstances. *See Novartis Corp.,* 5 Trade Reg. Rep. (CCH) ¶24,614 FTC Dkt. 9279 (May 27, 1999), *aff'd* (D.C. Cir. 2000); *Int'l Harvester Co.,* 104 FTC 949 (1984).  Moreover, the appropriate inquiry is directed at the overall, net impression of a representation to see how it should  reasonably be interpreted, including if there are implied claims and determining from extrinsic evidence how pet food consumers in fact perceive a representation. *See Think Achievement* at 1010; *Bristol-Meyers Co.,* 102 FTC 21,319, 206, 6 n. 61  (1983), *aff'd,* 738 F.2d 554 (2d Cir. 1984), cert. denied, 469 U.S. 1189 (1985).

In the present case, the TAC alleges that consumers are particularly vulnerable about cat and dog food and because they have no knowledge of pet food or cat and dog nutrition, and as a result they are especially vulnerable to the Defendants' marketing practices.[23]  In order to fully

---

[23] The impact of pet food marketing claims on pet owners is significantly different from the impact of a marketing claims as to human food. For example, consumers are exposed to numerous news stories on television, in the newspaper, and in various editorials across the nation about human food and nutrition. Comparing that to the amount of news coverage allocated to cat and dog nutrition, or for example, the benefit of hairball control in cat food, there

understand how misleading the marketing is to the consumer, the Plaintiffs included terms such as "quality," "premium" or "wholesome," "healthy" or "balanced" along with a list of specific deceptive practices and specific examples to give the overall, net impression of a representation and how it would reasonably be interpreted by the consumer. [DE 333 ¶¶ 67-7s, 74, 75-91, 92-93]. In the FDUTPA context, the Defendants fail to demonstrate that the deceptive practices enumerated in the TAC are "puffing," since proving that a claim is mere puffing requires the Defendants to show that the "exaggerated" claim is harmless, fanciful or a spoof, calculated to amuse with *no* capacity to deceive. *See Colgate-Palmolive,* 380 U.S. at 386-392; *Niresk Indus., Inc. v. FTC,* 278 F.2d 337, 340 (7th Cir. 1960). In fact, courts have held that puffing may only be found if the marketing is not likely to "dupe the most gullible consumer." *See Webb Press Svcs.v. New London Motors, Inc.,* 205 Conn. 479, 483 (Conn. 1987); *Autohaus, Inc. v. Aguilar*, 794 S.W. 2d 459, 462-464 (Tex. App. 1990). Here, that is not the case, *particularly where the marketing must be viewed as a whole*.

A.    **The Defendants deliberately distort the TAC in a specious attempt to create a plausible preemption and safe harbor argument**

The Defendants actually argue that the thrust of the Plaintiffs' FDUTPA complaint is that the Defendant Manufacturers and Co-Packers should not use ingredients such as "chicken by products." [DE 336 p. 60]. That is false as best demonstrated by the TAC itself. The Defendants also argue that the FDA has determined that chicken by-products are safe and do not need pre-market approval. [DE 336 p. 60]. Actually, the Food and Drug Act does not require pre-market approval for *any* food, but that is not the point. The Plaintiffs are not alleging that the marketing

---

is *none*. Thus, while humans are relatively informed and exposed to different views regarding the accuracy of marketing regarding human food from the numerous scientific studies discussed in the daily media, such studies, even if reported, are uncommon with pet food. The absence of information necessary to allow informed decisions leaves pet food consumers extremely vulnerable to the Defendants' marketing practices.

is deceptive simply because chicken byproducts are in the pet food, their FDUTPA claim instead focuses on the misleading way in which the Defendants lead consumers to believe that their pet food contains human-grade ingredients.  Below is an example from the TAC:

**Natura Brand Pet Food**

86.    Natura's marketing also makes the same misleading statements and guarantees as the other Defendants.  For example, when marketing its commercial cat food, Natura represents that it is the "Healthiest Pet Food in the World." Natura further states:

No pet food company in the world makes natural pet foods like Natura. We use only ingredients you'd eat yourself: quality meats, whole grains, fresh fruits and vegetables, and complete vitamin and mineral supplements. For us humans, a diet of natural, wholesome food is essential to living a long healthy life. We believe this fundamental principle is true for your pet, too.

Exhibit "11." However, the pet food still contains carbohydrate fillers notwithstanding the marketing representations, including barley, rice and potatoes, and the same and/or similar [necks, heads, feet, undeveloped eggs, intestines, viscera free from fecal content , foreign matter and feathers only to the extent that the inclusion of such fecal matter is unavoidable] that the other Defendant Manufacturers use and which the Plaintiffs would hardly consider eating themselves given that [these byproducts] are deemed "inedible" for human consumption. Natura's website indicates that the chicken meal it uses is exclusive of feathers, heads, feet or entrails, but testing has revealed the presence of feathers in Natura's pet food contrary to Natura's representations. Moreover, testing of Natura products has also shown that Natura pet food contains glycoalkaloid toxins from the processing of green potatoes that is at such a high level that it would be toxic to humans, much less small animals. *See* example at Exhibit "25." The ingredients and known and unknown contaminants and additives hardly comport with Natura's claims of the "healthiest Pet Food in the World" and/or food that the Plaintiffs would eat.

[DE 333 ¶86 Ex. 11]. As can be seen from this particular paragraph, the deceptive practices are not premised simply upon the inclusion of chicken by products in the pet food; rather, it is the statement that Natura uses "only ingredients you'd eat yourself" to describe its pet food, which contains these byproducts that are *not* fit for *human consumption*. Id. **_It is Natura's misrepresentation, and not AAFCO's definition, that is deceptive_**. Moreover, the New York State Department of Agriculture tested Natura's pet food and found glycoalkaloids at such a high level that the food was considered to be toxic to humans, much less cats or dogs. [DE 333 ¶86

Ex. 24]. As for paragraph 82 of the TAC, this is another specific example of Hill's Pet

Nutrition's marketing that is likewise deceptive because:

- A negative comparison to other brands regarding higher levels of vitamins C and E, which is misleading because this does not make the product better than competitors;

- Claims of health benefits from vitamin C and from additional vitamin E are misleading since they are unsupported by competent scientific research;

- It is also misleading because adulterated material is used in the pet food, including, as alleged, downed and rotting animals with mad cow disease, among all of the other awful things in this food;

- It is misleading because the consumer is lead to believe that this food is healthy for their cat when studies have shown that there is a link between the onset of diabetes and feline lower urinary tract disease and dry cat food and

- The reference on the packaging to "fiber" leads the consumer to believe the food is human grade, when it is not. While AAFCO has created a definition for chicken by products and powdered cellulose, the consumer is lead to believe that this "health" food has human-grade food and fiber and not rancid grease and other material deemed unfit for humans such as chicken by products.

[DE 333 ¶82]. The deceptive practices that the Plaintiffs are contesting here *do not conflict* with

either the FDA or AAFCO's definitions because the Plaintiffs are not alleging that the inclusion

of chicken by products itself is a deceptive practice; rather, *it is that the consumer is lead to*

*believe that the pet food is a human-grade food and it is not*. *Id*.  Misleading negative

comparisons to other brands, deceptive claims of health benefits from vitamins that are

unsubstantiated and health claims about dry food that has been linked to illness and death in cats

is both deceptive and misleading.

**B.    The Plaintiff's FDUTPA claim is _not_ preempted under the Food and Drug Act**

The Defendants argue that they are insulated from liability under FDUTPA because the marketing alleged in the complaint is preempted as consistent with the Food and Drug Act or it is barred by FDUTPA's safe harbor exemption because Florida has adopted AAFCO's definitions. [DE 336 pp. 58-64].  The specific allegations in the TAC that the Defendants argue should be preempted or subject to the safe harbor exception fail to support that conclusion because they have not provided any evidence that the FDA or any Florida state official _approved_ of the marketing. [DE 336 pp. 24-28, 58-64].  Moreover, they _concede_ that there is no FDA pre-approval for pet food as well. [DE 336 pp. 59-60].  There is no basis to dismiss the TAC based upon preemption or a safe harbor exclusion:

- The FDA's recognition that minerals, vitamins sources, colorings and flavorings are generally  recognized as safe does not mean that the FDA has approved of advertising touting the long term benefits of, for example, extra-high doses of Vitamins E and C which is scientifically unsubstantiated [DE 336 p. 60]

- The FDA did not approve an unsubstantiaited negative statement regarding competitive brands that the addition of extra vitamins E and C in the pet food make it better than the competitors [DE 336 p. 60]

- The TAC's references to AAFCO definitions to demonstrate the pet food was marketed as human-grade, but was actually comprised of byproducts that are deemed unfit for human consumption  are consistent with AAFCO definitions and does not challenge them [DE 336 pp. 59-60]

- The TAC's reference to animal digest in the TAC is to demonstrate that non-human grade products were being marketed as human-grade and is consistent with the Food and Drug Act and AAFCO definitions and does not challenge them [DE 336 p. 60]

- The FDA's acknowledgement that animal feed provides a practical outlet for plant an animal byproducts does not mean that the FDA approved of the Defendants marketing that either states or pictorially portrays the pet food as human-grade when it is not [DE 336 p. 61]

- The FDA's label identification requirements of product identification, net quantity statement, name and place of business and listing of ingredients by weight has noting to do with deceptive marketing practices and representations about the quality or content of the food [DE 336 p. 62]

- The Defendants' reference to voluntary feeding trials if they want to tout their pet food as "complete and balanced," as discussed above, simply means that 6 out of 8 dogs did not lose more then 15% of their initial body weight and passed some blood tests over a period of 6 months, it does not guarantee long-term nutritional adequacy over the life of the cat or dog and neither the FDA nor AAFCO approve of marketing of pet food touting the long-term effects of the pet food [DE 336 p. 62]

- While AAFCO's model regulations dictate words such as "dinner" or "entrée", advertising that conceals that it is not sufficient to sustain life except in fine print on a website is misleading to those who never see the fine print on the website or who do not call the manufacturer [DE 336 p. 62]

The Defendants have not presented a scintilla of evidence to this Court that the FDA, AAFCO or the State of Florida have either explicitly or implicitly approved of the deceptive and unfair practices set forth in the TAC.

The Defendants request this court to find that because they *may* be complying with the *minimum* standards of the State of Florida (AAFCO definitions) and the FDA, they are completely immune from liability for deceptive trade practices. However, the Supreme Court has held that State law duties that are **_consistent_** with federal requirements _may not be preempted_. *Prohias v. Pfizer, Inc.,* 490 F.Supp.2d 1228, 1233 (S.D. Fla. 2007) (J. Jordan) *citing Medtronic v. Lohr,,* 518 U.S. 470, 495 (1996). *See also State of Fla. v. Tenet Healthcare Corp.,* 420 F.Supp. 2d 1288, 1297 (S.D. Fla. 2005)(J. Seitz). *See also Zapka v Coca-Cola Co.,* 2001 U.S. Dist. LEXIS 20155 14-16 (N.D. Ill. December 3, 2001) (No exemption under Illinois

consumer protection statute for violation of act because food and Drug Act did not specifically authorize deceptive marketing practices). It is only when a state common-law claim directly conflicts with a federal regulation, or makes it impossible to completely comply with a federal regulation, that preemption will occur. *Sprietsma v. Mercury Marine*, 537 U.S. 51, 65 (2002). There is no actual conflict here. The Plaintiffs seek to hold the Defendants liable for deceptive trade practices and failing to actually put out a pet food that is not dangerous or harmful to the cats and dogs for which it was intended. *See Public Health Trust v. Lake Aircraft*, 992 F.2d 291, 295 n. 5 (11th Cir. 1993). As discussed above, neither the FDA nor AAFCO pre-approve the final product that the Defendants put on the shelves. Therefore, the Defendants have an independent duty to ensure the quality and safety of the product they are selling.

In this lawsuit, the Plaintiffs' FDUTPA claim parallel's the minimal level of regulation that exists. Under the FDA or the State of Florida's adoption of AAFCO standards, there is no conflict between the Plaintiffs' FDUTPA claim and the FDA's or the State of Florida's jurisdiction. *See Prohias,* 490 F.Supp.2d at 1233; *Tenet Healthcare Corp.,* 420 F.Supp.2d at 1297; *In re Bextra and Celebrex Marketing Sales Practices and Product Liability Litigation,* No. M:056-1699CRB2006 U.S. Dist. LEXIS 95500, 2006 WL 2374742, *10-12 (N.D.Cal. 2006)(deferring to FDA's preemption statement regarding required warnings, but holding that claims of false or misleading advertising are *not* preempted, and denying Pfizer's motion to dismiss on the basis of conflict preemption because "there is nothing in the record from which the Court could conclude that the FDA has actually reviewed all of the submitted advertisements, let alone conclude that the FDA's review means that it has definitively determined that the advertisement was not misleading"). *See also See Hernandez v. Coopervision, Inc.*, 661 So.2d 33, 34-35 (Fla. 2d DCA 1995)(the party arguing preemption has the burden to show that

Congress has "clearly and unmistakably manifested its intent to supersede state law"). It is a well-established principle that the states are independent sovereigns; therefore, Congress will not "cavalierly preempt state-law causes of action" in areas that have historically been regulated by the states through their police power. *Medtronic,* 518 U.S. at 485 (1996); *see also Cippollone v. Liggett Group, Inc.,* 505 U.S. 504, 516 (1992); *Teper v. Miller,* 82 F.3d 989, 993 (11th Cir. 1996); *Florida East Coast Railway Co. v. City of West Palm Beach,* 110 F.Supp.2d 1367, 1374 (N.D. Fla. 2000).

The laws at issue here, such as those regulating the preparation and marketing of food products, and the prevention of deceptive trade practices, have traditionally been left to the states. *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 144 (1963); *In re Farm Raised Salmon Cases,* No. 5147171 2008 Cal. LEXIS 1413*16. When this is the case, there is a *strong* presumption against preemption, unless Congress expresses a clear and manifest intention otherwise, which is not present here. *Medtronic,* 518 U.S. at 485; *Kennedy v. Health Options, Inc.*, 329 F.Supp.2d 1314, 1318 (S.D. Fla. 2004); *See also Florida East Coast Railway Co.*, 110 F.Supp.2d at 1374. There is no unequivocal intention of Congress in favor of precluding the Plaintiffs' claims in this case, and therefore, there is no valid legal reason for dismissal.

The Supreme Court has reasoned that, without an express statement, it is unreasonable to infer that Congress would preclude the courts from providing *any* form of recourse to the injured Plaintiff consumers. *Medtronic*, 518 U.S. at 487; *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 251 (1984)(Court states that it is "difficult to believe that Congress would, without comment, remove all means of judicial recourse from those injured by illegal conduct"); *Sprietsma v. Mercury Marine*, 537 U.S. 51, 64 (2002)(common-law claims necessarily perform an integral remedial role in compensating victims). In addition, the authority Congress granted the FDA to

enforce the <u>*minimum*</u> standards discussed above is of little use to the injured plaintiffs who seek compensatory damages. 21 U.S.C. §393(b)(2)(A); *See also Medtronic*, 518 U.S. at 487. Therefore, if the Food and Drug Act were to preempt state law causes of action, the Plaintiffs would have no opportunity to seek remedies for their injuries and would be denied access to court.  As the Supreme Court has asserted, an inference in favor of preemption in this case would have "the perverse effect of granting complete immunity from …liability to an entire industry…" *Id.*  The Plaintiffs simply seek to advance their claims to hold the Defendants accountable for the harm that they have caused.

## C.    FDUTPA's safe harbor provision does not apply

The Defendants assert that Plaintiffs' FDUTPA claim is precluded under §501.212, which exempts "any act or practice required or specifically permitted by federal or state law." §501.212(1), Fla. Stat. [DE 336 p. 63].  However, Florida courts have interpreted the safe harbor exemption very narrowly. The courts require actual approval of the specific conduct from the regulatory body in order to grant the Defendants an exemption for their conduct.  *Prohias*, 490 F.Supp.2d at1232-1234 (Judge Jordan found no exemption under §501.212 for defendants' advertising where they included statements on their label that were not specifically reviewed or approved by the FDA), *citing In re Bextra and Celebrex Marketing Sales Practices and Products Liability Litigation*, No. M:05-1699CRB 2006 WL 2374742, *10-12 (N.D.Cal.2006)(court denied preemption argument because "there is nothing in the record from which the Court could conclude that the FDA actually reviewed all of the submitted advertisements, let alone conclude that the FDA's review means that it has definitively determined that the advertisement was not misleading").  As discussed above, neither the FDA nor AAFCO pre-approve the Defendants' packaging that they use to advertise their pet food or any other marketing material so the

Defendants cannot argue that their deceptive marketing materials are somehow authorized as not misleading to consumers.

The Defendants argue that the ingredients they list and other language they use on their labels are "approved by the FDA" through their adoption of AAFCO's model regulations. The Defendants refer to an article posted on the FDA website pertaining to the interpretation of pet food labels, but fail to point to a specific AAFCO model regulation that actually grants such approval. §501.212 requires authorization to come from "federal or state law," not from an article posted on the internet. Further, the Defendants have failed to show any specific FDA or AAFCO approval of such language specifically approving the marketing as *unlikely to mislead a consumer of pet food*. *See Prohias,* 490 F.Supp.2d at 1232-1234, *citing Bextra*, 2006 WL 2374742 at *10-12. For these reasons, the Defendants cannot contend that the misrepresentations and omissions that the Plaintiffs allege are "specifically permitted" by federal or state law.

The Defendants also argue that they are in compliance with Food and Drug Act and AAFCO's "labeling practices." [DE 336 p. 63]. However, the Plaintiffs' FDUTPA claim focuses instead on the false and deceptive marketing of the Defendants' pet food and goes well beyond the minimal regulation of labeling practices to the actual marketing of the pet food to the public. Simply because Defendants *may* have complied with labeling standards does not mean they are exempt from liability for deceptive and unscrupulous marketing practices, which have not been specifically approved of or authorized by the FDA or AAFCO. *See Prohias*, 490 F.Supp.2d at 1232-1234; *Zapka v. Coca-Cola Co.*, No. 99C82382001 U.S. Dist. LEXIS 20155*12-14 (N.D. Ill. Dec. 3, 2001)(compliance with FDA's labeling and notification requirements does not exempt defendant from liability for deceptive marketing practices where the Food and Drug Act does not "specifically authorize" the marketing practices of which Plaintiff complains). As Judge

Jordan ruled in *Prohas*, the appropriate inquiry for the court on a motion to dismiss is whether the Defendants, as the moving party, have demonstrated that a specific federal or state law *affirmatively authorized it to engage in the deceptive practices alleged in the TAC*. *Id.*

The Defendants' primary argument in support of an exemption of their deceptive practices is that the Plaintiffs have not alleged that they violated any of the applicable FDA or AAFCO regulations. [DE 336 p. 63]. Florida courts have specifically *rejected* this sort of attempt to be exonerated from liability for deceptive trade practices because deceptive marketing *does "not need to violate a specific rule or regulation in order to be considered deceptive.*" *Prohias*, 490 F.Supp.2d at 1233 *citing Legal Affairs v. Tenet Healthcare Corp.*, 420 F.Supp.2d 1288, 1310 (S.D. Fla. 2005). Contrary to the Defendants' assertions, the moving party must demonstrate that a specific federal or state law *affirmatively authorized* it to engage in the conduct alleged in the TAC, not whether the Plaintiffs have demonstrated that the Defendants' conduct violates a specific rule or regulation. *Id.* The Defendants have failed to show such approval on the part of either the FDA or AAFCO because, as discussed above, that authorization does not exist. Therefore, the Defendants' have failed to demonstrate a legal basis to exempt their conduct from liability under FDUTPA and their Motion should be denied.

## III.    The Defendants' Motion ignores well-established Rule 12(b)(6) and 8(a) standards

Contrary to the Defendants' contention, a motion to dismiss merely tests the sufficiency of the complaint; *it does not decide the merits of the case*. *See Wein v. American Huts, Inc.,* 313 F. Supp. 2d 1356, 1359 (S.D. Fla. 2004) (J. Moore). In deciding a motion to dismiss, the Court must take all of the allegations in the TAC as true and the allegations must be construed *in the light most favorable to the Plaintiffs*. *Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998). The Defendants attempt to hold the Plaintiffs to a heightened pleading standard

that does not exist despite the fact that the Eleventh Circuit has repeatedly ruled that "[t]he threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is [] 'exceedingly low.'" *See Fin. Sec. Assur. Inc. v. Stephens, Inc.,* 500 F.3d 1276, 1282-83 (11th Cir. 2007). "Rule 8(a) is a notice pleading standard, not a fact pleading standard." *McDonald v. Household Int'l, Inc.*, 425 F.3d 424, 427 (7th Cir. 2005). The point of a notice pleading standard is that the plaintiff is not required to plead either facts or legal theories. See *Marshall v. Knight,* 445 F.3d 965, 968 (7th Cir. 2006); *Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073, 1078 (7th Cir. 1992) (*complaints do not need to match facts to "elements" of a legal theory*). See also *Cler v. Ill. Educ. Ass'n,* 423 F.3d 726, 729 (7th Cir. 2005) ("In this regard, the Supreme Court has cautioned that '[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate *a proper decision on the merits*.'") (quoting *Conley v. Gibson,* 355 U.S. 41, 48, (1957)). *See Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quoting *In re Plywood Antitrust Litig.*, 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981)) (*notice pleading does not require that the pleader allege a "specific fact" to cover every element or allege "with precision" each element of a claim as long as a complaint contains either direct or inferential allegations to sustain recovery under a viable legal theor*y).

A motion to dismiss should only be granted "when the movant demonstrates 'beyond doubt that the plaintiff *can prove no set of facts in support of his claim which would entitle him to relief*.'" *Harper v. Blockbuster Entm't Corp.,* 139 F.3d 1385, 1387 (11th Cir. 1998) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *see also* Fed. R. Civ. P. 12(b)(6). Contrary to the Defendants' claims in their Motion, a motion to dismiss on the basis of the pleadings alone is

viewed with _disfavor_ and should rarely be granted. _See Wanza v. Aetna Health,_ 352 F.Supp. 2d 1320, 1321 (S.D. Fla. 2005)(J. Jordan) (the practice of dismissing claims "on the basis of the barebone pleadings is a precarious one with a high mortality rate").  The Defendants have failed to meet their burden to demonstrate a basis for dismissal of the TAC as will be demonstrated more specifically below.

**A.**   ___Bell Atlantic v. Twombly___ **does not abrogate notice pleading under the Federal Rules of Civil Procedure by requiring a heightened pleading standard**

The Defendants urge this Court to dismiss the specific, and highly detailed TAC based upon purported "heightened pleading requirements" that the United States Supreme Court "announced" in _Bell Atl. Corp. v. Twombly,_ 127 S. Ct. 1955 (2007). [DE 336 p. 41]. _The Defendants are wrong as best demonstrated from the language of the opinion_.  Footnote 14 of the _Twombly_ opinion specifically states:

> …_we do not apply any 'heightened' pleading standard, nor do we seek to broaden the scope of Federal Rule of Civil Procedure 9, which can only be accomplished "'by the process of amending the Federal Rules, and not by judicial interpretation_.'

_Id._ at fn 14. _Twombly,_ therefore, did not radically alter the elementary rules of civil procedure that have governed litigation in the federal courts for the past seventy years as the Defendants suggest. Indeed, _the Supreme Court made it  clear that it was_ **_not_** _imposing a heightened pleading standard_. _Twombly,_ 127 S. Ct. at 1974 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").  To underscore that _Twombly_ did not abrogate Rule 8(a)(2), in a subsequent decision not cited by the Defendants, the Tenth Circuit affirmed a dismissal of a complaint that applied a heightened pleading standard and purported "conclusory" allegations in the pleading. _See Erickson v. Pardus,_ 127 S. Ct. 2197, 167 L.Ed. 2d 1081, 1083 (2007). The Supreme Court granted certiorari

and vacated the opinion because the holding departs "in so stark a manner from the Federal Rules of Civil Procedure" that simply require notice pleading. *Id.*

In *Erickson*, the Supreme Court held that a §1983 claim alleging deliberate indifference to serious medical needs in violation of the Eighth Amendment was properly pled where "[t]he complaint stated that [the doctor's] decision to remove petitioner from his prescribed hepatitis C medication was 'endangering [his] life'" and that "this medication was withheld 'shortly after' petitioner had commenced a treatment program that would take one year, that he was 'still in need of treatment for this disease,' and that the prison officials were in the meantime refusing to provide treatment." *Erickson*, 127 S. Ct. at 2199-200. These general factual allegations were deemed sufficient and demonstrate that a liberal pleading standard as to the "grounds" of a claim remains. *Id.* at 2200. The decision in *Twombly*, therefore, is properly read as undermining only those claims that rest <u>exclusively</u> on conclusory or merely speculative assertions. *Twombly,* 127 S. Ct. at 1966; *see also In re TJX Cos.,* Retail Sec. Breach Litig., 524 F.Supp. 23 83, 87 (D. Mass. 2007) (*Twombly* does not change the pleading standards extant in the First Circuit). In discussing the Tenth Circuit's departure from the liberal pleading standards set forth in Rule 8(a)(2), the Court held that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' *Specific facts are not* *necessary*; *the statement need only 'give the defendant fair notice of what the . . . claim is and the* *grounds upon which it rests*.'" *Id.* at 127 S. Ct. 2200, 167 L.Ed.2d at 1085, *citing Bell Atl. Corp.* *v. Twombly,* 127 S. Ct. 1955, 1964 (2007) (quoting *Conley* v. *Gibson*, 355 U.S. 41, 47, (1957)). Rule 8(a) provides for notice pleading, <u>*not*</u> fact pleading.

Even if this Court were to accept the Defendants reading of *Twombly,* though it should not, there is a strong presumption in favor of narrowly confining the decision to its facts. *Cohens*

*v. Virginia,* 19 U.S. 264 (1821)  ("It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used."). In *Twombly,* subscribers to local telephone and internet services brought an antitrust action against local exchange carriers, alleging that the carriers engaged in parallel conduct to preclude competition in violation of §1 of the Sherman Act, 15 U.S.C.S. §1.  *Twombly,* 127 S. Ct. at 1962. The primary issue for the court to resolve was "whether a §1 complaint can survive a motion to dismiss when it alleges that major telecommunications providers engaged in certain parallel conduct unfavorable to competition, absent some factual context suggesting agreement, as distinct from identical, independent action. *Id.* at 1961.  In the Sherman Act §1 context, this means that where independent, parallel behavior is the *only* basis for an assertion of "agreement," that is insufficient. *Id.* at 1971. The Court's "new standard" is merely a specific way to articulate a solution to what it perceives to be a specific pleading problem in the antitrust context. It is not a broad based new license for federal courts to ramp up pleading requirements.

**B.    The Defendants argument that there is a heightened pleading standard for standing is also _wrong_**

*It is extremely difficult to dismiss a claim for lack of subject matter jurisdiction*. *See Garcia v. Copenhaver,* 104 F.3d 1256, 1260 (11th Cir. 1997) *citing Simanonok v. Simanonok,* 787 F.2d 1517, 1519 (11th Cir.1986). "Facial attacks on the complaint 'require[] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir. 1980), *cert. denied,* 449 U.S. 953, 101 S. Ct. 358, 66 L. Ed. 2d 217 (1980)) (*citing Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)). At the pleading stage, *general factual allegations of injury resulting from the*

*defendant's conduct suffice because, on a motion to dismiss, courts presume that general allegations embrace those specific facts that are necessary to support the claim.* Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  *See also* Hyland v. Parker, 163 Fed. Appx. 793, 798 (11th Cir. 2006) (The Supreme Court has explained that "each element [of standing] must be supported...with the manner and degree of evidence required *at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.*" (*citing* Lewis v. Casey, 518 U.S. 343, 358 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561(1992)); *Stalley v. Catholic Health Initiatives,* 509 F.3d 517, 521 (8th Cir. 2007). There is no heightened pleading standard for standing.

## IV.    The TAC meets the requirements of Rules 8(a), 9(b) and 12(b)(6)

Rule 8(a) requires a plaintiff to provide a defendant with fair notice of the claims brought against it so that the defendant can prepare a response.  As set forth above, *post-Twombly* a district court determines "whether the complaint contains 'enough factual matter (taken as true)' to provide the *minimum notice* of the plaintiffs' claim that the defendant is entitled to." *See Moore v. Miami-Dade County,* 502  F.Supp. 2d 1224, 1228 (S.D. Fla. 2007)(J. Gold).  Instead of *minimum notice,*  the Defendants urge this Court to dismiss the TAC for failure to provide a level of detail and specificity that is not required under Rules 8(a) or 9(b).

According to the Defendants, the TAC fails to provide the minimum notice of what relief is sought as to each Defendant. [DE 336 p. 42].  While the Defendants are referred to in the TAC collectively, there are also a number of allegations relating to each Defendant individually and separate allegations as to Defendants who manufacture and market pet food, Co-packer

Defendants who manufacture pet food for other Defendants, Pet Specialty Retailers and Retailers. [DE 333 ¶¶3-32, 33-59, 65-66, 67, 69, 70, 71, 72, 73, 75-91, 92]. Moreover, the substantive claims in the complaint delineate to which Defendants they apply. [DE 333 ¶69, 71, 73, 75, 77, 78, 79, 81, 82]. *Yucyco, Ltd. v. Rep. of Slovn.,* 984 F.Supp. 209, 219-20 (S.D.N.Y. 1997) is distinguishable from the instant case for a number of reasons, including the plaintiffs *acknowledgement* that they had failed to articulate a claim against a defendant, because there were no allegations indicating how it breached the contract and the plaintiffs' argument that the Defendant should be kept in the case only as a necessary party was insufficient. *Mathews v. Kilroe,* 170 F. Supp. 416, 417 (S.D.N.Y. 1959) is even more distinguishable as it involved a *pro se* litigant who filed a "strange, rambling" document that is hardly comparable to the TAC. *Id.* The court ruled that because the *pro se* litigant included two individuals in the document that he filed who he did not intend to sue, he should have specifically named the only defendants that he intended to sue. *Id.* There is no rule requiring each Defendant's conduct to be plead with particularity – the TAC need only inform the Defendants of the nature of their participation in the wrongful conduct. *See Belaire at Boca, LLC v. Assoc. Ins. Agency, Inc.,* No. 06-80887, 2007 U.S. Dist. LEXIS 45415 *10-14 (S.D. Fla. June 22, 2007) (J. Ryskamp) (denying defendants motion to dismiss based on grouping defendants together as "Carrier Defendants" and "Agent Defendants").

In *Agron, Inc. v. Chen-Lu Lin,* No. CV-03-05872, 2004 U.S. Dist. LEXIS 26605, **39-40 (C.D. Cal. March 15, 2004), one of the defendants, Lum, complained that the plaintiff's proposed second amended complaint plead facts regarding the involvement of the "David & Raymond Group" in an alleged conspiracy, while the plaintiff's prior complaint contained allegations regarding Tsoi, his law firm, Lum and his law firm. *Id.* Defendant Lum complained

that no facts were pled regarding the legal form of the David & Raymond Group, or the relationship that Lum or any other defendant had with the group. *Id.* \*39-40. The Court ruled that "…there is no heightened pleading rule that applies in this case; thus, <u>*Agron need not plead each defendant's conduct with particularity*</u>." *Id.* (In a case involving multiple Defendants, "Rule 8 requires only that the complaint…inform each defendant of the nature of his alleged participation" in the conduct.) (citing *Yucyco* and *Kilroe*). *See also Palmer v. Board of Educ.*, 46 F.3d 682, 688 (7th Cir. 1995) (it is enough to specify the wrong done particularly where a series of actions take place over a span of years).

## A.     The TAC pleads both reliance and causation when required

The Defendants argue that the TAC should be dismissed because *each substantive claim* requires "factually supported" allegations relating to causation and reliance. [DE 336 p. 42].  The Defendants are wrong again.  For example, this Court and many others have ruled that FDUTPA has no causation or reliance element. *See Gold Coast Racing, Inc. v. Home Depot USA, Inc.*, No. 05-61931, 2006 U.S. Dist. LEXIS 96386 \*\*4-6 (S.D. Fla. February 6, 2006) (J. Altonaga); *State v. Tenet Healthcare Corp of Fla.*, 420 F.Supp.2d 1288 at 1309-10 (S.D. Fla. 2005); *S & B Invs., LLC v. Motiva Enters.*, LLC, 18 Fla. L. Weekly Fed. D 396 at \*20-21 (S.D. Fla. 2004); *Davis v. Powertel, Inc.*, 776 So.2d 971, 973-74 (Fla. 1st DCA 2000); *Losure v. Capital One Servs.*, No. 2:05-CV-502-Ftm-29SPC, 2006 U.S. Dist. LEXIS 3977 at \*8-9 (M.D. Fla. Jan. 23, 2006); *James v. Ashley Adams Antiques, Inc.*, No. 2:05-cv-515-FtM-29DNF, 2006 U.S. Dist. LEXIS 39690 \*9-10 (M.D. Fla. June 15, 2006).  Moreover, there are no reliance and causation elements for injunctive relief or unjust enrichment.

The heightened pleading of elements of a claim that the Defendants urge as a basis for dismissal is not even required under Rule 9(b).  As alleged support for this contention, the

Defendants cite *Williams v. Purdue Pharma Co.,* 297 F.Supp. 2d 171, 174-77 (D.D.C. 2003),
which is distinguishable from the instant case because the Plaintiffs have alleged that they
purchased the Defendants' pet food based upon the Defendants' marketing both specifically and
through a detailed list.  [DE 333 ¶¶1-2, 3-32, 65, 66, 67, 79, 70, 71-91, 92, 94-98, 101].
Moreover, unlike the *Williams plaintiffs,* who failed to claim that the product failed to provide
the benefit promised in the advertising, the Plaintiffs have specifically alleged the numerous
ways in which the Defendants' pet food has been deceptively marketed and that they did not
receive what they paid for as a result.[24] [DE 333 ¶¶1-2, 3-32, 66-67, 68, 69, 70, 71, 72-74, 75-91,
92, 96, 101-102, 104-105, 107-108].  *Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1308 (11th
Cir. 1999), involved a ruling on a motion for *summary judgment*, not a motion to dismiss.  In any
event, unlike *Allison*, the Plaintiffs have plead that they were deceived by the advertising and
that had they known the truth about the Defendants' pet food, they would not have purchased it.
*Id.   Leider v. Ralfe,* 387 F. Supp. 2d 283, 298 (S.D.N.Y. 2005), applies New York false
advertising law  and relies upon another New York case that determined that it is sufficient for a
complaint to show a misrepresentation, or group of misrepresentations, or a "common thread that
may be applicable to substantially the entire group." *See Small v. Lorillard Tobacco Co.,* 252
A.D. 2d 1, 9 (N.Y. App. Div. 1998).

Contrary to the Defendants' representations, the TAC contains sufficient allegations
under Rule 8(a) and 9(b) regarding causation.  As detailed in the standing section, the Plaintiffs
have alleged that as a result of the Defendants' false and deceptive advertising, they sustained
damages and that their cats and dogs have been injured.  [DE 333 ¶¶1-2, 3-32, 69, 92-93, 108-
111].  The Defendants further claim that the use of "and/or" in the first paragraph leaves the

---

[24] The Defendants' citation to *Simon v. Celebration Co.,* 883 So. 2d 826, 832 (Fla. 5th DCA 2004) is yet another
example of obfuscating the law since it is a Florida fact pleading case that is inapplicable to the instant
determination of the sufficiency of Rule 8(a) pleadings.

TAC "without a single allegation that any specific named Plaintiff or his or her pet was actually harmed." [DE 336 p. 47]. _That statement is categorically false_. Paragraph 1 of the TAC specifically provides that (1) the Plaintiffs would not have purchased the pet food had they known the truth about the nature, character, quality, ingredients and/or harmful effects and (2) the Plaintiffs did not receive a benefit from the purchase of the pet food that was materially different from what was advertised. [DE 333 ¶1]. The second paragraph further states that the Plaintiffs have sued the Defendants for false and deceptive advertising _**and**_ "for the illness and/or deaths of the Plaintiffs' cats and dogs from ingesting the Defendants' commercial pet food and treats."[25] [DE 333 ¶¶1-2 69, 92-93, 108-111]. The Plaintiffs have alleged that they were harmed from not receiving the benefit of what they paid for as to the negligent and fraudulent misrepresentation and FDUTPA claims. [DE 333 ¶¶1-2, 3-32, 69, 92-93, 110, 129-137, 138-146, 147-157]. They have also alleged property damage as to the negligence, strict liability, express and implied warranty claims and that it would be inequitable for the Defendants to retain the benefit of massive profits from pet food that they would not have purchased had the Defendants truthfully marketed it. [DE 333 ¶¶1-2, 3-32, 69, 91-93, 108-111, 158-164, 165-168, 176-184, 185-191].

The cases cited by the Defendants to support dismissal for failure to sufficiently allege causation are not applicable in the motion to dismiss context. *Aldon Indus., Inc. v. Don Myers & Assoc.,* Inc., 517 F.2d 188, 191 (5th Cir. 1975) is a case where the appellate court _reversed a judgment_ on the defendant's counterclaim because damages for _lost profits were too speculative_. *Ikonen v. Hartz Mountain Corp.,* 122 F.R.D. 258, 263 (S.D. Cal. 1988) was a _class certification_ case which did not rule on the sufficiency of a complaint or the degree of particularity of the

[25] As discussed above/below, occasional references to the Plaintiffs as consumers in a consumer class action case does not warrant dismissal. As discussed above and below, the Plaintiffs have provided the Defendants with notice of the claims that they have brought against them.

pleadings. Notwithstanding the utter failure to demonstrate that the Plaintiffs have failed to plead harm, injury and causation, they continue to urge that an erroneous heightened pleading standard must be applied to this case because the Plaintiffs have not specifically alleged which particular ***brand*** of product that they purchased during the Class Period. [DE 336 pp. 47-48]. It is undisputed that these Defendants manufacture, market and sell pet food. The Plaintiffs are only required to place them on notice of their claim so that they can frame an answer.

The Defendants have failed to provide any basis for claiming that omitting the specific brand of pet food would prevent them from answering the TAC. [DE 336 pp. 47-48]. The plaintiffs' claims are not solely products liability claims as the Defendants argue. [DE 336 p. 48]. Even if they were, the Defendants have not provided a basis for dismissing the TAC because it does not list the specific brand that each Plaintiff purchased during the Class Period. Each case cited by the Defendants for this alleged proposition is distinguishable and inapplicable here primarily because the cases were decided at the *summary judgment* stage or on appeal *after entry of a judgment* where the plaintiffs were required to present evidence and not to put the defendant on notice of the claim. *See Pulte Home Corp. v. Ply Gem Ind., Inc.,* 804 F. Supp. 1471, 1476 (M.D. Fla. 1992) (motion for *summary judgment*); *Blackston v. Shook and Fletcher Insulation Co.,* 764 F.2d 1480, 1482-83 (11th Cir. 1985) (appeal from *summary judgment* because the plaintiff was unable to show that he was exposed to asbestos-containing products manufactured by the defendants). [DE 336 p. 48]. The Defendants cite two cases where complaints were dismissed, but those cases involved plaintiffs who *alleged in the pleading that the plaintiff did not know what product caused the harm* and the other involved theories of liability that the plaintiffs do not allege here. *Philadelphia v. Lead Ind. Ass'n, Inc.,* 994 F. 2d 112, 127 (3d Cir 1993)(court dismissed case because plaintiffs relied on a market share and collective alternative

liability theory that the plaintiffs do not allege or rely on in this lawsuit); *Klein v. Council of Chem. Assocs.,* 587 F. Supp. 213, 221-22 (E.D. Pa. 1984)(dismissal of complaint where plaintiff specifically alleged that he did not know the product that he used that contained carcinogenic ingredient).

As discussed above, a FDUTPA claim is <u>*not*</u> based upon each individual Plaintiff's reliance on specific advertising. Where, as here, deceptive practices have been widely disseminated and consumers purchase the pet food, the Defendants are liable for their deception because the inquiry is based upon whether a reasonable pet food consumer with no knowledge of dog or cat nutrition or pet food processing is deceived by the Defendants' marketing, not each individual Plaintiff.[26] *See Gold Coast Racing, Inc.* U.S. Dist. LEXIS 96386 **4-6; *Latman v. Costa Cruise Lines,* 758 So. 2d 699, 703 (Fla. 3d DCA 2000) (the issue is how a reasonable consumer would interpret the specific deceptive practice and *not* the individual plaintiff); *FTC v. Windward*, No. 1:96-cv-615-FMH1997 U.S. Dist LEXIS 17114 *28 (N.D. Ga. Sept. 30, 1997) ("A presumption of actual reliance arises once the Commission has proved that the defendant made material misrepresentations, that they were widely disseminated, and that consumers purchased the defendant's product."); *Dix v. Amer. Bankers Life Assur. Co.,* 415 N.W. 2d 415, 417 (Mich. 1987) (Michigan Supreme Court ruled that Michigan Consumer Protection Act should be construed liberally to broaden consumers' remedy, especially in situations involving

---

[26] The Defendants have sarcastically referred to the TAC's references to certain words as "approved" language or merely puffing and have completely ignored the majority of very specific references to the Defendants' deceptive practices in the TAC. [DE 333 ¶¶ 69-93, 94-98, 101-102, 104-105, 107-112, DE 336 pp 6-7, 40 fn 25]. The Defendants fail to meet their burden to demonstrate that the TAC should be dismissed when they solely attempt to cherry pick *very few* false advertising allegations and ignore the majority primarily because under Federal Trade Commission decisions, upon which FDUTPA is premised and interpreted, the FTC looks at the overall net impression of a misrepresentation to see how it should be reasonably interpreted, including whether there are implied claims and determining from extrinsic evidence how consumers in fact perceive a representation. *See Removatron Int'l Corp. v. FTC,* 884 F.2d 1489, 1496 (11th Cir.1989) ("The tendency of the advertising to deceive must be judged by viewing it as a whole, without emphasizing isolated words or phrases apart from their context," [] The impression created by the advertising, not its literal truth or falsity, is the desideratum... .").

consumer fraud affecting a large number of persons and that they need not demonstrate individual reliance on wide spread deceptive representations). Even though the above referenced cases clearly provide that causation need not be plead, the TAC alleges that that the Plaintiffs were harmed by the false advertising and would not have purchased the Defendants' pet food it if they had known the truth about it. [DE 333 ¶¶ 69, 71, 72, 73-74, 75-91, 92-93, 101-102, 104-105, 108-111].

The TAC also meets Rule 8(a) requirements for alleging causation and "harm" as to the Defendants' negligence and strict liability counts and harm as to their express and implied warranty and unjust enrichment claims. As for the strict liability and negligence counts, the Plaintiffs have alleged that their cats and dogs became ill or died from ingesting the Defendants' pet food, the harmful substances in the pet food that caused them to suffer illness and injury, that the Plaintiffs suffered were damaged as a result. [DE 333 ¶¶2, 94-100, 103-105, 106, 107-109, 111, 159-164, 165-168]. The breach of warranty claims also allege the Defendants marketed the pet food as safe for its intended purpose, that the Plaintiffs reasonably relied upon those representations, that the pet fod was not of merchantable quality and safe and as a result of the adulterated nature of the pet food, the Plaintiffs suffered damages. [DE 333 ¶¶1, 2, 65, 68, 69, 94-98, 101, 105, 106, 107-111]. Such allegations more than meet Rule 8(a) pleading requirements. The Plaintiffs allegations are neither conclusory nor bereft of facts as the Plaintiffs have repeatedly alleged. Given that the TAC is not required to provide detailed factual allegations, as the Defendants contend, the Plaintiffs have more than adequately met Rule 8(a) requirements to put the Defendants on notice of their claims.

**B.      The TAC satisfies all of the requirements for standing**

CASE NO. 07-21221 CIV ALTONAGA/Turnoff
MALTZMAN FOREMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077

The Eleventh Circuit has ruled that the standing doctrine was not intended to be used as a vehicle to resolve merits issues at the threshold of litigation yet that is exactly what the Defendants have urged this Court to do. *Wooden v Bd. of Regents of the Univ. Sys.*, 247 F.3d 1269, 1280 fn 16 (11th Cir. 2001). They repeatedly argue that the Plaintiffs have failed to allege standing with heightened specificity that is not required and repeatedly sprinkle merits issues throughout their standing arguments. [DE 336 pp. 29, 34, 37, 38]. This is a complex class action case where the Plaintiffs' purchased pet food from the Defendant Manufacturers who produce almost all of the world's pet food in the same manner, with virtually the same ingredients, with the same injurious effects to the Plaintiffs and which are sold primarily by the Retailers in the same or similar manner.[27]   The TAC more than sufficiently alleges the Plaintiffs' individual standing.

The Defendants urge the Court to dismiss the TAC because the Plaintiffs purportedly do not allege that they were "injured" by the Defendants. [DE 336 pp. 13, 18, 30, 31-33, 34-38]. Throughout their Motion, the Defendants attempt to persuade this Court that such heightened pleading standards apply as to each and every aspect of this case.  As discussed above, there is no heightened pleading standard for standing. Standing consists of three elements: (1) the plaintiff must have suffered an injury in fact; (2) there must be a causal connection between that injury and the conduct complained of; and (3) it must be likely that the injury would be redressed

---

[27] The Defendants also attack the class definition because it "meticulously" avoids "any suggestion that any class members actually suffered injury," which is a class certification issue and *not* a basis for dismissal even if that were legally invalid and it is not.  [DE 336 p. 29]. Courts have ruled that where deceptive practices have been widely disseminated and consumers purchased the product, defendants are liable for their deception because the inquiry is based upon whether the reasonable pet food consumer would be deceived. *See Latman,* 758 So. 2d at 703 (the issue is how a reasonable consumer would interpret the specific deceptive practice and *not* the individual plaintiff); *Windward*, 1997 U.S. Dist LEXIS 17114 *28 (N.D. Ga. September 30, 1997) ("A presumption of actual reliance arises once the Commission has proved that the defendant made material misrepresentations, that they were widely disseminated, and that consumers purchased the defendant's product."); *Dix v. Amer. Bankers Life Assur. Co.,* 415 N.W. 2d 410, 417 (Mich. 1987) (Michigan Supreme Court ruled that Michigan Consumer Protection Act should be construed liberally to broaden consumers' remedy, especially in situations  involving consumer frauds affecting a large number of persons and that they need not demonstrate individual reliance on wide spread deceptive representations).

by a remedy the court could order. *Lujan* 504 U.S. at 560-61.  While the Defendants complain that there are no specific injury allegations as to each Plaintiff, the Plaintiffs were injured in the same manner and they have generally alleged the manner in which  they were injured in the TAC.[28] *See FEC v. Akins,* 524 U.S. 11, 24-25 (1998) (ruling that widely shared voting informational injury constitutes an injury in fact for Article III purposes and giving an "obvious" example of "wide spread" standing where "large numbers of individuals suffer the same common-law injury – "a  widespread mass tort" counts as an injury in fact"); *Levine v. American Bison,* No. C05-04764 MHP, No. C05-05346 MHP2006 U.S. Dist. LEXIS 63667 **30-32 (N.D. Cal. 2006) (meat consumers do not lack standing simply because the injury was shared by all other meat consumers); *Baur v. Veneman,* 352 F.3d 625, 641-42 (2d Cir. 2003) (ruling that in food and drug safety suits, consumers may plead an enhanced risk where they are exposed to potentially harmful products).  Where, as here, the defendants urge the Court to require "proof" of standing at the pleading stage, the *Baur* court ruled that "[a]dopting a more stringent view of the injury-in-fact requirement in environmental cases and food and drug safety suits would essentially *collapse the standing inquiry into the merits*." *Baur,* 352 F.3d at 642.

The Defendants also argue standing has not been properly alleged because the TAC does not allege injury as to each Defendant. [DE 336 p. 31].  This argument is disingenuous and equally unavailing on a number of levels as the Defendants are well aware.  The TAC notes that the pet food industry is incredibly homogenous. [DE 333 ¶¶46-49, 92-93, 94-97, 104, 107-109,

_____

[28] The Defendants even go so far as to criticize the occasional use of the words "consumers" and "Plaintiffs" because it "lumps" them together.  [DE 336 p. 31].  The TAC refers to the Plaintiffs throughout the pleading and alleges standing as to the Plaintiffs, but the Plaintiffs are also consumers who are representing a class of consumers. It is therefore necessary to refer to the Plaintiffs as consumers and to consumers in a consumer class action. Finally, Florida's Deceptive and Unfair trade Practices Act ("FDUTPA") specifically provides that it is intended "to protect not only the rights of litigants, but also *the rights of the consuming public at large*." *Gritzke v. M.R.A. Holding, LLC,* No. 4:01cv495-RH 2002 U.S. Dist. LEXIS 28085 fn 3 (N.D. Fla. March 14, 2002) citing *Davis v. Powertel, Inc.,* 776 So. 2d 971, 975 (Fla. 1st DCA 2000); see also *Sarkis v. Pafford Oil Co., Inc.,* 697 So. 2d 524, 528 (Fla. 1st DCA 1997); *Delgado v. J.W. Courtesy Pontiac GMC Truck, Inc.,* 693 So. 2d 602, 606(Fla. 2d DCA 1997).

113]. Defendant Manufacturers *may* manufacture their own food, but *may* enter into non-public agreements with co-packers to manufacture it instead.  The massive recall that reportedly resulted in the deaths of thousands of cats and dogs in 2007 made the Plaintiffs and consumers uncomfortably aware that just because a "trusted" brand is on a can, pouch or bag of cat or dog food, that does not mean that it is made by that Defendant despite the way that is made to appear. The only way in which that can be determined is through discovery, which has been stayed in this case. Because the Defendants operate in a very similar manner by producing nearly identical products with the same ingredients, the allegations of harm caused by the Defendants to the Plaintiffs have a high degree of similarity.  The Defendants' argument is also disingenuous because *the Plaintiffs have alleged the manner in which they have been injured and the Defendants who injured them*.

As discussed above, at the initial pleading stage of this lawsuit, the TAC is only required to generally allege standing and courts *presume that general allegations embrace those specific facts that are necessary to support the claim at this stage of the proceeding*. The Defendants repeatedly claim that there are little to no injury allegations, but that is not true. The TAC alleges the manner in which the Plaintiffs have been injured and the Defendants which caused them injury:

> Each and every Plaintiff purchased pet food and/or treats that were manufactured, produced, distributed, marketed, advertised and/or sold by one or more of the named Defendant Manufacturers and Retailers and (a) relied upon and trusted the Defendants representations and/or omissions in purchasing the pet food and/or treats; (b) the Plaintiffs would not have purchased the pet food and/or treats had they known the truth about the nature, character, quality, ingredients and/or harmful effects; (c) did not receive a benefit from the purchase of the pet food and/or  treats that were materially different from what was advertised; and/or (d) the Plaintiffs' cat(s) and/or dog(s) have suffered illness and/or death as a result of ingesting the pet food and/or treats as described more fully below.

> The Plaintiffs bring this action for injunctive relief, restitution and damages for (1) false and deceptive advertising, misrepresentations and omissions made by the Defendants in the marketing, advertising and sale of the Defendants' commercial pet food and treats; _**and**_ (2) for the illness and/or deaths of the Plaintiffs' cats and dogs from ingesting the Defendants commercial pet food and treats.

[DE 333 ¶¶1-2]. As to each and every named Plaintiff, the TAC also alleges where they purchased pet food, how often their companion cats and/or dogs ate it, from which retailer they purchased pet food and the manufacturer which marketed it. [DE 333 ¶¶3-32]. _They further allege that they purchased pet food from those specific Defendant Manufacturers and Retailers based upon their marketing_. [DE 333 ¶¶ 3-32]. For example, as to Plaintiff Renee Blaszkowski, the TAC alleges:

> Plaintiff/Class Representative, Renee Blaszkowski, is a resident of Michigan and Connecticut during the class period. Plaintiff Blaszkowksi regularly purchased pet food during the class period for daily consumption by her cat(s)/dog(s) in Michigan and Connecticut, which was manufactured and marketed by Defendants, Mars and Mars Pet Care, Procter & Gamble and Iams, Colgate Palmolive and Hill's, Del Monte, Nestlé USA and Nestlé Purina Petcare, Nutro, Natura, Wal-Mart, Target, Petsmart and on information and belief Kroger and/or Menu Foods. Defendants, Kroger, Petco, Pet Supermarket, Pet Supplies Plus, Petsmart, Target and Wal-Mart marketed and sold Plaintiff Blaszkowski pet food from the above-referenced manufacturers and marketers, which purchases were made based upon the above-referenced Defendants' marketing.

[DE 333 ¶3]. The TAC also specifies how and when the Defendants' marketing has mislead and deceived them and which injured their cats and dogs on an _ongoing and continuous basis since May 9, 2003_:

> The Defendant Manufacturers, Retailers and Pet Specialty Retailers' marketing have mislead, deceived and/or failed to disclose to the Plaintiffs on an ongoing and continuous basis throughout the Class Period (and prior to the class period) material information regarding the pet food products that they have purchased. Some specific examples include, but are not limited to:
>
> - The Defendants' pet food containers deceptively include pictures and/or drawings of human-grade ingredients, but the pet food does not have human-quality food ingredients as depicted on the containers;

- The Defendants' marketing deceptively makes the Plaintiffs believe that they are purchasing wholesome pet food when the Defendants use a food pyramid similar to that used by nutritionists for human-grade food and human nutrition, but the human-grade ingredients are not used;

- The Defendants' cat and dog food is deceptively marketed as having health, medical, hygienic and other benefits which are not adequately supported by competent and reliable scientific data;

- The Defendants include ingredients in pet food without first determining whether those ingredients will have a deleterious effect on a cat or dog despite the numerous claims of extensive research that leads the Plaintiffs to believe that pet food contents are safe for their cats or dogs and/or adequately supported by competent and reliable scientific data prior to sale;

- The Defendants' marketing makes numerous deceptive and/or false claims relating to quality, content, health, medical, hygienic, hairball, dietetic, breed and/or age specific benefits which are inaccurate and/or are not based upon competent and reliable scientific data supporting same;

- The Defendants deceptively and/or falsely market their pet food as safe and wholesome yet the number and/or extent of recalled pet food products demonstrates the lack of sufficient quality control and traceability analyses which makes the pet food unsafe;

- The Defendant deceptively and/or falsely market themselves as food experts and claim to produce the safest and highest quality of pet food yet their pet food contains substances either known and/or unknown to the Defendants and/or substances that are toxic and/or unhealthy for cats and/or dogs;

- The Defendant Manufacturers market their brands of pet food as "premium" and/or "super-premium," but they contain ingredients that are unhealthy for consumption by cats and dogs and either fail to provide the promised benefit or cause other health problems. For example, dry food diets packed with cereal carbohydrates promote the formation of other crystals or stones in cats;

- The Defendants deceptively market "light" or diet cat and dog food as providing a health benefit, when in fact it still largely consists of carbohydrates and other fillers that cause obesity, allergies and

other known health problems and may be higher in carbohydrates than is advertised;

- The Defendants deceptive marketing leads the Plaintiffs and consumers to believe that the ingredients used in their brands of pet food are "human quality," but they, or their co-packers, use material other than human-grade "real meat, chicken, lamb," etc., as a nitrogen source to boost "protein" content unbeknownst to the consumer;

- The Defendants omit to advise the Plaintiffs about the true quality and content of the pet food, including rendered product that may contain, including but not limited to, mad cow disease;

- The Defendants make a number of claims concerning the benefits, content and quality of their pet food without competent and reliable scientific documentation, including but not limited to, the bioavailability of their pet food products;

- The Defendants omit to advise the Plaintiffs about the toxins and other substances in the pet food for which there are no known studies to substantiate their use in pet food and/or the long term effect on cats and dogs;

- The Defendants deceptively market product comparisons where one Defendant compares its product to another without disclosing the shortcomings of its own product;

- The Defendant Manufacturers, Retailers and Pet Specialty Retailers' marketing   actively encourage the Plaintiffs and consumers to purchase only commercial pet food despite the known benefit of diets with higher levels of real protein and without cheap carbohydrate cereal fillers;

- The Defendants market their pet food as an entrée or dinner, leading the Plaintiffs to believe that it is suitable to sustain a cat or dog when, in fact, the diet is insufficient and the Plaintiffs and consumers are only told that the pet food is a "snack" when the Plaintiffs specifically request that information from the Defendant and/or when the Plaintiffs read fine print on websites;

- The Defendant Manufacturers', Retailers' and Pet Specialty Retailers' marketing deceptively encourages the Plaintiffs and consumers to buy "premium" pet food by representing that the expenditure of additional monies for "premium" pet foods provides nutritional, health, medicinal, hygienic and other benefits that non-

premium pet foods allegedly do not have when they are comprised of essentially the same material;

- The Defendants deceptively market dry food as "good" for cats despite the fact that studies demonstrate that dry food is associated with a higher incidence of feline lower urinary tract diseaseand other health problems;

- The Defendants deceptively market dry food as "good" for dogs but dry food that is comprised of cheap cereal fillers, additives and dyes contain ingredients that cause allergies, bloating and gastric upset, among other things;

- The Defendants tout their pet food as "wholesome," but it is basically corn and other cheap carbohydrate fillers and the inedible garbage of the human food chain; and

- The Defendants marketing omits to advise the Plaintiffs of the predominance of processed carbohydrates, allergenic substances, low grade proteins and known and/or unknown ingredients and/or additives that have detrimental effects on the health of dogs and cats contrary to what the Plaintiffs and consumers are lead to believe.

The Defendants' misleading, unfair and deceptive marketing and/or failure to disclose on an ongoing and continuous basis throughout the Class Period has resulted in damage to the Plaintiffs because they would not have otherwise purchased these products had they known the truth about them and/or their cats and/or dogs became ill and/or died from ingesting the pet food.

[DE 333 ¶69]. The Plaintiffs also further allege that the Defendants market the purported health benefits of glucosamine, chondroitin, Omega-3 fatty acids and soy without reliable scientific evidence to support claims that cats and dogs receive a benefit from consuming same.[DE 333 ¶¶70, 72]. The TAC states that the Defendants' marketing leads the Plaintiffs to believe that they are purchasing human-grade quality food for their cats and dogs, when they are not and that the Defendants market pet food as "Veterinarian Recommended," but fail to disclose the basis for that marketing representation and that veterinarians profit from selling pet food. [DE 333 ¶¶ 68, 69, 70, 71-86, 94-97]. The Plaintiffs further provide specific examples of misleading advertising

as to the Defendant Manufacturers and Retailers. [DE 333 ¶¶75-91, 114]. The Plaintiffs have also alleged that while they pay a "premium" price for "premium" pet food, the food is the same as non-premium. [DE 333 ¶¶92-93].

The TAC further provides specific examples of property damage in the form of toxic chemicals in the pet food which cause injury to their cats and dogs, including pentobarbital, salmonella, E. coli, endotoxins, drugs used to treat or euthanize animals, antibiotics, mycotoxins, mold, chemical residues, melamine, cyanuric acid, acetaminophen and acrylamide. [DE 333 ¶¶99-101, ¶¶105-106]. Additionally, the TAC specifically alleges the nutrition-related diseases caused by their pet food, including urinary tract disease, kidney disease, dental disease, chronic digestive problems, bloat, heart disease, hypertension, hyperthyroidism and mad cow disease. [DE 333 ¶107].

Notwithstanding all of these allegations, the Defendants nevertheless claim that none of these allegations confer standing on the Plaintiffs because they have failed to allege "injury" and the precise manner in which the Defendants' wide-spread dissemination of deceptive marketing in multiple media since May 9, 2003 prompted the Plaintiffs to purchase their pet food and treats. [DE 336 p. 33]. Taking these allegations in the TAC as true and in the light most favorable to the Plaintiffs, as the Court must at this stage of the proceeding, the Plaintiffs have tied each specific Defendant to a Defendant Manufacturer which, marketed and/or sold the pet food, they have alleged the injury that stems from the marketing and sale of the pet food and treats in the form of not receiving the benefit of their bargain and that the Plaintiffs cats and dogs have become ill or died from ingesting it and veterinary costs. *See supra.* They have also averred the various deceptive practices that have occurred over time in wide-spread media. Contrary to the Defendants repeated protestations, these allegations are more than sufficient for the Court to

*presume that general allegations embrace those specific facts that are necessary to support the claim.* The Plaintiffs have made sufficient allegations to meet the Article III requirements at this stage of the proceeding.

**1.    The TAC alleges the Plaintiffs' Individual Standing under Rule 8(a)**

The entire basis for the Defendants claim that the Plaintiffs' have somehow failed to allege standing is not that the Plaintiffs have failed to aver that they purchased pet food from particular Defendant Manufacturers and from particular Retailers, because they have, but that they have not alleged the specific *brand* of pet food produced by each Defendant Manufacturer. [DE 336 p. 34]. Alleging the specific brand at this stage is more the subject of discovery than it is a standing inquiry because the Defendants do not, and cannot, truthfully claim that they do not manufacture, market produce and sell pet food and treats. As set forth above, the Plaintiffs have alleged the manner in which specific Defendants injured them. *See In re: Application for Appointment of Indep. Counsel,* 766 F.2d 70, 73 (2d Cir. 1985) (To demonstrate standing a plaintiff must first establish and injury which "may be actual or threatened, economic or non-economic."). Any further challenge at the threshold of the litigation as "to the factual underpinnings" of the Plaintiffs' standing is *premature*. *See Bauer,* 352 F.3d at 641-42. In *Dunn v. The Gleason Four, Inc.,* No. s:07-cv-314-FtM-295PC 2007 U.S. Dist. LEXIS 62140 (M.D. Fla. 2007), the court denied the defendant's motion to dismiss an Americans with Disabilities Act ("ADA") claim for a purported failure to allege standing because the plaintiff alleged sufficient facts to establish standing for herself individually, including "a qualifying disability, that she suffered an injury by not being able to partake in the goods and services at the premises due to barriers to access, and that she intends to return if the barriers are removed." *Id.* at *6. *See

*also Bruni v. FMCO, LLC,* No. s:06-cv-293-FtM-295PC 2007 U.S. Dist. LEXIS 18641 *10 (M.D. Fla. March 16, 2007).

In *Focus on the Family v. Pinellas Suncoast Transit. Auth.,* 344 F.3d 1263, 1272-73 (11th Cir. 2003), in ruling on standing at the summary judgment stage, the Eleventh Circuit rejected the district court's ruling that is identical to the one advanced by the Defendants, i.e., that the "injury in fact" requirement is unsatisfied because Focus "failed to present any evidence that it was injured *as a result of the agreement*" that was the subject of the lawsuit because it "plainly conflates the first and second prongs of *Lujan*" i.e., (1) injury in fact and (2) a causal connection between the injury and the conduct of which they complain. *Id.* Likewise, urging this court to rule that the Plaintiffs have not been injured because the Plaintiffs have not established a causal link between their injuries from not having received the pet food that they paid for and establishing a causal link between the injuries to their cats and dogs also confuses the two separate requirements.[29]

The Plaintiffs have alleged injury in fact because (1) they would not have paid for food that is not what the Defendants market it to be, (2) they should not have paid a higher price for "premium" pet food that is the same as non-premium pet food, (3) because the ingestion of the Defendants' pet food has resulted in illness and injury to their cats and dogs and (4) they have incurred out of pocket veterinary expenses. [DE 333 ¶¶1-2, 3-32, 69, 92-93, 110, 111]. As for the second requirement, all that the Plaintiffs need to show is that the injury is "fairly traceable" to the Defendants acts or omissions, which they have also alleged in the TAC. *Id.* The TAC provides specific examples of advertising that has mislead them and how the pet food that the Defendants manufacture, market and sell harms their cats and dogs. [DE 333 ¶¶67, 69-109]. As

---

[29] See the following example of conflating the two prongs, "…[the Plaintiffs] fail to allege any particular facts showing that each named Plaintiff [] was [individually] injured *as a result of his or her pet's consumption of any particular Defendant's product…*" [DE 336 p. 37].

for the third requirement, redressability, the Plaintiffs' injuries can be redressed through injunctive relief, restitution and damages, as alleged in the TAC. [DE 333 ¶¶115, 121, 128, 129-200].  The Defendants erroneously claim that the TAC fails to include individual allegations of reliance and causation upon which all of their substantive claims depend.  Once again that is not true. Courts have ruled that where deceptive practices have been widely disseminated and consumers purchase the product, defendants are accountable for their deception because the inquiry is based upon the reasonable pet food consumer and not the individual. *See* reliance and causation discussed above.

The Defendants also mischaracterize the relief sought by the Plaintiffs by arguing that that "federal courts have not hesitated to dismiss actions where the only alleged injury is the purchase of a product." [DE 336 p. 36]. This argument makes absolutely no distinction between the cause of action alleged and lumps this entire lawsuit in the "product liability" context.  That is inappropriate as each claim must be analyzed separately for standing purposes.[30]  *See Griffin v Dugger,* 823 F.2d 1476, 1483 (11th Cir. 1987).  Nonetheless, *the Plaintiffs have **not** simply alleged that they were injured from the purchase of pet food*, but rather that (1) they incurred property damage when their cats and dogs were injured from ingesting the Defendants' pet food and treats, (2) they would not have purchased the pet food if they had been aware of the contents and impact of the pet food on their cats and dogs, (3) had they known that the more expensive premium pet food was the same as non-premium pet food, they would not have paid a higher

---

[30] For example, under FDUTPA, standing for false advertising is established statutorily. *See* Fla. Stat. 501.203(8)(advertising specifically included as "trade and commerce" regulated by the act. *See also Mack v. Bristol-Myers Squibb Co.,* 673 So. 2d 100, 104 (Fla. 1st DCA 1996) ("Since "violation of this part" means "any violation of this act," and subsection 501.204(1) proscribes unfair methods of competition as illegal, Mack's claim that she and others were damaged by unfair methods of competition engaged in by appellees gives her *standing* to bring this suit under the plain language of the Florida DTPA.").

price and (4) they have incurred out of pocket veterinary expenses. [DE 333 ¶¶1-2, 3-32, 69, 92-93, 110, 111].

The Defendants cite *Rivera v. Wyeth-Ayerst Labs.,* 283 F.3d 315 (5th Cir. 2002)[31] in support of their claim that this case is a "no-injury" case that should be dismissed for lack of standing. *Rivera,* however, is distinguishable from this case because (1) it is solely a products liability case that did not allege a "tort" and (2) unlike the Plaintiffs in this case, "[t]he plaintiffs [in *Rivera*] do *not* claim [that the drug at issue in the case] caused them physical or emotional injury, [that it] was ineffective as a pain killer, or [it] has any future health consequences to users. Instead, they assert that their loss of cash is an 'economic injury.'" *Id.* at 319 ("Rivera's claim to injury runs something like this: Wyeth sold Duract; Rivera purchased and used Duract; Wyeth did not list enough warnings on Duract, and/or Duract was defective; *other patients were injured by Duract; Rivera would like her money back*."). The Fifth Circuit ruled that "[m]erely asking for money does not establish an injury in fact." *Id. Rivera* is inapposite because the strict liability count in the TAC, for example, specifically alleges that the Defendants pet food caused "injury, illness and/or death" to their cats and dogs because of the "adulterated ingredients, additives, chemicals, toxins and/or contaminants" and not that the Plaintiffs be recompensed for purchasing the product. [DE 333 ¶2, 111, 167].

*Prohias v. Pfizer, Inc.,* 485 F.Supp. 1329 (S.D. Fla. 2007) is also distinguishable. The *Prohias* plaintiffs alleged that "Pfizer [] engaged in a multifaceted advertising campaign to convince doctors and consumers that Lipitor reduces heart disease, even though there was no scientific evidence of such benefits. Such misleading advertising, according to the [Prohias]

---

[31] The Eleventh Circuit *rejected* a defendant's attempt to urge the blanket application of the narrow holding in this case because it did not arise under Florida law and where it is unavailing because the holding is inapplicable to causes of action where economic injuries are permitted. *See London v. Wal-Mart Stores, Inc.,* 340 F.3d 1246, 1252 (11th Cir. 2003).

plaintiffs, _creates artificial demand for Lipitor and an artificial increase in Lipitor's price_, thus causing economic injury to Lipitor purchasers. But the [Prohias] plaintiffs do not allege that Lipitor failed to lower their cholesterol levels, or that they were physically injured in any way by taking Lipitor." _Id._ at 1331. Thus, _Prohias_ is distinguishable from this case in several ways. First, the Plaintiffs are not suggesting any sort of a price inflation injury; rather, that have alleged that they did not get what was marketed by the defendants, that premium pet food is the same as non-premium pet food except the Plaintiffs have paid a higher price and that the Plaintiffs cats and dogs have become ill and/or died from the Defendants' pet food. _They have not alleged that the marketing of pet food creates some sort of  artificial demand for pet food,_ which resulted in the dismissal in _Prohias_.

The Defendants also cite _Hoyte v. Yum! Brands, Inc.,_ 489 F.Supp. 2d 24 (D.D.C. 2007) to support their contention that the Plaintiffs have not alleged an injury, but like _Rivera_ and _Prohias,_ the plaintiff in _Hoyte_ did not "allege that the food he ordered was in any way unpalatable or that he suffered any immediate ill effects after he ate his order. [] He claims no emotional harm, pain or suffering. He does mention 'economic injuries,' [] but he does not specify what "economic injury" he has suffered, and none is evident from the facts presented, even under the most charitable reading of the complaint." _Id._ at 28. _Hoyte_ is hardly analogous to the present case where the Plaintiffs have specifically plead that they have been injured from deceptive marketing practices and  from the illness and deaths of their cats and dogs.

_Williams v. Purdue Pharma Co.,_ 297 F. Supp.2d 171, 176-78 (D.D.C. 2003) is similarly distinguishable because in that case, although the plaintiffs alleged that they did not get the "benefit of the bargain," they did not allege that "OxyContin failed to provide them effective pain relief or that they suffered any adverse consequences from their use of OxyContin." _Id._ at

176.  The Court ruled that "[w]ithout alleging that a product failed to perform as advertised, a plaintiff has received the benefit of his bargain and has no basis to recover purchase costs." *Id.* Williams *is thus completely inapposite.* The TAC alleges harm not only from false advertising, but as the true products liability counts, it alleges that the Plaintiffs dogs and cats were harmed as a result of ingesting the Defendants' pet food.

The Defendants have also cited similar decisions in products liability cases where, unlike the present case, which is not solely a products liability lawsuit, courts have ruled that they failed to allege injury. *See Bridgestone / Firestone Inc., Tires Prods. Liab. Litig.,* 288 F.3d 1012, 1017 (7th Cir. 2002) and *Briehl v. GMC,* 172 F.3d 623, 627 (8th Cir. 1999), [DE 336 p. 38]. However, the rule of law in these cases has been <u>*rejected*</u> under Florida law. In *Collins v. Daimler Chrysler Corp.,* 894 So. 2d 988, 990-91 (Fla. 5th DCA 2004), the plaintiff alleged that she owned a Chrysler automobile equipped with GEN-3 seatbelt buckles, which, due to a design defect, were  unreasonably dangerous and unfit for ordinary use as a passenger restraint system. *Id.* at 889. The plaintiff further alleged that she based her decision to purchase a Chrysler on Chrysler's advertising of its vehicles as safe and in compliance with all relevant safety standards and that  Chrysler knew or should have known that the GEN-3 seatbelts were defective, but took no action to remedy the problem. *Id.*  The Plaintiff sought damages from Chrysler for the diminished value of her vehicle, measured as the difference in the market value of the automobile in the condition in which it was delivered, and its market value in the condition in which it should have been delivered. *Id.*  The Florida Fifth District Court of Appeal ruled:

> In *Davis v. Powertel*, 776 So. 2d 971 (Fla. 1st DCA 2000), the First District Court of Appeal determined that FDUTPA allows for damages based on diminution of value. There, the class plaintiff alleged that Powertel sold cellular telephones without informing the purchasers that the phones were programmed to work only with Powertel's communication services. The class plaintiff alleged that although these phones appeared to be the same as other Nokia and Motorola models, they

contained a chip that rendered them inoperable when used with any other wireless phone service. The circuit court dismissed the class plaintiff's FDUTPA claim. However, on appeal, the appellate court agreed that the class plaintiff adequately stated a claim for damages under FDUTPA, recognizing "[t]he [claim], according to the plaintiffs, was that Powertel's alleged nondisclosure had reduced the value of the phone in each case." Id. at 973. Accordingly, the court allowed the case to proceed because the *"alleged deceptive practice reduced the value of the telephones."* Id. at 974-75 (emphasis added); see also *Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati,* 715 So. 2d 311, 313 (Fla. 4th DCA 1998).

Admittedly, there are jurisdictions with similar consumer protection laws that support Chrysler's argument that actual out of pocket losses are a necessary prerequisite to a deceptive trade practices action. *See, e.g., In re Bridgestone / Firestone, Inc.,* 288 F.3d 1012 (7th Cir. 2002). *However, Florida decisional law has followed a different track.* If the courts have misperceived legislative intent, the Legislature can surely rectify the problem. However, we observe that *Florida courts have allowed diminished value to serve as "actual damages" recoverable in a FDUTPA claim since at least Rollins in 1984 without any corrective action by the Legislature.*

We see no requirement in FDUTPA that a defect manifest itself by failing to operate in an emergency or by causing injury. Under the facts asserted in this case, Collins has alleged more than a possible injury. She claims an actual injury in the form of insufficient product value. In other words, she contends that she did not get what she bargained for. Whether her allegations have merit remains to be decided.

*Id.* at 990-91. The "no injury" cases have no application here. Only the Defendants can explain why they continue to cite cases that directly conflict with Florida law.

Many courts have rejected the Defendants' approach of using the narrow holding in *Rivera* to prevent their access to court under the standing doctrine. In *Gonzalez v. Pepsico.* 489 F. Supp. 2d 1233, 1238 (D. Kan. 2007), the plaintiffs sued the soft drink manufacturer because notwithstanding the manufacturers' knowledge that it was producing soft drinks containing the toxic substance benzene for consumption by consumers, the company continued to include the ingredients that combined to form benzene in the product to reduce cost and to preserve flavor without warning consumers of the hazard. *Id.* The defendants argued that the plaintiffs had not suffered any injury in fact because they alleged no personal injury and they received what they

paid for when they purchased their beverage products. *Id.* at 1239. The plaintiffs conceded that they had not yet suffered any personal injury, but argued that they had alleged economic damages *which are sufficient to create an injury in fact*. *Id.*  The court *rejected* the defendants' "no injury" argument:

> Here, the complaint alleges that plaintiffs suffered economic damages resulting from the difference between the purchase price of the beverage products as warranted and their actual value considering the potential presence of benzene in those products. Generally, *economic injury is a paradigmatic form of injury in fact*. *See Danvers Motor Co. v. Ford Motor Co.,* 432 F.3d 286, 291 (3d Cir. 2005) (citing *San Diego County Gun Rights Comm. v. Reno,* 98 F.3d 1121, 1130 (9th Cir. 1996)) (*economic injury clearly sufficient basis for standing*); *see also* 15 James Wm. Moore et al., Moore's Federal Practice § 101.40(5)(a) (3d ed. 2006) (*pecuniary injury provides sufficient basis for standing*).  More specifically, plaintiffs' benefit of the bargain damages are sufficient to demonstrate an injury in fact. *See Trew v. Volvo Cars of N. Am., L.L.C.,* No. CIV-S-051379, 2006 U.S. Dist. LEXIS 4890, 2006 WL 306904, at *6 (E.D. Cal. Feb. 8, 2006) (allegation that plaintiff would not have paid as much for vehicle had she known of defect establishes injury in fact). Because plaintiffs have alleged economic damages sufficient to establish an injury in fact, the Court overrules defendants' motion to dismiss for lack of standing.

*Id.* at 1240-41. The *Gonzalez* court also rejected the defendant's reliance on *Rivera.* In *Rivera,* "the Fifth Circuit held that a plaintiff who claims only economic injury in a products liability action does not assert a cognizable injury for standing purposes. [].  Notably *Rivera* focused on plaintiff's attempt to impose liability through products liability law while alleging benefit of the bargain damages grounded in contract law. *Id.* at 1241. (defendant alleged failure to warn and sale of defective product but sought only out of pocket expenses). According to the Fifth Circuit, this oscillation between tort and contract law did not establish an injury in fact because contract damages do not create a concrete injury in tort actions." *Id.* In *Gonzalez,* the court determined that the plaintiffs' warranty and consumer protection claims do not impose tort-based liability on defendants. *Id.* (*Rivera's* evaluation of standing in so called "no-injury products liability actions" is not helpful here.").

The Defendants' have failed to specify how standing is allegedly deficient as to each claim and have instead erroneously mischaracterized each and every count in the TAC as "products liability." However, the majority relate to the harm caused by the Defendants' false and deceptive advertising, which is not products liability. For example, the FDUTPA specifically provides that it is intended "to protect not only the rights of litigants, but also *the rights of the consuming public at large*." *Gritzke v. M.R.A. Holding, LLC,* No. 4:01cv495-RH 2002 U.S. Dist. LEXIS 28085 fn 3 (N.D. Fla. March 14, 2002) citing *Davis v. Powertel, Inc.,* 776 So. 2d 971, 975 (Fla. 1st DCA 2000); see also *Sarkis v. Pafford Oil Co., Inc.,* 697 So. 2d 524, 528 (Fla. 1st DCA 1997); *Delgado v. J.W. Courtesy Pontiac GMC Truck, Inc.,* 693 So. 2d 602, 606 (Fla. 2d DCA 1997).

Contrary to the Defendants' claims, FDUTPA standing has been found *even where there has been no purchase of a product*. The *Gritzke* court *rejected* the defendant's argument that the Plaintiff lacked standing because she had not purchased the product since all that FDUTPA requires is that "anyone" be aggrieved by a violation of the statute. *Id.* at **11-13. "*Section 501.211(1), Florida Statutes*[,] is broadly worded to authorize declaratory and injunctive relief *even if those remedies might not benefit the individual consumers who filed the suit*." *Davis v. Powertel, Inc., 776 So. 2d 971, 975 (Fla. 1st DCA 2000)*. FDUTPA "is designed to protect not only the rights of litigants, but also the rights of the consuming public at large." *Holt v. O'Brien Imports of Ft. Myers, inc.,* 862 So. 2d 87, 89 (Fla. 2d DCA 2003) citing *Davis* at 975. Moreover, a product need not fail to operate or cause injury to be actionable; rather, where the plaintiff does not get the benefit of the bargain, the plaintiff is entitled to damages. *Collins v. Daimler Chrysler Corp.,* 894 So. 2d 988, 990-91 (Fla. 5th DCA 2004). Any attempt to limit FDUTPA

liability is contrary to public policy. *Holt,* 862 So.2d at 89 citing *Rollins, Inc. v. Heller,* 454 So. 2d 580 (Fla. 3d DCA 1984).

The Plaintiffs have also met standing requirements by alleging economic harm as to both their fraudulent and negligent misrepresentation claims. *See Martin v. Brown,* 566 So. 2d 890, 891-92 (Fla. 4th DCA 1990) (Florida has adopted two standards for the measurement of damages in a *fraudulent misrepresentation* case, (1) the benefit of the bargain, which awards damages  as the difference between the actual value of the property and its value had the facts regarding it been true and (2) the out of pocket rule which  is the difference between the purchase price and the real or actual value; *Gilchrist Timber Co. v. ITT Rayonier Inc.,* 472F.3d 1329, 1330-31 (11th Cir. 2006) (Under Florida law, damages from *negligent misrepresentations* are either "Out-of-pocket loss," which is defined as the difference between the value of what the buyer paid and the market value of what was received in return or the "benefit-of-the-bargain rule," which is "[t]he principle that a defrauded buyer may recover from the seller as damages the difference between the misrepresented value of the property and the actual value received."). The Plaintiffs have also alleged out of pocket and consequential damages under their express and implied warranty, negligence and strict liability claims for the illness and death of their cats and dogs and for veterinary costs. [DE 333 ¶¶1-2, 109, 111].

Other courts have similarly held that economic injury establishes the requisite injury necessary for Article III standing.  "A buyer who is induced to pay an unlawfully inflated price for goods or services *obviously* suffers an actual injury – an 'injury in fact,' to use the common expression." *County of Oakland v. Detroit,* 866 F.2d 839, 845 (6th Cir. 1989); *Delahunt v. Cytodyne Techs.,* 241 F. Supp. 2d 827, 833-34 (S.D. Ohio 2003) (Each class member suffered an injury because of the misrepresentation of the true nature of the product at the time of sale

because each class member paid for a product that differed from what it was represented to be, and thereby incurred a financial injury equal to the amount they paid for the product); *Brunwasser v. T.W.A., Inc.,* 541 F. Supp. 1338, 1347 (W.D. Pa. 1982) (The Plaintiff was injured by purchasing tickets to London which were advertised as a special non-stop Pittsburgh to London fare, but never received the specific service advertised). In *Fort Lauderdale Lincoln Mercury v. Corgnati,* 715 So. 2d 311 (Fla. 4th DCA 1998), the court also ruled that FDUTPA "entitles a consumer to recover damages attributable to the diminished value of the goods or services received." *Corgnati* at 314. ("…the Legislature clearly intended as a matter of public policy, to create a simplified statutory cause of action which bestows additional substantive remedies on the citizens of this state to recover economic damages related solely to a product or service purchased in a consumer transaction infected with unfair or deceptive trade practices or acts."). *Id.* FDUTPA only requires that the Plaintiffs allege that they are aggrieved by a violation of the statute that has occurred, is now occurring or is likely to occur in the future and it shall be construed liberally to protect the rights of the consuming public. *See Davis v. Powertel,* 776 So. 2d 971 (Fla. 1st DCA 2000). The Defendants "no injury" arguments are unavailing.

2.     **The Plaintiffs have alleged class representative standing under Rule 8(a)**

The Defendants next argue that the Plaintiffs cannot seek relief on behalf of others similarly situated because (1) they have failed to allege individual standing, (2) a Defendant class does not assist them with standing and (3) the juridical links doctrine fails to provide a basis for class representative standing.[32] [DE 336 p. 39].    As discussed above, the Plaintiffs have alleged all of the requirements for individual standing.   A Defendant Class and the juridical links

---

[32]  The Defendants claim that the doctrine is not applicable in this case because (1) participation in an industry or interaction with trade associations do not put the Defendants in a sufficiently independent legal relationship with one another and (2) the juridical link doctrine is almost entirely limited to cases involving state officials. [DE 336 p. 40]. The Defendants are wrong.

doctrine provide a basis for standing, although that inquiry should be reserved for class certification.

As discussed above, the Plaintiffs have generally averred individual standing sufficient for the Court to *presume that general allegations embrace those specific facts that are necessary to support the claim, which is all that they are required to do at this stage of the litigation*.   The Defendants nevertheless curiously cite *Pope v. Clearwater,* 138 FRD 141, 144 (M.D. Fla. 1991) which undermines their standing argument.   In that case, the court analyzed two proposed subclasses relating to service charges and non-refundable deposits for water service and rejected the sort of hypertechnical standing requirements that the Defendants request the Court to grant here because the court was not convinced that some of the proposed members of the two subclasses lacked standing to assert claims against the City of Clearwater "as the distinctions made between past and present customers, *between customers who have paid their accounts and those who have not*, and between customers who have availed themselves to procedures available according the practice of custom do not apply here. The constitutional questions that must be resolved as to each proposed member are the same."   *Id.* While *Pope* did indicate that named class representative would need to allege standing against each unnamed defendant in the proposed defendant class*, Pope* was a class certification case and not a ruling on a motion to dismiss. *Id.* at 142   However, the Defendants also cite *Brown v. Kelly,* 244 FRD 222, 239 (S.D.N.Y. 2007), which holds to the contrary.   *Id.* (ruling that the defendants' argument that the plaintiffs did not have standing to prosecute class claims against the absent members of the proposed defendant class was "*specious*").  [DE 336 p. 39 fn 15].

In another case cited by the Defendants, *In re Enron Corp. Secs., Derivative & ERISA Litig.,* No. H-01-36242004 U.S. Dist LEXIS 8158 (S.D. Tex. February 25, 2004), for the general

proposition that each class member must have a claim against each named defendant in a class or subclass, the Defendants omitted the court's reference to the *juridical links doctrine as an exception* to that general rule. *Id.* at 107. The Defendants also cite *In re Tri-State Crematory Litig.,* 215 F.R.D. 660, 686 (N.D. Ga. 2003), as undermining the application of the juridical link doctrine. While the *Tri-State* court rejected the juridical links doctrine in that case, the court *nevertheless found joinder of the defendants appropriate*. *Id* at 688.

The Ninth Circuit first announced the judicial links doctrine in *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973). *La Mar* held that a plaintiff without a cause of action against a specific defendant cannot "'fairly and adequately protect the interests' of those who do have such causes of action," for purposes of Rule 23(a). *Id*. at 466. Nevertheless, the court held that if the plaintiffs as a group – named and unnamed – suffered an identical injury at the hands of several parties related by way of a conspiracy or concerted scheme, or otherwise "juridically related in a manner that suggests a single resolution of the dispute would be expeditious," the claim could go forward. *Id*. Post-*LaMar* cases from other courts have suggested that if all the defendants took part in a similar scheme that was sustained either by a contract or conspiracy, or was mandated by a law, it is appropriate to join as defendants *even parties with whom the named class representative did not have direct contact*. *See*, *e.g., Moore v. Comfed Sav. Bank*, 908 F.2d 834, 838-39 (11th Cir. 1990); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423-24 (6th Cir. 1998). *See also Murer v. Montana State Comp. Mut. Ins. Fund*, 257 Mont. 434, 849 P.2d 1036, 1039 (Mont. 1993).

The Defendants are correct that the juridical links doctrine was *initially* applied to government defendants, but it has since been extended to the private sector where defendants are connected by a common agreement, a uniform practice *and to promote judicial efficiency*. *See In*

*re Tri-State Crematory Litig.,* 215 F.R.D. at 686. The courts have supplanted the juridical link doctrine's focus on a uniformly enforced rule or agreement by a broader application of the doctrine to promote judicial efficiency. For example, in *Weiss v Winner's Circle of Chicago, Inc*, No. 91C2780 1995 US Dist LEXIS 18713 (N.D. Ill. 1995), a Rule 23(b)(3) plaintiff class joined three defendants under Rule 20 because they had provided financing to consumers through another defendant, who had utilized fraudulent sales practices. *Id.* at 9-10. Although the named plaintiff had no cause of action with regard to two of the defendants, the court applied the juridical links doctrine because "it would be expeditious to allow the Lender defendants to be joined and obtain a single resolution." Id at 5-6.  In *Monaco v Stone*, 187 FRD 50 (E.D.N.Y. 1999), the court defined a juridical link as a "legal relationship which relates all defendants in a way such that *a single resolution of the dispute is preferred to a multiplicity of similar actions*." *Id at 65-66,* quoting *Luyando v Bowen,* 124 FRD 52, 58 (S D NY 1989). *See also Leer v. Washington Educ. Assoc.,* 172 FRD 439, 447 (W.D. Wash. 1997) (same). Similarly, in *Bromley v Michigan Education Association-NEA*, 178 FRD 148 (E.D. Mich. 1998) the court applied the juridical link exception because "*all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious*." *Id.* at 163, quoting *Thompson,* 709 F2d at 1204-05 (emphasis omitted). *See also Cedar Crest Funeral Home, Inc. v. Lashley,* 889 SW2d 325, 331 (Tex. App. 1993).

The TAC includes joinder allegations and states that the Defendants are juridically linked in the TAC. [DE 333 ¶113].  The Plaintiffs allege that "the relief sought against the Defendants arises out of the same or similar conduct on or about the same time and questions of law and/or fact are common to each Defendant Pet Food Manufacturers, Pet Food Retailers and Pet Specialty Retailers, including their defenses." *Id.*  That allegation is best demonstrated by the

Defendants' Motion where the defenses for each Defendant are *identical*, except as to Defendant

Kroger's personal jurisdiction objection. [DE 336 pp. 1-107].  The Plaintiffs' also allege that the

Defendants "are part of a homogenous industry that operates in the same or similar manner

regarding the issues raised in this lawsuit." *Id.*

> The Defendant Pet Food Manufacturers produce distribute and sell many various brands of pet food and treats yet they are often manufactured by  the same manufacturer(s) and use the same or substantially similar ingredients from the same suppliers.  The Defendants also advertise, market and sell pet food and/or treats in the same or similar manner.

[DE 333 ¶¶113].   They further allege that the Defendants are juridically linked by trade

Associations such as the Pet Food Institute which represent them in interfacing with the Food

and Drug Administration and acts as the pet food industry's advisor and lobbyist at the American

Association of Feed Control Officials ("AAAFCO"), that they have acted in concert in violation

of state consumer law and false advertising statutes and by lobbied state and federal officials.  *Id.*

> The Defendant Class Representatives and the Class are represented by trade associations, such as the Pet Food Institute, the Pet Industry Joint Advisory Council, the American Pet Products Manufacturers Association and the National Retail Federation, which have undertaken to represent them before federal and state governments and regulators to protect and preserve the Defendants' interests to the detriment of the Plaintiffs and consumers. For example, the Pet Food Institute has *appeared on behalf of the Defendants at Congressional inquiries; as an Advisor to the [AAFCO]*; *and in formulating proposed regulations concerning pet food*. The Pet Food Institute has also *interfaced with the Food and Drug Administration* regarding pet food and/or treat issues, *participated in investigations with state and federal officials*, *assisted with regulatory filings* and *represented the Defendants in the media by making public statements regarding everything from pet food regulation to numerous pet food recalls*.  The Pet Food Institute and other trade associations to which the Defendants all belong *act in concert and exist for the express purpose of representing their members and protecting and asserting their common interests*. The Defendant Pet Food Manufacturers, Pet Food Retailers and trade associations, such as *the Pet Food Institute, have acted in concert and are bound by a common course of conduct to injure the Plaintiffs by, among many other things, providing information that is deceptive to the Plaintiffs and consumers in violation of state consumer law statutes and false advertising statutes and lobbying state and federal*

> _governments, all of which has resulted in injury to the Plaintiffs and the consumer_
> _class._   The Defendants are also juridically related by and through the
> aforementioned trade associations such that _a single resolution of the claims in_
> _this lawsuit would be expeditious and preserve judicial economy by avoiding a_
> _multiplicity of lawsuit filings and trials as described hereinabove and below_.

_Id._  Contrary to the Defendants arguments, these allegations are more than sufficient to establish a juridical link.

Contrary to the Defendants' claims, trade associations have been found to be sufficient to establish a juridical link.  In _Heffler v. Glaxo Welcome Inc.,_ No. 90-71261992 U.S. Dist LEXIS 3090 (E.D. Pa. March 10, 1992) the court found a juridical link based on the defendant insurance companies' participation in a trade association whose primary function was to develop a standard policy form to comply with state regulations. _Id._ at **2, 10-11. The Pet Food Institute goes well beyond creating forms.  As set forth in the TAC, the Pet Food Institute is an advisor to AAFCO and interfaces with the FDA on behalf of the individual Defendant Manufacturers.  The regulatory scheme in which the Pet Food Institute represents the Defendant Manufacturers is a central part of the Defendants' defenses, as best evidenced by their Motion.

In _Weld v. Glaxo Wellcome Inc.,_ 746 N.E. 2d 522, 90-91 (Mass. 2001), the Massachusetts Supreme Court ruled that despite evidence of independent, parallel negotiations, because contractual obligations between CVS and manufacturers were administered in a substantially similar manner,  the manufacturers were juridically linked through their contacts with CVS to satisfy typicality. _Id._ Similarly, in this case, the Plaintiffs' pre-suit investigation indicates that there are agreements between the Defendant Manufacturers and the Retailers as to the marketing of their pet food that is the same or similar, even though they are negotiated separately with each Defendant.

In *Moore v. Comfed Savings Bank*, 908 F.2d 834 (11th Cir. 1990), the Eleventh Circuit affirmed the district court's ruling joining defendants rather than certifying a defendant class even though the named plaintiff lacked a cause of action against each defendant because, as in the present case, *"[n]o court would want to have 644 separate lawsuits."* *Id.* at 838-39. The Eleventh Circuit determined that where, as here, there is a contractual obligation among the defendants or, as here, a statute requiring common action by the defendants, "it is appropriate to join as a defendant a party with whom the named class representative did not have a direct contact." *Id.* at 838.   In this case, as the Defendants have repeatedly pointed out, there is a *minimal* regulatory framework that creates identical defenses, there are agreements among and between the Defendants relating to the manufacturing and marketing of pet food and it is alleged in this case that they have violated consumer and false advertising statutes.   It is a matter of public record that their defenses are identical.  As the Seventh Circuit ruled in *Payton v. Kane,* 308 F.3d 673, 681-82 (7th Cir. 2002),

> We see no reason to truncate potentially efficient uses of the class action device when they are otherwise not prohibited and here *the class action device may be superior to 19, or 102, different cases in each Illinois county challenging the effects of the same state statute*. . .Most importantly, *there are cases where appropriate relief may only be obtained through one broad suit*, and it will be impossible to find a named plaintiff to match each defendant. See, *e.g., Ragsdale v. Turnock*, 841 F.2d 1358 (7th Cir. 1988).  If the defendants with whom the named representative did not interact directly *are following a common statute* (and this common factor assures that the representative has the same legal claim as the unnamed parties – or, to use the terminology other courts have adopted, the defendants are "juridically linked"), *we see nothing in either standing doctrine or Rule 23 that automatically precludes use of the class action device.*
>
> This is not a case where the named plaintiff is trying to piggy-back on the injuries of the unnamed class members. … *These putative representatives were personally injured by the operation of the very same statute that caused the injuries to all other members of the proposed class*.

*Id.* The Plaintiffs in this lawsuit have each been injured by one or more of each of the Defendants who have identical defenses. The Defendants are bound by a minimal regulatory scheme at the state and federal level which each Defendant has raised as a defense. The Defendants have violated consumer false advertising laws. Finally, and most importantly, it would promote judicial economy to resolve this dispute before this Court rather than having several thousand (or more) individual lawsuits or a number of class action lawsuits which would, in any event, likely be transferred to this Court for resolution anyway. The Defendants have failed to provide a basis for dismissing the TAC based upon class representative standing.

**C.    The Plaintiffs have stated claims for Negligent and Fraudulent Misrepresentation and under the Florida Deceptive Trade Practices Act**

The Defendants breezily assert that the Plaintiffs have failed to allege "Their Fraud-Based" Claims (Counts I-III) with Sufficient Particularity." [DE 336 p. 49]. The Plaintiffs have met the Rule 9(b) requirements for their fraudulent misrepresentation claims and the Plaintiffs' negligent misrepresentation and Florida Deceptive and Unfair trade Practices Act ("FDUTPA") claim is _not_ a "fraud-based" claim.

**1.    A FDUTPA claim is _not_ subject to Rule 9(b) heightened pleading requirements**

In a footnote, the Defendants acknowledge that _some_ federal courts have held that Rule 9(b)'s heightened pleading requirements apply to FDUTPA claims that are "as is the case here, based on allegations of fraud." [DE 336 p. 33 fn. 20]. In support, the Defendants reference *Garcia v. Santa Maria Resort, Inc.,* No. 07-10017-civ-King/Garber 2007 U.S. Dist LEXIS 86193 *10 (S.D. Fla. November 15, 2007), *Stires v. Carnival Corp.,* 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002) and *Cannon v. Metro Ford, Inc.,* 242 F. Supp. 2d 1322, 1332 (S.D. Fla. 2002). However, in *Garcia,* the court simply lumped the plaintiffs' 10b-5, Interstate Land Sales Act, FDUTPA, negligent misrepresentation and Florida false advertising claims together and held that

these claims are all subject to Rule 9(b) heightened pleading requirements without any citation to any legal authority or any analysis of the FDUTPA claims. *Garcia,* 2007 U.S. Dist LEXIS 86193 at * 27.

Based on rulings from federal courts in Texas, Minnesota and Illinois, the *Stires* court extrapolated that "[m]ost courts construing claims alleging violations of the <u>*Federal Deceptive Trade Practices Act*</u> or its state counterparts have required the heightened pleading standard requirements of Rule 9(b). *Id.* 1321-22. *Stires* relies on only <u>*one*</u> Florida intermediate appellate opinion reversing a jury verdict in the plaintiff's favor where the defendant had counterclaimed under FDUTPA. *See Steyr v. Daimler Puch v. A. & A. Bicycle Mart, Inc.,* 453 So. 2d 1149, 1149-50 (Fla. 4th DCA 1984). In that case, the Fourth District ruled that the evidence "adduced at trial did not support [the defendant's] claim under [FDUTPA] and, moreover, would not support a count in common law fraud. If the matter had proceeded in normal course and the count in common law fraud had been originally pled, the plaintiff would have been forced to allege with particularity under Florida Rules of Civil Procedure 1.120(b) the particular acts of fraud upon which it relied. In this case we have merely the statement of counsel at the conclusion of the counterclaimant's case that 'we have a common law fraud. We have pled and proven every count of common law fraud.'" *Id. Cannon* likewise <u>*infers*</u> that a FDUTPA claim is a fraud claim because the plaintiff's FDUTPA claim specifically alleged "fraud in the sale and financing of motor vehicles," but again there was no analysis. *Cannon,* 242 F. Supp. 2d at 1326, 1332 (dismissal with leave to amend). *Garcia, Stires* and *Cannon* fail to support the Defendants' attempt to apply Rule 9(b) heightened pleading requirements to the Plaintiffs FDUTPA claim.

*This Court, and numerous other Florida and federal courts*, have concluded that FDUTPA claims are *not* subject to Rule 9(b) heightened pleading requirements because that would subvert the legislative intent of the Act.

> The FDUTPA, sections 501.201-.213, Fla. Stat., provides a cause of action for "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). A violation of the FDUTPA may be based upon "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." FLA. STAT. § 501.203(3)(c). The FDUTPA "is designed to protect not only the rights of litigants, but also the rights of the consuming public at large." *Davis v. Powertel, Inc.,* 776 So.2d 971, 975 (Fla. 1st DCA 2000). The FDUTPA applies to private causes of action arising from single unfair or deceptive act in the conduct of any trade or commerce, even if it involves only a single party, a single transaction, or a single contract. *PNR, Inc. v. Beacon Prop. Mgmt., Inc.,* 842 So.2d 773, 777 (Fla. 2003).
>
> When addressing a deceptive or unfair trade practice claim, the issue is not whether the plaintiff actually relied on the alleged practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances. *Davis,* 776 So.2d at 974. A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, *although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue. Id.* at 973. *Therefore, under the FDUTPA, a plaintiff need not prove the elements of fraud. Id.; W.S. Badcock Corp. v. Myers,* 696 So.2d 776 (Fla. 1st DCA 1996); *Urling v. Helms Exterminators, Inc.,* 468 So.2d 451 (Fla. 1st DCA 1985).

*Gold Coast,* 2006 U.S. Dist. LEXIS 96386 **4-6 (S.D. Fla. February 6, 2006) (J. Altonaga). *See also Romano v. Motorola, Inc.,* No. 07-civ-60517-Cooke-Brown 2007 U.S. Dist. LEXIS 86472 *3 (S.D. Fla. November 26, 2007); *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.,* 2007 U.S. Dist. LEXIS 85083 *33 (M.D. Fla. November 16, 2007); *State of Fla. v. Tenet Healthcare, Corp.,* 420 F.Supp. 2d 1288, 1310 (S.D. Fla. 2005) (Tenet's assertion that FDUTPA had to be plead with particularity held to be *meritless*) (J. Seitz); *Office of the Attorney Gen., Dept. Legal Affairs v. Wyndham Int'l, Inc.,* 869 So. 2d 592, 598 (Fla. 1st DCA 2004); *Turner Greenberg*

*Assocs. v. Pathman,* 885 So. 2d 1004, 1009 (Fla. 4th DCA 2004); *Latman v. Costa Cruise Lines, N.V.,* 758 So. 2d 699, 703 (Fla. 3d DCA 2001). The Plaintiffs' FDUTPA claim is <u>not</u> subject to Rule 9(b).

**2.    The Plaintiffs have stated a claim for FDUTPA under Rule 8(a)**

As this Court noted in *Gold Coast Racing,* the elements of a FDUTPA claim are not delineated in the statute. *Gold Coast Racing* 2006 U.S. Dist. LEXIS 96386 *5 (S.D. Fla. February 6, 2006) (J. Altonaga). The operative inquiry then is whether the TAC has put the Defendants on notice that the deceptive practices are likely to mislead consumers. *Id.* The Plaintiffs have more than met their burden by, for example, alleging:

- Retailers adopt Defendant manufacturers marketing and make their own representations

- Purported "Veterinarian Recommended" endorsements that fail to disclose the basis for that statement or that veterinarians profit from selling the pet food

- Leading consumers to believe that pet food ingredients and claimed benefits are adequately scientifically substantiated prior to using the ingredients in pet food with each ingredient having been examined to demonstrate the long-term benefit of the ingredient on the cat or dog

- Marketing the pet food as human grade when it is comprised of inedible garbage that has been deemed unfit for human consumption through multiple media

- Use of pictures and food pyramids to market the pet food as human-grade when it is not

- Leading the Plaintiffs to believe that the pet food is safe based upon claims of extensive research which leads the Plaintiffs to believe that the Defendants explicit and implied claims are adequately supported scientifically when they are not

- Claims relating to quality, content, health, medical, hygienic, dietetic and age specific benefits are not adequately supported by competent and reliable scientific data

- Marketing the pet food as "premium" when alleged "premium" pet food is the same as non-premium except for the higher price

- Dry "light" cat and dog food is filled with carbohydrates that cause obesity, allergies and other known health problems

- The Defendants' deceptively market comparisons with competitors without disclosing the shortcomings of its own product

- Marketing dry food as good for cats despite scientific studies linking dry cat food consumption with diabetes and feline lower urinary tract disease

- The plaintiffs purchased the Defendants based upon the Defendants' marketing

- Based upon the Defendants' marketing and failures to disclose they would not have purchased the pet food had they known the truth

[DE 333 ¶¶1-2, 3-32, 65, 66, 67, 68, 69, 70, 71, 72-74, 75-91, 92-93, 94-98, 102, 104, 106, 107-109, 110, 111]. The FDUTPA claim more than meets Rule 8(a) notice pleading requirements.

*See Gold Coast Racing, Inc.,* 2006 U.S. Dist. LEXIS 96386 at **3-6.

3.    **The Plaintiffs' Fraudulent and Negligent Misrepresentation claims meet Rule 9(b) requirements and state a claim**

As another alleged basis for dismissal, the Defendants claim that the negligent and fraudulent misrepresentation claims[33] do not meet Rule 9(b) pleading requirements. [DE 336 pp. 49-52]. Rule 9(b) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which require a plaintiff to plead only a short, plain statement of the grounds upon which he is entitled to relief. *See Durham v. Bus. Mgmnt. Assoc.,* 847 F.2d 1505, 1512 (11th Cir. 1988) ("Allegations of date, time or place satisfy the Rule 9(b) requirement that the *circumstances* of the alleged fraud must be pleaded with particularity, <u>*but alternative means are*</u>

---

[33] The elements of a fraudulent misrepresentation claim are : (1) a misrepresentation of material fact or suppression of the truth; (2) [a] knowledge of the representor of the misrepresentation or[b] representations made by the representor without knowledge as to either the truth or falsity, or [c] representations made under circumstances in which the representor ought to have known, if he did not know, of the falsity therof; (3) an intention that the representor induce another to act on it; and (4) resulting injury to the party acting in justifiable reliance on the representation. *Gold X-Press Corp. v. Very Beary Venture I,* 2003 U.S. Dist. LEXIS 19747 *8-9 (S.D. Fla. 2003) Negligent misrepresentation additionally requires: (1) a misrepresentation of material fact; (2) that the representor either knew or should have known was false or made without knowledge of truth or falsity; (3) the representor intended to induce another to act on the misrepresentation; and (4) that injury resulted to plaintiff acting in justifiable reliance on the misrepresentation. *Id.*

*also available to satisfy the rule*."); *Friedlander v. Nims*, 755 F.2d 810, 813 n. 3 (11th Cir. 1985); *see also Howell Petroleum Corp. v. Weaver*, 780 F.2d 1198, 1199 (5th Cir.1986)*; Medalie v. F.S.C. Sec. Corp,* 87 F. Supp. 2d 1295, 1306 (Fla. S.D. Fla. 2000)(J. Gold). ("The application of [Rule 9(b)] must not abrogate the concept of notice pleading.") *citing Durham*.

The Defendants concede, as they must, that the Plaintiffs have alleged the Defendant Manufacturers who marketed pet food, the specific Retailers which adopted the Defendant Manufacturers representations (and made their own) and that their purchases were made based upon the Defendants' marketing. [DE 336 p. 44].   The TAC further provides a list of the misrepresentations and omissions that have been made by the Defendant Manufacturers on bags, cans and pouches, and in multiple media on a continuous basis since May 9, 2003.  [DE 333 ¶69]. The TAC also includes specific examples such as Defendant Natura's marketing, which represents that its pet food is the "Healthiest Pet Food in the World" and that "[w]e use only ingredients you'd eat yourself: quality meats, whole grains, fresh fruits and vegetables, and complete vitamin and mineral supplements." [DE 333 ¶86 & Ex. 10].  In truth, Natura uses ingredients such as chicken meal,[34] which is the same inedible byproduct used by all of the other Defendant Manufacturers and is *not* approved for human consumption. *Id.*   Moreover, the Plaintiffs have alleged reliance on the Defendants' misrepresentations in purchasing the pet food and that the Plaintiffs were harmed as a result of the purchase.  [DE 333 ¶¶1-2, 3-32, 69, 71, 107-109, 110].

The TAC also specifically summarizes the misrepresentations and omissions and provides examples and pictures of the manner in which the Retailers and Pet Specialty Retailers make their own misrepresentations and omissions and adopt the misrepresentations of the

---

[34] Contrary to the Defendants' contention, the Plaintiffs are not suing the Defendants because they put chicken meal in the food; rather, like the Natura marketing above, they mislead consumers into believing that they are purchasing human-grade food, when they are not.

Defendant Manufacturers. [DE 333 ¶¶67-69, 70, 71-74, 87-91, Exs. 25-29]. Contrary to the Defendants claims, the Plaintiffs have not simply "lumped" the Defendants together. [DE 336 p. 51]. They have provided specific examples as to each Defendant and have further categorized the types of misrepresentations and summarized them. The Defendant Manufacturers, Retailers and Pet Specialty Retailers are part of an extremely homogenous industry. Their pet food is made by the same processes, often by a co-packer who makes food for a number of different manufacturers, using the same or similar ingredients and it is marketed in the same or similar manner either directly or through agreements with Retailers and Pet Specialty Retailers, which adopt the Defendants' marketing. Accordingly, the Defendants make highly similar misrepresentations and omissions which form the basis for the Plaintiffs' fraud claims.

These fraud allegations meet Rule 9(b) requirements and provide fair notice of the claims to the Defendants:

> *Plaintiffs adequately allege the time period, roughly from 1979-83, during which Defendants' fraudulent conduct occurred*. *See Thomas v. Tramiel*, 105 F.R.D. 568, 570 (E.D.Pa. 1985) (class period defined as "beginning on or before July 1, 1983, through at least October 28, 1983"); *Kirschner v. Cable/Tel Corp.*, 576 F.Supp. 234, 238 (E.D.Pa. 1983) ("[i]n or about December 1977 and December 1978 Defendants made number of fraudulent misrepresentations); **[*5]** *Merrit v. Libby, McNeill & Libby*, 510 F.Supp. 366, 373 (S.D.N.Y. 1981) (chronology of defendants' participation between 1973 and 1975 in scheme to defraud was adequate to permit responsive pleading).

> Defendants charged in the fraud counts have been *informed with specificity of the factual underpinnings of the charges against them*. More prolixity by Plaintiffs would indeed be discouraged by the Federal Rules of Civil Procedure. *See*, *e.g.*, *duPont v. Wyly*, 61 F.R.D. 615, 630-32 (D.Del. 1973). As to Plaintiffs' allegations with regard to omissions and failures to disclose, it must be observed that "[*conduct which never occurred cannot be described with greater particularity than to state that it did not occur*." *Cottman Transmission Systems, Inc. v. Dubinsky*, 95 F.R.D. 351, 353 (E.D. Pa. 1983).

*See In re U.S. Oil & Gas Litig.,* No. 83-1702-A1-civ-Hoeveler 1988 U.S. Dist LEXIS 2217 *5 (S.D. Fla. February 8, 1988)(J. Hoeveler). In *Seville Industrial Machinery Corp. v. Southmost*

*Machinery Corp.,* 742 F.2d 786, 791 (3d Cir. 1984)*,* the plaintiff alleged that a group of individual and corporate defendants fraudulently induced the plaintiff to enter into a series of sales contracts for several hundred pieces of machinery. The plaintiff sued under RICO. The district court dismissed the RICO claim for failure to plead fraud with sufficient particularity, finding "the allegations of fraud...deficient because Seville did not describe the date, place or time of the phone calls and letters that defendants allegedly used in furtherance of their fraudulent scheme." *Id.* The Court of Appeals reversed, noting that the plaintiff had *set forth the content (though not the precise words) of the alleged misrepresentations. Id.* "The complaint's specificity as to these matters in effect compensated for its lack of specificity as to the particular phone calls and letters through which the alleged fraud was carried out." *Id.*

In *Alfaro v. E.F. Hutton,* 606 F. Supp. 1100, 1108-09 (E.D. Pa. 1985), the court found that the plaintiffs sufficiently plead fraud by alleging the different types of misrepresentations made to them and while they were not presented verbatim as they were stated to the plaintiffs, "the allegations are more than sufficient to put Hutton on notice of the nature of the misrepresentations." *See also In re Catanella and E.F. Hutton & Co. Securities Litigation,* 583 F. Supp. 1388, 1398 (E.D. Pa. 1984) ("when the transactions are numerous and take place over an extended period of time, less specificity is required"); *In re Caesars Palace Securities Litigation,* 360 F. Supp. 366, 388 (S.D.N.Y. 1973) ("[a] strict application of Rule 9(b) in class action securities fraud cases could result in substantial unfairness to persons who are the victims of fraudulent conduct"). This approach accords with the Eleventh and Third Circuit's admonition to construe Rule 9 in light of the flexibility with which the Federal Rules govern civil pleadings. *Christidis, v. First Pennsylavania Mortgage Trust*, 717 F.2d 96, 99-100 (3d Cir. 1983). ("Rule 9(b) should not be applied so strictly as to deprive a legitimate plaintiff of his opportunity to

develop his case through discovery while a 'sophisticated defrauder [ ]… successfully conceals the details of [his] fraud."); *In re Caesars Palace Securities Litigation*, 360 F.Supp. 366, 388 (S.D.N.Y. 1973) (Less specificity is required when the complaint presents the claims of a class and individual identification of the circumstances of the fraud would be voluminous). *See also Denny v. Carey,* 72 F.R.D. 574, 578 (E.D. Pa. 1976) ("Rule 9(b) requires slightly more notice than would be forthcoming under Rule 8"). "[A] too-rigorous application of Rule 9 would not only bar worthy claims but also encourage unduly long and complex pleadings." *See Thomas v. Tramiel,* 105 F.R.D. 568, 572 (E.D. Pa. 1985) (cited with approval by Judge Hoeveler in *In re U.S. Oil & Gas,* 1988 U.S. Dist LEXIS 2217 \*5); *duPont v. Wyly,* 61 F..R.D. 615, 631-32 (D. Del. 1973). In this case, the marketing took place over a four year period of time in multiple media. Setting forth each and every misrepresentation would require reams of paper. The Plaintiffs have provided the Defendants with notice of the nature and subject of the misrepresentations.

The TAC meets the Rule 9(b) requirements and provides fair notice of the fraud and negligent misrepresentation counts.[35] The Defendants urge this Court to dismiss the TAC because the Plaintiffs do not allege what statements were fraudulent, which is not true. [DE 336 p. 51]. They also claim that the TAC does not identify what particular statements were made and when and in what manner they were made. As set forth above, this level of specificity is not required. *See Alfaro*, 606 F.Supp. at 1107-1108 and cases cited *supra*. [DE 336 p. 51].

As another ground for dismissal, the Defendants also assert that the TAC does not contain allegations that any Plaintiffs saw, heard or read any particular statement. [DE 336 p.

---

[35] The Defendants cite to *Garcia v. Santa Maria Resort, Inc.,* 2007 U.S. Dist LEXIS 86193 \*\*29 (S.D. Fla. November 15, 2007) which was dismissed because the court ruled that the plaintiff could not have relied on alleged misrepresentations that were contradicted by the express terms of a contract. [DE 336 p. 29, 33]. The case is not analogous to these fraud claims.

51]. However, the Plaintiffs have alleged that they purchased the pet food based upon the marketing of the Defendants which is summarized and specified by example and through pictures in the TAC. [DE 333 ¶¶3-32, 67-93, 94-98, 101-102, 103-108, Exs. 1-33].  Under Rule 9(b), that is sufficient *Id.* and cases cited therein. Finally, and incredibly, the Defendants claim that the Plaintiffs have failed to allege the manner in which they were harmed by a specific Defendant despite that fact that the TAC specifically alleges each Defendant which manufactured and marketed the pet food, the Defendant retailer who marketed and sold it to the Plaintiffs, summarized the misrepresentations and also provided specific examples and photographs.  The allegations far exceed those that other courts have ruled meet with Rule 9(b). *See Supra.*  Courts have held that where the fraud occurred over an extended period of time and there were numerous instances, the Rule 9(b) requirements are less stringently applied. *See The Metrahealth Ins. Co. et al. v. Anciote Psych. Hospital Ltd.,* No. 3:95CR7361997 U.S. Dist. LEXIS 18690, at *7 (M.D. Fla. October 23, 1997).  The Eleventh Circuit has also held that while the circumstances of the fraud must be plead with particularity, that is a *flexible standard. See Durham,* 847 F.2d at 1512 (11th Cir. 1998), *citing Seville Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 790-91 (3d Cir. 1984)(reversing dismissal of fraud claim because district court subjected fraud allegations to too strict a scrutiny – date, time and place fulfill particularity requirement, but Rule 9(b) does not require same and plaintiffs are entitled to use alternate means of pleading fraud claims).  Quite simply, the Defendants are yet again urging the Court to dismiss the fraud claims based on a heightened pleading standard that exceeds Rule 9(b) requirements.

**D.       The economic loss rule does _not_ bar to the Plaintiffs negligence claim**

The Defendants urge this Court to dismiss the Plaintiffs' negligence claim with prejudice based upon the economic loss rule.  As support for dismissal, the Defendants curiously cite cases stating that where the parties are in contractual privity[36] or where the defendant is a manufacturer or distributor of a product and the defect in the product causes damage to the product but causes no personal injury or damage to other property, the Plaintiffs negligence claim should be dismissed. [DE 336 p. 65].  The Plaintiffs negligence claim is seeking damages for the illness and injury that the Defendants' pet food wrought on their cats and dogs, not for damage to the pet food itself. The Defendants included this request to dismiss the negligence claim under the economic loss rule _despite the fact that the Plaintiffs have alleged that_:

> …each and every Plaintiff" purchased pet food and treats from specified Defendants _and_ that "the Plaintiffs' cat(s) and/or dog(s) have suffered illness and/or death as a result of ingesting the pet food and/or treats... ."

[DE 333 ¶¶1-2, 3-32, 111].   The Defendants nonetheless inexplicably argue that "where a plaintiff can do no more than claim 'disappointed economic expectations,' as is the case here, the economic loss rule precludes a claim of negligence."  [DE 336 p. 65]. _**However, the TAC clearly and specifically alleges damage to property other than pet food.**_  Thus, _none_ of the cases cited by the Defendants supports dismissal because the TAC _alleges injury to the Plaintiffs' cats and dogs_.[37]  This portion of the motion should therefore be subject to sanctions under Rule 11, which specifically provides that motions without legal and factual merit are subject to sanctions.

---

[36] This argument is inconsistent because the Defendants argue that the Plaintiffs are not in contractual privity with the Defendant Manufacturers. [DE 336 p. 74]. Since they believe that there is no privity, there is no bar to the Plaintiff's negligence claim for not having received the pet food and/or treat for which they paid as to the manufacturers.  [DE 336 pp. 65-66, 74].  The economic loss rule does not bar a claim against the Defendant Manufacturers and Co-Packers, such as the Menu Foods Defendants.

[37] While it is offensive to the Plaintiffs to think of their cats and dogs as "property," that is, unfortunately, the current state of the law.  _See e.g.,Fla. Central and Peninsular R.R. Co. v. Davis_, 45 Fla. 276, 277 (Fla. 1903); _Kennedy v. Dr. Byas_, 867 So. 2d 1195, 1197 (Fla.1st DCA 2004)("While a dog may be considered by many to be a member of the family, under Florida law animals are considered to be property."); _Levine v. Knowles_, 197 So. 2d 329, 330 (Fla. 3d DCA 1967).

Fed.R.Civ.P. 11(b)(2) and (3).  Moreover, this is yet another example of the Defendants' attempt to drive up the cost of this litigation by forcing the Plaintiffs to respond to a lengthy motion that is blatantly unsupported in fact and law.  Fed.R.Civ.P. 11(b)(1).  There is no basis whatsoever to dismiss the Plaintiffs' negligence claim.

**E.**    **The Defendants have provided no legal basis to dismiss the Plaintiffs' strict liability claim**

According to the Defendants, the Plaintiffs have failed to allege "ultimate material facts" establishing the elements of strict liability and, therefore, the claim should be dismissed. [DE 336 p. 66].  The Defendants argue that a products liability claim requires a Plaintiff to "*prove*" at the pleading stage that (1) a product (2) produced by a manufacturer (3) was defective or created an unreasonably dangerous condition (4) that proximately caused (5) injury. [DE 336 p. 66].  The Plaintiffs are not required to *establish elements* or proffer *proof* at the pleading stage of this litigation and, under notice pleading, need not even allege a specific fact as to each element of a claim.  *See Mouly v. Art-A-Glow,* No. 07-80104-civ-Ryskamp 2007 U.S. Dist LEXIS 39960 **3-4 (S.D. Fla. June 1, 2007) (J. Ryskamp).  As discussed above, notice pleading also does not require a plaintiff to allege "with precision" each element of a claim, as long as the pleading contains either direct or inferential allegations regarding all of the material elements necessary to sustain a recovery under some viable legal theory. *Roe v. Aware Woman Ctr. For Choice, Inc.,* 253 F.23d 678, 683 (11th Cir. 2001) (The pleading must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial).

Contrary to the Defendants representations, the TAC alleges each and every element of a strict liability claim, i.e., that a product produced by a manufacturer[38] was defective or created an unreasonably safe condition that proximately caused injury to the Plaintiffs. [See DE 336 p. 66]. The TAC alleges that:

- The Plaintiffs purchased food and treats from specific Defendant Manufacturers and Retailers and placed those products in the stream of commerce;

- The food and treats were defective and unreasonably dangerous because the food and treats caused injury, illness and/or death to the Plaintiffs companion pets by including, among other things, adulterated ingredients, additives, chemicals, toxins, and/or contaminants;

- As a direct and proximate cause of the unreasonably dangerous condition of the pet food and treats that the Plaintiffs purchased and fed to their companion cats and dogs, the Plaintiffs suffered property damage and economic losses

[DE 333 ¶¶166-68]. The Defendants citation to *Clark v. Boeing Co.,* 395 So. 2d 1226, 1229 (Fla. 3d DCA 1981) does not support their contention that the Plaintiffs failed to allege the substances that were in the pet food and what caused the injuries to their pets. Unlike the plaintiff in *Clark*, who in a fact pleading jurisdiction simply alleged that defects in an aircraft or engine were the cause of the plaintiff's multiple sclerosis without any supporting facts, the Plaintiffs have more than adequately plead the elements of their strict liability count under the *notice* pleading standard of Rule 8(a). *See McCorvey v. Baxter Healthcare Corp.,* 298 F.3d 1253, 1259 (11th Cir. 2002) (holding that a defect need not be demonstrated with specificity for a defect may be established at trial by inference; "it is 'immaterial that the plaintiffs failed to identify the specific cause of the malfunction since it is inferred that the malfunction itself, under such

---

[38] Florida law has expanded the doctrine of strict liability to others in the distribution chain, including retailers, wholesalers and distributors. *See Samuel Friedland Family Enterprises v. Amoroso,* 630 So. 2d 1067, 1068 (Fla. 1994); *Siemens Energy & Automation, Inc. v. Medina,* 719 So. 2d 312, 315 (Fla. 3d DCA 1998).

72

circumstances, is evidence of the product's defective condition'"); *Rink v. Cheminova, Inc.,* 400 F.3d 1286, 1295 (11th Cir. 2005).

The Defendants' further erroneously argue *again* that the "Plaintiffs have failed to link any specific Plaintiff to any particular pet food product made by any particular Defendant," arguing that the Plaintiffs "can make no claim for strict liability[,] unless they allege that a specific Defendant placed into the stream of commerce a specific product that injured a specific Plaintiff." [DE 336 p. 66]. As discussed above, the Plaintiffs have alleged the specific Defendants that manufactured, produced, distributed and sold food and treats to the Plaintiffs. [DE 333 ¶¶1-2, 3-32]. Since the Plaintiffs have identified the product, i.e., pet food and treats, it appears that the only issue that the Defendants have is that the Defendants did not detail the specific *brand* of pet food and treats that the Plaintiffs purchased and that the Defendants manufacture and sell. Under notice pleading that is not necessary. *Not one* of the cases cited by the Defendants support dismissal on that basis.

In *Rivera v. Baby Trend, Inc.,* the Fourth District Court of Appeal reversed entry of *summary judgment* in favor of the distributor and marketer of a baby stroller because it never actually had "control" over the stroller, which was manufactured by a Chinese corporation which was not a party to the action. 914 So. 2d 1102, 1107-05 (Fla. 4th DCA 2005). The holding of that case is that, as a distributor, Baby Trend marketed and accepted payment for the stroller, placed it in the stream of commerce and had the ability to control the design and should therefore be held liable for strict liability unlike *Rivera*. The Plaintiffs have alleged the Defendant Manufacturer that produced and marketed the pet food and that each manufacturer and retailer placed food and treats in the stream of commerce that caused the Plaintiffs' injury. [DE 333 ¶¶1-

2, 3-12 ¶¶3-12, 13-26 ¶¶33-59].    *Rivera* does not provide a basis for dismissal of the strict

liability count.

     *Pulte Home Corp. v. Ply Gem Ind., Inc.,* 804 F. Supp. 1471, 1484-85 (M.D. Fla. 1992) is

another <u>summary judgment</u> case where the court held that Pulte was required to present <u>evidence</u>

that Georgia Pacific was the vendor of the plywood at issue. This case relates to the issue of a

lack of causal connection between the product that is the subject of the lawsuit and a link to the

manufacturer. *Id.* at 1485.    However, the Plaintiffs in this case have identified the products, i.e.,

pet food and treats, and the manufacturers and sellers of the products.    [DE 333 ¶¶1-2, 3-12, 33-

59]. The specific brands will be disclosed in discovery.    Moreover, all of the internal cases to

which the Defendants refer in the *Pulte* opinion state that the plaintiff has the burden of <u>*proving*</u>

<u>*by a preponderance of the evidence that a product was manufactured by a defendant not that a*</u>

<u>*specific brand must be alleged under a notice pleading standard*</u>.    *Id.* at 1484-86.    *Pulte* fails to

support a basis for dismissal of the Plaintiff's strict liability claim.

     The Defendants' reference to *Napier v. Osmose, Inc.,* 399 F. Supp. 2d 811, 813-14 (S.D.

Mich. 2005) is even more attenuated than the above-referenced cases.    In *Napier,* the plaintiffs

complaint alleged injury from the toxic effects from a splinter in the Plaintiff's foot because the

wood contained a pesticide containing inorganic arsenic. *Id.* at 813.    Unlike the Plaintiffs in this

case, the *Napier* plaintiffs alleged in their complaint that "they are unable to identify which of

the defendants caused their claimed damages." *Id.*    (arguing that dismissal was warranted based

upon the plaintiffs concession that the manufacturer cannot be identified).    The court <u>rejected</u> the

plaintiffs' argument that they had alleged alternative liability, i.e., concert of action and

collective or industry-wide liability. *Id.* 814-15.    However, the Plaintiffs have identified each and

every manufacturer. The case is further distinguishable because the court extensively analyzed a

tort reform act abolishing joint and several liability, which impacted the plaintiffs ability to go forward under an alternative liability or concert of action theory. *Id.* at 814-822. The Michigan court ultimately dismissed the case because an alternative or concert of action theory would require joint and several liability which had been abolished. *Napier* is not analogous to this case.

The Defendants have also referred to two Florida cases, arguing that a specific causal "ultimate fact" *must* be alleged to state a claim for strict liability. [DE 336 p. 67]. *See Clark v. Boeing Co.,* 395 So. 2d 1226, 1229 (Fla. 1981)(dismissing strict liability claim under fact pleading standard) and *Watson v. Lucerne Mach. & Equip., Inc.,* 347 So. 2d 459, 461 (Fla. 2d DCA 1977)(appeal from *summary final judgment*). Unlike the Federal Rules of Civil Procedure, Florida state courts require fact pleading and not notice pleading. *See Louie's Oyster, Inc. v. Villagio Di Las Olas, Inc.,* 915 So. 2d 220, 221 (Fla. 4th DCA 2005). Moreover, as discussed above, there is no heightened pleading standard for claims other than those specified in Rule 9(b)-(c) and that does not include strict liability. *Twombly* at fn 14; *Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168 (1993) ("We have recognized that the cannon of *expresio unius est alterius* applies to Rule 9(b)").

Even if the Court accepts the Defendants' argument that such a heightened pleading standard applies in the strict liability context, the Plaintiffs have provided more than adequate notice of the causation element of a strict liability claim. Among the specific examples of conditions that cause injury to pets, including the food itself, are glycoalkaloids, pentobarbital, acetaminophen and other substances and toxins as well as food that has been demonstrated to cause urinary tract disease. [DE 333 ¶86, 99-102, 105, 333-2 Ex 24 pp. 39-43, 333-3 Ex 34 pp. 24-27]. The Plaintiffs have also attached documents showing that one of the Plaintiffs' pets was exposed to glycoalkaloids in an amount that exceeds the toxicity level for a human. [DE 333 ¶86,

333-2 pp. 39-43].   The Defendants have fair notice of the causation element of the Plaintiffs strict liability claims.

The Defendants further complain that the strict liability count should be dismissed because the Plaintiffs only allege that "unspecified pet food and [treats] are defective and unreasonably dangerous because they contain 'harmful substances,'" citing paragraph 165 of the TAC.  [DE 336 p. 67].  However, the paragraph cited by the Defendants only reincorporates the factual predicate of the TAC and makes no allegations whatsoever about the unreasonably dangerous nature of the Defendants' pet food and treats. [DE 333 ¶165].  Further, the Plaintiffs specifically allege that the pet food is defective and unreasonably dangerous because it contains adulterated ingredients, additives, chemicals, toxins and contaminants, among other things, including the specific reference to the lethal amount of glycoalkaloids referenced above. [DE 333 ¶167].   The strict liability count also reincorporates the specific allegations about toxins, contaminants and detrimental health effects of the Defendants' food and treats, among other things. [DE 333 ¶165]. The TAC contains allegations of the unreasonably dangerous nature of the pet food and treats.

After setting forth the elements of the cause of action in their Motion, the Defendants also mistakenly insist that the Plaintiffs must allege that the pet food and treats were dangerous to an extent beyond that which would be contemplated by the ordinary consumer with the ordinary knowledge common to the community, which is not an element for this claim per their own Motion. [DE 336 pp. 66, 68].  Without the benefit of this allegation, which their own Motion concedes is not a required element, the Defendants claim that they are left to "speculate" about the Plaintiff's "intentions."  [DE 336 p. 68]. However, as discussed above, the TAC specifically

details the unreasonably dangerous and defective nature of the Defendant Manufacturers' pet food and treats. [DE 94-98, 101-102, 103-105, 106, 107-109].

Finally, the Defendants argue that because the FDA and AAFCO "promulgate regulations expressly defining and approving these pet food ingredients," the ingredients cannot be unreasonably dangerous as if they were immune from tort liability simply because AAFCO has created a definition for ingredients. [DE 336 p. 68]. As discussed above, the FDA does *not* approve the ingredients and AAFCO is a voluntary organization made of state officials and pet food trade association lobbyists that only provides authorities with model regulations that may or may not be adopted by states. The Defendants have failed to cite a single case that would warrant dismissal on that basis. As for the FDA, it has essentially delegated its authority to AAFCO with few exceptions, which means that pet food regulation is up to each individual state since AAFCO has *no* regulatory authority. As discussed above, AAFCO created definitions for terms used on a label, feeding trials that allow the "complete and balanced" monicker to be placed on bags of food (when 6 out of 8 dogs or cats who survive eating the Defendants pet food for a six month period of time) and a nutrient analysis which would certify melamine in a chemical analysis of protein; AAFCO is *not* a regulatory body. However, even if the FDA and AAFCO definitions were at issue (and they are not), this would not immunize the Defendants from liability for manufacturing and selling an unreasonably dangerous product because these minimum requirements are not conclusive as to whether the pet food is unreasonably dangerous. *See Jackson v. H.L. Bouton Co.,* 630 So. 2d 1173, 1175 (Fla. 1st DCA 1994); *Sieman v. S.S. Kresge Co.,* 566 F.2d 551, 557-58 (5th Cir. 1978)(holding that even where fabric far exceeded minimum federal requirements under Flammable Fabrics Act, compliance with same is not conclusive as a measure of defectiveness or whether it is unreasonable dangerous because even

though fabric complies with *minimum* standards, it may be deemed unreasonably dangerous for normal use by a jury).[39]  Neither the Food and Drug Act nor AAFCO can absolve the Defenants of liability for the harm that they have inflicted on the Plaintiffs. *See Supra.*

**F.     The Defendants have failed to provide a valid legal basis to dismiss the Plaintiffs' injunctive relief claim**

The Defendants argue that the injunctive relief claim in the TAC should be dismissed because it is not an independent cause of action, the Plaintiffs have failed to show that they have an inadequate legal remedy and that they will be irreparably harmed if the Court does not enjoin the Defendants.    [DE 336 pp. 69-70].  The legal authority cited by the Defendants does not require dismissal of the Plaintiffs' injunctive relief claim based on either of these two grounds.

In support of their contention that the injunctive relief claim may not stand as a separate count, the Defendants cite *Ala. v. U.S. Army Corps. Of Eng'rs.,* 424 F.3d 117, 1127 (11th Cir. 2005) (appeal from an order granting a temporary injunction, not a motion to dismiss a separate injunctive relief count). This case does not state that a separate count for injunctive relief must be dismissed. In *Alabama,* the plaintiff based the request for a temporary injunction on past conduct, which renders injunctive relief inappropriate, and never argued that it was likely to prevail on the merits of any cause of action alleged.  *Id.* at 1133-34.  Here, the TAC alleges grounds for an injunction to prevent future harm in the form of illness and/or loss of the Plaintiffs' companion cats and dogs. [DE 333 ¶171].  Likewise, *City of Marietta v. CSX Transp., Inc.,* 196 F.3d 1300, 1303 fn. 3 (11th Cir. 1999) did not hold that an injunctive relief count must be dismissed. *Id.* (the court only noted that it was a separate count presumably based on a substantive count).  *Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1097 (11th Cir. 2004) and

---

[39] In *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

*Paisey v. Vitale,* 807 F.2d 889, 892(11th Cir. 1986) are simply cited for the proposition that an injunctive relief count may be dismissed for failure to state a claim. [DE 336 p. 69]

The TAC specifically alleges the basis for each element of injunctive relief. The Defendants nevertheless argue that the claim should be dismissed "because the Plaintiffs fail to offer any showing of the inadequacy of legal remedies" [DE 336 p. 69-70]. This is perhaps the most callous and insulting argument raised in the Motion and is particularly shocking coming from the Defendants who profess to allegedly care so much about cats and dogs. Contrary to the Defendants argument, the Plaintiffs have alleged that there is *no adequate remedy* at law for the future illness and injury of their companions cats and dogs because *no amount of money can make them well again and/or bring them back to life.*

> An injunction is particularly warranted here because even after the largest recall [involving pet food] in American history, a number of deadly recalls have followed. The Plaintiffs seek to prevent further needless deaths of the Plaintiffs' and the Plaintiff Class' cats and dogs by enjoining the Defendants from their ongoing pattern and practices of deceiving and misleading consumers.

> The Plaintiffs / Class representatives seek an injunction enjoining the Defendants to cease their unlawful, false and misleading marketing, advertising and sale of pet food products because there is a genuine threat of imminent injury to the Plaintiffs and there is no adequate remedy at law available to the Plaintiffs. The … Plaintiffs and the Class can never be compensated in money damages for the illness and/or loss of their companion cats and dogs.

> Unless an injunction is entered, the Plaintiffs and the Plaintiff Class will continue to suffer irreparable harm and the threatened injury in the form of illness and death of their companion cats and dogs outweighs any harm the injunction might cause the Defendants.

[DE 333 ¶¶170-71, 174]. *See Cate v. Oldham,* 707 F.2d 1176, 1189(11th Cir. 1983) (cited by the Defendants for the proposition that "[a]n injury is 'irreparable' only if it cannot be undone through monetary remedies."). There is no adequate remedy at law for the illness or loss of any

cats or dogs, including the Plaintiffs', because money damages cannot "undo" the illness or death of a much beloved cat or dog.[40]

The Defendants have, for the first time, raised a fallback argument based on the First Amendment of the United States Constitution, claiming that the Plaintiffs "merely disguise as an equitable claim their underlying ambition to make this Court a continuing 'censor' or 'super-regulator'" for pet food advertising. [DE 336 pp. 70-71].  This argument is, at best, completely disingenuous.  As discussed above, the Plaintiffs have no "secret intention" at all.  *They are seeking to have the Court prevent future needless illness and deaths of dearly loved companion cats and dogs* for which no amount of money could ever adequately compensate them.  [DE 333 ¶¶ 1-2, 94-98, 101-102, 105-111].  By mischaracterizing the Plaintiffs motives, the Defendants are simply attempting to deflect attention from their illegal advertising and deceptive practices and attempting to create a veil of immunity by which they seek to never be held accountable for their indifference to the harm and suffering that they have caused the Plaintiffs.

The addition of a Defendant class has absolutely nothing to do with "super-regulation," but rather a cost benefit analysis.  As the Court is well aware, in December 2007, the Plaintiffs' lead counsel indicated that the Plaintiffs were exploring other options rather than go forward with discovery from five (5) separate Defendants who contested personal jurisdiction, although they had no legal grounds for doing so.  At that time it became clear that the Defendants scorched earth litigation tactics would astronomically drive up the cost of this litigation because it is time consuming and expensive to prove that parties have not been forthcoming (at best):

---

[40] However, even if that were not the case, the Plaintiffs are entitled to allege relief in the alternative. *Adelphia Cable Partners, Inc. v. E. & A. Beepers Corp.,* 188 F.R.D. 662, 666 (S.D. Fla. 1999) (J. King) (*denying dismissal* because "[a]lthough equitable relief may not be awarded where there exists an adequate remedy at law, Plaintiff certainly may plead alternative equitable relief."); *Allstate Ins. Co. v. James,* 779 F.2d 1536, 1540-41 (11th Cir. 1986) (a party may plead alternative and inconsistent facts and remedies against several parties without being barred by the election of remedies doctrine).

- The Plaintiffs ordered pet food from Defendant Meijer despite the statements submitted to this Court under oath that Meijer did not offer pet food for sale in Florida;

- After much expensive litigation, Defendants New Albertson's LLC *withdrew* its personal jurisdiction motion and affidavit of an officer of the company containing negligent, if not perjured, statements only after the Plaintiffs fought for and obtained personal jurisdiction discovery

- After extensively litigating personal jurisdiction and filing an affidavit indicating that no personal jurisdiction exists and after the Plaintiffs fought for and won the right to discovery, Defendant Pet Supplies Plus did not re-submit its motion to dismiss based upon personal jurisdiction.

After multiple hearings on numerous motions intended to avoid the personal jurisdiction discovery, it was abundantly clear that continuing the personal jurisdiction battle with the Defendants, would result in extensive discovery battles before this Court and massive financial expense for the Plaintiffs.  The Plaintiffs opted to dismiss certain defendants and to add a defendant class.  In fact, at the January 25, 2008 hearing, the Court acknowledged that the dismissal of certain defendants has reduced the issues for the Court's consideration.  The Defendants have completely failed to justify how adding a Defendant class makes this litigation more expensive for them, as their motion seems to suggest.  Moreover, *James v. Meow Media, Inc.,* 300 F.3d 683, 701 (6th Cir. 2002), the case cited by the Defendants, does not discuss the "chilling effect" of expensive litigation and the threat of damages.  *Id.* In fact, the court does not even rule on a First Amendment issue. *Id.* at 699 (involving the issue of whether video games constitute unprotected speech by incitement to violence, *not* false and deceptive advertising).  Significantly, the Defendants only cry foul because the Plaintiffs are holding them accountable, but do not state that the advertising is *not* false and deceptive because they *cannot*.

The Defendants purported laundry list of alleged support for their representation that the Plaintiffs seek to use this Court as a "regulatory sword" takes a huge amount of gall and much

creative license.  Much like the two tailors in Hans Christian Anderson's *The Emperor's New Clothes,* who claimed to make a beautiful new suit of fine cloth for the Emperor that was in fact nothing, the Defendants attempt to repeat their arguments *ad nauseum* in their Motion as if by incessant repetition, they will somehow convince this Court that the Plaintiffs are intent on regulating an industry and not on vindicating the wrongs that the Defendants committed against the Plaintiffs, which has not only *cost them a great deal of money*, but, more importantly, the love and companionship of their much loved cats and dogs.  They brought this suit out of principle to seek to simply right a wrong and the Defendants fear it only because they know it is true.  The Defendants have completely and utterly failed to demonstrate in their Motion how the false and misleading advertising is "expressly" authorized by any "relevant federal and state agencies."  As discussed above and below, the Plaintiffs have met all Rule 8(a) pleading standards to put the Defendants on notice of the false, deceptive, unfair and misleading advertising and their tort and warranty claims. Moreover, the Plaintiffs have put the Defendants on notice in the TAC that their express and implied statements regarding support for their advertising are not based upon scientifically valid research studies and that is misleading and they know it.[41] [DE 336 p. 54].  There is *no* basis for dismissal of this case based upon any First Amendment legal authority cited by the Defendants because the TAC states claims for relief. *See Va. State Bd. Of Pharmacy v. Va. Citizens Consumer Council, Inc.,* 425 U.S. 748, 771 (1976) ("Untruthful speech, commercial or otherwise, has never been protected for its own sake.").  As the Defendants' concede, the First Amendment *does not, and cannot*, immunize them from

---

[41] For example, when a manufacturer markets a dry cat food as "healthy" for cats, that is grossly misleading given the numerous peer reviewed scientific articles establishing a link between consumption of dry pet food and urinary tract illness in cats, among other deleterious health effects.  While the Plaintiffs are relatively informed and exposed to different views regarding the accuracy of claims regarding their own foods from the gluttony of scientific studies advertised and discussed in the daily media, reported studies are *highly* uncommon as to pet food. Moreover, veterinarians are taught relatively little about cat and dog nutrition and the majority make money from the sale of the Defendants' pet food, which is, to say the least, a clear conflict of interest. The absence of information necessary to allow informed decisions makes the Plaintiffs and the Class extremely vulnerable to the Defendants' marketing.

liability for false, deceptive and misleading marketing and advertising. [DE 336 p. 71]. *Thompson v. W. States Med. Ctr.,* 535 U.S. 357, 373 (2002) does not require anyone to "justify" false representations and deceptive advertising.  As for the Defendants' claims of fear concerning purported damage awards, the Defendants allegations are baseless, speculative and solely intended to attempt to poison the well against the Plaintiffs who were the Defendants' good customers for many years. These specious and baseless allegations underscore that the Defendants and have no comprehension of the suffering and loss to which they have unnecessarily subjected their customers due to their false, deceptive, unfair advertising and the harmful, toxic substances in their pet food.

**G.    The Plaintiffs Warranty Claims are not "barred"**

The Defendants request this Court to dismiss the Plaintiffs' express and implied warranty claims (Counts VI and VII) as to _all_ Defendants because (1) the Plaintiffs have purportedly failed to allege specific facts "establishing" privity with regard to any defendant and (2) there is no privity as to the Defendant Manufacturers. [DE 336 pp. 55-57]. The Defendants also suggest that the Florida supreme Court  "abolished" a cause of action for breach of warranty "where there is no privity," citing *Kramer v. Piper Aircraft Corp.,* 520 So. 2d 37, 39 (Fla. 1988)(addressing implied warranty claims only where a strict liability claim is appropriate).  [DE 336 pp. 72-73]. However, under *Kramer,* an implied warranty claim remains unaltered where privity exists.  *Id.*  The Defendants are wrong.  The TAC specifies that the breach of implied warranty claim has been brought against the Retailers with which the Plaintiffs are in privity. [DE 333 ¶ 79].  Moreover, the TAC has given the Defendants notice of their breach of warranty claims, including specifying the retailers from which each Plaintiff purchased pet food. [DE 333

¶¶3-32]. Rule 8(a)(2) simply requires the Plaintiffs to give the Defendants fair notice of their warranty claims at the pleading stage and that is exactly what the TAC does.

**(a.)      There is no heightened pleading standard for warranty claims**

The Defendants yet again argue that the Plaintiffs express and implied warranty claims should be dismissed against all Defendants because they claim that privity has not been "established" through heightened allegations in the TAC. [DE 336 pp. 73-74]. According to one of the cases cited by the Defendants, in order to allege privity, the Plaintiffs need only allege that they purchased pet food from the Defendants and where they obtained their pet food and that is exactly what they have alleged in the TAC.[42] *See T.W.M. v. Amer. Med. Sys. Inc.,* 886 F.Supp 842, 844 (N.D. Fla. 1995). [DE 333 ¶¶ 3-32; 181]. Nonetheless, the Defendants argue that the Plaintiffs' express and implied warranty claims should be dismissed pursuant to the holding in *Jacobs v. Osmose,* 2002 U.S. Dist. LEXIS 1926 *5 (S. D. Fla. 2002). However, Judge Middlebrooks dismissed the class action complaint in *Jacobs* because the plaintiff failed to plead that he purchased the wood treated with pesticides that was the subject of the complaint, which is materially different from the allegations in this case. *Id.* at **4, 15. In fact the Plaintiff only alleged that he had "installed, constructed and/or existing upon his property a deck made of treated wood purchased at one of the retail defendants." *Id.* at *4. Here, the Plaintiffs have specifically identified Defendants who manufactured the pet food *and* they have alleged the retailers from which they purchased pet food made by those Defendant Manufacturers. [DE 333 ¶¶3-32].

Despite the specific allegations as to the retailers from which the Plaintiffs bought pet food and the Defendants who manufactured and marketed it, the Defendants argue that these

---

[42] Florida Rule of Civil Procedure Form 1.949 is approved by the Florida Supreme Court as a form for alleging breach of implied warranty under Florida law and does *not* require privity to be alleged.

**CASE NO. 07-21221 CIV ALTONAGA/Turnoff**
**MALTZMAN FOREMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077**

allegations are _still_ not specific enough because there is no allegation that they purchased the product "directly" from the retailers. [DE 336 p. 74]. Using Plaintiff Renee Blaszkowski as an example, Ms. Blaszkowski alleged as follows:

> Plaintiff/Class Representative, Renee Blaszkowski, is a resident of Michigan and Connecticut during the Class Period. Plaintiff Blaszkowski regularly purchased pet food during the class period for daily consumption by her cat(s)/dog(s) in Michigan and Connecticut, which was manufactured and Marketed by Defendants, Mars and Mars Pet Care, Procter & Gamble and Iams, Colgate Palmolive and Hill's, Del Monte, Nestle USA andNestle Purina Petcare, Nutro, Natura, Walmart, Target, Petsmart and on information and belief Kroger and/or Menu Foods. Defendants, Kroger, Petco, Pet Supermarket, Pet Supplies Plus, Petsmart, Target and Wal-Mart marketed and sold Plaintiff Blaszkowski pet food from the above-referenced manufacturers and marketers, which purchases were made based upon the above-referenced Defendants' marketing.

[DE 333 ¶3]. The implied warranty claim is asserted against retailers only and the above-referenced allegations are incorporated into that count. _Id._ [DE 333 ¶76]. _See Erickson_, 127 S.Ct. 2200 (Federal Rule 8(a) does _not_ require specific facts.) Notwithstanding the specificity of the allegations, the Plaintiffs nevertheless claim that the TAC is somehow analogous to _Jacobs_ even though Ms. Blaszkowski alleged that she bought pet food from the specified retailers and the _Jacobs_ plaintiff included _no_ allegations in his complaint indicating that he purchased the wood at issue in that case. _Id._ at **4, 15. The Defendants also seem to argue that the warranty claims are somehow hyper-technically defective because the Plaintiffs did not use the word "directly" when they alleged that they purchased pet food from the retailers specified in the TAC. [DE 336 p. 74]. Other than using the word "directly," the TAC certainly states that _the Plaintiffs purchased pet food from retailers_ and puts the Retail Defendants on notice that the Plaintiffs purchased the pet food from the listed retailers. While they did not use the word "directly," the claim more than meets the pleading standards. _See Roe_, 253 F.3d at 683 (no specific facts are necessary to cover each element "with precision" as long as a complaint contains direct or inferential allegations.)

In support of dismissal, the Defendants claim that the TAC should be dismissed because Ms. Blaszkowski alleged that she purchased pet food manufactured by 12 specific manufacturers from 7 specific retailers, which allegedly "makes it impossible" to determine which warranties were made to her. [DE 333 ¶3 , 336 pp. 73-74].  It is entirely unclear how the Plaintiffs can make such an argument since they concede that Ms. Blaszkowski alleges that she purchased pet food from specific retailers which was manufactured by specific Defendant Manufacturers *and* that the implied warranty claim is limited to Defendant Retailers, which "warranted that the pet foods were of merchantable quality and safe and fit for such use." [DE 333 ¶3, 180]. Moreover, Ms. Blaszkowski alleged that "[b]ased on the implied warranty of merchantability and quality for its purpose," she purchased pet food from the Defendants, i.e., the Defendant Retailers. *Id.* As for the express warranty, Ms. Blaszkowski alleged that the Defendants, both Manufacturers and Retailers expressly warranted that the pet food was safe for consumption by cats and dogs through the Defendant Manufacturers' advertising and packaging, which was adopted by the Defendant Retailers at point of purchase and when sold. [DE 333 ¶¶50-59, 87-91, 186-191]. Thus, not only has privity been alleged in the TAC to meet Rule 8(a) notice pleading requirements, the warranties are alleged in the TAC.  *Id.*

The Defendants cited this Court's Order dismissing an amended complaint in *Flamenbaum v. Orient Lines, Inc., et al.,* No. 03-22549-civ-Altonaga2004 U.S. Dist. LEXIS 14718 **17-18 (S.D. Fla. July 28, 2004)  as support for the alleged improper "lumping" of Defendants. [DE 336 p. 74].  However, this Court actually ruled that the "[p]laintiffs cannot lump together all "defendants" in an allegation of fraud." *Id.* at 18.  As *Flamenbaum* noted, *fraud* falls under the Rule 9(b) heightened pleading requirements, warranty claims *do not*.

*Flamenbaum* at *17-18. The Plaintiffs have properly alleged privity as to both the implied and express warranty claims in the TAC under the Rule 8(a) notice pleading standards.

**(b.)     The Plaintiffs have a warranty claim as to the Defendant Manufacturers**

The Defendants next contend that the "Plaintiffs have not established privity with the [Defendant Manufacturers]" in the express warranty claim[43] (Count VII) because "a buyer [only] has privity [] with the particular Defendant from [which] he or she directly purchases a product." [DE 336 p. 74] (emphasis omitted).   As support for their argument, the Defendants rely on *T.W.M. v. Amer. Medical Sys., Inc.,* 886 F. Supp.  842, 844 (N.D. Fla. 1995) and *Tolliver v. Monaco Coach, Corp.* No. 8:06-cv-856-T-30TGW 2006 U.S. LEXIS 40007, at *5  (N.D. Fla. June 16, 2006), both of which stand for the proposition cited by the Defendants.  The Defendants also cite a Northern District of Florida case where the court dismissed a breach of implied warranty claim because the plaintiffs did not allege that the defendants sold the product to the plaintiffs. *See Montgomery v. Davol,* No. 3:07cv176/RV/EMT2007 U.S. Dist LEXIS 53348 at **6-7 (N. D. Fla. July 24, 2007)(defendant manufacturers sued for  implied warranty for a surgical mesh patch used for surgical repair which was sold only to healthcare providers and noting that Florida law has held "specifically in the  medical product context – that there can be no breach of warranty in the absence of privity.").

Florida courts have ruled that a defendant manufacturer may not avoid liability for breach of express and implied warranty to a consumer where they market the product to the consumers and make representations and warranties concerning the product and the consumer did not receive the benefit of the bargain.  In Florida, there is a line of cases that allow an ultimate purchaser to sue a manufacturer for damages for breach of warranty when there has been only

---

[43] The Motion actually "lumps" the warranty claims together, but the Plaintiffs have only alleged an express warranty claimagainst the Defendant Manufacturers.

economic loss and no privity. *See Manheim v. Ford Motor Co.*, 201 So.2d 440, 442 (Fla. 1967); *Chrysler Corp. v. Miller*, 310 So.2d 356 (Fla. 3d DCA 1975); *Rehurek v. Chrysler Credit Corp.*, 262 So.2d 452, 456 (Fla. 2d DCA).

> When a purchaser answers the inducements made in the tremendous advertising campaigns carried on by the automobile industry and purchases a new automobile, he has the right to expect the automobile to perform properly and as represented. If it does not, through no fault of his, it appears to us that he should be allowed to seek redress.

*Id.* at 456. These cases take the philosophy of *Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 161 A.2d 69 (1960), and expand it to validate <u>actions for damages which a purchaser suffers when he is induced to buy the manufacturer's product and the product turns out to be worthless.</u> *Id.*("…there is no good reason for us to adopt a strictly literalist adherence.").  In this case, the Plaintiffs have repeatedly alleged that they did not receive the product for which they paid and which the Defendant Manufacturers and Retailers marketed and advertised and, therefore, their express warranty claim falls in line with *Rehurek.* [DE 333 ¶1].  *See also Sheppard v. Revlon, Inc.,* 267 So. 2d 662 663-664, 665 (Fla. 3d DCA 1972)(discussing the strong public policy concerns governing the Court's decision in *Henningsen* to bypass a technical privity requirement); *Liberty Homes, Inc. v Epperson,* 582 So. 2d 449, 453 (Ala. 1991); *Indus-Ri-Chem v. Par-Pak Co.*, 602 S.W. 2d 282, 287-88 (Tex. App. 1980).  The Plaintiffs have stated a claim for express warranty under Rule 8(a).

CASE NO. 07-21221 CIV ALTONAGA/Turnoff
MALTZMAN FOREMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077

**H.    Defendants have failed to present a valid legal basis to dismiss the Plaintiffs' unjust enrichment claim**

The Defendants argue that the Plaintiffs' unjust enrichment claim should be dismissed based upon two grounds.  First, they argue that because courts have held that unjust enrichment is an equitable claim, there is no entitlement to relief where an adequate remedy at law exists.  Second, they again claim that the Plaintiffs need to satisfy some sort of heightened pleading standard by alleging which Plaintiff purchased which specific brand of food and treat from each Defendant, when the purchases took place, where the purchases were made and on how many occasions such purchases were made. [DE 336 pp. 75-76].  Like all of the other purported bases for dismissing the Plaintiffs equitable claims, the Defendants have not provided a viable legal basis to dismiss the Plaintiffs' unjust enrichment count either.

The Defendants cite several cases for the proposition that the Plaintiffs' unjust enrichment claim must be dismissed with prejudice at this early stage of the case because the Plaintiffs have included claims for fraud, negligence, strict liability and breach of express and implied warranty to recover actual damages.  [DE 336 p. 75]. "Despite conclusory recitations of inadequacy, Plaintiffs make no *showing* in the TAC of the inadequacy or unavailability of such remedies… ." [DE 336 p. 75]. However, Florida case law provides that unjust enrichment is a cause of action *at law and not equity*.  *See Della Ratta v. Della Ratta,* 927 So. 2d 1055, 1060 fn 7(Fla. 4th DCA 2006); *Berry v. Budget Rent a Car Sys.,* 497 F. Supp. 2d 1361, 1369 (S.D. Fla. 2007)(J. Cohn); *Silver v. Digges,* 2006 U.S. Dist. LEXIS 48449 fn 1 (M. D. Fla. July 17, 2006); *But see Tooltrend, Inc. v. CMT Utensli, SRL,* 198 F.3d 802, 805 (11th Cir. 1999) (cited by Defendants as applying Florida law).

Even if the Court rejects the above-referenced Florida precedent and rules that unjust enrichment is nevertheless an equitable claim, the Defendants have cited only *one* case that

actually dismissed an unjust enrichment claim because the plaintiff had other adequate legal remedies. [DE 336 p. 75]. *See Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.,* 390 F. Supp. 2d 1170, 1178 (M.D. Fla. May 10, 2005). The *American Honda* case is distinguishable because the defendants in that case brought a breach of implied contract claim that failed to allege that there was an inadequate remedy at law and because the plaintiffs did not dispute the defendant's entitlement to a Florida Uniform Trade Secrets Act claim. *Id.* Here, the Plaintiffs have made a claim for unjust enrichment, alleged that there is no adequate remedy at law and the Defendants contest each and every legal remedy in the TAC. [DE 333 ¶193, DE 336]. Finally, at this stage in the case, a "showing" of the evidence is not necessary; rather the Defendants need only be given notice of the claim as set forth *supra*.

The two Florida cases cited by the Defendants in support of dismissal because an adequate remedy at law exists involve unjust enrichment and injunctive relief claims *post-judgment*, not dismissal of an unjust enrichment claim. [DE 336 p. 75]. *See Bowleg v. Bowe,* 502 So. 2d 71, 72 (Fla. 3d DCA 1987) and *Liza Danielle, Inc. v. Jamko, Inc.,* 408 So. 2d 735, 738 (Fla. 3d DCA 1982) (claim for injunctive relief). Neither case addresses the issue that the Plaintiffs are entitled to plead in the alternative under Rules 8(a) and 8(e)(2) of the Federal Rules of Civil Procedure and to elect their remedies prior to trial. *See Court-Appointed Receiver v. Taubman,* 2007 U.S. Dist. LEXIS 21702 *8 (S.D. Fla. March 27, 2007) (J. Marra) (*denying dismissal* even where there is an adequate remedy at law, because an unjust enrichment claim may be plead in the alternative); *Adelphia Cable Partners, Inc. v. E. & A. Beepers Corp.,* 188 F.R.D. 662, 666 (S.D. Fla. 1999) (J. King) (*denying dismissal* because "[a]lthough equitable relief may not be awarded where there exists an adequate remedy at law, Plaintiff certainly may plead alternative equitable relief."); *Allstate Ins. Co. v. James,* 779 F.2d 1536, 1540-41 (11th Cir.

1986) (a party may plead alternative and inconsistent facts and remedies against several parties without being barred by the election of remedies doctrine).  The Plaintiffs are entitled to plead their unjust enrichment claim in the alternative.

As a fallback argument, the Defendants recite the alleged elements of an unjust enrichment claim[44] and continue to urge this Court to impose a heightened pleading standard on an unjust enrichment claim by continuing to complain that the "Plaintiffs' TAC nowhere specifies which Plaintiff purchased which product from which Defendant, when these purchases took place, where such purchases were made, or on how many occasions such purchases were made."  [DE 336 p. 75].  As a consequence, they claim that "it is impossible to determine the degree, if any, to which a particular Plaintiff might have benefitted any Retail Defendant."  *Id.* Significantly, the Defendants cite to no case that actually imposes such a heightened pleading burden on the Plaintiffs.  *See Silver,* 2006 U.S. Dist. LEXIS 48449 at **7-8 ("…the Court is unaware of any authority imposing a heightened pleading requirement for claims of unjust enrichment.").  *See also Twombly,* and *Erickson, supra.*

The Defendants also disingenuously claim that the unjust enrichment count should be dismissed because the plaintiffs have not plead "sufficient facts to establish that any of [the Plaintiffs] conferred a benefit upon any of the [Defendant Manufacturers] *who were not involved in retail sales*."  [DE 336 p. 76].  The Defendant Manufacturers erroneously equate direct *contact* with direct *benefit.  See Romano v. Motorola, Inc.,* 2007 U.S. Dist. LEXIS 86472 **5-6 (S.D. Fla. November 26, 2007). The Defendant Manufacturers market their product directly to the

---

[44] The Defendants recite the elements of an unjust enrichment claim referenced in decisions of the Florida First, Fourth and Fifth District Courts of appeal, but fail to cite the Florida Supreme Court and Third District Court of Appeal opinions setting forth different elements, to wit: (1) a benefit conferred on defendant by a plaintiff, (2) the defendant's appreciation of the benefit, (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof.  [DE 336 p. 75]. *See Fla. Power Corp. v. City of Winter Park.,* 887 So. 2d 1237, 1242 (Fla. 2004); *N.G.L. Travel Assoc. v. Celebrity Cruises, Inc.,* 764 So. 2d 672, 675 (Fla. 3d DCA 2000).

Plaintiffs and consumers, but sell their products through intermediaries, i.e., certain retailers. While they ultimately sell pet food and treats through certain retailers, the Defendant Manufacturers directly benefit through the massive profits from the sale of the pet food and treats. Therefore, while there is no *direct contact* between the Defendant Manufacturers and the Plaintiffs, by purchasing the pet food, the Plaintiffs directly confer a benefit on them in the form of payment for the pet food. *Id.*

       As a final attempt to urge the Court to dismiss this claim, the Defendants incredibly assert that the Plaintiffs have "given no indication of why it would be unjust for the Defendants to retain any benefit Plaintiffs may have somehow conferred." [DE 336 p. 76]. The Plaintiffs have alleged that they purchased pet food and/or treats from specific Manufacturers and Retailers and that had they known that the Defendants advertising was so grossly false, unfair, misleading and deceptive, they would not have paid the Defendants money for it because the pet food is not what is marketed to be. [DE 333 ¶¶1-2, 3-32, 69]. The Plaintiffs have also alleged that there is substantial evidence indicating that the food and/or treats that the Defendants market are harmful to cats and dogs and that had they known that, they would never have paid for the food and/or treats. [DE 333 ¶¶3-32, 69, 110, 111]. Finally they have also alleged that they pay a higher price for "premium" pet food when it is the same as non-premium pet food sold at a lower price. [DE 333 ¶¶92-93]. It is unjust for the Defendants to retain the Plaintiffs money because they have lead the Plaintiffs to believe that they are purchasing something that they are not, they are selling food and/or treats that are harmful to cats and dogs and they are selling premium pet food at a higher price than non-premium pet food that is sold at a lower price. The Defendants have failed to meet their burden to support dismissing the Plaintiffs' unjust enrichment claim. *See James D. Hinson Elec. Contr. Co. v. Bellsouth Telco., Inc.,* 2008 U.S. Dist. LEXIS 9464 *12 (M.D. Fla.

February 8, 2008) ("…the Court finds that it would be improper at this stage of the proceedings to dismiss Hinson's equitable claims. While Hinson's unjust enrichment … claim[] do[es] seek essentially the same relief as the fraud and FDUTPA claims, the Court sees no reason why Hinson should not be allowed to plead in the alternative.").

## V.    Conclusion

For all of the foregoing reasons, the Plaintiffs respectfully request this Court to deny the Defendants' Consolidated Motion to Dismiss the Third Amended Complaint. If, however, the Court dismisses any portion of the pleading, the Plaintiffs respectfully request leave to amend, given the policy of the United States Supreme Court, the Eleventh Circuit and the Federal Rules of Civil Procedure of having disputes settled on the merits rather than upon the technicalities of pleading.

Dated: March 3, 2008
         Miami, FL

                                    /s Catherine J. MacIvor
                                    CATHERINE J. MACIVOR (FBN 932711)
                                    cmacivor@mflegal.com
                                    BJORG EIKELAND (037005)
                                    beikeland@mflegal.com
                                    MALTZMAN FOREMAN, PA
                                    One Biscayne Tower
                                    2 South Biscayne Boulevard -Suite 2300
                                    Miami, Florida 33131
                                    Tel: 305-358-6555 / Fax: 305-374-9077
                                    *Attorneys for Plaintiffs*

## VI.   CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of the Court via CM/ECF on this 3rd day of March, 2008. We also certify that the foregoing was served on all counsel or parties of record on the attached Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

/s Catherine J. MacIvor
Catherine MacIvor

<u>**SERVICE LIST**</u>

**CASE NO. 07-21221 ALTONAGA/Turnoff**

**CATHERINE J. MACIVOR**
cmacivor@mflegal.com
**JEFFREY B. MALTZMAN**
jmaltzman@mflegal.com
**JEFFREY E. FOREMAN**
jforeman@mflegal.com
**DARREN W. FRIEDMAN**
dfriedman@mflegal.com
**MALTZMAN FOREMAN, PA**
One Biscayne Tower
2 South Biscayne Boulevard -Suite 2300
Miami, Florida 33131
Tel: 305-358-6555 / Fax: 305-374-9077

*Attorneys for Plaintiffs*

**ROLANDO ANDRES DIAZ**
E-Mail: rd@kubickdraper.com
**CASSIDY YEN DANG**
E-mail: cyd@kubickidraper.com
**MARIA KAYANAN**
E-Mail: mek@kubickidraper.com
**KUBICKI DRAPER**
25 W. Flagler Street
Penthouse
Miami, Florida 33130-1712
Telephone: (305) 982-6708
Facsimile: (305) 374-7846

*Attorneys for Defendant Pet Supermarket, Inc.*

**JOHN B.T. MURRAY, JR.**
E-Mail**: jbmurray@ssd.com**
**ROBIN L. HANGER**
E-Mail: rlhanger@ssd.com
**SQUIRE, SANDERS & DEMPSEY LLP**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, Florida 33401-6198
Telephone: (561) 650-7200
Facsimile:   (561) 655-1509

*Attorneys for Defendants PETCO Animal
Supplies Stores Inc., PetSmart, Inc., Wal-Mart
Stores, Inc. and Target Corporation*

**ALEXANDER SHAKNES**
E-Mail: Alex.Shaknes@dlapiper.com
**AMY W. SCHULMAN**
E-Mail: Amy.schulman@dlapiper.com
**LONNIE L. SIMPSON**
E-Mail: Lonnie.Simpson@dlapiper.com
**S. DOUGLAS KNOX**
E-Mail: Douglas.knox@dlapiper.com
**DLA PIPER RUDNICK GRAY CARY US
LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4829

*Attorneys for Defendants Menu Foods, Inc.
and Menu Foods Income Fund*

**WILLIAM C. MARTIN**
E-Mail: william.martin@dlapiper.com
**DLA PIPER RUDNICK GRAY CARY US LLP**
203 North LaSalle Street
Suite 1900
Chicago, Illinois 60601-1293

*Attorneys for Defendants Menu Foods, Inc.
and Menu Foods Income Fund*

**HUGH J. TURNER, JR.**
E-Mail: hugh.turner@akerman.com
**AKERMAN SENTERFITT & EDISON**
350 E. Las Olas  Boulevard
Suite 1600
Fort Lauderdale, Florida 33301-2229
Telephone: (954)463-2700
Facsimile:   (954)463-2224

*Attorneys for Defendant Publix Super Markets,
Inc.*

**GARY L. JUSTICE**
E-Mail: gjustice@gibsondunn.com
**CHARLES H. ABBOTT**
E-Mail: cabbott@gibsondunn.com
**GAIL E. LEES**
E-Mail: glees@gibsondunn.com
**WILLIAM EDWARD WEGNER**
E-Mail: wwegner@gibsondunn.com
**GIBSON DUNN & CRUTCHER LLP**
333 South Grand Avenue, Suite 4600
Los Angeles, California 90071-3197
Telephone: (213) 229-7000

*Attorneys for Defendant Nutro Products, Inc.*

**MARTY STEINBERG**
E-Mail: msteinberg@hunton.com
**ADRIANA RIVIERE-BADELL**
E-Mail: ariviere-badell@hunton.com
**HUNTON & WILLIAMS**
Mellon Financial Center
1111 Brickel Avenue, Suite 2500
Miami, Florida 33131
Telephone: (305) 810-2500
Facsimile:  (305) 810-2460

*Attorneys for Defendant Nutro Products, Inc.*

**OMAR ORTEGA**
Email: ortegalaw@bellsouth.net
**DORTA & ORTEGA, P.A.**
Douglas Entrance
800 S. Douglas Road, Suite 149
Coral Gables, Florida 33134
Telephone: (305) 461-5454
Facsimile:   (305) 461-5226

*Attorneys for Defendant Mars, Inc.
and Mars Petcare U.S.*

**DANE H. BUTSWINKAS**
E-Mail: dbutswinkas@wc.com
**PHILIP A. SECHLER**
E-Mail: psechler@wc.com
**THOMAS G. HENTOFF**
E-Mail: thentoff@wc.com
**CHRISTOPHER  M. D'ANGELO**
E-Mail: cdangelo@wc.com
**PATRICK J. HOULIHAN**
E-Mail: phoulihan@wc.com
**WILLIAMS & CONNOLLY LLP**
725 12th Street, N.W.
Washington, DC  20005
Telephone: (202)434-5000

*Attorneys for Defendants Mars, Incorporated
and Mars Petcare U.S.*

**BENJAMIN REID**
E-Mail: bried@carltonfields.com
**OLGA M. VIEIRA**
E-Mail: ovieira@carltonfields.com
**CARLTON FIELDS, P.A.**
100 S.E. Second Street, Suite 4000
Miami, Florida 33131-0050
Telephone: (305)530-0050
Facsimile: (305) 530-0050

*Attorneys for Defendants Colgate-Palmolive
Company and Hill's Pet Nutrition, Inc.*

**KARA L. McCALL**
kmccall@sidley.com
Sidley Austin LLP
One S. Dearborn Street
Chicago, ILL 60633
Telephone: (312) 853-2666

*Attorneys for Defendants Colgate-Palmolive
Company and Hill's Pet Nutrition, Inc.*

**SHERRIL M. COLOMBO**
E-Mail: scolombo@cozen.com
**COZEN O'CONNOR**
200 South Biscayne Boulevard
Suite 4410
Miami, Florida 33131
Telephone: (305) 704-5945
Facsimile: (305) 704-5955

*Attorneys for Defendant Del Monte Foods Co.*

**JOHN J. KUSTER**
jkuster@sidley.com
**JAMES D. ARDEN**
jarden@sidley.com
Sidley Austin LLP
787 Seventh Avenue
New York, New York 10019-6018
Telephone: (212) 839-5300

*Attorneys for Defendants Colgate-Palmolive
Company and Hill's Pet Nutrition, Inc.*

**MARCOS DANIEL JIMINEZ**
E-Mail: mjimenez@kennynachwalter.com
**ROBERT J. ALWINE, II**
E-Mail ralwine@kennynachwalter.com
**KENNY NACHWALTER, P.A.**
201 South Biscayne Boulevard
Suite 1100
Miami, Florida 33131
Telephone: (305) 373-1000
Facsimile: (305) 372-1861

*Attorneys for Defendant Safeway, Inc.*

**RICHARD FAMA**
E-Mail: rfama@cozen.com
**JOHN J. McDONOUGH**
E-Mail: jmcdonough@cozen.com
**COZEN O'CONNOR**
45 Broadway
New York, New York 10006
Telephone: (212) 509-9400
Facsimile: (212) 509-9492

*Attorneys for Defendant Del Monte Foods*

**JOHN F. MULLEN**
**COZEN O'CONNOR**
E-Mail: jmullen@cozen.com
1900 Market Street
Philadelphia, PA 19103
Telephone: (215) 665-2179
Facsimile:  (215) 665-2013

*Attorneys for Defendant Del Monte Foods, Co.*

**ROBERT C. TROYER**
E-Mail: rctroyer@hhlaw.com
**HOGAN & HARTSON**
1200 17th Street
 One Tabor Center, Suite 1500
Denver, Colorado 80202
Telephone: (303) 899-7300
Facsimile:   (303) 899-7333

*Attorneys for Defendants Nestle U.S.A., Inc. and Nestle Purina Petcare Co.*

**JAMES K. REUSS**
E-Mail: jreuss@lanealton.com
**LANE ALTON & HORST**
Two Miranova Place
Suite 500
Columbus, Ohio 43215
Telephone: (614) 233-4719

*Attorneys for Defendant The Kroger Co. of Ohio*

**CAROL A. LICKO**
E-Mail: calicko@hhlaw.com
**HOGAN & HARTSON**
Mellon Financial Center
1111 Brickell Avenue, Suite 1900
Miami, Florida 33131
Telephone (305) 459-6500
Facsimile  (305) 459-6550

*Attorneys for Defendants Nestle U.S.A., Inc. and Nestle Purina Petcare Co.*

**CRAIG A. HOOVER**
E-Mail: cahoover@hhlaw.com
**MIRANA L. BERGE**
E-Mail: mlberge@hhlaw.com
**HOGAN & HARTSON L.L.P.**
555 13th Street, N.W.
Washington, D.C. 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910

*Attorneys for Defendants Nestle U.S.A., Inc. and Nestle Purina Petcare Co.*

**ALAN G. GREER**
agreer@richmangreer.com
**RICHMAN GREER WEIL BRUMBAUGH MIRABITO & CHRISTENSEN**
201 South Biscayne Boulevard
Suite 1000
Miami, Florida 33131
Telephone: (305) 373-4000
Facsimile:  (305) 373-4099

*Attorneys for Defendants Proctor & Gamble Co. and The Iams Co.*

**D. JEFFREY IRELAND**
E-Mail: djireland@ficlaw.com
**BRIAN D. WRIGHT**
E-Mail: bwright@ficlaw.com
**LAURA A. SANOM**
E-Mail: lsanom@ficlaw.com
**FARUKI IRELAND & COX**
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, Ohio 45402

*Attorneys for Defendant Proctor & Gamble Co. and The Iams Co.*

**RALPH G. PATINO**
E-Mail: rpatino@patinolaw.com
**DOMINICK V. TAMARAZZO**
E-Mail: dtamarazzo@patinolaw.com
**CARLOS B. SALUP**
E-Mail: csalup@patinolaw.com
**PATINO & ASSOCIATES, P.A.**
225 Alcazar Avenue
Coral Gables, Florida 33134
Telephone: (305) 443-6163
Facsimile: (305) 443-5635

*Attorneys for Defendants Pet Supplies "Plus" and Pet Supplies Plus/USA, Inc.*

**CRAIG P. KALIL**
E-Mail: ckalil@aballi.com
**JOSHUA D. POYER**
E-Mail: jpoyer@abailli.com
**ABALLI MILNE KALIL & ESCAGEDO**
2250 Sun Trust International Center
One S.E. Third Avenue
Miami, Florida 33131
Telephone: (303) 373-6600
Facsimile: (305) 373-7929

*Attorneys for New Albertson's Inc. and Albertson's LLC*

**JEFFREY S. YORK**
E-Mail: jyork@mcguirewoods.com
Sara F. Holladay-Tobias
E-Mail: sfhollad@mcguirewoods.com
**McGUIRE WOODS LLP**
50 N. Laura Street, Suite 3300
Jacksonville, FL 32202
Telephone: (904) 798-2680
Facsimile: (904) 360-6330

*Attorneys for Defendant Natura Pet Products, Inc.*

**C. RICHARD FULMER, JR.**
E-Mail: rfulmer@Fulmer.LeRoy.com
**FULMER, LEROY, ALBEE, BAUMANN, &**
**GLASS**
2866 East Oakland Park Boulevard
Fort Lauderdale, Florida 33306
Telephone: (954) 707-4430
Facsimile: (954) 707-4431

*Attorneys for Defendant The Kroger Co. of Ohio*

**W. RANDOLPH TESLIK**
E-Mail: rteslik@akingump.com
**ANDREW J. DOBER**
E-Mail: adober@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1333 New Hampshire Avenue, NW
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288

*Attorneys for Defendants New Albertson's Inc. and Albertson's LLC*