UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 07-21221-CIV-ALTONAGA/TURNOFF

RENEE BLASZKOWSKI, *et al.*,
individually and on behalf of
others similarly situated,

          Plaintiffs,

vs.

MARS, INCORPORATED, *et al.*,

          Defendants.

_____/

**DEFENDANTS' CONSOLIDATED REPLY TO PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED
<u>CLASS ACTION COMPLAINT</u>**

Dockets.Justia.com

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS.................................................................................... i

TABLE OF AUTHORITIES ............................................................................iii

ARGUMENT ................................................................................................... 1

    I.    Plaintiffs' Standing Analysis Fails as a Matter of Law and Fact......................... 3

        A.    Plaintiffs Must, At This Stage, Allege Sufficient Facts to Show Standing.................................................................................. 4

        B.    Collective Allegations of Injury Cannot Show Plaintiffs' Independent Standing as Individuals. ....................................... 5

        C.    Even If Plaintiffs Had Made Factual Allegations of Enhanced Risk of Injury, Such Allegations Could Not Satisfy the Requirement That Each Plaintiff Show Actual Injury.................................... 6

        D.    Plaintiffs' Mere Purchase of a Product Cannot Qualify as an Injury for Standing Purposes. ............................................................ 8

        E.    Plaintiffs Have No Standing to Sue a Defendant Class. ......................... 12

    II.    Plaintiffs Cannot Demonstrate a Plausible Entitlement to Relief as Required by Rules 8 and 12(b)(6) Under *Twombly*. ........................................... 13

        A.    Plaintiffs Have Not Adequately Pleaded Causation or Reliance............. 16

            1.    The TAC Does Not Contain Allegations of Causation. .............. 17

            2.    Plaintiffs Do Not Allege Reliance on Specific Advertising. ....... 19

    III.    Plaintiffs' Fraud-Based Claims (Counts I-III) Are Not Pleaded with Particularity as Rule 9(b) Requires. ................................................................ 19

        A.    The TAC Fails to Allege Specific Fraudulent Acts................................ 21

        B.    The TAC Fails to Allege Reliance, Causation or Injury as to Each Named Plaintiff.................................................................... 24

        C.    Plaintiffs Are Not Entitled to a Relaxed Rule 9(b) Pleading Standard................................................................................. 25

**Table of Contents**
**(Continued)**

Page

IV.    Defendants Fall Within the Safe Harbor Exception to FDUTPA and Other
       State Consumer Protection Statutes (Count III)................................................. 26

V.     Plaintiffs Cannot Save Their Negligence Claim (Count IV) from the
       Economic Loss Rule...................................................................................... 32

VI.    Plaintiffs' Response Does Not Dispute Defendants' Contention That the
       Strict Products Liability Claim (Count V) Is Fatally Defective......................... 32

VII.   Plaintiffs Cannot Show an Entitlement to Injunctive Relief (Count VI)............. 36

VIII.  Plaintiffs Cannot Provide the Showing of Privity Florida Law Requires for
       Breach of Warranty Claims (Counts VII and VIII)............................................ 37

IX.    Plaintiffs' Unjust Enrichment Claim (Count IX) Fails Because Plaintiffs
       Seek Adequate Legal Remedies Through Other Claims and Impermissibly
       Predicate This Claim on Allegations of Wrongdoing. ...................................... 40

CONCLUSION ............................................................................................................ 42

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*31 Foster Children v. Bush*,
329 F.3d 1255 (11th Cir. 2003) ........................................................ 4

*Affiliates for Evaluation and Therapy, Inc. v. Viasyn Corp.*,
500 So. 2d 688 (Fla. 3d Dist. Ct. App. 1987) .................................... 40

*Alfaro v. E.F. Hutton & Co., Inc.*,
606 F. Supp. 1100 (E.D. Pa. 1985) .................................................... 25

*Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*,
390 F. Supp. 2d 1170 (M.D. Fla. 2005) ....................................... 36, 40

*Artuz v. Bennett*,
531 U.S. 4 (2000) ................................................................................ 3

*Autohaus, Inc. v. Aguilar*,
794 S.W. 2d 459 (Tex. App.—Dallas 1990, writ denied) .................. 23

*Barrow v. Bristol-Myers Squibb*, No. 96-689,
1998 WL 812318 (M.D. Fla. Oct. 29, 1998) .................................... 40

*Baur v. Veneman*,
352 F.3d 625 (2nd Cir. 2003) .......................................................... 6, 7

*Bell Atlantic Corp. v. Twombly*,
127 S. Ct. 1955 (2007) ............................................................... passim

*Berenguer v. Warner-Lambert Co.*, App. Case No. 02-05242,
2003 WL 24299241 (Fla. Cir. Ct. July 31, 2003) ......................... 27, 28

*Blackston v. Shook & Fletcher Insulation Co.*,
764 F.2d 1480 (11th Cir. 1985) ........................................................ 35

*Box Office Enter., LLC v. Brian D. Gordon, C.P.A., P.A.*, No. 05-21010,
2007 WL 1362898 (S.D. Fla. May 9, 2007) ...................................... 21

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
116 F.3d 1364 (11th Cir. 1997) ................................................... 20, 21

*Chrysler Corp. v. Miller*,
310 So. 2d 356 (Fla. 3d Dist. Ct. App. 1975) .................................... 39

*ClassroomDirect.com, LLC v. Draphix, LLC*, Civ. No. 07-11640,
2008 WL 185512 (11th Cir. Jan. 23, 2008) ...................................... 14

*Coghlan v. Wellcraft Marine Corp.*,
240 F.3d 449 (5th Cir. 2001) .............................................................. 9

*Collins v. DaimlerChrysler*,
894 So. 2d 988 (Fla. 5th Dist. Ct. App. 2004) .................................... 8

**Table of Authorities**
**(Continued)**

Page(s)

*Conley v. Boyle Drug Co.*,
    570 So. 2d 275 (Fla. 1990)...................................................................... 33

*Cordova v. Lehman Bros. Inc.*,
    526 F. Supp. 2d 1305 (S.D. Fla. 2007)...................................................21, 22, 25

*County of Oakland v. Detroit*,
    866 F.2d 839 (6th Cir. 1989)...................................................................... 11

*Davis v. Coca-Cola Bottling Co. Consol.*, No. 05-12988,
    2008 WL 314962 (11th Cir. Feb. 6, 2008) ......................................................... 14

*Delahunt v. Cytodyne Techs.*,
    241 F. Supp. 2d 827 (S.D. Ohio 2003) ............................................................ 11

*Doug Grant, Inc. v. Greate Bay Casino Corp.*,
    3 F. Supp. 2d 518 (D.N.J. 1998) ................................................................... 28

*Dunn v. The Gleason Four, Inc.*, No. 2:07-cv-314-FtM-29SPC,
    2007 WL 2447020 (M.D. Fla. Aug. 23, 2007) .......................................................5

*Durham v. Bus. Mgmt. Assoc.*,
    847 F.2d 1505 (11th Cir. 1988)............................................................... 21, 25

*Erickson v. Pardus*,
    127 S. Ct. 2197 (2007).............................................................................. 15

*FEC v. Akins*,
    524 U.S. 11 (1998) .................................................................................... 6

*Fernandez v. Gonzales*, No. 06-22442,
    2006 U.S. Dist. LEXIS 96144 (S.D. Fla. Dec. 5, 2006)......................................... 31

*Fin. Sec. Assur. Inc. v. Stephens, Inc.*,
    500 F.3d 1276 (11th Cir. 2007).................................................................... 14

*Flint v. ABB, Inc.*,
    337 F.3d 1326 (11th Cir. 2003).................................................................... 41

*Florida v. Tenet Healthcare Corp.*,
    420 F. Supp. 2d 1288 (S.D. Fla. 2005)...................................................27, 28, 41

*Focus on the Family v. Pinellas Suncoast Transit Auth.*,
    344 F.3d 1263 (11th Cir. 2003)......................................................................5

*FTC v. Colgate-Palmolive Co.*,
    380 U.S. 374 (1965) ................................................................................. 23

*Garcia v. Santa Maria Resort, Inc.*,
    528 F. Supp. 2d 1283 (S.D. Fla. 2007).......................................................... 14, 15

**Table of Authorities**
**(Continued)**

Page(s)

*Gonzales v. PepsiCo, Inc.*,
  489 F. Supp. 2d 1233 (D. Kan. 2007) ................................................................. 10

*Greater Coral Springs Realty, Inc. v. Century 21 Real Estate of S. Fla., Inc.*,
  412 So. 2d 940 (Fla. 3d Dist. Ct. App. 1982) ..................................................... 11

*Green v. McNeil Nutritionals, LLC*, App. Case No. 2004-0379,
  2005 WL 3388158 (Fla. Cir. Ct. Nov. 16, 2005) ........................................... 41, 42

*Gritzke v. M.R.A. Holding, LLC*, No. 4:01cv495-RH,
  2002 WL 32107540 (N.D. Fla. March 15, 2002) ................................................. 5, 6

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,
  484 U.S. 49 (1987) .................................................................................................. 4

*H & J Paving of Fla., Inc. v. Nextel, Inc.*,
  849 So. 2d 1099 (Fla. 3d Dist. Ct. App. 2003) ...................................................... 9

*Heffler v. U.S. Fid. & Guar. Ins. Co.*, No. 90-7126,
  1992 WL 50095 (E.D. Pa. March 10, 1992) .......................................................... 12

*Hollywood E. Artful Designs, Inc. v. Gutentag*, Civ. No. 07-60763,
  2007 WL 4468703 (S.D. Fla. Dec. 18, 2007) ....................................................... 14

*In re Eagle Bldg. Tech., Inc. Sec. Litig.*,
  319 F. Supp. 2d 1318 (S.D. Fla. 2004) ............................................................ 20, 24

*In re Friedman's Inc. v. Morgan Schiff & Co.*, No. 407CV041,
  2008 WL 131163 (S.D. Ga. Jan. 10, 2008) ........................................................... 36

*In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*,
  21 F. Supp. 2d 593 (E.D. La. 1998) ................................................................. 39, 40

*In re The Prudential Ins. Co. of Am. Sales Practices Litig.*,
  975 F. Supp. 584 (D.N.J. 1996) ....................................................................... 24, 26

*Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*,
  891 So. 2d 532 (Fla. 2004) .................................................................................... 32

*Intergraph Corp. v. Stearman*,
  555 So. 2d 1282 (Fla. 2d Dist. Ct. App. 1990) .................................................... 40

*Jackson v. H.L. Bouton Co.*,
  630 So. 2d 1173 (Fla. 1st Dist. Ct. App. 1994) ................................................... 35

*Jacobs v. Osmose, Inc.*, No. 01-944,
  2002 WL 34241682 (S.D. Fla. Jan. 3, 2002) ....................................................... 37

*KC Leisure, Inc. v. Haber*,
  972 So. 2d 1069 (Fla. 5th Dist. Ct. App. 2008) .................................................. 26

**Table of Authorities**
**(Continued)**

Page(s)

*Korman v. HBC Fla., Inc.,*
   182 F.3d 1291 (11th Cir. 1999) ............................................................................ 31

*Kramer v. Piper Aircraft Corp.,*
   520 So. 2d 37 (Fla. 1988) ............................................................................. 37, 39

*Levine v. Johanns,* No. C05-04764 MHP, No. C05-05346 MHP,
   2006 U.S. Dist. LEXIS 63667 (N.D. Cal. Sept. 6, 2006) ........................................ 6

*Lydia Sec. Monitoring, Inc. v. Alarm One, Inc.,* Civ. No. 07-80145,
   2007 WL 2446889 (S.D. Fla. Aug. 23, 2007) ...................................................... 27

*Manheim v. Ford Motor Co.,*
   201 So. 2d 440 (Fla. 1967) ................................................................................. 38

*Marshall v. Wellcraft Marine, Inc.,*
   103 F. Supp. 2d 1099 (S.D. Ind. 1999) ............................................................... 40

*Martin v. United States,* No. 1:07-CV-1243,
   2007 WL 2071265 (N.D. Ga. July 18, 2007) ....................................................... 17

*Montgomery v. New Piper Aircraft, Inc.,*
   209 F.R.D. 221 (S.D. Fla. 2001) ......................................................................... 27

*Moore v. Miami-Dade County,* 502 F. Supp. 2d 1224 (S.D. Fla. 2007) ..................... 34

*Moore v. Miami-Dade County,* Civ. No. 06-22705,
   2007 WL 4644629 (S.D. Fla. Dec. 10, 2007) ..................................................... 15

*Mouly v. Amann,* No. 07-80104-civ-Ryskamp,
   2007 WL 1624761 (S.D. Fla. June 1, 2007) ....................................................... 17

*Napier, Inc. v. Osmose,*
   399 F. Supp. 2d 811 (W.D. Mich. 2005) ............................................................. 34

*Niresk Indus., Inc. v. FTC,*
   278 F.2d 337 (7th Cir. 1960) .............................................................................. 23

*O'Neill v. The Home Depot U.S.A.,*
   243 F.R.D. 469 (S.D. Fla. 2006) ......................................................................... 26

*Osahar v. Potter,* Civ. No. 07-22080,
   2008 WL 479066 (S.D. Fla. Feb. 19, 2008) ....................................................... 15

*Pescatrice v. Orovitz,* Civ. No. 07-60653,
   2007 WL 3034929 (S.D. Fla. Oct. 17, 2007) ...................................................... 14

*Powell v. Barrett,*
   496 F.3d 1288 (11th Cir. 2007) .......................................................................... 17

*Powers v. Lazy Days RV Center, Inc.,* No. 8:05-cv-1542T17EAJ,
   2006 WL 373011 (M.D. Fla. Feb. 16, 2006) ....................................................... 39

## Table of Authorities
## (Continued)

Page(s)

*Prohias v. AstraZeneca Pharm., L.P.*,
    958 So. 2d 1054 (Fla. 3d Dist. Ct. App. 2007) ................................................................. 28

*Prohias v. Pfizer*,
    490 F. Supp. 2d 1228 (S.D. Fla. 2007)........................................................................ 12, 30

*Pulte Home Corp. v. Ply Gem Indus., Inc.*,
    804 F. Supp. 1471 (M.D. Fla. 1992) .................................................................................. 33

*Ray v. Cutter Labs*,
    754 F. Supp. 193 (M.D. Fla. 1991) .................................................................................... 33

*Rehurek v. Chrysler Credit Corp.*,
    262 So. 2d 452 (Fla. 2d Dist. Ct. App. 1972) ................................................................... 38

*Rivera v. Wyeth-Ayerst Labs.*,
    283 F.3d 315 (5th Cir. 2002)........................................................................... 9, 10, 11, 12

*Rollins, Inc. v. Heller*,
    454 So. 2d 580 (Fla. 3d Dist. Ct. App. 1984) ..................................................................... 8

*S & B Invs., LLC v. Motiva Enters., L.L.C.*, Civ. No. 03-61993,
    2004 WL 3250306 (S.D. Fla. Dec. 6, 2004) ..................................................................... 27

*Sammons v. Sonic-North Cadillac, Inc.*, No. 6:07-cv-277-Orl-19DAB,
    2007 WL 2298032 (M.D. Fla. Aug. 7, 2007) ................................................................... 18

*Seville Indus. Mach. v. Southmost Mach. Corp.*,
    742 F.2d 786, (3d Cir. 1984)............................................................................................. 25

*Smith v. 2001 S. Dixie Highway, Inc.*,
    872 So. 2d 992 (Fla. 4th Dist. Ct. App. 2004) ................................................................... 9

*Smith v. Global Life Ins. Co.*,
    597 N.W. 2d 28 (Mich. 1999) ........................................................................................... 27

*Spiegel v. Spiegel*, Civ. No. 06-61848,
    2008 WL 151951 (S.D. Fla. Jan. 15, 2008) ..................................................................... 15

*Stickrath v. Globalstar, Inc.*,
    527 F. Supp. 2d 992 (N.D. Cal. 2007)............................................................................... 20

*Stires v. Carnival Corp.*,
    243 F. Supp. 2d 1313 (M.D. Fla. 2002)............................................................................. 25

*T.W.M. v. Am. Med. Sys.*,
    886 F. Supp. 842 (N.D. Fla. 1995) .............................................................................. 38, 39

*Tilton v. Playboy Enm't. Group, Inc.*, No. 88:05-cv-692-T-30TGW,
    2007 WL 80858 (M.D. Fla. Jan. 8, 2007).......................................................................... 41

# Table of Authorities
## (Continued)

Page(s)

*Tolliver v. Monaco Coach Corp.*, No. 8:06-cv-856,
  2006 WL 1678842 (M.D. Fla. June 16, 2006) ................................................... 39

*Tooltrend, Inc. v. CMT Utensili, SRL*,
  198 F.3d 802 (11th Cir. 1999) ................................................................. 40

*Tylka v. Gerber Prods. Co.*, No. 96C1647,
  1999 WL 495126 (N.D. Ill. July 1, 1999) ..................................................... 23

*Warth v. Seldin*,
  422 U.S. 490 (1975) ............................................................................ 4

*Webb Press Servs. v. New London Motors, Inc.*,
  205 Conn. 479 (Conn. 1987) .................................................................. 23

*Wenger v. Lumisys, Inc.*,
  2 F. Supp. 2d 1231 (N.D. Cal. 1998) ......................................................... 26

*West v. Caterpillar Tractor Co.*,
  336 So. 2d 80 (Fla. 1976) .............................................................. 33, 35

*Williams v. Purdue Pharma Co.*,
  297 F. Supp. 2d 171 (D.D.C. 2003) ........................................................... 19

**Statutes**

21 U.S.C. §§ 301-399 ............................................................................ 36

Fla. Stat. § 501.212 ...................................................................... 27, 28

Fla. Stat. § 570.01 ............................................................................ 30

Fla. Stat. § 570.07 ............................................................................ 30

Fla. Stat. § 580.091 ........................................................................... 30

N.Y. Agric. & Mkts. Law § 16 ................................................................... 30

N.Y. Agric. & Mkts. Law § 4 .................................................................... 30

N.Y. Agric. & Mkts. Law § 5 .................................................................... 30

N.Y. Agric. & Mkts. Law § 16 ................................................................... 30

**Other Authorities**

4 *Florida Pleading and Practice Forms* § 35:4 (Oct. 2007) ...................................... 39

Fla. Dep't of Agric. and Consumer Servs., Div. of Agric. Envtl. Servs.,
  http://www.flaes.org/aes-fsflab/index.html ................................................. 30

Restatement (Second) of Torts § 402A .......................................................... 35

**Rules**

Fed. R. Civ. P. 12(b) .......................................................................... 34

**Table of Authorities**
**(Continued)**

Page(s)

Fed. R. Civ. P. 8(a) ........................................................................................... 15, 32

Fed. R. Civ. P. 9(b) ............................................................................................. passim

Fla. R. Civ. P. Form 1.949 ................................................................................. 37

**Constitutional Provisions**

U.S. Const. amend. I ........................................................................................... 37

**ARGUMENT**

Plaintiffs' Response to Defendants' Motion to Dismiss the Third Amended Class Action

Complaint ("Response" or "Resp.") does nothing to alter the necessary conclusion that emerges

from nearly a year of pleading attempts—Plaintiffs cannot present a viable complaint.  As

demonstrated in Defendants' Motion to Dismiss ("Motion" or "Mot."), Plaintiffs lack standing

and make no showing of a plausible entitlement to relief.  To deflect attention from these fatal

flaws, Plaintiffs attempt three maneuvers—two of them at odds with their Third Amended Class

Action Complaint ("TAC" or "Complaint"), and one of them at odds with the law of standing.

First, notwithstanding the vast array of criticisms of Defendants' marketing and

manufacturing of their products in the TAC, Plaintiffs now characterize their Complaint as

focused on (1) the allegation that Defendants market all of their pet food as "human-grade" and

(2) the demand that Defendants deliver the "human-grade" pet food promised.  (*See, e.g.*, Resp.

at 2 ("Plaintiffs simply want the Defendants to . . . offer[] a food . . . that contains human-grade

quality food, which is exactly what they market, but do not sell"); *see also id.* at 14-15.)  But

changing the focus does not change the required result: nowhere does the TAC allege that *any*

specific Plaintiff bought *any* specific product from *any* specific Defendant on the basis of that

Defendant's representation that the product contained "human-grade" ingredients (or on any

other specific basis, for that matter; *see* Sections II and III below).  Indeed, Plaintiffs support

their allegations that Defendants market their pet food as "human-grade" with but one reference

in their entire 200-paragraph Complaint—a citation of one sentence from one page of a website

where a single Defendant described products as containing ingredients "you'd eat yourself"

(Resp. at 2 n.3).  However, Plaintiffs do not allege that this (or any other) statement caused

injury to anyone, much less to a Plaintiff in this case (*see* Section I below).  Moreover,

Defendants have found no other such advertisement allegedly marketing pet food as "human grade" food anywhere in the TAC.

Second, Plaintiffs repeatedly complain that Defendants seek to impose pleading burdens on them that exceed the levels appropriate for this stage of the litigation (*see, e.g.*, Resp. at 3, 24). However, to avoid dismissal for lack of standing, *each* Plaintiff must separately allege sufficient facts in the Complaint to establish that he or she suffered a specific actual and legally cognizable injury (*see* Section I.A below), and Plaintiffs must show such standing against *each* Defendant (*see* Section I.B below). Furthermore, to avoid dismissal under Rules 8 and 12(b)(6), Plaintiffs must show a "plausible entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1967 (2007). To make such a showing, Plaintiffs must allege sufficient facts in their Complaint to establish the elements of causation and reliance necessary to their claims (*see* Section II below) and the particular elements upon which each of their individual claims rests (*see* Sections III through IX below) with pleading standards appropriately heightened for the fraud-based claims (*see* Section III below). Plaintiffs simply have not alleged facts sufficient to show standing or to assert any viable cause of action.

Third, despite Plaintiffs' denial that they have any super-regulatory ambitions (*see, e.g.*, Resp. at 1, 3), Plaintiffs seek to impose liability on Defendants based on their notion of what the law ought to be, not what the law is. Not only is the TAC replete with allegations seeking regulation by this Court, but Plaintiffs' Response repeatedly decries the alleged ineffectiveness of the existing regulatory system. (*See, e.g.*, Resp. at 5 (criticizing the manner in which the Food and Drug Administration ("FDA") has employed its "regulatory discretion"); *id*. at 6 (criticizing the FDA for "abdicat[ing] its regulatory powers" and focusing only on "health claims," and for not requiring "testing" regarding whether pet food "treats or prevents a disease").) Plaintiffs'

TAC and Response reject the numerous federal and state laws that already govern the complained-of marketing language and many of the ingredients at issue (Mot. at 8, 10, 40-47) and ask this Court to do the same. Rather than identifying specific products or advertisements associated with specific Defendants that have injured specific Plaintiffs, Plaintiffs' sweeping allegations against the entire pet food industry conspicuously avoid any specification that could support a proper complaint. Plaintiffs unquestionably propose a judicially-controlled super-regulatory regime, as described in the Motion (at 51-55) and in Section VII below. Contrary to Plaintiffs' contention, the Court may not rewrite the existing statutes and regulations that govern Defendants' conduct. *See, e.g.*, *Artuz v. Bennett*, 531 U.S. 4, 10 (2000) (determining that a court may not "rewrite [a] statute to accommodate" a party's "policy arguments"). Only a legislature may assume this role.

Plaintiffs' three general maneuvers cannot obscure the TAC's fatal defects highlighted in the Motion. As demonstrated below, Plaintiffs mount no specific challenge to any of the Motion's contentions that can save the TAC or any of its purported claims.

## I.    Plaintiffs' Standing Analysis Fails as a Matter of Law and Fact.

Plaintiffs inaccurately state that "[t]he entire basis for the Defendants [sic] claim that the Plaintiffs' [sic] have somehow failed to allege standing is . . . that they have not alleged the specific _brand_ of pet food produced by each Defendant Manufacturer" (Resp. at 43 (emphasis in original)). Plaintiffs have completely misconstrued Defendants' core argument on standing. The argument is simple and is directly stated: at the pleadings stage, each Plaintiff must independently allege sufficient facts to show standing as an individual. To this end, courts have made clear that (1) collective allegations of injury are not sufficient; (2) allegations of potential harm are not sufficient; and (3) the mere purchase of a product does not constitute an actual and legally cognizable injury (Mot. at 16-24). Here, no Plaintiff has independently and individually

alleged facts sufficient, if ultimately proven, to show some injury other than the purported

purchase of one or more unidentified products manufactured by unidentified manufacturers and

sold by unidentified retailers. Moreover, Plaintiffs' attempt to bring suit against a defendant

class does not provide the required standing.

### A. Plaintiffs Must, At This Stage, Allege Sufficient Facts to Show Standing.

Unable to establish the independent and individual injury that each Plaintiff must show to

have standing, Plaintiffs resort to the contention that Defendants are asking them to "prove"

standing at this early stage of the litigation and that such a proof requirement is premature (Resp.

at 36). (*See also* Resp. at 27, 44 (citing cases for the proposition that plaintiffs are not required

to provide evidence of standing in their pleadings).) Plaintiffs sum up these contentions by

accusing Defendants of asking for "heightened pleading" with respect to standing (Resp. at 26-

27). Defendants ask for no such thing.

Although they need not provide evidence or proof of standing in their Complaint,

Plaintiffs unquestionably must allege facts sufficient, when later proven, to show their standing.

*See, e.g.*, *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 65 (1987)

(complaint can be saved from dismissal only if it contains "sufficient 'allegations of fact'" to

support standing); *Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("Article III's requirement remains:

the plaintiff still must *allege* a distinct and palpable injury to himself") (emphasis added).

Where, as here, no individual Plaintiff has alleged sufficient facts to show a distinct palpable

injury to himself or herself as an individual, this Court should dismiss the Complaint. *See, e.g.*,

*31 Foster Children v. Bush*, 329 F.3d 1255, 1263-68, 1282 (11th Cir. 2003) (recognizing that

"general factual allegations" suffice for standing purposes at the pleading stage, but dismissing

claims for lack of standing of plaintiffs who failed as individuals "to allege either a palpable injury or the imminent risk of harm").[1]

**B.     Collective Allegations of Injury Cannot Show Plaintiffs' Independent Standing as Individuals.**

Despite numerous opportunities to do so, no individual Plaintiff has alleged that his or her pet was harmed as a result of ingestion of any Defendant's product or indeed has suffered any injury at all.[2]  Rather, the TAC makes widespread general allegations of illness or death of dogs or cats of "consumers" or "plaintiffs."  All the while, Plaintiffs never directly challenge Defendants' contention that each Plaintiff must independently allege sufficient facts to show standing as an individual.[3]  Plaintiffs' reluctance to challenge this contention is likely due to the

---

[1]  Plaintiffs cite *Dunn v. The Gleason Four, Inc.*, No. 2:07-cv-314-FtM-29SPC, 2007 WL 2447020 (M.D. Fla. Aug. 23, 2007), as somehow standing for the proposition that Plaintiffs need not plead specific facts to support their claims.  On the contrary, the court recognized that "it is . . . plaintiff's responsibility to allege facts sufficient to establish her standing, and the Court cannot 'speculate concerning the existence of standing, nor should we imagine or piece together an injury sufficient to give plaintiff standing when it has demonstrated none.'" *Id.* at *2 (quoting *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1229-30 (11th Cir. 2000)).  The court in *Dunn* held that the disabled plaintiff had met these requirements, when she alleged that barriers at one specific location prevented her from accessing the specific services provided at that location.  *Id.* at *3.

[2]  Plaintiffs complain that Defendants' standing argument conflates the injury prong and the causation prong of standing (Resp. at 44, citing *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1272-73 (11th Cir. 2003)).  While causation, as Plaintiffs themselves admit (Resp. at 44), is integral to the standing analysis, Defendants focus their standing argument on the equally basic and fatal flaw that Plaintiffs have not alleged any actual and legally cognizable injury to themselves as individuals at all (Mot. at 17-19).

[3]  Plaintiffs seek to avoid this constitutional requirement by suggesting that FDUTPA protects "not only the rights of litigants, but also the rights of the consuming public at large" (Resp. at 51).  However, even the cases they cite for this proposition clearly indicate that a plaintiff bringing an action under FDUTPA must be personally aggrieved.  *See, e.g., Gritzke v. M.R.A. Holding, LLC*, No. 4:01cv495-RH, 2002 WL 32107540, at *3 n.3 (N.D. Fla. March 15, 2002) ("To state a claim under [F]DUTPA, a plaintiff must be aggrieved by a violation of the

[Footnote continued on next page]

Eleventh Circuit's affirmation and reaffirmation of this rule (*see* Mot. at 17 (citing cases)). Rather, Plaintiffs cite three cases as somehow establishing the proposition that where injuries are "widespread," collective allegations suffice for purposes of the standing inquiry (*see* Resp. at 36). These cases do not even come close to supporting that proposition. The first cited case, *FEC v. Akins*, 524 U.S. 11 (1998), merely acknowledged the uncontroversial proposition that an individual plaintiff is not deprived of standing just because many others share his or her injury. *Id*. at 24-25. Likewise, *Levine v. Johanns*, No. C05-04764 MHP, No. C05-05346 MHP, 2006 U.S. Dist. LEXIS 63667 (N.D. Cal. Sept. 6, 2006) holds merely that standing is not negated when an injury is widely shared. *Id*. at *16. Finally, *Baur v. Veneman*, 352 F.3d 625 (2nd Cir. 2003), involved only one plaintiff and thus had nothing to say about allegations of collective injury. Not one of these cases supports the proposition that plaintiffs may collectively allege standing in lieu of alleging facts sufficient to establish that each of them has individual standing.

C.    **Even If Plaintiffs Had Made Factual Allegations of Enhanced Risk of Injury, Such Allegations Could Not Satisfy the Requirement That Each Plaintiff Show Actual Injury.**

Although Plaintiffs never fully formulate an argument on this front, they appear to propose that they may avoid alleging actual and legally cognizable injury by instead pointing to an enhanced risk of injury from potentially harmful products (Resp. at 36). They cite a single Second Circuit case, *Baur*, 352 F.3d at 641-42, for this questionable proposition. This suggested argument is unavailing. First, Plaintiffs do not plead such allegations in their TAC and did not

---

[Footnote continued from previous page]
statute."). The plaintiff in *Gritzke* alleged that she was aggrieved, despite not having purchased the explicit video at issue, because the video contained unauthorized pornographic footage of her. *Id*. at *1. She clearly alleged a concrete and particularized injury to herself as an individual. *See also* Section IV below.

include them in any of the multiple previous versions of the Complaint.[4]  Even more damning is

that *Baur* does not support Plaintiffs' contention.

In *Baur*, the plaintiff sought only injunctive relief to "require [government] defendants

. . . to ban the use of downed livestock as food for human consumption."  *Id*. at 628.  The court in

*Baur* recognized that the suit was a purely "administrative action" against the government

agencies responsible for ensuring the safety of human food and that the suit simply sought proper

enforcement of the statutes designed to guide the actions of those agencies.  *Id*. at 632, 634-35.

Because the plaintiff alleged a "discrete, individual risk of personal harm" and because there was

a "tight connection between the type of injury [the plaintiff] allege[d] and the fundamental goals

of the statutes which he sue[d] under," the Second Circuit reversed the lower court's holding that

the plaintiff lacked standing.  *Id*. at 635.  The court carefully limited its holding to cases

involving environmental harm or consumer safety.  *Id.* at 634.

Plaintiffs here have brought *multiple* claims against *private* Defendants.  Even with

respect to their injunctive relief claims, they do not seek the enforcement of any statutes designed

to guide the actions of agencies, but instead attempt to wrest the relevant issues entirely out of

the grasp of the agencies charged with addressing them.  They do not allege discrete, individual

risk of personal harm, but instead put forward purely collective "injury" allegations or

conclusory pronouncements.  Finally, they do not allege environmental or consumer safety

---

[4]  Plaintiffs put forward the conclusory allegation that "Defendants knew or, in the exercise of
reasonable care, should have known, that the pet foods presented an unacceptable and
unreasonable risk of harm to the Plaintiffs/Class Representatives' and the Plaintiff Class'
companion pets" (TAC ¶ 162).  However, this allegation functions merely as part of the
formulaic recitation of elements of the negligence claim (Count IV) and, as with the rest of
Plaintiffs' bare legal formulas, draws support from no specific factual allegations
whatsoever.

issues, but seek relief for the mere purchase of a product or for injuries to the pets of some

undisclosed person or persons.  Quite simply, *Baur* does not apply.

    **D.**    **Plaintiffs' Mere Purchase of a Product Cannot Qualify as an Injury
for Standing Purposes.**

    Plaintiffs erroneously contend in their Response that, despite the ample authority cited in

the Motion in support of the proposition that the mere purchase of a product cannot constitute an

actual injury for standing purposes (*see* Mot. at 19-21), the law is somehow different in Florida.[5]

In support of their argument, Plaintiffs rely primarily on *Collins v. DaimlerChrysler*, 894 So. 2d

988, 990-91 (Fla. 5th DCA 2004), in which the court ruled that, under certain circumstances,

diminished value may be recovered under FDUTPA as "benefit of the bargain" damages.

Plaintiffs completely miss the point that *Collins* applies only to cases brought under contract law

principles, not tort cases such as the one at hand.  *Collins* itself makes this clear, defining these

"benefit of the bargain" damages explicitly as "the difference in the market value of the product

or service in the condition in which it was delivered and its market value in the condition in

which it should have been delivered *according to the contract of the parties*."  *Id.* at 990

(emphasis added).  Both of the cases *Collins* cites for this proposition—*Rollins*, *Inc. v. Heller*,

454 So. 2d 580 (Fla. 3d DCA 1984), and *H & J Paving of Fla., Inc. v. Nextel, Inc.*, 849 So. 2d

---

[5]  Plaintiffs also contend that they have alleged actual injury to themselves in the TAC in the
form of payment of higher prices for "premium" foods (Resp. at 44).  Quite apart from the
fact that the term "premium" is allowed by the FDA even without qualification (*see* Mot. at
38-39 n.25), no specific Plaintiff alleges that he or she even purchased any pet food labeled
as "premium" (TAC ¶¶ 3-32), much less paid a higher price for it.  Furthermore, Plaintiffs'
one and only complaint about pet foods labeled as "premium" is that some of these foods are
manufactured by companies that also make "non-premium" foods (TAC ¶¶ 92-93).  Plaintiffs
cannot possibly hope to manufacture an "actual injury" out of such a happenstance.

1099 (Fla. 3d DCA 2003)—involved contract-based claims,[6] which FDUTPA claims merely served to supplement.

The Fifth Circuit cases of *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449 (5th Cir. 2001), and *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315 (5th Cir. 2002), aptly demonstrate the monumental difference between contract-based and tort-based cases in this regard. In *Coghlan*, the plaintiffs claimed that they contracted directly with a boat manufacturer for a boat made entirely of fiberglass, but the manufacturer delivered a boat made partially of plywood. *Id.* at 451. They brought claims against the manufacturer for, among other things, breach of contract and deceptive trade practices under the law of either Florida or Texas. *Id.* at 451-52. Recognizing that both the Texas DTPA and FDUTPA permit benefit of the bargain damages under these circumstances, the Fifth Circuit allowed the claims to go forward. *Id.* at 452-55. The court explicitly noted that "[t]he key distinction between this case and a 'no-injury' product liability suit is that the Coghlans' claims are rooted in basic contract law rather than the law of product liability[.]" *Id.* at 455 n.4.

In *Rivera*, as fully discussed in the Motion (at 19), the plaintiff claimed that the manufacturer of the drug Duract included insufficient information concerning the drug's dangers on product labels and inserts, that Duract injured some users, and that she consequently had not received the benefit of her bargain, despite the fact that she had never been injured herself. *Rivera*, 283 F.3d at 319. The plaintiffs brought suit for violation of the Texas DTPA, breach of

---

[6] *Collins* also cites a third case—*Smith v. 2001 S. Dixie Highway, Inc.*, 872 So. 2d 992 (Fla. 4th DCA 2004)—which simply recites the formula, including the contractual reference, before affirming dismissal of the plaintiffs' complaint.

the implied warranty of merchantability, and unjust enrichment. *Id*. at 317.[7] Although the Fifth

Circuit had just recognized in *Coghlan* that, like FDUTPA, the Texas DTPA permits benefit of

the bargain damages in cases predicated on contract law principles, that same court in *Rivera*

dismissed the Texas DTPA claims along with the rest, because the plaintiffs lacked standing. *Id*.

at 321-22.  Although the plaintiffs cited *Coghlan* to support the viability of their Texas DTPA

and other claims, the court viewed that as "a bold move given that *Coghlan* explicitly

distinguishes valid, contract law suits from the 'no-injury products liability law suit' plaintiffs

bring." *Id*. at 320.

Plaintiffs clearly have no contractual relationship or privity with the Manufacturer

Defendants; nor have they sufficiently alleged the existence of any contract between any specific

Plaintiff and any specific Retailer Defendant for any specific product.  Plaintiffs' claims are, in

reality, tort-based and mirror those in *Rivera*.  Just as the plaintiffs in *Rivera* had no standing to

bring tort-based Texas DTPA claims seeking "benefit of the bargain" damages, even though the

Texas DTPA permits such damages in contract-based cases, so Plaintiffs here have no standing

to attempt the same tactic with FDUTPA or related causes of action.[8]  *See also Greater Coral*

---

[7]  Incomprehensibly, Plaintiffs imply (Resp. at 46) that *Rivera* only has application to issues of strict liability.  Plaintiffs in *Rivera* did not even assert a strict liability claim.

[8]  Plaintiffs also cite *Gonzales v. PepsiCo, Inc.*, 489 F. Supp. 2d 1233 (D. Kan. 2007). *Gonzales*, however, follows the same pattern as *Collins* and *Coghlan*.  Although the plaintiffs in *Gonzales*, like Plaintiffs here, did not have privity with the manufacturer defendants, they could still bring contract-based claims for benefit of the bargain damages against them, because Kansas had eliminated the privity requirement for warranty claims. *Id*. at 1243-44. As the court recognized, therefore, the plaintiffs' "warranty and consumer protection claims [did] not attempt to impose tort-based liability on defendants" and the court distinguished *Rivera* accordingly. *Id*. at 1241.  As discussed in Section VIII below, Florida requires privity for its implied and express warranty claims.  Plaintiffs cannot possibly have privity with the Manufacturer Defendants, from whom they did not directly purchase any product, and

[Footnote continued on next page]

*Springs Realty, Inc. v. Century 21 Real Estate of S. Fla., Inc.*, 412 So. 2d 940, 941 (Fla. 3d DCA

1982) ("[f]ailure to establish [a] contract limited [the plaintiff] to tort remedies for the fraud and

precluded recovery of the 'benefit of the bargain'").

        In any event, Plaintiffs have received the benefit of any relevant bargains they may have

made.  They allege that they purchased pet food from a variety of Defendants and fed that pet

food to their pets.  Plaintiffs do not identify a single Plaintiff whose pet suffered any ill effects

from consuming the food.  Like the plaintiff in *Rivera*, who "paid for an effective pain killer, and

. . . received just that—the benefit of her bargain" (*id.*), so here Plaintiffs allege that they paid for

and received pet food and nourished their pets with it, and do not allege that any one of their pets

suffered any negative consequence.  If one of them had alleged such a consequence, his or her

---

[Footnote continued from previous page]

Plaintiffs have not even come close to alleging privity sufficiently with respect to the Retailer Defendants (*see* Section VIII below).

Plaintiffs also cite *Delahunt v. Cytodyne Techs.*, 241 F. Supp. 2d 827 (S.D. Ohio 2003), for the proposition that "economic injury establishes the requisite injury necessary for Article III standing" (Resp. at 52).  *Delahunt* did not involve issues of standing, as the plaintiff, a purchaser of a drug containing ephedrine, clearly alleged that she had suffered a psychotic seizure as a result of ingesting the drug.  241 F. Supp. 2d at 831.  The plaintiff did seek certification of a class of purchasers as well.  *Id*. at 832.  The court rejected the idea that mere purchase of the product could constitute a legally cognizable injury for purposes of fraud claims (*id*. at 833-34).  However, recognizing that the manufacturer defendant sold the "product directly to consumers" (*id*. at 830), the court allowed such a claim to go forward under the Ohio Consumer Sales Practices Act (*id*. at 834-36).  Once again, no Plaintiff here alleges that he or she purchased any product directly from any Manufacturer Defendant or any specific product from any specific Retailer Defendant.

Plaintiffs further cite *County of Oakland v. Detroit*, 866 F.2d 839, 845 (6th Cir. 1989), for the proposition that "unlawfully inflated price for goods or services" can constitute an injury for standing purposes (Resp. at 52).  However, *County of Oakland* was an antitrust case, governed by antitrust statutes specifically designed to prevent price inflation in certain contexts.  Furthermore, Plaintiffs specifically deny in their Response that they have alleged any such price inflation injury (Resp. at 47).

appropriate remedy would lie in tort.  As in *Rivera*, Plaintiffs may not "oscillat[e] between tort and contract law claims [and seek thus to] obscure the fact that they have asserted no concrete injury" (*id*. at 320-21).  *See also Prohias v. Pfizer*, 490 F. Supp. 2d 1228, 1236 (S.D. Fla. 2007) (finding that plaintiffs had received the benefit of their bargain, despite their allegations of misleading advertising, because "[the plaintiffs] purchased a cholesterol reducing drug, and [the plaintiffs] obtained cholesterol reduction as a result. Therefore, in a general sense, they obtained the benefit of their bargain. . . . Still, [the plaintiffs] claim that they would not have purchased [the drug] but for the misleading advertisements.  But their argument is too little too late—they have already received the benefit from taking [the drug], even if they now claim that they do not want that bargain").

E.      **Plaintiffs Have No Standing to Sue a Defendant Class.**

Plaintiffs also halfheartedly challenge Defendants' argument that Plaintiffs lack standing to sue a Defendant Class because they do not have standing against each named Defendant (Resp. at 53-60).  Plaintiffs argue that Defendants fall within the "juridical link" exception to this doctrine, because they have the necessary legal relationship to one another (1) through participation in trade associations, or (2) through their contractual obligations to one another (Resp. at 58).  Neither of these contentions succeeds.

In support of the argument that the participation of some Defendants in trade associations can provide the necessary juridical link, Plaintiffs cite *Heffler v. U.S. Fid. & Guar. Ins. Co.*, No. 90-7126, 1992 WL 50095 (E.D. Pa. March 10, 1992) (Resp. at 58).  However, in *Heffler*, the association in question actually made legal filings to government agencies on behalf of its entire membership.  *Id*. at *1, *4.  Furthermore, the Defendant Class in *Heffler* was defined precisely in terms of membership in the association which made such legal filings.  *Id*. at *2.  Here, the Defendant Class is defined as expansively as possible to include effectively all manufacturers,

distributors, or retailers of pet food in the nation, whether Plaintiffs know anything about their membership affiliations or not and without any allegation that any relevant associations engage in formal legal activity on behalf of their membership.

Plaintiffs' arguments concerning contractual obligations among the members of the Defendant Class fail for the same reason. Plaintiffs have failed to allege any relevant contractual obligations even among the currently named Defendants. By the nature of the case, they do not allege contractual obligations among the unnamed Defendants. They certainly do not define their proposed Defendant Class in terms of such obligations. Plaintiffs may not conjure up juridical links out of such empty shadows.

Most egregious of all is Plaintiffs' improper attempt to link Defendants because of their filing of one Motion (which was required by this Court) with identical arguments (Resp. at 56-57). Of course the arguments are identical. They are directed to the glaring and pervasive defects in Plaintiffs' TAC as to each Defendant. The fact that Plaintiffs cannot state a claim against any Defendant does not constitute the necessary juridical link.

## II.    Plaintiffs Cannot Demonstrate a Plausible Entitlement to Relief as Required by Rules 8 and 12(b)(6) Under *Twombly*.

Plaintiffs struggle to avoid the impact of *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), in which the Supreme Court clarified the need for sufficiently pleaded claims before imposing the cost of discovery on parties in civil litigation. *Id.* at 1968 (explaining that it is insufficient that Plaintiffs "*might* later establish some 'set of [undisclosed] facts' to support recovery") (emphasis added). In this respect, Plaintiffs take three tacks.

First, they cite a number of pre-*Twombly* cases in the quixotic hope that those cases continue to supply the federal pleading standard after *Twombly* (Resp. at 22-24). But this Court, among others, has recognized that *Twombly* deliberately raises the threshold for sufficiently

13

stating claims in federal courts. *See, e.g.*, *Davis v. Coca-Cola Bottling Co. Consolid.*, No. 05-12988, 2008 WL 314962, at *8 n.43 (11th Cir. Feb. 6, 2008) (concluding that *Twombly* "retired the oft-cited . . . no set of facts" standard from *Conley*); *ClassroomDirect.com, LLC v. Draphix, LLC*, Civ. No. 07-11640, 2008 WL 185512, at *4 n.7, *5 (11th Cir. Jan. 23, 2008) (affirming dismissal and noting that the Supreme Court had "expressly 'retire[d]'" the old *Conley* standard) (quoting *Twombly*, 127 S. Ct. at 1969; alteration in original); *Pescatrice v. Orovitz*, Civ. No. 07-60653, 2007 WL 3034929, *1 (S.D. Fla. Oct. 17, 2007) ("Until the recent Supreme Court decision in [*Twombly*], courts routinely followed the rule set forth in *Conley v. Gibson* . . . . However, pursuant to *Twombly* . . . a complaint must now contain factual allegations which are 'enough to raise a right to relief beyond the speculative level.'").[9]  Tellingly, the only post-*Twombly* case that Plaintiffs cite for the proposition that the Eleventh Circuit continues to employ a pre-*Twombly* pleading standard, *Fin. Sec. Assur. Inc. v. Stephens, Inc.*, 500 F.3d 1276 (11th Cir. 2007), does not contain the language Plaintiffs quote from the opinion (Resp. at 23).[10]

---

[9]  *See also Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1288 (S.D. Fla. 2007) ("[T]he Rule 8 . . . pleading standards have been refined recently by the Supreme Court. . . . [T]he standard for pleading all claims in federal court is no longer the 'no set of facts' phraseology of [*Conley*] . . . 'this famous observation has earned its retirement.'"); *Hollywood E. Artful Designs, Inc. v. Gutentag*, Civ. No. 07-60763, 2007 WL 4468703, *1 (S.D. Fla. Dec. 18, 2007) (recognizing *Twombly* "*alters the Rule 12(b)(6) standard* to one wherein a complaint must contain factual allegations which are 'enough to raise a right to relief above the speculative level'") (emphasis added).

[10]  Plaintiffs have apparently relied on the LEXIS version of this opinion, which erroneously includes language from a vacated earlier version (450 F.3d 1257 (11th Cir. 2006)), later replaced with 500 F.3d 1276.  The vacated opinion contained the language Plaintiffs quote (450 F.3d at 1262).  The substituted opinion removed this language and quoted the "plausible entitlement to relief" language from *Twombly* (500 F.3d at 1282), proving conclusively that the Eleventh Circuit recognized that *Twombly* raised the standard for pleadings in this Circuit.

Second, Plaintiffs argue that, even if *Twombly* trumps these previous articulations of the pleading standard under Rule 8(a), the decision in *Erickson v. Pardus*, 127 S. Ct. 2197 (2007), limits the import of *Twombly* (Resp. at 24-25). Plaintiffs' reliance on *Erickson* is inappropriate. Unlike Plaintiffs here, who are represented by counsel, the plaintiff in *Erickson* was a prisoner who was proceeding without the assistance of counsel—a fact that clearly weighed heavily in the Court's reasoning. *Id.* at 2200 ("a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers"). Additionally, *Erickson* involved a claim for deprivation of the plaintiff's constitutional rights under the Eighth and Fourteenth Amendments, not tort or consumer protection claims as alleged here. Moreover, even if these obvious dissimilarities did not exist, the Court in *Erickson* did not retreat from its decision in *Twombly*; instead, it applied the new heightened standard. *Id.*, citing *Twombly*.

Finally, Plaintiffs suggest that *Twombly* should be limited to its facts (Resp. at 25-26). But this Court has made clear that *Twombly* should not be limited to its facts, nor to the field of antitrust law. *See, e.g., Osahar v. Potter*, Civ. No. 07-22080, 2008 WL 479066 (S.D. Fla. Feb. 19, 2008) (applying *Twombly* to claims for race discrimination, unlawful retaliation, disparate treatment, and breach of collective bargaining agreement); *Spiegel v. Siegel*, Civ. No. 06-61848, 2008 WL 151951 (S.D. Fla. Jan. 15, 2008) (applying *Twombly* to claim for violations of the Securities and Exchange Act of 1934); *Moore v. Miami-Dade County*, Civ. No. 06-22705, 2007 WL 4644629 (S.D. Fla. Dec. 10, 2007) (applying *Twombly* to claims for false arrest, false imprisonment, malicious prosecution and battery); *Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1288 (S.D. Fla. 2007) (applying *Twombly* to FDUTPA and false advertising claims). There is simply no question that *Twombly* applies to Plaintiffs' claims and, under the

standard announced in that case, the TAC must show a "plausible entitlement to relief" to avoid dismissal. *Twombly*, 127 S. Ct. at 1967.

### A.    Plaintiffs Have Not Adequately Pleaded Causation or Reliance.

Plaintiffs do not dispute that Counts I (fraudulent misrepresentation and concealment), II (negligent misrepresentation), IV (negligence), V (strict liability), VII (breach of implied warranty), and VIII (breach of express warranty) require a showing of reliance or causation. Plaintiffs instead limit their arguments to Counts III (FDUTPA), VI (injunctive relief), and IX (unjust enrichment), asserting that neither causation nor reliance is a required element of those claims (Resp. at 29). Plaintiffs are incorrect, as discussed in the later sections addressing those counts specifically.[11]

Plaintiffs also argue, alternatively, that even if they are required to allege causation or reliance for each of their claims, they have done so in the TAC (Resp. at 29-34). But Plaintiffs allege no *facts* in the TAC that tie any act by a particular Defendant to any harm to a particular Plaintiff. Rather, their Response simply rephrases, with a heavy gloss, the TAC's vague and conclusory allegations. For example, after admitting that "the Defendants are referred to in the TAC collectively," Plaintiffs assert that "the substantive claims in the complaint delineate to which Defendants they apply" (Resp. at 28). Not so. The *only* Defendant-specific allegations in the TAC are alleged examples of certain product and brand advertising by Defendants that Plaintiffs state mislead "Plaintiffs" and "consumers" generally (TAC ¶¶ 71-89). Nowhere in the TAC do Plaintiffs allege that any particular Plaintiff (1) viewed any of the marketing pieces

---

[11]  As noted in the Motion (at 27 n.18), the injunctive relief count is not an independent substantive claim at all. Thus, if the other claims fail for lack of causation, the injunctive relief count cannot stand on its own.

described in paragraphs 72 through 89 of the TAC, (2) relied on or considered such marketing in making a pet food purchase, or (3) suffered a cognizable injury caused by such marketing. Without these threshold allegations, Plaintiffs have failed to plead sufficient causation or reliance for their claims. *See, e.g.*, *Powell v. Barrett*, 496 F.3d 1288, 1319-20 (11th Cir. 2007) (reversing denial of motion to dismiss constitutional claims against a county; concluding that the plaintiffs did not plead causation under *Twombly* by alleging only that the county's policy was the "motivating factor" and "moving force" behind "Plaintiffs' injuries"); *Martin v. U.S.*, No. 1:07-CV-1243, 2007 WL 2071265, at *3 (N.D. Ga. July 18, 2007) (dismissing claim under *Twombly* where the only allegations of injury were that the plaintiff was "very uncomfortable" and had "enormous stress").[12]

### 1.    The TAC Does Not Contain Allegations of Causation.

Plaintiffs concede in their Response that they do not connect any Plaintiff to a specific product allegedly sold by a Defendant (Resp. at 29-32). Plaintiffs argue, however, that they need not identify any allegedly harmful product because "[i]t is undisputed that these Defendants manufacture, market and sell pet food" (*id*. at 32). This statement misses the point. Regardless of whether Defendants produce and sell pet food, they may only be haled into court if they were the producers or sellers of pet food that harmed a Plaintiff. After several attempts at a complaint, it is clear that Plaintiffs will never be able to demonstrate this basic requirement of their claims.

---

[12] Plaintiffs cite one post-*Twombly* case, *Mouly v. Amann*, No. 07-80104-civ-Ryskamp, 2007 WL 1624761 (S.D. Fla. June 1, 2007), for the proposition that "Plaintiffs are not required to *establish elements* . . . at the pleading stage . . . [or] even allege a specific fact as to each element of a claim" (Resp. at 71) (emphasis in original). *Mouly* says nothing whatsoever in support of this proposition but merely recites the *Twombly* requirements, including that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" (*id*. at *1 (alteration in original)).

Plaintiffs highlight Paragraphs 1 and 2 of the TAC as proof that they have properly alleged causation for their claims (Resp. at 31). But these paragraphs allege nothing more that "Plaintiffs," generally, purchased pet food or treats "manufactured, marketed, distributed and/or sold by the Defendants," and "relied upon and trusted the Defendants' representations and/or omissions" in doing so, resulting in disappointed expectations "*and/or*" injury to pets (*see id.*; TAC ¶¶ 1, 2). Plaintiffs also claim that, "[a]s for the strict liability and negligence counts, the Plaintiffs have alleged that their cats and dogs became ill or died from ingesting the Defendants' pet food, the harmful substances in the pet food that caused them to suffer illness and injury, [sic] that the Plaintiffs suffered were [sic] damaged as a result" (Resp. at 34). Contrary to Plaintiffs' representation, the TAC does not contain allegations that *any* individual Plaintiff's cats or dogs became ill or died as a result of ingesting a particular Defendant's product, and Plaintiffs also do not tie any injury to a pet to a specific "harmful substance[]" (Mot. at 14-24). Without the basic allegations of individualized harm or identification of a product alleged to have caused such a harm, Plaintiffs do not draw the necessary causal connection to survive dismissal (Mot. at 31-32 (citing cases)).[13]

---

[13] In particular, Plaintiffs have wholly failed to respond to the arguments raised in footnote 16 of Defendants' Motion that the TAC does not contain any substantive allegations against The Procter & Gamble Company ("P&G"), Colgate Palmolive Company ("Colgate"), or Nestlé U.S.A., Inc. ("Nestlé U.S.A.") or any allegations that would allow the separate corporate forms of these Defendants to be disregarded. Accordingly, for the reasons stated in Defendants' Motion, and because Plaintiffs' failure to respond to a dispositive argument regarding a claim constitutes an abandonment of that claim (*see Sammons v. Sonic-North Cadillac, Inc*., No. 6:07-cv-277-Orl-19DAB, 2007 WL 2298032, at *2 n.2 (M.D. Fla. Aug. 7, 2007) (collecting cases)), the TAC should be dismissed as to P&G, Colgate, and Nestlé U.S.A. on these grounds as well.

### 2.    Plaintiffs Do Not Allege Reliance on Specific Advertising.

Similarly, Plaintiffs have not alleged facts in the TAC (or in the Response) demonstrating that any Plaintiff personally relied upon, considered, or even saw a specific allegedly deceptive statement by any Defendant.  Instead, Plaintiffs rely exclusively on generalized allegations of reliance.  For example, in Paragraph 1 of the TAC, Plaintiffs allege that they "relied upon and trusted Defendants' representation and/or omissions."  Later in the TAC, Plaintiffs allege that "[t]he Plaintiffs/Class Representatives and the Plaintiff Class were unaware of the falsity of the omissions and concealment and justifiably relied on the representations and omissions" (TAC ¶ 135).  These conclusory allegations are insufficient to establish reliance for Plaintiffs' counts based on allegedly misleading marketing (Mot. at 28-29).

Finally, Plaintiffs argue that *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171 (D.D.C. 2003) (Mot. at 28) is distinguishable because, unlike the plaintiffs in *Williams*, "Plaintiffs have alleged that they purchased the Defendants' pet food based on the Defendants' marketing both specifically and through a detailed list" (Resp. at 30).  This is not so.  Plaintiffs never allege that a Plaintiff made a pet food purchase in reliance on a particular representation of a Defendant, and the boilerplate allegation that Plaintiffs purchased Defendants' pet food "based on" Defendants' marketing is too vague and conclusory to support Plaintiffs' claims (*see* Mot. at 30).

### III.    Plaintiffs' Fraud-Based Claims (Counts I-III) Are Not Pleaded with Particularity as Rule 9(b) Requires.

Plaintiffs' Response wholly fails to identify any allegations in the TAC that save their fraud-based claims from a Rule 9(b) dismissal.  Plaintiffs cannot save these claims because the TAC does not allege the circumstances of the purported fraud with the requisite specificity to state claims for fraudulent misrepresentation and concealment (Count I), negligent

misrepresentation (Count II), and violation of FDUTPA (Count III).[14]  The purpose of the

particularity requirement is to notify *each* defendant of the *specific* nature of its participation in

an alleged fraud.  *See, e.g.*, *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364,

1380-82 (11th Cir. 1997).  Another purpose is to "eliminate those complaints filed as a pretext

for discovery of unknown wrongs."  *In re Eagle Bldg. Tech., Inc. Sec. Litig.*, 319 F. Supp. 2d

1318, 1325 (S.D. Fla. 2004) (*quoting Anderson v. Transglobe Energy Corp.*, 35 F. Supp. 2d

1363, 1369 (M.D. Fla. 1999)).  Plaintiffs here identify no specific wrong toward any Plaintiff nor

notify any Defendant of the specific nature of its participation in that wrong.

    In the TAC and in their Response, Plaintiffs fail to address the standard elements for

satisfying Rule 9(b)'s pleading requirements, which include the specification of: "(1) the precise

statements, documents, or misrepresentations made; (2) the time, place, and person responsible

for the statement; (3) the content and manner in which these statements misled the [p]laintiffs;

---

[14]  Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity
the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b) (as amended).  A
number of courts have held that the heightened pleading requirement of Rule 9(b) applies to
FDUTPA claims premised on allegations of fraud (*see* Mot. at 33, n. 20 (citing cases)).  The
plain language of Rule 9(b) requires heightened pleading "in alleging fraud" and not simply
in asserting formal *claims* of fraud.  *See, e.g.*, *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d
992, 997 (N.D. Cal. 2007) (*quoting Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th
Cir.2003) ("In cases where fraud is not a necessary element of a claim, a plaintiff may choose
nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct.
In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely
entirely on that course of conduct as the basis of a claim.  In that event, the claim is said to be
'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must
satisfy the particularity requirement of Rule 9(b).")  Plaintiffs' FDUTPA claim is premised
on a course of alleged fraudulent conduct on which Plaintiffs' fraudulent misrepresentation
and negligent misrepresentation claims are also based.  (*See* TAC ¶¶ 129, 138, 147.)  Further,
a majority of the general allegations incorporated into the FDUTPA claim are the allegations
Plaintiffs cite to in their Response to argue that they pleaded fraud with particularity.  (*See*
Resp. at 64-69 (citing TAC ¶¶ 1-2, 3-32, 67-93, 101-109, 110).)  For these reasons,
Plaintiffs' FDUTPA claim should be held to the heightened pleading requirement of Rule
9(b).

and (4) what the defendants gained by the alleged fraud." *Brooks*, 116 F.3d at 1380-81. According to the Eleventh Circuit, "[a]llegations of *date, time or place* satisfy the Rule 9(b) requirement." *Durham v. Business Mgmt. Assoc.*, 847 F.2d 1505, 1512 (11th Cir. 1988) (emphasis added).

While there are alternative ways of pleading fraud, the fundamental rule is that the "circumstances" of the fraud must be pleaded with particularity. This means Plaintiffs must identify the specific fraudulent acts alleged by each named Plaintiff against each Defendant individually and plead facts supporting each element of the fraud-based claims. *See Box Office Enter., LLC v. Brian D. Gordon, C.P.A., P.A.*, No. 05-21010, 2007 WL 1362898, *7 (S.D. Fla. May 9, 2007) (dismissing fraudulent and negligent misrepresentation claims pursuant to Rule 9(b)); *Cordova v. Lehman Bros. Inc.*, 526 F. Supp. 2d 1305, 1313 (S.D. Fla. 2007) (dismissing fraud claims because complaint lumped all of the defendants together). Plaintiffs have wholly failed to assert the requisite factual allegations to meet the Rule 9 requirements.

## A.    The TAC Fails to Allege Specific Fraudulent Acts.

The TAC is a general, rambling attack on the marketing and manufacturing practices of the pet food industry. Plaintiffs nevertheless erroneously contend that they have pleaded the alleged misrepresentations and omissions underlying Counts I through III with sufficient specificity. Plaintiffs first cite to a list of general complaints about *all* Defendants' purported marketing and advertising, which Plaintiffs set forth in paragraphs 69, 70, and 71 of the TAC (*see* Resp. at 65-66). However, none of these examples is attributed to a single Defendant individually (*see* TAC ¶¶ 69, 70, 71). The law is well-established that a plaintiff cannot plead fraud collectively against multiple defendants as a group. Instead, Rule 9(b) "require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud."

21

*Cordova*, 526 F. Supp. 2d at 1313 (*quoting Bruhl v. Price WaterhouseCoopers Int'l*, No. 03-23044, 2007 WL 997362, at *3 (S.D. Fla. Mar. 27, 2007)).

In defense of their claims, Plaintiffs also cite specific examples of individual Defendants' marketing and advertising with criticisms of those campaigns. (*See* Resp. at 65 (citing TAC ¶ 86).) However, none of the specific examples in the TAC can save the fraud-based claims from dismissal (*see* Mot. at 34-39). First, Plaintiffs have failed to allege any facts showing the who, what, when, and where of any purported fraudulent acts (*see* Mot. at 34-36). Second, as addressed in Section II above, Plaintiffs have failed to allege any facts showing that any individual named Plaintiff relied on the purported misrepresentations or omissions that caused an actual, identifiable injury to that Plaintiff.

In an attempt to show they have pleaded fraud with particularity, Plaintiffs rely on language from Natura's website that characterizes its pet food as the "Healthiest Pet Food in the World" and notes that "[w]e use only ingredients you'd eat yourself: quality meats, whole grains, fresh fruits and vegetables, and complete vitamin and mineral supplements" (Resp. at 65 (quoting TAC ¶ 86 & Ex. 10).) However, as shown above, Plaintiffs may not rely on this single page from a multi-page website to launch a broad-based attack against the entire pet food industry.[15]  Furthermore, even as to Natura, only three Plaintiffs (Blaszkowski, Davis and

---

[15] Elsewhere, Plaintiffs strangely complain that one Defendant's marketing of "wholesome" pet food somehow "leads consumers to believe that they are feeding their dog or cat the same food that they purchase for their family" (TAC ¶ 79). However, as Defendants point out in their Motion (at 41), the FDA requires Defendants to ensure that their pet food is "pure and wholesome" and at the same time views AAFCO authorizations of non-human grade ingredients in pet food as perfectly compatible with this mandate (Mot. at 43-44).

Furthermore, Plaintiffs' demand for "human-grade" pet food is in tension with other allegations in the TAC.  For example, Plaintiffs complain about the inclusion of "glucosamine, chondroitin, Omega-3 fatty acids and soy" in pet foods (Resp. at 41 (citing

[Footnote continued on next page]

Thomas) allege that they ever even purchased a Natura product (TAC ¶¶ 3, 4, 30) and not one of them alleges that she ever even saw the statement on the website referenced in the TAC, much less that the statement caused her any legally cognizable injury.[16]

---

[Footnote continued from previous page]

TAC ¶¶ 70, 72)), because Defendants allegedly do not present sufficient "reliable scientific evidence to support claims that cats and dogs [as opposed to humans] receive a benefit from consuming same" (*id.*). So Plaintiffs themselves are not even sure which "human-grade" ingredients they want in their pet food.

[16]  Furthermore, as explained in the Motion, the phrases at issue in the advertisements attached to the TAC are not actionable because they are puffing (*see* Mot. at 38-39 n.25). Puffing is sales talk that is not actionable as fraud because a *reasonable* consumer under the circumstances would not rely on the statement, generally one with vague and non-specific assertions, when making a purchase. *Tylka v. Gerber Prods. Co.*, No. 96C1647, 1999 WL 495126, at *5-9 (N.D. Ill. July 1, 1999). Contrary to representations in Plaintiffs' response, neither *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374 (1965) nor *Niresk Indus., Inc. v. FTC*, 278 F.2d 337 (7th Cir. 1960) holds that FDUTPA requires that a claim must have "*no* capacity to deceive" (Resp. at 13) (emphasis in original). Instead, in *Colgate*, the Supreme Court upheld an FTC finding that the Federal Trade Commission Act precludes "represent[ing] falsely that a televised test, experiment or demonstration provides a viewer with visual proof of a product claim . . . ." *Colgate*, 380 U.S. at 376. Further, recognizing the FTC's "large discretion," the court in *Niresk* upheld an FTC order that petitioners falsely stated the value of the product, the manufacturer of the product, and the guaranty seal of the product. *Niresk*, at 339, 341-43.

Plaintiffs also misread cases they cite improperly for the proposition that a puffery defense may not be advanced when the advertisement may "dupe the most gullible consumer" (Resp. at 13). Again, neither case cited by Plaintiffs contains any such language or holding. (*See id.*, citing *Webb Press Svcs. v. New London Motors, Inc.*, 205 Conn. 479, 483 (Conn. 1987) (upholding ruling that found as "puffing" an agent's representation that a vehicle was in "good condition," "excellent" or "mint condition") and *Autohaus, Inc. v. Aguilar*, 794 S.W. 2d 459, 462-65 (Tex. App.—Dallas 1990, writ denied) (reversing a deceptive advertising judgment under the Texas consumer protection act and holding non-actionable the defendant's advertised statements that a vehicle was: "(1) the best engineered car in the world; (2) probably would not have mechanical difficulties and (3) probably would only need servicing for oil changes").)

**B.      The TAC Fails to Allege Reliance, Causation or Injury as to Each Named Plaintiff.**

Even if they had identified specific misrepresentations or fraudulent statements, nowhere in the TAC or in their Response do Plaintiffs identify whether any individually named Plaintiff saw, heard, or read any of the marketing or advertising alleged in the TAC, including the specific marketing campaigns and advertisements cited in paragraphs 73 through 86 of the TAC.  This pleading deficiency in itself subjects Plaintiffs' fraud-based claims to dismissal.  To satisfy Rule 9(b), each individual named plaintiff in a class action must allege particular facts sufficient to apprise the defendants of the basis for that plaintiff's claims for relief.  *See In re The Prudential Ins. Co. of Amer. Sales Practices Litig.*, 975 F. Supp. 584, 597 (D.N.J. 1996) ("[T]he individual named plaintiffs' claims should each satisfy Rule 9(b) independently.  Although the complaint need not replead general allegations regarding Prudential's scheme for each named plaintiff, it should contain sufficient detail as to each plaintiff's claims to apprise Prudential of that plaintiff's exact grounds for relief and the specific conduct that plaintiff charges.").

Plaintiffs argue that the identical conclusory statement alleged in paragraphs 3 through 32—"which purchases were based upon the above-referenced Defendants' marketing"—satisfies the reliance element (Resp. at 65).  Plaintiffs, however, have failed to identify any specific examples of the marketing on which the individual named Plaintiffs purportedly relied in these paragraphs or anywhere else in the TAC or in the Response.  As explained in the Motion and above, such conclusory allegations do not suffice (Mot. at 27-29; Section II above).

Moreover, Plaintiffs have failed to identify any facts showing that the purported misrepresentations and omissions caused an actual injury to any of the named Plaintiffs individually, which also warrants dismissal of the fraud-based claims.  *See In re Eagle Bldg.*, 319 F. Supp. 2d at 1332 (dismissing fraud claim for failure to allege what the defendants gained as a

24

consequence of the fraud); *see also* Mot. at 39 (*citing Stires v. Carnival Corp.*, 243 F. Supp.2d

1313, 1322 (M.D. Fla. 2002); *Cordova*, 526 F. Supp. 2d at 1315).

###### C.    Plaintiffs Are Not Entitled to a Relaxed Rule 9(b) Pleading Standard.

Lastly, Plaintiffs miss the mark with their suggestion that this Court should apply a

relaxed Rule 9(b) pleading standard to this case.  Plaintiffs cite several cases to urge the Court to

take such a relaxed approach and not to require Plaintiffs to allege all of the elements of fraud

with specificity.  While Rule 9(b) can permit flexibility under certain circumstances with respect

to allegations about date, time, and place, dismissal is nevertheless appropriate if the alleged

fraud is not pleaded with particularity by other means.  *See Durham*, 847 F.2d at 1512.  Indeed,

in all of the cases Plaintiffs cite in their Response, the courts made clear that, if the plaintiffs did

not allege date, time, and place with specificity, their fraud-based claims could only survive

dismissal if they employed some other mechanism to show how each plaintiff was specifically

misled and impacted by the fraud.  *See, e.g., Seville Indus. Mach. v. Southmost Mach. Corp.*, 742

F.2d 786, 791 (3d Cir. 1984) (Rule 9(b) satisfied because plaintiffs filed voluminous list

sufficient to identify all equipment plaintiffs were fraudulently induced to transfer and an

affidavit summarizing the mail communications at issue in RICO predicate act of mail fraud);

*Alfaro v. E.F. Hutton & Co., Inc.*, 606 F. Supp. 1100, 1109-10 (E.D. Pa. 1985) (plaintiff failed to

plead particularity regarding omissions in private placement memorandum because complaint

did not allege what information the plaintiffs needed that was omitted).  Plaintiffs come nowhere

close in their TAC to specifying the manner in which *any* particular act of *any* Defendant misled

*any* Plaintiff or caused him or her *any* harm.

Further, Plaintiffs contend that this Court should not strictly apply Rule 9(b) to a class

action complaint or to a complaint where the purported fraudulent acts occurred over a long

period of time (Resp. at 66-68).  Plaintiffs, however, misapply the law.  As explained above, a

class action complaint does not eliminate the requirement that each named Plaintiff meet the requirements of Rule 9(b) individually. *See In re The Prudential Ins. Co.*, 975 F. Supp. at 596-97 (dismissing fraud-based claims as to certain named plaintiffs in a class action complaint because allegations as to those plaintiffs were not pleaded with particularity). In fact, Plaintiffs have failed to meet the particularity requirements with respect to all of the named Plaintiffs in the TAC.[17]

It thus is clear that Plaintiffs have not alleged Counts I through III of the TAC with the particularity required by Rule 9(b), and this Court should dismiss each of these counts.

## IV.   Defendants Fall Within the Safe Harbor Exception to FDUTPA and Other State Consumer Protection Statutes (Count III).

First, contrary to Plaintiffs' contentions, Plaintiffs' FDUTPA claim must fail because they have not sufficiently alleged causation. It is well-established that "[u]nder FDUTPA, proof of causation is required." *O'Neill v. The Home Depot U.S.A.*, 243 F.R.D. 469, 480 (S.D. Fla. 2006) (Altonaga, J.); *see also KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1073 (Fla. 5th DCA 2008) (To state a claim under FDUTPA, a plaintiff must allege "1) a deceptive act or unfair practice; 2) *causation*; and 3) actual damages.") (emphasis added); *Montgomery v. New Piper*

---

[17] Moreover, this is not a case where the facts underlying the purported fraud are in a defendant's exclusive control. Where fraud claims are based on publicly disclosed statements, a plaintiff is required to meet the heightened pleading requirements of Rule 9(b). *See Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1247 (N.D. Cal. 1998) ("Although the requirements of Rule 9(b) may at times be 'relaxed as to matters peculiarly within the opposing party's knowledge' in cases of corporate fraud, . . . the content of Lumisys' publicly made statements are not matters peculiarly within the Company's knowledge."). In the TAC, Plaintiffs have charged Defendants with fraudulent acts in connection with their advertising and marketing. Advertising and marketing are by definition public communications. Furthermore, facts and information concerning (1) what advertisement (if any) any individual Plaintiff may have seen, (2) what product (if any) that Plaintiff may have purchased as a result of that advertisement, and (3) what injury (if any) that Plaintiff may have suffered as a result are all in the exclusive possession of Plaintiffs.

*Aircraft, Inc.*, 209 F.R.D. 221, 229 (S.D. Fla. 2001) ("in order to prove liability under FDUTPA,

the Court must determine that . . . the advertising and marketing materials *caused* each putative

class member damage") (emphasis added). Further,"[m]erely stating 'as a result' does not

provide sufficient allegations to show causation in [a] FDUTPA claim." *Lydia Sec. Monitoring,*

*Inc. v. Alarm One, Inc.*, Civ. No. 07-80145, 2007 WL 2446889, *5 (S.D. Fla. Aug. 23, 2007)

(dismissing FDUTPA claim for lack of causation). Instead, Plaintiffs "must plead sufficient

*facts* to show that they have been actually aggrieved by the unfair or deceptive act committed by

the seller . . . ." *Berenguer v. Warner-Lambert Co.*, App. Case No. 02-05242, 2003 WL

24299241, *2 (Fla. Cir. Ct. July 31, 2003) (dismissing FDUTPA claim where "plaintiffs [could

not] establish the proximate causation element of FDUTPA").[18]

　　　Second, even if Plaintiffs had sufficiently pleaded causation, FDUTPA and the majority

of the other consumer protection statutes that Plaintiffs have put at issue provide a "safe harbor"

for acts that comply with federal or state law, or in some states, acts that are governed by

separate federal or state laws. *See* Fla. Stat. § 501.212(1) ("This part does not apply to . . . [a]n

act or practice required or specifically permitted by federal or state law"); *see also, e.g., Smith v.*

*Global Life Ins. Co.*, 597 N.W. 2d 28, 38 (Mich. 1999) (Michigan consumer protection act safe

harbor applies when "the general transaction is specifically authorized by law, regardless of

---

[18]　Even the cases on which Plaintiffs rely require causation as an element of a FDUTPA claim.
For example, in *S & B Invests., LLC v. Motiva Enters., L.L.C.*, Civ. No. 03-61993, 2004 WL
3250306 (S.D. Fla. Dec. 6, 2004), this Court recognized that to state a claim for a violation of
FDUTPA, the plaintiff must "*allege* sufficient facts to show it was actually aggrieved by the
unfair or deceptive act." *Id.* at *6 (emphasis in original). Similarly, in *Fla. v. Tenet*
*Healthcare Corp.*, 420 F. Supp. 2d 1288 (S.D. Fla. 2005), this Court stated that "[t]o state a
cause of action under FDUTPA, the complaint must not only plead that the conduct
complained of was unfair and deceptive, but also that the complaining party was aggrieved
by the alleged act." *Id.* at 1309.

whether the specific misconduct alleged is prohibited"); *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 3 F. Supp. 2d 518, 536 (D.N.J. 1998) (New Jersey consumer protection statute safe harbor applies when application of consumer fraud statute would create a "real possibility of conflict" between statute and directive of government agency).

In their Response, Plaintiffs have attempted to conflate the safe harbor principle with principles of preemption, even though they are two separate arguments. *See, e.g., Prohias v. AstraZeneca Pharm., L.P.*, 958 So. 2d 1054 (Fla. 3d DCA 2007) (considering preemption and FDUTPA safe harbor defenses separately); *Fla. v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288 (S.D. Fla. 2005) (same); *Berenguer*, 2003 WL 24299241 (same). In the Motion, Defendants have not argued that this Court should dismiss the FDUTPA claim (or any claims for that matter) on the basis of preemption. Rather, Defendants—relying on the language of the statute itself— have asserted that their actions cannot be a basis of liability under FDUTPA because FDUTPA does not apply to acts that are permitted by state or federal law.

Defendants' practices in labeling and marketing their products are permitted by AAFCO regulations, and the federal and state statutes and regulations incorporating those regulations. At best, Plaintiffs appear to be arguing that the AAFCO regulations (as adopted by the FDA and the state legislatures) cannot provide a basis for a safe harbor because no federal or state agency has expressly "approved" each of Defendants' advertisements (Resp. at 20-21). Plaintiffs, for example, appear to believe that the FDA should require pre-approval of pet food (Resp. at 4), although no pre-approval is necessary for many human foods. Moreover, such express approval is not required under the safe harbor statutes. The statutes require only that the action be "permitted" by federal or state law, not expressly approved on an individual basis by a federal or state agency. *See, e.g.*, Fla. Stat. § 501.212.

Furthermore, Plaintiffs have admitted that ingredients and labeling criticized by plaintiffs *are* permitted by the AAFCO and FDA regulations, thereby implicitly conceding that Defendants' conduct satisfies the safe harbor provisions. For example, after providing a laundry list of criticisms of one of the promotional materials of Hill's, Plaintiffs admit that "[t]he deceptive practices that the Plaintiffs are contesting here *do not conflict* with either the FDA or AAFCO's definitions" (Resp. at 15, emphasis in original).[19]  Plaintiffs go on to concede that Defendants' ingredients "are consistent with" AAFCO and FDA regulations:

- "The TAC's references to AAFCO definitions to demonstrate the pet food was marketed as human-grade, but was actually comprised of byproducts that are deemed unfit to human consumption *are consistent with AAFCO definitions and does not challenge them*" (Resp. at 16, emphasis added).

- "The TAC's reference to animal digest in the TAC is to demonstrate that non-human grade products were being marketed as human-grade and *is consistent with the Food and Drug Act and AAFCO definitions and does not challenge them*" (*id.*, emphasis added).

Moreover, the only descriptive phrases of which Plaintiffs complain—"quality," "premium," "wholesome," "healthy," and "balanced" (*see* Resp. at 13)—are all permitted by AAFCO regulations as long as the products meet minimum nutritional profiles. (*See* AAFCO Model Regulations for Pet Food and Specialty Pet Food, Regulation PF7, "Nutritional Adequacy": "The label of a pet food or specialty pet food . . . may include an unqualified claim, directly or indirectly, such as 'complete and balanced,' 'perfect,' 'scientific,' or '100% nutritious'" if the

---

[19] Plaintiffs claim that identifying "fiber" as an ingredient in pet food "leads the consumer to believe the food is human grade" (Resp. at 15), despite the fact that "fiber" is an AAFCO officially-defined feed term. (*See* AAFCO "Official Feed Terms," attached hereto as Ex. 1.)

product meets AAFCO's nutrient profiles or has been substantiated by completion of AAFCO-recognized feeding protocols) (attached as Ex. 2)).[20]

Plaintiffs cannot escape the fact that Defendants' manufacturing and labeling practices comply with the numerous federal and state laws governing pet food; thus Defendants' acts fall within the safe harbors of the applicable consumer protection statutes. (*See* Mot. at 8, 10, 41-47 (discussing the Federal Food, Drug and Cosmetic Act and its corresponding regulations and discussing state laws).) The relevant states here have expressly adopted the model regulations promulgated by AAFCO by incorporating AAFCO's Official Publication in full or in part. (*See* Mot., Appendix C (discussing the extent to which states have adopted AAFCO's model regulations).) Indeed, Florida and many other applicable states have created administrative agencies to enforce the laws regulating the pet food industry. *See e.g.*, Fla. Stat. §§ 570.01, 570.07, 580.091 (creating the Department of Agriculture and Consumer Services, in part, to sample and analyze "commercial feed"); N.Y. Agric. & Mkts. §§ 4, 5, 16 (creating the Department of Agriculture and Markets, which, among other things, investigates the adulteration and misbranding of food). These agencies, like the FDA, take "regulatory action" when appropriate. (*See* http://www.flaes.org/aes-fsflab/index.html (in Florida, "pet foods [] are regulated through the inspection of production and distribution establishments and laboratory analysis of samples").)

---

[20] In *Prohias v. Pfizer*, 490 F. Supp. 2d 1228 (S.D. Fla. 2007), upon which Plaintiffs so heavily rely in this context, the Court found that the certain of the defendant's advertisements were not within the FDUTPA safe harbor provision, but only because the defendant could not point to any FDA regulation or statement that permitted the advertisement. *Id.* at 1234. Here, Defendants have pointed to specific AAFCO regulations that authorize language that Plaintiffs challenge, and Plaintiffs have not disputed the applicability of those regulations.

In reality, Plaintiffs simply disagree with the regulatory scheme provided by the FDA, AAFCO and the states. For instance, Plaintiffs attack the sufficiency of the model regulations promulgated by AAFCO and incorporated by the states (Resp. at 7-9). Plaintiffs argue that AAFCO's "Nutrient Profiles" are insufficient to sustain a pet's health, such as the profile created through its six-month feeding trial and the profile allowing food to contain 18% protein (Resp. at 7-8). Plaintiffs also contend that AAFCO's approved ingredient definitions fail to protect pets (*id*. at 7). Plaintiffs state that food should not be labeled as "complete and balanced," even if the food satisfies AAFCO's definitions (*id*. at 8, 77). Plaintiffs even argue that Defendants should have showed how current laws "provide . . . adequate protection to the Plaintiff consumers and their cats and dogs" (*id*. at 10). This Court should not grant Plaintiffs' request that the Court supplant the judgments of federal and state legislatures with Plaintiffs' judgment, even if the governmental agencies are not doing what Plaintiffs want. *See, e.g.*, *Korman v. HBC Fla., Inc.*, 182 F.3d 1291, 1296 (11th Cir. 1999) (concluding that courts may "neither add words to nor subtract them from" a statute); *Fernandez v. Gonzales*, No. 06-22442, 2006 U.S. Dist. LEXIS 96144, *5 n.1 (S.D. Fla. Dec. 5, 2006) (explaining that an agency's "failure to follow its own regulations . . . is no basis for [a] Court to rewrite the statute or the regulations").

Plaintiffs' theory amounts to an effort to evade the safe harbor by arguing that conduct compliant with AAFCO regulations can somehow give rise to a "misleading" impression—namely, that use of expressly authorized ingredient lists, product descriptions, and labels can somehow together create a "misleading" implicit representation that pet food is "human-grade" food. This argument is legally deficient. Because ingredient lists, product descriptions, and labels were authorized by AAFCO regulations adopted by state law (and by federal law as

evidenced by the Memorandum of Understanding between FDA and AAFCO), they cannot give rise to a claim under FDUTPA and the other applicable state consumer protection laws.

## V.    Plaintiffs Cannot Save Their Negligence Claim (Count IV) from the Economic Loss Rule.

The economic loss rule bars Plaintiffs' negligence claim.  As the Motion explains (at 48), the economic loss rule bars negligence actions where the parties are in contractual privity or where the defendant is a manufacturer or distributor of a product and "there is a defect in a product that causes damage to the product but causes no personal injury or damage to other property." *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004).

Plaintiffs complain that they do in fact allege damage to other property, because they collectively allege injury to the pets of some undisclosed person or persons.  However, as the Motion clearly points out, Plaintiffs fail sufficiently to allege any facts whatsoever establishing that they were individually harmed as a result of their own pets' consumption of any particular Defendant's pet food.  Thus, no individual Plaintiff has alleged damage to himself, herself, or any property he or she possesses.  The economic loss rule therefore applies and bars Plaintiffs' negligence claim (Count IV).

## VI.    Plaintiffs' Response Does Not Dispute Defendants' Contention That the Strict Products Liability Claim (Count V) Is Fatally Defective.

As argued in Defendants' Motion, Plaintiffs' claim for strict products liability is fatally defective in that it constitutes little more than a formulaic recitation of the elements of a strict liability cause of action, with bare factual assertions that fail to show an entitlement to relief (*see* Mot. at 49-51).  In their Response, Plaintiffs fail to point to any factual allegations in the TAC that remedy these defects by showing they are entitled to relief.  *See* Fed. R. Civ. P. 8(a)(2).

As explained in the Motion (at 49), to state a claim for strict products liability, the plaintiff must allege some facts showing a product produced by a manufacturer was defective or

unreasonably dangerous and proximately caused injury.  *See, e.g.*, *West v. Caterpillar Tractor Co., Inc.*, 336 So. 2d 80, 87 (Fla. 1976).  In their Response, Plaintiffs merely paraphrase the elements of the strict liability claim alleged in paragraphs 166 through 167 of the TAC purportedly to show that enough was alleged to survive a Rule 12(b)(6) dismissal.  However, these paragraphs constitute little more than a recitation of the legal elements of a strict liability claim, and the general allegations incorporated into that claim fail to show that Plaintiffs are entitled to relief.

Specifically, Plaintiffs fail to allege any facts showing that (1) a specific product sold by (2) a specific Defendant was (3) defective or unreasonably dangerous and (4) proximately caused injury or damage to an individually named Plaintiff.  Plaintiffs claim without legal support that the law does not require that they identify the product that allegedly caused their purported injuries (Resp. at 73), but Plaintiffs cite no case to support this proposition because they cannot.[21]  In fact, a threshold requirement of a strict products liability claim is the identification of the product that caused the alleged injury and the manufacturer or seller of that product.  *See Pulte Home Corp. v. Ply Gem Indus., Inc.*, 804 F. Supp. 1471, 1484-85 (M.D. Fla. 1992) ("It is well established under Florida law and elsewhere that identification of the product that caused

---

[21]  None of the cases Plaintiffs cite in their Response stand for the proposition that a strict products liability plaintiff need only identify a generic category of product (such as pet food) without linking an actual product by name to a particular defendant.  There are no exceptions to the requirement that the plaintiff identify the product that caused the harm and which defendant sold the product.  *See, e.g.*, *Conley v. Boyle Drug Co.*, 570 So. 2d 275, 286 (Fla. 1990) (holding market share theory of liability has very limited applicability to certain kinds of negligence cases and does not apply to strict liability claims); *Ray v. Cutter Labs*, 754 F. Supp. 193, 195 (M.D. Fla. 1991) (explaining that Florida does not recognize concert of action, alternate liability, or enterprise liability).

the harm as the one sold or manufactured by the defendant is an essential element of traditional tort law."); *see also Napier, Inc. v. Osmose*, 399 F. Supp. 2d 811, 813-14 (W.D. Mich. 2005).

In addition, Plaintiffs have failed to allege a product defect or an unreasonably dangerous condition of the products at issue (*see* Mot. at 50-51). Plaintiffs contend that the allegations in paragraph 167 of the TAC sufficiently allege the product defects because Plaintiffs allege that the unspecified "pet food and treats" include "adulterated ingredients, additives, chemicals, . . . and contaminants." *See* Resp. at 75-76 (*citing* TAC ¶ 167). However, this vague list of "harmful substances" is not tethered to a particular product, to a particular Defendant, or to a particular Plaintiff.[22] Plaintiffs cannot correct their pleading deficiencies by making new factual assertions in their Response. *See Moore v. Miami-Dade County*, 502 F. Supp. 2d 1224, 1229 (S.D. Fla. 2007) (emphasizing that Rule 12(b) prohibits looking beyond the four corners of a complaint or considering allegations made in response to a motion to dismiss). Plaintiffs also claim that the TAC alleges that the pet food itself and other substances found in the food, such as pentobarbital and acetaminophen, are defective or unreasonably dangerous (Resp. at 75). However, again, all of the examples of such purported defects cited by Plaintiffs in the Response are general examples and are not linked to a specific product purchased by a specific Plaintiff, much less to an injury or a condition that could cause injury.[23]

---

[22]  In their Response, Plaintiffs argue that Exhibit 24 to the TAC shows a substance called "glycoalkaloids" has been found in pet food or treats in amounts that would be toxic to humans (*see* Resp. at 75). Plaintiffs also contend in the Response that one of the Plaintiffs' pets was exposed to this substance, but this contention is not apparent from the face of Exhibit 24 (*see id*). Furthermore, nowhere in the TAC did any Plaintiff assert that "glycoalkaloid" was present in a particular food he or she fed to his or her pet.

[23]  Plaintiffs failed to allege in the TAC, or to clarify in their Response, whether they contend the product defect is in the design of the pet food or the manufacturing of the product. To the

[Footnote continued on next page]

These failures in identification of the product or the defect result in a failure in causation. According to the Florida Supreme Court: "In order to hold a manufacturer liable on the theory of strict liability in tort, the user must establish the manufacturer's relationship to the product in question, the defect and unreasonably dangerous condition of the product, and the existence of the proximate causal connection between such condition and the user's injuries or damages."

*West*, 336 So. 2d at 87 (adopting the Restatement (Second) of Torts § 402A). In emphasizing the importance of causation in strict liability cases, the Eleventh Circuit wrote:

> Strict liability is imposed for *injuries* which are the proximate result of product defects, not for the manufacture of defective products. Unless the manufacturer's defective product can be shown to be the proximate cause of the *injuries*, there can be no recovery. A manufacturer has the absolute right to have his strict liability *for injuries* adjudged on the basis of *his* own marketed product and not that of someone else.

*Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1482-83 (11th Cir. 1985) (emphasis in original; quoting *Talley v. City Tank Corp.*, 279 S.E. 2d 264, 269 (Ga. App. 1981)) (granting summary judgment because plaintiff failed to show he was exposed to products manufactured by defendant). As discussed in depth above, Plaintiffs have failed to allege that any specific product of any specific Defendant caused any specific injuries or damages to any specific Plaintiff.

---

[Footnote continued from previous page]
extent the claim is premised on the design, namely the formula of ingredients in the food, this claim is vitiated by the fact that the FDA and AAFCO have promulgated regulations defining and approving the pet food ingredients used in pet food sold to consumers. Even the cases Plaintiffs cite in their Response state that compliance with regulations and industry standards provides evidence that a product is not defective. *See Jackson v. H.L. Bouton Co., Inc.*, 630 So. 2d 1173, 1175 (Fla. 1st DCA 1994).

## VII.    Plaintiffs Cannot Show an Entitlement to Injunctive Relief (Count VI).

As Defendants detailed in their Motion (at 58), Plaintiffs improperly predicate their equitable claims on precisely the same factual allegations as those underlying claims for which they seek legal remedies. *See, e.g.*, *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005) (dismissing equitable claim because it was "predicated on the same set of allegations supporting [the] claims under . . . FDUTPA. Accordingly, because an adequate remedy exists at law, the [Plaintiffs] have not stated [an equitable] claim upon which relief may be granted"); *In re Friedman's Inc. v. Morgan Schiff & Co., Inc.*, No. 407CV041, 2008 WL 131163, *19 (S.D. Ga. Jan. 10, 2008) ("Because the [plaintiff] must first prove the fraud claim to recover [on the equitable claim], he has an adequate remedy at law (recovery for fraud) such that equity should not intervene. Therefore, this claim is dismissed."). Plaintiffs' injunctive relief claim, therefore, cannot survive.

Plaintiffs' injunctive relief claim is also barred because it has not been pleaded in the alternative. Here, because Plaintiffs predicate their injunctive relief claim on precisely the same factual allegations as their other claims, it does not constitute a true alternative. As the other claims fall away, so must this one.

Finally, Plaintiffs' repeated denials of their super-regulatory ambitions ring hollow. Incredibly, Plaintiffs insist that their addition of a Defendant Class which includes *every manufacturer, distributor, and retailer of pet food in the nation* was intended as a device to save costs in this litigation (Resp. at 80-81). Such a contention is absurd on its face. Plaintiffs' volley of attacks on the entire array of products and advertisements in the pet food industry is exactly what Defendants' Motion describes it as—an effort to commandeer the judiciary into Plaintiffs'

service to further their regulatory goals.[24]  Plaintiffs make no serious effort to dispute that

"injunctive relief" of the sort requested would constitute prior restraint of Defendants' speech in

violation of the First Amendment.  This Court should, therefore, dismiss Plaintiffs' claim for

injunctive relief (Mot. at 51-55).

**VIII.    Plaintiffs Cannot Provide the Showing of Privity Florida Law Requires for
Breach of Warranty Claims (Counts VII and VIII).**

Count VII of the TAC asserts a claim for breach of implied warranty against the

Defendant Retailers.  Plaintiffs have not disputed that, under Florida law, a claim for breach of

implied warranty unquestionably requires privity between the plaintiff and defendant.  *See, e.g.,*

*Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37 (Fla. 1988).  (*See also* Resp. at 83.)  Rather,

Plaintiffs assert that they have sufficiently alleged privity with the Defendant Retailers by

identifying, for some Plaintiffs, as many as seven different retailers from which the Plaintiff

purchased some pet food at some time.  Putting aside for the moment the fact that certain

Plaintiffs did not identify *any* retailers from which they purchased pet food (*see, e.g.,* TAC ¶¶ 7,

32), Plaintiffs do not adequately allege privity by providing a laundry list of retailers, along with

an even more exhaustive list of pet food manufacturers for each Plaintiff, without connecting any

particular purchase to any particular brand or any particular retailer.  *See Jacobs v. Osmose, Inc.*,

No. 01-944, 2002 WL 34241682, **5-6 (S.D. Fla. Jan. 3, 2002).  Such allegations also fail to put

---

[24]  Plaintiffs make this even clearer by criticizing Defendants for pointing to the 2007
amendments to the Federal Food Drug, and Cosmetic Act which require the FDA to establish
additional ingredient and processing standards for pet food within the next two years (Mot. at
10; Resp. at 9).  Defendants highlight these amendments because they show that Congress
has tasked the relevant agencies with taking whatever steps might be necessary to ensure
proper guidelines in this arena.  Plaintiffs minimize the significance of these amendments to
facilitate their invitation to this Court to construct these guidelines itself under the guise of
injunctive relief.

any of the Retailer Defendants on notice as to which warranties for which products they are alleged to have breached. In footnote 42 of their Response, Plaintiffs cite to Fla. R. Civ. P. Form 1.949 as a form complaint for alleging breach of implied warranty under Florida law. That form requires that Plaintiffs' allegations, among other things, (1) identify and describe the product that Defendants allegedly manufactured, (2) identify and describe the warranty that was made, and (3) identify and describe the injuries allegedly suffered by the Plaintiff. Plaintiffs' laundry list allegations come nowhere close to meeting these basic pleading requirements.

Count VII asserts a claim for breach of express warranty against *all* Defendants—both manufacturers and retailers. With respect to both the retailers and the manufacturers, the allegations are insufficient with respect to express warranty for the same reason that they were insufficient with respect to implied warranty—failure to allege which products were purchased from which retailers with which warranties. Moreover, Plaintiffs have failed to allege privity with the Manufacturer Defendants, from whom they did not directly purchase the product. *See T.W.M. v. Am. Med. Sys.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995) (dismissing claims for breach of express and implied warranty where "[t]he complaint does not allege that the plaintiffs purchased the [product] directly from the defendant, or that they contracted with the defendant").

After acknowledging the line of Florida cases making crystal clear that privity is a requirement for both express and implied warranty claims (Resp. at 87), Plaintiffs nonetheless argue that there is no privity requirement when a consumer sues a manufacturer. (*Id.* at 87-88.) In doing so, Plaintiffs cite to only three Florida cases more than 30 years old that *predate* the Florida Supreme Court *Kramer* decision and its progeny. In both *Manheim v. Ford Motor Co.*, 201 So. 2d 440 (Fla. 1967) and *Rehurek v. Chrysler Credit Corp.*, 262 So. 2d 452 (Fla. 2d DCA 1972), the court held that an automobile purchaser could sue the automobile manufacturer for

breach of warranty.  These cases have been subject to criticism and have been implicitly—if not expressly—overruled by cases like *Kramer*.  *See, e.g., In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*, 21 F. Supp. 2d 593, 599 (E.D. La. 1998) (applying Florida law) ("insofar as the *Manheim* decision jettisons the privity requirement, it has been effectively overruled by *Kramer*, 520 So. 2d 37, and its progeny"); *Powers v. Lazy Days RV Center, Inc.*, No. 8:05-cv-1542T17EAJ, 2006 WL 373011, *2 (M.D. Fla. Feb. 16, 2006) (requiring privity for warranty claim and refusing to follow *Manheim* because the sale at issue in the *Manheim* case predated the Florida legislature's adoption of the Uniform Commercial Code).  In the third and last Florida case cited by Plaintiffs, *Chrysler Corp. v. Miller*, 310 So. 2d 356 (Fla. 3d DCA 1975), a houseboat purchaser successfully sued the manufacturer, but the opinion contains no discussion whatsoever of privity and no evidence that the defendant even raised the defense.

In short, Florida law requires that a plaintiff be in privity of contract with a defendant to recover under theories of breach of express or implied warranties, even in cases involving a defendant manufacturer.  *See, e.g., Tolliver v. Monaco Coach Corp.*, No. 8:06-cv-856, 2006 WL 1678842, *2 (M.D. Fla. June 16, 2006) ("[p]rivity is required even if suit is brought against a manufacturer"); *T.W.M.*, 886 F. Supp. at 844 ("[a] plaintiff who purchases a product, but does not buy it directly from the defendant, is not in privity with that defendant").  *See also* 4 *Florida Pleading and Practice Forms* § 35:4 (Oct. 2007) ("[i]n order to recover on a breach of express or implied warranty [] it is essential that privity of contract exist between the plaintiff and the

defendant").[25]  Plaintiffs have not alleged—nor could they allege—that they are in privity with

the Defendant Manufacturers.  Counts VII and VIII must be dismissed.

**IX.    Plaintiffs' Unjust Enrichment Claim (Count IX) Fails Because Plaintiffs Seek
Adequate Legal Remedies Through Other Claims and Impermissibly
Predicate This Claim on Allegations of Wrongdoing.**

As Defendants explain in their Motion (at 58) and above (Section VII), equitable causes

of action require dismissal when Plaintiffs seek adequate legal remedies through their other

causes of action.  Plaintiffs vainly seek to avoid the necessary dismissal by contending that

unjust enrichment is not an equitable cause of action in Florida at all (Resp. at 89).  However, as

Plaintiffs themselves admit (*id.*), the Eleventh Circuit has interpreted Florida law as viewing

unjust enrichment as equitable.  *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (11th

Cir. 1999) ("We first turn to the elements of an unjust enrichment claim in the State of Florida.

A claim for unjust enrichment is an equitable claim[.]").  *See also Am. Honda Motor Co.*, 390 F.

Supp. 2d at 1178 ("It is well settled in Florida that unjust enrichment is an equitable remedy and

is, therefore, not available where there is an adequate legal remedy.") (citing cases).

---

[25]  In addition to the cases already cited in Defendants' Motion, *see also Marshall v. Wellcraft Marine, Inc.*, 103 F. Supp. 2d 1099, 1114 (S.D. Ind. 1999) (applying Florida law) ("The law of Florida is that to recover for the breach of a warranty, either express or implied, the plaintiff must be in privity of contract with the defendant."); *Barrow v. Bristol-Myers Squibb*, No. 96-689, 1998 WL 812318, at *46 (M.D. Fla. Oct. 29, 1998) ("In Florida, to recover under theories of breach of express or implied warranties, the plaintiff must be in privity of contract with the defendant."); *In re Masonite Corp.*, 21 F. Supp. 2d at 599 (applying Florida law) ("Privity is required for both express and implied warranties."); *Intergraph Corp. v. Stearman*, 555 So. 2d 1282, 1283 (Fla. 2d DCA 1990) ("Privity is required in order to recover damages from the seller of a product for breach of express or implied warranties."); *Affiliates for Evaluation and Therapy, Inc. v. Viasyn Corp.*, 500 So. 2d 688, 693 (Fla. 3d DCA 1987) (warranty counts are "purely contract remedies . . . and, accordingly, cannot be maintained in the absence of contractual privity").

In light of these difficulties with their position, Plaintiffs resort to the tactic of arguing that this Court should allow them to keep their unjust enrichment claim alive by permitting them to plead it in the alternative. However, as the Motion made clear (Mot. at 59), Florida law does not permit such an alternative pleading of unjust enrichment where the unjust enrichment claim is predicated on accusations of wrongdoing against Defendants. *See, e.g.*, *Flint v. ABB, Inc.*, 337 F.3d 1326, 1330 n.2 (11th Cir. 2003) ("when the plaintiff relies on a wrong to supply the 'unjust factor,' the causative event is a wrongful enrichment rather than an unjust enrichment."); *Fla. v. Tenet HealthCare Corp.*, 420 F. Supp. 2d 1288, 1309 (S.D. Fla. 2005) ("Because the law of unjust enrichment is concerned solely with enrichments that are unjust *independently of alleged wrongs*, Plaintiffs' unjust enrichment claims must be dismissed.") (citation and some internal punctuation omitted; emphasis added); *Tilton v. Playboy Ent. Group, Inc.*, No. 88:05-cv-692-T-30TGW, 2007 WL 80858, *3 (M.D. Fla. Jan. 8, 2007) (dismissing unjust enrichment claim and holding that "[w]here a plaintiff predicates their unjust enrichment claim on the wrongful conduct of a defendant, then the plaintiff's right of recovery, if any, arises from the wrong of the alleged tort rather than unjust enrichment."). Here, Plaintiffs unquestionably predicate their unjust enrichment claim on Defendants' alleged wrongful conduct. (*See, e.g.*, Resp. at 92 (explaining why Defendants have been unjustly enriched by referencing their alleged "grossly false, unfair, misleading and deceptive" advertising).)

Even if Plaintiffs' claims for unjust enrichment could be pleaded alternatively, in order to make out a claim based on allegedly misleading statements, as Plaintiffs attempt to do here, Plaintiffs would each still have to allege that the allegedly deceptive misrepresentations caused him or her injury. *See Green v. McNeil Nutritionals, LLC*, App. Case No. 2004-0379, 2005 WL 3388158, *5 (Fla. Cir. Ct. Nov. 16, 2005) (unjust enrichment claimant "must demonstrate that

the plaintiff was harmed in some way before courts will impose this equitable remedy"). Reliance is also unquestionably an element of an unjust enrichment claim: "Unjust enrichment may not be appropriate if a consumer did not rely on the alleged deceptive acts." *Id.* at *9 (going on to note that "[i]t would be unjust to compensate a consumer under this equitable theory if the consumer purchased the product without relying on the alleged deceptive practices"). As discussed above, neither causation nor reliance has been adequately alleged.

This Court should, therefore, dismiss Plaintiffs' unjust enrichment claim (Count IX) (Mot. at 58-59).

## CONCLUSION

In light of the foregoing, and in light of Plaintiffs' inability to satisfy the pleading requirements for any of their claims despite their receipt of multiple prior briefs from Defendants describing the applicable legal requirements, Defendants renew their request that this Court dismiss Plaintiffs' Third Amended Class Action Complaint in its entirety, with prejudice.

Respectfully submitted,

/s/ Marty Steinberg                                    By: /s/ Carol A. Licko
Marty Steinberg                                       Carol A. Licko
Florida Bar Number 187293               Florida Bar Number 435872
Adriana Riviere-Badell                     **HOGAN & HARTSON L.L.P.**
Florida Bar Number 30572                 Mellon Financial Center
**HUNTON & WILLIAMS**                 1111 Brickell Avenue, Suite 1900
1111 Brickell Avenue, Suite 2500        Miami, Florida  33131
Miami, Florida  33131                    Telephone:  305-459-6500
Telephone:  305-810-2500                Fax:  305-459-6550
Fax:  305-810-2460                       E-Mail:  calicko@hhlaw.com
E-Mail:  msteinberg@hunton.com
ariviere-badell@hunton.com

Mark Whitburn                                  Craig A. Hoover
Gail E. Lees                                    Miranda L. Berge
Gary L. Justice                               **HOGAN & HARTSON L.L.P.**
William Edward Wegner                  555 Thirteenth Street, NW
**GIBSON DUNN & CRUTCHER**       Washington, D.C.  20004
333 S. Grand Avenue, Suite 4600        Telephone:  202-637-5600
Los Angeles, CA  90071-3197           Fax:  202-637-5910
Telephone:  213-229-7000               E-Mail:  cahoover@hhlaw.com
E-Mail:  cabbott@gibsondunn.com      mlberge@hhlaw.com
glees@gibsondunn.com
gjustice@gibsondunn.com
wwegner@gibsondunn.com                 Robert C. Troyer
                                            **HOGAN & HARTSON L.L.P.**
                                            1200 17th Street
*Attorneys for Nutro Products, Inc.*     One Tabor Center, Suite 1500
                                            Denver, CO  80202
                                            Telephone:  303-899-7300
                                            Fax:  303-899-7333
                                            E-Mail:  rctroyer@hhlaw.com

                                            *Attorneys for Nestlé U.S.A., Inc. and*
                                            *Nestlé Purina PetCare Company*

Case No. 07-21221-CIV-Altonaga

/s/ Omar Ortega
Omar Ortega
Florida Bar Number 0095117
**DORTA & ORTEGA, P.A.**
800 S. Douglas Road
Douglas Entrance Suite 149
Coral Gables, FL 33134

Telephone: 305-461-5454

Fax: 305-461-5226
E-Mail:  ortegalaw@bellsouth.net


Dane H. Butswinkas
Philip A. Sechler
Thomas G. Hentoff
Patrick J. Houlihan
**WILLIAMS & CONNOLLY**
725 12th Street, NW
Washington, DC 20005-3901
Telephone: 202-434-5000
E-Mail: dbutswinkas@wc.com
psechler@wc.com
thentoff@wc.com
phoulihan@wc.com

*Attorneys for Mars, Incorporated and Mars
Petcare U.S., Inc.*

\\\MI - 059726/000032 - 115450 v2

Case No. 07-21221-CIV-Altonaga

/s/ Alan G. Greer
Alan G. Greer
Florida Bar Number 123294
**RICHMAN GREER, P.A.**
201 S. Biscayne Blvd., Suite 1000
Miami, FL 33131
Telephone: 305-373-4000
Fax: 305-373-4099
E-Mail: agreer@richmangreer.com


D. Jeffrey Ireland
Brian D. Wright
Laura A. Sanom
**FARUKI IRELAND & COX  P.L.L.**
10 North Ludlow Street
500 Courthouse Plaza, S.W.
Dayton, OH 45402
Telephone: 937-227-3710
Fax: 937-227-3717
E-Mail: djireland@ficlaw.com
bwright@ficlaw.com
lsanom@ficlaw.com

*Attorneys for The Procter & Gamble*
*Company and The Iams Co.*

Case No. 07-21221-CIV-Altonaga

/s/ Benjamine Reid
Benjamine Reid
Florida Bar Number 183522
Ana Craig
Florida Bar Number 091847
**CARLTON FIELDS, P.A.**
100 SE 2nd Street, Suite 4000
Miami, FL 33131-9101
Telephone: 305-530-0050
Fax: 305-530-0055
E-Mail: breid@carltonfields.com
acraig@caroltonfields.com

James D. Arden
John J. Kuster
Kara L. McCall
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, NY 10019-6018
Telephone: 212-839-5300
Fax: 212-839-5889
E-Mail: jarden@sidley.com
jkuster@sidley.com
kmccall@sidley.com

*Attorneys for Colgate-Palmolive Company
and Hill's Pet Nutrition, Inc.*

\\\MI - 059726/000032 - 115450 v2

Case No. 07-21221-CIV-Altonaga

/s/ Sherril M. Colombo
Sherril M. Colombo
Florida Bar Number 948799
**COZEN O'CONNOR**
200 S. Biscayne Blvd., Suite 4410
Miami, FL 33131
Telephone: 305-704-5940
Fax: 305-704-5955
E-Mail: scolombo@cozen.com

Richard Fama
John J. McDonough
**COZEN O'CONNOR**
45 Broadway
New York, NY 10006
Telephone: 212-509-9400
Fax: 212-509-9492
E-Mail: jmcdonough@cozen.com
rfama@cozen.com

*Attorneys for Del Monte Foods, Co.*

Case No. 07-21221-CIV-Altonaga

/s/ Lonnie L. Simpson
/s/ S. Douglas Knox
Lonnie L. Simpson
Florida Bar Number 821871
S. Douglas Knox
Florida Bar Number 849871
**DLA PIPER LLP**
101 E. Kennedy Blvd., Suite 2000
Tampa, FL 33602
Telephone:  813-229-2111
Fax: 813-229-1447
E-Mail: lonnie.simpson@dlapiper.com
douglas.knox@dlapiper.com

Amy W. Schulman
Alexander Shaknes
**DLA PIPER LLP**
1251 Avenue of the Americas
New York, NY 10020-1104
Telephone: 212-335-4829
E-Mail: amy.schulman@dlapiper.com
alex.shaknes@dlapiper.com

*Attorneys for Menu Foods, Inc. and Menu
Foods Income Fund*

\\\MI - 059726/000032 - 115450 v2

Case No. 07-21221-CIV-Altonaga

/s/ Hugh J. Turner, Jr.
Hugh J. Turner, Jr.
Florida Bar Number 203033
**AKERMAN SENTERFITT**
350 E. Las Olas Blvd., Suite 1600
Fort Lauderdale, FL 33301-0006
Telephone: 954-759-8930
Fax: 954-847-5365
E-Mail: hugh.turner@akerman.com

*Attorney for Publix Super Markets, Inc.*

/s/ John Brian Thomas Murray, Jr.
John B. T. Murray, Jr.
Florida Bar Number 962759
Barbara Bolton Litten
Florida Bar Number 91642
**SQUIRE SANDERS & DEMPSEY LLP**
1900 Phillips Point West
777 S Flagler Drive, Suite 1900
West Palm Beach, FL 33401-6198
Telephone: 561-650-7200
Fax: 561-655-1509
E-Mail: jbmurray@ssd.com

*Attorneys for PETCO Animal Supplies Stores,*
*Inc., PetSmart Inc., Wal-Mart Stores, Inc.,*
*Target Corporation and Meijer, Inc.*

Case No. 07-21221-CIV-Altonaga

/s/ Robin Lea Hanger
Robin Lea Hanger
Florida Bar Number 177172
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
200 S. Biscayne Boulevard, 40th Floor
Miami, FL 33131-2398
Telephone: 305-577-7040
Fax: 305-577-7001
E-Mail: rlhanger@ssd.com

*Attorneys for PETCO Animal Supplies Stores, Inc.*


/s/ Rolando Andres Diaz
/s/ Maria Kayanan
/s/ Cassidy Yen Dang
Rolando Andres Diaz
Florida Bar Number 963150
Maria Kayanan
Florida Bar Number 305601
Cassidy Yen Dang
Florida Bar Number 16482
**KUBICKI DRAPER**
25 W Flagler Street, Penthouse
Miami, FL 33130-1780
Telephone: 305-982-1212
Fax: 305-374-7846
E-Mail: rd@kubickidraper.com
mek@kubickidraper.com
cyd@kubickidraper.com

*Attorneys for Pet Supermarket, Inc.*

Case No. 07-21221-CIV-Altonaga

/s/ Ralph G. Patino
/s/ Dominick V. Tamarazzo
/s/ Carlos B. Salup
Ralph G. Patino
Florida Bar Number 768881
Dominick V. Tamarazzo
Florida Bar Number 92835
Carlos B. Salup
Florida Bar Number 26952
**PATINO & ASSOCIATES, P.A.**
225 Alcazar Avenue
Coral Gables, Florida 33134
Telephone:  305-443-6163
Fax:  305-443-5635
E-Mail:  rpatino@patinolaw.com
dtamarazzo@patinolaw.com
csalup@patinolaw.com

*Attorneys for Pet Supplies "Plus" and Pet Supplies Plus/USA, Inc.*

\\\MI - 059726/000032 - 115450 v2

Case No. 07-21221-CIV-Altonaga

/s/ Craig Kalil
Craig P. Kalil
Florida Bar Number 607282
Joshua D. Poyer
Florida Bar Number 653349
**ABALLI, MILNE, KALIL & ESCAGEDO, P.A.**
2250 Sun Trust International Center
One Southeast Third Avenue
Miami, Florida  33131
Telephone:  305-373-6600
Fax:  305-373-7929
E-Mail:  ckalil@aballi.com
jpoyer@aballi.com


W. Randolph Teslik
Andrew Dober
**AKIN GUMP STRAUSS HAUER & FELD**
1333 New Hampshire Avenue, NW
Washington, D.C.  20036
Telephone:  202-887-4000
Fax:  202-887-4288
E-Mail:  rteslik@akingump.com
adober@akingump.com

*Attorneys for New Albertson's, Inc. and Albertson's LLC*

Case No. 07-21221-CIV-Altonaga

/s/ C. Richard Fulmer, Jr.
C. Richard Fulmer, Jr.
Florida Bar Number 0370037
**FULMER LeROY ALBEE BAUMANN &
GLASS, PLC**
2866 East Oakland Park Boulevard
Fort Lauderdale, Florida  33306
Telephone:  954-707-4430
Fax:  954-707-4431
E-Mail:  rfulmer@Fulmer.LeRoy.com


James K. Reuss
**LANE ALTON & HORST, LLC**
Two Miranova Place
Suite 500
Columbus, Ohio  43215
Telephone:  (614) 233-4719
E-Mail:  jreuss@lanealton.com


*Attorneys for The Kroger Co. of Ohio*

\\\MI - 059726/000032 - 115450 v2

Case No. 07-21221-CIV-Altonaga

/s/ Jeffrey S. York.

Jeffrey S. York
Florida Bar Number 987069
Sara F. Holladay-Tobias
Florida Bar Number 26225
**McGUIRE WOODS LLP**
50 N. Laura Street, Suite 3300
Jacksonville, FL 32202
Telephone: (904) 798-2680
Facsimile: (904) 360-6330
E-mail: jyork@mcguirewoods.com
E-Mail: sfhollad@mcguirewoods.com


Kristen E. Caverly
**HENDERSON & CAVERLY LLP**
P.O. Box 9144 (all U.S. Mail)
16236 San Dieguito Road, Suite 4-13
Rancho Santa Fe, California 92067
Telephone:  (858) 756-6342
Fax:  (858) 756-4732
E-Mail:  kcaverly@hcesq.com


*Attorneys for Defendant Natura Pet Products, Inc.*

Case No. 07-21221-CIV-Altonaga

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 18, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the counsel so indicated on the attached Service List.

By: /s/ Adriana Riviere-Badell
Hunton & Williams

\\\MI - 059726/000032 - 115450 v2

## CERTIFICATE OF SERVICE

**RENEE BLASZKOWSKI, ET AL., VS. MARS, INCORPORATED, ET AL.**
**Case No. 07-21221-CIV-ALTONAGA/TURNOFF**

### SERVICE LIST

Catherine J. MacIvor
E-mail:    cmacivor@mflegal.com
Jeffrey Eric Foreman
E-mail: jforeman@mflegal.com
Jeffrey Bradford Maltzman
E-mail: jmaltzman@mflegal.com
Darren W. Friedman
E-mail: dfriedman@mflegal.com
Bjorg Eikeland
E-mail: beikeland@mflegal.com
**MALTZMAN FOREMAN PA**
One Biscayne Tower
2 South Biscayne Boulevard, Suite 2300
Miami, FL 33131-1803
Telephone: (305) 358-6555
Facsimile: (305) 374-9077

*Attorneys for Plaintiffs*

John B.T. Murray, Jr.
E-mail:    jbmurray@ssd.com
Barbara Bolton Litten
E-mail:    blitten@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, Florida 33401-6198
Telephone: (561) 650-7200
Facsimile: (561) 655-1509

*Attorneys for Defendants PETCO Animal*
*Supplies Stores, Inc., PetSmart, Inc., Wal-Mart*
*Stores, Inc., Target Corporation and Meijer,*
*Inc.*

Rolando Andres Diaz
E-Mail:    rd@kubickdraper.com
Cassidy Yen Dang
E-mail:    cyd@kubickidraper.com
Maria Kayanan
E-mail: mek@kubickidraper.com
**KUBICKI DRAPER**
25 W. Flagler Street
Penthouse
Miami, FL 33130-1712
Telephone: (305) 982-6708
Facsimile: (305) 374-7846

*Attorneys for Defendant Pet Supermarket, Inc.*

Alexander Shaknes
E-mail: Alex.Shaknes@dlapiper.com
Amy W. Schulman
E-mail: amy.schulman@dlapiper.com
Lonnie L. Simpson
E-mail: Lonnie.simpson@dlapiper.com
S. Douglas Knox
E-mail: Douglas.knox@dlapiper.com
**DLA PIPER LLP**
1251 Avenue of the Americas
New York, New York 10020

*Attorneys for Defendants Menu Foods, Inc.*
*and Menu Foods Income Fund*

<u>**CERTIFICATE OF SERVICE**</u>

**RENEE BLASZKOWSKI, ET AL., VS. MARS, INCORPORATED, ET AL.**
**Case No. 07-21221-CIV-ALTONAGA/TURNOFF**

<u>**SERVICE LIST**</u>

Mark Whitburn
E-mail:  mwhitburn@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
2100 McKinney Avenue
Suite 1100
Dallas, Texas 75201
Telephone:  (214) 698-3100

*Attorneys for Defendant Nutro Products, Inc.*

Gary L. Justice
E-mail:  gjustice@gibsondunn.com
Gail E. Lees
E-mail:  glees@gibsondunn.com
William Edward Wegner
E-mail:  wwegner@gibsondunn.com
**GIBSON DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, California  90071
Telephone:  (213) 229-7000

*Attorneys for Defendant Nutro Products, Inc.*

Omar Ortega
**DORTA AND ORTEGA, P.A.**
Douglas Entrance
800 S. Douglas Road, Suite 149
Coral Gables, Florida 33134
Telephone: (305) 461-5454
Facsimile: (305) 461-5226
E-mail: oortega@dortaandortega.com

*Attorneys for Defendant Mars, Incorporated*
*and Mars Petcare U.S.*

Hugh J. Turner, Jr.
**AKERMAN SENTERFITT**
350 E. Las Olas Boulevard
Suite 1600
Fort Lauderdale, FL 33301-2229
Telephone: (954) 463-2700
Facsimile:  (954) 463-2224
E-mail:      hugh.turner@akerman.com

*Attorneys for Defendants Publix Super*
*Markets, Inc.*

Marty Steinberg
E-mail:  msteinberg@hunton.com
Adriana Riviere-Badell
E-mail:     ariviere-badell@hunton.com
**HUNTON & WILLIAMS, LLP**
Mellon Financial Center
1111 Brickell Avenue, Suite 2500
Miami, FL 33131
Telephone:  (305) 810-2500
Facsimile:  (305  810-2460

*Attorneys for Defendant Nutro Products, Inc.*

Dane H. Butswinkas
E-mail:  dbutswinkas@wc.com
Philip A. Sechler
E-mail:  psechler@wc.com
Thomas G. Hentoff
E-mail:  thentoff@wc.om
Patrick J. Houlihan
E-mail:  phoulihan@wc.com
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C.  200005

*Attorneys for Defendants Mars, Incorporated*
*and Mars Petcare U.S.*

## CERTIFICATE OF SERVICE

**RENEE BLASZKOWSKI, ET AL., VS. MARS, INCORPORATED, ET AL.**
**Case No. 07-21221-CIV-ALTONAGA/TURNOFF**

## SERVICE LIST

Benjamine Reid
E-mail: breid@carltonfields.com
Ana Craig
E-mail: acraig@carltonfields.com
**CARLTON FIELDS, P.A.**
100 S.E. Second Street, Suite 4000
Bank of America Tower at International Place
Miami, Florida 33131-9101
Telephone: (305) 530-0050
Facsimile: (305) 530-0055

*Attorneys for Defendants Colgate-Palmolive*
*Company and Hill's Pet Nutrition, Inc.*

Kara L. McCall
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
E-mail: kmccall@Sidley.com

*Attorneys for Defendants Colgate-Palmolive*
*Company and Hill's Pet Nutrition, Inc.*

Sherril M. Colombo
**COZEN O'CONNOR**
Wachovia Center, Suite 4410
200 South Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 704-5945
Facsimile: (305) 704-5955
E-mail: scolombo@cozen.com

*Attorneys for Defendant Del Monte Foods, Co.*

John J. Kuster
E-mail: jkuster@sidley.com
James D. Arden
E-mail: jarden@sidley.com
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

*Attorneys for Defendants Colgate-Palmolive*
*Company and Hill's Pet Nutrition, Inc.*

Carol A. Licko
**HOGAN & HARTSON L.L.P.**
Mellon Financial Center
1111 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 459-6500
Facsimile: (305) 459-6550
E-mail: calicko@hhlaw.com

*Attorneys for Defendants Nestlé USA, Inc. and*
*Nestlé Purina Petcare Co.*

Richard Fama
E-mail: rfama@cozen.com
John J. McDonough
E-mail: jmcdonough@cozen.com
**COZEN O'CONNOR**
45 Broadway
New York, New York 10006
Telephone: (212) 509-9400
Facsimile: (212) 509-9492

*Attorneys for Defendant Del Monte Foods*

## CERTIFICATE OF SERVICE

**RENEE BLASZKOWSKI, ET AL., VS. MARS, INCORPORATED, ET AL.**
**Case No. 07-21221-CIV-ALTONAGA/TURNOFF**

### SERVICE LIST

Robert C. Troyer
**HOGAN & HARTSON L.L.P.**
1200 17th Street
One Tabor Center, suite 1500
Denver, Colorado 80202
Telephone: (303) 899-7300
Facsimile: (303) 899-7333
E-mail: rctroyer@hhlaw.com

*Attorneys for Defendants Nestlé USA, Inc. and Nestlé Purina Petcare Co.*

Craig A. Hoover
E-mail: cahoover@hhlaw.com
Miranda L. Berge
E-mail: mlberge@hhlaw.com
**HOGAN & HARTSON L.L.P.**
555 13TH Street, NW
Washington, D.C. 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910

*Attorneys for Defendants Nestlé USA, Inc. and Nestlé Purina Petcare Co.*

James K. Reuss
**LANE ALTON & HORST, LLC**
Two Miranova Place
Suite 500
Columbus, Ohio 43215
Telephone: (614) 233-4719
E-mail: JReuss@lanealton.com

*Attorneys for Defendant The Kroger Co. of Ohio*

Alan G. Greer
**RICHMAN GREER, P.A.**
Miami Center – Suite 1000
201 South Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 373-4000
Facsimile: (305) 373-4099
E-mail: agreer@richmangreer.com

*Attorneys for Defendants Procter & Gamble Co. and The Iams Co.*

D. Jeffrey Ireland
E-mail: djireland@ficlaw.com
Brian D. Wright
E-mail: Bwright@ficlaw.com
Laura A. Sanom
E-mail: lsanom@ficlaw.com
**FARUKI IRELAND & COX P.L.L.**
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, Ohio 45402

*Attorneys for Defendant Procter & Gamble Co. and The Iams Co.*

Robin L. Hanger
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
200 S. Biscayne Boulevard
40th Floor
Miami, Florida 33131-2398
Telephone: (305) 577-7040
Facsimile: (305) 577-7001
E-mail: rlhanger@ssd.com

*Attorneys for Defendants PETCO Animal Supplies Stores, Inc.*

4

## CERTIFICATE OF SERVICE

**RENEE BLASZKOWSKI, ET AL., VS. MARS, INCORPORATED, ET AL.**
**Case No. 07-21221-CIV-ALTONAGA/TURNOFF**

## SERVICE LIST

Ralph G. Patino
E-mail:  rpatino@patinolaw.com
Dominick V. Tamarazzo
E-mail:  dtamarazzo@patinolaw.com
Carlos B. Salup
E-mail:  csalup@patinolaw.com
**PATINO & ASSOCIATES, P.A.**
225 Alcazar Avenue
Coral Gables, Florida  33134
Telephone:  (305) 443-6163
Facsimile:  (305) 443-5635

*Attorneys for Defendants Pet Supplies "Plus"*
*and Pet Supplies Plus/USA, Inc.*

Craig P. Kalil
E-mail:  ckalil@aballi.com
Joshua D. Poyer
E-mail:  jpoyer@abailli.com
**ABALLI, MILNE, KALIL & ESCAGEDO,**
**P.A.**
2250 Sun Trust International Center
One Southeast Third Avenue
Miami, Florida  33131
Telephone:  (305) 373-6600
Facsimile:  (305) 373-7929

*Attorneys for Defendants New Albertson's Inc.*
*and Albertson's LLC*

Kristen E. Caverly
E-Mail:  kcaverly@hcesq.com
**HENDERSON & CAVERLY LLP**
P.O. Box 9144 (all U.S. Mail)
16236 San Dieguito Road, Suite 4-13
Rancho Santa Fe, California 92067
Telephone:  (858) 756-6342
Fax:  (858) 756-4732

*Attorneys for Defendant Natura Pet Products,*
*Inc.*

C. Richard Fulmer, Jr.
**FULMER, LeROY, ALBEE, BAUMANN &**
**GLASS, PLC**
2866 East Oakland Park Boulevard
Fort Lauderdale, Florida  33306
Telephone:  (954) 707-4430
Facsimile:  (954) 707-4431
E-mail:  rfulmer@Fulmer.LeRoy.com

*Attorneys for Defendant The Kroger Co. of*
*Ohio*

W. Randolph Teslik
E-mail:  rteslik@akingump.com
Andrew Dober
E-mail:  adober@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD**
**LLP**
1333 New Hampshire Avenue, NW
Washington, D.C.  20036
Telephone:  (202) 887-4000
Facsimile:  (202) 887-4288

*Attorneys for Defendants New Albertson's Inc.*
*and Albertson's LLC*

Jeffrey S. York
E-mail:  jyork@mcguirewoods.com
Sara F. Holladay-Tobias
E-Mail:  sfhollad@mcguirewoods.com
**McGUIRE WOODS LLP**
50 N. Laura Street, Suite 3300
Jacksonville, FL 32202
Telephone: (904) 798-2680
Facsimile: (904) 360-6330

*Attorneys for Defendant Natura Pet Products,*
*Inc.*