UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 07-21221-CIV-ALTONAGA-BROWN

RENEE BLASZKOWSKI, et al.,
individually and on behalf of others
similarly situated,

                     Plaintiffs,

vs.

MARS, Inc., et al.,

                     Defendants.

_____/

**MEMORANDUM IN SUPPORT OF DEFENDANT THE IAMS COMPANY'S
MOTION TO SEQUENCE DOCUMENT PRODUCTION AND
<u>TO LIMIT PLAINTIFFS' DOCUMENT REQUESTS</u>**

Dockets.Justia.com

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.   PLAINTIFFS' DOCUMENT REQUESTS SEEK MASSIVE QUANTITIES OF
      DOCUMENTS AND SHOULD BE LIMITED ................................................................ 4

III.  THE COURT HAS BROAD POWER TO GRANT THE REQUESTED RELIEF .......... 8

      A.    Phase I:  Discoverable Documents and Data Before the Class
            Certification Hearing .............................................................................................. 9

      B.    Phase II:  Discoverable Documents and Data After the Class Certification
            Hearing..................................................................................................................... 14

IV.   CONCLUSION............................................................................................................... 16

I.         INTRODUCTION AND SUMMARY OF ARGUMENT

Pursuant to Fed. R. Civ. P. 26 and this Court's authorization at the April 4, 2008

hearing,[1] Defendant The Iams Company ("Iams") seeks relief from the massive document

requests propounded by Plaintiffs and asks for an order that adopts Iams' proposed discovery

plan that sequences document production.  Iams proposes a sequencing of document production

that will allow Plaintiffs and Defendants all the information necessary for any party to seek or

oppose any motion for class certification, and that will provide Plaintiffs and Defendants with

targeted merits-based documents and data for the named Plaintiffs and claims at issue without

needlessly delaying this matter.

The costliness and inefficiencies that will be created by unfettered and

unsequenced discovery can be seen in the overbroad and unduly burdensome requests recently

served by Plaintiffs on certain Defendants.  Uninhibited by her representation to this Court and

Defendants' counsel on April 4, 2008 that she had "no interest in looking at massive quantities of

documents" (Hearing Tr., p. 92), Plaintiffs' counsel recently served Iams with 376 Requests for

the Production of Documents.[2]  To respond to these requests in their current form, Iams would

have to review and sort almost every document it stores or maintains -- paralyzing several

departments for weeks, including Iams' Research & Development, Sales and Marketing, and

Consumer Care Departments.  Rajczak Decl., ¶ 4; Monich Decl., ¶ 4; Hissong Decl., ¶ 4-5;

---

[1] The Court indicated at the April 4, 2008 hearing that counsel for Defendants could bring a discovery dispute relating to the breadth of discovery to this Court if such a dispute could not be resolved between counsel for Defendants and Plaintiffs.  April 4, 2008 Hearing Tr., pp. 92-93 (relevant portions are attached to this Memorandum in Support as Exhibit A).

[2] Plaintiffs' First Request for Production of Documents and Things to Defendant The Iams Company ("First Request for Documents") has 116 requests and is attached to this Memorandum in Support as Exhibit C.  Plaintiffs' Second Request for Production of Documents and Things to Defendant The Iams Company ("Second Request for Documents") includes 102 requests and is attached to this Memorandum in Support as Exhibit D.  Last, Plaintiffs' Third Request for Production of Documents and Things to Defendant The Iams Company ("Third Request for Documents") includes 158 requests and is attached to this Memorandum in Support as Exhibit E.

Wilson Decl., ¶ 3-4.[3]  Plaintiffs' 376 requests require the production of hundreds of thousands --

if not millions -- of documents that are not relevant to the allegations in Plaintiffs' Fourth

Amended Complaint (Doc. 349) and that seek highly confidential commercial information with

no discernible reference to this matter at this time.

 During a May 7, 2008 meet and confer, Plaintiffs' counsel agreed that many of her

document requests were too broad.  In response to counsel for Iams informing Plaintiffs' counsel

of the burden imposed on Iams by her requests, she stated that she had no intent to shut down

Iams.  Counsel for Plaintiffs has agreed to permit Iams to produce documents on a rolling basis

starting on May 30, 2008 and to limit her requests to the class period, five years.  Nonetheless,

Plaintiffs' counsel has disregarded Iams' multiple requests for her to narrow her document

requests, and has instead asked Iams to suggest ways to narrow her requests for her, even though

only Plaintiffs know what documents they need to prove their claims.  Plaintiffs' counsel (Motion

to Sequence, pp. 4-6) has expressly rejected Iams' proposal to restrict her requests to the claims

and products identified in the Fourth Amended Complaint and to sequence discovery as set forth

below.

---

[3] In support of its Motion and Memorandum in Support, Iams has attached four Declarations from its representatives.  These Declarations explain in detail the scope of Plaintiffs' Document Requests, the burden and costs necessary to respond to them, and the confidential and proprietary nature of the requests.  These Declarations include:  (1) Declaration of Dan Rajczak in Support of Defendant The Iams Company's Motion for Protective Order to Limit Discovery ("Rajczak Decl.") (attached to this Memorandum in Support as Exhibit F); (2) Declaration of Marti Hissong in Support of Defendant The Iams Company's Motion for Protective Order to Limit Discovery ("Hissong Decl.") (attached to this Memorandum in Support as Exhibit G); (3) Declaration of Melissa Monich in Support of Defendant The Iams Company's Motion for Protective Order to Limit Discovery ("Monich Decl.") (attached to this Memorandum in Support as Exhibit H); and (4) Declaration of Terri Wilson in Support of Defendant The Iams Company's Motion for Protective Order to Limit Discovery ("Wilson Decl.") (attached to this Memorandum in Support as Exhibit I).

The Court may rely on Iams' Declarations to address this discovery dispute.  Fla. Immigrant Advocacy Ctr. v. Nat'l Sec. Agency, 380 F. Supp. 2d 1332, 1339-40 (S.D. Fla. 2005) (Gold, J.) (relying on affidavit from government in denying discovery to adverse party); Duffy v. Wolle, 123 F.3d 1026, 1033 (8th Cir. 1997) (denying the requested discovery and explaining that the affidavits from defendants "support the defendants' position"), cert. denied, 523 U.S. 1137, 118 S. Ct. 1839 (1998).

In proposing its plan, Iams has no intent to delay these proceedings (as it will start producing thousands of documents on May 30, 2008), but seeks to ensure compliance with the mandate of Rule 23(c)(1)(A) that class certification be addressed "at an early practicable time." Given the enormous problems created by Plaintiffs' massive requests, Iams' proposal allows discovery to proceed expeditiously toward the anticipated class certification hearing in the fall of 2008 and the anticipated discovery cut-off date by defining categories of documents and data to be produced in each phase. In light of Plaintiffs' counsel's statement that she does not want to shut down Iams to respond to her requests and that she has no desire to review millions of pages of production, Iams has done Plaintiffs' work for them.

Iams proposes two distinct phases of document production that appropriately balance the need of Plaintiffs to prove their claims against the need to protect Iams from having to review millions of pages of documents that are potentially irrelevant (e.g., massive numbers of documents would be relevant only if a class is certified) and from having to produce highly confidential documents with no discernible relevance at this time. In Phase I, Iams will produce documents relating to class certification, as well as significant merits discovery relevant to the named Plaintiffs and the specific allegations as to Iams' pet food products and advertisements (these categories of documents are explained infra pp. 11-12). In addition, Iams would produce general information requested by Plaintiffs, as it pertains to issues of class certification and Iams' defenses.

Phase II would defer--until after the class certification hearing--the documents that are unrelated to class certification and the allegations of the named Plaintiffs contained in the Fourth Amended Complaint. Such discovery includes requests that seek documents not relevant to Plaintiffs' allegations and that are best characterized as overreaching. For example,

Plaintiff's request literally "all" communications between Iams and any governmental agency and "all documents" relating in any way to the preservatives "BHA," "BHT" and "ethoxyquin."[4] Until a class certification hearing identifies whether or to what extent there is a class of Plaintiffs or Defendants, the parties and the Court will not know the extent to which the documents sought by Plaintiffs' sweeping requests are relevant or necessary to Plaintiffs' claims.

Further, discovery deferred to Phase II includes documents that are so highly confidential and sensitive (such as Iams' recipes and current business and marketing plans)[5] that Iams asks the Court to determine their relevancy <u>after</u> class certification is resolved and before requiring their production. Documents responsive to those requests are the foundation of Iams' business and its ability to compete effectively in the highly competitive pet product industry.

II.     PLAINTIFFS' DOCUMENT REQUESTS SEEK MASSIVE QUANTITIES OF DOCUMENTS AND SHOULD BE LIMITED

This Court has broad authority to sequence discovery and to limit a party's discovery requests to ensure that this action "move[s] to a reasonably timely and orderly conclusion." <u>Chrysler Int'l Corp. v. Chemaly</u>, 280 F.3d 1358, 1360 (11th Cir. 2002). Under Fed. R. Civ. P. 26(c)(1), and for good cause, the Court may restrict discovery by (a) "specifying terms, including time and place, for the disclosure or discovery," (b) "limiting the scope of disclosure or discovery to certain matters," and (c) "forbidding the disclosure or discovery." The Court should limit or forbid discovery that is irrelevant or "overly burdensome." <u>Johnson v. Geico Gen. Ins. Co.</u>, No. 07-80310, 2007 U.S. Dist. LEXIS 82781, at *3 (S.D. Fla. Nov. 7, 2007)

---

[4] First Request for Documents, Nos. 12-15 and 54-55 and Second Request for Documents, Nos. 72-73 and 83-84 (asking for "all documents" that Iams "sent to" or "received from" AAFCO or "any branch of the United States government" or "state government," including the FDA and USDA); Third Request for Documents, Nos. 129, 138 and 147 (requesting all documents "relating to" BHT, BHA and ethoxyquin in "your pet food").

[5] First Request for Documents, Nos. 35-40 (requesting "documents revealing the tests [Iams] performed and information gathered on each and every brand of pet food manufactured and produced [by Iams] . . . for quality assurance, [and] wholesomeness"); Second Request for Documents Nos. 1, 17, 23, 27, 37, 38 and 44-62 (seeking "documents reflecting any studies or analyses of the <u>amount of meat</u>, <u>i.e.</u>, animal protein" and all "documents reflecting <u>the source</u> of the 'fiber'" (emphasis added)).

(Ryskamp, J.).  Discovery is unduly burdensome when "the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(2)(C).  Further, the Court may preclude the disclosure of "a trade secret or other confidential research, development, or commercial information."  Fed. R. Civ. P. 26(c)(1)(G).

Plaintiffs' Document Requests are uniformly overly broad and unduly burdensome.  Responding to their Document Requests would unnecessarily delay this action and be hugely expensive.  Many of the Requests call for documents that are completely irrelevant (and not reasonably calculated to lead to the discovery of admissible evidence) to the class certification hearing and that would be irrelevant even if a class is certified.

In its attached Declarations (Exhibits F, G, H, and I), Iams shows the burden of time and expense necessary to respond to Plaintiffs' 376 Document Requests and addresses the enormous breadth of almost each Document Request.  The Document Requests by Plaintiffs require Iams to search and review almost every file and document in the possession of multiple departments of Iams -- which exceed millions of pages of paper documents and "over a terabit of [electronic] data" or more.  Rajczak Decl., ¶¶ 1, 4, 7, 14, 18; Monich Decl., ¶¶ 1, 4, 10, 12, 15; Hissong Decl., ¶¶ 4, 9; Wilson Decl., ¶ 4.  Iams employs over 900 employees throughout the nation.  Rajczak Decl., ¶ 1.  To review these large quantities of paper and electronic documents, Iams would need many of its employees to stop work and dedicate at least two months to reviewing documents.  Rajczak Decl., ¶ 4; Hissong Decl., ¶ 4; Monich Decl., ¶ 4.  The cost in terms of lost productivity and out-of-pocket expenses would be "hundreds of thousands of dollars per week, or more."  Monich Decl., ¶ 4; Rajczak Decl., ¶ 4 (estimating production cost of "several hundreds of thousands of dollars, or more"); Hissong Decl., ¶ 5 (same).

For example, Plaintiffs have requested all documents and communications "sent to" or "received from" state and federal agencies (including the FDA and the USDA), regulatory authorities such as the American Association of Feed Control Officials ("AAFCO"), and trade associations such as the Pet Food Institute. First Request for Documents, Nos. 12-15 and 54-57; Second Request for Documents, Nos. 65-66, 72-73, 83-84, 95-96 and 100. Plaintiffs also seek all documents relating to any testing or studies conducted by those governmental agencies and private organizations and their approval or disapproval of any ingredient in any Iams product. Second Request for Documents, Nos. 14-16, 19-21, 24-26, 67-71, 74-82, 85-88, 91-92 and 97-99; First Request for Documents, Nos. 58-70. Iams is regulated by various state and federal authorities. As shown in Iams' attached Declarations, Iams is storing "thousands of documents" for each regulatory agency that would need to be reviewed in order to respond to these Requests, and many have no relation to Plaintiffs' claims. Monich Decl., ¶¶ 12, 17-19. Indeed, in a class action against a manufacturer of the pet treat Greenies for alleged injuries, the District Court expressly rejected a plaintiff's discovery request for all documents provided to the FDA regarding Greenies.[6]

Many other Document Requests are even broader and more burdensome than the Requests mentioned in the preceding paragraph. Plaintiffs also seek every document relating to Iams' marketing and advertising materials, including all studies supporting or contradicting advertising and marketing, all "marketing materials" sent to any retailer, breeder or veterinarian, and financial information regarding marketing. Third Request for Documents, Nos. 47-50, 58-59, 62-63, 74-80, 87, 92, and 102. Plaintiffs could not have observed or relied upon each advertisement that Iams has ever published, and Plaintiffs are not challenging all such

---

[6] Orders dated July 24, 2006 (Doc. No. 25) and October 23, 2006 (Doc. No. 34) for the case styled as, Gartin v. S&M Nutec LLC, No. 06-cv-02747 (C.D. Cal. ). Both Orders are available only through PACER.

advertisements. Plaintiffs also seek all "documents reflecting testing of [Iams'] brands of pet food" or Iams' "competitors' brands." Id. at Nos. 111-12. Iams' Research and Development Department conducts daily testing of pet food, ingredients and nutrition (Monich Decl., ¶ 13), and most of the results are not only irrelevant to Plaintiffs' claims, but also highly confidential commercial information (id. ¶ 24; Rajczak Decl., ¶ 26). Iams would have to review "thousands of documents" just to respond to these Requests asking for marketing and advertising materials. Rajczak Decl., ¶ 19.

Plaintiffs' requests for "all customer complaints" from the previous five years (First Request for Documents, Nos. 87-88) are similarly overbroad. Locating responsive documents would require Iams to search and review "each and every document and piece of data" in the possession of Iams' Consumer Care Group because of how such data is stored. Hissong Decl., ¶ 7. To illustrate the breadth of this request, Iams' Consumer Care has about "380,000 customer contacts" per year, many of which involve positive feedback or questions on topics ranging from nutrition to training. Id. ¶¶ 6-7. Consumer Care also has "approximately 270 boxes of documents" associated with the Menu Foods recall, although only a few Iams products were affected by the recall. Id. ¶ 8. Iams should not be burdened with the cost of "several hundreds of thousands of dollars" to review all documents maintained by Consumer Care in furtherance of Plaintiffs' fishing expedition. Id. ¶ 5.

Further, Plaintiffs seek numerous documents relating to Iams' communications and marketing to, and its agreements with, veterinarians throughout the United States.[7] Many documents responsive to those requests have no relevancy to this action. Iams regularly

---

[7] First Request for Documents, Nos. 92-93 (requesting all "communications sent to [or received from] veterinarians regarding any or all of [Iams'] commercial pet food products"); id. Nos. 94-96 (asking for "all documents used by sales representatives to market to veterinarians" and "all documents provided to sales representatives to market to veterinarians"); id. No. 97 (seeking "any and all agreements entered into with veterinarians regarding [Iams'] commercial pet food").

communicates with veterinarians because it markets and sells Veterinary Formulas pet foods, a prescription product available only through veterinarians. Rajczak Decl., ¶ 11. Iams has numerous documents regarding the sale of its Veterinary Formulas, such as agreements and shipping invoices. Id. ¶ 11-12. The FAC has no allegations about Iams' prescription-only products.

Additionally, Plaintiffs request numerous documents containing highly confidential and proprietary commercial information, such as the specific formulas and recipes for all its pet foods and the strategies by Iams for marketing and pricing its products. Rajczak Decl., ¶¶ 26-28; Monich Decl., ¶¶ 24-27; see, e.g., First Request for Documents, Nos. 9-10; Second Request for Documents, Nos. 1, 37-38, 44-62. Such information is so confidential that Iams limits its disclosure to Iams' senior level employees, and Iams has restricted the disclosure of such confidential information in previous lawsuits to a small number of persons. Monich Decl., ¶¶ 25, 30. The disclosure of Iams' sensitive and confidential commercial information to Plaintiffs or other Defendants would provide Iams' competitors with an unfair advantage in the pet product marketplace and would irreparably harm Iams. Rajczak Decl., ¶¶ 26, 29; Monich Decl., ¶¶ 25, 28.

III.     THE COURT HAS BROAD POWER TO GRANT THE REQUESTED RELIEF

The scope of Plaintiffs' 376 Document Requests demonstrates the need for sequencing document production into two phases. Such sequencing will keep this action on track for a class certification hearing in the fall of 2008. While written responses and objections to Plaintiffs' requests will be served on Plaintiffs by May 30, 2008, the examples above are intended to illustrate the sweeping nature of Plaintiffs' Document Requests.

The Eleventh Circuit has directed District Courts to "tailor" discovery "to the issues involved in the particular case." Washington v. Brown & Williamson Tobacco Corp., 959

F.2d 1566, 1570 (11th Cir. 1992). The 2000 Amendment to Rule 26(b)(1), which narrowed the
scope of relevant discovery, was designed "to involve the court more actively in regulating the
breadth of sweeping or contentious discovery." U & I Corp. v. Advanced Med. Design, Inc.,
No. 8:06-CV-2041, 2007 U.S. Dist. LEXIS 86530, at *7 (M.D. Fla. Nov. 26, 2007). Tailoring
discovery in class actions is particularly important to ensure that the Court addresses class
certification "at an early practicable time." Fed. R. Civ. P. 26(c)(1); Washington, 959 F.2d at
1570-71 ("To make early class determination practicable and to best serve the ends of fairness
and efficiency, courts may allow classwide discovery on the certification issue and postpone
classwide discovery on the merits."). Sequencing discovery into two phases here also would
"avoid a massive waste of judicial and private resources" by saving the parties from the burdens
of responding to discovery requests until such discovery is relevant (if at all). Perez v. Miami-
Dade County, 297 F.3d 1255, 1263 (11th Cir. 2002) (internal quotation marks omitted); Fed. R.
Civ. P. 1 (stating that the purpose of the Rules is "secure[ing] the just, speedy, and inexpensive
determination of every action").

      A.     Phase I:  Discoverable Documents and Data Before the Class
               Certification Hearing

      Iams' proposed discovery plan delineates what should and should not be produced
during Phase I. Phase I discovery should be limited to the individual named Plaintiffs and the
specific Iams products and advertising claims at issue in the FAC, dating back to May 9, 2003
(see FAC, ¶¶ 75-76). In addition, under Iams' plan, it would produce documents relating to class
certification (including any document Iams intends to use at the certification hearing) and
regarding Iams Kitten food (which was identified in a May 8, 2008 letter). See infra pp. 11-12.

      District Courts in this Circuit have endorsed tailoring discovery to named
plaintiffs before class certification is decided. In Bradford v. WR Starkey Mortgage, LLP,

No. 06-CV-86, 2007 U.S. Dist. LEXIS 60612, at *1-2, *5-6 (N.D. Ga. Aug. 2, 2007), plaintiff

sought to represent a class of mortgage borrowers regarding certain fees charged by defendant,

and he requested the production of documents for "all loans" since 2003 regarding the charged

fees and documents relating to loans of other borrowers. Bradford denied plaintiff's motion to

compel, reasoning that "classwide discovery . . . prior to class certification" was improper. Other

District Courts also have determined that discovery as to the "entire putative class" was over

broad and "premature" before class certification was addressed. Rebman v. Follet Higher Educ.

Group, Inc., No. 06-cv-1476, 2007 U.S. Dist. LEXIS 32601, at *11-12 (M.D. Fla. May 3, 2007)

(denying motion to compel the production of documents as to "merits and damages discovery"

for all class members, but allowing plaintiffs to obtain such documents for the "individual

claims"). Accord: Lewis v. Bank of Am. Corp., No. 4:07-CV-24, 2008 U.S. Dist. LEXIS

24970, at *2 (M.D. Ga. Mar. 28, 2008) (noting that discovery was previously limited to "the

named Plaintiffs and initial class certification"); Larson v. Burlington N. & Santa Fe Ry. Co.,

210 F.R.D. 663, 665-66, 667 (D. Minn. 2002) (granting defendant's motion to limit discovery to

the individual plaintiffs; striking a balancing between plaintiffs' need for discovery with the time

required for defendant to answer all of plaintiffs' requests).

   Despite various amendments to their Complaint, Plaintiffs have asserted only a

few allegations specifically against Iams. In the FAC (¶ 75), Plaintiffs allege that Iams'

advertising statement that its dog and cat foods are "veterinarian recommended" is false and/or

misleading in that Iams' surveys do not support the advertisement. Plaintiffs also claim that

certain statements made on Iams' website about one specific cat food, Iams Original with

Chicken, are "deceptive." FAC, ¶ 76 & Exhibit 16. Such statements include that Original with

Chicken "Helps Maintain Urinary Tract Health," and contains "wholesome protein sources." Id.

¶ 76 & Exhibit 16.  Plaintiffs also allege that Iams should have informed consumers on its

website of "the correlation between a cat's consumption of dry food and urinary tract illness."  Id.

Last, in a May 8, 2008 letter, counsel for Plaintiffs claims that at least one named Plaintiff

purchased Iams Kitten food.

      As explained in Bradford, Rebman and Larson, Plaintiffs are limited to

documents relating directly to the specific allegations against Iams in the FAC by the individual

named Plaintiffs.  Under Iams' proposed remedy, Iams will produce information and documents

that relate to Iams' advertising claims (a) "veterinarian recommended" as to all products, and

(b) "Helps Maintain Urinary Tract Health" and "wholesome protein sources" as to Iams Original

with Chicken cat food.  Other merits discovery will include documents regarding Iams Kitten

food.  Last, in Phase I, Iams will produce documents relating to whether a class of Plaintiffs or

Defendants is certifiable.

      In particular, as set forth in Iams' counsel's May 8, 2008 letter, categories of

documents and data that Iams will produce include the following to the extent that they relate to

either the complained-of Iams' products and advertising claims alleged in the FAC (including

Iams Kitten food) or class certification issues:  (1) identities of persons with knowledge of the

allegations in the FAC; (2) documents mentioning any named Plaintiff; (3) ingredient lists

(excluding highly confidential formulas); (4) packaging materials; (5) general quality control

standards and procedures (such as some testing reports created under Iams' quality assurance

program); (6) summaries of sales histories; (7) marketing and advertising materials published to

consumers and publicly available to them; (8) lists that identify Iams' manufacturing facilities,

co-packers and rendering facilities; (9) documents that Iams plans to use or rely upon at the class

certification hearing; (10) press releases; (11) a list of litigation where Iams was a named party; (12) information management, storage and retention policies.[8]

Plaintiffs, however, are not entitled to documents relating to unnamed class members because no class has been certified.  To the extent that Plaintiffs' request for "all customer complaints" (First Request for Documents, Nos. 87-88) does not relate to a named Plaintiff or a specific Iams product or advertising claim, the "complaint" is not relevant to this action.  Stewart v. Winter, 669 F.2d 328, 331-32 (5th Cir. 1982) (affirming District Court's refusal to compel defendants to produce all "documents relating to every aspect of life in the jails of Mississippi's 82 counties," which could have exceeded over one million pages; explaining that merits discovery for all potential class members before a District Court addresses class certification should be prohibited); Bradford, 2007 U.S. Dist. LEXIS 60612, at *5-6 (permitting defendant mortgage company not to produce certain loan documents relating to the putative class because no class was yet certified; explaining that the requests were "overly broad and unduly burdensome" and required the review of "an extremely large number of files" that contained confidential information of borrowers).[9]

_____

[8] These categories are responsive to the following Document Requests which will be limited to the period from May 9, 2003 to May 9, 2007 and to the advertising claims and products at issue in the FAC (as explained in each parenthetical) and include:  First Request for Documents, Nos. 1-2 (documents mentioning any named Plaintiff), Nos. 5, 7-8 (documents Iams intends to rely upon at the class certification hearing, and documents to be relied upon by any experts at the class certification hearing), No. 6 (a list of persons with knowledge of this action), Nos. 16-20 (documents constituting Iams' storage and retention policies), Nos. 24, 30-33, 35-40 (general quality control standards and procedures), Nos. 41-43 (list of manufacturing and rendering facilities and list of co-packers used by Iams), No. 89 (listing of litigation against Iams), Nos. 90-91 (public advertisements that pet foods are "veterinarian recommended"); Second Request for Documents, Nos. 1, 59 (listing of ingredients in pet food); and Third Request for Documents, Nos. 5-6 (listing of lawsuits where Iams was a named plaintiff or defendant), Nos. 37-38 (Iams' press releases), Nos. 47-48, 58-59, 62 and 88-91 (public advertisements and marketing materials available to consumers and retailers), Nos. 51-53, 107 (listing of sale history summaries), Nos. 56-57, 67-74, 80 (documents relating to class certification), No. 102 (public marketing materials to consumers), and No. 111 (general quality control standards and procedures).

[9] Another reason that discovery responsive to many of Plaintiffs' Document Requests should be postponed until Phase II is that the Court may lack subject matter jurisdiction over some or all Plaintiffs if no class is certified. Courts are split whether a District Court has jurisdiction after denying class certification where jurisdiction is based on the Class Action Fairness Act.  Cf. Falcon v. Philips Elecs. N. Am. Corp., 489 F. Supp. 2d 367, 368-69 (S.D.N.Y.

In sum, Plaintiffs cannot use discovery as an effort to speculate about what their claims may be; yet, they have embarked on such a quest through their 376 Document Requests. Awad v. Cici Enters., No. 06-cv-1278, 2006 U.S. Dist. LEXIS 85123, at *2 (M.D. Fla. Nov. 20, 2006) (internal quotation marks omitted); Donahay v. Palm Beach Tours & Transp., Inc., No. 06-61279, 2007 U.S. Dist. LEXIS 65163, at *3 (S.D. Fla. Apr. 13, 2007) (Johnson, J.) (stating that a party may not "explore matter which does not presently appear germane on the theory that it might conceivably become so").[10]

If the Court determines that Plaintiffs are entitled to require Iams to review every document in many departments of the company, then Iams respectfully asks the Court to shift to Plaintiffs a significant portion of the expenses associated with responding to their sweeping requests. Under Fed. R. Civ. P. 26(c), this Court has "considerable discretion in determining whether expense-shifting in discovery production is appropriate." Spears v. City of Indianapolis, 74 F.3d 153, 158 (7th Cir. 1996). When a plaintiff seeks "expansive rather than targeted discovery, that party should bear the expense." Rowe Entm't, Inc. v. William Morris Agency, Inc., 205 F.R.D. 421, 430 (S.D.N.Y. 2002). As established above, responding to Plaintiffs' over 370 requests would cost Iams "hundreds of thousands of dollars per week, or more." Monich Decl., ¶ 4; Hisssong Decl., ¶ 5. As explained by Judge Easterbrook, Plaintiffs may not use discovery to impose "large and unjustifiable costs" in hopes that Iams (and other Defendants)

---

2007) (dismissing action for lack of subject matter jurisdiction under CAFA after denying class certification) and Hoffer v. Cooper Wiring Devices, Inc., No. 06-763, 2007 U.S. Dist. LEXIS 75806, at *4-5 (N.D. Ohio Sept. 28, 2007) (holding that once plaintiff's class action claims were dismissed, the court lost CAFA subject matter jurisdiction over plaintiff's individual claims) with Colomar v. Mercy Hosp., No. 05-22409, 2007 U.S. Dist. LEXIS 52659, at *9-10 (S.D. Fla. Jul. 19, 2007) (Seitz, J.) (denying motion to remand and explaining that the denial of class certification did not alter the court's CAFA jurisdiction). The uncertainty of the Court's jurisdiction, therefore, supports Iams' position that discovery should be limited before the class certification hearing.

[10] Accord: Zink v. E. Pa. Psychiatrist Inst. of the Med. Coll., 103 F.3d 294, 299 (3rd Cir. 1996) ("[D]iscovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it; the plaintiff must have some basis in fact for the action.").

will "settle on favorable terms." Frank H. Easterbrook, <u>Issues in Civil Procedure: Advancing the</u> <u>Dialogue a Symposium: Comment: Discovery as Abuse</u>, 69 B.U.L. Rev. 635, 636 (1989). To avoid discovery abuse, Plaintiffs should bear at least some significant portion of Iams' expenses. <u>Wiginton v. CB Richard Ellis, Inc.</u>, 229 F.R.D. 568, 573-77 (N.D. Ill. 2004) (in multi-million dollar class action lawsuit, requiring putative plaintiffs to pay 75% of document production costs, even though defendant's annual revenues exceeded $1.0 billion , because plaintiffs' discovery requests were broad and likely would generate a significant number of unresponsive documents).

> **B.** **Phase II: Discoverable Documents and Data After the Class Certification Hearing**

Limiting document and data production to the information described above is necessary to protect Iams from unnecessary and undue burden and expense, and to allow this case to move forward in a timely and efficient manner. Once the class certification decision is made, Plaintiffs' massive requests can be evaluated in light of the context of whether and to what extent a class is certified.

As shown above, responding to many of Plaintiffs' Document Requests would require Iams to review and sort <u>millions</u> of pages of paper and electronic documents and to incur expenses of "hundreds of thousands of dollars per week, or more." Rajczak Decl., ¶¶ 1, 4, 7, 14, 18; Monich Decl., ¶¶ 1, 4, 10, 12, 15; Hissong Decl., ¶¶ 4, 9; Wilson Decl., ¶ 4. Complying with the requests would take months of dedicated labor by whole departments. Rajczak Decl., ¶ 4; Hissong Decl., ¶ 4; Monich Decl., ¶ 4. Iams' burden substantially outweighs any likely benefit to Plaintiffs of obtaining the requested documents. Courts have denied discovery to parties who sought far less burdensome discovery than Plaintiffs here. <u>E.g.</u>, <u>Wright v. AmSouth Bancorp.</u>, 320 F.3d 1198, 1204-05 (11th Cir. 2003) (in employment discrimination action, upholding the

denial of production of electronic files for five of defendant's employees over a two and one-half year period; noting that plaintiff should have identified "particular items within the expansive request"); <u>Hall v. Keller</u>, No. 06-16116, 2007 U.S. App. LEXIS 27770, at *3 (9th Cir. Nov. 27, 2007) (affirming the denial of "motion to compel production of over 150,000 paper documents where the request would have been unduly burdensome to defendants"); <u>Connecticut Indem. Co. v. Carrier Haulers, Inc.</u>, 197 F.R.D. 564, 569 (W.D.N.C. 2000) (denying motion to compel the insurer to manually review between 30,000 and 45,000 paper files where insurer argued that such a review was necessary to find the requested documents relating to the commercial policy endorsement at issue).

Iams' additional document production, if any, should be deferred until Phase II for the independent reason that many of Plaintiffs' requests seek numerous documents that are not relevant and that also contain trade secrets and other highly confidential commercial information (<u>see</u> First Request for Documents, Nos. 9-10; Second Request for Documents, Nos. 1, 37-38, 44-62). Rajczak Decl., ¶¶ 26-28; Monich Decl., ¶¶ 24-27. The disclosure of this sensitive information -- <u>e.g.</u>, Iams' specific recipes and business and marketing strategies -- would irreparably harm Iams (<u>see</u> <u>supra</u> p. 8). Rajczak Decl., ¶¶ 26, 29; Monich Decl., ¶¶ 25, 28. Thus, the Court should order that discovery of Iams' confidential information not be had until, and only if, Plaintiffs demonstrate a need for the discovery in Phase II. <u>Duracell Inc. v. SW Consultants, Inc.</u>, 126 F.R.D. 576, 578-79 (N.D. Ga. 1989) (issuing a protective order prohibiting the disclosure of defendant's "marketing information" and its "financial data"; explaining that a company's "strategies, techniques, goals and plans can be its life blood"); <u>Nutratech, Inc. v. Syntech Int'l, Inc.</u>, 242 F.R.D. 552, 555 (C.D. Cal. 2007) (a court should "balance the risk of

disclosure to competitors against the risk that a protective order will impair prosecution or defense of the claims").[11]

Plaintiffs should not be permitted to seek irrelevant, unduly burdensome and confidential documents and information from Iams without first attempting to focus their Requests to information that they need only for the class certification hearing. Donahay v. Palm Beach Tours & Transp., Inc., No. 06-61279, 2007 U.S. Dist. LEXIS 65163, at *2-4 (S.D. Fla. Apr. 13, 2007) (Johnson, J.) (denying in part plaintiff's motion to compel the production of all "the personnel files of all employees who [we]re similarly situated to Plaintiff for the past six (6) years within the Southern District of Florida"; where plaintiff should have first attempted a more "narrower and less burdensome request," District Court concluded that the request was "overly broad and irrelevant"). Accord: Sanchez v. City of Santa Ana, 936 F.2d 1027, 1034 (9th Cir. 1990) (upholding the denial of discovery of all defendant's personnel files because "[f]ocused discovery could have been employed" to obtain the necessary information).

IV.          CONCLUSION

For the above reasons, this Court should sequence discovery into Phase I and II. The Court should limit the information and documents discoverable during Phase I as outlined above, and should address Phase II discovery after the Court rules on Plaintiffs' motion for class certification.

---

[11] Accord: Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc., No. 02 C 2523, 2004 U.S. Dist. LEXIS 4698, at *7 (N.D. Ill. Mar. 22, 2004) (phasing liability and damage discovery because "the distinct possibility exist[ed] that the issue of damages [would] never be reached").

Respectfully submitted,

OF COUNSEL:

    /s/ Alan G. Greer

D. Jeffrey Ireland
E-mail:  djireland@ficlaw.com
Laura A. Sanom
E-mail:  lsanom@ficlaw.com
Brian D. Wright
E-mail:  Bwright@ficlaw.com
**FARUKI IRELAND & COX P.L.L.**
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, Ohio  45402

Alan G. Greer
**RICHMAN GREER, P.A.**
Miami Center – Suite 1000
201 South Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 373-4000
Facsimile: (305) 373-4099
E-mail: agreer@richmangreer.com

*Attorneys for Defendant*
*The Iams Company*

## CERTIFICATE OF SERVICE

I certify that on the 16th day of May 2008, I electronically filed the foregoing

Memorandum in Support of Defendant The Iams Company's Motion to Sequence Document

Production and to Limit Plaintiffs' Document Requests with the Clerk of Courts using the

CM/ECF system, which will send notification of such filing to CM/ECF participants:

Catherine J. MacIvor
Email:    cmacivor@mflegal.com
Jeffrey Eric Foreman
Email:  jforeman@mflegal.com
Jeffrey Bradford Maltzman
Email:  jmaltzman@mflegal.com
Darren W. Friedman
Email:  dfriedman@mflegal.com
Bjorg Eikeland
Email: beikeland@mflegal.com
**MALTZMAN FOREMAN PA**
One Biscayne Tower
2 South Biscayne Boulevard,  Suite 2300
Miami, FL 33131-1803
Telephone: (305) 358-6555
Facsimile:  (305) 374-9077

*Attorneys for Plaintiffs*

John B.T. Murray, Jr.
Email:    jbmurray@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone: (561) 650-7200
Facsimile:  (561) 655-1509

*Attorneys for Defendants PETCO Animal
Supplies Stores, Inc., PetSmart, Inc., Wal-Mart
Stores, Inc., Target Corporation*

Rolando Andres Diaz
Email:    rd@kubickdraper.com
Maria Kayanan
Email: mek@kubickidraper.com
**KUBICKI DRAPER**
25 W. Flagler Street
Penthouse
Miami, FL 33130-1712
Telephone: (305) 982-6708
Facsimile:  (305) 374-7846

*Attorneys for Defendant Pet Supermarket, Inc.*

Amy W. Schulman
Alexander Shaknes
Email: Alex.Shaknes@dlapiper.com
**DLA PIPER US LLP**
1251 Avenue of the Americas
New York, New York 10020

*Attorneys for Defendants Menu Foods, Inc.
and Menu Foods Income Fund*

Lonnie L. Simpson
Email: Lonnie.simpson@dlapiper.com
S. Douglas Knox
Email: Douglas.knox@dlapiper.com
**DLA PIPER US LLP**
101 East Kennedy Boulevard
Suite 2000
Tampa, FL 33602-5149
Telephone: (813) 229-2111
Facsimile: (813) 229-1447

*Attorneys for Defendants Menu Foods, Inc.
and Menu Foods Income Fund*

Omar Ortega
**DORTA AND ORTEGA, P.A.**
Douglas Entrance
800 S. Douglas Road, Suite 149
Coral Gables, FL 33134
Telephone: (305) 461-5454
Facsimile: (305) 461-5226
Email: oortega@dortaandortega.com

*Attorneys for Defendants Mars, Incorporated,
Mars Petcare U.S., Inc. and Nutro Products,
Inc.*

Hugh J. Turner, Jr.
**AKERMAN SENTERFITT**
350 E. Las Olas Boulevard
Suite 1600
Fort Lauderdale, FL 33301-2229
Telephone: (954) 463-2700
Facsimile: (954) 463-2224
Email:     hugh.turner@akerman.com

*Attorneys for Defendant Publix Super Markets,
Inc*

Dane H. Butswinkas
Email: dbutswinkas@wc.com
Philip A. Sechler
Email: psechler@wc.com
Thomas G. Hentoff
Email: thentoff@wc.om
Patrick J. Houlihan
Email: phoulihan@wc.com
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 200005

*Attorneys for Defendants Mars, Incorporated,
Mars Petcare U.S., Inc. and Nutro Products,
Inc.*

Benjamine Reid
Email: breid@carltonfields.com
Olga M. Vieira
Email: ovieira@carltonfields.com
Ana M. Craig
Email: acraig@carltonfields.com
**CARLTON FIELDS, P.A.**
100 S.E. Second Street, Suite 4000
Bank of America Tower at International Place
Miami, FL  33131-9101
Telephone:  (305) 530-0050
Facsimile:  (305) 530-0055

*Attorneys for Defendant Hill's Pet Nutrition, Inc.*

John J. Kuster
Email: jkuster@sidley.com
James D. Arden
Email:  jarden@sidley.com
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

*Attorneys for Defendant Hill's Pet Nutrition, Inc.*

Kara L. McCall
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois  60603
Telephone:  (312) 853-2666
Email:  kmccall@Sidley.com

*Attorneys for Defendant Hill's Pet Nutrition, Inc.*

Sherril M. Colombo
**COZEN O'CONNOR**
Wachovia Center, Suite 4410
200 South Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 704-5945
Facsimile: (305) 704-5955
Email:  scolombo@cozen.com

*Attorneys for Defendant Del Monte Foods, Co.*

Richard Fama
Email:  rfama@cozen.com
John J. McDonough
Email:  jmcdonough@cozen.com
**COZEN O'CONNOR**
45 Broadway
New York, New York  10006
Telephone:  (212) 509-9400
Facsimile:  (212) 509-9492

*Attorneys for Defendant Del Monte Foods*

John F. Mullen
Email:  jmullen@cozen.com
Julie Negovan
Email: jnegovan@cozen.com
**COZEN O'CONNOR**
1900 Market Street
Philadelphia, PA  19103
Telephone:  (215) 665-2000
Facsimile:  (215) 665-2013

*Attorneys for Defendant Del Monte Foods, Co.*

Carol A. Licko
**HOGAN & HARTSON L.L.P.**
Mellon Financial Center
1111 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 459-6500
Facsimile: (305) 459-6550
Email: calicko@hhlaw.com

*Attorneys for Defendant Nestlé Purina Petcare Co.*

Craig A. Hoover
Email: cahoover@hhlaw.com
Miranda L. Berge
Email: mlberge@hhlaw.com
**HOGAN & HARTSON L.L.P.**
555 13TH Street, NW
Washington, D.C. 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910

*Attorneys for Defendant Nestlé Purina Petcare Co.*

Robin L. Hanger
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
200 S. Biscayne Boulevard
40th Floor
Miami, FL 33131-2398
Telephone: (305) 577-7040
Facsimile: (305) 577-7001
Email: rlhanger@ssd.com

*Attorneys for Defendants PETCO Animal Supplies Stores, Inc.*

Robert C. Troyer
**HOGAN & HARTSON L.L.P.**
1200 17th Street
One Tabor Center, suite 1500
Denver, Colorado 80202
Telephone: (303) 899-7300
Facsimile: (303) 899-7333
Email: rctroyer@hhlaw.com

*Attorneys for Defendant Nestlé Purina Petcare Co.*

James K. Reuss
**LANE ALTON & HORST, LLC**
Two Miranova Place
Suite 500
Columbus, Ohio 43215
Telephone: (614) 233-4719
Email: JReuss@lanealton.com

*Attorneys for Defendant The Kroger Co. of Ohio*

Ralph G. Patino
Email: rpatino@patinolaw.com
Dominick V. Tamarazzo
Email: dtamarazzo@patinolaw.com
Carlos B. Salup
Email: csalup@patinolaw.com
**PATINO & ASSOCIATES, P.A.**
225 Alcazar Avenue
Coral Gables, FL 33134
Telephone: (305) 443-6163
Facsimile: (305) 443-5635

*Attorneys for Defendants Pet Supplies "Plus" and Pet Supplies Plus/USA, Inc.*

C. Richard Fulmer, Jr.
**FULMER, LeROY, ALBEE, BAUMANN & GLASS, PLC**
2866 East Oakland Park Boulevard
Fort Lauderdale, FL  33306
Telephone:  (954) 707-4430
Facsimile:  (954) 707-4431
Email:  rfulmer@Fulmer.LeRoy.com

*Attorneys for Defendant The Kroger Co. of Ohio*

W. Randolph Teslik, P.C.
Email:  rteslik@akingump.com
Andrew Dober
Email:  adober@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1333 New Hampshire Avenue, NW
Washington, D.C.  20036
Telephone:  (202) 887-4000
Facsimile:  (202) 887-4288

*Attorneys for Defendants New Albertson's Inc. and Albertson's LLC*

Kristen E. Caverly
Email:  kcaverly@hcesq.com
**HENDERSON & CAVERLY LLP**
P.O. Box 9144
16236 San Dieguito Road, Suite 4-13
Rancho Santa Fe, California  92067-9144

*Attorneys for Defendant Natura Pet Products, Inc.*

Craig P. Kalil
Email:  ckalil@aballi.com
Joshua D. Poyer
Email:  jpoyer@aballi.com
**ABALLI, MILNE, KALIL & ESCAGEDO, P.A.**
2250 Sun Trust International Center
One Southeast Third Avenue
Miami, FL  33131
Telephone:  (305) 373-6600
Facsimile:  (305) 373-7929

*Attorneys for Defendant New Albertson's Inc. and Albertson's LLC*

Jeffrey S. York
Email:  jyork@mcguirewoods.com
Michael M. Giel
Email:  mgiel@mcguirewoods.com
**McGUIRE WOODS LLP**
50 N. Laura Street, Suite 3300
Jacksonville, FL  32202
Telephone:  (904) 798-2680
Facsimile:  (904) 360-6330

*Attorneys for Defendant Natura Pet Products, Inc.*