UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 07-21221 CIV ALTONAGA/Turnoff

RENEE BLASZKOWSKI, *et al.,*
individually and on behalf of
others similarly situated,

    Plaintiffs/Class Representatives,

vs.

MARS INC., *et al.*

    Defendants.

_____/

# MOTION TO STRIKE DEFENDANT MANUFACTURERS' MOTION TO SEQUENCE DOCUMENT PRODUCTION AND TO LIMIT DOCUMENT REQUESTS AND REQUEST FOR ATTORNEYS FEES

Plaintiffs, Renee Blaszkowski, *et al.,* respectfully request this Court to enter an Order Striking Defendant, The Iams Company ("Iams"), Mars, Inc., Mars Petcare US, Inc., Hill's Pet Nutrition, Inc., Del Monte Foods, Co., Nestlé Purina Petcare Co., Nutro Products, Inc. and Natura Pet Products, Inc.'s[1] ("Defendant Manufacturers") Motion to Sequence Document Production and to Limit Document Requests for failure to comply with Federal Rule of Civil Procedure 26 and Southern District of Florida Local Rule 7.1, and to award the Plaintiffs' counsel attorney's fees for having to respond, and as grounds therefor, states as follows:

**I.**    **Issues Before the Court**

Defendants have filed a Motion to Sequence Document Production and to Limit Plaintiffs' Document Requests [DE 382], essentially stating that (1) they are seeking a

---

[1] Defendants Mars, Inc. Mars Petcare US, Inc., Hill's Pet Nutrition, Inc., Del Monte Foods, Co., Nestlé Purina Petcare Co., Nutro Products, Inc. and Natura Pet Products, Inc.'s joined Iams' Motion, which was granted by the Court prior to the time that the Plaintiffs could respond. [DE 388, 390].

**MALTZMAN FOREMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077**

reconsideration of the Court's prior order denying the request made at the April 4, 2008 hearing to bifurcate class and merits discovery (after a stay had prevented the Plaintiffs from going forward with discovery for nearly a year) and (2) that the Defendant Manufacturers are really seeking a Rule 26 protective order to limit discovery without first having advised the Plaintiffs' counsel of the specific grounds for this Motion. [DE 388 fn1].

## II.     The Failure to Confer

1.      At the conclusion of the hearing on the Defendants' Motion to Dismiss, Nestlé's counsel argued, as do the Defendants Manufacturers in the present Motion, that discovery should not be allowed to go forward as to the merits because if class certification is denied, perhaps only Nestlé will be involved in the case.[2] April 4, 2008 Transcript ("Transcript") pp. 89-90. The Plaintiffs' counsel argued that merits and class discovery is inextricably intertwined and that the Court would have to analyze the manner and method of proof for class certification. Transcript p. 90. Moreover, the Court noted bifurcation would inevitably result in numerous disputes as to what constitutes class versus merits discovery. Transcript p. 90. As a fall back position, Nestlé's counsel also actually requested the Court to first allow the Defendants discovery of the Plaintiffs' brand and product purchases prior to allowing the Plaintiffs _any_ discovery whatsoever. Transcript pp. 90-93.

> The Court:  If I don't certify a class here, you still have all of these plaintiffs and all of these defendants with all the same necessary discovery.
> Ms. Licko:  But they will, if it's not a class, they will be limited to these specific products that they really have a claim about because they were injured by – let's say if it's Nestlé's pet food, the other 23 defendant's don't need to be here.[3]

---

[2] The Plaintiffs have filed an extensive product list which clearly demonstrates that all of the Defendant manufactures' products are the subject of the Plaintiffs' claims. [DE 390].

[3] The Defendants ignore the fact that in cases where class actions are denied, under Federal Rule of Civil Procedure 42(a), courts allow the Plaintiffs' claims to be consolidated and the putative class members a sufficient time to be able to join the action. In this case, that would result in the addition of thousands of Plaintiffs. Moreover, the Plaintiffs filed an extensive 25 page list of the products for each Plaintiff, which clearly encompasses pet food advertising by each and every Defendant Manufacturer in the lawsuit. [DE 390]. This argument is thus totally fallacious.

Transcript at pp. 91. This Court *rejected* that argument. The Plaintiffs have not been allowed any discovery for nearly a year while, at the same time, the Defendants have repeatedly argued the merits of the case and that the Plaintiffs have not sufficiently supported their claims with facts that are almost exclusively within the control of the Defendants.

> The Court: *I am not favorably inclined to a bifurcation of discovery.* I do it in other purported class actions where, perhaps, you might have one named representative suing on behalf of a class. But here we have a number of plaintiffs and, as I said, if I don't certify a class, all plaintiffs and all defendants will probably still be before me. It's not a case that would probably go away because I didn't certify a class because it's a sizable enough group that there are a number of claims that will still proceed.
> *So I'm not, and in light of the history of this case, with the way I have tied the plaintiffs' hands in their ability to gather facts and information, I'm not inclined to keep that in place any longer than I have already*.

Transcript p. 93. [DE 346 p. 8].

The Defendants have, at best, only paid lip service to the policy behind Rule 26(c) and Local Rule 7.1(A), requiring the parties to meet and confer prior to burdening this Court with motions such as the one at issue here. The Plaintiffs filed their First, Second and Third Requests for Production relating to class certification and merits issues on April 11, 15 and 17. [DE 383-8, 9 &10]. Each request is relevant to the allegations and claims in the operative complaint. For example, request number 10 in the First Request for Production seeks "[a]ll documents relating to internal investigations, reviews, evaluations or analyses reflecting the accuracy of your marketing and advertising for any of your pet food brands." [DE 383-8 p. 5]. *Such a request could not be more relevant to this case.*

   2.  During the time that the Plaintiffs' lead counsel was out of the office in April, 2008, and had filed a notice of unavailability to all parties regarding same, counsel for Iams sent the undersigned a letter advising that the Plaintiffs had served 376 separate requests for

production on Iams and that *Iams would prefer not to have to provide the Plaintiffs with a specific objection to a "significant" number of the requests*, Iams would like to meet and confer regarding same. Exhibit "A," p. 1. There was, thus, never any intention of providing the Plaintiffs with any *specific* information prior to filing the instant Motion. The letter further advised that Iams would like to "prioritize" the discovery with "particular focus on the parties discovery needs relative to any class certification hearing," i.e., to bifurcate discovery with class discovery preceding the merits discovery based upon what Iams deems is necessary for the parties prior to class certification. Exhibit "A," p. 1. At the same time, the Defendants requested a meet and confer regarding the new scheduling order (Exhibit "B"), and proposed a schedule for taking the Plaintiffs' depositions for every week between May 12 and July 31, 2008.[4] Additionally, on the same day the Plaintiffs served two sets of interrogatories and a request for production seeking extensive documents and information. *See* Composite Exhibit "D" (as exemplar). The bottom line was that the Defendants want to provide the Plaintiffs with what the Defendants deem that the Plaintiffs "need" for class certification while at the same time forging ahead with their own extensive interrogatories, document requests and depositions all occurring contemporaneously without allowing the Plaintiffs *any* opportunity for any meaningful discovery *of what the Plaintiffs believe they need*.

3. Because the undersigned was in the office for only a few days prior to leaving again, which was also set forth on a Notice of unavailability [DE 347], the undersigned spoke with representatives of the Defendant Manufacturers about the 30 depositions[5] and the scheduling order and attempted to commence discussing both the discovery and depositions with

---

[4] Except two weeks that conflicted with the Defendants' schedules. Exhibit "C" p. 1.
[5] Despite the fact that the undersigned advised the Defendants' representatives that the undersigned had numerous conflicts during that time period and needed sufficient time to confer with each Plaintiff and to present a counter proposal, the Defendants immediately noticed the Depositions for the dates of which they had been notified that the Plaintiffs' counsel could not appear.

the Plaintiffs prior to leaving Miami again. Additionally, the undersigned had contracted the flu and was only able to work 12 hours a day on this case and others during that time. As a result, there was no opportunity to meet and confer with the Defendants regarding the Plaintiffs' discovery requests. While the undersigned was unavailable, Iams sent another letter, which the undersigned was unable to read, but the undersigned advised Iams that a meeting could be scheduled upon her return. Exhibit "E" p. 1.

    4.    In the interim the Defendants requested an extension of time to respond to the Plaintiffs' Request for Production with the caveat that "[w]hether or not the Defendants will file motions relative to that production will depend on our ability to work out reasonable compromises on your three sets of document requests…" Exhibit "F." The undersigned responded as follows: "I am not certain that anything that I have requested is a 'monumental' undertaking, although *I always remain open to work things out*. However, I am not willing to grant a thirty day extension of time for the defendants to later file a motion without a single Defendant agreeing to produce at least some documents. *I am happy to compromise, but this appears to be very much a one way street here*. *I would request the Defendants to provide me with a list of documents that they have no objection to providing and a list of the specific document request requests that are [allegedly] problematic so that I will be able to prepare to discuss same with you next week.*" Exhibit "G." Iams responded that "[b]ased on your response[,] *I anticipate that the defendants will be filing a motion*. Nonetheless, I think we should go ahead and meet on the 7th." Exhibit "H."

    5.    The next day, Iams' counsel sent the undersigned a letter with "background" information concerning the Plaintiffs' three requests for production. Exhibit "I." Iams' local counsel advised that the document requests would "paralyze" whole departments and gave as an

example the request "to Iams for all documents sent to any branch of the United States or any state government is enormous in scope. These requests would literally call for every W-2 for every employee, property tax documents for company property, and volumes of additional information with no relevance to the issues in the case." *Id.* p. 2. A reasonable interpretation of that request would lead anyone to understand that the Plaintiffs are not interested in obtaining W-2s and the Defendants clearly must know that. The request was intended to obtain information relating to documents sent to the Federal Drug Administration, the Patent and Trademark Office, the United States Department of Agriculture, state regulatory officials, etc., regarding their pet food products only, *not* employee W-2s.

      6.      The undersigned attended a meeting at the office of Iams' local counsel on the second day after her return to the office. During that meeting, *only* Iams' counsel spoke with the undersigned. Iams' counsel advised that *Iams*' was seeking a thirty (30) day extension of time to produce *some* documents and a written response to the Plaintiffs' three Requests for Production. Exhibit "J." Iams *informed* the Plaintiffs' counsel which documents Iams would produce without a court order. Iams also repeated the above referenced example of an overbroad request encompassing the W-2s *again*, but when questioned about exactly how other requests were allegedly overbroad, Iams counsel conceded that the extent to which they were overbroad *had not yet been determined*. The "meet and confer" was thus hardly any sort of meaningful discourse since the Defendant manufacturers had refused to provide a list of specific document requests that cause them concern, but they were able to be more specific in the Motion now before the Court. Instead, Iams' counsel dictated what would be produced and stated that only the advertising specifically listed in the Fourth Amended Complaint as examples would be produced, notwithstanding the fact that all Defendants were well aware that the advertising in the

pleading were *examples*. Other than a request for the Plaintiffs to identify specific products so that the Defendants would "*consider*" producing advertising relating to the products, there was never any attempt whatsoever to compromise at all. The following is an excerpt from a letter to Iams after the meeting summarizing how quantumly deficient this "meet and confer" was:

> During the meeting / telephone conference … you advised me that you are prepared to provide the following on or before May 30, 2008:
>
> 1.   Identify people with knowledge of the issues in the lawsuit with more detail than required by mandatory disclosure;
>
> 2.   Produce documents that mention or name any of the Plaintiffs listed in the Fourth Amended Complaint;
>
> 3.   Ingredient lists;
>
> 4.   Packaging and marketing materials <u>only for the specific products referenced in the lawsuit</u>;
>
> For example, paragraph 75 refers to Iams original and "Veterinarian Recommended" advertising. These are specific examples that I provided in the pleading and did not list the specific products that each Plaintiff purchased, but rather listed the manufacturers of the products. In fact, more brands were purchased by the Plaintiffs. For example, one plaintiff purchased Iams Kitten food, Original, Senior hairball and weight control and more than one Plaintiff purchased multiple products. As I advised the Defendants during the meeting, if that is the position that you all will be taking, the Plaintiffs do not agree and I would like you to confirm that as soon as possible so that I can file a motion to compel. Please consider our discussion my request to confer about a motion to compel on that issue because I believe that such a position is unreasonable.
>
> You have asked for a list of products prior to giving me your position on whether you will produce the advertising and packaging information without an order compelling same. While I believe that you should be able to advise what position you will take without first seeing a list of products, I will provide you with a list of products purchased by the Plaintiffs and you have agreed to respond with the Defendant Manufacturers' position within 5 calendar days. Please confirm that in writing and I will provide the list.
>
> 5.   "Some" quality control procedures (although the Defendant Manufacturers are not sure what you will produce).

6. Sales histories orders for products via a compendium or through some other sort of document or documents.

7. You will provide a list of co-packers and rendering companies with which you do business.

8. What you will rely on for class certification.

9. Press releases regarding the products at issue.

10. Documents regarding information management retention policies.

11. You will produce documents where the Defendant Manufacturers have been parties in litigation concerning their pet food products.

Note: You plan to limit scope to the class period, which is May 9, 2003 through May 9, 2007.

You have stated that you believe that you can produce the above-referenced documents or information by May 30, 2008. Frankly, based upon our conversation today, *I was not provided with very much information as to why this amount of information will take two months to produce*, i.e., from approximately April 6 through May 30, 2008. It does not appear to be that much information, particularly where the Defendants have requested rather extensive information from the Plaintiffs that is extremely burdensome and time consuming to respond to.

After having considered your proposal and given the *scant amount of information that I have about what will actually be produced*, the only thing that I can say is that the Plaintiffs will agree to allow you until May 30, 2008 to provide the documents discussed, but not solely to provide a list of written objections or a motion to bifurcate discovery or a protective order. The Plaintiffs wish discovery to go forward as expeditiously as possible. The Plaintiffs do not agree to any sort of stages of production relating somehow to merits and class discovery *nor do we think the Defendants are in a position, as you suggested today, to determine what documents the Plaintiffs will "need" for class certification*. The Plaintiffs' interest is not solely in class certification. *Had I known that you would attempt to do an end run on the Court's order that class and merits discovery will go forward simultaneously, I would never have agreed to the deadlines in the recently filed scheduling order*.

I will review whatever documents you produce on May 30, 2008 and *unless there is further discussion about the manner in which the discovery is burdensome, with far more specific detail than I received this morning, I will have no choice but to move to compel whatever documents are lacking from the production if I am not advised when the remaining documents will be produced*. If the above-referenced

    documents are the only documents that you intend to produce, the Plaintiffs would consider the response to be *patently insufficient to move this case along*. *For example, I would think that organizational charts, which I have requested, would be rather easy to obtain*. If however, you consider this a start, I would appreciate receiving a schedule as to when all of the other information will be produced *and for those requests that you feel are overbroad, a list of those and how you propose that they be narrowed*.

[Id. pp. 1-3]. That was the sum total of what was accomplished, which was very little.

    7.    At no time did the undersigned ever agree that "many" of the requests were overbroad, but the undersigned did say what the undersigned has said many times in the past – that the Plaintiffs' counsel remains willing to work with any defendant to discuss specific objections and come to a compromise if requests are truly overbroad and substantiated as such. The fact that the Plaintiffs meet their obligations so as not to unnecessarily burden the Court was demonstrated when the undersigned worked through discovery requests with Defendants Albertsons and Kroger. [DE 293, 314-1 p. 5 (noting that Kroger and the Plaintiffs had come to an agreement as to "many discovery issues"]. In fact, as the Court is well aware, only Defendant Albertson's attempted to work out the discovery dispute prior to seeking a Motion for Protective Order regarding jurisdictional discovery and at that time the Court ordered the Jurisdictional defendants to communicate with the Plaintiffs' counsel about the discovery objections at the December 20, 2007 hearing. [DE 293]. Once that occurred, only a few *specific* topics were ultimately brought before the Court. [DE 314-1 p. 5].

    8.    Sending a few letters and telling opposing counsel what you will do is hardly an attempt to come to an agreement or compromise on anything. It is the Defendant Manufacturers' burden to establish "overly broad" objections with factual support. A meaningful discussion concerning the specific objections should occur prior to filing a Motion with this Court. If not, the Court will continue to be burdened with numerous motions such as this that could have been

avoided if a meaningful dialogue between counsel had occurred in compliance with Rule 26 and Local Rule 7.1(A) and the Plaintiffs litigation costs of responding to these lengthy motions (on short notice) with grounds that were never discussed between counsel prior to filing will spiral out of control. A review of Iams Exhibit "B" [DE 383-3], which fails to include much of the correspondence and e-mails regarding this issue, clearly demonstrates that the specifics mentioned in the memorandum of law and the accompanying declarations for the first time were never discussed between counsel prior to seeking relief from the Court.

9.  The undersigned *never* discussed any other Defendant Manufacturers' objection to any specific discovery request because no manufacturer other than Iams ever sought to contact the Plaintiffs' counsel despite the fact that Iams conceded that each Defendant Manufacturer *maintains documents differently*. [DE 383-7 p. 4 (email from D. Jeffrey Ireland to Plaintiffs' counsel 5/9/08 at 5:03 pm].

### III. The Defendants' Failure to Confer Warrants Striking the Motion, Denying the Relief Requested and Awarding Attorney's Fees to the Plaintiffs

None of these Defendants have ever even attempted to contact the undersigned by letter or by telephone to discuss the *specific* document requests that they believe are overbroad and the reason why they believe they are overbroad as to each specific manufacturer or the shifting the cost of production. At best, Iams' Motion shows that Iams simply told the Plaintiffs' counsel what it was going to produce and then requested the Plaintiffs' counsel to agree or a motion would be filed. The proverbial line in the sand was drawn well before the Plaintiffs' counsel ever met with the Defendants' representatives and there was no intent to have any meaningful discussion about these document requests or the Defendants would have actually attempted to discuss the scope of the requests with which they are allegedly concerned with the Plaintiffs counsel. Local Rule 7.1 A. 3 states that:

> Prior to filing any motion in a civil case … the movant shall confer (orally or in writing), or make *reasonable effort* to confer (orally or in writing), with all parties or non-parties who may be affected by the relief sought in the motion in a *good faith effort to resolve by agreement the issues to be raised in the motion*.

S.D.Fla.L.R. 7.1(A)(3). Iams did not comply with the intent of this Rule because Iams' actions was an "attempt" and nothing more so that it could indicate in a certificate that some sort of effort had been made so that it could file its Motion with the Court. Moreover, noticeably lacking from the remaining Defendant Manufacturers Motion to Adopt / Join is any sort of Rule 7.1(A) certificate declaring that *any* of these Defendants have attempted to contact the undersigned about a single request for production that the Plaintiffs served on them in the first half of April. While representatives of these Defendants attended a conference by telephone on May 7, 2007 during which only counsel for Iams spoke about Iams', no other Defendant Manufacturer has ever discussed a single request for production with the Plaintiffs' counsel. *Zhanjian Go-Harvest Aquatic Products Co., Ltd.,* 2008 U.S. Dist. LEXIS 13878 (S.D. Fla. Feb. 25, 2008) ("…the requirements of the Local Rules *are not optional*…").

Iams Rule 7.1(A)(3) certificate and the correspondence that Iams attaches to its Motion clearly show that Iams *never* discussed the numerous specific issues raised in its Motion and Declarations with the Plaintiffs' Counsel prior to filing. For example, during the meeting, Iams counsel never mentioned that producing customer complaints for a four year period would be problematic. [DE 383-12 p. 3]. The declaration of Marti Hissong references specific requests which were never discussed prior to the filing of the Motion and the same is true for the other Declarations. [DE 383-11 pp. 1-28, 383-13 pp. 1-22]. The specific information in Iams 62 pages of Declarations filed in support of its Motions was never brought up in a *good faith* attempt to confer. The remaining Defendants have not even filed similar tomes of Declarations

and simply state that if it is "helpful" to the Court, they will file such declarations. [DE 388 fn1]. Not only does that fail to meet their burden, it underscores their zeal to bring these issues before the Court rather than comply with Rule 26 and Rule 7.1(A)(3). *See Burkybile v. Mitsubishi Motors Corp.*, 2006 U.S. Dist. LEXIS 57892 (N.D. Ill. Aug 2, 2006)(Defendants must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each discovery request is not relevant of is overly broad, burdensome or oppressive). In *Myers v. Goldco*, Inc., 2008 U.S. Dist. LEXIS 37089, **5-6 (N.D. Fla. 2008), the court explained that the "[p]laintiff also objected that the interrogatory was 'overly broad,' but in what way? It is comprehensive, but more is needed to understand the 'overly broad' objection here. '[I]ntoning the "overly broad and burdensome" litany, without more, does not express a valid objection.' (quoting *Mead Corporation v. Riverwood Natural Resources Corporation, 145 F.R.D. 512, 515 (D. Minn. 1992).* This is because it is obligation of the party opposing discovery to show that the request is overly broad and burdensome, and must to do through the use of factual support. *See* Fed. R. Civ. P. 33(b)(4); *Weber v. Finker*, 2008 U.S. Dist. LEXIS 31067, **15-16 (M.D. Fla. 2008); *Border Collie Rescue, Inc. v. Ryan,* 2005 U.S. Dist. LEXIS 5983, 2005 WL 662724 *2 (M.D. Fla. 2005); *First City Dev., Inc. v. Hallmark of Hollywood Condominium Asso.*, 545 So. 2d 502, 503 (Fla. 4th DCA 1989); *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, *4 (S.D. Fla. 2007). Iams and the remaining Defendants which have joined in Iams' Motion have refused to comply with the intent of Rule 7.1 (A)(3) and the Rule 26(c) requirement to confer in good faith. Courts have denied Motions where parties have similarly made inadequate attempts to confer just so that a certificate can state that some sort of effort was made. *See e.g., Schertz v. United Sch. Dist., No. 512,* 1996 U.S. Dist LEXIS 17413 ** 2-3 (D. Kan. Nov. 15, 1996).

As a result of the Defendants' failure or refusal to confer in good faith and to make a reasonable effort to resolve this dispute and because that failure or refusal has caused the Plaintiffs' counsel to expend time and effort on an expedited basis to respond to matters that very likely could have been resolved had the Defendants attempted to make a bona fide effort to confer, the Plaintiffs request this Court to assess the fees and costs of filing this motion and any associated costs with defending Iams' and the Defendant Manufacturers' Motion. Rule 7.1(A)(3) provides that:

> *Failure to comply with the requirements of this Local Rule may be cause for the Court to grant or deny the motion and impose upon counsel an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee*.

This pattern of a facial attempt to comply with Rule 7.1(A)(3) and Rule 26 was strikingly similar to the completely inadequate attempts of the Jursidictional Defendants who also filed protective orders after little to no effort to confer. Should this pattern and practice continue unchecked, the Defendants scorched earth litigation tactics and apparent goal of making this litigation cost prohibitive for the Plaintiffs will succeed. That is contary to the policy of the Federal Rules of Civil Procedure and the Local Rules of this Court.

WHEREFORE, Plaintiffs, Renee Blaszkowski, *et al.,* respectfully request this Court to enter an Order denying the Motion to Sequence Document Production and to Limit the Plaintiffs' Document Requests for failure to comply with Rule 26(c) and Local Rule 7.1(A)(3) and to award attorneys fees and costs to the Plaintiffs for having to respond to the Defendants voluminous

Motion on short notice, all other attorney's fees and costs associated with having to defend the

Motion and for all other relief that this Court deems just and proper.

Dated: May 22, 2008
      Miami, FL

                                    /s Catherine J. MacIvor
                                    CATHERINE J. MACIVOR (FBN 932711)
                                    cmacivor@mflegal.com
                                    One Biscayne Tower
                                    2 South Biscayne Boulevard -Suite 2300
                                    Miami, Florida 33131
                                    Tel: 305-358-6555 / Fax: 305-374-9077
                                    *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of the Court via CM/ECF on May 22, 2008. We also certify that the foregoing was served on all counsel or parties of record on the attached Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

/s Catherine J. MacIvor
Catherine MacIvor

## SERVICE LIST

## CASE NO. 07-21221 ALTONAGA/Brown

**CATHERINE J. MACIVOR**
cmacivor@mflegal.com
**JEFFREY B. MALTZMAN**
jmaltzman@mflegal.com
**JEFFREY E. FOREMAN**
jforeman@mflegal.com
**DARREN W. FRIEDMAN**
dfriedman@mflegal.com
**MALTZMAN FOREMAN, PA**
One Biscayne Tower
2 South Biscayne Boulevard -Suite 2300
Miami, Florida 33131
Tel: 305-358-6555 / Fax: 305-374-9077

*Attorneys for Plaintiffs*

**ROLANDO ANDRES DIAZ**
E-Mail: rd@kubickdraper.com
**MARIA KAYANAN**
E-Mail**:** mek@kubickidraper.com
**KUBICKI DRAPER**
25 W. Flagler Street
Penthouse
Miami, Florida 33130-1712
Telephone: (305) 982-6708
Facsimile:  (305) 374-7846

*Attorneys for Defendant Pet Supermarket, Inc.*

**JOHN B.T. MURRAY, JR.**
E-Mail**: jbmurray@ssd.com**
**ROBIN L. HANGER**
E-Mail: rlhanger@ssd.com
**SQUIRE, SANDERS & DEMPSEY LLP**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, Florida 33401-6198
Telephone: (561) 650-7200
Facsimile:  (561) 655-1509

*Attorneys for Defendants PETCO Animal Supplies Stores Inc., PetSmart, Inc., Wal-Mart Stores, Inc. and Target Corporation*

**ALEXANDER SHAKNES**
E-Mail: Alex.Shaknes@dlapiper.com
**AMY W. SCHULMAN**
E-Mail: Amy.schulman@dlapiper.com
**LONNIE L. SIMPSON**
E-Mail: Lonnie.Simpson@dlapiper.com
**S. DOUGLAS KNOX**
E-Mail: Douglas.knox@dlapiper.com
**DLA PIPER RUDNICK GRAY CARY US LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4829

*Attorneys for Defendants Menu Foods, Inc. and Menu Foods Income Fund*

**WILLIAM C. MARTIN**
E-Mail: william.martin@dlapiper.com
**DLA PIPER RUDNICK GRAY CARY US LLP**
203 North LaSalle Street
Suite 1900
Chicago, Illinois 60601-1293

*Attorneys for Defendants Menu Foods, Inc. and Menu Foods Income Fund*

**JEFFREY S. YORK**
E-Mail: jyork@mcguirewoods.com
**MICHAEL GIEL**
E-Mail: mgiel@mcguirewoods.com
**McGUIRE WOODS LLP**
50 N. Laura Street, Suite 3300
Jacksonville, FL 32202
Telephone: (904) 798-2680
Facsimile: (904) 360-6330

*Attorneys for Defendant Natura Pet Products, Inc.*

**OMAR ORTEGA**
Email: ortegalaw@bellsouth.net
**DORTA & ORTEGA, P.A.**
Douglas Entrance
800 S. Douglas Road, Suite 149
Coral Gables, Florida 33134
Telephone: (305) 461-5454
Facsimile:   (305) 461-5226

*Attorneys for Defendant Mars, Inc. and Mars Petcare U.S. and Nutro Products, Inc.*

**HUGH J. TURNER, JR.**
E-Mail: hugh.turner@akerman.com
**AKERMAN SENTERFITT & EDISON**
350 E. Las Olas Boulevard
Suite 1600
Fort Lauderdale, Florida 33301-2229
Telephone: (954)463-2700
Facsimile:   (954)463-2224

*Attorneys for Defendant Publix Super Markets, Inc.*

**KRISTEN E. CAVERLY**
E-Mail: kcaverly@hcesq.com
**TONY F. FARMANI**
tfarmani@hcesq.com
**HENDERSON & CAVERLY LLP**
16236 San Dieguito Road, Suite 4-13
P.O. Box 9144 (all US Mail)
Rancho Santa Fe, CA 92067-9144
Telephone:  858-756-6342 x)101
Facsimile:   858-756-4732

*Attorneys for Natura Pet Products, Inc.*

**DANE H. BUTSWINKAS**
E-Mail: dbutswinkas@wc.com
**PHILIP A. SECHLER**
E-Mail: psechler@wc.com
**THOMAS G. HENTOFF**
E-Mail: thentoff@wc.com
**PATRICK J. HOULIHAN**
E-Mail: phoulihan@wc.com
**AMY R. DAVIS**
adavis@wc.com
**JULI ANN LUND**
jlund@wc.com
**WILLIAMS & CONNOLLY LLP**
725 12th Street, N.W.
Washington, DC  20005
Telephone: (202)434-5000

*Attorneys for Defendants Nutro Products, Inc. Mars, Incorporated and Mars Petcare U.S.*

**BENJAMIN REID**
E-Mail: bried@carltonfields.com
**ANA CRAIG**
E-Mail: acraig@carltonfields.com
**CARLTON FIELDS, P.A.**
100 S.E. Second Street, Suite 4000
Miami, Florida 33131-0050
Telephone: (305)530-0050
Facsimile: (305) 530-0050

*Attorneys for Defendants Hill's Pet Nutrition, Inc.*

**KARA L. McCALL**
kmccall@sidley.com
**SIDLEY AUSTIN LLP**
One S. Dearborn Street
Chicago, ILL 60633
Telephone: (312) 853-2666

*Attorneys for Defendants Hill's Pet Nutrition, Inc.*

**SHERRIL M. COLOMBO**
E-Mail: scolombo@cozen.com
**COZEN O'CONNOR**
200 South Biscayne Boulevard
Suite 4410
Miami, Florida 33131
Telephone: (305) 704-5945
Facsimile: (305) 704-5955

*Attorneys for Defendant Del Monte Foods Co.*

**JOHN J. KUSTER**
jkuster@sidley.com
**JAMES D. ARDEN**
jarden@sidley.com
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, New York 10019-6018
Telephone: (212) 839-5300

*Attorneys for Defendants Hill's Pet Nutrition, Inc.*

**RICHARD FAMA**
E-Mail: rfama@cozen.com
**JOHN J. McDONOUGH**
E-Mail: jmcdonough@cozen.com
**COZEN O'CONNOR**
45 Broadway
New York, New York 10006
Telephone: (212) 509-9400
Facsimile:   (212) 509-9492

*Attorneys for Defendant Del Monte Foods*

**C. RICHARD FULMER, JR.**
E-Mail: rfulmer@Fulmer.LeRoy.com
**FULMER, LEROY, ALBEE, BAUMANN, & GLASS**
2866 East Oakland Park Boulevard
Fort Lauderdale, Florida 33306
Telephone: (954) 707-4430
Facsimile:  (954) 707-4431

*Attorneys for Defendant The Kroger Co. of Ohio*

| | |
|---|---|
| **JOHN F. MULLEN**<br>E-Mail: jmullen@cozen.com<br>**COZEN O'CONNOR**<br>1900 Market Street<br>Philadelphia, PA 19103<br>Telephone: (215) 665-2179<br>Facsimile:  (215) 665-2013<br><br>*Attorneys for Defendant Del Monte Foods, Co.* | **CAROL A. LICKO**<br>E-Mail: calicko@hhlaw.com<br>**HOGAN & HARTSON**<br>Mellon Financial Center<br>1111 Brickell Avenue, Suite 1900<br>Miami, Florida 33131<br>Telephone (305) 459-6500<br>Facsimile  (305) 459-6550<br><br>*Attorneys for Defendants Nestle Purina Petcare Co.* |
| **ROBERT C. TROYER**<br>E-Mail: rctroyer@hhlaw.com<br>**HOGAN & HARTSON**<br>1200 17th Street<br>One Tabor Center, Suite 1500<br>Denver, Colorado 80202<br>Telephone: (303) 899-7300<br>Facsimile:   (303) 899-7333<br><br>*Attorneys for Defendants Nestle Purina Petcare Co.* | **CRAIG A. HOOVER**<br>E-Mail: cahoover@hhlaw.com<br>**MIRANDA L. BERGE**<br>E-Mail: mlberge@hhlaw.com<br>**HOGAN & HARTSON L.L.P.**<br>555 13th Street, N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 637-5600<br>Facsimile: (202) 637-5910<br><br>*Attorneys for Defendants Nestle Purina Petcare Co.* |
| **JAMES K. REUSS**<br>E-Mail: jreuss@lanealton.com<br>**LANE ALTON & HORST**<br>Two Miranova Place<br>Suite 500<br>Columbus, Ohio 43215<br>Telephone: (614) 233-4719<br><br>*Attorneys for Defendant The Kroger Co. of Ohio* | **ALAN G. GREER**<br>agreer@richmangreer.com<br>**RICHMAN GREER WEIL BRUMBAUGH MIRABITO & CHRISTENSEN**<br>201 South Biscayne Boulevard<br>Suite 1000<br>Miami, Florida 33131<br>Telephone: (305) 373-4000<br>Facsimile:  (305) 373-4099<br><br>*Attorneys for Defendants The Iams Co.* |

**D. JEFFREY IRELAND**
E-Mail: djireland@ficlaw.com
**BRIAN D. WRIGHT**
E-Mail: bwright@ficlaw.com
**LAURA A. SANOM**
E-Mail: lsanom@ficlaw.com
**FARUKI IRELAND & COX**
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, Ohio 45402

*Attorneys for Defendant The Iams Co.*

**RALPH G. PATINO**
E-Mail: rpatino@patinolaw.com
**DOMINICK V. TAMARAZZO**
E-Mail: dtamarazzo@patinolaw.com
**CARLOS B. SALUP**
E-Mail: csalup@patinolaw.com
**PATINO & ASSOCIATES, P.A.**
225 Alcazar Avenue
Coral Gables, Florida 33134
Telephone: (305) 443-6163
Facsimile:  (305) 443-5635

*Attorneys for Defendants Pet Supplies "Plus" and Pet Supplies Plus/USA, Inc.*

**CRAIG P. KALIL**
E-Mail: ckalil@aballi.com
**JOSHUA D. POYER**
E-Mail: jpoyer@abailli.com
**ABALLI MILNE KALIL & ESCAGEDO**
2250 Sun Trust International Center
One S.E. Third Avenue
Miami, Florida 33131
Telephone:  (303) 373-6600
Facsimile:   (305) 373-7929

*Attorneys for New Albertson's Inc. and Albertson's LLC*

**W. RANDOLPH TESLIK**
E-Mail: rteslik@akingump.com
**ANDREW J. DOBER**
E-Mail: adober@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1333 New Hampshire Avenue, NW
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile:   (202) 887-4288

*Attorneys for Defendants New Albertson's Inc. and Albertson's LLC*