**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

**CASE NO. 07-21221 CIV ALTONAGA/Brown**

**RENEE BLASZKOWSKI,** *et al.,*
**individually and on behalf of**
**others similarly situated,**

**Plaintiffs/Class Representatives,**

**vs.**

**MARS INC.,** *et al.*

**Defendants.**

**PLAINTIFF'S CORRECTED**
**MOTION FOR CLASS CERTIFICATION**
**AND MEMORANDUM OF LAW IN SUPPORT THEREOF**
**(Correcting only scrivener's errors)**

Catherine J. MacIvor (FBN 932711)
cmacivor@mflegal.com
Jeffrey B. Maltzman (FBN 0048860)
jmaltzman@mflegal.com
Jeffrey E. Foreman (FBN 0240310)
jforeman@mflegal.com
MALTZMAN FOREMAN, PA
One Biscayne Tower
2 South Biscayne Boulevard, Suite 2300
Miami, Florida 33131
Tel: 305-358-6555 / Fax: 305-374-9077

Patrick N. Keegan
pkeegan@keeganbaker.com
Jason E Baker
jbaker@keeganbaker.com
KEEGAN & BAKER, LLP
4370 La Jolla Village Drive
Suite 640
San Diego, CA 92122
Tel: 858-552-6750 / Fax 858-552-6749
*Attorneys for Plaintiff/Class Representative*

# TABLE OF CONTENTS

Page No.

I.     Natura's Deceptive And Unfair Trade Practices ....................................................1

A.     Natura Delivers A Consistent Marketing Message Across The USA Including In Florida Aimed At Doubling Its Sale ...........................................2

B.     Natura Began Losing Market Share to Competitors Who Claim Their Product Were Human-Grade ..................................................................3

C.     Natura's Deceptive and Unfair Trade Practices ....................................3

D.     Natura's Deceptive and Unfair Representation Were Categorically False ..................................................................................................4

E.     Natura Finally Abandoned the False Claims in the Wake of This Lawsuit .................................................................................................6

F.     Florida Pet Owners Are the Victims of Natura's Misleading Statements Aimed at Doubling Its Sales ..............................................7

II.     Significant Policy Interests Favor Class Certification in FDUPTA Case ..................................................................................................8

III.     The Plaintiff and the Proposed Class Satisfy the Requirements ..................9

A.     This Court Hal Already Ruled That Patricia Davis Has Article III Standing .............................................................................................10

B.     The Class Definition ..........................................................................11

C.     The Requirements of Rule 23(a) Are Satisfied ...................................12

1.     The Proposed Class Is So Numerous That Joinder of All Members Is Impracticable ..............................................................................12

2.     The Plaintiff's Claim Presents Questions of Law and Fact That Are Common To The Class ................................................................13

3.     The Plaintiff's Claims Are Typical Of Those Presented By The Class ............................................................................................14

4.     The Plaintiff and Her Counsel Will Fairly and Adequately Represent The Interests Of the Class ................................................15

CASE NO. 07-21221 ALTONAGA/Brown

MALTZMAN FOREMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077

# TABLE OF CONTENTS
### (*Continuation*)

Page No.

D.    **The Plaintiff and the Proposed Class Satisfy Rule 23(b)(3)'s Predominance and Superiority Requirements**................................................**17**

1.    **Questions of Law and Fact Common to The Class Predominate Over Any Individualized Issue**.........................................................**17**

2.    **A Class Action Is Superior to Other Available Methods For The Fair and Efficient Adjudication of This Case**....................................**18**

3.    **Other Consideration Under Rule 23(b)(3) Favor Class Treatment For This Action**.........................................................................**19**

IV.    **Conclusion**.........................................................................................**20**

V.    **Certificate of Service**......................................................................**22**

CASE NO. 07-21221 ALTONAGA/Brown
**MALTZMAN FOREMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077**

The Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.201, was enacted to afford the greatest possible protection to consumers from unscrupulous businesses that take advantage of and deceive these consumers.[1]  As a remedial statute, FDUTPA must be liberally construed to promote and achieve those goals.[2]  Plaintiff Patricia Davis,[3] seeks this Court's aid in remedying the Defendant's, Natura Pet Products, Inc.'s ("Natura"), long history of violating the Statute in Florida by claiming that its pet food products are something that they are not just so that Natura can reach a greater market share in its $100,000,000 a year business.[4]   She does so not only for herself, but for all other cat and dog owners in Florida who fed Natura products to their pets.  These consumers were exposed to identical representations on Natura's website and at the point of purchase, which Natura used consistently throughout the Class Period in violation of FDUTPA.  The Plaintiffs' position on class certification is supported by the allegations in the Fourth Amended Complaint ("FAC"), record evidence, and case law squarely on point.  Absent class treatment, Natura pet food consumers will have no meaningful ability to cease Natura's deceptive advertising practices and obtain relief from these continuing violations.

## I.      Natura's Deceptive and Unfair Trade Practices

This case arises out of Natura's repeated violation of FDUTPA, by false representations and omissions at point of purchase and on the Internet that relate primarily to the human grade quality of its pet food, which include: (1) contains ingredients that consumers would eat

---

[1] *See, Delgado v. J.W. Courtesy Pontiac GMG-Truck, Inc.*, 693 So.2d 602, 605 (Fla. 2d DCA 1997)(FDUTPA was to be "'construed liberally to promote'" the policy "to protect consumers from suppliers who commit deceptive and unfair trade practices.").

[2] *Id.* at 605; *See, also Cummings v. Warren Henry Motors, Inc.*, 648 So.2d 1230, 1233 (Fla. 4th DCA 1995)("The Florida Legislature intended chapter 501 to be construed liberally."); *Hanson Hams, Inc. v. HBH Franchise Co., LLC*, 2003 U.S. Dist. LEXIS 27134 [*5] (S.D. Fla. 2003)("… in considering whether a defendant's actions support finding of 'unfair and deceptive,' courts have regarded the concept as 'extremely broad.'")(citations omitted); *Int'l Brokerage & Surplus Lines, Inc. v. Liberty Mut. Ins. Co.*, 2007 U.S. Dist. LEXIS 5847 [*26] (M.D. Fla. 2007)("In enacting the FDUTPA, the Florida Legislature made clear that the statute should be 'construed liberally' to protect 'legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.'"); *Advanced Prot. Tech., Inc. v. Square D Co.*, 390 F.Supp.2d 1155, 1164 (M.D. Fla. 2005)(courts have found that FDUTPA's amendment replacing the word "consumer" with "person" "demonstrates a clear legislative intent to allow a broader base of complainants who have been injured by violations of FDUTPA to seek damages.").

[3] Only Patricia Davis, a Florida resident, seeks certification in this case individually and on behalf of Florida consumers.  The remainder of the Plaintiffs in this case will be pursuing individual claims.

[4] Defendant Natura's counsel acknowledged to Plaintiffs' counsel, Jeffrey Maltzman, that Natura did approximately $100 Million per year in sales. [DE 551-2 ¶9].  Natura's corporate representative testified to more precise figures, but counsel for Natura has deemed these portions of the deposition as confidential and thus specific figures are not cited herein.

themselves; (2) that these human-grade products are carefully cooked and tested; (3) that Natura uses only the highest quality human-grade pet food ingredients in dog and cat food; and (4) that Natura products contain only human grade ingredients. These representations, including the claim that the ingredients were human grade were posted on the website during the Class Period at issue up to 2007.[5] Although Natura discontinued use of the human grade claim in 2007, it nevertheless maintained that its pet food contained only ingredients that "you would eat yourself" until a few weeks ago. These claims are categorically false and were made at point of purchase and on Natura's website during the Class Period to increase Natura's market share of pet food sales with full knowledge that most pet food consumers would not have used Natura pet food had they known the ingredients and quality were not what Natura marketed them to be. The marketing representations on its website and repeated at point of purchase imply that the pet food is fit for human consumption, which is contrary to the USDA's definition of food "fit for human consumption" and are therefore, by definition, not "human grade." However, that has not deterred Natura from continuing to maintain that its products are human grade.

Natura in fact increased its market share during the Class Period by doubling its sales by making these deceptive representations and omissions to consumers. Natura is well aware that market studies show that pet owners want to feed their cats and dogs human grade and tested food in order to keep them healthy, well, and safe. The average pet food consumer is particularly vulnerable to deceptive claims such as these since they have no means of knowing the actual contents and quality of Natura's pet food, including that it is not human grade. Pet food consumers do not understand that pet food is made from the refuse of the human food chain industry, which is only discoverable through substantial research. Notwithstanding their marketing claims to the contrary, Natura's pet food it not what it claims to be.

A.    **Natura Delivers a Consistent Marketing Message Across the USA Including In Florida Aimed at Doubling Its Sales**

Natura is a large pet food supplier that sells approximately $100 million per year in pet food nationwide, including in Florida. [DE 551-2, ¶ 10; DE 549-2 70:3-13].[6] At approximately the same time as the class period began, Natura set the ambitious goals of increasing sales by at

---

[5] [DE 549-2 202:7-10, 215:5-216:10].
[6] Natura's corporate representative was both the company president, Peter Atkins, and also one of the owners of Defendant Natura (as well as an owner of the related Natura entity which actually manufacturers the food items marketed and sold by Defendant Natura).

MALTZMAN FOREMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077

least 25% each year and ultimately doubling its total sales in the lucrative pet food industry within a three year period. [DE 551-2 ¶10 Ex. "A"]. Despite hiring Brighton to help devise marketing materials, Natura admits that it ultimately made the final decisions regarding how its products were marketed and packaged. [DE 549-2 97:1-98:16]. According to Natura's President and part owner, the company's primary method of marketing its products to consumers nationwide, including in Florida, is its website. [DE 549-2 48:16-20]. Natura also uses sales representatives who Natura trains to communicate a consistent principal marketing message to consumers. [DE 549-2 72:1-8, 82:9-23, 84:23-85:8, 86:4-13, 87:6-12]. Natura works to ensure that a "consistent" marketing message is delivered to consumers nationwide, including Florida pet owners. [DE 549-2 90:4-15, 130:18-131:17, 139:3-7].

**B.** **Natura Began Losing Market Share to Competitors Who Claimed Their Product Were Human-Grade**

During the relevant Class Period, one of Natura's competitors began claiming in their marketing that their competing food was human-grade. This interfered with Natura's goal of doubling its sales in three years because this 'human-grade' claim was highly successful in attracting consumers to Natura's competitors which resulted in Natura's competitors gaining market share and taking business from Natura.

> A. (By Mr. Atkins) The only reason we started using [claims about Natura food being human-grade] in the first place was again as a competitive response because our competitors were getting market share and taking business from us because they were boasting that their products were human grade….

[DE 549-2 196:14-19]. It is thus undisputed that Natura was motivated to increase its market share by competing with this competitor by making the same claims.

**C.** **Natura's Deceptive and Unfair Trade Practices**

To fulfill their goal of doubling sales within three years, Natura began representing to consumers, including Florida pet owners, that Natura pet foods (1) contains ingredients that consumers would eat themselves; (2) that these human-grade products are carefully cooked and tested; (3) that Natura uses only the highest quality human-grade pet food ingredients in dog and cat food; and (4) that Natura products contain only human grade ingredients. [DE 549-2 150:1-17; *see infra*]. In keeping with this theme to attract customers through false and misleading statements, Natura's President has admitted that, during the Class Period, Natura marketed its

CASE NO. 07-21221 ALTONAGA/Brown
MALTZMAN FOREMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077

pet food as being fit for human consumption and that consumers could reasonably make the conclusion based on Natura's marketing that their pet food was fit for human consumption:

> Q. (By Mr. Nield)     I didn't mean to infer that you said it was – that the food was for human consumption, just that it was fit for human consumption, that it could be consumed by human beings.
> A.     Correct.  You could make that parallel, correct.
>
>              *                              *                              *
>
> Q.     In making the representation that "we use only ingredients you'd eat yourself," you are again inferring that the ingredients utilized are ingredients that would be fit for human consumption, correct?
> A.     Yes.
> Q.     And is that Natura's position, that all of the ingredients it utilizes in its pet food products are fit for human consumption?
> A.     Yes.

[DE 549-2 151:17-23, 152:9-18].

Similarly in Natura's marketing brochures, which are distributed at retail outlets nationwide, Natura states in the section titled "Our Nutritional Philosophy" that Natura uses "only ingredients which I feel comfortable eating myself (referring to company president Atkins)."  [DE 549-2 183:7-184:19]   These messages – that Natura's products are "human-grade" and "these products are products I would feel comfortable eating myself" – were intended to be part of the uniform and consistent message Natura delivered to pet owners nationwide during the Class Period.  [DE 549-2 185:4-9, 186:17-23].

> Q. (By Mr. Nield) And Natura considers its pet food products super premium brands, correct?
> A. (By Mr. Atkins) Yes.
> Q. Okay.  The first couple of lines there say *"First, the quality of ingredients that Natura Pet Food Products uses are rarely duplicated in pet foods.  We use the same sources of our raw ingredients that are used by many grocery stores, and all ingredients selected could have been used for human consumption."*  This is information being provided to salespeople presumably to provide it to either individuals working at retailers or consumers themselves, correct?
> A.     Correct.

[DE 549-2 190:4-18].   Natura contends these marketing statements apply to all ingredients, including the rendered ingredients, used in their pet food products.  [DE 549-2 191:14-20].  Natura continued making these deceptive marketing claims throughout the Class Period. [DE 549-2 195:7-10].

**D.     Natura's Deceptive and Unfair Representations Were Categorically False**

**MALTZMAN FOREMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077**

During the Class Period, while Natura's prime advertising message represented that Natura pet foods (1) contain ingredients that consumers would eat themselves; (2) that these human-grade products are carefully cooked and tested; (3) that Natura uses only the highest quality human-grade pet food ingredients in dog and cat food; and (4) that Natura products contain only human grade ingredients," Natura used substantial amounts of rendered ingredients in its pet food products.  [DE 549-2 153:3-6].  Rendered ingredients are not human-grade and likewise rendered products are not found in human grocery stores or on restaurant menus. Natura's president admits "rendering is basically taking any ingredient and modifying its form into one of its parts or something like that." [DE 549-2 152:23-153:2].  For example, Natura uses rendered chicken meal in its products.  Natura has admitted *"chicken meal is basically the meat and some bone and cartilage material taken from the chicken.  It's generally of backs and necks that come to the processing plant.  The quality meat that on those products are taken from the bone that didn't make it to the grocery store or to Colonel Sanders."*  [DE 549-2 154:3-11]. When questioned regarding that parts of a chicken were contained in the chicken meal Natura used in its pet foods, Natura's president acknowledged *"when chickens are processed, to the best of my knowledge, there's quite a bit of meat left over when the breasts are removed or thighs, et cetera, are removed from the bone.  It's that meat that's left over, including some of the bone, some of the cartilage material, that's included in chicken meal.  I think that's a very high quality source of protein."* [DE 549-2 180:6-13].  The rendered product that Natura uses in its pet foods is not produced by Natura but rather is purchased from other entities, including foreign suppliers. [DE 549-2 154:16-22, 265:19-22].  U.S. Department of Agriculture regulations permit poultry rendering facilities to use "dead, dying, disabled or diseased poultry or carcasses" in rendered chicken meal.

Natura defends its deceptive marketing and advertising by claiming that "human-grade" ingredients is not a defined term and is "a matter of opinion."  [DE 549-2 170:21-25]. Nonetheless, even Natura admits the term should mean *"something that would be clean, pure, free from contaminants.  Something that would not be out of the realm of something that we would ordinarily eat."*  [DE 549-2 171:3-6].

> Q.  (By Mr. Nield) Is it your opinion and therefore the corporate entity's position that all of the ingredients in Innova Senior Dry Dog Food are human-grade ingredients?
> A.  (By Mr. Atkins) Again, based on the – my opinion of the definition of the term 'human grade', the answer is yes.

5

MALTZMAN FOREMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077

[DE 549-2 175:2-8]. Natura makes similar claims for all its products. Despite these claims, during discovery, Natura admitted (but never revealed to consumers, including Florida pet owners), that the ingredients used in Natura's pet foods were by definition **not** fit for human consumption. [DE 549-2 176:8-18]. In other words, in its effort to double its market share over a short three year period and while, throughout the Class Period, Natura marketed and represented to Florida consumers that that Natura pet foods (1) contain ingredients that consumers would eat themselves; (2) that these human-grade products are carefully cooked and tested; (3) that Natura uses only the highest quality human-grade pet food ingredients in dog and cat food; and (4) that Natura products contain only human grade ingredients, the truth was that Natura's pet foods utilized domestic and foreign rendered ingredients and were admittedly not fit for human consumption and used parts of animals that were left over after the parts of these animals usually consumed by humans were sent to grocery stores or to Colonel Sanders. [DE 549-2 154:3-11].

In fact, Natura contends that toward the end of the Class Period, AAFCO promulgated a model rule prohibiting the use of the term "human grade" in pet food marketing. [DE 549-2 177:9-24]. The Plaintiff believes that ultimately even AAFCO, a captive agent of the pet food industry, recognized that the term 'human-grade' in pet food marketing was admittedly misleading and deceptive to consumers. Ultimately, Natura's deceptive marketing claims were highly successful and, according to boasts on Brighton marketing's website, resulted in "higher sales, sooner than expected." [DE 551-2 ¶10 Ex. "A"].

**E.     Natura Finally Abandoned the False Claims in the Wake of This Lawsuit**

Natura used these deceptive and unfair marketing claims regarding its food ingredients being human-grade throughout most or all of the Class Period and stopped making these claims only in late 2006 or early 2007 – coincidently at approximately the same time the instant lawsuit was filed. [DE 549-2 195:7-19]. The company made claims that its food was "made from ingredients you'd eat yourself" throughout the Class Period and only abandoned this marketing claim two or three weeks before Natura's president and corporate representative was deposed in this matter earlier this month. [DE 549-2 208:14-209:5]. Natura's President and corporate representative admitted they ceased using the marketing claim "made from ingredients you'd eat yourself" due to what they had learned from this lawsuit as well as in the interests of *"trying to*

*be as open and honest as we can with our customers."* [DE 549-2 209:11-18]. In sum, Natura used deceptive and unfair marketing claims about its food to attract Florida pet owners to use its products. According to their own marketing agent, this practice resulted in Natura achieving its goal of doubling sales within a short three year period and achieving the result "higher sales, sooner than expected." [DE 551-2 ¶10 Ex. "A"]. This is precisely the type of unfair trade practice that FDUTPA was intended to redress.

## F.    Florida Pet Owners Are the Victims of Natura's Misleading Statements Aimed at Doubling Its Sales

Natura deceived Patricia Davis and other Florida consumers about the quality, ingredients, and content of their pet food products and omitted advising them of the true contents and quality of its products. Patricia Davis obtained Innova Senior[7] from Ocala Breeders & Supply for Arnold, her Jack Russell Terrier. [DE 548-2 34:19-35:1]. Based upon Natura's marketing, she thought, like so many other consumers, that Natura pet food might help improve her dog's health and make him stronger. [DE 548-2 95:7-10; 202:12-23]. While she was familiar with Natura pet food products, the first time that she considered buying a Natura product was when she read Natura's in-store advertisement and obtained samples at Ocala Breeder & Supply. [DE 548-2 50:21-51:19].[8] The point of purchase marketing claimed that there was nothing in the pet food that you would not eat yourself because it was human grade quality food.[9] [DE 548-2 51:16-21]. Natura's marketing representations led her to believe it was human quality food, which she thought would be vetted through human food suppliers and inspected under human quality standards. [DE 548-2 51:16-52:2].

Natura's point of purchase marketing was a pre-printed glossy-type sign on the shelf that compared Natura pet products to human food. [DE 548-2 52:7-19]. She reviewed the list of ingredients and nutritional analysis prior to feeding it to Arnold; the sales lady encouraged her to take the sample. [DE 548-2 57:6-21, 63:10-19, 164:16-21]. Her overall impression was if Natura offers pet food that they would eat, then it had to be "good stuff." [DE 548-2 53:2-5]. The reference to "human grade" or "people can eat the food" was on the sign. [DE 548-2 211:3-18]. Patricia Davis also reviewed the website that had the same representations and conducted other

---

[7] Ms. Davis used Innova Senior but may have tried other Natura brands too. [DE 548-2 61:10-62:17].
[8] Natura distributes free samples of its product to consumers as method of marketing and provides free samples to their distributors in proportion to previous sales in that distributor's region. [DE 549-2 62:14-63:1].
[9] According to Ms. Davis, "human grade" means that" it is inspected by the same people and bought from the same suppliers as you would feed to yourself or your kids and that people can eat it. [DE 548-2 89:14-19, 210:16-20].

CASE NO. 07-21221 ALTONAGA/Brown
**MALTZMAN FOREMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077**

research on pet food blogs. [DE 548-2 62:25-63:9]. She was unhappy to learn that the Innova Senior products with chicken meal contains rendered product, since she would never intentionally feed "bad parts of the chicken" to her dog.[10] [DE 548-2 154:6-11].

## II. Significant Policy Interests Favor Class Certification in FDUTPA Cases

Florida Courts have long recognized the indispensable role that a FDUTPA action plays in protecting consumers.[11] The United States Supreme Court has noted that class actions serve an important function in our civil justice system by allowing plaintiffs to "vindicate the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost."[12]

Courts have consistently ruled on the usefulness and efficacy of class actions in consumer fraud cases. For instance, the New Jersey Supreme Court has ruled that

> a consequence of certification of a class action is the equalization of the ability of the parties to prepare and pay for the advocacy of their rights. Furthermore, certification can aid the efficient administration of justice by avoiding the expense, in both time and money, of relitigating similar claims. . . . [C]lass action should be viewed not only as a procedural device that enables plaintiffs with small claims to band together against a common adversary, but also as a means of providing a procedure that is fair to all parties and promotes judicial efficiency. The relevant considerations include, therefore, not only the interests of class members and other parties but also the effect of class certification on efficient judicial management.[13]

---

[10] *Echevarria v. Cole*, 950 So.2d 380 (Fla. 2007) (granting class certification in a FDUTPA and FCCPA lawsuit filed by certain defaulting mortgagors against the firm that was handling the foreclosure proceedings in a case where the defendant-firm had charged the mortgagors a title search fee in excess of the actual cost incurred by the firm); *Latman*, 758 So.2d 699 (granting class certification of a FDUTPA claim where plaintiff-passengers alleged that defendant cruise line deceptively retained for itself a portion of certain "port charges" paid by the plaintiffs); *Davis v. Powertel, Inc.*, 776 So.2d 971 (Fla. 1st DCA 2000) (granting class certification in a case where cell phone purchasers filed a FDUTPA claim against a wireless communication company for failing to disclose that the phones that it sold had been programmed to work exclusively on the wireless company's network); *See also supra* at footnotes 1-2.

[11] *See, S.D.S. Autos, Inc. v. Chrzanowski*, 976 So.2d 600, 610 (Fla. 1st DCA 2007)(finding that FDUTPA's private enforcement scheme cannot effectively deter statutory violations if consumers are prevented from seeking relief as a class; "In enacting FDUTPA, the Legislature was necessarily aware of class actions' role in deterring future FDUTPA violations by effectively redressing past violations…."); *Davis v. Eddy*, 776 So.2d 971, 975 (Fla. 1st DCA 2000)(reversing order dismissing plaintiffs' class action because FDUTPA was "designed to protect not only the rights of litigants, but also the rights of the consuming public at large.")(citations omitted); *Latman v. Costa Cruise Lines*, 758 So.2d 699, 702, 704 (Fla. 3d DCA 2000)(reversing trial court's order denying class certification because Florida had a substantial interest in preventing deceptive and unfair trade practices).

[12] *Deposit Guaranty Nat'l Bank v Roper,* 445 U.S. 326, 338 (1980); *see also Gulf Oil v. Bernard*, 452 U.S. 89, 99-100 n.11 (1981) ("Rule 23 expresses a policy in favor of having litigation in which common interests, or common questions of law or fact prevail disposed of, where feasible, in a single lawsuit.").

[13] *In re Cadillac V8-6-4 Class Action*, 93 N.J. 412, 435 (N.J. 1983). *See In re Simon II Litig.*, 2002 U.S. Dist. LEXIS 25632, *174 (E.D.N.Y. Oct. 22, 2002) ("State legislatures, courts, and commentators have recognized that tools for aggregation are especially helpful in the context of consumer fraud, when the relatively low value of specific claims or the litigation advantages of a well-financed defendant can discourage individuals from pressing

8

Other courts have made such rulings in false advertising cases brought under state deceptive trade practices acts. In *Aspinall v. Phillip Morris Co., Inc.*, the Massachusetts Supreme Court affirmed class certification for all purchasers of Marlboro Lights in Massachusetts during the four year class period.[14] In that case, the defendants made representations that Marlboro Lights would deliver "lower tar and nicotine" because the defendants labeled their cigarettes as such to establish in the individual and collective consumer consciousness the concept that Marlboro Lights are healthier to smoke than regular cigarettes to increase the defendants' market share of cigarette sales with full knowledge that most Marlboro Lights smokers would not receive the promised benefits of "lowered tar and nicotine."[15] The court ruled that no individual proof was necessary to show that each consumer (1) relied on the false promise to obtain the cigarettes or (2) individual physical harm because "[n]either an individual's smoking habits nor his or her subjective motivation in purchasing Marlboro Lights bears on the issue [of] whether the advertising was deceptive."[16] The Court ruled that "a class action is not only an appropriate method to resolve the plaintiffs' allegations, but, pragmatically, the only method" for consumers to seek redress from such deception. This case is no different.

III.    The Plaintiff and the Proposed Class Satisfy the Requirements of Rule 23

This record establishes that all four elements for class certification under Federal Rule of Civil Procedure 23(a) and 23(b)(3) have been met. Rule 23(a) contains four prerequisites for class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. The Plaintiff must also demonstrate the Rule 23(b)(3) requirements of "predominance" and "superiority" as well.[17] In making its class certification decision, the Court need not, and should not, resolve the merits of the claims or defenses raised in the pleadings. As the Supreme Court has held, there is nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether

---

their claims in court."); *In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83 (D. Mass. 2008); *Walsh v. National Safety Assocs.*, 241 Conn. 278 (Conn. 1997); *Village Auto Ins. Co., Inc. v. Rush*, 649 S.E.2d 862 (Ga. Ct. App. 2007); *Mooney v. Allianz Life Ins. Co. of N. Am.*, 2008 U.S. Dist. LEXIS 57324 (D. Minn. 2008); *Jordan v. Commonwealth Financial Systems, Inc.*, 237 F.R.D. 132, 140 (E.D. Pa. 2006).

[14] 813 N.E.2d 476, 487 (Mass. 2004).

[15] *Id.*

[16] *Id.*

[17] *O'Neill v. Home Depot, Inc.*, 243 F.R.D. 469, 476 (S.D. Fla. 2006).

9

it may be maintained as a class action.  Indeed, such a procedure contravenes the Rule itself.[18]
The key inquiry "is not whether Class Representatives have stated a cause of action, or will
prevail on the merits, but rather whether the requirements of Rule 23(a) are met."[19]  As the
*Manual for Complex Litigation* expressly notes, "[t]he determination whether the prerequisites of
Rules 23(a) and (b) are satisfied can generally be made on the pleadings and declarations, with
relatively little need for discovery."[20]  Although the Plaintiff has the burden of showing that the
requirements of Rule 23 have been satisfied, "the court is instructed to resolve any doubt in favor
of class certification."[21]  Rule 23 should thus be given a liberal rather than a restrictive
interpretation. "[I]f there is to be an error made, let it be in favor and not against the maintenance
of the class action."[22]  Because the prerequisites of Rule 23(a) and (b)(3) are satisfied in this
case, the Plaintiff respectfully requests the Court to certify this case as a class action.

## A.      This Court Has Already Ruled That Patricia Davis has Article III Standing

As a threshold matter, the court must determine whether a Plaintiff moving to certify a
class has Article III standing.  Courts have repeatedly ruled that FDUTPA is intended "to protect
not only the rights of litigants, but also the rights of the consuming public at large.[23]  In *Gritzke*,
the court rejected the defendant's argument that a Plaintiff lacked standing because she had not
purchased a product because FDUTPA only requires that "anyone" be aggrieved by a violation
of the Statute.[24]  The FDUTPA Statute is broadly worded to authorize declaratory and injunctive
relief even if those remedies might not benefit the consumers who filed the suit.[25]  Further, any

---

[18] *See, e.g., Eisen v. Carlisle & Jaqueline*, 417 U.S. 156, 177-78 (1974).  *See also Kirkpatrick v. J.C. Bradord & Co.*, 827 F.2d 718 (11th Cir. 1987); *Fifth Moorings Condominiums, Inc. v. Shere*, 81 F.R.D. 712 (S.D. Fla. 1979); *Medine v. Washington Mutual, FA*, 185 F.R.D. 366 (S.D. Fla. 1998); *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 326 (S.D. Fla. 1996); *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 147 (S.D.N.Y. 2002).  The Eleventh Circuit has noted that the court may make a "preliminary assessment" of the plaintiff's evidence, but only to address the standards of Rule 23.  *See Cooper v. Southern Co.*, 390 F. 3d 695, 712-13 (11th Cir. 2004).

[19] *Miller v. Mackey Int'l's, Inc.*, 452 F.2d 424, 427 (5th Cir. 1971).

[20] MANUAL FOR COMPLEX LITIGATION, 3d § 7:03, at 7:03, at 7-15 (3d ed 1992) (explaining that "most courts have reached initial class determinations without the aid of additional information enlisted by the parties through pretrial discovery").

[21] *Neumont v. Monroe County, Florida*, 198 F.R.D. 554, 557 (S.D. Fla. 2000) (citing *In re Carbon Dioxide Antitrust litig*, 149 F.R.D. 229, 232 (M.D. Fla. 1993)).

[22] *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968).  *See also CV Reit, Inc. v. Levy*, 114 F.R.D. 690, 695 (S.D. Fla. 1992); *Joseph v. General Motors, Corp*, 109 F.R.D. 635 (D. Colo. 1986) (any doubts should be resolved in favor of class certification).

[23] *Gritzke v. M.R.A Holding*, LLC¸ 2002 U.S. Dist. LEXIS 28085, *11-13 (N.D. Fla. Mar. 14, 2002); *Davis v. Powertel, Inc.*, 776 So.2d 971, 975 (Fla. 1st DCA 2000); *Sarkis v. Pattord Oil Co., Inc.* 697 So.2d 524, 528 (Fla. 1st DCA 1997); *Delgado v. S.W. Courtesy Pontiac GMC Truck, Inc.* 693 So.2d 602, 606 (Fla. 2d DCA 1997).

[24] *Gritzke*, 2002 U.S. Dist. LEXIS 28085 at *13.

[25] *Davis*, 776 So. 2d at 975; *Holtz v. O'Brien Imports of Ft. Myers, Inc.* 862 So. 2d 87, 89 (Fla. 2d DCA 2003)

attempt to limit FDUTPA is contrary to public policy. Recognizing this legal precedent, in ruling on the Plaintiffs' Motion to Substitute another consumer who purchased Natura Pet Food, this Court already determined that it was unnecessary to add a purchaser for Natura products. [DE 505 pp. 9-10] ("… Davis is a proper Plaintiff in this case and Cortazzo unnecessary."). Accordingly, there can be no question of the Plaintiff's Article III standing since she obtained and used Natura pet food during the Class Period that Natura falsely marketed as set forth above.

## B.     The Class Definition

A class must be identifiable and clearly defined so as to be "ascertainable without prolonged and individualized analytical struggle."[26] Here, Patricia Davis is seeking certification under Count III of the FAC for FDUTPA violations on behalf of a class defined as follows:

> All consumers and purchasers who obtained and used any Natura pet food product in the state of Florida (the "Class") since May 9, 2003 through November 7, 2008 (the "Class Period"). Excluded from the Class are Natura, its parents, subsidiaries and affiliates, directors and officers, wholesalers, distributors, retailers, employees and agents. Also excluded from the Class are the Court, the Court's spouse, all persons within the third degree of relationship to the Court and its spouse, and the spouse of all such persons.

Based upon this definition, the Class is identifiable and thus ascertainable. Further, this FDUTPA case rests upon identical advertising that was disseminated in fifty states, including Florida, so that Natura's marketing is consistent. Moreover, as set forth above, in a FDUTPA case such as this, the Plaintiff does not need to demonstrate a purchase or more than one incident of deception.[27] In addition, there is no individual reliance element because courts have ruled that

---

(citing *Rollins v. Heller*, 454 So. 2d 580 (Fla. 3d DCA 1984).

[26] *Gibbs Properties Corp. v. Cigna Corp.*, 196 F.R.D. 430, 442 (M.D. Fla. 2000); *Home Depot*, 243 F.R.D. at 476.

[27] *See Niles Audio Corp. v. OEM Sys. Co.*, 174 F. Supp. 2d 1315, 1319-20 (S.D. Fla. 2001) (finding that plaintiff, despite never purchasing a product of the defendant, may bring a FDUTPA claim against defendant, a competitor of the plaintiff, because the defendant promoted and sold a product similar to the plaintiff's); *Gritzke,* 2002 U.S. Dist. LEXIS 2808 at **11-13 (finding that plaintiff, despite never purchasing a product of the defendant, may bring a FDUTPA claim based on defendant's unauthorized use of plaintiff's photograph); *James D. Hinson Elec. Contr. Co. v. Bellsouth Telcoms., Inc.*, 2008 U.S. Dist. LEXIS 9464, **8-9 (M.D. Fla. Feb. 8, 2008) (denying motion to dismiss because plaintiff, despite never purchasing a product of the defendant, may bring a FDUTPA cause of action based upon the defendant marking up a reimbursement bill); *Furmanite America, Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1145-46 (M.D. Fla. 2007) (FDUTPA claim may be based on misappropriation of trade secrets and confidential information, despite the plaintiff having never purchased a product of the defendants); *True Title, Inc. v. Blanchard*, 2006 U.S. Dist. LEXIS 95069, **7-12 (M.D. Fla. Feb. 5, 2006) (finding that plaintiff company, despite never purchasing a product of the defendant, could bring a FDUTPA claim against defendants who had taken plaintiff's information in order to start a new company to compete with the plaintiff); *PNR, Inc. v. Beacon Prop. Mgmnt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003).

the Plaintiff need not even have personally observed the deceptive advertising.[28] Rather, the deceptive and unfair practice is based upon an objective standard of whether a reasonable pet food consumer under the circumstances would likely be misled by Natura's representations and omissions, which does not require individualized proof.[29] A FDUTPA claim requires proof of causation, but this element is established through expert testimony and market surveys as to the determination of the deceptive nature of the advertising itself and whether the nature of the representations caused the reasonable pet consumer to purchase the pet food that they would not otherwise have purchased had the representations not been made.[30] Thus, establishing that the advertising is false and deceptive does not require individualized proof. Furthermore, members of the class can and will be identified through Natura's records and the class notice.

## C. The Requirements of Rule 23(a) Are Satisfied

## 1. The Proposed Class Is So Numerous That Joinder of All Members Is Impracticable

Class certification is appropriate in cases where, as here, the class is so numerous that joinder of all class members is impracticable.[31] "'Impracticable'" is not synonymous with 'impossible,' and the Plaintiffs 'need only show that it would be extremely difficult or inconvenient to join all members of the class.'"[32] Precise enumeration of the numbers of class

---

[28] *See Inter-Tel, Inc. v. West Coast Aircraft, Eng'g, Inc.*, U.S. Dist LEXIS 83451, **26-27 (M.D. Fla. 2006) ("When addressing a deceptive or unfair trade practice claim, the issue is not whether the plaintiff actually relied on the alleged practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances.") (citations omitted); *Gold Coast Racing, Inc. v. Home Depot U.S.A., Inc.*, 2006 U.S. Dist. LEXIS 96386, *5 (S.D. Fla. Feb. 3, 2006) ("a party asserting a deceptive trade practice claim [under FDUTPA] need not show actual reliance on the representation or omission at issue") (citations omitted).

[29] *Pelican Ventures LLC v. Azimut S.p.A.*, 2004 U.S. Dist. LEXIS 26764, 36-37 (S.D. Fla. July 28, 2004) ("The Act is intended to cover deceptive practices for the protection of consumers utilizing an objective standard to judge the conduct of the alleged violator. The conduct of the consumer is irrelevant, and actual reliance need not be proved."); *Gold Coast Racing, Inc.*, 2006 U.S. Dist. LEXIS 96386 at **4-5 ("When addressing a deceptive or unfair trade practice claim, the issue is not whether the plaintiff actually relied on the alleged practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances."); *Lady of Am. Franchise Corp. v. Arcese*, 2006 U.S. Dist. LEXIS 68415, 29-30 (S.D. Fla. May 25, 2006) ("FDUTPA does not require subjective evidence of reliance. Rather, determining whether a practice is deceptive requires an objective determination of whether that practice is 'likely to mislead' a reasonable consumer.") (internal citations omitted); *Davis*, 776 So. 2d at 974 ("The objective test ['likely to mislead consumers'] adopted by the Federal Trade Commission and the federal courts applies, as well, in a suit in state court under the Florida Deceptive and Unfair Trade Practices Act.") (citations omitted).

[30] *See Aspinall supra.*; *Group Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753 (8th Cir. 2003); *Certified Question United States Dist. Court Order v. Phillip Morris*, 621 N.W. 2d 2 (Minn. 2001).

[31] Fed.R.Civ.P 23(a)(1) "Impracticable" does not mean impossible, only the difficulty or inconvenience of joining all members of the class. *See D.W. v. Poundstone*, 165 F.R.D. 661 (M.D. Ala. 1996); *Bradley v. Harrelson*, 151 F.R.D. 422 (M.D. Ala. 1993); *Fifth Moorings Condominiums, Inc. v. Shere*, 81 F.R.D. 712 (S.D. Fla. 1979); 1 NEWBERG ON CLASS ACTIONS 3d § 3.04 (1992).

[32] *In re Miller Indus. Sec. Litig.*, 186 F.R.D. 680, 684 (N.D. Ga. 1999) (citation omitted); *accord, e.g., Walco Inv., Inc. v. Theren*, 168 F.R.D. 315, 234 (S.D. Fla. 1996).

CASE NO. 07-21221 ALTONAGA/Brown
**MALTZMAN FOREMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077**

members is unnecessary[33] because the Plaintiff "must establish that joinder is impracticable through 'some evidence or reasonable estimate of the number of purported class members.'"[34] Though there is no definite standard as to the size a given class must attain in order to satisfy Rule 23(a)(1), generally fewer than 21 is inadequate and more than 40 adequate.[35]

In this case, the Plaintiff asserts that numerosity is met since, as alleged in the FAC, "Manufacturing, producing, marketing, selling, and distributing pet food and treats is a $16,000,000,000 a year industry in the United States alone. [DE 349 ¶61]. The majority of the 163,000,000 companion cats and dogs in the United States are fed commercial pet food and derive all of whatever nutritional content they can obtain from the Defendants' commercial pet food." [DE 349 ¶61]. As a result, the Plaintiff estimates that Florida's market share of all such pet food product sales is $960,000,000, or 6% of total U.S. sales. Given that it is estimated that all Natura pet food products sold by its Florida distributors during the Class Period will greatly exceed the 40 individuals that courts have been found adequate by the courts, joinder of all of the consumers and purchasers of Natura pet food products is impracticable.

## 2.     Questions of Law And Fact That Are Common To The Class

Rule 23(a)(2) requires that there be either questions of law or fact common to the Class. The threshold of commonality is "not high"[36] and the rule does not require that all Class Members have the exact same legal claims[37] or that _all_ questions of law or fact be common.[38] In fact, Rule 23(a)(2) merely "requires that there is _at least one issue_ affecting all or a significant number of proposed class members."[39] Hence, the focus is on whether the representative's claims arise from the same course of conduct that gives rise to the class' claims and whether the claims are based on the same legal theory.[40] Here, the Plaintiff is suing based upon violations of FDUTPA. Questions of law and fact common to the Class primarily include:

---

[33] *Fifth Moorings Condominium,* 81 F.R.D. at 716; *In re Carbon Dioxide Antitrust Litig.,* 149 F.R.D. at 232.
[34] *Anderson v. Bank of the South, N.A.,* 118 F.R.D. 136, 145 (M.D. Fla. 1987) (quoting *Zeidman v. J. Ray McDermott & Co.,* 651 F. 2d 1030, 1038 (5th Cir. July 1981)).
[35] *Cos v. American Cast Iron Pipe Co.,* 784 F. 2d 1546, 1553 (11th Cir. 1986).
[36] *Campos v. Immigration and Naturalization Service,* 188 F.R.D. 656, 659 (S.D. Fla 1999) (citing *Forbrush v. J.C. Penney Co., Inc.* 994 F.2d 1101, 1106 (5th Cir. 1993)).
[37] *Kreuzfeld A.G. v. Carnehammar,* 138 F.R.D. 594, 599 (S.D. Fla. 1991).
[38] *See Singer v. AT&T Corp.,* 185 F.R.D. 681, 687 (S.D. Fla. 1998); *Walco Investments,* 168 F.R.D. at 325; *Haitian Refugee Center, Inc. v. Nelson,* 694 F. Supp. 864, 877 (S.D. Fla. 1988); *Fifth Moorings,* 81 F.R.D. at 717.
[39] *Walco Investments,* 168 F.R.D. at 325 (emphasis added).
[40] *See Kreuzfeld,* 138 F.R.D. at 599 (citing *Stewart v. Winter,* 669 F.2d 328 (5th Cir. 1982)("the issue turns on whether there exists at least one issue affecting all or a significant number of proposed class members").

- We only use ingredients that you would eat yourself[41]
- All of our human grade dog and cat foods are carefully cooked and tested[42]
- Because we use only the highest quality human-grade pet food ingredients in our dog and cat food[43]
- Use only ingredients which [you] feel comfortable eating yourself[44]
- Natura's products use only human grade ingredients.[45]

Common questions of law and fact are at the heart of this litigation and derive from a common course of conduct on the part of Natura and present the identical issue of whether Natura made misrepresentations and omissions in its marketing concerning the content, quality and testing of the ingredients in its pet food. The Eleventh Circuit and other courts have recognized that where allegations of wrongdoing arise from a common practice or course of conduct in relation to the class members, the class members' claims will clearly involve common questions of law and fact.[46] For that reason, in the materially identical case of *Aspinall* the court held that similar class issues were not merely common; those common issues predominated over individual ones. Common questions face the entire Class in this case, Rule 23(a)(2) is therefore satisfied.

**3.       The Plaintiffs Claims Are Typical Of Those Presented By the Class**

This case also satisfies Rule 23(a)(3), which requires that the Plaintiffs' claims be typical of the claims of other members of the Class. "The central inquiry in determining whether a proposed class [has satisfied] the 'typicality' [requirement] is whether the 'class representative [is] part of the class and 'possess[es] the same interest and suffer[s] the same injury' as the class members."[47] Typicality is satisfied where, as here, the Plaintiff's claim "stem[s] from the same event, practice, or course of conduct that forms the basis of the class claims and are based upon the same legal or remedial theory."[48] In determining typicality, the court is to "focus on whether the named representative's claims have the same essential characteristics as the claims of the

---

[41] [DE 349 ¶83, Ex. 10; DE 549-2 149:6-150:17, 151:17-152:14].

[42] *See generally* [DE 549-2 151:17-152:15, 172:6-20, 195:7-10].

[43] [DE 549-2 150:6-17].

[44] [DE 549-2 179:17-20, 149:6-150:17, 208:5-22, 208:19-209:18].

[45] [DE 549-2 152:9-18, 174:25-175:8, 195:7-10].

[46] *Id.*; *See also Griffin*, 458 U.S. 564, 570 (1982); *Montero v. Sociedad Maritima San Nicolas, S.A.* 280 F. 2d 548, 572-73 (2d Cir. 1960); *Bolanos v. Norwegian Cruise Lines, Ltd.*, 2002 WL 1465907, [*9] (S.D. N.Y. July 9, 2002).

[47] *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 672 (S.D. Fla. 1997) (quoting *East Texas Motor Freight Sys v. Rodriguez*, 431 U.S. 395, 403 (1977)) (alterations in original).

[48] *Walco Investments*, 168 F.R.D. at 326. *See also CV Reit*, 144 F.R.D. at 697 (typicality is satisfied where the interests of the named parties arise from the same course of conduct that gave rise to the claims of the class they seek to represent and are based upon the same legal theories).

14

class at large."[49] Further, the mere presence of factual distinctions will not defeat typicality.[50] As a result, the Plaintiff's claim need only be typical, not identical. Therefore, typicality is satisfied where the interests of the named parties arise from the same course of conduct that gave rise to the claims of the class they seek to represent, and are based on the same legal or remedial theory; furthermore, typicality will not be destroyed by factual variations.[51]

The Plaintiff's claim is typical of those of the Class because it arises from the same deceptive and unfair practices giving rise to the claims of the absent Class Members and because Patricia Davis seeks the same relief. Likewise, the Plaintiff and the absent Class Members have been the victims of Natura's pattern and practice of falsely marketing its pet food products to increase its profits. Any differences in the manner and method of when the advertising was viewed does not defeat typicality because neither FDUTPA nor Rule 23(a)(3) require that the named plaintiff share the identical circumstances.[52] Hence, the claim pursued by the Plaintiff is aligned with the interests of absent Class members to ensure that the Plaintiff, as class representative, will prosecute the universal claims of the Class with diligence and care. Since the Plaintiff seeks to prove that Natura committed the same unlawful acts in the same method against an entire class with the identical advertising representations, all members of this Class have identical claims[53] and the typicality requirement is correspondingly satisfied.

**4.      The Plaintiff and Her Counsel Will Adequately Represent The Class Interests**

Under Rule 23(a)(4), the Plaintiff must demonstrate that (1) "the plaintiff's attorney is qualified, experienced and will competently and vigorously prosecute the suit"; and (2) "that the interest of the class representative is not antagonistic to or in conflict with the other members of the class."[54] Both prongs of the adequacy test are easily satisfied.

---

[49] *Campos,* 188 F.R.D. at 661 (quoting *Appleyard v. Wallace*, 754 F. 2d 955, 958 (11th Cir. 1985)). *See also Green v. Mansour,* 474 U.S. 64 (1958); *Kornberg v. Princess Cruises Cruise Lines, Inc.,* 741 F. 2d 1332, 1337 (11th Cir. 1984); *Kennedy v. Tallant,* 710 F. 2d 711, 717 (11th Cir. 1983); *Eisenberg v. Gagnon,* 766 F. 2d 770, 786 (3rd Cir. 1985) ("typicality entails an inquiry whether 'the named plaintiff's individual circumstances are markedly different or…the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'") (quoting *Weiss v. York Hospital*, 745 F.2d 786, 809 n.36 (3d Cir. 1984), *cert. denied*, 470 U.S. 1060, 105 S. Ct. 1777, 84 L. Ed. 2d 836 (1985)) (alteration in original).
[50] *Pottinger v. City of Miami*, 720 F. Supp. 955, 959 (S.D. Fla. 1998).
[51] *See Kornberg* 741 F. 2d at 1337.
[52] *Tennie v. City of New York Dep't of Soc Servs,* 1987 WL 6156, *3 (S.D.N.Y. Jan. 30, 1987). *See also Carpenter v. Austin State University*, 706 F.2d 608, 617 (5th Cir. 1983) (custodial workers may represent clerical workers in discrimination class action).
[53] *Kennedy,* 710 F. 2d at 717; *Accord Kirkpatrick*, 827 F. 2d at 725.
[54] *Powers v. Government Emples Ins. Co.*, 192 F.R.D. 313, 317 (S.D. Fla. 1998) (citing *Griffin v. Carlin,* 755 F. 2d 1516, 1533 (11th Cir. 1985)).

While it is not necessary for a Plaintiff to "demonstrate to any particular degree that individually they will pursue with vigor the legal claims of the class[,]"[55] Patricia Davis is clearly prepared to pursue her claims to the fullest extent possible. She will protect and advance the interests of the Class as her interests are consistent with and not antagonistic to those of the Class. In addition, although the Class Representative Plaintiff is aware of the nature of the claims being asserted against Natura, she does not need to fully comprehend or have personal knowledge of the detailed factual allegations set forth in the pleadings and the complex legal issues to be addressed in this proceeding because courts do not require the representative plaintiffs to be the "best of all possible plaintiffs or to be especially knowledgeable, intelligent, or possessing a detailed understanding of the legal or factual basis on which a class action can be maintained."[56] Absent any conflict between the interests of the representatives and other class members and absent any indication that the representative will not aggressively conduct the litigation, fair and adequate protection of the class may be assumed.[57] There can be no showing that the Plaintiff has any interest in conflict with the Class or that her claims will not be actively pursued. The Plaintiff has a limited degree of knowledge concerning the issues in this case, which is fully understandable and cannot render her inadequate.[58] Further, the Class Representative Plaintiff is committed to playing an active role in this litigation, which is demonstrated by her responding to extensive discovery as well as subjecting herself to flying to Washington, D.C. for her deposition in order to pursue the claims for both herself and the Class. [DE 548-2]. Accordingly, everything overwhelmingly indicates that Patricia Davis will fairly and adequately represent the best interests of the Class.

The second prong of the adequacy element focuses on the capabilities of plaintiffs' counsel to vigorously prosecute the class claims and is likewise satisfied. "[T]he single most important factor considered by the courts in determining the quality of the representative's ability and willingness to advocate the cause of the class has been the caliber of the plaintiff's attorney."[59] "In reaching a determination concerning vigorous prosecution of the action on behalf of the class, courts consider the competence and experience of class counsel, attributes

---

[55] *Kirpatrick,* 827 F. 2d at 727.
[56] *Surowitz v. Hilton Hotels Corp,* 383 U.S. 363, 366 (1966); *see also Kaplan v. Pomerantz,* 131 F.R.D. 118, 121 (N.D. Ill. 1990) ("[A] layman cannot be expected to explain in detail all of the intricacies of a complex lawsuit.").
[57] *See Guarantee Ins. Agency Co. v. Mic-Continental Realty Corp,* 57 F.R.D. 555, 565 (N.D. Ill. 1973).
[58] *See Walco Investments,* 168 F.R.D. at 327-28 (noting the lack of knowledge by named plaintiffs is understandable given complexity of case); *Powers,* 192 F.R.D. at 317-18.
[59] 1 NEWBERG ON CLASS ACTIONS 3d (1992) § 3-24 at 3-133 n.353.

CASE NO. 07-21221 ALTONAGA/Brown
**MALTZMAN FOREMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077**

which will most often be presumed in the absence of proof to the contrary."[60] Here, the Plaintiff's counsel are knowledgeable and possess extensive experience in complex class litigation, including false advertising, consumer fraud, maritime and admiralty, and labor and employment class actions. [DE 547-2, 551-2, 552-2]. The efforts of the Plaintiff's counsel to date show that they are committed to the vigorous prosecution of this action and possess the skills necessary for such efforts.

**D.      Rule 23(b)(3)'s Predominance and Superiority Requirements Are Satisfied**

Rule 23(b)(3) mandates that questions of law or fact common to the members of the class predominate over questions affecting only individual members, and that a class action be superior to other available methods for the fair and efficient adjudication of this controversy. These common issues need only predominate; they need not be dispositive of the entire litigation.[61] "Common issues of fact and law predominate if they 'have a direct impact on every class member's effort to establish liability and on every class member's entitlement to monetary and injunctive relief.'"[62] As demonstrated below, there can be no doubt that both of those requirements are met here.

**1.      Questions Of Law And Fact Common To The Class Predominate Over Any Individualized Issue**

Under Eleventh Circuit jurisprudence, where a complaint alleges that the defendants have engaged in a course of conduct common to the class so that substantial issues are subject to generalized evidence, the issues of law and fact which flow from that common course of conduct predominate, thus rendering class treatment appropriate.[63] In determining whether common questions of law and fact predominate, a court's inquiry is directed primarily towards whether liability issues are common to all members of the class.[64] It is not necessary that all questions

---

[60] *Id.* at 3-134.

[61] *Klay v. Humana, Inc.*, 382 F. 3d 1241, 1254 (11th Cir. 2004).

[62] *Id.* at 1255 (quoting *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 699 (N.D. Ga. 2001)).

[63] *See id* at 1255-56 (approving class certification in a RICO conspiracy case by doctors against HMOs involving a common course of conduct in using medical necessity requirements, claims processing and other practices to decrease reimbursements); *Allapattah Servs v. Exxon Corp,* 333 F. 3d 1248, 1260-61 (11th Cir. 2003) (approving class treatment in a breach of contract action involving similar contracts and a common course of conduct in reducing wholesale prices); *Kirkpatrick,* 827 F. 2d at 725 (approving class treatment in a securities misrepresentation claim involving a single fraudulent scheme.) On the other hand, the Eleventh Circuit has distinguished cases involving circumstance-specific issues of intent or reliance, such as discrimination or fraud claims, which are generally inappropriate for class treatment due to individualized issues. *See Klay* 382 F. 3d at 1256-58. That is not the situation here, given that the FDUTPA claim requires neither.

[64]*In re: Alexander Grant & Co. Litig.,* 110 F.R.D. 528, 534 (S.D. Fla. 1986).

17

are common and that they predominate over individual questions.[65]   Furthermore, courts have continually recognized that common issues of law and fact will generally predominate in actions alleging that false and deceptive representations and omissions were broadly disseminated.[66]

As explained above, Natura's liability to all members of the proposed class turns upon whether Natura made false and deceptive statements in website and point of purchase advertising issued or made available by Natura during the Class Period.   Accordingly, since the FDUTPA standard is an objective one and causation is demonstrated as to the reasonable consumer through expert testimony, and not individually, liability issues that are shared by all Class Members predominate over any individual issues that may be presented by Class Members' claims.[67]   In *Aspinall*, for example, the court ruled that whether conduct is deceptive is initially a question of fact to be answered based on an _objective_ basis.[68]

**2.    A Class Action Is Superior to Other Available Methods For The Fair And Efficient Adjudication Of This Case**

Rule 23(b)(3) also requires the Plaintiff to demonstrate that a "class action is superior to other methods to resolve the claims.  This "superiority" requirement presumes the availability of other available methods for the fair and efficient adjudication of the controversy."[69]   That is rare in cases such as this, where small, individual claims render an individual action impractical so that "most of the plaintiffs would have no realistic day in court if a class action were not available."[70]   There is no requirement to show individual reliance, intent to deceive or even knowledge by the Plaintiff that the representation is false. The marketing may consist of a half truth or may even be "true as a literal matter, but still create an over-all misleading impression" either overtly or by omission.[71]   Under the FTC Act, marketing has been deemed deceptive when it has the capacity to mislead the reasonable consumer acting reasonably under the circumstances

---

[65] *In re Miller Indus. Sec. Litig.*, 186 F.R.D. 680, 688 (N.D. Ga. 1999).
[66] *Id.* at 688 (a finding that predominance requirement was not satisfied in securities federal action involving misrepresentations in documents widely distributed to investors "would be consistent with the overwhelming majority of published decisions"); *Anchem Prod., Inc. v. Windsor,* 521 U.S. 591, 624 (1997) ("Predominance is a test readily met in certain cases alleging consumer or securities fraud.")
[67] See e.g., *Miller Indus.,* 186 F.R.D. at 688 (predominance requirement was satisfied where all class members' securities fraud claims related to the same misrepresentations and omissions).
[68] *Aspinall, supra* at 486-87.
[69] *See Simon v. Westinghouse Elect Corp.* 73 F.R.D. 480, 487 (E.D. Pa. 1977).
[70] *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809; *see Deposit Guarantee Nat's Bank,* 445 U.S. 326 (When it is economically infeasible for claimants to file individual damage suits, aggrieved persons may be without effective relief unless the class action device is available).
[71] *Id.*

CASE NO. 07-21221 ALTONAGA/Brown
**MALTZMAN FOREMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077**

to act differently from the way that reasonable consumer would otherwise have acted, i.e., Natura enticed the reasonable consumer to use the product.

Federal Rule of Civil Procedure 23(b)(3) identifies four factors which should be examined by the courts to determine whether class treatment would be fair and efficient:

(i)  The interest of member of the class in individually controlling the prosecution of separate actions;
(ii)  The extent and nature of any litigation concerning the controversy already commenced by or against members of the Class;
(iii)  The desirability or undesirability of concentrating the litigation of the claims in particular forum; and
(iv)  The difficulties likely to be encountered in the management of a class action.

All of the superiority factors set forth in Rule (23)(b) operate in favor of a class action in this case.  Because the harm suffered by any Class Member is relatively small, if this action is not maintained as a class action, there will be little interest among many Class Members in bringing their own individual actions.[72]  To require separate suits in this case would be "prohibitive and ridiculous and would deprive many of a remedy."[73]  Thus, this action, brought on behalf of thousands of pet owners who were deceived by Natura's deceptive practices is particularly appropriate for class treatment.  Class certification will ensure the resolution of claims that would otherwise not be economically feasible to litigate on an individual basis.  If the class is not certified, however, Natura's wrongful conduct will go undeterred and the public policy of FDUTPA vanquished.

### 3.    Other Considerations Under Rule 23(b)(3) Favor Class Treatment For This Action

The additional considerations under Rule 23(b)(3) also support the conclusion that class certification is superior to individual lawsuits.  The costs and expenses of individual actions, when weighed against an obtainable individual recovery, would be prohibitive.  No one can seriously contend that these pet owners can afford the substantial costs and expenses necessary to bring individual suits in Federal court.  Since no Class Member possesses a sufficiently strong interest in individually controlling the prosecution of separate actions, and since the Class Members "are in a poor position to seek legal redress and because such redress is disproportionately expensive," [74] a class action is particularly appropriate.  Prosecution of this

---

[72] *See In re: Amerifirst Securities Litig.*, 139 F.R.D. 423, 435 (S.D. Fla. 1991)("Individual interests may be minimal where, as here the amounts at stake for each class member are so small that separate suits would be impractical.").
[73] *See Kennedy*, 710 F.2d at 718.
[74] *Amerifirst*, 139 F.R.D. at 425.  In addition, any Class Member who wishes to control his own claim may "opt-out"

case as a class action will achieve economies of time, effort, and expense, and promote uniformity of decisions as to persons similarly situated.[75]  The alternative would likely be no recourse for thousands of pet owners to whom the courthouse doors would effectively be closed, or a "multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake."[76]  As this Court is well aware, Natura has defended this case in a hyper-aggressive manner up to and including refusing to stipulate to waive costs and fees in exchange for a voluntary dismissal with prejudice from plaintiffs who have cancer, lost their home in these harsh economic times, had deaths in the family and financial difficulties.  Under such circumstances, no individual plaintiff could withstand the barrage of paper and scorched earth tactics that Natura has employed in this case. Additionally, concentrating this action in this district will facilitate the comprehensive resolution of all claims in a single court.  Finally, no difficulties will be encountered in managing Plaintiff's claims on a classwide basis.  Indeed, as this motion makes clear, consumer and securities fraud class actions of this size and complexity are common.  All Class Members are identifiable through a notice that can be provided through readily available media, and damages can be demonstrated through claim forms submitted via the Internet, which is similar to the way that the class members resolved damages in the melamine case. The Plaintiff's FDUTPA claim therefore easily satisfies the superiority requirement.  Natura's deceptive advertising was disseminated to Florida consumers and has caused them injury.  Those injuries were sustained as a result of identical deceptive and false representations and omissions that Natura made in its advertising that were consistent to the Class.  As a result, a class action is therefore the best available method for adjudicating all Class Members' claims.

## IV.  Conclusion

Consumers are routinely being deceived.  Patricia Davis, on behalf of all pet owners in Florida, respectfully requests this Court to (a) certify this case as a class action pursuant to Rule 23(a) and (b)(3), (b) designate her and her counsel as representatives of the Class, and (c) grant such other relief as this Court deems just and proper.

Miami, FL
November 18, 2008                           By:    s/ Catherine J. MacIvor

---

of the Class under Rule 23(c)(2) in order to bring a separate action.
[75] *See Doglow v. Anderson*, 43 F.R.D. 472, 488 (E.D.N.Y. 1968), *rev'd on other grounds,* 438 F. 2d 825 (2nd Cir. 1970).
[76] *Green v. Wolf Corp.,* 406 F. 2d 291, 301 (2d Cir. 1968).

**MALTZMAN FOREMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077**

Catherine J. MacIvor (FBN 932711)
cmacivor@mflegal.com
Jeffrey B. Maltzman (FBN 0048860)
jmaltzman@mflegal.com
Jeffrey E. Foreman (FBN 0240310)
jforeman@mflegal.com
Maltzman Foreman, PA
One Biscayne Tower
2 South Biscayne Boulevard, Suite 2300
Miami, Florida 33131
Tel: 305-358-6555 / Fax: 305-374-9077

Patrick N. Keegan
Pkeegan@Keeganbaker.Com
Jason E Baker
Jbaker@Keeganbaker.Com
Keegan & Baker, LLP
4370 La Jolla Village Drive
Suite 640
San Diego, Ca 92122
Tel: 858-552-6750 / Fax 858-552-6749

*Attorneys For Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

WE HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of the Court via CM/ECF on November 18, 2008. We also certify that the foregoing was served on all counsel or parties of record on the attached Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

s/ Catherine J. MacIvor
Catherine MacIvor

CASE NO. 07-21221 ALTONAGA/Brown
**MALTZMAN FOREMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077**

**CASE NO. 07-21221 ALTONAGA/Brown**

**CATHERINE J. MACIVOR**
cmacivor@mflegal.com
**JEFFREY B. MALTZMAN**
jmaltzman@mflegal.com
**JEFFREY E. FOREMAN**
jforeman@mflegal.com
**DARREN W. FRIEDMAN**
dfriedman@mflegal.com
**MALTZMAN FOREMAN, PA**
One Biscayne Tower
2 South Biscayne Boulevard -Suite 2300
Miami, Florida 33131
Tel: 305-358-6555 / Fax: 305-374-9077

*Attorneys for Plaintiffs*

**PATRICK N. KEEGAN**
pkeegan@keeganbaker.com
**JASON E BAKER**
jbaker@keeganbaker.com
**KEEGAN & BAKER, LLP**
4370 La Jolla Village Drive
Suite 640
San Diego, CA 92122
Telephone:      858-552-6750
Facsimile:      858-552-6749

*Attorneys for Plaintiffs*

**EDGAR R. NIELD**
enield@nieldlaw.com
4370 La Jolla Village Drive
Suite 640
San Diego, CA 92122
Telephone:      858-552-6745
Facsimile:      858-552-6749

*Attorney for Plaintiffs*

**ALEXANDER SHAKNES**
E-Mail: Alex.Shaknes@dlapiper.com
**AMY W. SCHULMAN**
E-Mail: Amy.schulman@dlapiper.com
**DLA PIPER US LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4829

*Attorneys for Defendants Menu Foods, Inc.
and Menu Foods Income Fund*

**LONNIE L. SIMPSON**
E-Mail: Lonnie.Simpson@dlapiper.com
**S. DOUGLAS KNOX**
E-Mail: Douglas.knox@dlapiper.com
**DLA PIPER US LLP**
100 N. Tampa Street, Suite 2200
Tampa, Florida 33602-5809
Telephone: (813) 229-2111
Facsimile: (813) 229-1447

*Attorneys for Defendants Menu Foods, Inc.
and Menu Foods Income Fund*

**WILLIAM C. MARTIN**
E-Mail: william.martin@dlapiper.com
**DLA PIPER RUDNICK GRAY CARY US
LLP**
203 North LaSalle Street
Suite 1900
Chicago, Illinois 60601-1293

*Attorneys for Defendants Menu Foods, Inc.
and Menu Foods Income Fund*

**MARK C. GOODMAN**
mgoodman@ssd.com
**SQUIRE, SANDERS & DEMPSEY LLP**
One Maritime Plaza
Suite 300
San Francisco, CA 94111-3492
Telephone: (415) 954-0200
Facsimile:  (415) 393-9887

*Attorneys for Defendants PETCO Animal Supplies Stores Inc., PetSmart, Inc., Wal-Mart Stores, Inc. and Target Corporation*

**JEFFREY S. YORK**
E-Mail: jyork@mcguirewoods.com
**MICHAEL GIEL**
E-Mail: mgiel@mcguirewoods.com
**McGUIRE WOODS LLP**
50 N. Laura Street, Suite 3300
Jacksonville, FL 32202
Telephone: (904) 798-2680
Facsimile: (904) 360-6330

*Attorneys for Defendant Natura Pet Products, Inc.*

**OMAR ORTEGA**
Email: ortegalaw@bellsouth.net
**DORTA & ORTEGA, P.A.**
Douglas Entrance
800 S. Douglas Road, Suite 149
Coral Gables, Florida 33134
Telephone: (305) 461-5454
Facsimile:  (305) 461-5226

*Attorneys for Defendant Mars, Inc.
and Mars Petcare U.S. and Nutro Products, Inc.*

**BARBARA BOLTON LITTEN**
blitten@ssd.com
**SQUIRE, SANDERS & DEMPSEY LLP**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, Florida 33401-6198
Telephone: (561) 650-7200
Facsimile:   (561) 655-1509

*Attorneys for Defendants PETCO Animal Supplies Stores Inc., PetSmart, Inc., Wal-Mart Stores, Inc. and Target Corporation*

**KRISTEN E. CAVERLY**
E-Mail: kcaverly@hcesq.com
**ROBERT C. MARDIAN III**
rmardian@hcesq.com
**HENDERSON CAVERLY PUM & CHARNEY LLP**
16236 San Dieguito Road, Suite 4-13
P.O. Box 9144 (all US Mail)
Rancho Santa Fe, CA 92067-9144
Telephone:  858-756-6342 x)101
Facsimile:   858-756-4732

*Attorneys for Natura Pet Products, Inc.*

**ALAN G. GREER**
agreer@richmangreer.com
**RICHMAN GREER WEIL BRUMBAUGH MIRABITO & CHRISTENSEN**
201 South Biscayne Boulevard
Suite 1000
Miami, Florida 33131
Telephone: (305) 373-4000
Facsimile:  (305) 373-4099

*Attorneys for Defendants The Iams Co.*

**BENJAMIN REID**
E-Mail: bried@carltonfields.com
**ANA CRAIG**
E-Mail: acraig@carltonfields.com
**CARLTON FIELDS, P.A.**
100 S.E. Second Street, Suite 4000
Miami, Florida 33131-0050
Telephone: (305)530-0050
Facsimile: (305) 530-0050

*Attorneys for Defendants Hill's Pet Nutrition, Inc.*

**KARA L. McCALL**
kmccall@sidley.com
**SIDLEY AUSTIN LLP**
One S. Dearborn Street
Chicago, ILL 60633
Telephone: (312) 853-2666

*Attorneys  for Defendants Hill's Pet Nutrition, Inc.*

**SHERRIL M. COLOMBO**
E-Mail: scolombo@cozen.com
**COZEN O'CONNOR**
200 South Biscayne Boulevard
Suite 4410
Miami, Florida 33131
Telephone: (305) 704-5945
Facsimile:  (305) 704-5955

*Attorneys for Defendant Del Monte Foods Co.*

**JOHN J. KUSTER**
jkuster@sidley.com
**JAMES D. ARDEN**
jarden@sidley.com
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, New York 10019-6018
Telephone: (212) 839-5300

*Attorneys for Defendants Hill's Pet Nutrition, Inc.*

**RICHARD FAMA**
E-Mail: rfama@cozen.com
**JOHN J. McDONOUGH**
E-Mail: jmcdonough@cozen.com
**COZEN O'CONNOR**
45 Broadway
New York, New York 10006
Telephone: (212) 509-9400
Facsimile:  (212) 509-9492

*Attorneys for Defendant Del Monte Foods*

**JOHN F. MULLEN**
E-Mail: jmullen@cozen.com
**COZEN O'CONNOR**
1900 Market Street
Philadelphia, PA 19103
Telephone: (215) 665-2179
Facsimile: (215) 665-2013

*Attorneys for Defendant Del Monte Foods, Co.*

**ROBERT C. TROYER**
E-Mail: rctroyer@hhlaw.com
**HOGAN & HARTSON**
1200 17th Street
One Tabor Center, Suite 1500
Denver, Colorado 80202
Telephone: (303) 899-7300
Facsimile: (303) 899-7333

*Attorneys for Defendants Nestle Purina Petcare Co.*

**JAMES K. REUSS**
E-Mail: jreuss@lanealton.com
**LANE ALTON & HORST**
Two Miranova Place
Suite 500
Columbus, Ohio 43215
Telephone: (614) 233-4719

*Attorneys for Defendant The Kroger Co. of Ohio*

**CAROL A. LICKO**
E-Mail: calicko@hhlaw.com
**HOGAN & HARTSON**
Mellon Financial Center
1111 Brickell Avenue, Suite 1900
Miami, Florida 33131
Telephone (305) 459-6500
Facsimile (305) 459-6550

*Attorneys for Defendants Nestle Purina Petcare Co.*

**CRAIG A. HOOVER**
E-Mail: cahoover@hhlaw.com
**MIRANDA L. BERGE**
E-Mail: mlberge@hhlaw.com
**HOGAN & HARTSON L.L.P.**
555 13th Street, N.W.
Washington, D.C. 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910

*Attorneys for Defendants Nestle Purina Petcare Co.*

**D. JEFFREY IRELAND**
E-Mail: djireland@ficlaw.com
**BRIAN D. WRIGHT**
E-Mail: bwright@ficlaw.com
**LAURA A. SANOM**
E-Mail: lsanom@ficlaw.com
**FARUKI IRELAND & COX**
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, Ohio 45402

*Attorneys for Defendant The Iams Co.*

**W. RANDOLPH TESLIK**
E-Mail: rteslik@akingump.com
**ANDREW J. DOBER**
E-Mail: adober@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1333 New Hampshire Avenue, NW
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288

*Attorneys for Defendants New Albertson's Inc. and Albertson's LLC*

**RALPH G. PATINO**
E-Mail: rpatino@patinolaw.com
**DOMINICK V. TAMARAZZO**
E-Mail: dtamarazzo@patinolaw.com
**CARLOS B. SALUP**
E-Mail: csalup@patinolaw.com
**PATINO & ASSOCIATES, P.A.**
225 Alcazar Avenue
Coral Gables, Florida 33134
Telephone: (305) 443-6163
Facsimile: (305) 443-5635

*Attorneys for Defendants Pet Supplies "Plus" and Pet Supplies Plus/USA, Inc.*

**HUGH J. TURNER, JR.**
E-Mail: hugh.turner@akerman.com
**AKERMAN SENTERFITT & EDISON**
350 E. Las Olas Boulevard
Suite 1600
Fort Lauderdale, Florida 33301-2229
Telephone: (954)463-2700
Facsimile: (954)463-2224

*Attorneys for Defendant Publix Super Markets, Inc.*

**CRAIG P. KALIL**
E-Mail: ckalil@aballi.com
**JOSHUA D. POYER**
E-Mail: jpoyer@abailli.com
**ABALLI MILNE KALIL & ESCAGEDO**
2250 Sun Trust International Center
One S.E. Third Avenue
Miami, Florida 33131
Telephone: (303) 373-6600
Facsimile: (305) 373-7929

*Attorneys for New Albertson's Inc. and Albertson's LLC*

**ROLANDO ANDRES DIAZ**
E-Mail: rd@kubickdraper.com
**PETER S. BAUMBERGER**
E-Mail: psb@kubickidraper.com
**KUBICKI DRAPER**
25 W. Flagler Street, Penthouse
Miami, Florida 33130-1712
Telephone: (305) 982-6708
Facsimile: (305) 374-7846

*Attorneys for Defendant Pet Supermarket, Inc.*

**C. RICHARD FULMER, JR.**
E-Mail: rfulmer@Fulmer.LeRoy.com
**FULMER, LEROY, ALBEE, BAUMANN, & GLASS**
2866 East Oakland Park Boulevard
Fort Lauderdale, Florida 33306
Telephone: (954) 707-4430
Facsimile: (954) 707-4431

*Attorneys for Defendant The Kroger Co. of Ohio*