UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 07-21221-CIV-ALTONAGA/BROWN

RENEE BLASZKOWSKI, *et al.*,
individually and on behalf of
others similarly situated,
Plaintiffs,

vs.

MARS, INCORPORATED, *et al.*,
Defendants.
_____

**NATURA PET PRODUCTS, INC.'S OPPOSITION TO MOTION BY PLAINTIFF
DAVIS FOR CLASS CERTIFICATION OF FDUTPA CLAIM**

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................... 1

II.  SUMMARY OF ARGUMENT ................................................................................. 1

MERITS ARGUMENT ....................................................................................................... 7

III.  FDUTPA REQUIRES A DETERMINATION THAT EACH MEMBER OF THE
     CLASS WAS EXPOSED TO THE ALLEGED DECEPTIVE ADVERTISEMENTS. .... 7

     A.  THE ALLEGED DECEPTIVE ADVERTISEMENTS ARE NOT IDENTIFIED WITH CLARITY. ................................7
     B.  EACH MEMBER MUST HAVE READ THE ALLEGEDLY DECEPTIVE ADVERTISEMENTS. ................................8

IV.  EACH MEMBER MUST HAVE SUFFERED ECONOMIC DAMAGE AS A RESULT
     OF THE ADVERTISEMENTS ............................................................................. 10

     A.  CAUSATION IS AN INDIVIDUAL INQUIRY. ...........................................................................10
     B.  RETAILER REPRESENTATIONS IMPACT THE ANALYSIS. ...............................................................11

V.  THE FACT AND AMOUNT OF DAMAGES MUST BE DETERMINED FOR EACH
    CLASS MEMBER. ............................................................................................... 12

     A.  CLASS MEMBERS BENEFITTED FROM NATURA'S PRODUCTS. .........................................................12
     B.  FLORIDA CONSUMERS DURING THE CLASS PERIOD HAVE GOTTEN THEIR MONEY BACK. ......................13
     C.  THE PRICE PAID BY CLASS MEMBERS VARIED AND WAS NOT PAID TO NATURA. ...................................13

VI.  CERTIFICATION WOULD REQUIRE ADJUDICATION OF ALL 98 DIFFERENT
     NATURA PRODUCTS AND 175 DIFFERENT INGREDIENTS. ............................... 14

VII.  NATURA HAS UNIQUE DEFENSES TO CLASS MEMBER CLAIMS. .................... 15

     A.  NATURA'S WEBSITE CHANGED DURING THE PROPOSED CLASS PERIOD AND INCLUDES A FORUM
         SELECTION CLAUSE, CHOICE OF LAW PROVISION AND EXPRESS DISCLAIMER. ......................................15
     B.  INCLUDED CLAIMS IN THE CLASS ARE TIME BARRED .............................................................15
     C.  MEMBERS OF THE PROPOSED CLASS HAVE SPECIALIZED KNOWLEDGE. .............................................16

VIII.  MANY PUTATIVE CLASS MEMBERS WILL NOT BE ABLE TO PRODUCE
      VERIFIABLE PROOF THAT THEY USED PRODUCT OR VIEWED THE
      ALLEGEDLY DECEPTIVE ADVERTISEMENTS. ................................................... 16

PROCEDURAL ARGUMENT ........................................................................................... 17

IX.  PLAINTIFF'S MOTION FAILS TO COMPLY WITH LOCAL RULE 7.1C. ............... 17

X.  PLAINTIFF'S MOTION FOR CLASS CERTIFICATION IS UNTIMELY. ................. 17

XI.  MALTZMAN FOREMAN ARE NOT ADEQUATE CLASS COUNSEL. .................... 18

XII.  CONCLUSION ................................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Aspinall v. Philip Morris Cos.*, 442 Mass. 381 (2004) ................................................................ 10

*Autonation, Inc. v. United Healthcare Ins. Co.,* 423 F. Supp. 2d 1265 (S.D. Fla. 2006) ............. 17

*Certified Question United States Dist. Court Order v. Philip Morris*, 621 N.W.2d 2 (2001) ...... 10

*Cohen v. Implant Innovations, Inc.,* 2008 U.S. Dist. LEXIS 64144 (S.D. Fla. Aug. 21, 2008) ..... 9

*Dixon v. Burk County et al.,* 303 F.3d 1271 (11th Cir. 2002) ....................................................... 11

*General Motors Acceptance Corp. v. Laesser*, 718 So. 2d 276 (Fla. 4th Dist. Ct. App. 1998) .... 12

*Gibbs Properties Corp v. Cigna Corp.*, 196 F.R.D. 430 (M.D. Fla 2000) .................................... 9

*Group Health Plan, Inc. v. Philip Morris USA, Inc.,* 344 F.3d 753 (8th Cir. 2003) .................... 10

*Hall v. Burger King Corp.*, 1992 U.S. Dist. LEXIS 18687 (S.D. Fla. Oct. 26, 1992) ................ 18

*Inter-Tel, Inc. v. West Coast Aircraft, Eng'g, Inc*
    2006 U.S. Dist. LEXIS 83451 (M.D. Fla. Nov. 15, 2006) .................................................... 9

*Montgomery v. New Piper Aircraft, Inc.,* 2002 U.S. Dist. LEXIS 18198 (S.D. Fla. Aug. 6, 2002)
    ................................................................................................................................................ 12, 16

*Montgomery v. New Piper Aircraft, Inc.,* 209 F.R.D. 221 (S.D. Fla. 2001) .............................. 7, 9

*O'Neill v. Home Depot U.S.A., Inc.,* 243 F.R.D. 469 (S.D. Fla. 2006) .............................. passim

*Perez v. Metabolife Int'l, Inc.,* 218 F.R.D. 262 (S.D. Fla. 2003) ................................................ 17

*Pickett v. Iowa Beef Processors*, 209 F.3d 1276 (11th Cir. 2000) .............................................. 13

*Pop's Pancakes, Inc. v. NuCO2, Inc.,* 251 F.D.R. 677 (S.D. Fla. 2008) ...................................... 8

*Rollins, Inc. v. Butland*, 951 S0.2d 860 (Fla. 2d D.C.A. 2006) .................................................... 7

*Sammons v. Polk County Sch. Bd.,* 2007 U.S. Dist. LEXIS 8098 (M.D. Fla. 2007) ................... 17

*Valley Drug Co. v. Geneva Pharms, Inc*., 350 F.3d 1181 (11th Cir. 2003*)* ................................ 13

## Statutes

*Fla. Stat. § 95.11(3)(f)* ............................................................................................................... 15

## Rules

Fed. Rules Civ. Proc. Rule 16(b)(4) ........................................................................................... 18

Fed. Rules Civ. Proc. Rule 23(a) ............................................................................................. 1, 7

Fed. Rules Civ. Proc. Rule 23(b)(3) ..................................................................................... 1, 7, 9

Fed. Rules Civ. Proc. Rule 23(g) ............................................................................................... 18

S.D. Fla L. R. 7.1C ..................................................................................................................... 17

## I.  INTRODUCTION

Plaintiff's proposed class definition is too broad to meet Rule 23(a)'s typicality and commonality requirements and Rule 23(b)(3)'s predominance requirement.  Class certification must be denied because it is impossible to determine with any objective test who is included in the class.  Additionally, the class would include people who never saw any of the allegedly deceptive statements (they are not on product packaging), people who benefited from use of Natura's products (sending testimonials describing products as miraculous), and people who already got their money back (Natura guarantees 100% satisfaction or your money back).  These members have no claim and/or are in conflict with the proposed class representatives.

Deceptiveness, causation, and damages under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") require inquiry into each member's particular purchase experience, expectations, and motives and, given the underlying facts of this case, are not amenable to class-wide determination.  Class certification should be denied.

## II.  SUMMARY OF ARGUMENT

The proposed class claim under FDUTPA of all persons who obtained and used any Natura pet food product over a more than five-year period improperly includes people who were never exposed to an allegedly deceptive or unfair practice, people who have already gotten their money back using Natura's 100% satisfaction guarantee, people whose claims are barred as having arisen more than four years before the filing of the complaint, and people who loved the products.  Such people cannot establish a right to relief, but are improperly included in the proposed class.

Even within the group of people who were exposed to at least one of the allegedly deceptive statements and who did not already return the product for a refund, there is no commonality between Davis' (or Cortazzo's)[1] claims and the rest of the class members.

---

[1]  While Natura considers Davis to be a poor choice to represent any class including purchasers, proposed representative Arna Cortazzo's facts are equally unique and unsuited to represent a proposed class.  To avoid a replay of this motion if Cortazzo joins, Natura will address Davis' and Cortazzo's claims in this opposition.

For example, the trier of fact would have to engage in the following individual determinations.

1. Did the proposed class member actually "obtain and use" a Natura pet food product during the period from May 9, 2003 to November 8, 2008?[2]

   - Davis cannot testify as to how many free samples she took or the particular month she obtained the free product and has no objective or corroborating evidence of any use of a Natura product. [Caverly Decl., Dec. 23, 2008 (attached as **Exhibit 1**), ex. C. ("Davis Dep.") at 36:3-12, 60:22-61:9, 93:1-14.]

   - Cortazzo cannot describe the period that she purchased Natura products more precisely than 2003-2008 and has no objective evidence of the timing or amount of product she purchased. [Caverly Decl., ex. E ("Cortazzo Dep.") at 14:20-15:10, 21:10-22:5, 105:9-18.]

   - Natura sells its products to wholesale distributors who in turn sell to retailers who in turn sell to customers, so Natura has no records of who "obtains and uses" its products in Florida. Thus, each potential member of the proposed class will have to submit evidence of use before being recognized as a member of the class. [Atkins Decl., Dec. 22, 2008 (attached at **Exhibit 2**), at ¶ 3.]

2. Which of Natura's 98 products was obtained and used?

   - Davis alleges to have used only Innova® Senior dry dog food. [Caverly Decl., ex. C at 34:23-35:1.]

   - Cortazzo alleges to have used only EVO® dry and canned dog and cat food. [Caverly Decl., ex. E at 21:2-5.]

   - Proposed class members will have purchased 98 different products. These products contain some 175 distinct ingredients, not all of which are contained in each product. For example, Innova® Senior canned dog food contains 11

---

2   In *O'Neill v. Home Depot U.S.A., Inc.,* 243 F.R.D. 469, 477 (S.D. Fla. 2006), the court held that a class defined as "Florida customers who purchased damage waivers beginning on November 30, 2000" was inadequate because "a vague class definition portends significant manageability problems for the court."

ingredients that are not contained in the Innova® Senior dry dog food used by Davis.  [Atkins Decl. at ¶ 17 & ex. E.]

3.  How many times did the member buy a product and what amount was paid?

- Davis claims to have used from two to six sample bags and have paid nothing for them.  [Caverly Decl., ex. C at 35:6-36:12.]

- Cortazzo does not know how many products she purchased over the five-year proposed class period or how much she paid for any of her purchases.  [Caverly Decl., ex. E at 14:9-11.]

- Proposed class members paid different amounts than those paid by Davis and Cortazzo for the same product because Natura does not set retail prices.  A recent price survey showed as much as a 12% price difference amongst Florida retailers for the same product.  [Balsimo Decl., Dec. 1, 2008 (attached as **Exhibit 3**), at ¶ 8.]

4.  Did the proposed class member see one or more of the four alleged deceptive statements before obtaining and using a Natura product?

- Davis admittedly did not view Natura's website or product brochures before obtaining and using a Natura product.  Davis claims that a point-of-sale display that she cannot clearly describe included some representation similar to human grade, but Natura had no such displays.  [Caverly Decl., ex. C at 62:18-64:1, 211:3-14 ("Q: Do you actually recall as you sit here today that the sign was advertising Natura Pet Products on the shelving at Ocala Breeders and Supply used the words human grade? A: Not exactly those words I couldn't swear to that."); Atkins Decl. at ¶ 9.]

- Cortazzo claims to have seen the alleged misrepresentations on Natura's website, but does not know when in relation to her purchases.  [Caverly Decl., ex. E at 28:16-32:15.]

- Many proposed class members will never have seen the alleged misrepresentations because they do not appear on any product packaging. [Atkins Decl. at ¶ 9.] Even class members who viewed Natura's website may never have seen the alleged misrepresentations since they did not appear on the home page, and the website has many pages and has changed throughout the period. For example, Natura did not describe its ingredients as "human grade" until sometime in 2005 or 2006. Natura introduced new products before November 7, 2008 and after Natura stopped using the term "human grade." [Atkins Decl. at ¶¶ 7-9.]

5. Is the representation that Natura's products contain only ingredients the proposed member would eat herself deceptive?[3]

   - Davis has been a vegetarian for the last 25 years, eating nothing that had to die to feed her. [Caverly Decl., ex. C at 23:9-18.]
   - Cortazzo knew when she purchased Natura's product that they were not intended for human consumption and knew she would not eat the ingredients herself. [Caverly Decl., ex. E at 66:4-21.]
   - Proposed class members will have knowledge and/or dietary restrictions such that they would not have considered the statements deceptive. Additionally, where Innova® Senior contains 29 ingredients and the EVO® line contain a combined 46 ingredients, class members will have used products containing as many as 175 unique ingredients. [Atkins Decl. at ¶ 17.]

6. Is the representation that Natura's products are carefully cooked and tested deceptive?[4]

---

[3] Deceptiveness is a reasonable person inquiry using the individual circumstances of the plaintiff's use to avoid false claims of deception, not to create liability where the user was not deceived or to avoid individual proof of causation.
[4] Natura does not admit that the statements at issue are false or even actionable fact assertions. If they were actionable, whether they were deceptive depends upon the unique experience of each member because the reasonable person standard increases, rather than lessens, the burden to show deceptiveness. Simply claiming to have been deceived is not enough.

- Davis did not identify seeing this representation. [Caverly Decl., ex. C at 50:21-53:24.]

- Cortazzo did not identify ever seeing this representation. [Caverly Decl., ex. E at 64:6-65:2.]

- Whether "carefully" is deceptive must be assessed for the reasonable person acting in the circumstance of each class member.

7. Is the representation that Natura's ingredients are "human grade" deceptive?

- Davis used Innova® Senior, which includes 29 of 175 ingredients found in Natura's products. Davis could not have seen this representation because she admits to not having looked at the website or any product brochure, and Natura has not used signs with this phrase. [Caverly Decl., ex. C at 34:23-35:1; Atkins Decl. at ¶ 12.]

- Cortazzo used EVO® products, which include 46 of 175 ingredients found in Natura's products. Cortazzo could not have seen a reference to "human grade" in any Natura materials in 2003 because Natura did not begin using that term until 2005 or 2006. [Atkins Decl. at ¶¶ 12, 17 & ex. E.]

- Class members would have used products containing as many as 175 different ingredients. They also would have to have read Natura's website or product brochures during the period beginning in 2005 or 2006 and ending mid-2008 to have possibly seen a reference to "human grade." [Atkins Decl. at ¶¶ 8, 17 & ex. E.]

8. What other information was known to the proposed class member?[5]

- Davis alleges to have read signs describing Natura products, but did not view Natura's website. [Caverly Decl., ex. C at 51:4-52:19, 57:17-21.]

---

5  Deceptiveness is based on a reasonable consumer acting in the same situation and causation is an individualized inquiry. *See O'Neill,* 243 F.R.D. at 481.

- Cortazzo alleges that her retailer recommended the products she purchased and cannot say she would have purchased any Natura product without that recommendation. [Caverly Decl., ex. E at 30:8-31:12.] Cortazzo says she chose EVO products because they do not contain grains. [Caverly Decl., ex. E at 15:11-18:10, 19:16-19, 29:3-18.]

- Proposed class members may have purchased products based on the recommendation of family, a friend, veterinarian, or retailer, without having read the alleged false advertising. [Atkins Decl., ex. F.] Other class members would have purchased the products because of the presence or absence of particular ingredients appearing on the product packaging. Still others would have unique knowledge of nutrition and food preparation techniques which informed their purchases. [Balsimo Decl. at ¶ 6.]

9. Did the proposed class member pay more than the benefit she received?

- Davis paid nothing. [Caverly Decl., ex. C at 35:6-18.]

- Cortazzo purchased Natura products for four years and is uncertain about how much she paid. [Caverly Decl., ex. E at 96:14-15.]

- Some proposed class members describe Natura products as nothing short of miraculous. [Atkins Decl. at ¶ 19 & ex. F.] Other class members have received their money back. [Atkins Decl. at ¶ 10 (money back guarantee); Balsimo Decl. at ¶ 4; Gilpin Decl., Dec. 1, 2008 (attached as **Exhibit 4**) at ¶ 3.] Class members paid different amounts for the same products. [Balsimo Decl. at ¶ 8; Atkins Decl. at ¶ 11.]

These individual inquiries defeat certification. There are no reasonable means to identify individuals who are similarly situated to Davis or Cortazzo. Determining whether a proposed class member even obtained and used Natura products will require a person-by-person inquiry, and the class includes members using dozens of products never used by Davis or Cortazzo. Further, the class as proposed is so broad as to include individuals who never saw the alleged

deceptive advertisements, individuals who benefited from the products, individuals who received their money back, and individuals who purchased Natura products for reasons other than the alleged deceptive advertisements. Deception, causation, and damages under FDUTPA are individualized fact inquiries; thus, Plaintiff's proposed class fails to meet the requirements of Rule 23(a) and Rule 23(b)(3).

## MERITS ARGUMENT

The only claim to be prosecuted on behalf of the class is a claim under FDUTPA. [D.E. 560 at 14.] Accordingly, the Court must examine this cause of action in light of the facts presented by Plaintiff's claims to determine which issues, if any, are issues for the class as a whole and which are unique to the Plaintiff or particular class members.

## III. FDUTPA REQUIRES A DETERMINATION THAT EACH MEMBER OF THE CLASS WAS EXPOSED TO THE ALLEGED DECEPTIVE ADVERTISEMENTS.

The elements of a FDUTPA claim are: (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages. *See Rollins, Inc. v. Butland,* 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006). Therefore,

> … to prove liability under FDUTPA, the Court must determine that (1) each putative class member was exposed to the Defendants' advertising and marketing materials alleged to constitute a deceptive trade practice and (2) if exposed, the advertising and marketing materials caused each putative class member damage.

*Montgomery v. New Piper Aircraft, Inc.,* 209 F.R.D. 221, 229 (S.D. Fla. 2001).

### A. The Alleged Deceptive Advertisements Are Not Identified with Clarity.

The first hurdle to class certification here is that the four allegedly deceptive advertising "messages" [D.E. 560 at 8] are not quotes from Natura marketing materials, and the source of these messages are not identified with certainty. None of the allegedly deceptive statements appear on Natura's product packaging. [Atkins Decl. at ¶9 & ex. A.] The website page attached as Exhibit B to the November 14, 2008 Declaration of Patrick Keegan [D.E. 552-3 at 51] is not a page from Natura's website. [Atkins Decl. at ¶13 and ex. B.] It appears to be a third party's website that copied some of one version of Natura's website and combined that with its own

content.  [*Id.*]  Plaintiff also submits testimony from Natura's CEO about product brochures, but does not attach the brochures or establish during what period of time the alleged deceptive material appeared in print, and which Florida retailers distributed the brochures.  [D.E. 552-2; D.E. 549-2.]  Plaintiff lastly submits Davis' deposition,[6] which says she relied on a sign including the words "human grade" [D.E. 548-2 (Davis Dep. at 210:21-211:18)], but Natura never made such advertisements.  [Atkins Decl. at ¶ 9.]

Natura's website and product brochures have been revised during the period from May 2003 to November 2008.  Even Natura cannot say with certainty when it began using the phrase "human grade" on its website, but it was most likely in 2005 or 2006.[7]  [*Id.*]  In 2007 and 2008, Natura stopped using the term "human grade" on its website and print materials.  [Atkins Decl. at ¶ 8.]

Without knowing when, where, and how the alleged deceptive advertising occurred, the Court cannot begin to evaluate whether Davis' or Cortazzo's claims are typical of the class or whether there are common issues of fact and law between the class and the representatives.  *See O'Neill v. Home Depot U.S.A., Inc.,* 243 F.R.D. 469, 478 (S.D. Fla. 2006) ("No simple test has been suggested to identify individuals who are similarly situated to Plaintiff in their tool-rental experiences with Home Depot.  It appears that individual investigations or testimony will therefore be necessary.  The problems with ascertaining class membership, given Plaintiff's overly broad definition, counsel against a finding that class certification is appropriate."); *Pop's Pancakes, Inc. v. NuCO2, Inc.,* 251 F.R.D. 677 (S.D. Fla. 2008) (named plaintiffs have claims that may be atypical of class to extent that representations made before or after receiving allegedly deceptive invoice are different from other members).

**B.    Each Member Must Have Read the Allegedly Deceptive Advertisements.**

Even if Plaintiff produced a particular marketing piece, an individualized inquiry would be required to determine if each member also saw the offending marketing.  *See Cohen v.*

---

6 Natura objects to any use of Davis' deposition by Davis as hearsay.

[7] Natura does not have complete copies of its historic website.  [Atkins Decl. at ¶ 12.]

*Implant Innovations, Inc.*, No. 07-20777-CIV-LENARD/O'SULLIVAN, 2008 U.S. Dist. LEXIS 64144, at **31-32 (S.D. Fla. Aug. 21, 2008) (noting that putative class members must have actually received misrepresentation to recover); *accord Montgomery v. New Piper Aircraft, Inc.,* 209 F.R.D. 221, 229-30 (S.D. Fla. 2001) (stating that, to prove FDUTPA liability, court must determine each putative class member was exposed to defendant's advertising and marketing materials). *See also Inter-Tel, Inc. v. W. Coast Aircraft, Eng'g, Inc.*, No. 8:04CV-02224-T-17MSS, 2006 U.S. Dist. LEXIS 83451, at **26-27 (M.D. Fla. Nov. 15, 2006) (observing that for purposes of determining deceptiveness, the issue is "whether the practice was likely to deceive a consumer acting reasonably in the same circumstances"). Since the complained of language does not appear on the product packaging, but only on collateral non-point of sale materials,[8] this would require a mini-trial as to the identity of and standing for each class member. *See O'Neill v. Home Depot U.S.A., Inc.,* 243 F.R.D. 469, 481 (S.D. Fla. 2006) ("Individual fact-finding would also be required to determine whether any particular class member received an alleged misrepresentation from Home Depot and suffered any damage."); *see also Gibbs Props. Corp v. Cigna Corp.*, 196 F.R.D. 430, 442-43 (M.D. Fla. 2000) (class definition too broad where class members unidentifiable without individualized inquiries). Here, it will matter exactly which brochure and/or page(s) of the website were allegedly viewed, on a member-by-member basis.

Under similar challenges, the Court in *Montgomery v. New Piper Aircraft, Inc*. denied class certification because individualized inquiries were necessary to explore whether each particular member received one of the alleged misrepresentations and whether each particular member then suffered any resulting damages. *See* 209 F.R.D. at 229-31. This need for individual inquiries in turn prevented plaintiffs from satisfying the predominance requirement of Rule 23(b)(3) and resulted in denial of class certification. *Id.* at 230.

---

8 Plaintiff's assertion [D.E. 560 at 2] that Natura repeated representations on its website at the point of purchase are unsubstantiated and untrue. [See Atkins Decl. at ¶¶ 3, 9 (Natura does not sell to customers and had no point of sale displays using the term "human grade").] Also, Natura does not sell products on its website. [Atkins Decl. at ¶ 13.]

## IV. EACH MEMBER MUST HAVE SUFFERED ECONOMIC DAMAGE AS A RESULT OF THE ADVERTISEMENTS.

### A. Causation Is an Individual Inquiry.

As this Court has observed:

> Under FDUTPA, proof of causation is required. To prove liability under FDUTPA, it would have to be shown that: (1) each proposed class member was never informed about the optional nature of the damage waiver, an act alleged to constitute a deceptive trade practice; and (2) that such act by Home Depot caused each proposed class plaintiff damage.

*O'Neill,* 243 F.R.D. at 480-81 (citations omitted).

Notably, Plaintiff does not distinguish this Court's prior FDUTPA class certification opinions. Instead, Plaintiff cites Minnesota and Massachusetts law for the proposition that Florida's FDUTPA does not require individualized proof of causation. *See Aspinall v. Philip Morris Cos.*, 442 Mass. 381 (2004) (concluding individual proof of causation not required under Massachusetts statute); *Group Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753 (8th Cir. 2003) (evaluating causation under Minnesota statutes); *Certified Question United States Dist. Court Order v. Philip Morris Inc.*, 621 N.W. 2d 2, 15 n.10 (Minn. 2001) ("We emphasize that we are addressing here only the requirements for the misrepresentation in sales actions before us on these certified questions.").

Under FDUTPA, individualized causation is required. A Florida court, when faced with facts virtually identical to those in *Group Health Plan,* denied class certification because FDUTPA requires individualized proof of causation. *See Philip Morris USA Inc. v. Hines*, 883 So. 2d 292, 294-95 (Fla. Dist. Ct. App. 2003). Here, the plaintiffs had sued Philip Morris USA Inc., alleging misrepresentation, but Florida's Fourth District reversed the class certification:

> [T]he trial court erred in certifying this lawsuit … as to "all persons who purchased Marlboro Lights and Marlboro Ultra Lights cigarettes in Florida" …. Despite a common nucleus of facts concerning a prospective class-action-defendant's conduct, a lawsuit may present individualized plaintiff-related issues which make it unsuitable for class certification.

*Id.* at 294 (citation omitted).

## B.    Retailer Representations Impact The Analysis.

Natura distributes pet food in Florida through independent wholesale distributors.  Natura sells its products to these wholesale distributors, who in turn sell to retailers, who in turn sell to consumers.  [Atkins Decl. at ¶ 3.]  Natura does not distribute any of its products through nationally recognized retail chains such as PetSmart or PetCo.  [*Id.*]  Retailers of Natura products are mostly independently-owned feed or pet supply stores, with many owners having a single location. [*Id.*]

From May 2003 through November 2008, an estimated 150 or more retailers were selling Natura products in Florida at any given time, but not always the same retailers, because stores change hands, start or stop carrying products, and close or open.  [Atkins Decl. at ¶ 5.]  Natura does little direct advertising to consumers.  [Atkins Decl. at ¶ 7.]  For the most part, Natura products are sold based on a retailer recommendation or by word-of-mouth from consumers. [*See* Balsimo Decl. at ¶¶ 6-7; Atkins Decl. at ¶7 & ex. F (testimonials).]

For example, Cortazzo's retailer recommended EVO® products because they do not contain grain and later recommended EVO® reduced fat formula when Cortazzo's pet needed to lose weight.   [Caverly Decl., ex. E at 16:11-13, 31:6-12.]   Cortazzo followed these recommendations and cannot say whether she would have purchased Natura's products but for her retailer's recommendations.   [Caverly Decl., ex. E at 30:8-31:12.]   These retailer recommendations break the chain of causation and provide a defense to Cortazzo's claims, as would similar recommendations from friends,[9] veterinarians, and retailers.[10]  Misrepresentations by third parties, such as Natura retailers or independent sales representatives, cannot provide a foundation for liability.  *Dixon v. Burk County et al.,* 303 F.3d 1271, 1275 (11th Cir. 2002) ("The

---

[9] Examples of such recommendations could include: "I tell everyone about California Natural."  [Atkins Decl., ex. F.]  Or: "I have told numerous people about your products and am certain I have convinced many of them to switch from "store" brands.  I've heard nothing but good reports from the people I told."  [*Id.*]

[10] "My brother-in-law works in a pet store and recommended we try Natura products. He now eats your dry food with enthusiastic abandon.  Thanks to you for producing a great product and thanks to my brother-in-law for recommending the products."  [Atkins Decl., ex. F.]

causal relation does not exist when the continuum between Defendant's action and the ultimate harm is occupied by the conduct of deliberative and autonomous decision-makers.")

In *General Motors Acceptance Corp. v. Laesser*, the plaintiff was deceived by a sales representative to believe that it would be in his financial interest to lease a vehicle rather than buy it. *Gen. Mot. Acceptance Corp. v. Laesser*, 718 So. 2d 276, 277 (Fla. Dist. Ct. App. 1998). The plaintiff alleged that the car dealership and General Motors Acceptance Corp. ("GMAC") were liable under FDUTPA because GMAC had conducted training seminars where the dealership's employees were taught the deceptive "bait and switch" technique used on the plaintiff. *Id*. On appeal, the court ruled for GMAC because the plaintiff had failed to establish the deceptive conduct of the dealership's employee was connected to or caused by the GMAC training. *Id.* at 277-78. To be actionable, an unfair or deceptive trade practice must be the cause of loss or damage to the consumer. *Id.* at 277. It was not enough to allege that GMAC had trained sales representatives to use the deceptive techniques; the plaintiff was required to prove that GMAC training caused the sales representative to deceive the plaintiff, causing of plaintiff's damages. *Id.*; *see also O'Neill,* 243 F.R.D. at 478 ("The differences identified in the proposed class members' individual experiences with the purchase of Home Depot's damage waiver precludes a finding of commonality and typicality.").

## V.   THE FACT AND AMOUNT OF DAMAGES MUST BE DETERMINED FOR EACH CLASS MEMBER.

Actual damages under FDUTPA are the difference in the product's market value in the condition in which it was delivered and the condition in which it should have been delivered. *See Eclipse Med. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1357 (S.D. Fla. 1999).

### A.   Class Members Benefitted From Natura's  Products.

Natura receives testimonials through its website from satisfied consumers. Some consumers include their contact information, so Natura knows that testimonials have come from Florida consumers in the past five years. People send in pictures of their pets and describe skin

or other health conditions drastically improving or disappearing. Other testimonials describe a pet's coat or energy miraculously improving. [*See, e.g.,* Atkins Decl. at ¶ 19 & ex. F; Balsimo Decl. at ¶ 6.] These consumers benefited from the use of Natura's products, yet they are improperly included in the putative class. *See O'Neill,* 243 F.R.D. at 479 ("[A] class cannot be certified when its members have opposing interests or when it consists of members who benefit from the same acts alleged to be harmful to other members of the class."); *see also Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000)). Not only do happy customers highlight the individualized damages inquiry necessary, they demonstrate a conflict with Davis/Cortazzo that is so fundamental as to defeat certification. *See Valley Drug Co. v. Geneva Pharms, Inc*., 350 F.3d 1181, 1189 (11th Cir. 2003).

## B.  Florida Consumers During the Class Period Have Gotten Their Money Back.

Natura has a 100% money-back guarantee. If a consumer is unsatisfied with a Natura product for any reason, the consumer can return the unused product to his retailer for a refund. [Atkins Decl. at ¶ 10.] The retailer refunds the purchase price paid by the consumer, the wholesaler refunds the price the retailer paid, and Natura refunds the wholesale price to the wholesaler. [*Id.*] Natura always honors this guarantee. [*Id.*; Balsimo Decl. at ¶ 4.] Putative class members have received refunds. For example, in 2006, Natura reimbursed its Florida distributor Pet Professionals $5,623.94 for customer returns. [Gilpin Decl., at ¶ 3 & ex. A.] Customers who received their money back have no claim because there is no difference in the value they did and should have received.

## C.  The Price Paid By Class Members Varied and Was Not Paid to Natura.

Independent retailers set the retail price of Natura's products, so those prices vary throughout the state on any given day. [Atkins Decl. at ¶ 11.] For example, in a recent price survey conducted by an independent sales representative in Florida, the price of a particular product varied as much as 12% from one retailer to another. [Balsimo Decl. at ¶ 8.] In another example, a 28.6 lbs. bag of EVO® dry dog food, allegedly purchased by Cortazzo, was priced at $55.99 at one retailer and $49.99 at another retailer. [*Id.*] Natura's wholesale price for that same

bag of EVO® dry dog food in October 2008 was $30.98. [Atkins Decl. at ¶ 11.] The rest goes to the distributor and retailer as their profit.

From time to time during the period from May 2003 to November 2008, Natura has increased its wholesale prices on certain products. [*Id.*] For example, in June 2004, Natura raised the wholesale price of its canned dog and cat food 7% and the cost of its Innova® dry food 6.9%. [*Id.*] Such price increases are likely to result in price increases at wholesale and retail levels, but those price increases may be more or less than Natura's price increase and may take effect at different times. Natura also gives away free samples of its products to consumers, such as Davis, and provides free product for personal use to retailer staff and veterinary students at the University of Florida. [Atkins Decl. at ¶ 7.]

Davis paid nothing for the Natura product she claims to have used; Cortazzo paid but does not know how much. Class members who paid likely paid amounts different than Cortazzo. Because FDUTPA awards actual damages, one must determine for each consumer the difference in the value paid and the value received. Value imparted is a subjective, individualized analysis, complicated by the different prices charged by third parties and the various third parties sharing in and involved with setting those prices.[11]

## VI. CERTIFICATION WOULD REQUIRE ADJUDICATION OF ALL 98 DIFFERENT NATURA PRODUCTS AND 175 DIFFERENT INGREDIENTS.

A class of "[a]ll consumers and purchasers who obtained and used any Natura pet food product…" calls into issue all 98 products distributed by Natura in Florida during the proposed period. These 98 different products are made by three different manufacturers and include some 175 distinct ingredients procured by the respective manufacturers. [Atkins Decl. at ¶¶ 16-17 & ex. E.] Some of the products contain few ingredients in common with the ingredients in Innova® Senior – the product Davis used – or EVO® – the product line Cortazzo used. For

---

[11] If a member paid $49.99 for a bag of food Natura sold for $30.98 and that was worth $30.98, who caused the damage?

example, Innova® Senior has only 29 of the 175 ingredients, and the entire EVO® line contains only 46 of 175 different ingredients. [*Id.*]

Davis and Cortazzo should not be permitted to bring claims on behalf of a class using different products with different ingredients and manufactured by different third parties, where the alleged deceptive statements relate to the ingredients and manufacturing practices.

**VII.    NATURA HAS UNIQUE DEFENSES TO CLASS MEMBER CLAIMS.**

**A.    <u>Natura's Website Changed During the Proposed Class Period and Includes a Forum Selection Clause, Choice of Law Provision and Express Disclaimer.</u>**

Davis admittedly was not deceived by anything on Natura's website because she did not see it. [Caverly Decl., ex. C at 62:18-63:9.] Cortazzo, however, bases her claims entirely on statements on Natura's website in 2003. [Caverly Decl., ex. E at 28:16-19; 32:8-15.] Cortazzo, at most, read one of the statements (*i.e.,* ingredients you would eat yourself) because it was not until 2005 or 2006 that Natura began to describe the ingredients in its products as "human grade." Thus, in addition to whether and what portions of the website a class member viewed, when each particular class member claims to have viewed Natura's website is material. The content of Natura's website has changed over the years, so different class member will have seen different content. [Atkins Decl. at ¶ 12.]

Natura's website also contains a District of Northern California forum selection clause, a choice of law provision selecting California law, and an express disclaimer of the accuracy of the content. [Atkins Decl. at ¶14 & ex. D.] These procedural restrictions and defenses apply to Cortazzo's claims, for example, but would not apply to class members who did not view the website.

**B.    <u>Included Claims in the Class Are Time Barred</u>**

The proposed class period runs from May 9, 2003 to November 7, 2008. However, Natura was not added as a party in this action until November 29, 2007. [D.E. 260-1.] Because FDUTPA has a four year statute of limitation, *see* section 95.11(3)(f), Florida Statutes, Natura has a unique defense to claims by those class members who obtained and used Natura distributed

products from May 9, 2003 to November 29, 2003, including Cortazzo, who is vague regarding when in 2003 she made her initial purchases. [Caverly Decl., ex. E at 11:19-14:2.] This defense would not apply to Davis' claimed use in 2006, but she has only her testimony to establish that date.

### C.    Members of the Proposed Class Have Specialized Knowledge.

While actual reliance is not required for FDUTPA liability, a consumer who knows a claim is false, but buys the product nonetheless, has not been deceived and has no claim. *See Montgomery v. New Piper Aircraft,* No. 00-14284-CIV-ROETTGER/LYNCH, 2002 U.S. Dist. LEXIS 18198, at *17 (S.D. Fla. Aug. 6, 2002). This is because a reasonable person with the specialized knowledge of the plaintiff would not have been deceived. Thus, the specialized knowledge of class members—such as veterinary students,[12] retail owners and sales staff, food processors, and persons who read the ingredient descriptions on Natura's website—must be determined before evaluating deceptiveness and causation.

## VIII.   MANY PUTATIVE CLASS MEMBERS WILL NOT BE ABLE TO PRODUCE VERIFIABLE PROOF THAT THEY USED PRODUCT OR VIEWED THE ALLEGEDLY DECEPTIVE ADVERTISEMENTS.

Davis does not have the product packages or any other objective evidence that she ever used a Natura product. [Caverly Decl., ex. C at 47:18-48:12.] Davis does not even believe that any third party, such as her retailer or a family member, can corroborate her use. [*Id.* at 48:13-25.] Cortazzo similarly has no receipts despite years of claimed use. Cortazzo has no memory of when she started and stopped making purchases, but instead relies on conversations with her sister and retailer to identify the year. [Caverly Decl., ex. E at 11:19-14:2.] Cortazzo also does not know when she viewed Natura's website, what pages she viewed, or even if she saw the website before making her initial purchase. [*Id.* at 28:16-32:15; 62:6-65:7; 67:9-17; 98:20-99:1.] When Natura asked for Plaintiffs' computers in discovery to verify their testimony, only objections were received. [*See, e.g.,* Caverly Decl., ex. F.]

---

12   Natura knows that the class would include University of Florida veterinary students because those students receive free samples of Natura's products as part of Natura's education efforts. [Atkins Decl. at ¶ 7 & ex. E.]

Because Natura does not deal directly with consumers, Natura does not know who purchases its products, how much they paid, who has gotten a refund, or who has seen its website and brochures. [Atkins Decl. at ¶¶ 4-5, 8, 10-11.] Retail sales are made by independent retailers, some 150 in Florida, and even the sales representatives in Florida are independent contractors working for another independent contractor. [Atkins Decl. at ¶¶ 2, 5-6; Balsimo Decl. at ¶¶ 2-4.] Natura has no way of knowing whether a particular individual viewed its website, unless that person submitted a testimonial. [Atkins Decl. at ¶¶ 15, 19.] Brochure distribution also is not tracked beyond the wholesale distributor or Natura's marketing firm, which both in turn distribute the brochures to retailers and consumers. [Atkins Decl. at ¶¶ 7, 15.] Unless the member has the brochure, there would be no objective evidence that she ever had it and, if so, which version. [*Id.*]

Management of a class action is too administratively difficult where it is unlikely that many of the putative class members will be able to produce objectively verifiable proof that they used the product. *See Perez v. Metabolife Int'l, Inc.,* 218 F.R.D. 262, 269 (S.D. Fla. 2003).

## PROCEDURAL ARGUMENT

## IX. PLAINTIFF'S MOTION FAILS TO COMPLY WITH LOCAL RULE 7.1C.

Plaintiff's motion violates the spirit of Local Rule 7.1.C's 20-page limit, given Plaintiff's use of 76 separate 10-point font single-spaced footnotes. Courts repudiate this tactic. *See Autonation, Inc. v. United Healthcare Ins. Co.,* 423 F. Supp. 2d 1265, 1268 n.1 (S.D. Fla. 2006); *see also Sammons v. Polk County Sch. Bd.,* No. 8:04-cv-2657-T-24 EAJ, 2007 U.S. Dist. LEXIS 8098, at *1 n.1 (M.D. Fla. Feb. 5, 2007). The brief, which is itself the motion, should be stricken.

## X. PLAINTIFF'S MOTION FOR CLASS CERTIFICATION IS UNTIMELY.

The Scheduling Order required Plaintiffs to file for class certification by November 15, 2008. [D.E. 355.] Without leave, Davis filed the instant motion on November 18, 2008. [D.E.

560.] Plaintiff stylized the motion as "corrected", and on that basis the Court denied the motion filed on November 17, 2008. As untimely, the Motion should be denied. *See Hall v. Burger King Corp.*, 1992-2 Trade Cas. (CCH) P70,042, 1992 U.S. Dist. LEXIS 18687, at **45-46 (S.D. Fla. Oct. 26, 1992); Fed. R. Civ. P. 16(b)(4) (requiring good cause to modify scheduling order).

## XI. MALTZMAN FOREMAN ARE NOT ADEQUATE CLASS COUNSEL.

The Maltzman firm does not meet the requirements of Rule 23(g). First, from June 2007 to present, Maltzman attorneys assigned to this case have filed 13 Notices of Unavailability covering absences of 110 court days.[13] On 11 separate occasions, Plaintiffs have requested some sort of modification to the Court's schedule, to the normal briefing schedule under the Local Rules, or for an outright stay of the entire proceedings.[14] The Court or Court's clerk has admonished Plaintiffs six times for submitting improper filings which have twice resulted in an Order by the Court denying the relief requested.[15] Most recently, Plaintiffs untimely filed their motion for class certification.

Second, Maltzman's failure to adequately respond to discovery and produce Plaintiffs for deposition resulted in motions to compel document production, interrogatory responses and depositions of Plaintiffs. [D.E. 426; D.E. 429.] The Court granted defendants' motion to compel written discovery, and Plaintiffs stipulated to sit for deposition the day before Magistrate Brown had a hearing on the motion. [D.E. 442; D.E. 445.] However, Plaintiffs then failed to adhere to the terms of the stipulation for Plaintiffs Davis and Thomas. [Caverly Decl. at ¶¶ 4-9, 12-13.]

Third, Maltzman Foreman has complicated the proceedings by their lack of familiarity with Davis' claims. The Fourth Amended Complaint alleges that Davis purchased Natura products. On August 22, 2008, consistent with verified discovery responses, counsel stated that Davis had no claims to assert against Natura. [D.E. 457.] On September 8, 2008, Davis said she used free samples of Natura products [D.E. 472] and served amended discovery responses on

---

13 *See* D.E. 78, 163, 164, 192, 229, 347, 348, 381, 385, 519, 520, 521, and 576.
14 *See* D.E. 240, 255, 392, 404, 421, 437, 439, 457, 491, 524, and 555.
15 *See* D.E. 79, 176, 184, 259, 546, and 559.

September 23, 2008. [*See* Caverly Decl., ex. B.] In deposition, Davis explained how her amended discovery responses were incorrect. On October 15, 2008, Davis served second amended interrogatory responses. [See Caverly Decl., ex. D.]

Lastly, Maltzman supports its motion for class certification with Patricia Davis' deposition which is hearsay without an exception when used by her and by repeating privileged settlement discussions with Natura's counsel. The Maltzman firm should not be appointed.

## XII.  CONCLUSION

The claims of Davis and Cortazzo are not common to or typical of the broad class of persons included in the proposed class, and common issues do not predominate. The proposed class should be denied as it includes people who got a benefit from the products purchased, people who never saw the allegedly deceptive advertisements, people who were not deceived and people who suffered no economic injury.

McGUIREWOODS LLP


By:     s/Michael M. Giel
        Jeffrey S. York
        Florida Bar No. 0987069
        Michael M. Giel
        Florida Bar No. 0017676
        50 N. Laura Street, Suite 3300
        Jacksonville, Florida  32202
        (904) 798-2680
        (904) 360-6330 (fax)
        jyork@mcguirewoods.com
        mgiel@mcguirewoods.com

and

HENDERSON, CAVERLY, PUM &
CHARNEY LLP
Kristen E. Caverly
*Admitted Pro Hac Vice*
Robert C. Mardian III
*Admitted Pro Hac Vice*
Post Office Box 9144
Rancho Sante Fe, California 92067
(858) 756-6342
(858) 756-4732 (fax)
kcaverly@hcesq.com
rmardian@hcesq.com

ATTORNEYS AND TRIAL COUNSEL
FOR DEFENDANT NATURA PET
PRODUCTS, INC.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 23, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the counsel so indicated on the attached Service List.

_____ s/Michael M. Giel _____
**Attorney**

**CERTIFICATE OF SERVICE**
**RENEE BLASZKOWSKI, ET AL., VS. MARS, INCORPORATED, ET AL.**
**Case No. 1:07-21221-CIV-ALTONAGA/TURNOFF**
**SERVICE LIST**

Catherine J. MacIvor, Esquire
Jeffrey Eric Foreman, Esquire
Jeffrey Bradford Maltzman, Esquire
Darren W. Friedman, Esquire
Bjorg Eikeland
**MALTZMAN FOREMAN PA**
One Biscayne Tower
2 South Biscayne Boulevard, Suite 2300
Miami, FL 33131-1803
Telephone: (305) 358-6555
Facsimile: (305) 374-9077
cmacivor@mflegal.com
jforeman@mflegal.com
jmaltzman@mflegal.com
dfriedman@mflegal.com
beikeland@mflegal.com
*Attorneys for Plaintiffs*

Patrick N. Keegan, Esquire
Jason E. Baker, Esquire
**KEEGAN & BAKER, LLP**
4370 La Jolla Village Drive, Suite 640
San Diego, CA 92122
Telephone:  (858) 552-6750
Facsimile:   (858) 552-6749
pkeegan@keeganbaker.com
jbaker@keeganbaker.com
*Attorneys for Plaintiffs*

John B.T. Murray, Jr., Esquire
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, Florida 33401-6198
Telephone: (561) 650-7200
Facsimile: (561) 655-1509
jbmurray@ssd.com
*Attorneys for Defendants PETCO Animal*
*Supplies Stores, Inc., PetSmart, Inc., Wal-Mart*
*Stores, Inc., Target Corporation and Meijer,*
*Inc.*

Rolando Andres Diaz, Esquire
Peter S. Baumberger, Esquire
**KUBICKI DRAPER**
25 W. Flagler Street
Penthouse
Miami, FL 33130-1712
Telephone: (305) 982-6708
Facsimile: (305) 374-7846
rd@kubickdraper.com
cyd@kubickidraper.com
psb@kubickidraper.com
*Attorneys for Defendant Pet Supermarket, Inc.*

Lonnie L. Simpson, Esquire
S. Douglas Knox, Esquire
**DLA PIPER LLP**
100 N. Tampa Street
Suite 2200
Tampa, Florida 33602-5809
Lonnie.simpson@dlapiper.com
Douglas.knox@dlapiper.com
*Attorneys for Defendants Menu Foods, Inc.*
*and Menu Foods Income Fund*

Alexander Shaknes, Esquire
**DLA PIPER LLP**
1251 Avenue of the Americas
New York, New York 10020-1104
Alex.Shaknes@dlapiper.com
*Attorneys for Defendants Menu Foods, Inc.*
*and Menu Foods Income Fund*

Hugh J. Turner, Jr., Esquire
**AKERMAN SENTERFITT**
350 E. Las Olas Boulevard
Suite 1600
Fort Lauderdale, FL 33301-2229
Telephone: (954) 463-2700
Facsimile: (954) 463-2224
hugh.turner@akerman.com
*Attorneys for Defendants Publix Super*
*Markets, Inc and H.E. Butt Grocery Co.*

Gary L. Justice, Esquire
Gail E. Lees, Esquire
Omar Ortega, Esquire
**DORTA AND ORTEGA, P.A.**
Douglas Entrance
800 S. Douglas Road, Suite 149
Coral Gables, Florida 33134
Telephone: (305) 461-5454
Facsimile: (305) 461-5226
[oortega@dortaandortega.com](mailto:oortega@dortaandortega.com)
*Attorneys for Defendant Mars, Incorporated,*
*Mars Petcare U.S., and Nutro Products, Inc.*

Benjamine Reid, Esquire
Olga M. Vieira, Esquire
**CARLTON FIELDS, P.A.**
100 S.E. Second Street, Suite 4000
Bank of America Tower at International Place
Miami, Florida 33131-9101
Telephone: (305) 530-0050
Facsimile: (305) 530-0055
[breid@carltonfields.com](mailto:breid@carltonfields.com)
[ovieira@carltonfields.com](mailto:ovieira@carltonfields.com)
*Attorneys for Defendants Colgate-Palmolive*
*Company and Hill's Pet Nutrition, Inc.*

John J. Kuster, Esquire
James D. Arden, Esquire
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
[jkuster@sidley.com](mailto:jkuster@sidley.com)
[jarden@sidley.com](mailto:jarden@sidley.com)
*Attorneys for Defendants Colgate-Palmolive*
*Company and Hill's Pet Nutrition, Inc.*

Kara L. McCall, Esquire
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-2666
[kmccall@Sidley.com](mailto:kmccall@Sidley.com)
*Attorneys for Defendants Colgate-Palmolive*
*Company and Hill's Pet Nutrition, Inc.*

Marcos Daniel Jiménez, Esquire
Robert J. Alwine II, Esquire
**KENNY NACHWALTER, P.A.**
1100 Miami Center
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
mdj@kennynachwalter.com
ralwine@kennynachwalter.com
*Attorneys for Defendants Safeway, Inc. and*
*The Stop & Shop Supermarket Company LLC*

Sherril M. Colombo, Esquire
**COZEN O'CONNOR**
Wachovia Center, Suite 4410
200 South Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 704-5945
Facsimile: (305) 704-5955
scolombo@cozen.com
*Attorneys for Defendant Del Monte Foods, Co.*

Richard Fama, Esquire
John J. McDonough, Esquire
**COZEN O'CONNOR**
45 Broadway
New York, New York 10006
Telephone: (212) 509-9400
Facsimile: (212) 509-9492
rfama@cozen.com
jmcdonough@cozen.com
*Attorneys for Defendant Del Monte Foods*

John F. Mullen, Esquire
**COZEN O'CONNOR**
1900 Market Street
Philadelphia, PA 19103
Telephone: (215) 665-2179
Facsimile: (215) 665-2013
jmullen@cozen.com
*Attorneys for Defendant Del Monte Foods, Co.*

Carol A. Licko, Esquire
**HOGAN & HARTSON L.L.P.**
Mellon Financial Center
1111 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 459-6500
Facsimile: (305) 459-6550
calicko@hhlaw.com
*Attorneys for Defendants Nestlé USA, Inc. and Nestlé Purina Petcare Co.*

Robert C. Troyer, Esquire
**HOGAN & HARTSON L.L.P.**
1200 17th Street
One Tabor Center, suite 1500
Denver, Colorado 80202
Telephone: (303) 899-7300
Facsimile: (303) 899-7333
rctroyer@hhlaw.com
*Attorneys for Defendants Nestlé USA, Inc. and Nestlé Purina Petcare Co.*

Craig A. Hoover, Esquire
Miranda L. Berge, Esquire
E. Desmond Hogan, Esquire
**HOGAN & HARTSON L.L.P.**
555 13TH Street, NW
Washington, D.C. 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
cahoover@hhlaw.com
mlberge@hhlaw.com
*Attorneys for Defendants Nestlé USA, Inc. and Nestlé Purina Petcare Co.*

Alan G. Greer, Esquire
**RICHMAN GREER, P.A.**
Miami Center – Suite 1000
201 South Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 373-4000
Facsimile: (305) 373-4099
agreer@richmangreer.com
*Attorneys for Defendants Procter & Gamble Co. and The Iams Co.*

D. Jeffrey Ireland, Esquire
Brian D. Wright, Esquire
Laura A. Sanom, Esquire
**FARUKI IRELAND & COX P.L.L.**
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, Ohio 45402
djireland@ficlaw.com
Bwright@ficlaw.com
lsanom@ficlaw.com
*Attorneys for Defendant Procter & Gamble*
*Co. and The Iams Co.*

Robin L. Hanger, Esquire
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
200 S. Biscayne Boulevard
40th Floor
Miami, Florida 33131-2398
Telephone: (305) 577-7040
Facsimile: (305) 577-7001
rlhanger@ssd.com
*Attorneys for Defendants PETCO Animal*
*Supplies Stores, Inc.*

Ralph G. Patino, Esquire
Dominick V. Tamarazzo, Esquire
Carlos B. Salup, Esquire
**PATINO & ASSOCIATES, P.A.**
225 Alcazar Avenue
Coral Gables, Florida 33134
Telephone: (305) 443-6163
Facsimile: (305) 443-5635
rpatino@patinolaw.com
dtamarazzo@patinolaw.com
csalup@patinolaw.com
*Attorneys for Defendants Pet Supplies "Plus"*
*and Pet Supplies Plus/USA, Inc.*

Robert Valadez, Esquire
Javier Thomas Duran, Esquire
**SHELTON & VALADEZ, P.C.**
600 Navarro, Suite 500
San Antonio, Texas 78205
Telephone: (210) 349-0515
Facsimile: (210) 349-3666
rvaladez@shelton-valadez.com

jduran@shelton-valadez.com
*Attorneys for Defendant H.E. Butt Grocery Co.*

Craig P. Kalil, Esquire
Joshua D. Poyer, Esquire
**ABALLI, MILNE, KALIL & ESCAGEDO, P.A.**
2250 Sun Trust International Center
One Southeast Third Avenue
Miami, Florida 33131
Telephone: (305) 373-6600
Facsimile: (305) 373-7929
ckalil@aballi.com
jpoyer@abailli.com
*Attorneys for Defendants New Albertson's Inc.*
*and Albertson's LLC*

W. Randolph Teslik, Esquire
Andrew Dober, Esquire
**AKIN GUMPSTRAUSS HAUER & FELD LLP**
1333 New Hampshire Avenue, NW
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
rteslik@akingump.com
adober@akingump.com
*Attorneys for Defendants New Albertson's Inc.*
*and Albertson's LLC*

Jason Joffe, Esquire
**SQUIRE SANDERS & DEMPSEY, LLP**
200 South Biscayne Boulevard
Suite 4000
Miami, Florida 33131
Telephone: (305) 577-7000
Facsimile: (305) 577-7001
jjoffe@ssd.com
*Attorneys for Defendant Meijer, Inc.*

\6884321.1